Valeria A. Gheorghiu, Attorney ID No. 042912007
Law Office of Valeria A. Gheorghiu
113 Green Street, Ste. 2
Kingston, NY 12401
(914) 772-7194 (phone)
valerialexiag@gmail.com

*Attorney for Plaintiff Ramapough Mountain Indians, Inc.*

## United States District Court

## For The District of New Jersey

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., <br><br> and <br><br> RAMAPOUGH LENAPE NATION, <br><br>     *Plaintiffs* <br><br>     v. <br><br> TOWNSHIP OF MAHWAH, <br><br> RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., <br><br> GERALDINE ENTRUP, <br><br> THOMAS MULVEY, | Civil Action No.: _____ <br><br> **COMPLAINT** |

JOHN and JANE DOES 1 THROUGH 14,

JOHN DOE ENTITIES 1 AND 2

> *Defendants*

Plaintiffs Ramapough Mountain Indians, Inc. and the Ramapough Lenape Nation,  by attorney Valeria Gheorghiu, respectfully request that this Federal District Court of the United States for the District of New Jersey recognize the rights of members and friends to gather and pray on Ramapough private land at 95 Halifax Road in Mahwah, NJ.[1] Specifically, that this Honorable Court prohibit the Town of Mahwah, and their agents Geraldine Entrup and Thomas Mulvey, and the Ramapo Hunt & Polo Club, and their members or agents, from interfering and prohibiting the exercise of these fundamental rights of the Ramapough Lenape Nation and people as guaranteed by the Constitution of the United States, Constitution of the State of New Jersey, Executive Order No. 24 (August 4th, 2006) of Governor Jon S. Corzine of New Jersey, and the Universal Declaration of

---

[1] Plaintiff Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation's principal address is 189 Stag Hill Road, Mahwah, NJ 07430.

Human Rights, United Nations Declaration of the Rights of Indigenous

People, and the American Declaration on the Rights and Duties of Man for

the following reasons:

## JURISDICTION AND VENUE

1.     Plaintiff's federal claims arise under 42 U.S.C. § 1983, 42

U.S.C. § 2000cc, the 1st Amendment of the U.S. Constitution and Article

III, § 2 of the U.S. Constitution.

2.     The Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 for claims brought under

the United States Constitution and federal laws.

3.     The Court has personal jurisdiction over this action because the

defendants are located in this District, because the acts complained of

occurred in this District, and pursuant to NJ Rev. Stat § 2A:4-30.68 and

supplemental jurisdiction under 28 U.S.C. § 1367 for state claims because

those claims closely relate to the federal claims, arise from a

common nucleus of operative facts and form part of the same case or

controversy.

4.     This District Court has venue pursuant to 28 U.S.C. § 1391(b),

because the events giving rise to the claims occurred on Plaintiff's property

at 95 Halifax Lane, in the Township of Mahwah, in Bergen County, State of
New Jersey, which is within the jurisdiction of the District Court of New
Jersey.

## PARTIES

5.     Plaintiff Ramapough Lenape Nation (hereinafter "Ramapough")
is a sovereign entity whose members are descendants of the original
people of the Ramapo Mountains, principally of Munsee descent from the
Lenape people. The elected national, clan and band chiefs of the three
thousand five hundred (3,500) members are Dwaine Perry of the
Ramapough Lenape Nation, John Bragg of Turkey Band, Eileen DeFreese
of Wolf Clan, Clara Hasbrouck of Deer Clan, Floyd Hicks of Wawayanda
territory, Tracy Hyter-Suffern of Staten Island, Richard Logan, and Vincent
Mann of the Turtle Clan.

6.     Plaintiff Ramapough Mountain Indians, Inc. (hereinafter also
"Ramapough") is a 501(c)(3) nonprofit corporation owned, operated, and
managed on behalf of the Ramapough people.

7.     Defendant Township of Mahwah (hereinafter "Mahwah") is a
township under the laws of New Jersey. Defendant Geraldine Entrup is
Administrative Officer for Mahwah demanding by letter dated April 24, 2018

that Ramapough and friends stop open air prayer and coming onto

Ramapough private property and destroy sacred sites and later issuing

coercive summonses. Defendant Thomas Mulvey is the Property and

Maintenance Inspector signing complaints and demanding by summonses

that Ramapough and friends stop open air prayer and coming onto

Ramapough private property and destroy sacred sites.

8.     Defendant The Ramapo Hunt & Polo Club (hereinafter "Polo

Club") is a homeowners' association of approximately twenty-nine (29)

homes occupying land north of the bridge on Halifax Road in Mahwah, New

Jersey managed by elected trustees. Members Paul Scian, Kathleen

Murray, Charles Murray, and Charles Brammer are members of the Polo

Club demanding, among other actions, that Ramapough be prohibited from

coming to the land, praying on the land, removing Rampough's sacred altar

and prayer circle, police action, and even throwing people in jail. The Polo

Club hired the law firm Beattie Padovano as agents, including attorneys

John Lamb, Arthur Chagaris, and Martin Kafafian, Jr. Mr. John Lamb falsely

alleged in a verified certification that Ramapough can continue to have the

same opportunity for activities elsewhere that are conducted at 95 Halifax

Road, overlooking access to the Ramapo River. Upon information and

belief, Beattie Padovano and one or more of these attorneys advised the Polo Club to file private criminal warrants against Chief Dwaine Perry and Steven Smith, members of the Ramapough Lenape Nation. This is based on the fact that the private warrant stated the Polo Club trustee Dr. James Olivari had been advised by his attorney to make a criminal complaint.

