# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., <br><br> and <br><br> RAMAPOUGH LENAPE NATION, <br><br>     *Plaintiffs* <br><br>     v. <br><br> TOWNSHIP OF MAHWAH, <br><br> RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., <br><br> GERALDINE ENTRUP, <br><br> THOMAS MULVEY, <br><br> JOHN and JANE DOES 1 THROUGH 14, <br><br> JOHN DOE ENTITIES 1 AND 2 <br><br>     *Defendants* | Civil Action <br> No. 2:18-cv-09228 (CCC)(JBC) <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF RAMAPOUGH'S APPLICATION FOR AN ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS** |

Valeria A. Gheorghiu, No. 042912007
Law Office of Valeria A. Gheorghiu
113 Green Street, Ste. 2
Kingston, NY 12401
(914) 772-7194

*Attorney for Plaintiffs Ramapough Mountain Indians, Inc., and Ramapough Lenape Nation*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES   ............................................................... iii

PRELIMINARY STATEMENT ..............................................................1

FACTS.............................................................................................1

ARGUMENT .....................................................................................7

I.    RAMAPOUGH NEED PRELIMINARY RELIEF TO PROTECT
      CONSTITUTIONAL RIGHTS FROM ACTUAL AND THREATENED
      HARM BY  DEFENDANTS ..........................................................7

      A.    Ramapough Are Likely to Succeed on the Merits .............................8

      B.    Ramapough are Threatened With Irreparable Harm......................15

      C.    The Potential Harm To Ramapough Outweighs The Harm To
            Defendants .......................................................................18

      D.    Granting of the Injunction Will Serve the Public Interest .................19

      E.    Ramapough Should Not Be Required to Post a Bond ....................20

CONCLUSION..................................................................................21

CERTIFICATE OF SERVICE..............................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhi Parasakthi Charitable v. Twp. of W. Pikeland,*
   721 F. Supp. 2d 361 (Eastern District of Pennsylvania 2010)..................12

*Al Falah Ctr. v. Twp. of Bridgewater,*
   2013 U.S. Dist. LEXIS 190076 (District of New Jersey 2013) ...... 16, 17, 19

*Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.,*
   270 F. Supp. 2d 633 (Eastern District of Pennsylvania 2003)..................15

*Church of Lukumi Babalu Aye v. City of Hialeah,*
   508 U.S. 520 (1993) ..................................................................... 11, 13, 14

*Congregation Kol Ami v. Abington Twp.,*
   2004 U.S. Dist. LEXIS 16397.....................................................................8

*Conroe Creosoting Co. v. Montgomery County,*
   249 F.3d 337 (5th Cir. 2001).....................................................................15

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency,*
   218 F. Supp. 2D 1203 (Central District of California 2002) ..................... 11

*Council of Alternative Political Parties v. Hooks,*
   121 F.3d 876 (3rd Cir. 1997).....................................................................20

*Doe v. Vill. of Mamaroneck,*
   462 F. Supp. 2d 520 (SDNY 2006) ...........................................................12

*E. Hill Synagogue v. City of Englewood,*
   240 Fed. Appx. 938 (3rd Cir. 2007)..............................................................9

*Elrod v. Burns,*
   427 U.S. 347 (1976) ..................................................................................16

*Fifth Ave. Presbyterian Church v. City of New York,*
   293 F.3d 570  (2nd Cir. 2002)..............................................................10, 11

*Grove Press, Inc. v. Philadelphia,*
   418 F.2d 82 (3rd Cir. 1969) ...................................................................... 10

*Harbor Missionary Church Corp. v. City of San Buenaventura,*
   642 Fed. Appx. 726 (9th Cir. 2016)...........................................................10

iii

*Highmark, Inc. v. Upmc Health Plan,*
    276 F.3d 160 (3rd Cir. 2001) .................................................................... 7

*Hope Rising Cmty. Church v. Municipality of Penn Hills*,
    2015 U.S. Dist. LEXIS 160852 (Western District of Pennsylvania 2015) . 17

*Islamic Soc'y of Basking Ridge v. Twp. of Bernards,*
    226 F. Supp. 3D 320 (District of New Jersey 2016) ............................ 9, 14

