# United States District Court

## For The District of New Jersey

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., <br><br> and <br><br> RAMAPOUGH LENAPE NATION, <br><br> *Plaintiffs* <br><br> v. <br><br> TOWNSHIP OF MAHWAH, <br><br> RAMAPO HUNT & POLO CLUB ASSOCIATION, INC. <br><br> GERALDINE ENTRUP, <br><br> THOMAS MULVEY, <br><br> JOHN and JANE DOES 1 THROUGH 14, <br><br> JOHN DOE ENTITIES 1 AND 2 <br><br> *Defendants* | Civil Action No. 2:18-cv-09228 <br><br> **DECLARATION OF CHIEF DWAINE PERRY IN SUPPORT OF PLAINTIFF RAMAPOUGH LENAPE NATION** |

## DECLARATION OF CHIEF DWAINE PERRY

"I, DWAINE PERRY, declare as follows

    1.    I am the elected Chief of the Ramapough Lenape Nation (the "Ramapough").

## HISTORY OF THE RAMAPOUGH

    2.    The Ramapough are descendents of the original people of Manhattan and the Ramapo Valley.

    3.    Like all indigenous nations in the United States, the ancestors of the Ramapough were devastated by the impact of contact with European settlers. The ancestors of the Ramapough were one of the only indigenous nations in the entire country that managed to stay on their ancestral lands.

    4.    Three of these ancestral lands hold particular importance to the Ramapough. The first is the mouth of the Ramapo and Mahwah Rivers, where the Ramapough have welcomed people with shared ceremonies for millennia.

    5.    The second is the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains In the winter of 1799- 1780, the Ramapough welcomed George Washington to use the Ramapo Pass to shelter five hundred Continental Army soldiers. The

Ramapough are the Keepers of the Pass meaning guardians of the passage way.



"Remains of intrenchments the Ramapo Pass. This view is from the road, looking north toward the village of Ramapo. The remains of the intrenchments are seen along the right in the foreground. On the left, in the distance, is seen a glimpse of the hills on the other side of the narrow valley." Benson J. Lossing, *The Pictorial Field-Book of the Revolution* (New York: Harper & Brothers, 1851)II:213

6. The third is Sweet Water at 95 Halifax Road, a sacred site of immense importance to the Ramapough, where we have conducted prayer and community cultural assembly for more than two centuries. In our native language, the word "Ramapo" actually means Sweet Water. Sweet Water is located on the west side of the confluence of the Ramapo River and Halifax Creek, 95 Halifax Road in Mahwah. On a Ramsey Historical Association Map of the area as it was prior to 1800, Sweet Water is marked as "Indian Camp and Grave". Here is an inset of the map:

3



7. In about 1849, Sweet Water and the lands surrounding it were incorporated into the Township of Mahwah. The Township took its name from the word in our native language meaning "meeting place."

8. Ramapough Mountain Indians Inc. is a nonprofit organization, founded in October 1979. This organization's mission is to provide social and economic services to the people of New Jersey and New York, especially the Ramapough Mountain Indians.

9. In 1979, Assemblyman Walter Kemp and then-Assemblyman W. Cary Edwards introduced an Assembly Concurrent Resolution, to recognize the Ramapough Mountain Indians as an Indian Tribe.

10. The Concurrent Resolution passed the Assembly and Senate unanimously, and was filed with the Secretary of State in January 1980. The Concurrent Resolution states "[t]hat the

4

Ramapough Mountain People of the Ramapough mountains of Bergen and Passaic counties, descendants of the Iroquois and Algonquin nations, are hereby designated by the State of New Jersey as the Ramapough Indians."

11. Attorney General Edwards's intention in introducing the Concurrent Resolution was "to provide the Ramapough tribe with recognition by the State of New Jersey." Attorney General Edwards further certifies that the assemblymen and Senators that voted for the Concurrent Resolution "clearly understood that the resolution was intended to bestow the Ramapough with official State recognition." Id. Attorney General Edwards recalls media coverage after passage of the Concurrent Resolution, explaining that "the Senate had 'answered' the Ramapough's desire 'for official designation as a tribe…'" Id. para. 7.

## PRAYER AND COMMUNITY CULTURAL ASSEMBLY AT SWEET WATER

12. The Ramapough and Ramapough ancestors have conducted prayer and community cultural assembly at Sweet Water for more than two centuries.

5

13. Elders in our Tribe recall witnessing religious and ceremonial use of Sweet Water and the area surrounding Sweet Water for more than five decades.

14. I have personally witnessed religious ceremonies at Sweet Water for decades. During that time, we have used Sweet Water for many important religious ceremonies, including the Tobacco Ceremony, the Pipe Ceremony, the Water Ceremonies, sweat lodges, weddings, and scattering ashes of departed tribal members into the Ramapo River.

15. The Tribe conducts religious ceremonies at least twice a month in the warmer months, and slightly less often during the winter. The Tribe schedules regular sweat lodge sessions throughout the year.

