

**BEATTIE PADOVANO** LLC

COUNSELLORS AT LAW
50 CHESTNUT RIDGE ROAD, SUITE 208
P.O. BOX 244
MONTVALE, NEW JERSEY 07645-0244

(201) 573-1810

www.beattielaw.com

NEW YORK OFFICE:
99 MAIN STREET, SUITE 319
NYACK, NEW YORK 10960
(845) 512-8584

MARTIN W. KAFAFIAN  (NJ, NY, DC BARS)
ADOLPH A. ROMEI  (NJ, NY BARS)
JOHN J. LAMB  (NJ BAR)
ANTIMO A. DEL VECCHIO  (NJ, NY, DC BARS)
ROBERT A. BLASS  (NJ, NY BARS)
IRA J. KALTMAN  (NJ,  NY BARS)
ARTHUR N. CHAGARIS  (NJ BAR)
STEVEN A. WEISFELD  (NJ, NY BARS)
IRA E. WEINER  (NJ BAR)
DANA B. COBB  (NJ,  NY BARS)
RENATA A. HELSTOSKI  (NJ, NY BARS)
MICHAEL STERNLIEB  (NJ BAR)
DANIELE CERVINO  (NJ, NY BARS)
ARTHUR M. NEISS  (NJ, NY BARS)

COUNSEL TO THE FIRM
JAMES R. BEATTIE  (NJ BAR)
ROGER W. BRESLIN, JR.  (NJ BAR)
THOMAS W. DUNN  (NJ BAR)
JOSEPH A. RIZZI  (NJ BAR)
PATRICK J. MONAGHAN, JR.  (NJ, NY BARS)
MARY ELLEN B. OFFER  (NJ, NY BARS)
EMERY C. DUELL  (NJ, NY BARS)

RALPH J. PADOVANO (1935-2016)

OF COUNSEL
BRENDA J. STEWART  (NJ BAR)

KATHLEEN S. COOK  (NJ, NY, GA BARS)

JAMES V. ZARRILLO  (NJ, NY BARS)
JEANETTE A. ODYNSKI  (NJ, NY BARS)
DANIEL L. STEINHAGEN  (NJ, NY BARS)
CRISTIN M. KEEGAN  (NJ, NY BARS)
MARTIN R. KAFAFIAN  (NJ, NY BARS)
MARIYA GONOR  (NJ, NY BARS)
LEVI J. KOOL  (NJ, NY BARS)
JOHN M. BOEHLER  (NJ BAR)

FAX:  (201) 573-9736
FAX:  (201) 573-9369

Reply to New Jersey Office
Writer's Direct Access
Email:  achagaris@beattielaw.com
Direct Dial:  (201) 799-2141

August 7, 2018

OUR FILE NO.  180480 –01

**OPPOSITION TO THE REQUEST FOR EXTENSION OF TIME FOR PLAINTIFFS TO RESPOND TO THE MOTION TO DISMISS THE COMPLAINT BECAUSE PLAINTIFS, AMONG OTHER GROUNDS, PARTICIPATED IN, AND CONSENTED TO, THE CURRENT SCHEDULING ORDER**

*Via ECF*
Honorable Claire C. Cecchi, U.S.D.J.
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:   ***Ramapough Mountain Indians, Inc. v. Township of Mahwah, et al.***, Case No. 2:18-cv-09228 (CCC) (JBC)

Dear Judge Cecchi:

As Your Honor is aware, this Firm represents the Ramapo Hunt & Polo Club Association, (the "Association"), a Co-Defendant in this matter.  The Association is a non-profit corporation of the State of New Jersey formed to administer the affairs and the common areas of a residential community consisting of 29 single-family homes in Mahwah, New Jersey.

We are in receipt of the letter request to extend the time ("Extension Request") for the Plaintiffs to file their Opposition ("Opposition") to the Association's Motion to Dismiss the Complaint ("Motion to Dismiss") even though the Plaintiffs were represented by two attorneys during a telephone conference call with Your Honor, at which time the Plaintiffs agreed to the current consent Scheduling Order ("Scheduling order") concerning the due date of the

*Forty-Eight Years of Service*

Honorable Claire C. Cecchi
August 7, 2018
Page 2

Opposition to the Motion to Dismiss.  The current due date is August 17, 2018.  The Court

should be aware that on the date the Association's counsel received the Extension Request, this

office advised the Plaintiffs' counsel that the Association would not consent to the Extension

Request because it did not want any time to pass while the Plaintiffs might have refrained from

preparing their Opposition.   The Association, for the reasons set forth herein, strongly objects to

the Extension Request, even though we understand that such Extension Requests are routinely

granted.

        For the record, it should be noted that the Extension Request omits certain material facts

about the procedural history of this matter.  Those material facts are as follows:

1.  On or about May 14, 2018, the Plaintiffs filed this Action, based on a Complaint that
    consists of 46 pages in length.

2.  On or about June 7, 2018, the Plaintiffs moved for a Temporary Restraining Order
    ("TRO"), accompanied by a 28-page brief and 12 exhibits thereto.

3.  On or about June 11, 2018, the Court, *Sua Sponte,* denied the TRO, in part, based on
    the *Younger Abstention* Doctrine, whereby the Court recognized that there are
    pending State Court proceedings of a judicial nature which concern important State
    interests and which would afford the Plaintiffs an adequate opportunity to raise their
    Federal Claims. (*See* **Exhibit "A"** attached hereto).

