# EXHIBIT 1

Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
(609) 986-1120

Kevin J. Arquit (admitted *pro hac vice*)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Valeria A. Gheorghiu
Law Office of Valeria A. Gheorghiu
113 Green Street, Suite 2
Kingston, NY 12401
(914) 772-7194

Jonathan Wallace (admitted *pro hac vice*)
P.O. Box 728
Amagansett, New York 11930
(917) 359-6234

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., and RAMAPOUGH LENAPE NATION<br><br>Plaintiffs,<br><br>-against-<br><br>THE TOWNSHIP OF MAHWAH, RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., GERALDINE ENTRUP, in her individual and official capacity, THOMAS MULVEY, in his individual and official capacity,<br><br>Defendants. | Civ. No. 2:18-cv-09228<br><br>**AMENDED COMPLAINT** |

Plaintiffs Ramapough Mountain Indians, Inc. and the Ramapough Lenape Nation, (collectively "Plaintiffs"), by their attorneys, allege for their Amended Complaint herein, as follows:

<u>**INTRODUCTION**</u>

1.      This action arises from the actions of the Township of Mahwah ("Mahwah" or "the Township"), the Ramapo Hunt & Polo Club (the "Polo Club"), their respective members or agents, Geraldine Entrup, and Thomas Mulvey (collectively, "Defendants"), which intentionally deprived Plaintiffs of rights and liberties secured under the First and Fourteenth Amendments to the United States Constitution and the Religions Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.[1]

2.      Plaintiff Ramapough Lenape Nation is a state-recognized sovereign entity whose members (the "Ramapough" or the "Ramapough People") are descendants of the original Munsee people of Lenapehoking, a territory that includes parts of present day New York and New Jersey.  Plaintiff Ramapough Mountain Indians, Inc. is a 501(c)(3) nonprofit organization owned, operated, and managed on behalf of the Ramapough.

3.      The Ramapough are indigenous people who have lived in and practiced religion on their ancestral land since the pre-contact period. The Ramapough now principally reside in the Ramapo Mountains, with major villages in Mahwah, New Jersey, Ringwood, New Jersey, and Hillburn, New York.

4.      For years the Ramapough have been discriminatorily targeted by Defendants. Driven by apparent religious animus, fear, and a desire to increase their own property values, Defendants have made numerous attempts to force the Ramapough off their privately-owned

---

[1] Plaintiff Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation's principal address is 189 Stag Hill Road, Mahwah, NJ 07430.

land and/or to limit the Ramapough's use and enjoyment of that land.  Among other things, Defendants have condemned and pressured the Ramapough to stop visiting their own land, threatened to remove sacred religious items from Ramapough property, attempted to coerce Ramapough representatives to trade their land for land with less value, publicly shouted racist language at Plaintiffs, executed land policies designed to condemn several homes owned and occupied by Ramapough members, and wrongfully demanded at Town Council meetings that town officials impose fines and jail time on certain Ramapough members.

5.     Defendants' most recent acts of discrimination target the Ramapough's use of their privately-held land for religious purposes. Defendants have colluded with each other to deprive Plaintiffs of rights and liberties secured under the First and Fourteenth Amendments to the United States Constitution and the Religions Land Use and Institutionalized Persons Act by, among other things, imposing coercive fines, issuing frivolous summonses, and engaging in harassing behavior in an attempt to expel Plaintiffs from their land.  In so doing, Defendants are carrying on a historical pattern and practice of harassment against the Ramapough and also substantially burdening the Ramapough's free exercise of their sincerely held religious beliefs. Each and every day, Plaintiffs are being constrained by Defendants' conduct from the full religious and cultural use of their land.

6.     A principal tenet of the Ramapough faith is the sacred connection between human beings and nature.  The Ramapough are called "Keepers of the Pass."  This title refers to the Ramapo Pass, which includes the mountains and river that form a gateway to Manhattan and New Jersey.  The Ramapough have sincerely held beliefs that they have a responsibility to live in balance with nature and to protect their sacred lands through environmental stewardship.

Members of the tribe have the sincerely held religious belief that without the ability to pray on their sacred land, they would be unable to carry out their spiritual and religious responsibilities.

7.     One of the Ramapough's most sacred lands is an area currently located at 95 Halifax Road in Mahwah, New Jersey, and known as the "Split Rock Sweetwater Prayer Camp" or simply as, "Sweet Water," the Lenape name for "Ramapough."   Sweet Water is private property owned by Plaintiffs.  The Ramapough use the lands at Sweet Water for a variety of purposes, including prayer, memorial services, meditation, and cultural assembly. The Ramapough conduct many important religious ceremonies and events at Sweet Water, including weddings, water ceremonies, pipe ceremonies, tobacco ceremonies, and sweat lodges.

8.     The Ramapough conduct formal religious ceremonies on the land at Sweet Water at least twice a month in the warmer months, and slightly less often in the winter. The Ramapough schedule regular sweat lodge sessions throughout the year.  In addition to scheduled group events, the land at Sweet Water is open and available for tribe members to use for individual religious purposes every day of the year.

9.     Notwithstanding the Ramapough's private ownership of Sweet Water, since at least November 2016, the Township, the Polo Club, and their respective agents have repeatedly and intentionally attempted to force the Ramapough to cease assembling and practicing their religion on their land. In an effort to stop the Ramapough from assembling and exercising their religion at Sweet Water, Defendants have, among other things, sought to impose through excessive summonses crippling and excessive zoning fines on the Ramapough, harassed individual Ramapough tribe members, maliciously prosecuted Ramapough chiefs, and repeatedly—and coercively—attempted to induce the Ramapough to sell their sacred land.

10.     For example, on September 15, 2017, an agent of the Township revoked a valid 2012 zoning permit for the construction of a longhouse at Sweet Water for religious use without notice or hearing. See Exhibit A (September 15, 2017 Letter from Michael J. Kelly).

11.     And, in April 2018, the Township began improperly issuing daily summonses, which seek to impose coercive fines—of up to $12,500 *per day*—on the Ramapough for their religious use of the land, including their use of a stone altar and prayer circle. See Exhibit B (April 24, 2018 letter from Defendant Geraldine Entrup alleging, among other things, that "the property and structures on site are being used for religious uses (house of worship and prayer groups) and public assembly uses" which are not permitted by the Township's zoning code and that the Ramapough's prayer circle and stone altar were unpermitted structures). As of September 21, 2018, the fines levied against the Ramapough total as much as $1,452,500 as a result of over 1,200 summonses.

12.     Specifically, the Township imposed summonses for each of the following violations: Article 24-11.2c (Failure to Obtain Zoning Permit for Use – Religious Use); Article 24-11.2c (Failure to Obtain Zoning Permit for Use – Public Assembly); Article 24-11.2c (Failure to Obtain Zoning Permit for Structure – Prayer Circle); Article 24-11.2c (Failure to Obtain Zoning Permit for Structure – Stone Altar); Article 22-3.2d (Failure to Obtain Site Plan Approval for Use – Religious Use); Article 22-3.2d (Failure to Obtain Site Plan Approval for Use – Public Assembly); Article 22-3.2d (Failure to Obtain Site Plan Approval for Structure – Prayer Circle); Article 22-3.2d (Failure to Obtain Site Plan Approval for Structure – Stone Altar); Article 24-6.1h(1) (Location of Structure within Floodplain and Flood Hazard Area without Proper Approval); 24-6.1h(1) (Location of Structure within Floodplain and Flood Hazard Area without

Proper Approval – Stone Altar).   See Exhibit B.   Defendants' attempts to impose these summonses are unsupported by local laws cited by them or by other state or federal laws.

13.     Accordingly, Defendants have unlawfully threatened Plaintiffs' constitutional and civil rights by, among other things, pressuring the Ramapough to stop open air prayer; demanding that sacred structures be removed; trespassing on Ramapough land; threatening to physically remove sacred items from Sweet Water, including the stones of the stone altar; and officially authorizing the issuance of unlawful summonses.   Upon information and belief, Defendants' actions are driven by religious animus and pressure from members of the Polo Club who believe that driving the Ramapough off of their ancestral land will increase their property values.   For example, Town Council Member Kathy Murray stated at a February 22, 2018 Township Council meeting that Defendants have "lost property value" as a result of the Ramapough's use of their land.   See Exhibit C (Tr. of Feb. 22, 2018 Council Meeting) at 35:1-6.

14.     As a direct result of Defendants' continued—and harassing—efforts to stop the Ramapough from using their land for religious purposes, as well as Defendants' demands that the Ramapough take down sacred sites like the sacred altar and prayer circle, Plaintiffs are sustaining ongoing, irreparable injuries.   The actions of Defendants are not only interfering with, but also substantially preventing members of the Ramapough from the practice of their religion, as further described below.

15.     Plaintiffs bring this action to obtain, among other things, a declaration to prohibit Defendants and their members or agents from interfering with and prohibiting the exercise of the fundamental rights of the Ramapough Lenape Nation as guaranteed by the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

## JURISDICTION AND VENUE

16.     Plaintiffs' federal claims arise under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 2000cc, the First and Fourteenth Amendments of the U.S. Constitution.

17.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

18.     The Court has personal jurisdiction over this action because Defendants are located in this District, because the acts complained of occurred in this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred on Plaintiffs' property at 95 Halifax Road, in the Township of Mahwah, in Bergen County, State of New Jersey, which is located within this District.

## THE PARTIES

20.     Plaintiff Ramapough Lenape Nation is a sovereign entity whose members are descendants of the original people of the Ramapo Mountains, Manhattan, and Lenapehoking, the territory of which includes the land and waters of present-day New York and New Jersey. The Ramapough principally reside in the Ramapo Mountains with major villages in Mahwah, New Jersey; Ringwood, New Jersey; and Hillburn, New York. The Ramapough are one of the few indigenous tribes in the country to have survived on their ancestral land.

21.     Plaintiff Ramapough Mountain Indians, Inc. is a 501(c)(3) nonprofit corporation owned, operated, and managed on behalf of the Ramapough.

22.     Defendant Mahwah is a township under the laws of New Jersey. Mahwah is located in Bergen County, New Jersey.

23.     Defendant Geraldine Entrup is the Administrative Officer for and an agent of the Township.

24.     Defendant Thomas Mulvey is the Property Maintenance Inspector for and an agent of the Township, and, in this capacity, has signed all summonses issued against the Ramapough.

25.     Defendant Ramapo Hunt & Polo Club is a homeowners' association that consists of and represents approximately twenty-nine (29) homes occupying land on Halifax Road in Mahwah, New Jersey. The Polo Club was established in the 1980s and is managed by elected trustees.

## FACTUAL ALLEGATIONS

I.     **THE USE OF SACRED RAMAPOUGH LAND FOR PRAYER PROMOTES PRACTICE OF THE RAMAPOUGH FAITH**

   A.     **SWEET WATER IS PRIVATELY-OWNED SACRED RAMAPOUGH LAND AND IS USED BY THE RAMAPOUGH TO EXERCISE THEIR SINCERELY HELD RELIGIOUS BELIEFS**

26.     Sweet Water is part of the Ramapough's ancestral land.[2] Sweet Water and the lands surrounding it were incorporated into the Township of Mahwah in or around 1849.

27.     In the late 1970s, Charles Elmes, a developer, acquired title to Sweet Water and its surrounding lands. At or around the time of that acquisition, Mr. Elmes met with several Ramapough representatives, including Chief Ronald "Redbone" Van Dunk, with whom he discussed the Ramapough's history with—and religious connection to—the Sweet Water lands.

28.     Upon learning of the religious significance of the Ramapough's connection to the land, Mr. Elmes recognized the Ramapough's continuing use of the land at Sweet Water for, among other things, religious ceremonies and gatherings.

