# EXHIBIT 2

Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
(609) 986-1120

Kevin J. Arquit (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Valeria A. Gheorghiu ~~, Attorney ID No. 042912007~~
Law Office of Valeria A. Gheorghiu
113 Green Street, ~~Ste.~~Suite 2
Kingston, NY 12401
(914) 772-7194 ~~(phone)~~
~~valerialexiag@gmail.com~~

*~~Attorney for~~ ~~Plaintiff Ramapough Mountain Indians, Inc.~~*

~~**United States District Court**~~
Jonathan Wallace (admitted *pro hac vice*)
P.O. Box 728
~~**For The District of**~~Amagansett, New ~~Jersey~~York 11930
(917) 359-6234

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., and RAMAPOUGH LENAPE NATION ~~and~~<br><br>~~RAMAPOUGH LENAPE NATION,~~<br><br>                    Plaintiffs,<br><br>                    -against-<br><br>                    ~~v.~~<br><br>THE TOWNSHIP OF MAHWAH,<br><br> RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., | ~~Civil Action No.:   _____~~<br><br><br><br>Civ. No. 2:18-cv-09228<br><br>**AMENDED** COMPLAINT |

GERALDINE ENTRUP, in her individual and official capacity, ~~GERALDINE ENTRUP,~~

THOMAS MULVEY, in his individual and official capacity,

~~JOHN and JANE DOES 1 THROUGH 14,~~

~~JOHN DOE ENTITIES 1 AND 2~~
Defendants.

~~Plaintiffs Ramapough Mountain Indians, Inc. and the Ramapough Lenape Nation, by attorney Valeria Gheorghiu, respectfully request that this Federal District Court of the United States for the District of New Jersey recognize the rights of members and friends to gather and pray on Ramapough private land at 95 Halifax Road in Mahwah, NJ.[1] Specifically, that this Honorable Court prohibit the Town of Mahwah, and their agents Geraldine Entrup and Thomas Mulvey, and the Ramapo Hunt & Polo Club, and their members or agents, from interfering and prohibiting the exercise of these fundamental rights of the Ramapough Lenape Nation and people as guaranteed by the Constitution of the United States, Constitution of the State of New Jersey, Executive Order No. 24 (August 4th, 2006) of Governor Jon S. Corzine of New Jersey, and the Universal Declaration of Human Rights, United Nations Declaration of the Rights of Indigenous People, and the American Declaration on the Rights and Duties of Man for the following reasons:~~
Plaintiffs Ramapough Mountain Indians, Inc. and the Ramapough Lenape Nation, (collectively "Plaintiffs"), by their attorneys, allege for their Amended Complaint herein, as follows:

---

[1] ~~Plaintiff Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation's principal address is 189 Stag Hill Road, Mahwah, NJ 07430.~~

2

## INTRODUCTION

1.     This action arises from the actions of the Township of Mahwah ("Mahwah" or "the Township"), the Ramapo Hunt & Polo Club (the "Polo Club"), their respective members or agents, Geraldine Entrup, and Thomas Mulvey (collectively, "Defendants"), which intentionally deprived Plaintiffs of rights and liberties secured under the First and Fourteenth Amendments to the United States Constitution and the Religions Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.[1]

2.     Plaintiff Ramapough Lenape Nation is a state-recognized sovereign entity whose members (the "Ramapough" or the "Ramapough People") are descendants of the original Munsee people of Lenapehoking, a territory that includes parts of present day New York and New Jersey.  Plaintiff Ramapough Mountain Indians, Inc. is a 501(c)(3) nonprofit organization owned, operated, and managed on behalf of the Ramapough.

3.     The Ramapough are indigenous people who have lived in and practiced religion on their ancestral land since the pre-contact period. The Ramapough now principally reside in the Ramapo Mountains, with major villages in Mahwah, New Jersey, Ringwood, New Jersey, and Hillburn, New York.

4.     For years the Ramapough have been discriminatorily targeted by Defendants. Driven by apparent religious animus, fear, and a desire to increase their own property values, Defendants have made numerous attempts to force the Ramapough off their privately-owned land and/or to limit the Ramapough's use and enjoyment of that land.  Among other things, Defendants have condemned and pressured the Ramapough to stop visiting their own land, threatened to remove sacred religious items from Ramapough property, attempted to coerce

---

[1]  Plaintiff Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation's principal address is 189 Stag Hill Road, Mahwah, NJ 07430.

3

Ramapough representatives to trade their land for land with less value, publicly shouted racist language at Plaintiffs, executed land policies designed to condemn several homes owned and occupied by Ramapough members, and wrongfully demanded at Town Council meetings that town officials impose fines and jail time on certain Ramapough members.

5.    Defendants' most recent acts of discrimination target the Ramapough's use of their privately-held land for religious purposes. Defendants have colluded with each other to deprive Plaintiffs of rights and liberties secured under the First and Fourteenth Amendments to the United States Constitution and the Religions Land Use and Institutionalized Persons Act by, among other things, imposing coercive fines, issuing frivolous summonses, and engaging in harassing behavior in an attempt to expel Plaintiffs from their land.  In so doing, Defendants are carrying on a historical pattern and practice of harassment against the Ramapough and also substantially burdening the Ramapough's free exercise of their sincerely held religious beliefs. Each and every day, Plaintiffs are being constrained by Defendants' conduct from the full religious and cultural use of their land.

6.    A principal tenet of the Ramapough faith is the sacred connection between human beings and nature.  The Ramapough are called "Keepers of the Pass."  This title refers to the Ramapo Pass, which includes the mountains and river that form a gateway to Manhattan and New Jersey.  The Ramapough have sincerely held beliefs that they have a responsibility to live in balance with nature and to protect their sacred lands through environmental stewardship. Members of the tribe have the sincerely held religious belief that without the ability to pray on their sacred land, they would be unable to carry out their spiritual and religious responsibilities.

7.    One of the Ramapough's most sacred lands is an area currently located at 95 Halifax Road in Mahwah, New Jersey, and known as the "Split Rock Sweetwater Prayer Camp"

4

or simply as, "Sweet Water," the Lenape name for "Ramapough." Sweet Water is private property owned by Plaintiffs. The Ramapough use the lands at Sweet Water for a variety of purposes, including prayer, memorial services, meditation, and cultural assembly. The Ramapough conduct many important religious ceremonies and events at Sweet Water, including weddings, water ceremonies, pipe ceremonies, tobacco ceremonies, and sweat lodges.

8.     The Ramapough conduct formal religious ceremonies on the land at Sweet Water at least twice a month in the warmer months, and slightly less often in the winter. The Ramapough schedule regular sweat lodge sessions throughout the year. In addition to scheduled group events, the land at Sweet Water is open and available for tribe members to use for individual religious purposes every day of the year.

9.     Notwithstanding the Ramapough's private ownership of Sweet Water, since at least November 2016, the Township, the Polo Club, and their respective agents have repeatedly and intentionally attempted to force the Ramapough to cease assembling and practicing their religion on their land. In an effort to stop the Ramapough from assembling and exercising their religion at Sweet Water, Defendants have, among other things, sought to impose through excessive summonses crippling and excessive zoning fines on the Ramapough, harassed individual Ramapough tribe members, maliciously prosecuted Ramapough chiefs, and repeatedly—and coercively—attempted to induce the Ramapough to sell their sacred land.

10.    For example, on September 15, 2017, an agent of the Township revoked a valid 2012 zoning permit for the construction of a longhouse at Sweet Water for religious use without notice or hearing. See Exhibit A (September 15, 2017 Letter from Michael J. Kelly).

11.    And, in April 2018, the Township began improperly issuing daily summonses, which seek to impose coercive fines—of up to $12,500 *per day*—on the Ramapough for their

religious use of the land, including their use of a stone altar and prayer circle. See Exhibit B (April 24, 2018 letter from Defendant Geraldine Entrup alleging, among other things, that "the property and structures on site are being used for religious uses (house of worship and prayer groups) and public assembly uses" which are not permitted by the Township's zoning code and that the Ramapough's prayer circle and stone altar were unpermitted structures). As of September 21, 2018, the fines levied against the Ramapough total as much as $1,452,500 as a result of over 1,200 summonses.

12.     Specifically, the Township imposed summonses for each of the following violations: Article 24-11.2c (Failure to Obtain Zoning Permit for Use – Religious Use); Article 24-11.2c (Failure to Obtain Zoning Permit for Use – Public Assembly); Article 24-11.2c (Failure to Obtain Zoning Permit for Structure – Prayer Circle); Article 24-11.2c (Failure to Obtain Zoning Permit for Structure – Stone Altar); Article 22-3.2d (Failure to Obtain Site Plan Approval for Use – Religious Use); Article 22-3.2d (Failure to Obtain Site Plan Approval for Use – Public Assembly); Article 22-3.2d (Failure to Obtain Site Plan Approval for Structure – Prayer Circle); Article 22-3.2d (Failure to Obtain Site Plan Approval for Structure – Stone Altar); Article 24-6.1h(1) (Location of Structure within Floodplain and Flood Hazard Area without Proper Approval); 24-6.1h(1) (Location of Structure within Floodplain and Flood Hazard Area without Proper Approval – Stone Altar).  See Exhibit B.  Defendants' attempts to impose these summonses are unsupported by local laws cited by them or by other state or federal laws.

13.     Accordingly, Defendants have unlawfully threatened Plaintiffs' constitutional and civil rights by, among other things, pressuring the Ramapough to stop open air prayer; demanding that sacred structures be removed; trespassing on Ramapough land; threatening to

physically remove sacred items from Sweet Water, including the stones of the stone altar; and officially authorizing the issuance of unlawful summonses.  Upon information and belief, Defendants' actions are driven by religious animus and pressure from members of the Polo Club who believe that driving the Ramapough off of their ancestral land will increase their property values.  For example, Town Council Member Kathy Murray stated at a February 22, 2018 Township Council meeting that Defendants have "lost property value" as a result of the Ramapough's use of their land.  See Exhibit C (Tr. of Feb. 22, 2018 Council Meeting) at 35:1-6.

14.     As a direct result of Defendants' continued—and harassing—efforts to stop the Ramapough from using their land for religious purposes, as well as Defendants' demands that the Ramapough take down sacred sites like the sacred altar and prayer circle, Plaintiffs are sustaining ongoing, irreparable injuries.  The actions of Defendants are not only interfering with, but also substantially preventing members of the Ramapough from the practice of their religion, as further described below.

15.     Plaintiffs bring this action to obtain, among other things, a declaration to prohibit Defendants and their members or agents from interfering with and prohibiting the exercise of the fundamental rights of the Ramapough Lenape Nation as guaranteed by the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

**JURISDICTION AND VENUE**

16.     1.     Plaintiff's' federal claims arise under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 2000cc, the 1st Amendment of the U.S. Constitution and Article III, § 2First and Fourteenth Amendments of the U.S. Constitution.

7

17.   ~~2.~~   The Court has subject-matter jurisdiction over ~~the subject matter of~~ this action pursuant to 28 U.S.C. § 1331~~,~~ and 28 U.S.C. § 1343 ~~for claims brought under the United States Constitution and federal laws~~.