## FACTS

### Introduction

9.     Defendant Township of Mahwah is imposing cumulative crippling fines against plaintiff Ramapough of $12,500 per day, totalling $480,000 as of May 14, 2018, to end religious use of property, to eliminate sacred sites, and prevent assembly.

10.     Mahwah in so acting is carrying on a historical pattern and practice of harassment of the Ramapough Lenape Nation and people.

11.     Mahwah is also acting at the behest of, and in partnership with, Ramapough neighbor defendant Polo Club, a housing association whose trustees and leadership have long wanted to drive Ramapough off Ramapough private property and have expressed this goal publicly.

12.     Mahwah has further applied illegal pressure on Ramapough to stop coming to the land, to stop religious practice and to remove

Ramapough's sacred altar and prayer circle by threatening to do so directly as "actual enforcement" and by using coercive fines as "self-help" without Court Order.

13.    By letter dated September 5, 2017 Mahwah sent a letter purporting to revoke a 2012 zoning permit that it failed to disclose to Ramapough or State Courts recognizing religious use and logs with masks carved in them (referred to by Ramapough as "Mesingws") unilaterally and secretly without notice nor opportunity to be heard.

14.    Defendant Polo Club, in furtherance of this campaign to pressure the Ramapough Nation into ceasing its religious practices, to assemble and in fact to yield up the land, has made numerous unfounded complaints to the police department and used the New Jersey municipal "private warrant" process to bring criminal charges against Ramapough members.

15.    Members of the Polo Club have publicly shouted racist language at Plaintiffs, maintain a surveillance camera directed toward Ramapough property 24 hours a day, have entered upon their land to threaten them, to photograph and record them, and have publicly

demanded that the Town impose fines, even jail time, in an attempt to have the land forfeited.

16.    The Polo Club has instituted lawsuits against Ramapough in Bergen County Superior Court as part of their campaign to apply pressure against Plaintiffs.

17.    Mahwah has similarly instituted litigation against Ramapough, and attorneys for the Polo Club have sought to directly intervene, and in some instances actually assisted and participated, in these lawsuits in which they had no official role.

18.    The purpose of all these actions taken jointly and individually by the Town and the Polo Club have been to burden, harm and destroy the Plaintiff's religious uses of their property, sacred sites and ultimately to result in an illegal taking of their land.

**History Of Ramapough Lenape Nation At 95 Halifax Road**

19.    The members of the Ramapough Lenape Nation are descendants of the original people of Manhattan and Lenapehoking the territory of which includes the land and waters of present day New York and New Jersey. The Ramapough people now principally reside in the Ramapo

Mountains with major villages in Mahwah, New Jersey, Ringwood, New Jersey and Hillburn, New York.

20.     The Ramapough are one of the few indigenous people (*i.e.* "Indians", "Native Americans") in the entire country that survived as a community while continuing to stay on their ancestral homeland.

21.     Three sites hold particular importance to the Ramapough. The first is the mouth of the Ramapo and Mahwah Rivers, where the Ramapough have welcomed people with shared ceremonies for millennia.

22.     The second is the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains. In the winter of 1799- 1780, the Ramapough welcomed George Washington to use the Ramapo Pass to shelter five hundred Continental Army soldiers. The Ramapough are known as Keepers of the Pass, which means guardians of the mountain passage way, rivers, and valley.

23.     The third is the area around 95 Halifax Road, a sacred site of immense importance to the Ramapoughs. The Ramapough have conducted prayer and community cultural assembly for centuries. In the Ramapoughs' native language, the word "Ramapo" actually means "sweet water." Sweet Water is located on the west side of the confluence of the

Ramapo River and Halifax Creek at 95 Halifax Road in Mahwah and is the site that Mahwah and the Polo Club seek to remove Ramapough from.

24.    The Township's very name "Mahwah" in fact, means "meeting place" in the Ramapough Munsee language as the place where the Mahwah and Ramapo rivers join. In about 1849, land at 95 Halifax Road and the lands surrounding it were incorporated into the Township of Mahwah.

**Prayer and Community Cultural Assembly at 95 Halifax Road**

25.    Colonial era maps show that 95 Halifax Road and nearby land including areas of Ramapo College are the site of Ramapo villages with one map even indicating a burial ground in or at 95 Halifax Road.

26.    The Ramapough have used the land and the Ramapo river in the area around 95 Halifax, and at 95 Halifax Rd. in the current era, for, among other purposes, trade, hunting, fishing, recreation, camping, prayer, weddings, memorial services including spreading of ashes, and meditation.

27.    Elders among the Ramapoughs recall witnessing religious and ceremonial use of Sweet Water and the area surrounding Sweet Water, going back more than five decades.

28.     Religious use of this land by Ramapough include many important religious ceremonies, including the Tobacco Ceremony, the Pipe Ceremony, the Water Ceremonies, sweat lodges, weddings, and scattering ashes of departed tribal members into the Ramapo River. Ramapough have also opened the land for other nations and people to use for religious ceremony as well.

29.     The Ramapoughs conduct religious ceremonies at least twice a month in the warmer months, and slightly less often during the winter. The Ramapoughs schedule regular sweat lodge sessions throughout the year.