*Jehovah's Witnesses Assembly Halls, Inc. v. Jersey* City,
    597 F. Supp. 972 (District of New Jersey 1984) ...................................... 19

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    670 F.3d 236, 256 (3d Cir. 2011) ............................................................ 16

*Mitchum v. Foster,*
    407 U.S. 225 (1972) ................................................................................ 10

*NAACP v. Ala. ex rel. Patterson,*
    357 U.S. 449 (1958) ................................................................................ 14

*Opulent Life Church v. City of Holly Springs Miss.*,
    697 F.3d 279 (5th Cir. 2012) ................................................................... 10

*Oxford House-Evergreen v. Plainfield*,
    769 F. Supp. 1329 (District of New Jersey 1991) ............................... 16, 19

*Salvation Army v. Department of Community Affairs,*
    919 F.2d 183 (3rd Circuit 1990) .......................................................... 14, 15

*Tenafly Eruv Ass'n v. Borough of Tenafly,*
    309 F.3d 144 (3rd Cir. 2002), *cert. den.* 539 U.S. 942 (2003) ........... 19, 20

*Willowbrook v. Olech,*
    528 U.S. 562 (2000) ................................................................................ 12

*Yick Wo v. Hopkins,*
    118 U.S. 356 (1886) ................................................................................ 12

*Zambelli Fireworks Mfg. Co. v. Wood ,*
    592 F.3d 412, 426 (2010) ........................................................................ 20

**Other Authorities**

Desmond C.B. Lyons, *Building the Pyramid: The Use of Cumulative*
    *Penalties in Municipal Prosecutions*,
        36 Westchester B.J. 38 (2009)......................................................7, 8

National Congress of American Indians Resolution No, MKE-17-066,
    *Support for the Ramapough Lenape Nation to Protect Lands, Waters,*
    *Burial Grounds and Sacred* Places .......................................................... 6

Press Release, New Jersey Office of Attorney General, *Attorney General*
    *Porrino Announces State Lawsuit Charging Mahwah Township Council*
    *with Excluding Orthodox Jews* ................................................................. 6

**Rules**

Fed. R. Civ. P. 65 ....................................................................................1

Fed. R. Civ. P. 65(c) ...............................................................................20

L. Civ. R. 65............................................................................................1

**PRELIMINARY STATEMENT**

Plaintiffs Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation ("Ramapough"), by and through counsel, respectfully submit this memorandum of law pursuant to Fed. R. Civ. P. 65 and L. Civ. R. 65.1 in support of Ramapough's application for a temporary restraining order and preliminary injunction restraining the defendant Township of Mahwah ("Mahwah") from assessing daily fines, instituting or continuing civil or criminal legal process, or engaging in self-help intended to burden or end Ramapough's religious practices and freedom of association, and further restraining defendant Ramapo Hunt & Polo Club ("Polo Club") from utilizing the "private warrant" process or providing financial and legal support and services to defendant Mahwah in support of these bad faith ends.

**FACTS**

On April 24th, 2018, defendant Mahwah, with the active support and encouragement of defendant Polo Club, started to impose coercive and excessive fines on a daily basis retroactive to March 29th, 2018 in order to prohibit Ramapough from gathering on Ramapough private land at 95 Halifax Road, Mahwah, NJ in prayer, or even assembly. (Mahwah April 24th Demand Letter, Ex. A). By letter of that date, Mahwah also seeks the immediate destruction and removal of Ramapough's Stone Altar and

1

Prayer Circle consisting of large logs with masks at Ramapough land. *Id*. As of the date of this filing, Mahwah has issued at least four hundred and eighty (480) outstanding summonses for violation of the local municipal code seeking a maximum of six hundred thousand dollars ($600,000.00) with a return date of June 14th, 2018 in the Mahwah municipal court. (Mahwah Letters Re: Summonses for April and May, Ex. B) (First set of ten summonses alleging daily violations for each weekday from March 29 to April 26, Ex. C).