16. As Chief, I regularly officiate ceremonies on Sweet Water.

17. In the Fall of 2016, Ramapough invited nations, peoples, churches and groups concerned about our environment and our water to come to our lands. Numerous other nations, peoples, and churches joined us at Sweet Water for these ceremonies. We accommodated these guests in teepees and tents until the end of 2017. The Ramapough provided portable toilets for the guests' use,

6

and uses an outdoor open-air kitchen pavilion, constructed about five years ago, to provide food. In an attempt to resolve differences with the Town of Mahwah and the Polo Club, Ramapough voluntarily removed all structures from the land leaving our Sacred Stone Altar and Prayer Circle.

18. Sweet Water is uniquely situated for our ceremonies, and irreplaceable for that purpose, for several reasons, detailed below.

19. First, Sweet Water is very close to two sites sacred to the tribe: the meeting of the Mahwah and Ramapo Rivers, and the Ramapo Pass.

20. Second, our Long House and Prayer Circle are open air prayer spaces critical to our ceremonies. They are our equivalent of a house of worship.

21. Fourth, Sweet Water is on the Ramapo River waterfront. Many of our ceremonies require access to this waterfront.

22. Fifth, there are no alternative locations that are reasonably available to the Tribe that can reasonably accommodate our religious practices.

## HISTORY OF USE OF SWEET WATER

23. In the late 1970s, Charles Elmes acquired title to a 160-acre parcel, which included Sweet Water and all the surrounding lands.

24. Soon after the acquisition, Mr. Elmes met with Tribe members, including Ronald Redbone Van Dunk, who was the Chief of the Tribe at that time.[1] Chief Redbone explained to him that the Tribe had been using Sweet Water for prayer, community cultural assembly, hunting, and fishing for centuries. Mr. Elmes allowed the Tribe to continue using Sweet Water.

25. In 1984, the Township adopted a Zoning Map, which designated Sweet Water as a C-80 Conservation Zone.

26. The Tribe continued to openly use the property for prayer and community cultural assembly, in open view of Township officials and police officers.

27. In the mid-1980s, Mr. Elmes subdivided the properties adjacent to Sweet Water into a residential development named the Ramapo Hunt & Polo Club ("Polo Club").

28. In June 1987, the Township amended the Zoning Ordinance to designate Sweet Water as a C-200 Conservation Zone.

---

[1] Chief Redbone passed away in April 2001.

8

29. Again, the Tribe continued to use the property for prayer and community cultural assembly, in open view of the Township.

30. In November 1991, the Tribe held a pow-wow on the polo fields across the river from Sweet Water. The Tribe also held religious ceremonies at Sweet Water on this date.

31. In July 1995, Mr. Elmes transferred title to Sweet Water to the Ramapough, over the objections of Polo Club residents.

32. Over the next two decades, the Ramapough continued to conduct regular prayer and community cultural assembly at Sweet Water, in open view of the Township and the Polo Club. For example, in August 1995, the Ramapough held a two-day pow-wow at Sweet Water.

33. In [month] 1997, the Ramapough held a wedding at Sweet Water.

34. Over ten years ago, Bergen County authorities placed signs on the roads leading to Sweet Water, identifying the property as "Ceremonial" land.

35. In July 2011, Township officials visited Sweet Water and issued a Complaint to the Ramapough, alleging that the construction

of a Long House required a Zoning Permit. The Stone Altar was present on the Land at that time.

36. On December 12, 2011, the Ramapough submitted an application to the Township for a Zoning Permit. The Ramapough's application stated that the present use of Sweet Water at that time, as it had been for centuries, was prayer and community cultural assembly. The application further stated that the Ramapough sought Township approval for the continuation of that use. Finally, the application sought Township approval for construction of a Long House at Sweet Water.

37. On January 25, 2012, the Township Zoning Official, Gary Montroy, issued a Zoning Permit, concurring with the Ramapough that the Zoning Ordinance allowed prayer and community cultural assembly at Sweet Water. The Zoning Permit also approved building (subject to a construction permit) and use of a Long House.

38. Subsequent to issuance of the January 2012 Zoning Permit, the Township recommended the dismissal the July 2011 Complaint, reasoning that the issuance of the January 2012 Zoning Permit resolved the violation: "I have discussed this item with Thomas Mulvey who is the Township Property Maintenance and Zoning

Enforcement Officer. Mr. Mulvey issued the complaint in this case. The subject matter of the complaint was performing construction prior to obtaining a zoning permit. Since a zoning permit has been subsequently obtained, Mr. Mulvey believes that compliance with the ordinance requirement has been achieved. Thus, he is recommending to the municipal prosecutor and the Court that the pending complaint be dismissed."

39. In reliance on the Zoning Permit and the dismissal of the July 2011 Complaint, the Ramapough continued conducting prayer and community cultural assembly at Sweet Water.