4.  On or about June 14, 2018, the parties and the Court participated in a telephone
    conference call, initiated by the Plaintiffs, during which the parties consented to the

Honorable Claire C. Cecchi
August 7, 2018
Page 3

Scheduling Order concerning the parties' due dates as to the Association's Motion to

Dismiss the Complaint.  That consent Scheduling Order provided that the Plaintiffs

would file their Opposition to the Motion to Dismiss on August 17, 2018.

5.  Therefore, that Scheduling Order was entered with the Plaintiffs consent, even after

the Plaintiffs had been granted additional time to file their Opposition.

6.  On or about June 18, 2018, Jonathan Wallace, Esq., an experienced expert First

Amendment attorney (*See* E FC #18) was admitted without objection by Co-

Defendants, *pro hac vice*.  Mr. Wallace was Plaintiff's second attorney, with Valeria

Gheorgiu, the first attorney being the lead attorney.

7.  On or about July 18, 2018, the Co-Defendant filed its Motion to Dismiss the

Complaint, in compliance with the Scheduling Order.

8.  On or about July 20, 2018, the Co-Defendant notified Plaintiffs then counsel that no

extensions would be consented to by the Co-Defendant, the Association. (*See* **Exhibit**

**"B"** attached hereto).

The Plaintiffs have used a patterns and practice of changing attorneys at critical stages of

prior cases as a tactic to obtain adjournments.  In the matter *Ramapo Hunt & Polo Club*

*Association, Inc. v. Ramapo Mountain Indians, Inc., et al* ("RMI"), Docket No. BER-L-6409-17

("State Court Action"), a trial date was set for July 9, 2018.  However, RMI's then counsel—the

Eastern Environmental Law Center (with its two attorneys who then represented Plaintiff RMI in

almost all of the then pending State Court matters), and the Thomas W. Williams Law Offices—

Honorable Claire C. Cecchi
August 7, 2018
Page 4

withdrew as counsel on June 22, two weeks before trial.  (Co-Defendant Association consented

to the attorney's Motion to Withdraw.)  The change in counsel caused the New Jersey Superior

Court to adjourn the trial until September 24, 2018, so that RMI could retain new counsel in the

Superior Court Action.

In this Federal Action, Plaintiffs are now represented by four firms: The Law Offices of

Valeria Gheorghiu; Jonathan Wallace, Esq.; the Center for Constitutional Rights ("CCR"); and

Weil, Gotshal & Manges LLP ("Weil").  We are also in receipt of the Notice of Appearance of

Diane Sullivan and the Motion for Leave to Appear *Pro Hac Vice* Kevin Arquit (EFC#33,

34).  Ms. Sullivan and Mr. Arquit are both with the Weil firm.  Therefore, Plaintiffs have the

following attorneys representing them:

    A.  Law Offices of Valeria A. Gheorghiu

        1.  Valeria A. Gheorghiu

    B.  Law offices of Jonathan Wallace

        2.  Jonathan Wallace, Esq.

    C.  Center for Constitutional Rights

        3.  Baher Azmy, Esq.

    D.  Weil, Gotshal & Manges, LLP

        4.  Diane Sullivan, Esq.,

        5.  Kevin Arquit, Esq.)

Honorable Claire C. Cecchi
August 7, 2018
Page 5

We note the vast resources that CCR and Weil can use, including the fact that Weil employs

1,200 attorneys and that the CCR reported $22 million in total revenue for 2017. Collectively,

these firms have the resources to file a timely Opposition to the pending Motion to Dismiss.

Please also note that on July 23, 2018, a fifth attorney—Matthew W. Daloisio, Esq.—

advised New Jersey Superior Court that he would be representing the RMI in the State Court

Action. If the Co-Defendant here prevails on its Motion to Dismiss, the State Court Action will

be the forum where the Plaintiffs' State and Federal claims can be heard. Mr. Daloisio has yet to

appear in the Federal matter and Weil and the CCR have not entered an appearance in the State

Court Action.

Interestingly, Weil and CCR have advised that they "intend" on appearing *pro bono* on

behalf of the Plaintiffs. The Association, however, is not so fortunate. The residential

homeowners of the Association have incurred actual costs in this and the related State Court

Actions.

The current Extension Request is a continuation of the tactic of delays and difficulties in

dealing with Plaintiffs. Therefore, on July 20, 2018, just two days after the Association's Motion

to Dismiss was filed, this firm, in anticipation that there would be more delays and extensions

requested by Plaintiffs, wrote to counselors Gheorghiu and Wallace, advising, as a courtesy, in

advance of the anticipated Extension Request at issue now, that no extensions would be agreed to

by the Association. As noted above, a copy of the July 20, 2018 letter is submitted herewith as

**Exhibit "A".** In that letter, this firm pre-emptively advised that the Association could not

consent to any extensions or adjournments of deadlines because of the Plaintiffs' past conduct of

continued delays and extensions.

Honorable Claire C. Cecchi
August 7, 2018
Page 6

Further, Plaintiffs claim that the delay is necessary because this suit involves "significant constitutional rights." If this were true those issues should have been researched prior to the filing of this Action and it should nevertheless have been raised in the State Court Action.