---

[2] Indeed, the Ramapough's use of Sweet Water and the land surrounding it predates the establishment of the Township of Mahwah.

29.     In 1995, Mr. Elmes deeded a 13.3-acre plot, including Sweet Water, to the Ramapough. Accordingly, Sweet Water is currently private property owned by the Ramapough. Since acquiring the property, the Ramapough have continued to openly use the land to assemble and exercise their faith.

30.     The Ramapough believe that there is a connection between human beings and nature. Indeed, a fundamental tenet of the Ramapough religion is an obligation to live in balance with nature.  The Ramapough believe that the spiritual world and sacred lands must be respected and protected.  The Ramapough are particularly called to honor those lands—like Sweet Water— that are connected to their ancestors.

31.     The Ramapough also believe that local wildlife have spiritual significance. For example, the finding of deer tracks around a sacred circle or the appearance of hawks during prayer are believed to be the confirmation of the power of a sacred site or ceremony.

32.     Given the spiritual connection between human beings and nature, many Ramapough religious ceremonies are conducted outdoors, either in open air or in non-permanent structures. The chosen venue for these ceremonies—nature—reflects the Ramapough's sincerely held religious beliefs that the Earth and their homeland must be honored and protected. The religious beliefs of the Ramapough are thus deeply intertwined with their ancestral land and ability to conduct ceremonies on sacred sites.

33.     Sweet Water—the site of an historical Ramapough burial ground—is one of only a few ceremonial sites left to the Ramapough after years of historic dispossession, discrimination, and marginalization. Accordingly, Sweet Water is extraordinarily sacred to the tribe. Many Ramapough families have said that when they step onto the land, they feel a sense of peace, healing, and security. These tribe members have traumatic memories of how their families

were pushed off their ancestral lands.  Consequently, the Ramapough's current reasonable belief that their use of the Sweet Water religious sanctuary is being curtailed by Defendants' actions— and that their continued ownership of the land itself is under threat—is causing the tribe great ongoing trauma and distress.

34.     Sweet Water is uniquely situated for the Ramapough's religious ceremonies due to its location.  Not only is the land at Sweet Water sacred to the Ramapough, but Sweet Water is also very close to two other sites sacred to the tribe: the meeting of the Mahwah and Ramapo Rivers and the Ramapo Pass. The meeting of the Mahwah and Ramapo Rivers has been an assembly place for the Ramapough people for centuries. The river itself is sacred to the Ramapough, as they regard it as the Lenape's ancient highway and source of life and food. Many religious ceremonies require access to the river and its waters. The other sacred site is the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains. In the winter of 1779-1780, the Ramapough people welcomed George Washington to use the Ramapo Pass to shelter five hundred Continental Army soldiers.

35.     The Ramapough use the lands and water at Sweet Water to practice their faith. For example, Sweet Water is commonly used for individual and group prayer, memorial services, meditation, weddings, greeting the four directions, tending the sacred fire, blessing and cleansing people with incense, saying prayers to honor ancestors, water ceremonies, pipe ceremonies, tobacco ceremonies, releasing ceremonies, and sweat lodges.

36.     The Sweat Lodge is an enclosed space made of entirely natural materials, where water is poured onto stones, creating steam.  The Sweat Lodge is, and has historically been, used by indigenous people for healing and prayer.

37.     The Tobacco Ceremony is a peaceful prayer ceremony, in which the Ramapough use tobacco, a sacred plant in the spirit world, as an offering to the Creator.  The Ramapough infuse the tobacco with their prayers, and offer it to the Creator in hopes that the Creator will accept their prayers.

38.     The Water Ceremony is a prayer ceremony celebrating rebirth and life.  Practiced by women, the Ramapough pray and make offerings to the water.

39.     The Releasing Ceremony is a ceremony wherein the participants release their thoughts and negative energy into the earth.  The Releasing Ceremony is akin to confession, but instead of confessing to another person, participants confess their thoughts and prayers to the earth.

40.     Members of other indigenous tribes often join the Ramapough for religious ceremonies and events at Sweet Water. For example, in April 2017, the Haudenosaunee (Iroquois) ceremonial leaders joined the Ramapough at Sweet Water for an Earth Day ceremony, where the Ramapough and the Haudenosaunee together called on and honored each of the four elements—air, water, soil, and fire—and relayed that teaching to the assembled multi-faith crowd.

41.     The Ramapough also use the lands at Sweet Water to host cultural and educational events for both indigenous and non-indigenous people. These events, which often involve religious ceremonies, are intended to foster a sense of brotherhood among all in attendance and to provide a safe and educational meeting place for cultural exchange. Assemblies of this sort have been attended by members of many indigenous nations, including the Taino, Mexica, Quechua, Lakota, Cherokee, Maya, Schaghticoke, Mohawk, Onondaga, Ojibwe, Tlingit, and others.

42.     Sweet Water is, at times, also used for political activity.  For example, in the fall of 2016, the Ramapough invited a group of people to the lands at Sweet Water in gratitude of, and concern for, the natural world.  This began an interfaith dialogue toward protecting the Ramapo Mountains from gas pipelines and pollutions.  Two tipis were placed on the land in solidarity with the [D][L][N]akota indigenous nation who sought to protect the waters at Standing Rock, North Dakota, against pipelines and pollution.  People from different nations came to temporarily stay on the land in prayer and to raise environmental awareness.

**B.**     **THE RAMAPOUGH USE CERTAIN RELIGIOUS ITEMS TO EXERCISE THEIR FAITH AT SWEET WATER**

43.     The Ramapough have—and use—several religious items at Sweet Water. One such item is the sacred stone altar, which has been at Sweet Water for at least many decades. The stone altar serves as the physical manifestation of Ramapough prayers. Each stone embodies a single prayer made at the altar. The stone altar symbolizes how in the Ramapough faith, prayers take on a physical form, and draw direct connections to the land. Accordingly, the Ramapough believe that the removal of even a single stone is the removal of a prayer.



**(Stone Altar From A Distance)**



**(Close-up View of Stone Altar)**

44.     During the ongoing dispute with Mahwah and the Polo Club, the word "HATE" was carved into one of the stones comprising the Circle. The Township and Polo Club routinely refer to the sacred altar as "a pile of rocks."

45.     The Ramapough also have a Prayer Circle at Sweet Water, which serves as a designated worship site. The Prayer Circle is surrounded by masked poles ("Mesingw"), which, according to the Ramapough faith, are powerful spirits that provide protection and help maintain the balance of nature.[3] The Mesingw are spirit guardians of the forest. The Mesingws were installed at Sweet Water in 2011 and were placed in their current configuration (a circle) in 2016.

---

[3] In 2012, Mahwah recognized the Ramapough's rights to use Sweet Water for religious purposes and to have Mesingws when it issued a permit to the Ramapough for the construction of a longhouse, which also involves the use of Mesingws. *See* Exhibit D (2012 Zoning Permit). Notwithstanding Plaintiffs' position that no permit was necessary for its preexisting religious uses of the land, the Ramapough had sought the permit in connection with efforts to resolve earlier disputes with Defendants. As alleged above, Defendant Mahwah's agent, Michael Kelly, unilaterally—and without cause— revoked the 2012 Zoning Permit in September 2017 without

13



**(The Prayer Circle — View One)**



**(The Prayer Circle — View Two)**

---

notice or hearing, soon after learning of its existence.  *See* Exhibit A (September 15, 2017 Letter from Michael J. Kelly).



**(A Mesingw)**

## C.   THE TOWNSHIP AND ITS AGENTS AND MEMBERS HAVE HARASSED THE RAMAPOUGH AND OTHERWISE INTERFERED WITH THEIR RELIGIOUS PRACTICE

46.     Plaintiffs' Mesingws have been vandalized in the past by members of the Mahwah community.  In addition, on at least one occasion, Tribe members saw a swastika carved into the stones of the prayer circle.

47.     In 2016, several six to eight-foot logs outlining a temporary longhouse and weighing about one ton each were stolen from the Ramapough lands at Sweet Water. A few months prior, someone had written "these logs will be gone soon" using wood chips on a stone slab by the longhouse. State authorities stated that the removal of the logs would have required several people or machinery.

48.     By letter dated January 17, 2018, Mahwah ordered the Ramapough to remove all structures on the land and to stop using the land for religious purposes by February 2, 2018. See Exhibit D at 4 (January 17, 2018 Letter from Geraldine Entrup).

49.     If the Ramapough were forced to remove the prayer circle and/or stone altar as a result of the Township's continually issuing summonses and/or Defendants' threats to remove the structures (as they were with the longhouse), members of the tribe would immediately lose access to items necessary to the exercise of their faith. Accordingly, if these items were removed, Plaintiffs and other community members will be deprived of the ability to fully and freely practice their religion, constituting an irreparable injury.

## II.     MAHWAH'S SELECTIVE AND ARBITRARY ENFORCEMENT OF ITS ZONING LAWS AGAINST THE RAMAPOUGH SUBSTANTIALLY BURDEN PLAINTIFFS' RELIGIOUS EXERCISE

50.     In June 1987, the Township amended the Zoning Ordinance to designate Sweet Water as a C-200 Conservation Zone.

51.     Mahwah's Zoning Ordinance designates C-200 zoned-land as "conservation" land. The Township's Zoning Code restricts Permitted Principal Uses for C-200 land to:

> 1. Public open space, including hiking, horseback riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, other similar uses.
> 2. Agricultural uses
> 3. Single-family detached residences, with 200,000 sq. ft. minimum lots.
> 4. Municipal facilities.

The Zoning Code limits Permitted Accessory Uses of C-200 land to:

> 1. Private garages
> 2. Swimming pools
> 3. Signs
> 4. Off-street parking
> 5. Accessory uses customarily incidental to a permitted principal use.

52.     According to a report prepared for the Township of Mahwah's Planning Board and Township Council, the C-200 conservation zone was created in order to "protect the various environmental resources present in these areas." The purpose of the C-200 zoning ordinance is aligned with the Ramapough faith and their religious mission to keep their sacred land ecologically healthy.

53.     In the fall of 2011, the Ramapough placed sacred poles at Sweet Water in a rectangular formation to mark space for prayer and ceremony. This is considered a place of worship, similar to a church, which is used in certain Ramapough ceremonies.   Township officials visited Sweet Water and issued a complaint to the Ramapough, alleging that the placement of these sacred poles was a violation of the local zoning ordinance and required a permit.

54.     On December 12, 2011, notwithstanding their preexisting use of the land, the Ramapough, in connection with efforts to resolve earlier disputes, submitted an application to the Township for a Zoning Permit. The application stated that the "present use" of Sweet Water was "prayer and community cultural assembly," and sought Township acknowledgement that the continuation of that use complied with the zoning ordinance.

55.     In January 2012, Mahwah Zoning Official Gary Montroy issued a Zoning Permit that explicitly recognized the Ramapough's rights to use Sweet Water for religious purposes and cultural assembly and approved the building and use of a longhouse.  See Exhibit E (2012 Zoning Permit).   Subsequently, the Township recommended the dismissal of the 2011 Complaint, explaining that the 2012 zoning permit resolved the dispute.

56.     In 2013, after the Prayer Circle consisting of Mesingws was installed, Defendant Thomas Mulvey (Mahwah Zoning Inspector) visited Sweet Water and determined that Plaintiffs'

use of the land did not violate any applicable zoning ordinance. From 2013 through December 2016, the Ramapough continued to use Sweet Water for prayer and community cultural assembly in open view of the Township and in accordance with their zoning permit.

57.     As alleged *supra* at ¶10, a Township agent unilaterally sent a letter purporting to revoke the 2012 permit in September 2017 without cause, notice, or an opportunity for hearing. See Exhibit A (September 15, 2017 Letter from Michael J. Kelly).