18.   ~~3.~~   The Court has personal jurisdiction over this action because ~~the d~~Defendants are located in this District, because the acts complained of occurred in this District~~, and pursuant to NJ Rev. Stat § 2A:4-30.68 and supplemental jurisdiction under 28 U.S.C. § 1367 for state claims because those claims closely relate to the federal claims, arise from a common nucleus of operative facts and form part of the same case or controversy.~~.

19.   ~~4.~~   Venue is proper in ~~T~~this District ~~Court has venue~~ pursuant to 28 U.S.C. § 1391(b)~~,~~ because the events giving rise to the claims occurred on Plaintiffs' property at 95 Halifax ~~Lane~~Road, in the Township of Mahwah, in Bergen County, State of New Jersey, which is located within ~~the jurisdiction of the~~this District ~~Court of New Jersey~~.

### THE PARTIES

20.   ~~5.~~   Plaintiff Ramapough Lenape Nation ~~(hereinafter "Ramapough")~~ is a sovereign entity whose members are descendants of the original people of the Ramapo Mountains, ~~principally of Munsee descent from the Lenape people.  The elected national, clan and band chiefs of the three thousand five hundred (3,500) members are Dwaine Perry of the Ramapough Lenape Nation, John Bragg of Turkey Band, Eileen DeFreese of Wolf Clan, Clara Hasbrouck of Deer Clan, Floyd Hicks of Wawayanda territory, Tracy Hyter-Suffern of Staten Island, Richard Logan, and Vincent Mann of the Turtle Clan.~~Manhattan, and Lenapehoking, the territory of which includes the land and waters of present-day New York and New Jersey. The Ramapough principally reside in the Ramapo Mountains with major villages in Mahwah, New

8

Jersey; Ringwood, New Jersey; and Hillburn, New York. The Ramapough are one of the few indigenous tribes in the country to have survived on their ancestral land.

21. ~~6.~~ Plaintiff Ramapough Mountain Indians, Inc. ~~(hereinafter also "Ramapough")~~ is a 501(c)(3) nonprofit corporation owned, operated, and managed on behalf of the Ramapough ~~people~~.

22. ~~7.~~ Defendant ~~Township of~~ Mahwah ~~(hereinafter "Mahwah")~~ is a township under the laws of New Jersey. ~~Defendant Geraldine Entrup is Administrative Officer for Mahwah demanding by letter dated April 24, 2018 that Ramapough and friends stop open air prayer and coming onto Ramapough private property and destroy sacred sites and later issuing coercive summonses.~~ Mahwah is located in Bergen County, New Jersey.

23. Defendant Geraldine Entrup is the Administrative Officer for and an agent of the Township.

24. Defendant Thomas Mulvey is the Property ~~and~~ Maintenance Inspector ~~signing complaints and demanding by summonses that Ramapough and friends stop open air prayer and coming onto Ramapough private property and destroy sacred sites.~~ for and an agent of the Township, and, in this capacity, has signed all summonses issued against the Ramapough.

25. ~~8.~~ Defendant ~~The~~ Ramapo Hunt & Polo Club ~~(hereinafter "Polo Club")~~ is a homeowners' association ~~of~~ that consists of and represents approximately twenty-nine (29) homes occupying land ~~north of the bridge~~ on Halifax Road in Mahwah, New Jersey. The Polo Club was established in the 1980s and is managed by elected trustees. ~~Members Paul Scian, Kathleen Murray, Charles Murray, and Charles Brammer are members of the Polo Club demanding, among other actions, that Ramapough be prohibited from coming to the land, praying on the land, removing Rampough's sacred altar and prayer circle, police action, and~~

even throwing people in jail.  The Polo Club hired the law firm Beattie Padovano as agents, including attorneys John Lamb, Arthur Chagaris, and Martin Kafafian, Jr. Mr. John Lamb falsely alleged in a verified certification that Ramapough can continue to have the same opportunity for activities elsewhere that are conducted at 95 Halifax Road, overlooking access to the Ramapo River.  Upon information and belief, Beattie Padovano and one or more of these attorneys advised the Polo Club to file private criminal warrants against Chief Dwaine Perry and Steven Smith, members of the Ramapough Lenape Nation.  This is based on the fact that the private warrant stated the Polo Club trustee Dr. James Olivari had been advised by his attorney to make a criminal complaint.

**FACTUAL ALLEGATIONS**

**I.    THE USE OF SACRED RAMAPOUGH LAND FOR PRAYER PROMOTES PRACTICE OF THE RAMAPOUGH FAITH**

~~FACTS~~

**A.    SWEET WATER IS PRIVATELY-OWNED SACRED RAMAPOUGH LAND AND IS USED BY THE RAMAPOUGH TO EXERCISE THEIR SINCERELY HELD RELIGIOUS BELIEFS**

~~Introduction~~

9.    Defendant Township of Mahwah is imposing cumulative crippling fines against plaintiff Ramapough of $12,500 per day, totalling $480,000 as of May 14, 2018, to end religious use of property, to eliminate sacred sites, and prevent assembly.

10.    Mahwah in so acting is carrying on a historical pattern and practice of harassment of the Ramapough Lenape Nation and people.

11.    Mahwah is also acting at the behest of, and in partnership with, Ramapough neighbor defendant Polo Club, a housing association whose trustees and leadership have long wanted to drive Ramapough off Ramapough private property and have expressed this goal publicly.

10

12.    Mahwah has further applied illegal pressure on Ramapough to stop coming to the land, to stop religious practice and to remove Ramapough's sacred altar and prayer circle by threatening to do so directly as "actual enforcement" and by using coercive fines as "self-help" without Court Order.

13.    By letter dated September 5, 2017 Mahwah sent a letter purporting to revoke a 2012 zoning permit that it failed to disclose to Ramapough or State Courts recognizing religious use and logs with masks carved in them (referred to by Ramapough as "Mesingws") unilaterally and secretly without notice nor opportunity to be heard.

14.    Defendant Polo Club, in furtherance of this campaign to pressure the Ramapough Nation into ceasing its religious practices, to assemble and in fact to yield up the land, has made numerous unfounded complaints to the police department and used the New Jersey municipal "private warrant" process to bring criminal charges against Ramapough members.

15.    Members of the Polo Club have publicly shouted racist language at Plaintiffs, maintain a surveillance camera directed toward Ramapough property 24 hours a day, have entered upon their land to threaten them, to photograph and record them, and have publicly demanded that the Town impose fines, even jail time, in an attempt to have the land forfeited.

16.    The Polo Club has instituted lawsuits against Ramapough in Bergen County Superior Court as part of their campaign to apply pressure against Plaintiffs.

17.    Mahwah has similarly instituted litigation against Ramapough, and attorneys for the Polo Club have sought to directly intervene, and in some instances actually assisted and participated, in these lawsuits in which they had no official role.

18.   ~~The purpose of all these actions taken jointly and individually by the Town and the Polo Club have been to burden, harm and destroy the Plaintiffs religious uses of their property, sacred sites and ultimately to result in an illegal taking of their land.~~

26.   Sweet Water is part of the Ramapough's ancestral land.[2] Sweet Water and the lands surrounding it were incorporated into the Township of Mahwah in or around 1849.

27.   In the late 1970s, Charles Elmes, a developer, acquired title to Sweet Water and its surrounding lands. At or around the time of that acquisition, Mr. Elmes met with several Ramapough representatives, including Chief Ronald "Redbone" Van Dunk, with whom he discussed the Ramapough's history with—and religious connection to—the Sweet Water lands.

28.   Upon learning of the religious significance of the Ramapough's connection to the land, Mr. Elmes recognized the Ramapough's continuing use of the land at Sweet Water for, among other things, religious ceremonies and gatherings.

29.   In 1995, Mr. Elmes deeded a 13.3-acre plot, including Sweet Water, to the Ramapough. Accordingly, Sweet Water is currently private property owned by the Ramapough. Since acquiring the property, the Ramapough have continued to openly use the land to assemble and exercise their faith.

30.   The Ramapough believe that there is a connection between human beings and nature. Indeed, a fundamental tenet of the Ramapough religion is an obligation to live in balance with nature.  The Ramapough believe that the spiritual world and sacred lands must be respected and protected.   The Ramapough are particularly called to honor those lands—like Sweet Water—that are connected to their ancestors.

---

[2] Indeed, the Ramapough's use of Sweet Water and the land surrounding it predates the establishment of the Township of Mahwah.

31.     The Ramapough also believe that local wildlife have spiritual significance. For example, the finding of deer tracks around a sacred circle or the appearance of hawks during prayer are believed to be the confirmation of the power of a sacred site or ceremony.

32.     Given the spiritual connection between human beings and nature, many Ramapough religious ceremonies are conducted outdoors, either in open air or in non-permanent structures. The chosen venue for these ceremonies—nature—reflects the Ramapough's sincerely held religious beliefs that the Earth and their homeland must be honored and protected. The religious beliefs of the Ramapough are thus deeply intertwined with their ancestral land and ability to conduct ceremonies on sacred sites.

33.     Sweet Water—the site of an historical Ramapough burial ground—is one of only a few ceremonial sites left to the Ramapough after years of historic dispossession, discrimination, and marginalization. Accordingly, Sweet Water is extraordinarily sacred to the tribe. Many Ramapough families have said that when they step onto the land, they feel a sense of peace, healing, and security. These tribe members have traumatic memories of how their families were pushed off their ancestral lands.  Consequently, the Ramapough's current reasonable belief that their use of the Sweet Water religious sanctuary is being curtailed by Defendants' actions—and that their continued ownership of the land itself is under threat—is causing the tribe great ongoing trauma and distress.

34.     Sweet Water is uniquely situated for the Ramapough's religious ceremonies due to its location.  Not only is the land at Sweet Water sacred to the Ramapough, but Sweet Water is also very close to two other sites sacred to the tribe: the meeting of the Mahwah and Ramapo Rivers and the Ramapo Pass. The meeting of the Mahwah and Ramapo Rivers has been an assembly place for the Ramapough people for centuries. The river itself is sacred to the

Ramapough, as they regard it as the Lenape's ancient highway and source of life and food. Many religious ceremonies require access to the river and its waters. The other sacred site is the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains. In the winter of 1779-1780, the Ramapough people welcomed George Washington to use the Ramapo Pass to shelter five hundred Continental Army soldiers.

35.     The Ramapough use the lands and water at Sweet Water to practice their faith. For example, Sweet Water is commonly used for individual and group prayer, memorial services, meditation, weddings, greeting the four directions, tending the sacred fire, blessing and cleansing people with incense, saying prayers to honor ancestors, water ceremonies, pipe ceremonies, tobacco ceremonies, releasing ceremonies, and sweat lodges.

36.     The Sweat Lodge is an enclosed space made of entirely natural materials, where water is poured onto stones, creating steam.  The Sweat Lodge is, and has historically been, used by indigenous people for healing and prayer.

37.     The Tobacco Ceremony is a peaceful prayer ceremony, in which the Ramapough use tobacco, a sacred plant in the spirit world, as an offering to the Creator.  The Ramapough infuse the tobacco with their prayers, and offer it to the Creator in hopes that the Creator will accept their prayers.

38.     The Water Ceremony is a prayer ceremony celebrating rebirth and life.  Practiced by women, the Ramapough pray and make offerings to the water.