30.     In the late 1970s, Charles Elmes acquired title to Sweet Water and all the surrounding lands.

31.     Soon after the acquisition, Mr. Elmes met with several Ramapoughs, including Ronald "Redbone" Van Dunk, who was the Chief of the Ramapoughs at that time. Chief Redbone explained to Mr. Elmes that the Ramapoughs had used Sweet Water for prayer, community cultural assembly, hunting, and fishing for decades, if not centuries. Mr. Elmes recognized the Ramapoughs continuing used of land at 95 Halifax Road.

32.     In 1984, the Township adopted a Zoning Map, which designated Sweet Water as a C-80 Conservation Zone.

33.    The Ramapoughs continued to openly use the property for prayer and community cultural assembly, in open view of Township officials and police officers with cooperation.

34.    In June 1987, the Township amended the Zoning Ordinance to designate Sweet Water as a C-200 Conservation Zone.  Again, the Ramapoughs continued to use the property for prayer and community cultural assembly, in open view of the Township.

35.    In 1995, the Ramapough Lenape Nation acquired rights to 95 Halifax Road, Mahwah, NJ 07430 (hereinafter "prayer site") by private deed of gift from Mr. Charles Elmes, the original developer of the Polo Club, under the laws of New Jersey. 95 Halifax Road is also in the area of ancestral land of the Ramapough people and is noted as such by historians and archaeologists. Bergen County, NJ posted signs recognizing the land as "Ramapough Ceremonial Land" by erecting signs on Highway 202 leading to the property.

36.    Regarding the land and soil at 95 Halifax Rd., Ramapough members note that the land used to be much higher, that a significant amount of soil was removed, that a drainage pipe for the Polo Club was

placed at the land, and that these man-made conditions are major contributors to brief periods of flooding.

37.    The New Jersey Department of Environmental Protection investigated the land and concluded that as presently used there was no violation of the New Jersey Flood Hazard Control Act or state regulations.

**Mahwah Land Use Policy And
Ramapough Members' Loss of Land and Housing**

38.    Ramapough once had a community north of the bridge on Halifax Road, called the Green Mountain Valley, that was removed in the 1920s. Members of the Ramapough Lenape Nation once owned land that included land in the Polo Club community some of which was purportedly sold for $1 in the early 20th century.

39.    Defendant Polo Club was established in the 1980s.

40.    Around 1990, defendant Mahwah executed a land policy on Stag Hill leading to the exodus members of the Ramapough Lenape Nation from houses and land traditionally occupied by Ramapough.

41.    Around 2009, Mahwah executed another land policy leading to the condemnation of several homes owned and occupied by Ramapough

members and taking over with monetary compensation of others leading to the removal of Ramapough around the area of Silver Lake on Stag Hill.

42.    In 2011, a conflict over Ramapough religious ceremonies and the placement of masked poles (Mesingws) resulted in Mahwah issuing summonses to Ramapough for zoning violations.

43.    In 2012, Mahwah dismissed the summonses and recognized Ramapough's use of the masked poles (Mesingws) and gatherings for religious use by issuing a zoning permit.

44.    In October of 2016, concerns about fossil fuel pipelines planned for the Ramapo Pass, global climate change, environmental pollution, and the need to obtain, preserve and maintain clean water led the Ramapough to have meetings at 95 Halifax Road open to allies and those interested in protecting our planet by establishing the Split Rock Sweetwater Prayer Site at 95 Halifax Road.

**Polo Club And Mahwah Jointly Plan And Act To Stop Ramapough Religious Use and Assembly, To Remove Sacred Sites And To Take Ramapough Land At 95 Halifax Road Through Excessive Fines**

45.    The Ramapough Lenape Nation is being attacked by the Town of Mahwah and the Polo Club, including respective agents and members, each one acting as agents of the other in partnership, in an attempt to force

14

the Ramapough off the land by sale, illegal zoning enforcement or through coercive fines.

46.     Mahwah and the Polo Club have jointly and severally been involved in attempts to induce Ramapough to sell sacred lands along the Ramapo River at 95 Halifax Road:

A.    Mayor LaForet was involved in efforts to get Ramapough to swap land at 95 Halifax Road for land on Stag Hill around where Ramapough had previously been induced or coerced into removal.

B.    Gregory Brill, a representative of the Polo Club, told Chief Dwaine Perry that if Ramapough did not accept an offer of the Polo Club to sell Ramapough property at 95 Halifax Road then some unnamed members of the Polo Club were prepared to attack the Ramapough Lenape Nation. Chief Dwaine Perry interpreted this as a threat not from Mr. Brill but these members. One Polo Club member in fact is reported to have later applied for a gun permit.

C.    Chief Perry said that Ramapough will not enter into any agreement under duress.

47.    Members and allies have in fact been the subject of gunshots heard at night, laser beams, racial slurs, slashed tires, slashed tents, vandalism and false police reports. Dr. James Olivari, as trustee of the Polo Club and upon advice of their agent and law firm Beattie Padovano, brought claims of criminal mischief against Ramapough member Steven Smith and Chief Dwaine Perry by private complaint falsely claiming that cameras were disabled by Steven Smith on May 9, 2017. In public comments, former Polo Club trustee Paul Scian falsely stated that Steven Smith "pushed down ALL but one of the cameras." News reports based on the Polo Club's accusations falsely accused Mr. Smith of $ 5,000 worth of damage. Evidence shows there was no physical damage to the cameras by Mr. Smith or Dwaine Perry and everything that could be seen before could be seen after.  At the trial of Mr. Smith, James Olivari admitted that there was only the turning of a lens resulting in no physical damage or disabling of cameras. Mr. Smith is appealing a finding of disorderly conduct but was found not guilty of criminal mischief. Chief Dwaine Perry is awaiting trial.