Mahwah issued these current alleged violations despite decades of gatherings of Ramapough with friends and allies and centuries of use. The facts documenting religious use, assembly, and sacred space are as stated in Ramapough's Verified Complaint and in the declarations submitted herewith of   Chief Dwaine Perry of the Ramapough Lenape Nation describing the historical and present use of Ramapough's land and water at 95 Halifax Road, Mahwah, NJ and Karenna Gore of the Center for Earth Ethics on the ecumenical nature of the current use. (Verified Complaint) (Chief Perry Declaration, Ex. D) (Karenna Gore Declaration, Ex. E).

The Ramapough are the descendants of the original people of Manhattan and the Ramapo Valley. (Ex. D Chief Perry Declaration, ¶ 2). Ramapough have lived and conducted ceremonies in Mahwah generally,

2

and at the land and river at 95 Halifax Road specifically, for centuries up to and including the present era.[1] (Ex. D Chief Perry Declaration, ¶ 6). The name "Mahwah" from which defendant Mahwah takes its name is a Ramapough Munsee word meaning "meeting place" which is where the Ramapo River and Mahwah River converge. (Ex. D Chief Perry Declaration, ¶ 7).

In the Fall of 2016, Ramapough, people from other indigenous nations, churches, faiths, universities, and environmentalists, and other walks of life, came together and started the Split Rock Sweetwater Prayer Site at 95 Halifax Road ("Prayer Site") established out of concern for the expansion of fossil fuel infrastructure and pipelines, global climate change, and water pollution. (Ex. E Karenna Gore Declaration, ¶ 4). Ceremonies and meetings at the Prayer Site are held out in the open and are consistent with indigenous practice of the lands and waters, in and of themselves, as prayer space. (Ex. E Karenna Gore Declaration, ¶ 7, 8). The Stone Altar consists of large and small stones laid down with the prayers of Ramapough and visitors and the Prayer Circle consisting of logs with masks ("Mesingws") as a ceremonial, open air, gathering space. (Ex. E Karenna Gore Declaration, ¶ 6, 7).

---

[1] See declaration's historical map designation as "Indian Camp and Grave."

After decades of peaceful uses of the Prayer Site for Ramapough's religious practice and for gatherings of the Ramapough tribe, Plaintiffs' neighbors in the private Polo Club housing association decided that the presence of Ramapough Indian people was no longer welcome, and began an urgent and over-the-top campaign to end virtually any group use of the Prayer Site. "If that zoning permit had not been issued, we would not be here. And that is not even counting lost property value that we [Polo Club members] have all suffered." (Polo Club resident Kathleen Murray, Mahwah Town Council Meeting, February 22, 2018. Tr. 35:3-6, Ex I).

The Polo Club has enlisted the town of Mahwah as a willing partner in a series of attacks on Plaintiffs' constitutional rights, which has now included the daily assessment of fines now totaling a maximum of over a half million dollars, civil litigation seeking injunctive relief against Plaintiffs' use of its own property, and private criminal warrants charging two representatives of the Ramapough with endangering property for turning the viewpoint of one camera (of seven) sideways retaining the same view placed by the Polo Club on a bridge used by both groups, with Polo Club Trustee alleging property destruction.   In   2012,   Mahwah   explicitly recognized Ramapough use of the land for prayer and cultural assembly as well as the logs with masks: "Longhouse to be used for prayer and

4

community cultural assembly." (Ramapough 2012 Zoning Permit, Ex. F). In response to pressure from the Polo Club, Mahwah illegally and unilaterally purported to rescind the 2102 zoning permit endorsing religious group use of the Prayer Site, without notice to Plaintiffs or an opportunity to be heard.

The Polo Club has provided legal counsel and services to the Town of Mahwah in support of this effort, including sending lawyers who openly participated in litigation to which the Polo Club was not a party.

The Ramapough have been subjected to a campaign of harassment, including gunshots in the night, lasers pointed at them, constant surveillance by camera of the Prayer Site, threats and the shouting of racial insults. (Affidavit of Muriyd "Two Clouds" Williams, Ex. J).