40. For the next five and a half years, the Ramapough continued to conduct prayer and community cultural assembly at Sweet Water, in open view of the Township and the Polo Club.

41. The Township Zoning Inspector, Thomas Mulvey, visited Sweet Water and determined that none of these activities require any Township permit.

**Compliance with NJDEP Green Acres Program**

42. The Ramapough has placed a conservation restriction on Sweet Water, approved by the New Jersey Department of

11

Environmental Protection ("NJDEP") Green Acres program, dedicating this property to conservation and open space.

43. In November 2016, NJDEP Green Acres representatives visited Sweet Water, and concluded that the Ramapough's activities conformed to the conservation restriction. On November 14, 2016, an NJDEP representative sent an email to me confirming this conclusion.

**Compliance with NJDEP Flood Hazard Area Control Act**

44. On December 13, 2016, two representatives from the New Jersey Department of Environmental Protection ("NJDEP") visited Sweet Water, at the Township's request, for the purpose of determining whether the Ramapough's activities are in compliance with the Flood Hazard Area Control Act.

45. These representatives explained to me that our teepees, tents, and sweat lodge did not violate the Flood Hazard Area Control Act ("FHACA"). These representatives also explained that we were permitted to maintain the property by filling in washed-away areas with soil, mulch or woodchips.

46. The Ramapough closely monitors the weather and always moves items out of the floodway well before flooding events.

12

47. On January 3, 2017, NJDEP issued an Inspection Report concluding that no further action was necessary.

### December 2016: Harassment by the Township and the Polo Club Begins

48. In October of 2016, Ramapough and allies started the Split Rock Sweetwater Prayer Camp out of concern about global climate change and the negative impact of past and planned pipelines in the Ramapo Pass. Indigenous nations from all over the planet, including Ramapough, supported the Standing Rock Dakota, Lakota and Nakota, known as Sioux, in their efforts to protect water and the Missouri River.

49. In November 2016, members of the Polo Club began contacting Township officials, in an effort to have the Township force the Ramapough out of Sweet Water, the Ramapough's ancestral lands.

50. In December 2016, the Township interrupted centuries of peaceful prayer and community cultural assembly at Sweet Water by issuing two Complaints to the Ramapough. The Complaints alleged that the Ramapough needed a Zoning Permit for its activities at Sweet Water: ignoring the fact that the Ramapough clearly already

held a Zoning Permit. Each Complaint threatened that if the Ramapough continued prayer and community cultural assembly at Sweet Water, it would incur $1,250 in penalties, six months of jail time, and another six months of community service.

51. On January 2017, Ramapough representatives met with the Township to attempt to address the Township's concerns. The Township demanded that the Ramapough prepare, at great cost and effort, another Zoning Permit application, despite the fact that the Ramapough already held a Zoning Permit.

52. After negotiations failed to lead to an agreement, Mahwah started to issue daily summonses for alleged zoning violations in May of 2018.

53. The Bergen County Superior Court dissolved a temporary restraining order on June 17, 2017.

54. On September 7, 2017, Kathleen Murray, a member of the Polo Club who has displayed deep-seated prejudice against the Ramapough for years, filed an application with the Zoning Board seeking to revoke the January 2012 Zoning Permit.

55. On September 15, 2017, Township Administrative Officer, Michael Kelly, issued a letter purporting to "rescind" the January 2012 Zoning Permit.

56. On November 17, 2017, the Bergen County Vicinage Court exercising jurisdiction upon a venue transfer from the Mahwah Municipal Court issued a decision declaring Mahwah's purported rescission of the 2012 permit null & void and assessing fines of $13,600 for the accumulated summonses as the minimum fine allowable. The Municipal Court decision stayed the imposition of any fines and execution of the judgment pending a final resolution of any appeals. An appeal has been filed but has not been scheduled for argument nor decided.

57. On December 15, 2017, the Bergen County Superior Court denied the Polo Club's request for a prohibition on prayer, to stop more than five people from coming to the land.

58. For the third time, on January 5th, 2017, the Bergen County Superior Court denied the demands for a prohibition on prayer from Mahwah and also to force the demolition and removal of Ramapough's Prayer Circle.

59. At a hearing on that date, Mahwah told the Court that it could use "self-help" or "actual enforcement" regardless of how the Court ruled. I interpreted this as a threat to unilaterally stop Ramapough and allies from simple prayer and to destroy our sacred sites.

60. On April 24, 2018, without approval from the Bergen County Superior Court, Mahwah began to issue coercive fines based on summonses to prohibit prayer and use of our Stone Altar and Prayer Circle. Those fines are based on ten summonses per week day of up to $12,500 per day which, as of the date of this declaration, are almost $600,000.

I declare pursuant to 28 U.S.C. § 2486 and hereby swear under penalty of perjury that the foregoing statements are true and correct to the best of my information and belief."

DATED:   June 2, 2018         By: *[signature]*

Chief Dwaine Perry