The Association has no objection to Plaintiffs' selecting counsel of their choice, generally, or to the appearance of Weil or the CCR specifically. But that should not be at the burden of adding further delays. The Motion to Dismiss was filed nearly three weeks ago. From CCR's letter, it can be inferred that Weil and the CCR have been involved in this case some time prior to their appearances. *See* CM/ECF#32, at 2 (noting that Weil and CCR contacted counsel on August 3, 2018, and prior to being formally retained). When, exactly, were Weil and/or CCR first contacted by Plaintiffs' or their representatives? When did Weil and/or CCR first review the pleadings? On these issues, CCR's submission is notably silent.

Finally, CCR hints that it may seek to amend the Complaint, requesting time to "seriously evaluate" this option. This Court should be aware of correspondence concerning this very matter. On July 17, 2018, Mr. Wallace represented that Plaintiffs would be amending the Complaint to address a number of issues raised by the Association. The letter is attached as **Exhibit "C".** CCR writes that it will only consider amending the Complaint, perhaps in a matter that contravenes Wallace's July 17 representations. Which attorney speaks for the Plaintiffs? Who is the Association to reply to? This highlights the problem: Plaintiffs' revolving-door counsel table manifestly complicates litigation, prejudicing the Association, which is not being represented by *pro bono* counsel.

Honorable Claire C. Cecchi
August 7, 2018
Page 7

We acknowledge that Plaintiffs are entitled to counsel of their preference.  The Docket of

this Court and the expenses to the Co-Defendant Association, should not suffer.  There should be

only one lead attorney to whom the Association's counsel should reply.  In any event, as

discovery proceeds in this matter, there should be only one set of discovery demands from each

party.  Otherwise, the Co-Defendant Association would be burdened with responding to multiple

requests of the same party.  This would be fundamentally unfair to the Co-Defendant

Association.

The Plaintiffs are currently required to file their Opposition on August 17, 2018, the date

that the Plaintiffs consented to on July 14, 2018.  Plaintiffs' now have ten more days to file their

Opposition.  Plaintiffs, with their legion of counsel, should be able to fashion a division of labor,

such that the issues and arguments can be properly presented by them.

As Co-Defendant's counsel, we almost always agree to reasonable requests for

extensions (when the RMI's attorney in the State Court action was going on vacation and needed

a short adjournment, we consented).  But here, we unfortunately knew Plaintiffs were going to

continue its pattern of delay and postponement.  That is why we wanted to make sure Plaintiffs

responded to the Motion and knew there was a firm deadline of August 17, 2018—about a month

after we advised them of Co-Defendant's unwillingness to grant an extension.  Even though the

Scheduling Order was consented to by all parties, our client will incur more legal fees in this

Opposition to Plaintiff's Extension Request.

Respectfully, nothing will change the simple fact that the zoning laws of Mahwah have

been flagrantly ignored by Plaintiffs, and a claim of constitutional deprivation is not going to

Honorable Claire C. Cecchi
August 7, 2018
Page 8

avoid the simple need to comply with same—just like every other taxpayer and property owner

in the Township must do.  Despite the Plaintiffs' legion of attorneys, who are quick to raise a

myriad of constitutional issues, while the other State Court actions proceed separately, there

seems to be no New Jersey attorney representing the Plaintiffs who is experienced in land use

*jurisprudence*, even though the Plaintiffs are asking this Court to exercise its judgment on

important state issues where the Plaintiffs constitutional claims can be addressed in pending

State Court Actions.

Respectfully submitted,

Arthur N. Chagaris

ANC:mrk
Enclosures
cc:     Valeria Gheorghiu, Esq. (Plaintiffs' First Counsel)
        Jonathan Wallace, Esq. (Plaintiffs' Second Counsel)
        Center For Constitutional Rights (Plaintiffs' Third Counsel)
         Attn:  Baher Azmy, Esq.
        Weil, Gotshal & Manges LLP (Plaintiffs' Fourth Counsel)
         Attn:  Kevin J. Arquit, Esq.
        Ruby Kumar-Thompson, Esq. (Defendant Township's Special Counsel)
        Ramapo Hunt & Polo Club Assoc., Inc.

# EXHIBIT A

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., et al., | Civil Action No.: 2:18-cv-09228 |
| Plaintiffs, | |
| v. | **ORDER** |
| TOWNSHIP OF MAHWAH, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

  WHEREAS on May 14, 2018, Plaintiffs Ramapough Mountain Indians, Inc. and Ramapough Lanape Nation ("Plaintiffs") filed a complaint against Defendants Township of Mahwah, Ramapo Hunt and Polo Club Association, Inc., Geraldine Entrup, and Thomas Mulvey ("Defendants"), (ECF No. 1), and on June 7, 2018, Plaintiffs filed a motion for a temporary restraining order ("TRO"). (ECF No. 12); and

  WHEREAS Plaintiffs' TRO asks this Court for an order:

> Immediately restraining and enjoining [D]efendants . . . from actual enforcement, self-help, or imposing cumulative fines against [Plaintiffs] . . . . [S]taying local proceedings in the Mahwah municipal court . . . . [E]njoining, restraining and prohibiting [D]efendants from pursuing . . . injunctive relief in the pending State Court actions . . . or from attempting to enforce any Order or Judgement [sic], or collect fines, that may be issued in such cases . . . . [E]njoining, restraining and prohibiting [D]efendants from demanding . . . [other relief] in the pending State Court actions . . . or from attempting to enforce any Order or Judgment [sic] that may be issued in such cases . . . . [E]njoining, restraining and prohibiting [D]efendants from issuing further Summonses . . . or from attempting to enforce any Order or Judgement [sic], or to collect any fines, that may be issued in the Mahwah municipal court[.]