58.     Defendant Polo Club has sought to prohibit Ramapough from using Ramapough land for prayer or having more than five (5) people on the land. See Exhibit F (Order denying Proposed Order to Show Cause with Temporary Restraints by Ramapo Hunt and Polo Club (Case No. L-6409-17 (Superior Court N.J.)).

59.     On October 31, 2017, Mahwah's Township Engineer, Michael Kelly, stated under oath that more than two (2) people praying on Ramapough land at 95 Halifax Road in open-air prayer—even without the existence of structures—constituted a violation of the Township's municipal code. Given the Zoning Code's silence on simple prayer on C-200 land, this reading of the ordinance is arbitrarily and capriciously targeted and restrictive and treats the Ramapough on less than equal terms with other organizations and non-religious institutions in the same zone. The Township's interpretation of the zoning ordinance would make saying a thanksgiving blessing before a meal or saying a prayer before a recreational activity a municipal code violation if done by more than two people on C-200 territory. Upon information and belief, no similarly situated secular or non-secular entities on C-200 property have received zoning violations for activity involving two or more persons praying.

60.     The Township's inconsistent and targeted interpretations of the Zoning Ordinance regarding C-200 land as applied to the Ramapough are highly restrictive and evince the intent to

completely impede the Ramapough's religious use of and assembly at Sweet Water. The Township's actions do not serve any governmental interest, much less a compelling one.  Given the Township's position that C-200 zoning functionally prohibits religious use or cultural assembly and the Ramapough's sacred connection to the site, there are no alternative locations reasonably available to the tribe that could accommodate their religious practices.  For example, access to the Ramapo River is vital to Ramapough Water Ceremonies for protection, healing, and thanks to the river.

61.     By letter dated January 17, 2018, Defendant Geraldine Entrup notified the Ramapough of the Township's intention to recommend that daily summons be issued for alleged "continued violations" on the Mahwah Zoning Code at Sweet Water. See Exhibit D at 4 (January 17, 2018 Letter from Geraldine Entrup). Specifically, Defendant Entrup claimed that nine impermissible structures were found at Sweet Water: (1) a storage shed; (2) a "canvas cabin" (i.e., a Cabela Large Tent); (3) a prayer circle consistent of logs stuck in ground and former pieces of longhouse (ceremonial poles placed in a rectangular formation); (4) portable toilet; (5) yurt; (6) pop-up shed; (7) a structure made of lumber with roof and floor; (8) sweat lodge; and (9) stone altar.  See id. at 2.  The storage shed, canvas cabin, portable toilet, yurt, pop-up shed, structure made of lumber with roof and floor, and sweat lodge were removed on or before March 25, 2018.  Defendant Entrup claimed that site plan approval was required and had not been obtained for uses of the property or for the installation of these nine "structures."  In her letter, Defendant Entrup acknowledged that certain of the structures were "used on site for religion uses and public activity" but claimed that they were impermissibly located in a floodplain.  See id. at 3.  Citing Ordinance 24-6.1h(3), Defendant Entrup asserted that only the following uses are permitted within a floodplain area: (a) Agriculture and horticultural activities; (b) Outdoor

19

recreational facilities, including golf courses, ice-skating rinks, swimming pools, parks, playfields and other similar facilities; or (c) Essential services.  See *id.* Defendant Entrup stated that the uses of the Ramapough land did not meet the requirements set forth in Ordinance 24-6.1h(3).  See *id.* at 4.

62.     By letter dated April 24, 2018, the Township formally notified the Ramapough that it would start issuing summonses—demanding fines of up to $12,500 per day—for using the land at Sweet Water for prayer and for having a stone altar and prayer circle with Mesingws at Sweet Water.  In its letter imposing summonses, the Township claimed that the Ramapough's religious use of the land was not permitted by the Township Code.  See Exhibit B at 1 ("Our site observations on various days, including Friday, April 20, 2018, indicate that the property and structures on site are being used for religious uses (house of worship and prayer groups) and public assembly uses. These uses at the site are being performed without obtaining the necessary Zoning approval from the Township . . . . The uses being performed at the site are clearly not listed as permitted uses in this zone and as per Article 24-1.3b of the Township Zoning Code.").

63.     In its April 24, 2018 letter, the Township also claimed that the Ramapough's use of the prayer circle and stone altar constituted an unpermitted structure, which the Township defined as "a combination of materials to form a construction for occupancy, use or ornamental whether installed on, above, or below the surface of a parcel of land." See Exhibit B at 2.  The Township also cited these religious artifacts as flood hazards, despite their location 30 yards from the riverbank and a finding by the New Jersey Department of Environmental Protection that the structures did not violate the Flood Hazard Area Control Act.

64.     As a result of these allegedly impermissible uses, the Township cited the Ramapough with ten zoning code violations. The Township issued Plaintiffs summonses

retroactive to Thursday, March 29, 2018, "for each weekday up to and, including Friday April 20, 2018" and notified Plaintiffs that it would "continue to issue daily Summonses for each violation[.]" Exhibit B at 4. Defendant Thomas Mulvey, acting in his role as agent of Defendant Mahwah, has indeed continued to issue daily summonses to the Ramapough. As of September 21, 2018, the fines levied against the Ramapough total as much as $1,452,500.

65.    Even the Ramapough's mere use of their Land, without any structures, was cited by the Town Prosecutor in connection with a prior municipal litigation as violating the zoning code. Such uses included the Ramapough's "religious use" of the Land, "public assembly," and use of the Land as a "campground."

66.    By issuing cumulative daily summonses to the Ramapough, Mahwah is unlawfully enforcing and implementing a land-use regulation that imposes a substantial burden on the rights of the Ramapough to the free exercise of religion and unreasonably limits religious assembly on C-200 land. Mahwah's enforcement of its land-use regulations against the Ramapough does not further a compelling state interest and is not the least restrictive means of furthering any legitimate town interest.

67.    Upon information and belief, seeking a use variance would be futile, given Mahwah's pattern of harassment and discrimination against the Ramapough.

68.    Upon information and belief, the Township has not similarly enforced its zoning laws against other landowners for similar uses of C-200 land. For example, Polo Club members have put up religious and non-religious structures including a statue of a brass horse, menorahs, Christmas trees, and wreaths, and have hosted large events with as many as twenty-five cars parked on the road. In issuing and threatening to enforce these summonses against the Ramapough, Mahwah has made deliberate efforts to prevent the Ramapough's use of its property

for religious exercise, evidencing a pattern of discrimination against the Ramapough when compared to the treatment afforded to other churches and other, non-religious users in the C-200 conservation zone.

69.     The Township's purpose in issuing these summonses is to end the Ramapough's religious use of their property, eliminate their sacred sites, and prevent religious assembly. The Township's intimidation tactics have been largely successful—they have suppressed Plaintiffs' use of the land and rendered the tribe's religious exercise effectively impracticable. Though some ceremonies have continued, the Township's actions have significantly chilled Ramapough's use of the land for religious purposes.  Since it began issuing the daily summonses to the Ramapough, many members of the Ramapough have been scared to enter the lands at Sweet Water and have ceased practicing their religion at the site. Mahwah's ongoing actions constitute a substantial burden to the Ramapough's free exercise of religion.[4]

## III.    MAHWAH AND THE POLO CLUB HAVE CONSPIRED TO BURDEN PLAINTIFFS' EXERCISE OF RELIGION BASED ON DISCRIMINATORY ANIMUS

---

[4] Defendant Mahwah has a history of discriminating on the basis of religion. Defendant Mahwah recently engaged in a similar pattern of racial and religious discrimination against another religious group.  In 2017, Mahwah acted to illegally prevent Jewish residents of Rockland County, New York, from establishing an eruv in Bergen County, New Jersey, which would have allowed Rockland County Jews with certain sincerely held religious beliefs to carry or push objects from place to place within a designated unbroken area during the Sabbath and on Yom Kippur.  In response to an openly anti-Semitic campaign against the eruv from certain residents of Mahwah, the Township unlawfully threatened the Rockland County Jews' constitutional, civil, and contractual rights by, among other things, demanding that items necessary for the eruv be removed; threatening to issue summonses in connection with items that were legally affixed to the Utility Company's poles within the Township; and officially authorizing the issuance of such unlawful summonses.  Mahwah's illegal ordinances were later withdrawn after lawsuits were brought against the town by the Bergen Rockland Eruv Association and the New Jersey Attorney General.  Mahwah recently settled the private lawsuit and with the State regarding these allegations.

70.     In issuing its summonses, Mahwah and its agents are acting at the behest of, and in partnership with, the Polo Club, which is located adjacent to Sweet Water. Polo Club members have publicly expressed that their goal is to drive the Ramapough off of their property.

71.     Upon information and belief, from December 2016 through May 2017 representatives of the Mahwah Council, including the Mayor, regularly visited and conferred with the Polo Club regarding action to take against Ramapough's use of Sweet Water.   Upon information and belief, agents of the Township maintain close cooperation with the Polo Club in a coordinated campaign against the Ramapough.

72.     Upon information and belief, the Polo Club hired a public relations firm to pursue their agenda against the Ramapough.   On June 1, 2017, defendant Polo Club's agent Jeanine Genauer of the JPR Group wrote a letter to the editor which appeared on northjersey.com falsely accusing Ramapough of violations of New Jersey state regulations.

73.     Defendant Polo Club, in furtherance of its campaign to interfere with the Tribe's religious practice and to drive the Ramapough off their land, has made numerous unfounded and malicious complaints to the Township's police department, using the New Jersey municipal "private warrant" process to bring criminal charges against Ramapough members. For example, the Polo Club made a criminal complaint against Chief Dwaine Perry for allegedly tampering with the surveillance cameras directed at Ramapough land. Surveillance footage showed no such occurrence, and the Bergen County Superior Court later found that Chief Perry "did not touch, let alone tamper" with the Polo Club's cameras.

74.     Members of the Polo Club have treated the Ramapough with hostility and rank prejudice. Some Polo Club members have publicly shouted racist and disturbing language at

Plaintiffs, sometimes during Ramapough religious ceremonies and prayers. Hateful comments directed at the tribe in 2016 and 2017 include the following xenophobic and racist statements:

- "Nobody prays with stones and fire."

- "Fuck you, Mountain N******s."

- "Go back to your Mountain."

- "Go back to where you came from."

- "Piece of shit," "fucking gypsies," and "dirty stinking Indians."

75.     On multiple occasions, green bags of dog feces were found in the Sweet Water driveway, as if someone had intentionally thrown them there.

76.     Members of the Polo Club maintain surveillance cameras directed toward Ramapough property 24 hours a day, and have trespassed on Ramapough land to threaten, photograph, and record Tribe members. In an effort to restrict Plaintiffs' use of their own land, Polo Club members have also publicly demanded that the Township impose fines and jail time on Ramapough members.

77.     Agents of the Polo Club have also taken to using the Mahwah police department to enforce their vicious campaign of harassment against the Ramapough. In one instance in October 2016, Paul Scian, the President of the Polo Club, gave members of the tribe permission to use electricity from the front of an electricity box by the Ramapough property. The next month, several police cars came to Sweet Water to investigate a complaint from Mr. Scian that the tribe was stealing electricity.