39.     The Releasing Ceremony is a ceremony wherein the participants release their thoughts and negative energy into the earth.  The Releasing Ceremony is akin to confession, but instead of confessing to another person, participants confess their thoughts and prayers to the earth.

14

40.     Members of other indigenous tribes often join the Ramapough for religious ceremonies and events at Sweet Water. For example, in April 2017, the Haudenosaunee (Iroquois) ceremonial leaders joined the Ramapough at Sweet Water for an Earth Day ceremony, where the Ramapough and the Haudenosaunee together called on and honored each of the four elements—air, water, soil, and fire—and relayed that teaching to the assembled multi-faith crowd.

41.     The Ramapough also use the lands at Sweet Water to host cultural and educational events for both indigenous and non-indigenous people. These events, which often involve religious ceremonies, are intended to foster a sense of brotherhood among all in attendance and to provide a safe and educational meeting place for cultural exchange. Assemblies of this sort have been attended by members of many indigenous nations, including the Taino, Mexica, Quechua, Lakota, Cherokee, Maya, Schaghticoke, Mohawk, Onondaga, Ojibwe, Tlingit, and others.

42.     Sweet Water is, at times, also used for political activity.  For example, in the fall of 2016, the Ramapough invited a group of people to the lands at Sweet Water in gratitude of, and concern for, the natural world.  This began an interfaith dialogue toward protecting the Ramapo Mountains from gas pipelines and pollutions.  Two tipis were placed on the land in solidarity with the [D][L][N]akota indigenous nation who sought to protect the waters at Standing Rock, North Dakota, against pipelines and pollution.  People from different nations came to temporarily stay on the land in prayer and to raise environmental awareness.

**B.     THE RAMAPOUGH USE CERTAIN RELIGIOUS ITEMS TO EXERCISE THEIR FAITH AT SWEET WATER**
~~History Of Ramapough Lenape Nation At 95 Halifax Road~~

15

19. The members of the Ramapough Lenape Nation are descendants of the original people of Manhattan and Lenapehoking the territory of which includes the land and waters of present day New York and New Jersey. The Ramapough people now principally reside in the Ramapo Mountains with major villages in Mahwah, New Jersey, Ringwood, New Jersey and Hillburn, New York.

20. The Ramapough are one of the few indigenous people (*i.e.* "Indians", "Native Americans") in the entire country that survived as a community while continuing to stay on their ancestral homeland.

21. Three sites hold particular importance to the Ramapough. The first is the mouth of the Ramapo and Mahwah Rivers, where the Ramapough have welcomed people with shared ceremonies for millennia.

22. The second is the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains. In the winter of 1799–1780, the Ramapough welcomed George Washington to use the Ramapo Pass to shelter five hundred Continental Army soldiers. The Ramapough are known as Keepers of the Pass, which means guardians of the mountain passage way, rivers, and valley.

23. The third is the area around 95 Halifax Road, a sacred site of immense importance to the Ramapoughs. The Ramapough have conducted prayer and community cultural assembly for centuries. In the Ramapoughs' native language, the word "Ramapo" actually means "sweet water." Sweet Water is located on the west side of the confluence of the Ramapo River and Halifax Creek at 95 Halifax Road in Mahwah and is the site that Mahwah and the Polo Club seek to remove Ramapough from.

16

24. The Township's very name "Mahwah" in fact, means "meeting place" in the Ramapough Munsee language as the place where the Mahwah and Ramapo rivers join. In about 1849, land at 95 Halifax Road and the lands surrounding it were incorporated into the Township of Mahwah.

**Prayer and Community Cultural Assembly at 95 Halifax Road**

25. Colonial era maps show that 95 Halifax Road and nearby land including areas of Ramapo College are the site of Ramapo villages with one map even indicating a burial ground in or at 95 Halifax Road.

43. 26. The Ramapough have used the land and the Ramapo river in the area around 95 Halifax, and at 95 Halifax Rd. in the current era, for, among other purposes, trade, hunting, fishing, recreation, camping, prayer, weddings, memorial services including spreading of ashes, and meditation.  and use—several religious items at Sweet Water. One such item is the sacred stone altar, which has been at Sweet Water for at least many decades.  The stone altar serves as the physical manifestation of Ramapough prayers. Each stone embodies a single prayer made at the altar. The stone altar symbolizes how in the Ramapough faith, prayers take on a physical form, and draw direct connections to the land. Accordingly, the Ramapough believe that the removal of even a single stone is the removal of a prayer.

17

(Added)



27. Elders among the Ramapoughs recall witnessing religious and ceremonial use of Sweet Water and the area surrounding Sweet Water, going back more than five decades.

28.     Religious use of this land by Ramapough include many important religious ceremonies, including the Tobacco Ceremony, the Pipe Ceremony, the Water Ceremonies, sweat lodges, weddings, and scattering ashes of departed tribal members into the Ramapo River. Ramapough have also opened the land for other nations and people to use for religious ceremony as well.

29.     The Ramapoughs conduct religious ceremonies at least twice a month in the warmer months, and slightly less often during the winter.  The Ramapoughs schedule regular sweat lodge sessions throughout the year.

30.     In the late 1970s, Charles Elmes acquired title to Sweet Water and all the surrounding lands.

31.     Soon after the acquisition, Mr. Elmes met with several Ramapoughs, including Ronald "Redbone" Van Dunk, who was the Chief of the Ramapoughs at that time.  Chief

~~Redbone explained to Mr. Elmes that the Ramapoughs had used Sweet Water for prayer,~~

~~community cultural assembly, hunting, and fishing for decades, if not centuries.  Mr. Elmes~~

~~recognized the Ramapoughs continuing used of land at 95 Halifax Road.~~

**(Stone Altar From A Distance)**

(Added)



~~32.        In 1984, the~~

~~Township adopted a Zoning Map, which designated Sweet Water as a C-80 Conservation Zone.~~

**(Close-up View of Stone Altar)**

44.    During the ongoing dispute with Mahwah and the Polo Club, the word "HATE" was carved into one of the stones comprising the Circle. The Township and Polo Club routinely refer to the sacred altar as "a pile of rocks."

45.    The Ramapough also have a Prayer Circle at Sweet Water, which serves as a designated worship site. The Prayer Circle is surrounded by masked poles ("Mesingw"), which, according to the Ramapough faith, are powerful spirits that provide protection and help maintain the balance of nature.[3] The Mesingw are spirit guardians of the forest. The Mesingws were

[3] In 2012, Mahwah recognized the Ramapough's rights to use Sweet Water for religious

19

installed at Sweet Water in 2011 and were placed in their current configuration (a circle) in 2016.

(Added)



33.   The Ramapoughs continued to openly use the property for prayer and community cultural assembly, in open view of Township officials and police officers with cooperation.

**(The Prayer Circle — View One)**

purposes and to have Mesingws when it issued a permit to the Ramapough for the construction of a longhouse, which also involves the use of Mesingws.  *See* Exhibit D (2012 Zoning Permit). Notwithstanding Plaintiffs' position that no permit was necessary for its preexisting religious uses of the land, the Ramapough had sought the permit in connection with efforts to resolve earlier disputes with Defendants. As alleged above, Defendant Mahwah's agent, Michael Kelly, unilaterally—and without cause— revoked the 2012 Zoning Permit in September 2017 without notice or hearing, soon after learning of its existence.  *See* Exhibit A (September 15, 2017 Letter from Michael J. Kelly).

(Added)



**(The Prayer Circle — View Two)**

(Added)



**(A Mesingw)**

21

**C.**     **THE TOWNSHIP AND ITS AGENTS AND MEMBERS HAVE HARASSED THE RAMAPOUGH AND OTHERWISE INTERFERED WITH THEIR RELIGIOUS PRACTICE**

46.     Plaintiffs' Mesingws have been vandalized in the past by members of the Mahwah community.  In addition, on at least one occasion, Tribe members saw a swastika carved into the stones of the prayer circle.

47.     In 2016, several six to eight-foot logs outlining a temporary longhouse and weighing about one ton each were stolen from the Ramapough lands at Sweet Water. A few months prior, someone had written "these logs will be gone soon" using wood chips on a stone slab by the longhouse. State authorities stated that the removal of the logs would have required several people or machinery.

48.     By letter dated January 17, 2018, Mahwah ordered the Ramapough to remove all structures on the land and to stop using the land for religious purposes by February 2, 2018. See Exhibit D at 4 (January 17, 2018 Letter from Geraldine Entrup).

49.     If the Ramapough were forced to remove the prayer circle and/or stone altar as a result of the Township's continually issuing summonses and/or Defendants' threats to remove the structures (as they were with the longhouse), members of the tribe would immediately lose access to items necessary to the exercise of their faith. Accordingly, if these items were removed, Plaintiffs and other community members will be deprived of the ability to fully and freely practice their religion, constituting an irreparable injury.

**II.**    **MAHWAH'S SELECTIVE AND ARBITRARY ENFORCEMENT OF ITS ZONING LAWS AGAINST THE RAMAPOUGH SUBSTANTIALLY BURDEN PLAINTIFFS' RELIGIOUS EXERCISE**

50.   ~~34.~~   In June 1987, the Township amended the Zoning Ordinance to designate Sweet Water as a C-200 Conservation Zone.   ~~Again, the Ramapoughs continued to use the property~~ ~~for prayer and community cultural assembly, in open view of the Township.~~

51.   Mahwah's Zoning Ordinance designates C-200 zoned-land as "conservation" land. The Township's Zoning Code restricts Permitted Principal Uses for C-200 land to:

1. Public open space, including hiking, horseback riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, other similar uses.
2. Agricultural uses
3. Single-family detached residences, with 200,000 sq. ft. minimum lots.
4. Municipal facilities.

The Zoning Code limits Permitted Accessory Uses of C-200 land to:

1. Private garages
2. Swimming pools
3. Signs
4. Off-street parking
5. Accessory uses customarily incidental to a permitted principal use.

52.   According to a report prepared for the Township of Mahwah's Planning Board and Township Council, the C-200 conservation zone was created in order to "protect the various environmental resources present in these areas." The purpose of the C-200 zoning ordinance is aligned with the Ramapough faith and their religious mission to keep their sacred land ecologically healthy.

53.   ~~35.~~   In ~~1995~~the fall of 2011, the Ramapough ~~Lenape Nation acquired rights to~~ ~~95 Halifax Road, Mahwah, NJ 07430 (hereinafter "prayer site") by private deed of gift from Mr.~~ ~~Charles Elmes, the original developer of the Polo Club, under the laws of New Jersey. 95~~ ~~Halifax Road is also in the area of ancestral land of the Ramapough people and is noted as such~~ ~~by historians and archaeologists.   Bergen County, NJ posted signs recognizing the land as~~

"Ramapough Ceremonial Land" by erecting signs on Highway 202 leading to the property.placed sacred poles at Sweet Water in a rectangular formation to mark space for prayer and ceremony. This is considered a place of worship, similar to a church, which is used in certain Ramapough ceremonies.  Township officials visited Sweet Water and issued a complaint to the Ramapough, alleging that the placement of these sacred poles was a violation of the local zoning ordinance and required a permit.