48.    The Polo Club hired a public relations firm to pursue their agenda and advises the Polo Club including media communications, stories, and the internet. On June 8, 2017, defendant Polo Club's agent

Jeanine Genauer of the JPR Group wrote a letter to the editor falsely

accusing Ramapough of violations of New Jersey state regulations.

49.    Defendants Mahwah and the Polo Club and their agents around

this time began an active campaign to isolate and denigrate the

Ramapough based on religion and race.  Upon information and belief,

since the start of the Split Rock Sweetwater prayer site by Ramapough and

allies at 95 Halifax Road, representatives of the Mahwah Council, most

prominently the Mayor, visited and conferred with the Polo Club regarding

action to take against Ramapough's use of the prayer site.

50.    The Polo Club has interfered with Ramapough relationships

including sending letters, requesting meetings, and meeting with allies. A

member of the Polo Club has even contacted the Ramapough's own

attorneys, including a board member of one attorney's firm, asking these

individuals and entities to not associate with Ramapough.

51.    The Polo Club has been advised in this campaign by John Doe

2 and John Doe Entities 1 and 2. Upon information and belief, defendant

Polo Club has even gone so far as to draft a complaint against Mr. Charles

Elmes, the grantor of the deed to 95 Halifax Road, with the objective of

forcing the Ramapough off the land. Regardless of whether filed or not, this

is yet another attempt by the Polo Club to attack third parties associated with Ramapough.

52.    Defendant Mahwah engaged in a similar pattern of racial and religious discrimination against another religious group. In 2017, defendant Mahwah acted to illegally prevent Jewish people from using purely symbolic structures called ERUVs to allow them to pray. Mahwah passed unconstitutional municipal ordinances to exclude Jewish people from public parks that were later withdrawn after lawsuits from the group and the New Jersey Attorney General.

53.    Defendant Mahwah's Mayor, the Council, and township officials maintain close cooperation with the Polo Club in a coordinated campaign against the Ramapough Lenape Nation expressed through constant, even daily, communication, surveillance of Ramapough and Ramapough land, frequent visits to the Polo Club and for in person meetings. The attorney for the Town of Mahwah and  attorneys for the Polo Club communicate on a daily basis. Attorneys for the Polo Club, in turn, have reviewed, shared, and possibly even drafted, legal documents for the Town of Mahwah related to enforcement actions. Defendant John Doe 2 and entities John Doe 1 and 2 act on behalf of the Polo Club, both individually and as a partner with

Defendant Mahwah and its agents, in actions designed to force

Ramapough off Ramapough private land based on Ramapough's race and

religion.

### Mahwah Threatens To Act Outside Law By Using "Self-help" And "Actual Enforcement" Against Ramapough

54.     On January 5, 2018, Mahwah, by town attorney Brian

Chewcaskie, told the Bergen County Superior Court that Mahwah was

prepared to act unilaterally without a Bergen County Superior Court order

to prohibit prayer through "self help" regardless of how that Court ruled

regarding Mahwah's motion demanding  a halt to religious use and to take

down sacred sites in an order to show cause:

> MR. CHEWCASKIE: if the Court dismisses this complaint than
> the Township will exercise whatever rights it may have pursuant
> to the law. The Township does not want to exercise self-help,
> we want to proceed in accordance with the rules under the
> statute. The Township has been very patient; the Township has
> not issued any additional summonses, has not taken any
> specific, what I would call, actual enforcement action.

*Mahwah v. Ramapough*, Superior Court of Bergen County, Civil Action No.

BER-L-3189-17, January 5, 2018 (oral argument). Later, Mahwah's

attorney Mr. Chewcaskie told the State Court that Mahwah was prepared to

act outside of the judicial process:

> MR. CHEWCASKIE: What I said is, we're trying to play by the

rules, the rules would require a judicial intervention as permitted pursuant to the statute. Otherwise, it's the exercise of self-help which I don't believe anybody wants.

*Id*. Ramapough interpret this as defendant Mahwah claiming that Mahwah can act regardless of what the State Courts say.

55.   Mahwah's order to show cause, that the State Court denied, demanded the physical removal of Ramapough's sacred altar and prayer circle:

3. The Defendant and its employees, agents, assigns, and successors in interest shall demolish and remove (at the direction of the Township) any and all structures built in violation of Township's Land Development Ordinance and/or the NJDEP Flood Hazard Area Control Act.

*Mahwah v. Ramapough*, Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (Mahwah's proposed order to show cause).

56.   Mahwah has issued letters, threats and fines for the stone altar and prayer circle despite an NJDEP finding that none of the structures on the land were maintained in violation of the NJDEP Flood Hazard Area Control Act. Mahwah also illegally defines as violations simple prayer without any structures.

57.    The Bergen County Superior Court denied Mahwah and the Polo Club's demands to destroy and dismantle sacred sites for the third time on January 5, 2018. *Mahwah v. Ramapough*, Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (order denying Mahwah's motion).

58.    Despite the denials, defendant Mahwah continues to claim the right to unilaterally enter Ramapough land, tear down and destroy sacred sites, prohibit prayer and gatherings. Both defendant Mahwah and Polo Club have sent letters with these illegal demands and threats.

59.    Mahwah Town Council President Robert Hermansen at a Council meeting said "it's time to move forward one way or the other" and later as a possible option asks town attorney Brian Chewcaskie "do we go in and take the rocks down ourself?" *Mahwah Town Council*, Comment, March 22nd, 2018, defendant Mahwah Council President Robert Hermansen.