Polo Club residents have told Mahwah that if existing laws are not sufficient to end use of the Prayer Site, new laws should be passed, have asked for people to be thrown in jail, and that the fines should be used to bankrupt the Ramapough so that the Prayer Site can be foreclosed by the Town. (Polo Club Murray Tr. 45:24-25, 46:1-6, 51:15-25, 52:1-9, Ex K).

Less than one year ago, the New Jersey Attorney General also filed a complaint against Mahwah for religious persecution and deprivation of Civil Rights and publicly rebuked Mahwah for racially discriminatory behavior regarding sacred space. "'To think that there are local governments here in

New Jersey, in 2017, making laws on the basis of some archaic, fear-driven and discriminatory mindset, is deeply disappointing and shocking to many, but it is exactly what we are alleging in this case.'" Press Release, New Jersey Office of Attorney General, *Attorney General Porrino Announces State Lawsuit Charging Mahwah Township Council with Excluding Orthodox Jews.*[2] (NJ Attorney General Press Release, Ex. G).

The National Congress of American Indians (NCAI), one of the United States leading inter-tribal organizations with over six hundred federally and state recognized tribes, submitted a resolution against the use of fines to dispossess Ramapough of land and in support of the Ramapough's quest to keep Ramapough land open for prayer and assembly and as a major sacred site in the face of Mahwah and the Polo Club's relentless onslaught. ("Support for the Ramapough Lenape Nation to Protect Lands, Waters, Burial Grounds and Sacred Places," NCAI Res. No. MKE-17-066, Ex. H).

Plaintiffs ask for the Court's protection against Mahwah's end run around the United States Constitution in a highly illegal effort to interfere with their First Amendment religious and associational practices on their land.

---

[2] http://nj.gov/oag/newsreleases17/pr20171024a.html

# ARGUMENT

## I.  RAMAPOUGH NEED PRELIMINARY RELIEF TO PROTECT CONSTITUTIONAL RIGHTS FROM ACTUAL AND THREATENED HARM BY  DEFENDANTS

The Third Circuit has adopted a four part standard for issuance of a preliminary injunction: "(1) a likelihood of success on the merits of the underlying petition; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the moving party outweighs the harm to the opposing party if a stay is not granted; and (4) that the granting of the stay would serve the public interest", *Douglas v. Ashcroft,* 374 F.3d 230 (3rd Cir. 2004); *Highmark, Inc. v. Upmc Health Plan,* 276 F.3d 160 (3rd Cir. 2001).

Mahwah's issuing four hundred and eighty (480) summonses demanding a maximum of six hundred thousand ($600,000.00) seeking to use local zoning to prohibit well established activity at an indigenous sacred site is an extreme misuse of a well-known municipal land use tool sometimes referred to as "pyramiding" to enforce compliance with zoning codes through cumulative fines which in this case, given the amount of fines and lack of resources of the Ramapough, could ultimately result in loss of the property. Desmond C.B. Lyons, *Building the Pyramid: The Use of Cumulative Penalties in Municipal Prosecutions*, 36 Westchester B.J. 38

(2009).  Mahwah is using this technique to force Ramapough to stop open air prayer, assembly, and use of sacred sites interpreting and applying local land use law in violation of federally guaranteed Constitutional and Civil Rights.

### A.    Ramapough Are Likely to Succeed on the Merits

Ramapough   have extremely strong RLUIPA, First Amendment freedom of exercise and of association, due process, and equal protection claims.

Plaintiffs are likely to succeed on the merits of their RLUIPA claim. The passage of RLUIPA has substantially extended the protection available to religious entities seeking to buy, use, or convert real estate for their religious practices. The District Court held in *Congregation Kol Ami v. Abington Twp.,* 2004 U.S. Dist. LEXIS 16397 (Eastern District of Pennsylvania 2004), involving a town's denial of permission for use of a structure as a synagogue:   "Evaluating the instant case with the understanding that the RLUIPA changed the standard for the type of burdens on free exercise that are actionable, and under the case law applying this definition, it is clear that the Ordinance and the denial of a variance to the Plaintiffs are substantial burdens on their free exercise rights. This case is precisely the type of case contemplated by the drafters