(ECF No. 12-13 at 2-5); and

  WHEREAS "[b]efore determining whether Plaintiff[s] satisf[y] the four requirements for obtaining an *ex parte* temporary restraining order, this Court must first determine whether such an

order would be prohibited by the Anti-Injunction Act[.]" *Oliver v. Ricci*, No. 17-140, 2017 WL 2559623, at *2 (W.D. Pa. June 13, 2017); and

WHEREAS "[u]nder the Anti-Injunction Act, '[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Marchetta v. City of Bayonne State of New Jersey*, No. 12-2696, 2012 WL 12894177, at *1 (D.N.J. June 6, 2012) (quoting 28 U.S.C. § 2283); and

WHEREAS "[t]he Supreme Court has explained that the Anti-Injunction Act 'is an absolute prohibition . . . against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions'" enumerated above. *Id.* (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)); and

WHEREAS Plaintiffs contend that "[t]he instant case fits within several recognized exceptions to the Anti-Injunction[] Act . . . . [including because] it is a Section 1983 action . . . . [and] injunctions may be granted against state proceedings where fundamental constitutional rights are chilled by the state action."[1] (ECF No. 12-1 at 10 (citing *Mitchum v. Foster*, 407 U.S. 225 (1972); *Grove Press Inc. v. City of Phila.*, 418 F.2d 82 (3d Cir. 1969))); and

---

[1] Plaintiffs also aver that this case falls within an exception of the Anti-Injunction Act because their complaint alleges claims under the Religious Land Use And Institutionalized Persons Act ("RLUIPA"), which "itself has been held to support a stay against state proceedings[.]" (ECF No. 12-1 at 10-11 (citing *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 (C.D. Cal. 2002))). Nonetheless, the court in *Cottonwood* explicitly considered whether, even if the Anti-Injunction Act did not apply, it was required to refrain from staying the state court matter under the *Younger* abstention doctrine. *See id.* at 1218. Unlike here, the state court matter in *Cottonwood* was initiated *after* the federal action was instituted. *See id.* Accordingly, Plaintiffs' argument is without merit. *See infra* (discussing the reasons why the Court may not issue Plaintiffs' TRO pursuant to the *Younger* abstention doctrine).

WHEREAS "[w]hile actions arising under § 1983 qualify under the 'expressly authorized' exception to the Anti-Injunction Act, a federal court is still restrained by 'the principles of equity, comity, and federalism . . . when asked to enjoin a state court proceeding.'" *Harris v. Hershey Med. Ctr.*, No. 08-843, 2008 WL 5278730, at *3 (M.D. Pa. Dec. 18, 2008) (quoting *Mitchum*, 407 U.S. at 243); and

WHEREAS in deciding whether a federal court is restrained by such principles, courts are guided by the *Younger* abstention doctrine, which considers whether: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Zaklama v. City of Bayonne*, No. 06-1951, 2007 WL 63998, at *3 (D.N.J. Jan. 5, 2007); and

WHEREAS Plaintiffs have provided a list to the Court of the ongoing proceedings that they seek to enjoin in this matter, which include two New Jersey state superior court proceedings and two New Jersey municipal court proceedings, all of which were initiated before this federal action was instituted. (ECF No. 12-1 at 23). Plaintiffs' request that this Court intervene in the state and municipal court actions is barred by the *Younger* abstention doctrine. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass 'n*, 457 U.S. 423, 435 (1982); *Younger v. Harris*, 401 U.S. 37, 43-54 (1971). This Court simply has no authority to interfere with the state and municipal court actions because important state interests are implicated therein, and because there is an

_____

Moreover, the Court acknowledges Plaintiffs' argument that "the Third Circuit reversed a *Rooker-Feldman* dismissal and allowed an RLUIPA case to proceed[.]" (ECF No. 12-1 at 9 (citing *E. Hill Synagogue v. City of Englewood*, 240 F. App'x 938 (3d Cir. 2007))). First, the Court notes that in rendering this decision, the Court neither relies on *Rooker-Feldman* nor dismisses Plaintiffs' claims at this time. Second, the Court points out that in *E. Hill Synagogue*, the court found *Rooker-Feldman* inapplicable because the injury complained of did not stem from a state court judgment, but rather stemmed from a decision of a local planning board. *See id.* at 940-41.