78.     On January 5, 2018, Mahwah, by Township attorney Brian Chewcaskie, told a Bergen County Superior Court that Mahwah was prepared to act unilaterally without a Bergen County Superior Court order to prohibit prayer by the Ramapough through "self-help" regardless

of how that Court ruled on a motion by Mahwah seeking an order enjoining the Ramapough from using Sweet Water for religious purposes and requiring the Ramapough to take down certain sacred religious items:

> MR. CHEWCASKIE:  [I]f the Court dismisses this complaint than the Township will exercise whatever rights it may have pursuant to the law.  The Township does not want to exercise self-help, we want to proceed in accordance with the rules under the statute.  The Township has been very patient; the Township has not issued any additional summonses, has not taken any specific, what I would call, actual enforcement action.[5]

 Later, Mr. Chewcaskie indicated that Mahwah was prepared to act outside of the judicial process:

> MR. CHEWCASKIE:  What I said is, we're trying to play by the rules, the rules would require a judicial intervention as permitted pursuant to the statute. Otherwise, it's the exercise of self-help which I don't believe anybody wants.[6]

79.    Mahwah's order to show cause, which was denied by the State Court, demanded the physical removal of Ramapough's sacred altar and prayer circle:

> [T]he Defendant and its employees, agents, assigns, and successors in interest [shall] demolish and remove (at the direction of the Township) any and all structures built in violation of Township's zoning ordinance and/or the NJDEP Flood Hazard Area Control Act.[7]

80.    At a March 22, 2018 Town Council meeting, Mahwah Town Council President Robert Hermansen said, "[i]t's time to move forward one way or the other." Later, Mr. Hermansen suggested, "[d]o we go in and take the rocks down oursel[ves]?" At that same

---

[5] See Exhibit G (Mahwah v. Ramapough, Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (oral argument)).

[6] Id.

[7] See Exhibit H (Mahwah v. Ramapough, Superior Court of Bergen County, Civil Action No. BER-L-3189-17, May 10, 2017 (Mahwah's proposed order to show cause)).  This was after the New Jersey Department of Environmental Protection found that the structures did not violate the New Jersey Flood Hazard Area Control Act.

Council meeting, Polo Club member Charles Brammer said, "[w]e need something done.  Not a year from now.  Not six months from now.  It better be done now.  We're tired of it."

81.     Upon information and belief, Mahwah and the Polo Club have conspired to induce the Ramapough to sell sacred lands along the Ramapo River at 95 Halifax Road. A prominent Polo Club member even threatened the tribe, stating that if they did not sell Sweet Water for a materially low price, the Polo Club was "prepared to do something bad." Days later, frivolous criminal charges were brought against the Ramapough chief.

82.     The Polo Club has instituted numerous unfounded lawsuits against Ramapough in Bergen County Superior Court as part of their campaign to apply pressure against Plaintiffs. Mahwah has similarly instituted litigation against Ramapough, and attorneys for the Polo Club have sought to directly intervene, and in some instances actually assisted and participated in, these lawsuits in which they had no official role.  The purpose of all these actions taken jointly and individually by the Town and the Polo Club have been to burden, harm and destroy the Plaintiffs' religious uses of their property. Indeed, upon information and belief, agents of the Polo Club communicate with agents of Mahwah as frequently as once per day, collaborating to prevent Ramapough prayer and assembly.

## FIRST CLAIM FOR RELIEF

United States Constitution, First Amendment —Free Exercise of Religion
42 U.S.C. § 1983
(Defendants Mahwah, Entrup, and Mulvey)

83.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

84.     Plaintiffs have a constitutional right under the First and Fourteenth Amendments to the United States Constitution freely to practice their religion. The First Amendment of the United States Constitution, which is made applicable to state and local governments, including Defendant Township of Mahwah, New Jersey, through the Fourteenth Amendment, guarantees freedom of religion by saying "Congress shall make no law respecting an establishment of religion, or prohibiting free exercise thereof."  United States Constitution, Amendment 1.

85.     The Ramapough people and allies have a right to come to the Ramapough lands at 95 Halifax Rd., Mahwah, NJ, to assemble and engage in open air prayer, including at the Ramapough's sacred stone altar and prayer circle.

86.     By imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious purposes, including prayer, Defendants Mahwah, Entrup, and Mulvey have imposed a substantial burden on the religious exercise of the Ramapough people.

87.     Without the stone altar, prayer circle, and Mesingws, Plaintiffs and other Ramapough cannot freely assemble or practice their religion on their own land.  The stone altar represents the different prayers of each individual who lays the stone, and the prayer circle and Mesingws represent symbolic sacred space.  Ramapough believe that even Ramapough have no right to remove the stones laid down in prayer and to do so or to remove the prayer circle would severely interfere with, disrupt, and hinder the past, present, and future prayers.

88.    The object, motivation, and effect of the actions of Defendants Mahwah, Entrup, and Mulvey is to suppress the religious practices of the Plaintiffs and all Ramapough living in or around Bergen County.  These actions have specifically targeted the Ramapough, as the laws that Defendants Mahwah, Entrup, and Mulvey invoke to support the removal of these structures are not enforced against citizens of other faiths with consistency or regularity.

89.    The stone altar, prayer circle, and Mesingws present no aesthetic, safety, traffic, fiscal, or other concern to Mahwah.  There is, therefore, no compelling State interest in ordering the removal of the stone altar, prayer circle, or Mesingws from Plaintiffs' land.

90.    Defendants Mahwah, Entrup, and Mulvey's actions deny Plaintiffs their rights to assemble and freely practice their religion in violation of the First and Fourteenth Amendments to the United States Constitution.

91.    Defendants Mahwah, Entrup, and Mulvey have acted under color of State Law to deprive Plaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.  Defendants Mahwah, Entrup, and Mulvey's actions were motivated by intent to interfere with Plaintiffs' civil rights, and Defendants Mahwah, Entrup, and Mulvey were at all times aware that they were acting in violation of federal laws.

92.    As a result of Defendants Mahwah, Entrup, and Mulvey's actions to block prayer and force removal of sacred sites, and if Defendants Mahwah, Entrup, and Mulvey proceed to enforce or issue additional unlawful summonses to the Ramapough in connection with their religious use of their land and/or their use of the sacred stone altar, prayer circle, and Mesingws, Plaintiffs have been and will continue to be irreparably harmed.  As a result of these harms,

Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees.

## SECOND CLAIM FOR RELIEF

United States Constitution, First Amendment —Freedom of Association
42 U.S.C. § 1983
(Defendants Mahwah, Entrup, and Mulvey)

93.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

94.     Plaintiffs have a constitutional right under the First and Fourteenth Amendments to the United States Constitution to assemble peacefully for prayer, cultural, and political activity. The First Amendment of the United States Constitution, which is made applicable to state and local governments, including defendant Township of Mahwah, New Jersey, through the Fourteenth Amendment, guarantees freedom of association by saying "Congress shall make no law ... abridging ... the right of the people to peaceably assemble."  United States Constitution, Amendment 1.

95.     The Ramapough people and allies have a right to come to Ramapough private land at 95 Halifax Rd., Mahwah, NJ, for prayer and other purposes including, but not limited to, recreation, education, hunting, fishing, or cultural and political reasons.

96.     By threatening to physically prohibit and block Ramapough and allies coming to the land, Defendants Mahwah, Entrup, and Mulvey have imposed a substantial burden on the exercise of the right of Ramapough people and allies to peaceably assemble and associate.

97.     By imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious and other purposes, Defendants Mahwah, Entrup, and Mulvey have imposed a substantial burden on the exercise of the right of Ramapough people and allies to

peaceably assemble and associate. Defendants Mahwah, Entrup, and Mulvey's threats and intimidation tactics have also caused many Ramapough members to cease use of the land.

98.     Defendants Mahwah, Entrup, and Mulvey's laws and actions deprive, and continue to deprive, Ramapough of the right to freedom of association:  (1) by substantially burdening association and assembly without a compelling governmental interest, (2) by discriminating against and targeting Ramapough for disfavor, and (3) by denying Ramapough access to the Ramapo River at Ramapough private property.  Defendants Mahwah, Entrup, and Mulvey's actions are motivated by religious animus towards the Ramapough and are intended to suppress—and have suppressed—the ability of Ramapough and guests to assemble and associate by duress or force.

99.     Defendants Mahwah, Entrup, and Mulvey have acted under color of State Law to deprive Plaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.  Defendants Mahwah, Entrup, and Mulvey's actions were motivated by intent to interfere with Plaintiffs' civil rights, and Defendants Mahwah, Entrup, and Mulvey were at all times aware that they were acting in violation of federal laws.

100.    As a result of the actions of Defendants Mahwah, Entrup, and Mulvey to block Ramapough from peaceful assembly and association, Ramapough will be, and in fact are being, irreparably harmed.  As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees

## THIRD CLAIM FOR RELIEF

United States Constitution, Fourteenth Amendment – Substantive Due Process
42 U.S.C. § 1983
(Defendants Mahwah, Entrup, and Mulvey)

101.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

102.    The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall deprive any person of life, liberty, or property, without due process of law."  United States Constitution, Amendment XIV, Section 1.  Plaintiffs possess a constitutional right to the use and enjoyment of their property – the land at Sweet Water.

103.    By applying zoning regulations to Plaintiffs in a discriminatory manner, imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious purposes, including prayer, and by using threats and intimidation tactics to cause Ramapough members to cease use of the land, Defendants Mahwah, Entrup, and Mulvey have violated Plaintiffs' constitutional right to the use and enjoyment of their land in a manner that shocks the conscience.

104.    Defendants Mahwah, Entrup, and Mulvey's actions are motivated by religious animus toward the Ramapough, and are intended to deprive Plaintiffs of the use and enjoyment of their land solely based on that impermissible animus.

105.    Defendants Mahwah, Entrup, and Mulvey have acted under color of State Law to deprive Plaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.  Defendants Mahwah, Entrup, and Mulvey's actions were motivated by intent to interfere with Plaintiffs' civil rights, and

Defendants Mahwah, Entrup, and Mulvey were at all times aware that they were acting in violation of federal laws.

106.    As a result of Defendants Mahwah, Entrup, and Mulvey's actions to deprive Plaintiffs of the use and enjoyment of their land based on religious animus, Plaintiffs have been and will continue to be irreparably harmed.  As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees.

### FOURTH CLAIM FOR RELIEF

42 U.S.C. § 1985 – Conspiracy to Violate Civil Rights
(All Defendants)

107.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

108.    Plaintiffs have a constitutionally protected right under the First and Fourteenth Amendments to the United States Constitution to freely practice their religion.

109.    Upon information and belief, the Polo Club has conspired with one or more of the other Defendants for the purpose of depriving Plaintiffs of (1) equal protection of the law and (2) equal protection and immunities under the law; and for the purpose of preventing and hindering the constituted authorities from giving and securing to Plaintiffs equal protection of the law.

110.    Upon information and belief, Defendants did and caused to be done an act or acts in furtherance of the object of the conspiracy, whereby Plaintiff was deprived of the rights and privileges as set forth above.

111.    Upon information and belief, Defendants' actions are motivated by religious animus towards Plaintiffs and were intended to deprive Plaintiffs of their civil rights, particularly Plaintiffs' right to free assembly and free exercise of religion.

112.    As a result of the actions of Defendants, Plaintiffs have been and will continue to be irreparably harmed. As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees.

### FIFTH  CLAIM FOR RELIEF

Substantial Burdens
Religious Land Use and Institutionalized Persons Act
42 U.S.C. §2000cc
(Defendant Mahwah)

113.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

114.    RLUIPA prohibits substantial burdens being placed on Ramapough religious exercise by prohibiting Defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." 42 U.S.C. § 2000cc(a).

115.    Defendant Mahwah's coercive actions in impeding Ramapough's exercise of religion and assembly constitute the imposition or implementation of a land use regulation in a manner substantially burdening religious exercise within the meaning of RLUIPA, 42 U.S.C. § 2000cc(a)(1).

116.    Defendant Mahwah's actions substantially burden the religious exercise of the Ramapough who wish to freely practice their religion at Sweet Water.  Defendant Mahwah's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

117.    Defendant Mahwah's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant Mahwah was at all times aware that it was acting in violation of federal laws.