54.    On December 12, 2011, notwithstanding their preexisting use of the land, the Ramapough, in connection with efforts to resolve earlier disputes, submitted an application to the Township for a Zoning Permit. The application stated that the "present use" of Sweet Water was "prayer and community cultural assembly," and sought Township acknowledgement that the continuation of that use complied with the zoning ordinance.

36.    Regarding the land and soil at 95 Halifax Rd., Ramapough members note that the land used to be much higher, that a significant amount of soil was removed, that a drainage pipe for the Polo Club was placed at the land, and that these man-made conditions are major contributors to brief periods of flooding.

37.    The New Jersey Department of Environmental Protection investigated the land and concluded that as presently used there was no violation of the New Jersey Flood Hazard Control Act or state regulations.

**Mahwah Land Use Policy And**
Ramapough Members' Loss of Land and Housing

38.    Ramapough once had a community north of the bridge on Halifax Road, called the Green Mountain Valley, that was removed in the 1920s.  Members of the Ramapough Lenape Nation once owned land that included land in the Polo Club community some of which was purportedly sold for $1 in the early 20th century.

24

39.   ~~Defendant Polo Club was established in the 1980s.~~

40.   ~~Around 1990, defendant Mahwah executed a land policy on Stag Hill leading to the exodus members of the Ramapough Lenape Nation from houses and land traditionally occupied by Ramapough.~~

41.   ~~Around 2009, Mahwah executed another land policy leading to the condemnation of~~ several homes owned and occupied by Ramapough members ~~and taking over with monetary compensation of others leading to the removal of Ramapough around the area of Silver Lake on Stag Hill.~~

42.   ~~In 2011, a conflict over Ramapough religious ceremonies and the placement of masked poles (Mesingws) resulted in Mahwah issuing summonses to Ramapough for zoning violations.~~

55.   ~~43.~~   In January 2012, Mahwah ~~dismissed the summonses and~~ Zoning Official Gary Montroy issued a Zoning Permit that explicitly recognized the Ramapough's ~~use of the masked poles (Mesingws) and gatherings for religious use by issuing a~~ rights to use Sweet Water for religious purposes and cultural assembly and approved the building and use of a longhouse. See Exhibit E (2012 Zoning Permit).  Subsequently, the Township recommended the dismissal of the 2011 Complaint, explaining that the 2012 zoning permit resolved the dispute.

44.   ~~In October of 2016, concerns about fossil fuel pipelines planned for the Ramapo Pass, global climate change, environmental pollution, and the need to obtain, preserve and maintain clean water led the Ramapough to have meetings at 95 Halifax Road open to allies and those interested in protecting our planet by establishing the Split Rock Sweetwater Prayer Site at 95 Halifax Road.~~

25

**Polo Club And Mahwah Jointly Plan And Act To Stop Ramapough**
Religious Use and Assembly, To Remove Sacred Sites And To Take
Ramapough Land At 95 Halifax Road Through Excessive Fines

45.    The Ramapough Lenape Nation is being attacked by the Town of Mahwah and the Polo Club, including respective agents and members, each one acting as agents of the other in partnership, in an attempt to force the Ramapough off the land by sale, illegal zoning enforcement or through coercive fines.

46.    Mahwah and the Polo Club have jointly and severally been involved in attempts to induce Ramapough to sell sacred lands along the Ramapo River at 95 Halifax Road:

A.    Mayor LaForet was involved in efforts to get Ramapough to swap land at 95 Halifax Road for land on Stag Hill around where Ramapough had previously been induced or coerced into removal.

B.    Gregory Brill, a representative of the Polo Club, told Chief Dwaine Perry that if Ramapough did not accept an offer of the Polo Club to sell Ramapough property at 95 Halifax Road then some unnamed members of the Polo Club were prepared to attack the Ramapough Lenape Nation.  Chief Dwaine Perry interpreted this as a threat not from Mr. Brill but these members.  One Polo Club member in fact is reported to have later applied for a gun permit.

C.    Chief Perry said that Ramapough will not enter into any agreement under duress.

47.    Members and allies have in fact been the subject of gunshots heard at night, laser beams, racial slurs, slashed tires, slashed tents, vandalism and false police reports.  Dr. James Olivari, as trustee of the Polo Club and upon advice of their agent and law firm Beattie Padovano, brought claims of criminal mischief against Ramapough member Steven Smith and Chief Dwaine Perry by private complaint falsely claiming that cameras were disabled by Steven

Smith on May 9, 2017.  In public comments, former Polo Club trustee Paul Scian falsely stated that Steven Smith "pushed down ALL but one of the cameras."  News reports based on the Polo Club's accusations falsely accused Mr. Smith of $ 5,000 worth of damage.  Evidence shows there was no physical damage to the cameras by Mr. Smith or Dwaine Perry and everything that could be seen before could be seen after.  At the trial of Mr. Smith, James Olivari admitted that there was only the turning of a lens resulting in no physical damage or disabling of cameras.  Mr. Smith is appealing a finding of disorderly conduct but was found not guilty of criminal mischief. Chief Dwaine Perry is awaiting trial.

56.    In 2013, after the Prayer Circle consisting of Mesingws was installed, Defendant Thomas Mulvey (Mahwah Zoning Inspector) visited Sweet Water and determined that Plaintiffs' use of the land did not violate any applicable zoning ordinance.  From 2013 through December 2016, the Ramapough continued to use Sweet Water for prayer and community cultural assembly in open view of the Township and in accordance with their zoning permit.

57.    As alleged *supra* at ¶10, a Township agent unilaterally sent a letter purporting to revoke the 2012 permit in September 2017 without cause, notice, or an opportunity for hearing. See Exhibit A (September 15, 2017 Letter from Michael J. Kelly).

58.    Defendant Polo Club has sought to prohibit Ramapough from using Ramapough land for prayer or having more than five (5) people on the land.  See Exhibit F (Order denying Proposed Order To Show Cause with Temporary Restraints by Ramapo Hunt and Polo Club (Case No. L-6409-17 (Superior Court N.J.)).

59.    On October 31, 2017, Mahwah's Township Engineer, Michael Kelly, stated under oath that more than two (2) people praying on Ramapough land at 95 Halifax Road in open-air prayer—even without the existence of structures—constituted a violation of the Township's

municipal code. Given the Zoning Code's silence on simple prayer on C-200 land, this reading of the ordinance is arbitrarily and capriciously targeted and restrictive and treats the Ramapough on less than equal terms with other organizations and non-religious institutions in the same zone. The Township's interpretation of the zoning ordinance would make saying a thanksgiving blessing before a meal or saying a prayer before a recreational activity a municipal code violation if done by more than two people on C-200 territory. Upon information and belief, no similarly situated secular or non-secular entities on C-200 property have received zoning violations for activity involving two or more persons praying.

60.     The Township's inconsistent and targeted interpretations of the Zoning Ordinance regarding C-200 land as applied to the Ramapough are highly restrictive and evince the intent to completely impede the Ramapough's religious use of and assembly at Sweet Water. The Township's actions do not serve any governmental interest, much less a compelling one.  Given the Township's position that C-200 zoning functionally prohibits religious use or cultural assembly and the Ramapough's sacred connection to the site, there are no alternative locations reasonably available to the tribe that could accommodate their religious practices.  For example, access to the Ramapo River is vital to Ramapough Water Ceremonies for protection, healing, and thanks to the river.

61.     By letter dated January 17, 2018, Defendant Geraldine Entrup notified the Ramapough of the Township's intention to recommend that daily summons be issued for alleged "continued violations" on the Mahwah Zoning Code at Sweet Water. See Exhibit D at 4 (January 17, 2018 Letter from Geraldine Entrup). Specifically, Defendant Entrup claimed that nine impermissible structures were found at Sweet Water: (1) a storage shed; (2) a "canvas cabin" (i.e., a Cabela Large Tent); (3) a prayer circle consistent of logs stuck in ground and former

28

pieces of longhouse (ceremonial poles placed in a rectangular formation); (4) portable toilet; (5) yurt; (6) pop-up shed; (7) a structure made of lumber with roof and floor; (8) sweat lodge; and (9) stone altar.  See *id.* at 2.  The storage shed, canvas cabin, portable toilet, yurt, pop-up shed, structure made of lumber with roof and floor, and sweat lodge were removed on or before March 25, 2018.  Defendant Entrup claimed that site plan approval was required and had not been obtained for uses of the property or for the installation of these nine "structures."  In her letter, Defendant Entrup acknowledged that certain of the structures were "used on site for religion uses and public activity" but claimed that they were impermissibly located in a floodplain.  See *id.* at 3.  Citing Ordinance 24-6.1h(3), Defendant Entrup asserted that only the following uses are permitted within a floodplain area: (a) Agriculture and horticultural activities; (b) Outdoor recreational facilities, including golf courses, ice-skating rinks, swimming pools, parks, playfields and other similar facilities; or (c) Essential services.  See *id.* Defendant Entrup stated that the uses of the Ramapough land did not meet the requirements set forth in Ordinance 24-6.1h(3).  See *id.* at 4.

62.   By letter dated April 24, 2018, the Township formally notified the Ramapough that it would start issuing summonses—demanding fines of up to $12,500 per day—for using the land at Sweet Water for prayer and for having a stone altar and prayer circle with Mesingws at Sweet Water.  In its letter imposing summonses, the Township claimed that the Ramapough's religious use of the land was not permitted by the Township Code.  See Exhibit B at 1 ("Our site observations on various days, including Friday, April 20, 2018, indicate that the property and structures on site are being used for religious uses (house of worship and prayer groups) and public assembly uses. These uses at the site are being performed without obtaining the necessary

29

Zoning approval from the Township . . . . The uses being performed at the site are clearly not listed as permitted uses in this zone and as per Article 24-1.3b of the Township Zoning Code.").

63.     In its April 24, 2018 letter, the Township also claimed that the Ramapough's use of the prayer circle and stone altar constituted an unpermitted structure, which the Township defined as "a combination of materials to form a construction for occupancy, use or ornamental whether installed on, above, or below the surface of a parcel of land." See Exhibit B at 2.  The Township also cited these religious artifacts as flood hazards, despite their location 30 yards from the riverbank and a finding by the New Jersey Department of Environmental Protection that the structures did not violate the Flood Hazard Area Control Act.

64.     As a result of these allegedly impermissible uses, the Township cited the Ramapough with ten zoning code violations. The Township issued Plaintiffs summonses retroactive to Thursday, March 29, 2018, "for each weekday up to and, including Friday April 20, 2018" and notified Plaintiffs that it would "continue to issue daily Summonses for each violation[.]"  Exhibit B at 4.  Defendant Thomas Mulvey, acting in his role as agent of Defendant Mahwah, has indeed continued to issue daily summonses to the Ramapough.  As of September 21, 2018, the fines levied against the Ramapough total as much as $1,452,500.

65.     Even the Ramapough's mere use of their Land, without any structures, was cited by the Town Prosecutor in connection with a prior municipal litigation as violating the zoning code.  Such uses included the Ramapough's "religious use" of the Land, "public assembly," and use of the Land as a "campground."