60.    Polo Club member Charles Brammer said "we need something done. Not a year from now. Not six months from now. It better be done now. We're tired of it." *Mahwah Town Council*, Comment, March 22nd, 2018, defendant Polo Club resident Charles Brammer.

**Mahwah Acts Outside Of Law to Prevent Prayer, Cultural Assembly, and To Take Ramapough Land**

61.    On April 24, 2018, Mahwah and the Polo Club dropped any pretense of following the rule of law by engaging in that threatened "self-help" without approval from the Bergen County Superior Court. By letter of that date, Mahwah started to improperly and illegally impose on Ramapough Mountain Indians, Inc. ten different summonses seeking a penalty of up to $12,500 per day, retroactive to March 29th, 2018, for using the land for open air prayer, having a stone altar, and a prayer circle with Mesingws (masks) carved into tree trunks (all natural material).

62.    The total accumulated fines as of May 14, 2018 is four hundred and eighty thousand dollars ($480,000.00).

63.    Defendant Mahwah has, in fact, imposed coercive fines on Ramapough in addition to gathering for religious purposes for simply coming onto the land at 95 Halifax. On Friday, April 20th, a class from Ramapo College came to 95 Halifax Road for a discussion on environmental issues and indigenous culture with Chief Dwaine Perry and Steven Smith. In its April 24th letter, the Town of Mahwah cited this as illegal activity. On May 4, 2018, a class from Union Theological Seminary

came to 95 Halifax Road and met with Steven Smith for a discussion on

environmental issues and indigenous communities. There was no prayer.

Upon information and belief, this was reported by Polo Club neighbors to

the Mahwah Police Department as a violation. Defendant Mahwah cites

this as illegal conduct justifying confiscatory fines.

64.   Defendants Mahwah and the Polo Club continue to use

coercive action and impose confiscatory fines to take Ramapough land at

95 Halifax Road and remove Ramapough people, friends, sacred altars

and prayer circle nor prohibit gathering or prayer or educational meetings.

Mahwah continues a history of acting unilaterally taking land and/or forcing

removal of Ramapough from Rampough land including:

A.   Mahwah's use of land policy causing an exodus and removal of

Ramapough people from land on Stag Hill in Mahwah where

Ramapough have lived for centuries with many homesites

replaced by wealthy individuals.

B.    In 2003, Mahwah built a footbridge to land owned by the

Ramapough Lenape Nation after being denied permission to do

so by Ramapough and without any compensation.

C.    In 2012, Mahwah recognized Ramapough rights to use the land for religious purposes and to have Mesingws (logs with masks) by issuing a permit. During negotiations and proceedings regarding the property, Mahwah failed to disclose the existence of the 2012 permit it knew existed to new counsel and, once uncovered and presented, issued a letter purporting to rescind the 2012 permit *sua sponte* without notice or hearing.

D.    On June 15, 2017, the Bergen County Superior Court dissolved Mahwah's temporary restraining order seeking to prohibit prayer, religious meetings, and force Ramapough to remove the prayer circle consisting of Mesingws (logs with masks).

E.    On October 31, 2017, Michael Kelly, town engineer, said under oath in testimony before the Bergen County Vicinage Court that more than two (2) people praying on land at 95 Halifax Road in open air prayer regardless of any structures is a violation of the Mahwah municipal code.

F.    Both Mahwah and the Polo Club have threatened Ramapough with legal action for people meeting on Ramapough land regardless of prayer.

G.   On November 17, 2017, the Mahwah Municipal Court declared

Mahwah's attempt to rescind a 2012 permit recognizing

religious use and associated masks null and void for lack of due

process. While holding that the masked poles in their current

location were structures subject to zoning regulations, the

Mahwah Municipal Court stayed enforcement of any fines or

penalties until conclusion of any appeal filed by the

Ramapough. Mahwah and the Polo Club are employing

coercive enforcement despite the fact that an appeal was filed

on December 7, 2017.

H.   Defendant Polo Club, basically stepping into the shoes of a

private prosecutor, filed its own enforcement actions seeking to

prohibit Ramapough from using Ramapough land for prayer or

even more than five (5) people coming onto the land. Defendant

Polo Club communicates with the defendant Mahwah as

frequently as once per working day, collaborating with the goal

of prohibiting Ramapough prayer, gathering, and to attack

Ramapough sacred sites. Defendant's attorney John Lam b,

who is not an expert on indigenous religious practice, filed a

verified affidavit and documents falsely claiming that land at 95 Halifax Road had no special value for Ramapough and that other land was sufficient for religious use despite lack of access to the Ramapo River. The Polo Club and Mahwah refer to Ramapough's sacred altar as "a pile of rocks."

I.   On January 5, 2018, Brian Chewcaskie, town attorney of Mahwah, told the Bergen County Superior Court that Mahwah was prepared to engage in "self-help" and"actual enforcement" without Court order, which Ramapough interpret as an illegally claimed right to physically removing Ramapough people and sacred items from land plus prohibit prayer.

J.   Despite a finding by the New Jersey Department of Environmental Protection finding no violation of law regarding the Flood Hazard Control Act, Mahwah essentially ordered Ramapough by letter dated January 17, 2018 to remove all structures on the land and to stop prayer on penalty of imposing coercive enforcement for violation of local code enforcement.

65.    By letter dated April 24, 2018 from defendant Geraldine Entrup, administrative officer of Mahwah began its "self-help" and "actual enforcement" through daily coercive, continual and cumulative fines.