in their definition of free exercise under the RLUIPA. Under the statute, developing and operating a place of worship at 1908 Robert Road *is* free exercise. There can be no reasonable dispute that the Ordinance and the denial of the variance, which have effectively prevented the Plaintiffs from engaging in this 'free exercise,' create a substantial burden within the meaning of the Act". In *Islamic Soc'y of Basking Ridge v. Twp. of Bernards,* 226 F. Supp. 3D 320 (District of New Jersey 2016), involving unreasonable parking requirements imposed on a mosque: "Defendants unambiguously treated ISBR's application to build a Muslim mosque differently than applications for Christian churches and Jewish synagogues. Regardless of whether the intent focused on the denomination of the structure being built or the denomination of the congregation, the focus of the intent inquiry remains the disparate application of the Parking Ordinance based on religious affiliation. As established above, Defendants' application of the Parking Ordinance reflects sufficient intent to discriminate on the basis of religion." In *E. Hill Synagogue v. City of Englewood*, 240 Fed. Appx. 938 (3rd Cir. 2007), the Third Circuit reversed a Rooker-Feldman dismissal and allowed an RLUIPA case to proceed where neighbors of a synagogue were "seeking to block East Hill's practice of hosting large, post-Bar Mitzvah Kiddush celebrations in tents erected in the parking area".

9

Federal courts have routinely granted preliminary injunctions in RLUIPA cases, *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012); *Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570 (2nd Cir. 2002); *Harbor Missionary Church Corp. v. City of San Buenaventura*, 642 Fed. Appx. 726 (9th Cir. 2016).

Plaintiff is entitled to a temporary restraining order and preliminary injunction staying the pending state proceedings until a determination of the merits in this action. The instant case fits within several recognized exceptions to the Anti-Injunctions Act. First, it is a Section 1983 action, *Mitchum v. Foster,* 407 U.S. 225 (1972). Secondly, injunctions may be granted against state proceedings where fundamental constitutional rights are chilled by the state action. "[F]ederal intervention is proper under special circumstances where the utilization of state procedures may itself chill the very constitutional right sought to be protected.....[H]arassment caused by bad faith enforcement of a valid state law by state officers for the purpose of abridging free expression [is] deemed sufficient to merit federal interference", *Grove Press, Inc. v. Philadelphia,* 418 F.2d 82 (3rd Cir. 1969). Third, RLUIPA itself has been held to support a stay against state proceedings, in that it "allows any person suing under RLUIPA to obtain 'appropriate relief.' The 'appropriate relief' [in this case is] an

injunction", *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency,* 218 F. Supp. 2D 1203 (Central District of California 2002)."

Plaintiff is also likely to succeed on the merits under a First Amendment free exercise of religion analysis. "Government enforcement of laws or policies that substantially burden the exercise of sincerely held religious beliefs is subject to strict scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice  must advance interests of the highest order and must be narrowly tailored in pursuit of those interests", *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570  (2nd Cir. 2002) (quotes and cites omitted). " At a minimum, the protections of the Free Exercise Clause pertain  if the law at issue discriminates against some or all religious beliefs or regulates or  prohibits conduct because it is undertaken for religious reasons", *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993). "Plaintiff's desired conduct of worshiping on the premises and holding religious festivals on the property does constitute expressive speech. The act of worshiping is an important part of an individual's life, and one that inherently communicates something to others about that individual's views on society, life, and other more philosophical subjects. Even if conducted in a secluded area, the use of the land as a place of worship allows an individual's conduct to

communicate these thoughts with other members of the congregation. Further, the holding of festivals allows for the communication to extend to even more members and increases the likelihood that this conduct will be noticed by, and thereby communicated to, the surrounding community", *Adhi Parasakthi Charitable v. Twp. of W. Pikeland,* 721 F. Supp. 2D 361 (Eastern District of Pennsylvania 2010).