3

adequate opportunity to raise federal claims therein. *See Zaklama*, 2007 WL 63998, at \*3 (denying plaintiff's motion for a temporary restraining order requesting that defendants be prohibited from prosecuting him in municipal court based on the *Younger* abstention doctrine); *Marchetta*, 2012 WL 12894177, at \*1 (denying plaintiff's request for a preliminary injunction barring defendants from pursuing their case against plaintiff in municipal court despite plaintiff's filing of a complaint in federal court alleging constitutional violations); *Bey v. Passaic Mun. Court*, No. 13-2653, 2013 WL 1949856, at \*2 (D.N.J. May 9, 2013) (holding that "[t]he *Younger* abstention doctrine bars this Court from entertaining Plaintiff's action to enjoin the Passaic Municipal Court and its officers from proceeding with the criminal action pending against him . . . . [because] [t]he state action is ongoing, implicates important state interests . . . and affords [Plaintiff] an adequate opportunity to raise his [constitutional claims]"); *Massey v. Pfeifer*, No. 17-00173, 2017 WL 6729366, at \*1 (W.D. Pa. Oct. 27, 2017) (denying plaintiff's motion for preliminary injunction and temporary restraining order seeking to prohibit defendants from prosecuting plaintiff in state court because of the *Younger* abstention doctrine); *Testa v. Hoban*, No. 16-0055, 2016 WL 4820631, at \*9 (D.N.J. Sept. 14, 2016) ("The Third Circuit has held that 'a federal district court may not exercise jurisdiction over a municipal court proceeding.' Consequently, this Court does not have the authority to order the . . . stay of any proceedings in the Municipal Court of Union Township.") (citations omitted); and

WHEREAS although the Court recognizes that the *Younger* abstention doctrine may also require that this Court abstain from adjudicating the claims in Plaintiffs' complaint, the Court will defer on that decision pending Defendants' submission of motions to dismiss or answers to Plaintiffs' complaint.

Accordingly, IT IS on this __11__ day of __June__ , 2018, in the interests of justice and for good cause shown:

**ORDERED** that Plaintiffs' TRO, (ECF No. 12), is hereby **DENIED.**

**SO ORDERED.**

_____
**CLAIRE C. CECCHI, U.S.D.J.**

# EXHIBIT B



**BEATTIE PADOVANO** LLC

COUNSELLORS AT LAW
50 CHESTNUT RIDGE ROAD, SUITE 208
P.O. BOX 244
MONTVALE, NEW JERSEY 07645-0244

(201) 573-1810

www.beattielaw.com

NEW YORK OFFICE:
99 MAIN STREET, SUITE 319
NYACK, NEW YORK 10960
(845) 512-8584

July 20, 2018

MARTIN W. KAFAFIAN (NJ, NY, DC BARS)
ADOLPH A. ROMEI (NJ, NY BARS)
JOHN J. LAMB (NJ BAR)
ANTIMO A. DEL VECCHIO (NJ, NY, DC BARS)
ROBERT A. BLASS (NJ, NY BARS)
IRA J. KALTMAN (NJ, NY BARS)
ARTHUR N. CHAGARIS (NJ BAR)
STEVEN A. WEISFELD (NJ, NY BARS)
IRA E. WEINER (NJ BAR)
DANA B. COBB (NJ, NY BARS)
RENATA A. HELSTOSKI (NJ, NY BARS)
MICHAEL STERNLIEB (NJ BAR)
DANIELE CERVINO (NJ, NY BARS)
ARTHUR M. NEISS (NJ, NY BARS)

COUNSEL TO THE FIRM
JAMES R. BEATTIE (NJ BAR)
ROGER W. BRESLIN, JR. (NJ BAR)
THOMAS W. DUNN (NJ BAR)
JOSEPH A. RIZZI (NJ BAR)
PATRICK J. MONAGHAN, JR. (NJ, NY BARS)
MARY ELLEN B. OFFER (NJ, NY BARS)
EMERY C. DUELL (NJ, NY BARS)

RALPH J. PADOVANO (1935-2016)

OF COUNSEL
BRENDA J. STEWART (NJ BAR)

KATHLEEN S. COOK (NJ, NY, GA BARS)

JAMES V. ZARRILLO (NJ, NY BARS)
JEANETTE A. ODYNSKI (NJ, NY BARS)
DANIEL L. STEINHAGEN (NJ, NY BARS)
CRISTIN M. KEEGAN (NJ, NY BARS)
MARTIN R. KAFAFIAN (NJ, NY BARS)
MARIYA GONOR (NJ, NY BARS)
LEVI J. KOOL (NJ, NY BARS)
JOHN M. BOEHLER (NJ BAR)

FAX: (201) 573-9736
FAX: (201) 573-9369

Reply to New Jersey Office
Writer's Direct Access
Email: jlamb@beattielaw.com
Direct Dial: (201) 799-2173

OUR FILE NO. 170558-25

Valeria A. Gheorghiu, Esq.
Law Office of Valeria A. Gheorghiu
113 Green Street, Suite 2
Kingston, New York 12401

Jonathan Wallace, Esq.
P.O. #728
Amagansett, New York 11930

**Re:**   **Ramapough Mountain Indians, Inc., et al. v. Township of Mahwah, et al.
Case No 2:18-cv-09228 (CCC)(JBC)**

Dear Counsel:

As you know, we represent the Defendant, Ramapo Hunt & Polo Club Association, Inc.

Judge Checci has ordered a reasonable submission schedule for all motions and a reasonable date for replies. As you know, Defendants' Motions to Dismiss were required to be filed by July 18, 2018. The Association filed its Motion to Dismiss on that date, and the Defendant Township also filed its Motion on that date.