118.    Defendant Mahwah has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner substantially burdening religious exercise within the meaning of RLUIPA.

119.    Defendant Mahwah's actions are in violation of RLUIPA.

### SIXTH CLAIM FOR RELIEF

"Equal Terms"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(1)
(Defendant Mahwah)

120.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

121.    RLUIPA prohibits discrimination and exclusion of Ramapough regarding land use regulations by prohibiting Defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).

122.    Defendant Mahwah's coercive actions in impeding Ramapough's exercise of religion and assembly constitute the imposition or implementation of a land use regulation in a manner treating Ramapough on less equal terms as prohibited by RLUIPA, 42 U.S.C. § 2000cc(b)(1).

123.    Defendant Mahwah's actions substantially burden the religious exercise of the Ramapough who wish to freely practice their religion at Sweet Water. Defendant Mahwah's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

124.    Defendant Mahwah's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant Mahwah was at all times aware that it was acting in violation of federal laws.

125.    Defendant Mahwah has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

126.    Defendant Mahwah's actions are in violation of RLUIPA.

### SEVENTH CLAIM FOR RELIEF

"Exclusion and Limits"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(3)(A)
(Defendant Mahwah)

127.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

128.    RLUIPA prohibits exclusion of religious assemblies through the "impos[ition] or implement[ation of] a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(A) and (B).

129.    Defendant Mahwah's attempts to forcibly remove Ramapough from the land, coercive actions to impede the Ramapough's exercise of religion and assembly, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation that totally excludes religious assemblies from a

jurisdiction and/or unreasonably limits religious assemblies, institutions or structures as prohibited by RLUIPA, 42 U.S.C. § 2000cc(b)(3)(A) and (B).

130.   Defendants Mahwah's actions substantially burden the religious exercise of the Ramapough who wish to freely practice their religion at Sweet Water.  Defendant Mahwah's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

131.   Defendant Mahwah's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant Mahwah was at all times aware that it was acting in violation of federal laws.

132.   Defendant Mahwah has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner that totally excludes religious assemblies from a jurisdiction and/or unreasonably limits religious assemblies, institutions or structures within a jurisdiction.

133.   Defendant Mahwah's actions are in violation of RLUIPA.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants as follows:

A.   An order declaring that Defendants' actions and inactions, as described herein, violate Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and RLUIPA.

B.   An order permanently enjoining Defendants from actions that violate the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and RLUIPA.

C.      An order permanently enjoining Defendants from seeking to force the removal of Ramapough's sacred altar.

D.      An order permanently enjoining Defendants from seeking to force the removal of Ramapough's sacred prayer circle.

E.      Annulment of cumulative fines currently sought by defendant Mahwah based on Mahwah's April 24, 2018 letter and related summonses.

F.      Awarding the costs of this action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

G.      Awarding compensatory and punitive damages in an amount to be determined at trial; and

H.      Awarding such other and further relief as this Court deems appropriate.

The Plaintiffs demand a trial by jury of all issues for which Plaintiffs are entitled to such a jury trial.

Dated:  New York, New York
        September 21, 2018

_____
Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 0854
(609) 986-1120
diane.sullivan@weil.com

Kevin J. Arquit (admitted *pro hac vice*)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
kevin.arquit@weil.com

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

(212) 614-6464

Valeria A. Gheorghiu
Law Office of Valeria A. Gheorghiu
113 Green Street, Suite 2
Kingston, NY 12401
(914) 772-7194

Jonathan Wallace (admitted *pro hac vice*)
P.O. Box 728
Amagansett, New York 11930
(917) 359-6234

*Attorneys for Plaintiffs*

# EXHIBIT A



# *Township Of Mahwah*

Municipal Offices: 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Board of Adjustment x 245

Property Maintenance x 246

Zoning/Planning Board x 245

September 15, 2017

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,
AND REGULAR MAIL**

Chief Dwaine Perry
Ramapough Mountain Indians, Inc.
189 Stag Hill Road
Mahwah, New Jersey 07430

RE:   95 Halifax Road
      **Rescinding of Zoning Permit**
      Block 1, Lot 131
      Township of Mahwah
      Our File No. MA-40-47

Dear Chief Perry:

The undersigned is the Zoning Officer for the Township of Mahwah (the "Township"). This letter is being sent to you in connection with the above referenced matter. A copy of this letter is also being sent to counsel for the Ramapough Mountain Indians, Inc. ("RMI"), Aaron Kleinbaum, Esq. and Thomas W. Williams, Esq. The purpose of this letter is to advise that Zoning Permit No. 20120010.000 dated January 25, 2012 (the "Permit") and issued by the former Zoning Officer, Gary L. Montroy, for the construction of a longhouse to be used for prayer and community cultural assembly on premises known as 95 Halifax Road, Mahwah, NJ (the "Property") is hereby rescinded for the reasons set forth herein. A copy of said Permit, as well as the permit application submitted by the RMI, are attached to this letter.

**A.   Gary Montroy had no authority to issue the Zoning Permit.**

By way of background, on January 25, 2012, Mr. Montroy, in his then capacity as Zoning Officer, issued said Zoning Permit approving the construction of "building longhouse to be used for prayer and community cultural assembly" on the subject Property. At the time of that application, and at the current time, the subject Property was located in the Township of Mahwah's Conservation (C-200) Zone. Houses of worship were, and still are, not a principal permitted use in the C-200 Zone. Mr. Montroy had no authority to issue a Zoning Permit to permit the use of the Property for prayer and assembly as said use, as aforesaid, is contrary to the Township's Land Development Ordinance (the "Ordinance"). As such, the action taken by Mr. Montroy was void

and is contrary to the Township's Ordinance. The Township Zoning Board of Adjustment is the sole body to grant a use variance pursuant to N.J.S.A. 40:55D-70d(1) to permit the Property to be used in a manner which is not contemplated or permitted by the Township's Ordinance.

**B.    Site Plan Approval and Other Relief was Required Prior to the Erection of a Longhouse on the Property.**

Furthermore, site plan approval and other relief was required to be obtained by the RMI pursuant to Chapter XXII (Site Plan Review) of the Township's Ordinance. The subject longhouse is a structure pursuant to the Ordinance and the Municipal Land Use Law, which both define a structure as "a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land". In addition, the Township's Ordinance, in part, provides that "no permanent structure or building or any enlargement of same which is used or designed to be used for housing, commerce, industry or public activity shall be located in a floodplain or flood hazard area." In sum, the RMI were obligated to obtain site plan and other approvals from the Township prior to constructing a longhouse on the Property.

**C.    The RMI were Required to Obtain a Building Permit Prior to the Erection of the Longhouse on the Property.**

A Zoning Permit is not the equivalent of a Building Permit. I direct your attention to §24-11.3 of the Township's Zoning Ordinance. No Building Permit was applied for, nor granted by the Township in connection with said longhouse. The RMI were also obligated to, notwithstanding the issuance of the subject Zoning Permit, obtain a Building Permit. I understand that Chief Mann was advised by Mr. Montroy of his obligation to obtain a Building Permit, site plan and all additional approvals required by the Township's Ordinance. The RMI, contrary to the Ordinance, Municipal Land Use Law and Mr. Montroy's advice, failed to apply for a building permit. In addition thereto, an inspection of such longhouse would be required to be conducted by the appropriate Township Official during construction.

**D.    Similar Zoning Application Denied in 2017**

A Zoning Application was submitted on April 6, 2017, see copy attached, for a proposed use of Public Assembly for Religious and Cultural Purposes. This application was denied on April 13, 2017, see copies attached, of Refusal of Permit and supporting letter both dated April 13, 2017.

The Township is entitled and authorized to enforce its Ordinance. For the foregoing reasons, the Zoning Permit dated January 25, 2012 and issued by Gary L. Montroy is hereby rescinded by the undersigned on behalf of the Township of Mahwah. You may appeal the decision of the undersigned in accordance with N.J.S.A. 40:55D-70(a).

Please be guided accordingly.

Very truly yours,

Michael J. Kelly, P.E.
Administrative Officer
Department of Land Use and Property
Maintenance

MJK/mk
Attachments
cc:    Brian M. Chewcaskie, Esq.
       Thomas W. Williams, Esq.
       Aaron Kleinbaum, Esq.

# EXHIBIT B



# Township Of Mahwah

Municipal Offices: 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Property Maintenance x 246

Board of Adjustment x 245                                                              Zoning/Planning Board x 245

**VIA ELECTRONIC AND**
**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

April 24, 2018

Chief Dwaine Perry
Ramapough Mountain Indians, Inc.
189 Stag Hill Road
Mahwah, New Jersey 07430

Re:   95 Halifax Road
      **Zoning & Site Plan Violations**
      Block 1, Lot 131
      Township of Mahwah

Dear Chief Perry:

As per the Pending Action in the Superior Court of New Jersey, Bergen County, Law Division, the Township of Mahwah (Township) and Ramapough Mountain Indians, Inc. (RMI) were to enter into a Settlement Agreement to resolve disputes relative to the above referenced property by March 28, 2018.

While the Township of Mahwah has acted in good faith to review and approved the proposed Settlement Agreement, the RMI have refused to approve and sign the Agreement.

In my January 17, 2018 report, see copy attached, we noted numerous violations with respect to the Zoning and Site Plan requirements of the Township. In addition, we noted that until proper approval is received, all non-permitted uses must cease and structures and materials associated with the site's uses were to be removed. In the event all structures and materials associated with the non-permitted uses were not removed from the site by the end of business day (4:00 p.m.) on Friday, February 2, 2018 we would recommend that daily summonses be issued for each violation for non-permitted uses occurring on site and for each structure on site and all violations noted. This deadline was not met; however, Summonses were not issued as this matter was in litigation and we were hopeful of an amicable solution. Now since it is clear that this matter is not being resolved, we are recommending that Summonses be issued.

As of Friday, April 20, 2018, the following violations were found at the above referenced site:

**Uses and Activities**

Our site observations on various days, including Friday, April 20, 2018, indicate that the property and structures on site are being used for religious uses (house of worship and prayer groups) and public assembly uses. These uses at the site are being performed without obtaining the necessary Zoning approval from the Township. Article 24-11.2c of the Township Code states:

"Zoning Permits shall be secured from the Zoning Officer prior to construction, execution or alteration of any structure or use of a structure or land.

Chief Dwaine Perry
April 24, 2018
Page 2

Proper zoning approval has not been received for the uses and the structures utilized for these uses on site.

In addition, Article 24-4.2a of the Township Code states:

"No building or structure shall be erected and no existing building or structure shall be moved, altered, added or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses thereinafter listed as permitted in which building or land is located."

As you know, the property in question is located in the Township's Conservation (C-200) Zone. As per the Township Code, the following are permitted principal uses in the C-200 Zone:

1.    Public open space, including hiking, horseback riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishings facilities, other similar uses.

2.    Agricultural uses, farms, subject to subsection 24-6.1, paragraph a.

3.    Single-family detached residences, with 200,000 sq. ft. minimum lots.

4.    Municipal facilities.

In addition to the permitted principal uses, a number of accessory and conditional uses are permitted in this zone, none of which would apply to the uses being performed at the site. The uses being performed at the site are clearly not listed as permitted uses in this zone and as per Article 24-1.3b of the Township Zoning Code.

"The Zoning Ordinance for the Township shall be viewed as a permissive ordinance. In no instance after the adoption of this Chapter shall any use be permitted in the Township which is not listed as a permitted, accessory or conditional use as specified herein. Any uses not permitted or specified shall be prohibited."

**Structures**

Based on numerous site observations, we have found a number of structures on site. As per Article 24-2.2 of the Township Code and NJSA 40:55D-7, a structure is defined as:

"A combination of materials to form a construction for occupancy, use or ornamental whether installed on, above, or below the surface of a parcel of land."