66.     By issuing cumulative daily summonses to the Ramapough, Mahwah is unlawfully enforcing and implementing a land-use regulation that imposes a substantial burden on the rights of the Ramapough to the free exercise of religion and unreasonably limits religious

assembly on C-200 land. Mahwah's enforcement of its land-use regulations against the Ramapough does not further a compelling state interest and is not the least restrictive means of furthering any legitimate town interest.

67.   Upon information and belief, seeking a use variance would be futile, given Mahwah's pattern of harassment and discrimination against the Ramapough.

68.   Upon information and belief, the Township has not similarly enforced its zoning laws against other landowners for similar uses of C-200 land.  For example, Polo Club members have put up religious and non-religious structures including a statue of a brass horse, menorahs, Christmas trees, and wreaths, and have hosted large events with as many as twenty-five cars parked on the road.   In issuing and threatening to enforce these summonses against the Ramapough, Mahwah has made deliberate efforts to prevent the Ramapough's use of its property for religious exercise, evidencing a pattern of discrimination against the Ramapough when compared to the treatment afforded to other churches and other, non-religious users in the C-200 conservation zone.

69.   The Township's purpose in issuing these summonses is to end the Ramapough's religious use of their property, eliminate their sacred sites, and prevent religious assembly. The Township's intimidation tactics have been largely successful—they have suppressed Plaintiffs' use of the land and rendered the tribe's religious exercise effectively impracticable. Though some ceremonies have continued, the Township's actions have significantly chilled Ramapough's use of the land for religious purposes.  Since it began issuing the daily summonses to the Ramapough, many members of the Ramapough have been scared to enter the lands at Sweet Water and have ceased practicing their religion at the site. Mahwah's ongoing actions constitute a substantial burden to the Ramapough's free exercise of religion.[4]

[4] Defendant Mahwah has a history of discriminating on the basis of religion. Defendant Mahwah

31

### III.   MAHWAH AND THE POLO CLUB HAVE CONSPIRED TO BURDEN PLAINTIFFS' EXERCISE OF RELIGION BASED ON DISCRIMINATORY ANIMUS

70.     In issuing its summonses, Mahwah and its agents are acting at the behest of, and in partnership with, the Polo Club, which is located adjacent to Sweet Water. Polo Club members have publicly expressed that their goal is to drive the Ramapough off of their property.

71.     Upon information and belief, from December 2016 through May 2017 representatives of the Mahwah Council, including the Mayor, regularly visited and conferred with the Polo Club regarding action to take against Ramapough's use of Sweet Water.  Upon information and belief, agents of the Township maintain close cooperation with the Polo Club in a coordinated campaign against the Ramapough.

72.   48.     Upon information and belief, Tthe Polo Club hired a public relations firm to pursue their agenda and advises the Polo Club including media communications, stories, and the internetagainst the Ramapough.  On June 81, 2017, defendant Polo Club's agent Jeanine Genauer of the JPR Group wrote a letter to the editor which appeared on northjersey.com falsely accusing Ramapough of violations of New Jersey state regulations.

recently engaged in a similar pattern of racial and religious discrimination against another religious group.  In 2017, Mahwah acted to illegally prevent Jewish residents of Rockland County, New York, from establishing an eruv in Bergen County, New Jersey, which would have allowed Rockland County Jews with certain sincerely held religious beliefs to carry or push objects from place to place within a designated unbroken area during the Sabbath and on Yom Kippur.  In response to an openly anti-Semitic campaign against the eruv from certain residents of Mahwah, the Township unlawfully threatened the Rockland County Jews' constitutional, civil, and contractual rights by, among other things, demanding that items necessary for the eruv be removed; threatening to issue summonses in connection with items that were legally affixed to the Utility Company's poles within the Township; and officially authorizing the issuance of such unlawful summonses.  Mahwah's illegal ordinances were later withdrawn after lawsuits were brought against the town by the Bergen Rockland Eruv Association and the New Jersey Attorney General.  Mahwah recently settled the private lawsuit and with the State regarding these allegations.

32

73.    Defendant Polo Club, in furtherance of its campaign to interfere with the Tribe's religious practice and to drive the Ramapough off their land, has made numerous unfounded and malicious complaints to the Township's police department, using the New Jersey municipal "private warrant" process to bring criminal charges against Ramapough members. For example, the Polo Club made a criminal complaint against Chief Dwaine Perry for allegedly tampering with the surveillance cameras directed at Ramapough land. Surveillance footage showed no such occurrence, and the Bergen County Superior Court later found that Chief Perry "did not touch, let alone tamper" with the Polo Club's cameras.

74.    Members of the Polo Club have treated the Ramapough with hostility and rank prejudice. Some Polo Club members have publicly shouted racist and disturbing language at Plaintiffs, sometimes during Ramapough religious ceremonies and prayers. Hateful comments directed at the tribe in 2016 and 2017 include the following xenophobic and racist statements:

- "Nobody prays with stones and fire."
- "Fuck you, Mountain N******s."
- "Go back to your Mountain."
- "Go back to where you came from."
- "Piece of shit," "fucking gypsies," and "dirty stinking Indians."

75.    On multiple occasions, green bags of dog feces were found in the Sweet Water driveway, as if someone had intentionally thrown them there.

76.    49.    Defendants Mahwah and Members of the Polo Club and their agents around this time began an active campaign to isolate and denigrate the Ramapough based on religion and race. Upon information and belief, since the start of the Split Rock Sweetwater prayer site by Ramapough and allies at 95 Halifax Road, representatives of the Mahwah Council,

most prominently the Mayor, visited and conferred with the Polo Club regarding action to take against Ramapough's use of the prayer site. maintain surveillance cameras directed toward Ramapough property 24 hours a day, and have trespassed on Ramapough land to threaten, photograph, and record Tribe members. In an effort to restrict Plaintiffs' use of their own land, Polo Club members have also publicly demanded that the Township impose fines and jail time on Ramapough members.

77.   Agents of the Polo Club have also taken to using the Mahwah police department to enforce their vicious campaign of harassment against the Ramapough. In one instance in October 2016, Paul Scian, the President of the Polo Club, gave members of the tribe permission to use electricity from the front of an electricity box by the Ramapough property. The next month, several police cars came to Sweet Water to investigate a complaint from Mr. Scian that the tribe was stealing electricity.

50.   The Polo Club has interfered with Ramapough relationships including sending letters, requesting meetings, and meeting with allies. A member of the Polo Club has even contacted the Ramapough's own attorneys, including a board member of one attorney's firm, asking these individuals and entities to not associate with Ramapough.

51.   The Polo Club has been advised in this campaign by John Doe 2 and John Doe Entities 1 and 2. Upon information and belief, defendant Polo Club has even gone so far as to draft a complaint against Mr. Charles Elmes, the grantor of the deed to 95 Halifax Road, with the objective of forcing the Ramapough off the land. Regardless of whether filed or not, this is yet another attempt by the Polo Club to attack third parties associated with Ramapough.

52.   Defendant Mahwah engaged in a similar pattern of racial and religious discrimination against another religious group. In 2017, defendant Mahwah acted to illegally

34

prevent Jewish people from using purely symbolic structures called ERUVs to allow them to pray.  Mahwah passed unconstitutional municipal ordinances to exclude Jewish people from public parks that were later withdrawn after lawsuits from the group and the New Jersey Attorney General.

53.    Defendant Mahwah's Mayor, the Council, and township officials maintain close cooperation with the Polo Club in a coordinated campaign against the Ramapough Lenape Nation expressed through constant, even daily, communication, surveillance of Ramapough and Ramapough land, frequent visits to the Polo Club and for in person meetings.  The attorney for the Town of Mahwah and attorneys for the Polo Club communicate on a daily basis.  Attorneys for the Polo Club, in turn, have reviewed, shared, and possibly even drafted, legal documents for the Town of Mahwah related to enforcement actions.  Defendant John Doe 2 and entities John Doe 1 and 2 act on behalf of the Polo Club, both individually and as a partner with Defendant Mahwah and its agents, in actions designed to force Ramapough off Ramapough private land based on Ramapough's race and religion.

**Mahwah Threatens To Act Outside Law By Using "Self-help" And**
"Actual Enforcement" Against Ramapough

78.    54.    On January 5, 2018, Mahwah, by townTownship attorney Brian Chewcaskie, told thea Bergen County Superior Court that Mahwah was prepared to act unilaterally without a Bergen County Superior Court order to prohibit prayer by the Ramapough through "self-helpself-help" regardless of how that Court ruled regarding Mahwah's motion demanding a halt toon a motion by Mahwah seeking an order enjoining the Ramapough from using Sweet Water for religious usepurposes and requiring the Ramapough to take down certain sacred religious sitems in an order to show cause:

> MR. CHEWCASKIE:    if[I]f the Court dismisses this complaint than the Township will exercise whatever rights it may have pursuant to the law.  The

Township does not want to exercise self-help, we want to proceed in accordance with the rules under the statute. The Township has been very patient; the Township has not issued any additional summonses, has not taken any specific, what I would call, actual enforcement action.[5]

*Mahwah v. Ramapough,* Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (oral argument). Later, Mahwah's attorney Mr. Chewcaskie told the State Court that Mahwah was prepared to act outside of the judicial process:

 Later, Mr. Chewcaskie indicated that Mahwah was prepared to act outside of the judicial process:

MR. CHEWCASKIE: What I said is, we're trying to play by the rules, the rules would require a judicial intervention as permitted pursuant to the statute. Otherwise, it's the exercise of self-help which I don't believe anybody wants.[6]

*Id.* Ramapough interpret this as defendant Mahwah claiming that Mahwah can act regardless of what the State Courts say.

79.   55.   Mahwah's order to show cause, thatwhich was denied by the State Court denied, demanded the physical removal of Ramapough's sacred altar and prayer circle:

3.[T]The Defendant and its employees, agents, assigns, and successors in interest [shall ] demolish and remove (at the direction of the Township) any and all structures built in violation of Township's Land Developmentzoning Oordinance and/or the NJDEP Flood Hazard Area Control Act.[7]

*Mahwah v. Ramapough,* Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (Mahwah's proposed order to show cause).

---

[5] See Exhibit G (Mahwah v. Ramapough, Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (oral argument)).

[6] *Id.*

[7] See Exhibit H (Mahwah v. Ramapough, Superior Court of Bergen County, Civil Action No. BER-L-3189-17, May 10, 2017 (Mahwah's proposed order to show cause)). This was after the New Jersey Department of Environmental Protection found that the structures did not violate the New Jersey Flood Hazard Area Control Act.