66.    As set out in the April 24, 2018 letter, defendant Michael Mulvey of Mahwah issues daily summonses as a complainant. As of the date of this filing, defendant Mahwah, in concert with defendant Polo Club, are demanding four hundred and eighty thousand dollars ($480,000.00) in fines accumulating daily. This is for having a sacred altar and prayer circle on Ramapough private land, for open air prayer, and even for people coming to the land.

## CLAIMS FOR RELIEF

### Count I

"Free Exercise of Religion"
United States Constitution, First Amendment
(Defendants Mahwah, Polo Club, John Does)

67.    Plaintiffs include all allegations in this complaint as if fully stated in this count.

68.    The First Amendment of the United States Constitution, which is made applicable to state and local governments, including defendant Township of Mahwah, New Jersey, through the Fourteenth Amendment,

guarantees freedom of religion by saying "Congress shall make no law respecting an establishment of religion, or prohibiting free exercise thereof." *United States Constitution, Amendment I.*

69.    The Ramapough people and allies have a right to come to Ramapough private land at 95 Halifax Rd., Mahwah, NJ and engage in open air prayer including at Ramapough's sacred Stone Altar and Prayer Circle.

70.    By threatening to physically prohibit and block Ramapough and allies coming to the land for religious purposes, including prayer, defendants have imposed a substantial burden on the religious exercise of the Ramapough people.

71.    By imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious purposes, including prayer, defendants have imposed a substantial burden on the religious exercise of the Ramapough people.

72.    Defendants' laws and actions deprive, and continue to deprive, Ramapough of the right to free exercise of religion: (1) by substantially burdening religious exercise without a compelling governmental interest, (2) by discriminating against and targeting Ramapough for disfavor, and (3)

by denying Ramapough access to the Ramapo River at Ramapough

private property as part of indigenous prayer and practice.

73.     The object, motivation, and effect of the actions of Mahwah and

the Polo Club is to take the land and to suppress the religious practices of

the Ramapough and guests by duress or force. These actions specifically

target Ramapough people based on race and religion.

74.     As a result of the actions of defendants Mahwah and Polo Club

to block prayer and force removal of sacred sites, Ramapough will be, and

in fact are being, irreparably harmed.

## Count II

"Freedom of Association"
United States Constitution, First Amendment
(Defendants Mahwah, Polo Club, John Does)

75.     Plaintiffs include all allegations in this complaint as if fully stated

in this count.

76.     The First Amendment of the United States Constitution, which

is made applicable to state and local governments, including defendant

Township of Mahwah, New Jersey, through the Fourteenth Amendment,

guarantees freedom of religion by saying "Congress shall make no law …

abridging ... the right of the people to peaceably assemble." *United States Constitution, Amendment I*.

77.   The Ramapough people and allies have a right to come to Ramapough private land at 95 Halifax Rd., Mahwah, NJ, regardless of prayer, for other purposes including, but not limited to, recreation, education, hunting, fishing, or cultural reasons.

78.   By threatening to physically prohibit and block Ramapough and allies coming to the land for what defendants' characterize as "public assembly" defendants have imposed a substantial burden on the exercise of the right of Ramapough people and allies to peaceably assemble and associate.

79.   By imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for for what defendants' characterize as "public assembly" defendants have imposed a substantial burden on the exercise of the right of Ramapough people and allies to peaceably assemble and associate.

80.   Defendants' laws and actions deprive, and continue to deprive, Ramapough of the right to freedom of association: (1) by substantially burdening association and assembly without a compelling governmental

interest, (2) by discriminating against and targeting Ramapough for disfavor, and (3) by denying Ramapough access to the Ramapo River at Ramapough private property.

81.    The object, motivation, and effect of the actions of Mahwah and the Polo Club is to take the land and to suppress the ability of Ramapough and guests to assemble and associate by duress or force. These actions specifically target Ramapough people based on race and religion.

82.    As a result of the actions of defendants Mahwah and Polo Club to block Ramapough from peaceful assembly and association, Ramapough will be, and in fact are being, irreparably harmed.

## Count III

"Substantive Due Process"
United States Constitution, First and Fourteenth Amendments
42 U.S.C. § 1983
(Defendant Mahwah, John Does)

83.    Plaintiffs include all allegations in this complaint as if fully stated in this count.

84.    The Fourteenth Amendment to the United States Constitution says "[n]o State shall deprive any person of life, liberty, or property, without

due process of law." *United States Constitution, Amendment XIV, Section 1.*

85.    The doctrine of substantive due process prohibits deprivation of a property interest for improper motives and by means that are pretextual, arbitrary, capricious and without rational basis.

86.    Ramapough have a right to be free of discrimination based on race and religion and a valid property interest in a benefit entitled to constitutional protection.

87.    Defendants have acted under color of State Law to deprive Ramapough of their rights, privileges or immunities secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

88.    Defendants Geri Entrup and Thomas Mulvey have individually executed orders and actions to stop Ramapough assembly and prayer, among other acts, in contravention to Ramapough's constitutionally guaranteed civil rights.

89.    Defendants Mahwah and the Polo Club's actions were motivated by the intent to interfere with Plaintiff's civil rights, and defendants and their agents were at all times aware that they were acting in violation of federal laws.

90.     Defendants have infringed upon Ramapough's property interests in a manner that is arbitrary or irrational and/or based upon no legitimate reason or rational interpretation of the law.

91.     Defendants' actions were so outrageously arbitrary, conscience shocking or oppressive as to constitute a gross abuse of governmental authority.