Plaintiffs also have shown a likelihood of success on the merits of their Fourteenth Amendment equal protection claims.  Government actions which are apparently facially neutral, but are actually applied in a discriminatory fashion to chill activity by certain groups, are unconstitutional as applied,  *Yick Wo v. Hopkins,* 118 U.S. 356 (1886) (San Francisco ordinance purportedly regulating laundries was only enforced against Chinese citizens); *Willowbrook v. Olech,* 528 U.S. 562 (2000) (defendant has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); *Doe v. Vill. of Mamaroneck,* 462 F. Supp. 2d 520 (SDNY 2006)  (village's extremely selective enforcement of its park regulations only to exclude suspected Latino day laborers looking for work, while permitting identical "loitering" by residents who did not appear to be Latino, was unconstitutional). The Supreme Court followed an equal protection analysis in *Church of Lukumi*

*Babalu Aye, supra:* "[N]eutrality in its application requires an equal protection mode of analysis. Here, as in equal protection cases,  we may determine   the city council's object from both direct and circumstantial evidence.....  That the ordinances were enacted 'because of,' not merely 'in spite of,' their suppression of Santeria religious practice,  is revealed by the events preceding their enactment..... The minutes and taped excerpts of the June 9 session, both of which are in the record, evidence significant hostility exhibited by residents, members of the city council, and other city officials toward the Santeria religion and its practice of animal sacrifice. The public crowd that attended the June 9 meetings interrupted statements by council members critical of Santeria with cheers and the brief comments of Pichardo with taunts.... The ordinances had as their object the suppression of religion." Where, as in  *Church of Lukumi Babalu Aye, supra,* a plaintiff is able to show evidence of express discrimination, evidence of comparators is not required. "Generally, the Third Circuit requires similarly situated comparators under RLUIPA's Nondiscrimination Provision. Where a government expressly discriminates on the basis of religion, however, the Nondiscrimination Provision does not require a showing of similarly situated comparators. The instant case presents an example of express discrimination, thus precluding the need to identify specific comparators,"

13

*Islamic Soc'y of Basking Ridge v. Twp. of Bernards, supra.* Plaintiffs' affidavits in support of the preliminary injunction motion contain substantial evidence, similar to that in *Church of Lukumi Babalu Aye,* of public prejudice and hatred, urging the Town on to its enforcement actions. Under the circumstances, Plaintiffs are likely to succeed on the merits of an equal protection claim without showing comparators.

Plaintiff also is likely to succeed on the merits on its freedom of association claim. As the Supreme Court stated in *NAACP v. Ala. ex rel. Patterson,* 357 U.S. 449 (1958): "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny"; see also *Salvation Army v. Department of*

*Community Affairs,* 919 F.2d 183 (3rd Circuit 1990) ("[S]trict scrutiny is to be applied to infringements on the freedom of association for free speech purposes even when the challenged action is not specifically directed to the exercise of that right"). Because of the Township's abuse of land use laws and reinstatement of excessive summons despite pending appeals, Plaintiff no longer has access to its ceremonial land for purposes of free association - for advocacy of its viewpoints regarding the environment, cultural practices and prayer, and their interrelatedness.

Plaintiff has a likelihood of success on the merits on its substantive due process claim. Where a state official deprives a corporation of its property in a manner that 'shocks the conscience,' substantive due process may be violated", *Conroe Creosoting Co. v. Montgomery County,* 249 F.3d 337 (5th Cir. 2001); *Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.,* 270 F. Supp. 2D 633 (Eastern District of Pennsylvania 2003). Here, the "pyramiding", crushing financial sanctions, driven by the insensate outcry of the Polo Club neighbors for the elimination of the Ramapough from the property next door, "shock the conscience" adn establish a violation of substantive due process.

## B.    Ramapough are Threatened With Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of

15

time, unquestionably constitutes irreparable injury", *Elrod v. Burns*, 427 U.S. 347 (1976). "[A]n alleged deprivation of constitutional rights is tantamount to irreparable harm in the RLUIPA context because RLUIPA enforces First Amendment freedoms and must be construed broadly to protect religious exercise", *Al Falah Ctr. v. Twp. of Bridgewater,* 2013 U.S. Dist. LEXIS 190076 (District of New Jersey 2013) (cites and quotes omitted). Far beyond the mere speech impact, as punishment for their religious practices, Plaintiffs are faced with crippling fines which may well lead to the loss of the property to foreclosure. The potential loss of a property is of course irreparable harm, *Oxford House-Evergreen v. Plainfield*, 769 F. Supp. 1329 (District of New Jersey 1991) ("plaintiffs face irreparable injury from eviction, both due to loss of the house and loss of their supportive and stable living environment").  "[W]here interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest", *Al Falah Ctr. supra,* citing *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011).