I am advised by Mr. Chagaris who is primarily handling this Federal litigation, that Plaintiffs' response to these Motions (and any response by other parties to the Motions), is due on August 17, 2018. Indeed, I understand that the original due date for Plaintiff's reply was August 6 but that Plaintiffs had already asked for an extension until August 17. We think that was a reasonable request, so that the Plaintiff had a full month to reply. Thereafter, Defendant Association (and the Township) has a right to file a reply brief within two weeks, or no later than August 31, 2018.

*Forty-Eight Years of Service*

Valeria A. Gheorghiu, Esq.
Jonathan Wallace, Esq.
July 20, 2018
Page 2

I am writing in advance to advise you that the Association is unable to grant any extensions to this clearly reasonable time period and expects that Plaintiffs, through the two law firms that are representing them, will file a timely reply by August 17, 2018—the due date.

Respectfully, we have a concern about the compliance with the Court-ordered deadlines because of our firm's experience in all the other matters involving Plaintiffs of which we are aware, and in particular, the State Actions and administrative proceedings before the Mahwah Zoning Board of Adjustment. Defendant, Ramapough Mountain Indians ("RMI"), in those other actions, sought continual and repeated extensions and obtained many adjournments on the due dates of the replies to the various Orders to Show Cause, and the due dates for other major matters, including trial dates. There was frankly very little compliance with any Court deadlines in all these other State Court Actions. This includes the Mahwah land use board. Unfortunately, extensions have been the norm and not the exception.

My client has also been subjected to the change of attorneys, usually at the last minute, before something major is happening. There is always some delay or excuse that the RMI or their allegedly affiliated organization, the Ramapo Lenape Nation, needs to approve something, or the RMI needs additional direction.

These dilatory tactics occurred in the Municipal Court trial last year, in the appeal of Judge McGeady's decision in Municipal Court, and in the change of counsel in the State Court Actions, and in the multiple adjournment requests and change of counsel in the *State v. Smith* matter and the *State v. Perry* matter. A common theme in all of these actions is that there are extension requests, adjournment requests, excuses to have the need to consult with other parties, a change of counsel, and new counsel being brought in which need time to become familiarized with these matters.

I therefore wish to confirm again, as stated, that we expect that Plaintiffs will comply with the briefing Order and file their reply to the motions no later than August 17, 2018. I wanted to give you the courtesy of letting you know in advance that you should not expect to obtain consent by my client for any extension or adjournment of these deadlines.

We also specifically request that you do not seek to delay the filing of your reply brief or extend the briefing schedule because of discussions and/or meetings or any mediation that will eventually be scheduled. We always cooperate with counsel and try to give extensions and adjournments as long as they do not prejudice our client. However, it is in our client's best interest to have the motions completed and decided as soon as possible and this case dismissed immediately (if the Court grants our motions). We therefore most respectfully must advise you that we cannot consent or grant an extension or adjournment in connection with the related filing deadlines in the motions to dismiss.

Valeria A. Gheorghiu, Esq.
Jonathan Wallace, Esq.
July 20, 2018
Page 3


      I trust this sets forth fairly and as sufficiently in advance as possible the position of the Association.

Very truly yours,

John J. Lamb

JJL:kpm/l

cc:    Ramapo Hunt & Polo Club Association, Inc.
       Attn:  All Board Members
       Ruby Kumar-Thompson, Esq.

# EXHIBIT "C"

**Jonathan Wallace, Esq.**
**PO #728**
**Amagansett, New York 11930**
**917-359-6234**
**jonathan.wallace80@gmail.com**

July 17, 2018

Re: Ramapough Indian Nation v. Town of Mahwah et al.

Dear Mr. Chagaris:

This letter is in response to yours dated June 29, 2018.

As a threshold matter, it is our position that yours constitutes an informal letter, not a Safe Harbor letter under Rule 11, in that it does not comply with procedural rules regarding sanctions motions. We wrote to you on July 6 asking for clarification and you failed to respond.

Nonetheless, here is our commentary and response on each of your points. As a general matter, your letter constitutes an attempt to litigate your case, raise affirmative defenses and contest fact issues, rather than advancing Rule 11 violations.

Frequent declarations by your clients and the Township of Mahwah on video at Council meetings, such as declarations made by Paul Scian, Kathleen Murray, Stephen Murray, Charles Brammer, Tom Powers, Brian Chewcaskie, Robert Hermansen, and Mayor LaForet at the January 18th, February 8th, February 22nd, March 22nd, April 5th, April 19th, and May 17th Township Council meetings plus at the October 2017 trial, underline the fact that members of the Polo Club, very similar to the members of the public quoted in *Church of Lukumi Babalu Aye, Inc.* 508 US 520 (1993),have disparaged or called for an end to Ramapough religious practice, and for the Ramapough's expulsion from adjoining property. None of your attempts to claim ethical violations on our part obscure the strength of the Ramapough Nation's RLUIPA and First Amendment claims.

In what follows, describe certain amendments to the Complaint we will seek leave to make in good faith, though we do not believe in their existing form they constitute Rule 11 violations.

1. Your very first point claiming that the Ramapough are not recognized by the State of New Jersey is an example of an attempt to litigate fact issues in your letter. The State of New Jersey does recognize the sovereignty of the Ramapough Lenape Nation under New Jersey General Assembly Concurrent Resolution No. 3031 (May 21, 1979). There is also a New Jersey Commission on Indian Affairs to which the Ramapough Lenape Nation has two representatives. However, , the legal status of the Ramapough Nation in New Jersey is irrelevant to the RLUIPA and First Amendment claims, which apply equally to religions with no legally recognized standing.