Based on our most recent site observation performed on Friday, April 20, 2018, we found the following structures on site:

·    Prayer circle consisting of logs stuck in-ground (totem poles), former pieces of longhouse.
·    Stone altar located at the south side of the site.

As per Article 24-11.2c of the Township Code, see above, Zoning Permits are required prior to construction, execution or alteration of any structure or use of a structure or land.

**Site Plan Approval**

Site plan approval has not been obtained for uses of the property, for the installation of structures or for the driveway and access points at the site.

Chief Dwaine Perry
April 24, 2018
Page 3

Article 22-3.2d of the Township Code states:

"Except as provided in paragraphs b., 1. and 2. herein, all construction, alteration or
enlargement of a building, structure or use or change of use or occupancy on or in a
nonconforming structure, use or lot shall require site plan approval."

**Township Floodplain and Flood Hazard Areas**

The structures on site are used for religious uses and public activity and are located within the
floodplain and flood hazard area of the Ramapo River and are not developed above the maximum
flood elevation.

Article 24-6.1h(1) of the Township Code states:

"No permanent structure or building or any enlargement of same which is used or designated to
be used for housing, commerce, industry or public activity shall be located in a floodplain or
flood hazard area.  Exceptions to this restriction shall include uses which are developed above
the maximum flood elevation with appropriate access provided or as provided in Chapter XVIII
of the Code, as may be amended".

In addition, Article 24-6.1h(3) lists the uses permitted within a floodplain or flood hazard area.  These
uses are:

(a) Agriculture and horticultural uses as defined in this Chapter, except for a farmhouse.

(b) Outdoor recreational facilities, including golf course, ice-skating rinks, swimming pools, parks,
playfields and other similar facilities.

(c) Essential services.

(d) In addition, all requirements of Chapter XVIII of the Code, as may be amended, shall be
complied with.  In the event that any of these subsections are inconsistent with the Chapter, the
more restrictive provisions shall apply.

The uses at the site do not meet these requirements.

Our office is seeking compliance for the continued violations that are present at the site.

Since the uses occurring on site are not permitted uses, to obtain proper approval, a complete Board of
Adjustment Application is required to be submitted to the Township's Department of Land Use for
Use Variance Approval.  Also, Site Plan Approval will be required as noted above.

Since proper approval has not been received for the items noted above and since the RMI have not
entered into the Settlement Agreement to amicably resolve these issues, we are issuing Summonses for

Chief Dwaine Perry
April 24, 2018
Page 4

the violations occurring at the site.  These Summonses are retroactive to Thursday, March 29, 2018, the day after the deadline to enter into a Settlement Agreement.  The Summonses are for each weekday up to, and including, Friday April 20, 2018 for a total of 17 days.  We will continue to issue daily Summonses for each violation until this matter is resolved.  Summonses for each of the following violations will be issued by the Municipal Court:

| Article 24-11.2c | Failure to Obtain Zoning Permit for Use – Religious Use |
| Article 24-11.2c | Failure to Obtain Zoning Permit for Use – Public Assembly |
| Article 24-11.2c | Failure to Obtain Zoning Permit for Structure – Prayer Circle |
| Article 24-11.2c | Failure to Obtain Zoning Permit for Structure – Stone Altar |

| Article 22-3.2d | Failure to Obtain Site Plan Approval for Use – Religious Use |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Use – Public Assembly |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Structure – Prayer Circle |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Structure – Stone Altar |

| Article 24-6.1h(1) | Location of Structure Within Floodplain and Flood Hazard Area Without Proper Approval – Prayer Circle |
| Article 24-6.1h(1) | Location of Structure Within Floodplain and Flood Hazard Area Without Proper Approval – Stone Altar |

Thank you for your kind attention to this matter.  Should you have any questions or comments, please do not hesitate to contact me.

                    Very truly yours,

                    Geraldine Entrup

                    Geraldine Entrup
                    Administrative Officer

GE/jg
Enclosure

cc:     The Honorable Mayor and Council
        Township of Mahwah Board of Adjustment
        Quentin Wiest, Township Business Administrator
        Kathrine G. Coviello, Township Clerk
        Tom Mulvey, Property Maintenance
        James N. Batelli, Chief, Mahwah Police Department
        Brian M. Chewcaskie, Esq.
        Michael J. Kelly, P.E., Boswell Engineering
        Thomas W. Williams, Esq.

180116JGl1.doc

# EXHIBIT C
# (EXCERPTED)

# EXCERPT

AUDIO TRANSCRIPTION

MAHWAH TOWN COUNCIL MEETING


DATES: JANUARY 18, 2018

FEBRUARY 8, 2018

FEBRUARY 22, 2018

MARCH 22, 2018

APRIL 5, 2018

APRIL 19, 2018

MAY 17, 2018


ATKINSON-BAKER,
INC. COURT
REPORTERS
800-288-3376
www.depo.com


REPORTED BY:    Tammy Moon, CSR No. 13184

FILE NO.: AC05B1C

1

Atkinson-Baker Court Reporters
www.depo.com

```
 1   APPEARANCES:

 2

 3   COUNCIL PRESIDENT ROBERT HERMANSEN

 4   TOWN ATTORNEY BRIAN CHEWCASKIE

 5   MAYOR WILLIAM LAFORET

 6   KATHLEEN MURRAY

 7   PAUL SCIAN

 8   MICHAEL KELLY

 9   STEPHEN MURRAY

10   CHARLES BRAMMER

11   THOMAS POWERS

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Atkinson-Baker Court Reporters
www.depo.com

```
1                          I N D E X

2                MAHWAH TOWN COUNCIL MEETING

3

4     DATE          SPEAKER           TIME              PAGE

5     1/18/18       Kathleen Murray   15:51-18:21       4

6     2/8/2018      Paul Scian        33:19-43:07       7

7     2/8/2018      Michael Kelly     1:34:36-1:49:07   15

8     2/22/2018     Paul Scian        40:02-45:08       28

9     2/22/2018     Kathleen Murray   45:15-54:08       32

10                  Stephen Murray

11    3/22/18       Kathleen Murray   50:28-1:08:03     40

12    3/22/18       Charles Brammer   1:08:13-1:14:00   56

13    3/22/18       Thomas Powers     1:14:16-1:17:55   60

14    4/5/18        Paul Scian        7:23-11:40        64

15    4/5/18        Kathleen Murray   11:55-16:32       67

16    4/19/18       Paul Scian        1:11-14:34        72

17    4/19/18       Charles Brammer   14:42-23:14       83

18    4/19/18       Kathleen Murray   23:24-33:40       91

19    5/17/18       Paul Scian        0:45-10:47        99

20

21

22

23

24

25
```

3

```
 1    kind of let us know.  If you -- and from getting from

 2    here, from the attorney and yourselves, this is kind

 3    of -- is the situation.  That's where we're going.

 4            And so we'll -- I'll -- if -- I'll take that by

 5    the guidance of the attorney that we may have something

 6    to be talking about further next week.

 7            MR. SCIAN:  And I'll see you in two weeks.

 8            COUNCIL PRESIDENT ROBERT HERMANSEN:  Okay.

 9

10    (End of requested portion of audio transcription.)

11

12    DATE:  February 22, 2018 (45:15-54:08)

13

14            MS. MURRAY:  Kathy Murray, 88 Bridle Path Lane.

15            MR. MURRAY:   Steve Murray from the same

16    address.

17            MS. MURRAY:  Thank you for that wonderful

18    segway, Mr. Hermansen.  Because with that settlement

19    agreement negotiation thing going on next week, I'm here

20    because I did want to remind the representatives from

21    the town.  And perhaps fill in a little bit, not a lot,

22    from some of you who aren't too familiar.