56. ~~Mahwah has issued letters, threats and fines for the stone altar and prayer circle despite an NJDEP finding that none of the structures on the land were maintained in violation of the NJDEP Flood Hazard Area Control Act.  Mahwah also illegally defines as violations simple prayer without any structures.~~

57. ~~The Bergen County Superior Court denied Mahwah and the Polo Club's demands to destroy and dismantle sacred sites for the third time on January 5, 2018.  *Mahwah v. Ramapough,* Superior Court of Bergen County, Civil Action No. BER-L-3189-17, January 5, 2018 (order denying Mahwah's motion).~~

58. ~~Despite the denials, defendant Mahwah continues to claim the right to unilaterally enter Ramapough land, tear down and destroy sacred sites, prohibit prayer and gatherings.  Both defendant Mahwah and Polo Club have sent letters with these illegal demands and threats.~~

~~59.~~ At a March 22, 2018 Town Council meeting, Mahwah Town Council President Robert Hermansen ~~at a Council meeting~~ said~~.~~, "[i]~~i~~t's time to move forward one way or the other." ~~and I~~Later ~~as a possible option asks town attorney Brian Chewcaskie "do~~, Mr. Hermansen suggested, "[d]o we go in and take the rocks down ourself~~?" *Mahwah Town*~~[ves]?" At that same Council~~, Comment, March 22nd, 2018, defendant Mahwah Council President Robert Hermansen.~~

80.   meeting, ~~60.~~  Polo Club member Charles Brammer said~~,~~ "~~we~~[w]e need something done.  Not a year from now.  Not six months from now.  It better be done now.  We're tired of it." ~~*Mahwah Town Council,* Comment, March 22nd, 2018, defendant Polo Club resident Charles Brammer.~~

81.   Upon information and belief, Mahwah and the Polo Club have conspired to induce the Ramapough to sell sacred lands along the Ramapo River at 95 Halifax Road. A

prominent Polo Club member even threatened the tribe, stating that if they did not sell Sweet Water for a materially low price, the Polo Club was "prepared to do something bad." Days later, frivolous criminal charges were brought against the Ramapough chief.

82.    The Polo Club has instituted numerous unfounded lawsuits against Ramapough in Bergen County Superior Court as part of their campaign to apply pressure against Plaintiffs. Mahwah has similarly instituted litigation against Ramapough, and attorneys for the Polo Club have sought to directly intervene, and in some instances actually assisted and participated in, these lawsuits in which they had no official role.  The purpose of all these actions taken jointly and individually by the Town and the Polo Club have been to burden, harm and destroy the Plaintiffs' religious uses of their property. Indeed, upon information and belief, agents of the Polo Club communicate with agents of Mahwah as frequently as once per day, collaborating to prevent Ramapough prayer and assembly.

**Mahwah Acts Outside Of Law to Prevent Prayer, Cultural Assembly,**
**and To Take Ramapough Land**

61.    On April 24, 2018, Mahwah and the Polo Club dropped any pretense of following the rule of law by engaging in that threatened "self-help" without approval from the Bergen County Superior Court.  By letter of that date, Mahwah started to improperly and illegally impose on Ramapough Mountain Indians, Inc. ten different summonses seeking a penalty of up to $12,500 per day, retroactive to March 29th, 2018, for using the land for open air prayer, having a stone altar, and a prayer circle with Mesingws (masks) carved into tree trunks (all natural material).

62.    The total accumulated fines as of May 14, 2018 is four hundred and eighty thousand dollars ($480,000.00).

63.   Defendant Mahwah has, in fact, imposed coercive fines on Ramapough in addition to gathering for religious purposes for simply coming onto the land at 95 Halifax.  On Friday, April 20th, a class from Ramapo College came to 95 Halifax Road for a discussion on environmental issues and indigenous culture with Chief Dwaine Perry and Steven Smith.  In its April 24th letter, the Town of Mahwah cited this as illegal activity.  On May 4, 2018, a class from Union Theological Seminary came to 95 Halifax Road and met with Steven Smith for a discussion on environmental issues and indigenous communities.  There was no prayer.  Upon information and belief, this was reported by Polo Club neighbors to the Mahwah Police Department as a violation.  Defendant Mahwah cites this as illegal conduct justifying confiscatory fines.

64.   Defendants Mahwah and the Polo Club continue to use coercive action and impose confiscatory fines to take Ramapough land at 95 Halifax Road and remove Ramapough people, friends, sacred altars and prayer circle nor prohibit gathering or prayer or educational meetings.  Mahwah continues a history of acting unilaterally taking land and/or forcing removal of Ramapough from Rampough land including:

A.   Mahwah's use of land policy causing an exodus and removal of Ramapough people from land on Stag Hill in Mahwah where Ramapough have lived for centuries with many homesites replaced by wealthy individuals.

B.   In 2003, Mahwah built a footbridge to land owned by the Ramapough Lenape Nation after being denied permission to do so by Ramapough and without any compensation.

C.   In 2012, Mahwah recognized Ramapough rights to use the land for religious purposes and to have Mesingws (logs with masks) by issuing a permit.  During

negotiations and proceedings regarding the property, Mahwah failed to disclose the existence of the 2012 permit it knew existed to new counsel and, once uncovered and presented, issued a letter purporting to rescind the 2012 permit *sua sponte* without notice or hearing.

D.    On June 15, 2017, the Bergen County Superior Court dissolved Mahwah's temporary restraining order seeking to prohibit prayer, religious meetings, and force Ramapough to remove the prayer circle consisting of Mesingws (logs with masks).

E.    On October 31, 2017, Michael Kelly, town engineer, said under oath in testimony before the Bergen County Vicinage Court that more than two (2) people praying on land at 95 Halifax Road in open air prayer regardless of any structures is a violation of the Mahwah municipal code.

F.    Both Mahwah and the Polo Club have threatened Ramapough with legal action for people meeting on Ramapough land regardless of prayer.

G.    On November 17, 2017, the Mahwah Municipal Court declared Mahwah's attempt to rescind a 2012 permit recognizing religious use and associated masks null and void for lack of due process.  While holding that the masked poles in their current location were structures subject to zoning regulations, the Mahwah Municipal Court stayed enforcement of any fines or penalties until conclusion of any appeal filed by the Ramapough.  Mahwah and the Polo Club are employing coercive enforcement despite the fact that an appeal was filed on December 7, 2017.

H. Defendant Polo Club, basically stepping into the shoes of a private prosecutor, filed its own enforcement actions seeking to prohibit Ramapough from using Ramapough land for prayer or even more than five (5) people coming onto the land.  Defendant Polo Club communicates with the defendant Mahwah as frequently as once per working day, collaborating with the goal of prohibiting Ramapough prayer, gathering, and to attack Ramapough sacred sites. Defendant's attorney John Lam b, who is not an expert on indigenous religious practice, filed a verified affidavit and documents falsely claiming that land at 95 Halifax Road had no special value for Ramapough and that other land was sufficient for religious use despite lack of access to the Ramapo River.  The Polo Club and Mahwah refer to Ramapough's sacred altar as "a pile of rocks."

I. On January 5, 2018, Brian Chewcaskie, town attorney of Mahwah, told the Bergen County Superior Court that Mahwah was prepared to engage in "self-help" and "actual enforcement" without Court order, which Ramapough interpret as an illegally claimed right to physically removing Ramapough people and sacred items from land plus prohibit prayer.

J. Despite a finding by the New Jersey Department of Environmental Protection finding no violation of law regarding the Flood Hazard Control Act, Mahwah essentially ordered Ramapough by letter dated January 17, 2018 to remove all structures on the land and to stop prayer on penalty of imposing coercive enforcement for violation of local code enforcement.

65.    By letter dated April 24, 2018 from defendant Geraldine Entrup, administrative officer of Mahwah began its "self-help" and "actual enforcement" through daily coercive, continual and cumulative fines.

66.    As set out in the April 24, 2018 letter, defendant Michael Mulvey of Mahwah issues daily summonses as a complainant.  As of the date of this filing, defendant Mahwah, in concert with defendant Polo Club, are demanding four hundred and eighty thousand dollars ($480,000.00) in fines accumulating daily.  This is for having a sacred altar and prayer circle on Ramapough private land, for open air prayer, and even for people coming to the land.

## FIRST CLAIMS FOR RELIEF

~~Count I~~

~~"Free Exercise of Religion"~~
United States Constitution, First Amendment —Free Exercise of Religion
42 U.S.C. § 1983
(Defendants Mahwah, ~~Polo Club, John Does)~~Entrup, and Mulvey)

~~67.    Plaintiffs include all allegations in this complaint as if fully stated in this count.~~

83.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

84.    ~~68.~~    Plaintiffs have a constitutional right under the First and Fourteenth Amendments to the United States Constitution freely to practice their religion. The First Amendment of the United States Constitution, which is made applicable to state and local governments, including ~~d~~Defendant Township of Mahwah, New Jersey, through the Fourteenth Amendment, guarantees freedom of religion by saying "Congress shall make no law respecting an establishment of religion, or prohibiting free exercise thereof."  United States Constitution, Amendment 1.

85.    ~~69.~~    The Ramapough people and allies have a right to come to the Ramapough ~~private~~ lands at 95 Halifax Rd., Mahwah, NJ, to assemble and engage in open air prayer, including at the Ramapough's sacred ~~S~~stone ~~A~~altar and ~~P~~prayer ~~C~~circle.

~~70.    By threatening to physically prohibit and block Ramapough and allies coming to the land for religious purposes, including prayer, defendants have imposed a substantial burden on the religious exercise of the Ramapough people.~~

86.    ~~71.~~    By imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious purposes, including prayer, ~~d~~Defendants Mahwah, Entrup,

43

and Mulvey have imposed a substantial burden on the religious exercise of the Ramapough people.

72.    ~~Defendants' laws and actions deprive, and continue to deprive, Ramapough of the right to free exercise of religion:  (1) by substantially burdening religious exercise without a compelling governmental interest, (2) by discriminating against and targeting Ramapough for disfavor, and (3) by denying Ramapough~~ access to the Ramapo River ~~at Ramapough private property as part of indigenous prayer and practice.~~

87.    Without the stone altar, prayer circle, and Mesingws, Plaintiffs and other Ramapough cannot freely assemble or practice their religion on their own land.  The stone altar represents the different prayers of each individual who lays the stone, and the prayer circle and Mesingws represent symbolic sacred space.  Ramapough believe that even Ramapough have no right to remove the stones laid down in prayer and to do so or to remove the prayer circle would severely interfere with, disrupt, and hinder the past, present, and future prayers.

88.    ~~73.~~    The object, motivation, and effect of the actions of Defendants Mahwah~~,~~ Entrup, and ~~the Polo Club~~Mulvey is to ~~take the land and to~~ suppress the religious practices of the Plaintiffs and all Ramapough ~~and guests by duress or force~~living in or around Bergen County.  These actions have specifically targeted ~~Ramapough people based on race and religion.~~the Ramapough, as the laws that Defendants Mahwah, Entrup, and Mulvey invoke to support the removal of these structures are not enforced against citizens of other faiths with consistency or regularity.

89.    The stone altar, prayer circle, and Mesingws present no aesthetic, safety, traffic, fiscal, or other concern to Mahwah.  There is, therefore, no compelling State interest in ordering the removal of the stone altar, prayer circle, or Mesingws from Plaintiffs' land.

90.   Defendants Mahwah, Entrup, and Mulvey's actions deny Plaintiffs their rights to assemble and freely practice their religion in violation of the First and Fourteenth Amendments to the United States Constitution.

91.   Defendants Mahwah, Entrup, and Mulvey have acted under color of State Law to deprive Plaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.  Defendants Mahwah, Entrup, and Mulvey's actions were motivated by intent to interfere with Plaintiffs' civil rights, and Defendants Mahwah, Entrup, and Mulvey were at all times aware that they were acting in violation of federal laws.