92.     As a result of these actions, Ramapough continue to be grossly and excessively charged with summonses and fined $ 12,500 per day. Ramapough will seek damages in an amount double to those fines that defendants seek to illegally impose and/or an amount to be determined at trial.

93.     As a result of these actions and unless defendants are enjoined from continuing to issue unlawful summonses in connection therewith, Ramapough will be irreparably harmed.

## Count IV

"Procedural Due Process"
United States Constitution, First and Fourteenth Amendments
42 U.S.C. § 1983(Defendant Mahwah, John Does)

94.     Plaintiffs include all allegations in this complaint as if fully stated in this count.

95.    The Fourteenth Amendment to the United States Constitution says "[n]o State shall deprive any person of life, liberty, or property, without due process of law." *United States Constitution, Amendment XIV, Section 1.*

96.    The doctrine of procedural due process prohibits deprivation of a constitutionally protected property or liberty interest for improper motives without adequate process.

97.    Ramapough have a right to be free of discrimination based on race and religion and a valid property interest in land at 95 Halifax Road which is also a benefit entitled to constitutional protection.

98.    Defendants have acted under color of State Law to deprive Ramapough of their rights, privileges or immunities secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

99.    Defendants Geri Entrup and Thomas Mulvey have individually executed orders and actions to stop Ramapough assembly and prayer, among other acts, in contravention to Ramapough's constitutionally guaranteed civil rights.

100.   Defendant Mahwah's town engineer, Michael Kelly, sent a letter to Ramapough purporting to rescind a 2012 permit for religious use and an

earlier configuration of the Prayer Circle *sua sponte* and without notice or hearing.

101.   Defendants Mahwah and the Polo Club's actions were motivated by the intent to interfere with Plaintiff's civil rights, and defendants and their agents were at all times aware that they were acting in violation of federal laws.

102.   Defendants have infringed upon Ramapough's property interests in a manner that is arbitrary or irrational and/or based upon no legitimate reason or rational interpretation of the law.

103.   Defendants are acting unilaterally without court sanction or order in what they term "self help" which is, in reality, vigilante behavior.

104.   Defendants' actions, in addition to being so outrageously arbitrary, conscience shocking or oppressive as to constitute a gross abuse of governmental authority, are also an unfair deprivation of property in violation of Ramapough's rights to procedural due process.

105.   As a result of these actions, Ramapough continue to be grossly and excessively charged with summonses and fined $ 12,500 per day. Ramapough will seek damages in an amount double to those fines that

defendants seek to illegally impose and/or an amount to be determined at trial.

106.  As a result of these actions and unless defendants are enjoined from continuing to issue unlawful summonses in connection therewith, Ramapough will be irreparably harmed.

## Count V

"Substantial Burdens"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. §2000cc(a)

(Defendants Mahwah, Polo Club, John Does)

107.  Plaintiffs include all allegations in this complaint as if fully stated in this count.

108.  The Religious Land Use and Institutionalized Persons Act prohibits substantial burdens being placed on Ramapough religious exercise by prohibiting defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." *42 U.S.C. § 2000cc(a)*.

109.  Defendants coercive actions in impeding Ramapough's exercise of religion in the form of prayer, or to even assemble, constitute

the imposition or implementation of a land use regulation in a manner substantially burdening religious exercise within the meaning of RLUIPA, *42 U.S.C. § 2000cc(a)(1)*.

### Count VI

"Equal Terms"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(1)

110.   The Religious Land Use and Institutionalized Persons Act prohibits discrimination and exclusion of Ramapough regarding land use regulations by prohibiting defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *42 U.S.C. § 2000cc(b)(1)*.

111.   Defendants coercive actions in impeding Ramapough's exercise of religion in the form of prayer, or to even assemble, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation in a manner treating Ramapough on less equal terms as prohibited by RLUIPA, *42 U.S.C. § 2000cc(b)(1)*.

112. Defendants' actions as described above do not further a compelling government interest nor would they be the least restrictive means of furthering such interest.

## Count VII

"Nondiscrimination"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(2)

113. The Religious Land Use and Institutionalized Persons Act prohibits discrimination and exclusion regarding land use regulations by prohibiting defendant Mahwah from discriminating against Rampough by "impos[ing] or implement[ing] any land use regulation in a manner that treats a religious assembly or institution on less than equal terms." *42 U.S.C. § 2000cc(b)(2)*.

114. Defendants coercive actions in impeding Ramapough's exercise of religion in the form of prayer, or to even assemble, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation in a manner treating Ramapough on less equal terms.

## Count VIII

"Exclusion and Limits"

Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(3)(A)

115.   The Religious Land Use and Institutionalized Persons Act prohibits exclusion of Ramapough from Mahwah, and in particular access to the Ramapo River, regarding land use regulations by prohibiting defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in a manner that totally excludes religious assemblies from a jurisdiction or unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." *42 U.S.C. § 2000cc(b)(3)(A) and (B).*

116.   Defendants attempts to forcibly remove Ramapough from the land and coercive actions in impeding Ramapough's exercise of religion in the form of prayer, to prohibit prayer, or to even assemble, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation that totally excludes religious assemblies from a jurisdiction and unreasonably limits religious assemblies, institutions or structures as prohibited by RLUIPA, 42 U.S.C. § 2000cc(b)(3)(A) and (B).