"Under RLUIPA, once a religious institution has demonstrated that its religious exercise has been substantially burdened, the burden of proof shifts to the municipality to prove that it acted in furtherance of a compelling

governmental interest and that its action is the least restrictive means of furthering that interest", *Al Falah Ctr. supra.* Defendants will not be able to show any compelling government interest underlying their rush to bankrupt Plaintiffs and seize their land, their use of crippling fines, private warrants, and secretly rescinded zoning grants—nor, of course, that any of these measures was the "least restrictive" way of addressing any actual, non-racist issues regarding Plaintiffs' uses of their land. The burden is on Defendants to show that it considered and rightly rejected less restrictive alternatives, which Defendant will be unable to do, *Al Falah Ctr, supra* ("It is not clear what, if any, alternative means the Township considered before expeditiously passing Ordinance 11-03. Accordingly, Plaintiff has demonstrated a likelihood of success on the merits as it relates to its claim under RLUIPA of a substantial burden being imposed on religious exercise"). "The Church has shown it was denied its right to congregate, and that its congregation has substantially declined since not being able to worship at the Frey Road building, it has therefore adequately shown irreparable harm", *Hope Rising Cmty. Church v. Municipality of Penn Hills*, 2015 U.S. Dist. LEXIS 160852 (Western District of Pennsylvania 2015), *adopted by* 2015 U.S. Dist. LEXIS 160148 (Western District of Pennsylvania 2015).

Defendant Mahwah has substantially burdened Ramapough use and use of sacred sites on Ramapough land by private deed by the Ramapo River through threat, intimidation, and illegal acts. Mahwah claims the right to engage in "actual enforcement" with or without court order and starting on April 24th, retoractive to March 29th, has issued almost five hundred (500) summonses related to Ramapough's Stone Altar, Prayer Circle, prayer and even assembly. (Ex. D Chief Perry Declaration, ¶ 59, 60).

### C.   The Potential Harm To Ramapough Outweighs The Harm To Defendants

There will be absolutely no harm to Defendants from the grant of the requested preliminary injunction, as the Defendants have no right whatever to utilize unconstitutional and illegal measures to harass and harm Plaintiffs in their religious practices, enjoyment of their own property,  and rights of association. Also, as far as the fines are concerned, even if rightly assessed, these constitute a relatively nominal percentage of the municipal defendant's revenues and it can well wait for the resolution of this matter on the merits before seeking to collect them. Defendants will not be able to assert any emergent facts demanding the immediate continuation of their behavior to Plaintiffs. "Defendants have submitted affidavits setting forth complaints of the neighbors and the basis for their objections to the proposed use of OH-E. These complaints amount to speculation and

18

subjective fears, and cannot be considered by this court in determining what harm defendants will suffer", *Oxford House-Evergreen v. Plainfield,* 769 F. Supp. 1329 (District of New Jersey 1991). "Here plaintiffs seek to practice, teach and proclaim their religious beliefs using a facility they consider to be well  adapted to that purpose. The zoning Ordinance, as implemented by municipal officials, prohibits them from doing so. Absent a compelling state interest in this particular land use regulation, plaintiffs would be unlawfully deprived of an important liberty interest, a deprivation which constitutes irreparable injury", *Jehovah's Witnesses Assembly Halls, Inc. v. Jersey* City, 597 F. Supp. 972 (District of New Jersey 1984).