2. We will seek leave to amend this assertion. Mr. Lamb's certification dated 9/22/17 in

1

the Polo Club Complaint contained a statement that the "RMI still has the opportunity to continue the activities on the other property it owns," (Paragraphs 8 and 9). The amended allegation will emphasize the religious significance and practices of the Ramapough Nation specifically tied to the Ramapo River and neighboring historical sites, such as a burial ground, a point entirely omitted from Mr. Lamb's certification.

3. We will amend or delete this assertion as it also is immaterial which law firm represented the Polo Club in recommending the private prosecution strategy. Nonetheless, the Mahwah Township Police Investigation Report for both Mr. Perry and Mr. Smith states that Mr. James Oliveri contacted the Detective "on behalf of the Polo Club Homeowner's Association. He stated that they had consulted with their attorney and would like to sign criminal complaints against Mr. Perry and Mr. Smith for Criminal Mischief." We believed in good faith this was a reference to your firm.

Also, we reject your assertion that any of us "threatened" to bring the federal litigation in response to the private actions, nor against the Defendant Association specifically. As you yourself state below, a statement about using legal process, even had it been made, is not a cognizable threat.

4. Your fourth assertion truly constitutes games with words. The Town of Mahwah is assessing extraordinary and destructive fines against the Ramapough. Your claim that these are not "imposed" until the defendant is convicted in a court proceeding may be semantically correct but the Complaint nonetheless communicates the extraordinary threat and danger these summonses represent, to the religious practices of the Ramapough. Also, this is the first of a number of places in which you claim misstatements which have nothing to do whatever with your client, as if you imagined you were speaking on behalf of the Township--something we also noted in your statements when we were on the phone with the Judge.

5. The unilateral revocation of the 2012 permit, without prior notice and opportunity to be heard, was an egregious due process violation which is not cured by any right of appeal. Judge Roy F. McGeady in his November 17, 2017 decision stated that prior due process was required, not simple rescission by Mr. Kelly's letter, for an opportunity to be heard specifically to preserve a record for appeal. He also stated that insofar as any violations are based on Mahwah's purported rescission of the 2012 permit, the Ramapough did not violate any municipal ordinances.

Here again, you purport to speak for the Town of Mahwah.

6. "Masked poles" and "gatherings" alike are clearly First Amendment protected religious usages which should not be subject to a zoning permit in the first place. Moreover, the Township of Mahwah Zoning Permit no. 20120010.000 issued 1/25/2012 permitted broader use than you claim, generally for "Building a longhouse to be used for prayer and community cultural assembly." Those masked poles were part of the original longhouse. Moreover, the application clarifies the use of the land for "outdoor prayer and community cultural assembly" and that the longhouse "will be used in conjunction with these activities." Your statement that the permit only applied to "[t]he use of one

2

longhouse" neglects the fact that the zoning ordinance, a priori, regulates use and the permit recognizes Ramapough use of the land for prayer and cultural assembly.

7. As stated in our response to #3, we will amend or delete this assertion despite our reasonable inquiry and belief as a show of good faith.

8. Mr. Elmes informed us that this complaint exists and we believed him in making this assertion.

9. We believe that the Judge in this matter, and anyone else reading the Complaint who has a legal education, understand that the denial of temporary relief requested in an order to show cause does not constitute a final result.

10. This assertion is confusing. The gist of our case is that Mahwah is interfering with Ramapough religious practice. Ramapough are simply stating the structures listed in the current municipal court summonses which have been made retroactive to March 29, 2018. Since that time, the only "structures" identified are the stone altar and prayer circle. Moreover, in the context of religious practices, the issue whether Mahwah demanded removal of other structures in addition to religious ones is trivial, and at best a fact issue which can be left to discovery and the further prosecution of this action.

   Also, here again you purport to speak for the Town of Mahwah.

11. It is ironic that in item 3 you previously accused Ramapough counsel of making legal demands and threats. In any event, the whole basis of an RLUIPA claim is that the Town of Mahwah has illegally and unconstitutionally used its zoning and real estate related laws and ordinances to chill First Amendment protected religious practice. In this context, whether characterized as a threat, a promise or an assertion, any statement by the Town or Polo Club members that such purported legal means will be utilized to accomplish illegal goals is certainly relevant evidence in this action.

   Here again you seem to be claiming to speak for the Town of Mahwah.

12. This assertion is also confusing, as you acknowledge that your colleague Mr. Chewcaskie actually made a reference to the Town's right of self-help. We can leave it to the trier of fact to determine the meaning and intent of the words you characterize as an "exaggeration" given the greater history and context of this matter. Your statement that this "is primarily a position involving the Township" is very interesting, given that so many of your claims in your letter are on behalf of the Township. The fact remains that members of the Ramapough Nation are afraid to use their property for prayer and ceremony, as is their right, because of the Town's reference to self-help and summonses.

13. This paragraph repeats the fine interpretation of words given in your item #4, as if the fact that the Ramapough Nation has been issued summonses in the amount of now approximately one million dollars has no existence and involves no threat until confirmed by a court.