23            I am happy that we have someone at the table.

24    Of course, I know that the town -- it's -- it's

25    basically between the town attorney and the RMI
```

1          Thus far, we have had to spend over a quarter

2   of a million dollars in legal fees.   That's money we

3   should never have had to spend.   If that zoning permit

4   had never been issued, we would not be here.   And that's

5   not even counting lost property value that we have all

6   suffered.

7          The settlement here is a chance for the town to

8   begin to set things right, and we are hoping that the

9   town will take a strong stand following the guidelines

10  of what Judge McGeady laid down as far as moving all

11  those structures.   And then what Mike Kelly and Geri

12  Entrup have both said as far as what is

13  permitted and what is not permitted on the property,

14  nothing should be added as far as what is permitted.

15          There are only four uses permitted.   And if

16  it's not there, it shouldn't be permitted.   And it

17  shouldn't be in the settlement.   All we are asking --

18  all we ever ask -- all we have ever asked is for the

19  town to enforce its laws and ordinances.   We're not

20  asking for any special treatment.   Just enforce the law.

21          We like everything that -- you know, everything

22  that's there should be removed, because it shouldn't be

23  there.   And have the RMI go to the appropriate boards

24  for appropriate permissions if they want to do

25  something.   And we're hopeful that's exactly what the

# EXHIBIT D



# Township Of Mahwah

Municipal Offices: 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Property Maintenance x 246

Board of Adjustment x 245                                                                   Zoning/Planning Board x 245

**VIA ELECTRONIC AND**
**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

January 17, 2018

Chief Dwaine Perry
Ramapo Mountain Indians, Inc.
189 Stag Hill Road
Mahwah, New Jersey 07430

Re:    95 Halifax Road
**Zoning & Site Plan Violations**
Block 1, Lot 131
Township of Mahwah
Our File No. MA-40-47

Dear Chief Perry:

The Township continues to find and experience numerous violations at the above referenced site with respect to uses of the site, structures at the site, failure to obtain site plan approval and Township floodplain and flood hazard areas requirements.  Please see our findings below.

## Uses and Activities

Our site observations on various days, including yesterday, indicate that the property and structures on site are being used for religious uses (house of worship and prayer groups), public assembly uses and as a campground. These uses at the site are being performed without obtaining the necessary Zoning approval from the Township.  Please note that Article 24-11.2c Township Code states:

> "Zoning Permits shall be secured from the Zoning Officer prior to construction, execution or alteration of any structure or use of a structure or land."

Proper zoning approval has not been received for the uses and the structures utilized for these uses on site.

In addition, Article 24-4.2a of the Township Code states:

> "No building or structure shall be erected and no existing building or structure shall be moved, altered, added or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses thereinafter listed as permitted in which building or land is located."

Chief Dwaine Perry
January 17, 2018
Page 2

As you know, the property in question is located in the Township's Conservation (C-200) Zone. As per the Township Code, the following are permitted principal uses in the C-200 Zone:

1.    Public open space, including hiking, horseback riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, other similar uses.

2.    Agricultural uses, farms, subject to subsection 24-6.1, paragraph a.

3.    Single-family detached residences, with 200,000 sq. ft. minimum lots.

4.    Municipal facilities.

In addition to the permitted principal uses, a number of accessory and conditional uses are permitted in this zone, none of which would apply to the uses being performed at the site. The uses being performed at the site are clearly not listed as permitted uses in this zone. Article 24-1.3b of the Township Zoning Code states:

> "The Zoning Ordinance for the Township shall be viewed as a permissive ordinance. In no instance after the adoption of this Chapter shall any use be permitted in the Township which is not listed as a permitted, accessory or conditional use as specified herein. Any uses not permitted or specified shall be prohibited."

## Structures

Based on numerous site observations, we have found many structures on site. As per Article 24-2.2 of the Township Code and NJSA 40:55D-7, a structure is defined as:

> "A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land."

Based on our most recent site observation, performed yesterday, we found the following nine (9) structures on-site:

- Storage shed located in the woods at the west side of the site.
- A canvas cabin located at the north side of the site, to the east of the driveway from Bridal Path Lane.
- Prayer circle consisting of logs stuck in-ground (totem poles), former pieces of longhouse.
- Portable toilet at the north side of the site, to the west of the driveway from Bridal Path Lane.
- Yurt at the north side of the site, to the east of the driveway from Bridal Path Lane.
- Pop-up shed located at the east side of the site.
- A structure made of lumber with roof and floor (known as kitchen structure).
- Sweat lodge at the west side of the site.
- Stone altar located at the south side of the site.

As per Article 24-11.2c of the Township Code, see above, Zoning Permits are required prior to construction, execution or alteration of any structure or use of a structure or land.

Chief Dwaine Perry
January 17, 2018
Page 3

It should be noted that in the decision made in Municipal Court by Judge McGeady on November 17, 2017, the structures placed on site were installed without obtaining prior zoning approval.

**Site Plan Approval**

Site plan approval is required and has not been obtained for uses of the property or for the installation of structures.

Article 22-3.2d of the Township Code states:

> "Except as provided in paragraphs b., 1. and 2. herein, all construction, alteration or enlargement of a building, structure or use or change of use or occupancy on or in a nonconforming structure, use or lot shall require site plan approval."

**Township Floodplain and Flood Hazard Areas**

The structures used on site for religion uses and public activity are located within the floodplain and flood hazard area of the Ramapo River and are not developed above the maximum flood elevation.

Article 24-6.1h(1) of the Township Code states:

> "No permanent structure or building or any enlargement of same which is used or designated to be used for housing, commerce, industry or public activity shall be located in a floodplain or flood hazard rea. Exceptions to this restriction shall include uses which are developed above the maximum flood elevation with appropriate access provided or as provided in Chapter XVIII of the Code, as may be amended."

In addition, Article 24-6.1h(3) of the Township Code lists the uses permitted within a floodplain or flood hazard area. These uses are:

(a) Agriculture and horticultural uses as defined in this Chapter, except for a farmhouse.

(b) Outdoor recreational facilities, including golf course, ice-skating rinks, swimming pools, parks, playfields and other similar facilities.

(c) Essential services.

Chief Dwaine Perry
January 17, 2018
Page 4

    (d) In addition, all requirements of Chapter XVIII of the Code, as may be amended, shall be complied with. In the event that any of these subsections are inconsistent with the Chapter, the more restrictive provisions shall apply.

The uses at the site do not meet these requirements.

Our office is seeking compliance for the continued violations that are present at the site.

Until proper approval is received, all non-permitted uses must cease and structures and materials associated with the site's uses must be removed. Should you fail to have all structures and materials associated with the non-permitted uses removed from the site by the end of business day (4:00 p.m.) on Friday, February 2, 2018, we will recommend that a daily summons be issued for each violation for non-permitted uses occurring on site, for each structure on site and all violations noted above. Since the uses occurring on site are not permitted uses, to obtain proper approval, a completed Board of Adjustment Application will be required to be submitted to the Township's Department of Land Use for Use Variance approval. Also, site plan approval will be required as noted above.

Thank you for your kind attention to this matter. Should you have any questions or comments, please do not hesitate to contact me.

                Very truly yours,

                *Geraldine Entrup*

                Geraldine Entrup
                Administrative Officer

GE/jg
cc:    The Honorable Mayor and Council
       Township of Mahwah Board of Adjustment
       Quentin Wiest, Township Business Administrator
       Kathrine G. Coviello, Township Clerk
       Tom Mulvey, Property Maintenance
       James N. Batelli, Chief, Mahwah Police Department
       Brian M. Chewcaskie, Esq.
       Michael J. Kelly, P.E., Township Engineer
       Thomas W. Williams, Esq.

180117JGH.doc

# EXHIBIT E

01-30-'12 15:12 FROM-                                                    T-153  P0002/0004 F-308

# Zoning Permit

| | | | | |
|---|---|---|---|---|
| Application #: | 2733 | Permit No: | 20120010.000 | Issue Date: | 01/25/2012 |

| | | | |
|---|---|---|---|
| Construction Control Number : | 63604 | | Voucher/Receipt #: | 0 |

| | | | | | |
|---|---|---|---|---|---|
| Block: | 1 | Lot: | 131 | Qualifier: | Check #: 1244 |
| | | | | | Amount collected: $0.00 |

Work Site:      95 HALIFAX RD                                    Zone:      **Default**

| | | |
|---|---|---|
| Owner: | RAMAPOUGH MOUNTAIN INDIANS,INC. | Agent:  RAMAPOUGH MOUNTAIN INDIANS,INC. |
| Address: | 189 STAG HILL ROAD | Address: |
| City/State/Zip: | MAHWAH NJ 07430 | City/State/Zip: |
| Telephone: | _____-____ | Telephone: . _____-_____ |
| Fax: | (__)-__-____ | Fax:  (__)-__-____ |
| EMail: | | EMail : |
| Tenant: . | | |

This is to certify that the above-described premises together with any building thereon, are approved for use as indicated below and as depicted on the Plot Plan:

**BUILDING LONGHOUSE TO BE USED FOR PRAYER AND COMMUNITY CULTURAL ASSEMBLY**

Which is a:

[ X ]   Use permitted by Zoning Ordinance, Article - **ARTICLE**    Section - **STAT.**
              *as per D.E.P.*

[  ]    Use permitted by  variance approved on _____ , #_____ subject to any special conditions attached to the
        grant thereof.

[  ]    Valid nonconforming use as established by ( ) findings of the Zoning Board of Adjustment or by ( )
        the undersigned zoning officer or  by ( ) Planning Board on the basis of evidence supplied by applicant. Conditions, if any:

[ ]     There is a nonconforming structure on the premises by reason of insufficient

[  ]    Other:

_Gary L. Montroy_

Gary L. Montroy                                                                      **Zoning Official**

### This is NOT a Construction Permit

# EXHIBIT F

**BEATTIE PADOVANO, LLC**
Arthur N. Chagaris, Esq., 000741975
50 Chestnut Ridge Road, Suite 208
Montvale, New Jersey 07645
(201) 573-1810
Attorneys for Plaintiff
Ramapo Hunt & Polo Club Association, Inc.

F I L E D

DEC 1 5 2017

CHARLES E. POWERS, J.S.C.

| | |
|---|---|
| RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RAMAPOUGH MOUNTAIN INDIANS, INC., and TOWNSHIP OF MAHWAH <br><br> Defendants. | SUPERIOR COURT OF NEW JERESEY LAW DIVISION: BERGEN COUNTY <br><br> DOCKET NO. L-6409-17 <br><br> CIVIL ACTION <br><br> **ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS** |

**THIS MATTER** having been brought before the Court by Beattie Padovano, LLC,

attorneys for Plaintiff Ramapo Hunt & Polo Club Association, Inc., seeking relief by way of a

Verified Complaint seeking injunctive relief pursuant to Rule 4:52 and based upon the facts set

forth in the supporting Certifications, exhibits, and Memorandum of Law filed herewith; and the

Court having considered the foregoing papers in support of the application, and for good cause

shown;

It is on this ___15___ day of ~~September~~ December, 2017,

**ORDERED** that Defendant Ramapough Mountain Indians, Inc. appear and show cause

before the Superior Court of New Jersey at the Bergen County Courthouse in Hackensack, New

Jersey at 9:00 o'clock in the forenoon or as soon thereafter as counsel can be heard, on the 29th

day of September, 2017 why an Order should not be issued:

(A) Preliminarily enjoining and restraining Defendant Ramapough Mountain Indians,

Inc., and/or any affiliated person or entity from conducting, permitting or otherwise engaging in

DENIED

DENIED

the following activities on and at the property commonly known as 95 Halifax Road, Mahwah,

New Jersey (the "Property"):

1.  Engaging or allowing any religious, house of worship, or prayer camp or other activity on the Property until such time as a use variance or site plan approval has been obtained for same;

2.  Allowing anyone to stay or camp on the Property overnight;

3.  Having large gatherings on the Property (defined as more than five persons on the Property);

4.  Publically displaying movies or music on the Property;

5.  Cooking or serving food and/or beverages on the Property for the RMI and their visitors and guests and occupants;

6.  Engaging in the use of any lighting installed on the Property not specifically approved or included on prior approved site plans, including, but not limited to, the prohibition of the solar windmill for utility services;

7.  Engaging in activities that cause loud noises, smoke, and air and water pollution;

8.  Parking or allowing invitees or guests to park on Bridle Path Lane, Halifax Road, and/or Polo Lane in the Township of Mahwah;

9.  Parking on the Property until a site plan is approved which approves a portion of the Property as an off-site parking area and a driveway permit is obtained.

10. Parking on the Property until a driveway permit is obtained, as required; and

(B) Consolidating this action under Rule 4:38-1 with the related action in the New Jersey

Superior Court, Law Division: Bergen Vicinage, entitled Township of Mahwah v. Ramapough

Mountain Indians, Inc., Docket No. BER-L-3189-17.

**AND IT IS FURTHER ORDERED** that pending the return date hereof:

1.  Defendant Ramapough Mountain Indians, Inc., and/or any affiliated person or entity, be and are hereby enjoined and restrained from conducting, permitting or otherwise engaging in the following activities at the property commonly known as 95 Halifax Road, Mahwah, New Jersey (the "Property"):

2

A.   Engaging or allowing any religious, house of worship, or prayer camp or other activity on the Property until such time as a use variance or site plan approval has been obtained for same;

B.   Allowing anyone to stay or camp on the Property overnight;

C.   Having large gatherings on the Property (defined as more than five persons on the Property);

D.   Publically displaying movies or music on the Property;

E.   Cooking or serving food and/or beverages on the Property for the RMI and their visitors and guests and occupants;

F.   Engaging in the use of any lighting installed on the Property not specifically approved or included on prior approved site plans, including, but not limited to, the prohibition of the solar windmill for utility services;

G.   Engaging in activities that cause loud noises, smoke, and air and water pollution;

H.   Parking or allowing invitees or guests to park on Bridle Path Lane, Halifax Road, and/or Polo Lane in the Township of Mahwah;

I.   Parking on the Property until a site plan is approved which approves a portion of the Property as an off-site parking area and a driveway permit is obtained.

J.   Parking on the Property until a driveway permit is obtained, as required.

**AND IT IS FURTHER ORDERED THAT:**

2.   A copy of this Order to Show Cause, together with Plaintiff's supporting papers, be served upon Thomas Williams, Esq., and Aaron Kleinbaum, Esq., attorneys for Defendant Ramapough Mountain Indians, Inc., and upon Brian M. Chewcaskie, Esq., attorney for Defendant Township of Mahwah, by e-mail, personal service or overnight, next day delivery, within _____ days of the date hereof; and

3.   Plaintiff shall file with the Court proof of service no later than three (3) days before the return date hereof.

3

4.      Defendants shall file and serve a written response to this Order to Show Cause and the request for entry of preliminary injunctive relief with proof of service by _____, 2017. The original documents must be filed with the Clerk of the Superior Court of Bergen County. You must send a copy of your opposition papers directly to Judge _____, Presiding, whose address is Bergen County Courthouse, 10 Main Street, New Jersey 07601. You must also send a copy of your opposition papers to the Plaintiffs' attorney, whose name and address appears above. A telephone call will not protect your rights; you must file your opposition and pay the required fee.

5.      Plaintiff must file and serve any written reply to the Defendants' opposition to this Order to Show Cause by October ____, 2017. The reply papers must be filed with the Clerk of the Superior Court of Bergen County and a copy of the reply papers must be sent directly to the chambers of _____ Presiding.

6.      If the Defendants do not file and serve opposition to this Order to Show Cause, the application will be decided on the papers on the return date and relief may be granted by default.

7.      If Plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than three (3) days before the return date.

8.      The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the Court and parties are advised to the contrary no later than _____ days before the return date.

4

9.     That Defendants shall file and serve their Answer to Verified Complaint within thirty five (35) days of the date of service thereof. If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against the Defendants for the relief of plaintiff's demands, plus interest and costs of suit. If judgment is entered against the Defendants, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

_____

CHARLES E. POWERS, J.S.C.

_____ Opposed

_____ Unopposed

5

2931714_4\170558

# EXHIBIT G
# (EXCERPTED)

# EXCERPT