92.   ~~74.~~   As a result of ~~the actions of d~~Defendants Mahwah~~,~~, Entrup, and ~~Polo Club~~Mulvey's actions to block prayer and force removal of sacred sites, ~~Ramapough will be, and in fact are being,~~and if Defendants Mahwah, Entrup, and Mulvey proceed to enforce or issue additional unlawful summonses to the Ramapough in connection with their religious use of their land and/or their use of the sacred stone altar, prayer circle, and Mesingws, Plaintiffs have been and will continue to be irreparably harmed.  As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees.

~~Count II~~

**SECOND CLAIM FOR RELIEF**
~~"Freedom of Association"~~
United States Constitution, First Amendment —Freedom of Association
42 U.S.C. § 1983
(Defendants Mahwah, ~~Polo Club, John Does)~~Entrup, and Mulvey)

~~75.   Plaintiffs include all allegations in this complaint as if fully stated in this count.~~

93.   Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

94. ~~76.~~   Plaintiffs have a constitutional right under the First and Fourteenth Amendments to the United States Constitution to assemble peacefully for prayer, cultural, and political activity. The First Amendment of the United States Constitution, which is made applicable to state and local governments, including defendant Township of Mahwah, New Jersey, through the Fourteenth Amendment, guarantees freedom of ~~religion~~association by saying "Congress shall make no law ... abridging ... the right of the people to peaceably assemble." United States Constitution, Amendment 1.

95.   ~~77.~~   The Ramapough people and allies have a right to come to Ramapough private land at 95 Halifax Rd., Mahwah, NJ, ~~regardless of~~for prayer~~, for~~ and other purposes including, but not limited to, recreation, education, hunting, fishing, or cultural and political reasons.

96.   ~~78.~~   By threatening to physically prohibit and block Ramapough and allies coming to the land ~~for what,~~ ~~d~~Defendants ~~' characterize as "public assembly" defendants~~Mahwah, Entrup, and Mulvey have imposed a substantial burden on the exercise of the right of Ramapough people and allies to peaceably assemble and associate.

97.   ~~79.~~   By imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for ~~for what~~religious and other purposes, ~~d~~Defendants ~~' characterize as "public assembly" defendants~~Mahwah, Entrup, and Mulvey have imposed a substantial burden on the exercise of the right of Ramapough people and allies to peaceably assemble and associate. Defendants Mahwah, Entrup, and Mulvey's threats and intimidation tactics have also caused many Ramapough members to cease use of the land.

~~80.~~   Defendants~~'~~ Mahwah, Entrup, and Mulvey's laws and actions deprive, and continue to deprive, Ramapough of the right to freedom of association:  (1) by substantially

burdening association and assembly without a compelling governmental interest, (2) by discriminating against and targeting Ramapough for disfavor, and (3) by denying Ramapough access to the Ramapo River at Ramapough private property.

98. Defendants Mahwah81. The object, motivation, and effect of the actions of Mahwah and the Polo Club is to take the land and, Entrup, and Mulvey's actions are motivated by religious animus towards the Ramapough and are intended to suppress—and have suppressed—the ability of Ramapough and guests to assemble and associate by duress or force. These actions specifically target Ramapough people based on race and religion.

82. As a result of the actions of defendants Mahwah and Polo Club to block Ramapough from peaceful assembly and association, Ramapough will be, and in fact are being, irreparably harmed.

**Count III**

"Substantive Due Process"
United States Constitution, First and Fourteenth Amendments
42 U.S.C. § 1983
(Defendant Mahwah, John Does)

83. Plaintiffs include all allegations in this complaint as if fully stated in this count.

84. The Fourteenth Amendment to the United States Constitution says "[n]o State shall deprive any person of life, liberty, or property, without due process of law." *United States Constitution, Amendment XIV, Section 1.*

85. The doctrine of substantive due process prohibits deprivation of a property interest for improper motives and by means that are pretextual, arbitrary, capricious and without rational basis.

86.   Ramapough have a right to be free of discrimination based on race and religion and a valid property interest in a benefit entitled to constitutional protection.

87.   Defendants Mahwah, Entrup, and Mulvey have acted under color of State Law to deprive RamapoughPlaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.

Defendants Mahwah, Entrup, and Mulvey's 88.   Defendants Geri Entrup and Thomas Mulvey have individually executed orders and actions to stop Ramapough assembly and prayer, among other acts, in contravention to Ramapough's constitutionally guaranteed civil rights.

99.   89.   Defendants Mahwah and the Polo Club's actions were motivated by the intent to interfere with Plaintiff's' civil rights, and dDefendants Mahwah, Entrup, and their agentsMulvey were at all times aware that they were acting in violation of federal laws.

100.   As a result of the actions of Defendants Mahwah, Entrup, and Mulvey to block Ramapough from peaceful assembly and association, Ramapough will be, and in fact are being, irreparably harmed.  As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees

**THIRD CLAIM FOR RELIEF**

90.   Defendants have infringed upon Ramapough's property interests in a manner that is arbitrary or irrational and/or based upon no legitimate reason or rational interpretation of the law.

91.   Defendants' actions were so outrageously arbitrary, conscience shocking or oppressive as to constitute a gross abuse of governmental authority.

92.   As a result of these actions, Ramapough continue to be grossly and excessively charged with summonses and fined $ 12,500 per day.  Ramapough will seek damages in an

~~amount double to those fines that defendants seek to illegally impose and/or an amount to be determined at trial.~~

~~93.    As a result of these~~ ~~actions and unless defendants are enjoined from continuing to issue unlawful summonses in connection therewith, Ramapough will be irreparably harmed.~~

~~**Count IV**~~
~~"Procedural Due Process"~~
United States Constitution, ~~First and~~ Fourteenth Amendments ~~–~~ – Substantive Due Process
42 U.S.C. § 1983
(Defendants Mahwah, ~~John Does~~Entrup, and Mulvey)
~~94.    Plaintiffs include all allegations in this complaint as if fully stated in this count.~~
101.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

102.    ~~95.~~    The Fourteenth Amendment to the United States Constitution ~~says~~provides that "[n]o State shall deprive any person of life, liberty, or property, without due process of law."  United States Constitution, Amendment XIV, Section 1.  Plaintiffs possess a constitutional right to the use and enjoyment of their property – the land at Sweet Water.

103.    By applying zoning regulations to Plaintiffs in a discriminatory manner, imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious purposes, including prayer, and by using threats and intimidation tactics to cause Ramapough members to cease use of the land, Defendants Mahwah, Entrup, and Mulvey have violated Plaintiffs' constitutional right to the use and enjoyment of their land in a manner that shocks the conscience.

104.    Defendants Mahwah, Entrup, and Mulvey's actions are motivated by religious animus toward the Ramapough, and are intended to deprive Plaintiffs of the use and enjoyment of their land solely based on that impermissible animus.

49

96.   ~~The doctrine of procedural due process prohibits deprivation of a constitutionally protected property or liberty interest for improper motives without adequate process.~~

97.   ~~Ramapough have a right to be free of discrimination based on race and religion and a valid property interest in land at 95 Halifax Road which is also a benefit entitled to constitutional protection.~~

~~98.~~   Defendants <u>Mahwah, Entrup, and Mulvey</u> have acted under color of State Law to deprive ~~Ramapough~~<u>Plaintiffs</u> of their rights, privileges or immunities secured by the Constitution and <u>the</u> laws of the United States in violation of 42 U.S.C. § 1983.

<u>Defendants Mahwah, Entrup, and Mulvey's</u> ~~99.~~   ~~Defendants Geri Entrup and Thomas Mulvey have individually executed orders and actions to stop Ramapough assembly and prayer, among other acts, in contravention to Ramapough's constitutionally guaranteed civil rights.~~

~~100.~~   ~~Defendant Mahwah's town engineer, Michael Kelly, sent a letter to Ramapough purporting to rescind a 2012 permit for religious use and an earlier configuration of the Prayer Circle *sua sponte* and without notice or hearing.~~

<u>105.</u>   ~~101.~~   ~~Defendants Mahwah and the Polo Club's~~ actions were motivated by <u>the</u> intent to interfere with Plaintiff~~'s~~<u>s'</u> civil rights, and ~~d~~<u>D</u>efendants <u>Mahwah, Entrup,</u> and ~~their agents~~<u>Mulvey</u> were at all times aware that they were acting in violation of federal laws.

~~102.~~   ~~Defendants have infringed upon Ramapough's property interests in a manner that is arbitrary or irrational and/or based upon no legitimate reason or rational interpretation of the law.~~

<u>106.</u>   <u>As a result of Defendants Mahwah, Entrup, and Mulvey's actions to deprive Plaintiffs of the use and enjoyment of their land based on religious animus, Plaintiffs have been</u>

and will continue to be irreparably harmed.  As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees.

### FOURTH CLAIM FOR RELIEF

42 U.S.C. § 1985 – Conspiracy to Violate Civil Rights
(All Defendants)

103.   Defendants are acting unilaterally without court sanction or order in what they term "self help" which is, in reality, vigilante behavior.

107.   Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

108.   Plaintiffs have a constitutionally protected right under the First and Fourteenth Amendments to the United States Constitution to freely practice their religion.

109.   Upon information and belief, the Polo Club has conspired with one or more of the other Defendants for the purpose of depriving Plaintiffs of (1) equal protection of the law and (2) equal protection and immunities under the law; and for the purpose of preventing and hindering the constituted authorities from giving and securing to Plaintiffs equal protection of the law.

110.   Upon information and belief, Defendants did and caused to be done an act or acts in furtherance of the object of the conspiracy, whereby Plaintiff was deprived of the rights and privileges as set forth above.

111.   104.   Upon information and belief, Defendants' actions, in addition to being so outrageously arbitrary, conscience shocking or oppressive as to constitute a gross abuse of governmental authority, are also an unfair deprivation of property in violation of Ramapough's rights to procedural due process. are motivated by religious animus towards Plaintiffs and were intended to deprive Plaintiffs of their civil rights, particularly Plaintiffs' right to free assembly and free exercise of religion.

51

112.    ~~105.~~    As a result of the~~se~~ actions~~, Ramapough continue to be grossly and excessively charged with summonses and fined $ 12,500 per day.  Ramapough will seek damages in an amount double to those fines that defendants seek to illegally impose and/or an amount to be determined at trial.~~ of Defendants, Plaintiffs have been and will continue to be irreparably harmed. As a result of these harms, Plaintiffs are entitled to damages including but not limited to, general and punitive damages and attorneys' fees.

~~106.    As a result of these actions and unless defendants are enjoined from continuing to issue unlawful summonses in connection therewith, Ramapough will be irreparably harmed.~~

**FIFTH  CLAIM FOR RELIEF**
~~Count V~~
"Substantial Burdens"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. §2000cc~~(a)~~
(Defendant~~s~~ Mahwah~~, Polo Club, John Does~~)

~~107.    Plaintiffs include all allegations in this complaint as if fully stated in this count.~~

113.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

114.    ~~108.~~    ~~The~~  ~~Religious  Land  Use  and  Institutionalized  Persons  Act~~  RLUIPA prohibits substantial burdens being placed on Ramapough religious exercise by prohibiting ~~d~~Defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in a manner that imposes a substantial burden on the religious exercise of a person."  42 U.S.C. § 2000cc(a).