## Count IX

"Forced Evictions"
United Nations, Organization of American States Treaties

(Defendants Mahwah, Polo Club, John Does)

117.   Plaintiffs include all factual allegations in this complaint as if fully stated in this count.

Defendants actions to remove Ramapough from 95 Halifax Road, sacred practice, and sacred sites constitute human rights violations guaranteed by international agreements and covenants including forced evictions.

118.   Forced evictions violate, directly and indirectly, the full spectrum of civil, cultural, economic, political and social rights guaranteed under international instruments administered by the United Nations and the Organization of American States including:

A.   The right to life (International Covenant on Civil and Political Rights, art. 6.1).

B.   Freedom from cruel, inhuman and degrading treatment (ibid., art. 7) • The right to security of the person (ibid., art. 9.1).

C.   The right to an adequate standard of living, including the right to adequate housing, food, water and sanitation (International Covenant on Economic, Social and Cultural Rights, art. 11, and related Human Rights Council resolutions).

D.    The right to non-interference with privacy, home and family
      (International Covenant on Civil and Political Rights, art. 17).

E.    Freedom of movement and to choose one's residence (ibid.,
      art. 12.1).

F.    The right to health (International Covenant on Economic, Social
      and Cultural Rights, art. 12).

G.    The right to an effective remedy (International Covenant on Civil
      and Political Rights, arts. 2.3 and 26).

H.    The right to property (Universal Declaration of Human Rights,
      art. 17).

I.    The rights to vote and take part in the conduct of public affairs
      (International Covenant on Civil and Political Rights, art. 25).

**COUNT X**

Nuisance
(Polo Club)

119. Plaintiffs include all allegations in this complaint as if fully stated
in this claim.

120. Defendant Polo Club has unreasonably invaded, used and monitored land and property of Ramapough resulting in significant harm to plaintiff.

## COUNT XI

### Declaratory Judgment
### (All Defendants)

121.  Plaintiffs include all allegations in this complaint as if fully stated in this claim.

122.  Defendants take the position that Ramapough can be unilaterally prohibited from praying on Ramapough land without a court order. This includes the imposition of crippling and confiscatory fines and even "actual enforcement" meaning physically blocking coming onto the land and forcing Ramapough to dismantle and remove sacred religious structures.

123.  Defendants Mahwah and their agents including defendants Entrup, and Mulvey have acted on that position by issuing fines totalling $12,500 per day.

124.  Defendant Polo Club's members Kathleen and Charles Murray has demanded that Mahwah remove Ramapough from Ramapough private

property at 95 Halifax Road, police action, and even send Ramapough to jail, including urging the fabrication of laws *ex post facto* if necessary to to do so.

125.   Defendant Polo Club's agent John Lamb has signed verified affidavits claiming that Ramapough have no special attachment to Ramapough private land at 95 Halifax Road and have property elsewhere in Mahwah to use for religious purposes. This assertion is false, ignores historical ties, and ignores the fact that it is the only property that gives Ramapough access to the Ramapo River.

126.   By virtue of the acts identified in this complaint, there now exists an actual, justiciable controversy between Plaintiffs and Defendants relating to their respective rights, duties, and obligations, which controversy is ripe for adjudication pursuant to 28 U.S.C. § 2201.

127.   Declaratory relief will settle the legal issues between the parties set forth in the above-referenced letters and matters, and finalize the controversies described in those matters.

128.   Plaintiffs request a declaratory judgment:

A.   Prohibiting defendants Mahwah and the Polo Club from taking or forcing a sale of land through the issuance of complaints and summonses.

B.   Nullifying and voiding Mahwah's use of cumulative fines prohibiting prayer and coercive action to force removal of sacred altar, sacred prayer circle or force a sale of land.

C.   Declaring that the Ramapough and friends have the right to assemble and to engage in open air prayer at 95 Halifax Road on the Ramapo River.

D.   Prohibiting defendants Mahwah and agents Entrup and Mulvey, and defendant Polo Club and its agents from issuing legal process to prohibit open air prayer and tear down sacred sites.

E.   Prohibiting Defendants from acting jointly or individually, including such agents as the Polo Club law firm Beattie Padovano firm and the Polo Club public relations firm the JPR Group, regarding any course of action with the intent of dispossessing Ramapough from land including

contacting allies or associates of Ramapough or

retribution against such allies.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs respectfully demand judgment against

Defendants as follows:

A.   An order enjoining defendants Entrup and Mulvey from issuing

process from defendant Mahwah imposing cumulative fines and

engaging in discriminatory enforcement regarding cultural

assembly and religious assembly including open air prayer.

B.   An order enjoining defendants from seeking to force the

removal of Ramapough's sacred altar.

C.   An order enjoining defendants from seeking to force the

removal of Ramapough's sacred prayer circle.

D.   Annulment of cumulative fines currently sought by defendant

Mahwah based on Mahwah's April 24, 2018 letter and related

summonses.

D.   Awarding the costs of this action, including reasonable

attorney's fees pursuant to 42 U.S.C. § 1988; and

E.   Awarding compensatory and punitive damages in an amount equal to two times the cumulative fines sought by defendant Mahwah as of the date that a trial date is set; and

F.   Awarding such other and further relief as this Court deems appropriate.

The Plaintiffs demand a trial by jury of all issues for which Plaintiffs are entitled to such a jury trial.

_____//S//_____

Valeria A. Gheorghiu, No. 042912007
Law Office of Valeria A. Gheorghiu
113 Green Street, Ste. 2
Kingston, NY 12401
(914) 772-7194 (phone)
Dated:        May 14, 2018      valerialexiag@gmail.com