### D.    Granting of the Injunction Will Serve the Public Interest

The public interest is indisputably served by the protection of Plaintiff's religious, associational and human rights pending a determination on the merits. Plaintiff's allegations fall squarely within the harm Congress sought to address in enacting RLUIPA. Therefore, an injunction would further the public interest", *Al Falah Ctr. v. Twp. of Bridgewater,* 2013 U.S. Dist. LEXIS 190076 (District of New Jersey 2013). "[W]here there are no societal benefits justifying a burden on religious freedom, "the public interest clearly favors the protection of constitutional rights", *Tenafly Eruv Ass'n v. Borough of Tenafly,* 309 F.3d 144 (3rd Cir. 2002), *cert. den.* 539

19

U.S. 942 (2003). "In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights", *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876 (3rd Cir. 1997).

### E.    Ramapough Should Not Be Required to Post a Bond

The Court can waive the Fed. R. Civ. P. 65(c) bond requirement upon a showing that the nature of the action "necessarily precludes any monetary harm to the defendant" and upon specific findings justifying the exception. *Zambelli Fireworks Mfg. Co. v. Wood ,* 592 F.3d 412, 426 (2010). Ramapough and allies gathering on the land for prayer, for recreation, or assembly do no harm to defendants, monetarily or otherwise. Ramapough have been gathering on this land for millennia. The Ramapough Stone Altar and logs with masks comprising the Prayer Circle have been there for more than a decade and have caused defendants no harm. This justifies a waiver of the bond requirement.

## CONCLUSION

Ramapough's Constitutional and Religious rights are under severe attack by defendants Mahwah and the Polo Club. Each one seeks to block simple use of undeniably Ramapough land ending centuries of access and gatherings and to force the demolition and removal of sacred sites. Ramapough request a temporary restraining order to prevent defendants from violating these rights and from taking the land by coercion and force.

Ramapough Mountain Indians, Inc.
Ramapough Lenape Nation


Date: June 7, 2018          By:    /s/ Valeria A. Gheorghiu
                                   _____
                                   Valeria A. Gheorghiu, No. 042912007
                                   Law Office of Valeria A. Gheorghiu
                                   113 Green Street, Ste. 2
                                   Kingston, NY 12401
                                   (914) 772-7194
                                   valerialexiag@gmail.com

                                   *Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2018, I served the foregoing PLAINTIFF RAMAPOUGH'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER on all counsel of record for defendant Township of Mahwah using the CM/ECF system and by first-class mail, postage pre-paid, with courtesy copy by electronic mail to deborarh@debrill.com, on Deborah Brill, President of Defendant Ramapo Hunt & Polo Club.

Date: June 7, 2018          By:    /s/ Valeria A. Gheorghiu
                                   _____
                                   Valeria A. Gheorghiu, No. 042912007
                                   Law Office of Valeria A. Gheorghiu
                                   113 Green Street, Ste. 2
                                   Kingston, NY 12401
                                   (914) 772-7194
                                   valerialexiag@gmail.com

                                   *Attorney for Plaintiffs*

## **LOCAL RULE 11.2 VERIFICATION OF OTHER ACTIONS**

"I hereby certify that the following actions are related to the matter in controversy:

1.      *NJ v. Ramapo Mountain Indians, Inc.*, Mahwah Municipal Court, Case Nos. SC 2018-8762, etc. Set for initial hearing on June 14, 2018.

2.      *Mahwah v. Ramapough Mountain Indians, Inc.*, Bergen County Superior Court No. BER-L-003189-17. Pending.

3.      *Ramapo Hunt & Polo Club Association, Inc. v. Ramapough Mountain Indians, Inc. and Township of Mahwah,* Bergen County Superior Court No. BER-L-006409-17. Scheduled for trial on Monday, July 9, 2018.

4.      *NJ v. Ramapough Mountain Indians, Inc.*, No. 0233-SC-008491, etc., Appeal [Ramapough] of Municipal Court Decision. Pending.

I further certify that this information is true and correct to the best of my knowledge, information and belief under penalty of perjury pursuant to 28 U.S.C. § 1746."

Date: June 7, 2018          By:   /s/ Valeria A. Gheorghiu

_____
Valeria A. Gheorghiu, No. 042912007
Law Office of Valeria A. Gheorghiu
113 Green Street, Ste. 2
Kingston, NY 12401
(914) 772-7194
valerialexiag@gmail.com

*Attorney for Plaintiffs*