3

14. Your item 14 is confusing and seems more the appropriate subject of an oral argument or language in a future brief than any basis for a claim that we made a misrepresentation to this Court. Like many of your assertions, it seems to be turn on the definitions of words rather than on any basic statement of fact. Also, your disagreement with our use of words, or even your contestation of facts we assert, do not in themselves add up to ethical violations on our part.

15. Here you protest an assertion we made that the Polo Club colluded with the Town. Your constant representations on behalf of the Town, possible indications of a joint defense strategy, and the evidence we already have that the Town and Polo Club speak regularly and that Town legal actions have been taken which benefit Polo Club interests, all support this assertion. Your statement in this paragraph, which if I understand you correctly, is that the Town did not go far enough, does not effectively counter our assertion. In any event, this is one more example of an attempt to elevate a contested fact issue to be determined by the trier of fact, into an ethics violation. The record of Polo Club member statements at the Mahwah Town Council hearings, referred to above, support our assertion.

16. This point similarly involves your argument of a contested fact issue. Again, it is our assertion that both your client and the Town have illegally used legal process and land use laws to chill or end religious practice by the Ramapough. We believe we have made out more than a prima facie case of an RLUIPA violation. The fact that we believe your client collaborated in, requested and welcomed an RLUIPA violation by the Town, and you assert they did not, again does not add up to any ethical violation on our part.

17. This point is confusing. As established by the *Church of Lukumi Babalu Aye, Inc.* case cited above, any evidence of statements made by Polo Club members or members of the general public is highly relevant to proving an RLUIPA violation. Moreover, the Township of Mahwah's actions under pressure from the Association neighbors are similar to the actions of the Village of Mamaroneck in *Westchester Day School v. Village of Mamaroneck,* 504 F.3d 338 (2d Cir. 2007), where the 2nd Circuit Court held that political pressure from a group of influential neighbors opposed to the plaintiff's variance did not give the Village a "compelling government interest" to act.

On this point, you appear to be claiming that adducing factual evidence in support of our claim is an ethics violation.

18. This point is also confusing. Again, we seem to be arguing a contested fact issue. Our client interpreted John Lamb's assertions in his Certification detailed in Paragraph 2 above as invalidating the historical religious value of the Sweet Water site near the Ramapo River, in suggesting a land swap to the site at Silver Lake, as if the Sweet Water site had no special value. Nonetheless, we will seek leave to amend to more accurately depict Mr. Lamb's statements as diminishing the religious significance of both the Sweetwater site and access to the Ramapo River in proposing a land swap without such direct access for religious use, or proximity to their burial ground, as if the Sweet Water site had no special value.

19. Here again you are arguing the definitions of words. You may disagree with our use of the word "self-help" in this context but this correctly describes our client's perception of all of the numerous maneuvers and procedures used to end its religious land use. The issuance of summonses of the volume and in the amount issued is coercive and continual and designed to prohibit prayer and to force the dismantling and removal of sacred sites.

    Also, you again purport to speak for the Town here.

20. This is the same issue raised and responded to in #4 and #13.

21. Members of the Association have complained about the Ramapough use of roads and the bridge, the main access to the bridge, and have also talked with Mahwah regarding police action according to Ramapough's records. Town council audio recordings also conclusively establish a call for the removal of people and structures by members of the Polo Club. Nevertheless, we will amend the complaint to clarify the role of Polo Club members in demanding coercive action from the Town.

22. This is also a confusing point. You mention matters you are free to allege in an answer, a motion to dismiss, and at trial, as if our failure to allege your purported defenses or counter-assertions in the Complaint were an ethical violation. The fact remains that the Town rescinded a 2012 zoning grant without any notice to the Ramapough, a clear due process and equal protection violation.

    Also, you are again speaking for the Town in this paragraph.

23. We will seek leave to amend this allegation to clarify which actions by each defendant promote or seek to effectuate blocking Ramapough's use of their land.

24. Paragraph 24 is confusing. The purpose of our well-founded RLUIPA complaint is to allege that legal processes were illegitimately used in pursuit of a goal to discourage and end religious practices. If I understand you correctly, you seem to be claiming that we don't have a right to challenge Town legal processes.

The rest of your unnumbered assertions are easily disposed of. The Ramapough Nation have the right to sue as an unincorporated association under federal and New Jersey law. Additionally, there is absolutely no requirement that, to pursue a First Amendment or RLUIPA claim, that the Ramapough be a registered tribe or "sovereign" nation. Also, a civil rights claim of this nature, based on the way the Ramapough have been treated, and evidence such as the intemperate rhetoric of Polo Club members, should not, even if we do not prevail, be construed as an abuse of process.

Many of your objections to the Complaint seem, for the reasons given above, themselves to be frivolous. Nonetheless, we propose a conference call to meet and confer regarding any responses to our letter. Also, please let us know if you have any objections to the amendments to our complaint proposed in this letter.

We are starting a federal mediation process together, which it is our intention to enter in all good

faith in the hope the parties can find a middle ground to resolve their issues. The timing of your letter, taken together with some other statements of yours in phone calls and emails, motivate me to ask whether you and your client are prepared to mediate in the same spirit.

Sincerely,

/s/ Jonathan Wallace
/s/ Valeria A.  Gheorghiu