```
                          SUPERIOR COURT OF NEW JERSEY
                          LAW DIVISION: CIVIL PART
                          BERGEN COUNTY
                          DOCKET NO: L-3189-17
                          A.D. # _____
```

TOWNSHIP OF MAHWAH,        )
                          )
      Plaintiff,        )
                          )          TRANSCRIPT
    vs.                   )              OF
                          )            MOTION
RAMAPOUGH MOUNTAIN INDIANS )
INC.,                     )
                          )
      Defendant.        )

```
                     Place: Bergen County Justice Center
                            10 Main Street
                            Hackensack, New Jersey 07601

                      Date: January 5, 2018
```

BEFORE:

    HONORABLE CHARLES POWERS, J.S.C.

TRANSCRIPT ORDERED BY:

    STEVEN SMITH, ESQ.

APPEARANCES:

    BRIAN CHEWCASKIE, ESQ. (Gittleman, Muhlstock &
    Chewcaskie, LLP.)
    Attorney for Township of Mahwah

    ARTHUR CHAGARIS, ESQ. (Beattie Padovano, LLC)
    Attorney for Mahwah Hunt & Polo Club

    RAGHU MURTHY, ESQ.  (Eastern Environmental Law
    Center)
    Attorney for Ramapough Mountains Indians

    AARON KLEINBAUM, ESQ.  (Eastern Environmental Law
    Center)
    Attorney for Ramapough Mountains Indians

```
                     Transcriber: Teresa Ulrich
                     Phoenix Transcription, LLC
                     796 Macopin Rd.
                     West Milford, NJ  07480
                     (862)248-0670

                     Audio Recorded
                     Recording Opr: Lucila Caraballo
```

1    We had our preliminary restraints, those were dissolved

2    by this Court.

3          The complaint wasn't dismissed.  What happens

4    is, is we may have not been able to prove to Your

5    Honor's satisfaction the requirements for a preliminary

6    injunction but certainly the case continues.  That case

7    should continue through discovery.

8          What's interesting is I serve a subpoena on a

9    person who acted as a consultant, I won't say that that

10   person was an attorney.  We served discovery, defendant

11   served discovery and the day before it's due we get a

12   letter that says we're not -- the defendant says we're

13   not complying we're going to file a motion to dismiss.

14   A month later, that motion to dismiss is filed.

15         The Township of Mahwah deserves the correct

16   remedy; seeks the Court intervention.  If we need to

17   proceed let's proceed in accordance with the rules and

18   in accordance with the statute.  There are a number of

19   cases that indicate that injunctive relief, as we cited

20   in the brief, are appropriate for the enforcement of a

21   zoning ordinance because what the Municipal Court did

22   is not the relief we are seeking here.

23         As indicated, that is an inferior court with

24   very limited jurisdiction.  So what happens now; if the

25   Court dismisses this complaint than the Township will

1    exercise whatever rights it may have pursuant to the

2    law.  The Township does not want to exercise self-help,

3    we want to proceed in accordance with the rules under

4    the statute.  The Township has been very patient; the

5    Township has not issued any additional summonses, has

6    not taken any specific, what I would call, actual

7    enforcement action.  This is the enforcement action.

8            This case should proceed to discovery and a

9    decision based upon what we see here because we have a

10   determination from the Municipal Court that there was a

11   violation of the ordinance.  There's been an assessment

12   of the fine, the conduct has not ceased nor has there

13   been a good faith attempt on the defendants to assure

14   that that conduct would in fact be reviewed and maybe

15   permitted by going through the appropriate process.

16           As a matter of fact, there was something

17   submitted that was submitted and utilized in this

18   Court; at the time there was the motion to dissolve the

19   restraints and then it was withdrawn.  Any action that

20   has been taken by the Township -- there's been no

21   application filed to the zoning board of adjustment,

22   there's been no appeal filed by any of the zoning

23   officers in decision.

24           The Municipal Court has taken an action, the

25   appeal was filed but it was untimely.  If there's an

1    to be back on another action.

2              THE COURT:  I hear you.

3              MR. CHEWCASKIE:  What I said is, we're trying

4    to play by the rules, the rules would require a

5    judicial intervention as permitted pursuant to the

6    statute.  Otherwise, it's the exercise of self-help

7    which I don't believe anybody wants.

8              THE COURT:  All right anything you want to

9    add --

10             MR. CHEWCASKIE:  Thanks Your Honor.

11             THE COURT:  -- counsel.

12             MR. MURTHY:  Your Honor, regarding the

13   defendant's use of the property going forward.  We are

14   happy to sit down with the Township and work out a

15   situation where we can apply for a permit to do what we

16   can do on the property in line with the zoning permit

17   that the Township issued in January 2012 --

18             THE COURT:  Why did you withdraw the last

19   application?

20             MR. MURTHY:  Judge, at the time we issued --

21   we submitted an application for a use variance, at that

22   time we thought we needed a use variance.  We didn't

23   know about the zoning permit that we had from January

24   2012.  That surfaced afterwards, we now believe we can

25   submit an application for a zoning permit that allows

13

1                          <u>CERTIFICATION</u>

2

3          I, Teresa Ulrich, the assigned transcriber, do

4     hereby certify the foregoing transcript of proceedings

5     on CourtSmart, Index No. from <u>10:55:53</u> to <u>11:07:53</u>, is

6     prepared to the best of my ability and in full

7     compliance with the current Transcript Format for

8     Judicial Proceedings and is a true and accurate non-

9     compressed transcript of the proceedings, as recorded.

10

11

12
13      <u>  /s/ Teresa Ulrich      </u>          <u>  AD/T 656  </u>
14          Teresa Ulrich                      AOC Number
15
16
17      <u>  Phoenix Transcription LLC  </u>      <u>  01/31/18  </u>
18          Agency Name                          Date
19

# EXHIBIT H

Brian M. Chewcaskie, Esq.
Attorney ID #021201984
GITTLEMAN, MUHLSTOCK & CHEWCASKIE, LLP
2200 Fletcher Avenue
9W Office Center
Fort Lee, New Jersey 07024
(201)944-2300
Attorneys for Plaintiff,
Township of Mahwah

# FILED

**MAY 1 0 2017**

CHARLES E. POWERS, JR., J.S.C.

| | | |
|---|---|---|
| TOWNSHIP OF MAHWAH, | : | SUPERIOR COURT OF NEW JERSEY |
| | | LAW DIVISION: BERGEN COUNTY |
| Plaintiff | : | DOCKET NO. BER-L-3189-17 |
| vs. | : | |
| | | **CIVIL ACTION** |
| | : | |
| RAMAPOUGH MOUNTAIN | | **ORDER TO SHOW CAUSE** |
| INDIANS, INC., | : | **(With Interim Restraints)** |
| Defendant | : | |

**THIS MATTER** being brought before the Court, by GITTLEMAN, MUHLSTOCK & CHEWCASKIE (Brian Chewcaskie, Esq., appearing), attorneys for the plaintiff, TOWNSHIP OF MAHWAH seeking relief by way of temporary restraints pursuant to R. 4:52, based upon the facts set forth in the Verified Complaint filed herewith; and it appearing that the defendant, having been provided notice of the within application, and good cause having been shown;

IT IS on this _10th_ day of _May_, 2017, **ORDERED** that Defendant, Ramapough Mountain Indians, Inc., appear and show cause before the Superior Court at the Bergen County Court House in Hackensack, New Jersey at _9_ o'clock in the

$f \text{ove}$ noon or as soon thereafter as counsel can be heard, on the 23rd day of $\text{June}$ , 2017, why an Order should not be issued as follows:

A. Permanently restraining and enjoining the Defendant, its employees, agents, assigns, and successors in interest from improving, completing and/or constructing any additional structures on the property;

B. Requiring the Defendant and its employees, agents, assigns, and successors in interest to demolish and remove (at the direction of the Township) any and all structures built in violation of the Township's zoning ordinance and/or the NJDEP Flood Hazard Area Control Act.

And it is further ORDERED that, pending the return date herein, the Defendant is immediately and temporarily enjoined and restrained from:

A. Using the Property in any manner that is in violation of the Township's zoning ordinance;

B. Entering, inhabiting, residing in, occupying or in any manner utilizing the structures on the property, including, but not limited to, undertaking any further construction, repair or improvement of the structures or the subject property that is in violation of the Flood Hazard Area Control Act.

And it is further ORDERED that:

1. The restraints set forth in this Order may be dissolved, enlarged or modified upon two (2) days notice given by any of the parties to all of the parties herein.

2. A copy of this Order to Show Cause, Verified Complaint, Legal Memorandum and any supporting affidavits or certifications submitted in support of this application be served upon the Defendant within _7_ days of the date hereof, in accordance with R. 4:4-

2

3 and R. 4:4-4, this being original process.

3. The Plaintiff must file with the Court its proof of service of the pleadings on the Defendant no later than three (3) days before the return date.

4. Defendant shall file and serve a written response to this Order to Show Cause and the request for entry of injunctive relief and proof of service by June 15, 2017. The original documents must be filed with the Clerk of the Superior court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153 deptyclerklawref.pdf. You must send a copy of your opposition papers directly to Judge CHARLES E. POWERS, JR., whose address is Bergen County Court House, 10 Main Street, Hackensack, New Jersey 07601. You must also send a copy of your opposition papers to Plaintiff's attorney whose name and address appears above, or to the Plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file your opposition and pay the required fee of $175.00 and serve your opposition on your adversary, if you want the Court to hear your opposition to the injunctive relief the Plaintiff is seeking.

5. The Plaintiff must file and serve any written reply to the Defendant's Order to Show Cause opposition by June 20, 2017. The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chambers of Judge _CHARLES E. POWERS, JR., J.S.C._

6. If the Defendant does not file and serve opposition to this Order to Show Cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of Order

3

at least three days prior to the return date.

7. If the Plaintiff has not already done so, a proposed form of Order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the Court no later than three (3) days before the return date.

8. Defendant take notice that the Plaintiff has filed a lawsuit against you in the Superior Court of New Jersey. The Verified Complaint attached to this Order to Show Cause states the basis of the lawsuit. If you dispute this complaint, you, or your attorney, must file a written answer to the Complaint and proof of service within 35 days from the date of service of this Order to Show Cause; not counting the day you received it.

These documents must be filed with the Clerk of the Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153 deptyclerklawref.pdf. Include the $175.00 filing fee payable to the "Treasurer State of New Jersey." You must also send a copy of your Answer to the Plaintiff's attorney whose name and address appear above, or to the Plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default. Please note: Opposition to the Order to Show Cause is not an Answer and you must file both. Please note further: if you do not file and serve an Answer within 35 days of this Order, the Court may enter a default against you for the relief Plaintiff demands.

9. If you cannot afford an attorney, you may call the Legal Services Office in the county in which you live or the Legal Services of New Jersey Statewide Hotline at 1-888-

4

LSNJ-Law (1-888-576-5529). If you do not have an attorney and are not eligible for the free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directly with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http:www.judiciary.state.nj.us/prose/10153 deptyclerklawref.pdf.

10. The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the Court and parties are advised to the contrary no later than ___/___ days before the return date.

CHARLES E. POWERS, JR., J.S.C.
J.S.C.