115.    ~~109.~~    Defendant~~s~~ Mahwah's coercive actions in impeding Ramapough's exercise of religion ~~in the form of prayer, or to even~~and assembl~~y~~ ~~,~~constitute the imposition or implementation of a land use regulation in a manner substantially burdening religious exercise within the meaning of RLUIPA, 42 U.S.C. § 2000cc(a)(1).

**~~Count VI~~**

116.    Defendant Mahwah's actions substantially burden the religious exercise of the Ramapough who wish to freely practice their religion at Sweet Water.  Defendant Mahwah's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

117.    Defendant Mahwah's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant Mahwah was at all times aware that it was acting in violation of federal laws.

118.    Defendant Mahwah has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner substantially burdening religious exercise within the meaning of RLUIPA.

119.    Defendant Mahwah's actions are in violation of RLUIPA.

**SIXTH CLAIM FOR RELIEF**

"Equal Terms"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(1)
(Defendant Mahwah)

120.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

121.    ~~110.    The Religious Land Use and Institutionalized Persons Act~~RLUIPA prohibits discrimination and exclusion of Ramapough regarding land use regulations by prohibiting ~~d~~Defendant Mahwah from "impos[ing] or implement[ing] any land use regulation in

53

a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

122. ~~111.~~ Defendant~~s~~ Mahwah's coercive actions in impeding Ramapough's exercise of religion ~~in the form of prayer, or to even assemble, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle~~and assembly constitute the imposition or implementation of a land use regulation in a manner treating Ramapough on less equal terms as prohibited by RLUIPA, 42 U.S.C. § 2000cc(b)(1).

123. Defendant Mahwah's actions substantially burden the religious exercise of the Ramapough who wish to freely practice their religion at Sweet Water. Defendant Mahwah's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

124. Defendant Mahwah's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant Mahwah was at all times aware that it was acting in violation of federal laws.

125. Defendant Mahwah has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

126. Defendant Mahwah's actions are in violation of RLUIPA.

**SEVENTH CLAIM FOR RELIEF**

~~112.~~ ~~Defendants' actions as described above~~ ~~do not further a compelling government interest nor would they be the least restrictive means of furthering~~ ~~such interest.~~

54

**Count VII**

**"Nondiscrimination"**
**Religious Land Use and Institutionalized Persons Act**
**42 U.S.C. § 2000cc(b)(2)**

113.   The Religious Land Use and Institutionalized Persons Act prohibits discrimination and exclusion regarding land use regulations by prohibiting defendant Mahwah from discriminating against Rampough by "impos[ing] or implement[ing] any land use regulation in a manner that treats a religious assembly or institution on less than equal terms." *42 U.S.C. § 2000cc(b)(2).*

114.   Defendants coercive actions in impeding Ramapough's exercise of religion in the form of prayer, or to even assemble, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation in a manner treating Ramapough on less equal terms.

**Count VIII**

"Exclusion and Limits"
Religious Land Use and Institutionalized Persons Act
42 U.S.C. § 2000cc(b)(3)(A)
(Defendant Mahwah)

127.   Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

128.   115.   The Religious Land Use and Institutionalized Persons ActRLUIPA prohibits exclusion of Ramapough from Mahwah, and in particular access to the Ramapo River, regarding land use regulations by prohibiting defendant Mahwah fromreligious assemblies through the "impos[ingition] or implement[ing anyation of] a land use regulation in a manner that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits

55

religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(A) and (B).

129. ~~116.~~ Defendant~~s~~ Mahwah's attempts to forcibly remove Ramapough from the land ~~and~~, coercive actions ~~in~~to imped~~ing~~e the Ramapough's exercise of religion ~~in the form of prayer, to prohibit prayer, or to even~~and assembl~~ey~~, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation that totally excludes religious assemblies from a jurisdiction and/or unreasonably limits religious assemblies, institutions or structures as prohibited by RLUIPA, 42 U.S.C. § 2000cc(b)(3)(A) and (B).

130. Defendants Mahwah's actions substantially burden the religious exercise of the Ramapough who wish to freely practice their religion at Sweet Water. Defendant Mahwah's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

131. Defendant Mahwah's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant Mahwah was at all times aware that it was acting in violation of federal laws.

132. Defendant Mahwah has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner that totally excludes religious assemblies from a jurisdiction and/or unreasonably limits religious assemblies, institutions or structures within a jurisdiction.

133. Defendant Mahwah's actions are in violation of RLUIPA.

56

## Count IX

"Forced Evictions"
United Nations, Organization of American States Treaties
(Defendants Mahwah, Polo Club, John Does)

117.    Plaintiffs include all factual allegations in this complaint as if fully stated in this count.

Defendants actions to remove Ramapough from 95 Halifax Road, sacred practice, and sacred sites constitute human rights violations guaranteed by international agreements and covenants including forced evictions.

118.    Forced evictions violate, directly and indirectly, the full spectrum of civil, cultural, economic, political and social rights guaranteed under international instruments administered by the United Nations and the Organization of American States including:

A.    The right to life (International Covenant on Civil and Political Rights, art. 6.1).

B.    Freedom from cruel, inhuman and degrading treatment (ibid., art. 7) • The right to security of the person (ibid., art. 9.1).

C.    The right to an adequate standard of living, including the right to adequate housing, food, water and sanitation (International Covenant on Economic, Social and Cultural Rights, art. 11, and related Human Rights Council resolutions).

D.    The right to non-interference with privacy, home and family (International Covenant on Civil and Political Rights, art. 17).

E.    Freedom of movement and to choose one's residence (ibid., art. 12.1).

F.    The right to health (International Covenant on Economic, Social and Cultural Rights, art. 12).

57

G.    The right to an effective remedy (International Covenant on Civil and Political

Rights, arts. 2.3 and 26).

H.    The right to property (Universal Declaration of Human Rights, art. 17).

I.    The rights to vote and take part in the conduct of public affairs (International

Covenant on Civil and Political Rights, art. 25).

Count X

Nuisance
(Polo Club)

119.    Plaintiffs include all allegations in this complaint as if fully stated in this claim.

120.    Defendant Polo Club has unreasonably invaded, used and monitored land and

property of Ramapough resulting in significant harm to plaintiff.

Count XI

Declaratory Judgment
(All Defendants)

121.    Plaintiffs include all allegations in this complaint as if fully stated in this claim.

122.    Defendants take the position that Ramapough can be unilaterally prohibited from

praying on Ramapough land without a court order.  This includes the imposition of crippling and

confiscatory fines and even "actual enforcement" meaning physically blocking coming onto the

land and forcing Ramapough to dismantle and remove sacred religious structures.

123.    Defendants Mahwah and their agents including defendants Entrup, and Mulvey

have acted on that position by issuing fines totalling $12,500 per day.

124.    Defendant Polo Club's members Kathleen and Charles Murray has demanded that

Mahwah remove Ramapough from Ramapough private property at 95 Halifax Road, police

58

action, and even send Ramapough to jail, including urging the fabrication of laws *ex post facto* if necessary to to do so.

125.    Defendant Polo Club's agent John Lamb has signed verified affidavits claiming that Ramapough have no special attachment to Ramapough private land at 95 Halifax Road and have property elsewhere in Mahwah to use for religious purposes.  This assertion is false, ignores historical ties, and ignores the fact that it is the only property that gives Ramapough access to the Ramapo River.

126.    By virtue of the acts identified in this complaint, there now exists an actual, justiciable controversy between Plaintiffs and Defendants relating to their respective rights, duties, and obligations, which controversy is ripe for adjudication pursuant to 28 U.S.C. § 2201.

127.    Declaratory relief will settle the legal issues between the parties set forth in the above-referenced letters and matters, and finalize the controversies described in those matters.

128.    Plaintiffs request a declaratory judgment:

A.    Prohibiting defendants Mahwah and the Polo Club from taking or forcing a sale of land through the issuance of complaints and summonses.

B.    Nullifying and voiding Mahwah's use of cumulative fines prohibiting prayer and coercive action to force removal of sacred altar, sacred prayer circle or force a sale of land.

C.    Declaring that the Ramapough and friends have the right to assemble and to engage in open air prayer at 95 Halifax Road on the Ramapo River.

D.    Prohibiting defendants Mahwah and agents Entrup and Mulvey, and defendant Polo Club and its agents from issuing legal process to prohibit open air prayer and tear down sacred sites.

~~E.     Prohibiting Defendants from acting jointly or individually, including such agents as the Polo Club law firm Beattie Padovano firm and the Polo Club public relations firm the JPR Group, regarding any course of action with the intent of dispossessing Ramapough from land including contacting allies or associates of Ramapough or retribution against such allies.~~

**~~RELIEF SOUGHT~~**

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants as follows:

A.     An order ~~enjoining~~<u>declaring that</u> ~~d~~<u>D</u>efendants ~~Entrup and Mulvey from issuing process from defendant Mahwah imposing cumulative fines and engaging in discriminatory enforcement regarding cultural assembly and religious assembly including open air prayer.~~' <u>actions and inactions, as described herein, violate Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and RLUIPA.</u>

<u>B.     An order permanently enjoining Defendants from actions that violate the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and RLUIPA.</u>

~~B~~<u>C</u>.     An order <u>permanently</u> enjoining ~~d~~<u>D</u>efendants from seeking to force the removal of Ramapough's sacred altar.

~~C~~<u>D</u>.     An order <u>permanently</u> enjoining ~~d~~<u>D</u>efendants from seeking to force the removal of Ramapough's sacred prayer circle.

~~D~~<u>E</u>.     Annulment of cumulative fines currently sought by defendant Mahwah based on Mahwah's April 24, 2018 letter and related summonses.

~~D~~<u>F</u>.     Awarding the costs of this action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

~~E~~G.     Awarding compensatory and punitive damages in an amount ~~equal to two times the cumulative fines sought by defendant Mahwah as of the date that a~~to be determined at trial ~~date is set~~; and

~~F~~H.     Awarding such other and further relief as this Court deems appropriate.

The Plaintiffs demand a trial by jury of all issues for which Plaintiffs are entitled to such a jury trial.

~~/S/~~
Dated: New York, New York
September 21, 2018

Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 0854
(609) 986-1120
diane.sullivan@weil.com

Kevin J. Arquit (admitted *pro hac vice*)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
kevin.arquit@weil.com

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Valeria A. Gheorghiu~~, No. 042912007~~
Law Office of Valeria A. Gheorghiu
113 Green Street, ~~Ste.~~Suite 2
Kingston, NY 12401
(914) 772-7194 ~~(phone)~~

~~valerialexiag@gmail.com~~

~~Dated:  May 14, 2018~~

61

Jonathan Wallace (admitted *pro hac vice*)
P.O. Box 728
Amagansett, New York 11930
(917) 359-6234

*Attorneys for Plaintiffs*

| Summary report:<br>Litéra® Change-Pro TDC 10.1.0.800 Document comparison done on<br>9/21/2018 3:23:02 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://WEILDMS/WEIL/96710864/1 | |
| **Modified filename:** Amended Complaint_WEIL_96711086_15.DOCX | |
| **Changes:** | |
| Add | 590 |
| Delete | 445 |
| Move From | 82 |
| Move To | 82 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 5 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1205 |