Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
(609) 986-1120

Kevin J. Arquit (admitted *pro hac vice*)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Valeria A. Gheorghiu
Law Office of Valeria A. Gheorghiu
113 Green Street, Suite 2
Kingston, NY 12401
(914) 772-7194

Jonathan Wallace (admitted *pro hac vice*)
P.O. Box 728
Amagansett, New York 11930
(917) 359-6234

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAMAPOUGH MOUNTAIN INDIANS, INC.,
and RAMAPOUGH LENAPE NATION

          Plaintiffs,

    -against-

THE TOWNSHIP OF MAHWAH, RAMAPO
HUNT & POLO CLUB ASSOCIATION, INC.,
GERALDINE ENTRUP, THOMAS MULVEY,

         Defendants.

Civ. No. 2:18-cv-09228

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS ..................................................................4

    I.    FACTUAL BACKGROUND ........................................4

    II.   PROCEDURAL BACKGROUND.....................................9

ARGUMENT ...................................................................................11

    I.    UNDER THE LIBERAL STANDARD APPLIED TO
        MOTIONS FOR LEAVE TO AMEND, THE COURT
        SHOULD GRANT PLAINTIFFS' MOTION. ...................11

    II.   PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE
        THEIR FIRST AMENDED COMPLAINT BECAUSE THERE
        HAS BEEN NO UNDUE DELAY, BAD FAITH, OR
        DILATORY TACTICS BY PLAINTIFFS........................13

    III.  PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD
        BE GRANTED BECAUSE DEFENDANTS WILL NOT BE
        UNDULY PREJUDICED. ................................................15

    IV.  THE COURT SHOULD GRANT LEAVE BECAUSE
        PLAINTIFFS' AMENDMENT IS NOT FUTILE.............17

CONCLUSION .................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Gould, Inc.*,
  739 F.2d 858 (3d Cir. 1984) ..............................................................................12

*Addiction Specialists, Inc. v. Township of Hampton*,
  411 F.3d 399 (3d Cir. 2005) ..............................................................................23

*Ajax Enter. v. Fay*,
  CIV. A. No. 04-4539 NLH, 2007 WL 766335 (D.N.J. Mar. 7,
  2007) ...................................................................................................................17

*Andon, LLC v. City of Newport News, Va.*,
  813 F.3d 510 (4th Cir. 2016) .............................................................................21

*Antoine v. KPMG Corp.*,
  No. CIV. A. 08–6415, 2010 WL 147928 (D.N.J. Jan. 6, 2010) .........................14

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) .........................................................................12, 14

*Astrazeneca AB v. Perrigo Co. PLC*,
  No. CIV. A. 15-1057, 2015 WL 8483298 (D.N.J. Dec. 9, 2015) ......................15

*Bechtel v. Robinson*,
  886 F.2d 644 (3d Cir. 1989) ..............................................................................12

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ............................................................................18

*Carchman v. Korman Corp.*,
  594 F.2d 354 (3d Cir. 1979) .........................................................................20, 21

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ...........................................................................................19

*Congregation Rabbinical College of Tartikov, Inc. v. Village of
  Pomona*,
  915 F.Supp.2d 574 (S.D. N.Y. 2013) ................................................................22

*Corbisiero v. Leica Microsystems, Inc.*,
   No. CIV. A. 09-975-SRC, 2010 WL 5441662 (D.N.J. Dec. 28,
   2010) ....................................................................................................17

*Del Sontro v. Cendant Corp.*,
   223 F. Supp. 2d 563 (D.N.J. 2002) ..................................................11

*Dole v. Arco Chem. Co.*,
   921 F.2d 484 (3d Cir. 1990) .............................................................11

*E85 Inc. v. CIMID Corp.*,
   Civ. A. No. 08-4411 (FSH) (MAS), 2009 WL 10690054 (D.N.J.
   Sept. 8, 2009) ...................................................................................11

*Foman v. Davis*,
   371 U.S. 178 (1962).........................................................................12

*General Motors v. United States*,
   No. CIV. A. 01-CV-2201, 2005 WL 548266 (D.N.J. Mar. 2, 2005) ...........15, 17

*Ghobrial v. Pak Mfg., Inc.*,
   No. CIV. A. 11-2023 ES, 2012 WL 893079 (D.N.J. Mar. 13, 2012) ..........14, 17

*Grayson v. Mayview State Hosp.*,
   293 F.3d 103 (3d Cir. 2002) .............................................................12

*Griffin v. Breckenridge*,
   403 U.S. 88 (1971)............................................................................20

*Hoffmann-La Roche Inc. v. Cobalt Pharm., Inc.*,
   Nos. 07-4539 (SRC), 07-4540 (SRC), 08-4054 (SRC), 2010 WL
   3118574 (D.N.J. Aug. 5, 2010) ........................................................11

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Beach*,
   510 F.3d 253 (3d Cir. 2007) .............................................................22

*Long v. Wilson*,
   393 F.3d 390 (3d Cir. 2004) .............................................................15

*Marlowe Patent Holdings LLC v. Dice Elecs*,
   293 F.R.D. 688 (D.N.J. 2013)....................................................15, 17

*Prudential Ins. Co. of Am. v. U.S. Gypsum*,
    711 F. Supp. 1244 (D.N.J. 1989) ................................................................16, 17

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000) ..............................................................................17

*Skelcy v. UnitedHealth Grp.*,
    No. CIV. A. 12-01014, 2012 WL 6087492 (D.N.J. Dec. 6, 2012) ...................15

*Turner v. F.C.C.*,
    520 U.S. 180 (1997)............................................................................................20

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*,
    316 F.3d 392 (3d Cir. 2003) ..............................................................................19

*Voilas v. General Motors Corp.*,
    173 F.R.D. 389 (D.N.J. 1997)............................................................................11

*Westchester Day School v. Vill. of Mamaroneck*,
    504 F.3d 338 (2d Cir. 2007) ..............................................................................21

**Statutes**

42 U.S.C. § 1983 .......................................................................................................9

42 U.S.C. § 1985...........................................................................................4, 18, 20

42 U.S.C. § 2000cc *et seq.* ...............................................................1, 2, 21, 22, 23

**Other Authorities**

Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal
    Practice & Procedure § 1484 (3d. ed. 2017)......................................................11

Fed. R. Civ. P. 12 ....................................................................................................17

Fed. R. Civ. P. 15 ..........................................................................................1, 10, 11

Plaintiffs Ramapough Mountain Indians, Inc. and the Ramapough Lenape Nation, (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 15(a) for leave to file its First Amended Complaint.

## PRELIMINARY STATEMENT

This lawsuit arises from the actions of the Township of Mahwah ("Mahwah" or the "Township"), the Ramapo Hunt & Polo Club (the "Polo Club"), their respective members or agents, Geraldine Entrup, and Thomas Mulvey, (collectively, "Defendants"), which intentionally deprived Plaintiffs of rights and liberties secured under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.  Specifically, Plaintiffs allege that Mahwah and Township Officials Geraldine Entrup and Thomas Mulvey have, among other things, assessed coercive fines, instituted civil and criminal proceedings, and otherwise unlawfully and selectively enforced certain zoning ordinances against Plaintiffs. Plaintiffs also claim that the Polo Club has harassed Plaintiffs and collaborated with Mahwah in an apparent attempt to expel Plaintiffs from sacred land owned by Plaintiffs.  These and other actions by Defendants have unlawfully and substantially burdened Plaintiffs' religious practices and freedom of assembly. Plaintiffs therefore seek an order enjoining Defendants from continuing their

discriminatory behavior, as well as compensatory and punitive damages, and attorneys' fees.

Plaintiffs initially filed this suit on May 14, 2018 ("Original Complaint") in urgent response to a demand that Plaintiffs cease praying on, or even entering into, their land.  On July 18, 2017, Defendants filed motions to dismiss, which are currently pending.  In August, Plaintiffs retained Weil, Gotshal & Manges LLP ("Weil") and the Center for Constitutional Rights ("CCR," and collectively, "new counsel") as *pro bono* counsel to represent Plaintiffs.  Through further fact gathering and discussions with Plaintiffs, new counsel have learned additional information regarding, among other things:  (i) Plaintiffs' exercise of their sincerely-held beliefs; (ii) the history of Defendants' religious animus, harassment, and discriminatory treatment towards the Ramapough; (iii) Defendants' continued unlawful efforts to stop Plaintiffs from using their private land for religious purposes; and (iv) the substantial burden Defendants' actions have constituted and continue to constitute to the Ramapough's free exercise of religion.  These additional facts have also allowed Plaintiffs to refine their causes of action, and in their Proposed First Amended Complaint, Plaintiffs seek to add a claim against all Defendants for conspiracy to violate civil rights, and remove claims for procedural due process, "nondiscrimination" under the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq* ("RLUIPA"), forced evictions, and nuisance.

On August 6, 2018, Plaintiffs filed a letter motion asking the Court to "extend the deadlines to amend the Complaint as of right or to oppose Defendants' motions to September 21, 2018," which the Court granted on August 8, 2018. *See* ECF Nos. 32, 38.[1] Nevertheless, out of an abundance of caution, Plaintiffs now seek leave to file a first amendment to its Complaint in the form shown in Exhibit 1 to the Declaration of Kevin J. Arquit in Support of Plaintiffs' Motion for Leave to File First Amended Complaint ("Arquit Decl."),[2] hereto, which removes certain defendants, adds new, and more specific, factual allegations, removes several claims, and adds one additional claim (the "First Amended Complaint").

As set forth more fully below, Plaintiffs' motion for leave to amend is made in good faith and should be granted as important Constitutional rights are at stake in this litigation. Furthermore, no prejudice will result if the Complaint is amended; Plaintiffs' Original Complaint was filed just four months ago, the parties

---

[1] In granting Plaintiffs' application, the Court stated in full: "The Court is in receipt of Defendants' objections to Plaintiffs' application for an extension of time. (ECF Nos. 36; 37). In the Court's discretion, Plaintiffs' application, (ECF No. 32), is GRANTED. Plaintiffs' oppositions are due on September 21, 2018 and Defendants' replies are due on October 5, 2018."

[2] A redline version of the proposed pleading is annexed hereto as Arquit Decl. Exhibit 2.

have yet to conduct discovery and have agreed to stay discovery pending an order on this Motion, and Defendants cannot claim surprise as the First Amended Complaint's new allegations and claims arise out of the same factual circumstances as those set forth in Plaintiffs' Original Complaint. Moreover, the fact that Defendants have previously filed motions to dismiss does not outweigh the judicial economy that will be served by granting this amendment and potentially avoiding unnecessary motion practice. Finally, the claims Plaintiffs seek to refine or add are not futile, as they are well-pleaded and meritorious.

## **STATEMENT OF FACTS**

The facts relevant to this action are fully set forth in Plaintiffs' First Amended Complaint. Those facts, as pertain to the instant motion, are briefly set forth herein.

## I.    **FACTUAL BACKGROUND**

Plaintiffs, a nation of indigenous people who reside in and around the village of Mahwah, claim in this action that their right to gather and pray on their privately-owned land located at 95 Halifax Road in Mahwah, New Jersey (the "Land")—a sacred site for the Ramapough Lenape Nation and Indigenous People––has been substantially burdened by Defendants' discriminatory actions.

Plaintiffs seek leave to file a First Amended Complaint to reflect certain facts Plaintiffs' new counsel have developed through further investigation,

interviews, and research, and to add a claim against Defendants under 42 U.S.C. § 1985. In addition, in order to focus the pleadings on the core allegations and address in good faith certain arguments raised in Defendants' motions to dismiss, the First Amended Complaint removes Defendants John and Jane Does 1 through 14 and John Doe Entities 1 and 2, and removes claims in the Original Complaint alleging violations of procedural due process, forced evictions, and nuisance.

In particular, the Proposed Amended Complaint alleges in more detail and specificity the nature of the Ramapough's sincerely-held religious beliefs and necessary use of their private Land to assemble and to carry out their spiritual and religious responsibilities. For example, Plaintiffs allege in the First Amended Complaint:

- "Given the spiritual connection between mankind and nature, many Ramapough religious ceremonies are conducted outdoors, either in open air or in non-permanent structures. The chosen venue for these ceremonies—nature—reflects the Ramapough's sincerely-held religious beliefs that the Earth and their homeland must be honored and protected. The religious beliefs of the Ramapough are thus deeply intertwined with their ancestral land and ability to conduct ceremonies on sacred sites." First Am. Compl. at ¶ 32.

- "Members of other indigenous tribes often join the Ramapough for religious ceremonies and events at Sweet Water. For example, in April 2017, the Haudenosaunee (Iroquois) ceremonial leaders joined the Ramapough at Sweet Water for an Earth Day ceremony . . . ." *Id.* at ¶ 40.

- "The Ramapough also use the lands at Sweet Water to host cultural events for both indigenous and non-indigenous people. These events, which often involve religious ceremonies, are intended to foster a

sense of brotherhood among all in attendance and to provide a safe and educational meeting place for cultural exchange. Assemblies of this sort have been attended by members of many indigenous nations, including the Taino, Mexica, Quechua, Lakota, Cherokee, Maya, Schaghticoke, Mohawk, Onondaga, Ojibwe, Tlingit, and others." *Id.* at ¶ 41.

- "The stone altar serves as the physical manifestation of Ramapough prayers. Each stone embodies a single prayer made at the altar.  The stone altar symbolizes how in the Ramapough faith, prayers take on a physical form, and draw direct connections to the land." *Id.* at ¶ 43.

- "The Prayer Circle is surrounded by masked poles ('Mesingw'), which, according to the Ramapough faith, are powerful spirits that provide protection and help maintain the balance of nature." *Id.* at ¶ 45.

The First Amended Complaint also includes further detailed allegations regarding Defendants' historical pattern of discrimination driven by animus against the Ramapough through, among other things, the imposition of coercive fines, selective enforcement, and issuance of frivolous summonses, harassment, vandalism, and trespass, and Mahwah and the Polo Club's efforts to conspire together to burden Plaintiffs' exercise of their religion.  Some of these allegations include:

- "Specifically, the Township imposed summonses for each of the following violations: Article 24-11.2c (Failure to Obtain Zoning Permit for Use – Religious Use); Article 24-11.2c (Failure to Obtain Zoning Permit for Use – Public Assembly); . . . 24-6.1h(1) (Location of Structure within Floodplain and Flood Hazard Area without Proper Approval – Stone Altar)."  First Am. Compl. at ¶ 12.

- "Upon information and belief, Defendants' actions are driven by religious animus and pressure from members of the Polo Club who believe that driving the Ramapough off of their ancestral land will

6

increase their property values.  For example, Town Council Member Kathy Murray stated at a February 22, 2018 Township Council meeting that Defendants have 'lost property value' as a result of the Ramapough's use of their land." *Id.* at ¶ 13.

- "During the ongoing dispute with Mahwah and the Polo Club, the word 'HATE' was carved into one of the stones comprising the Circle. Upon information and belief, the Township and Polo Club routinely refer to the sacred altar as 'a pile of rocks.'" *Id.* at ¶ 44.

- "Plaintiffs' Mesingws have been vandalized in the past by members of the Mahwah community. In addition, on at least one occasion, Tribe members saw a swastika carved into the stones of the prayer circle." *Id.* at ¶ 46.

- "In 2016, several six to eight-foot logs outlining a temporary longhouse and weighing about one ton each were stolen from the Ramapough lands at Sweet Water. A few months prior, someone had written 'these logs will be gone soon' using wood chips on a stone slab by the longhouse."  *Id.* at ¶ 47.

- "Members of the Polo Club have treated the Ramapough with hostility and rank prejudice. . . . Hateful comments directed at the tribe in 2016 and 2017 include the following xenophobic and racist statements:

    o 'Nobody prays with stones and fire.'
    o 'Fuck you, Mountain N******s.'
    o 'Go back to your Mountain.'
    o 'Go back to where you came from.'
    o 'Piece of shit,' 'fucking gypsies,' and 'dirty stinking Indians.'" *Id.* at ¶ 74.

- "Agents of the Polo Club have also taken to using the Mahwah police department to enforce their vicious campaign of harassment against the Ramapough.  In one instance in October 2016, Paul Scian, the President of the Polo Club, gave members of the tribe permission to use electricity from the front of an electricity box by the Ramapough property.  The next month, several police cars came to Sweet Water to investigate a complaint from Mr. Scian that the tribe was stealing electricity." *Id.* at ¶ 77.

- "Upon information and belief, Mahwah and the Polo Club have conspired to induce the Ramapough to sell sacred lands along the Ramapo River at 95 Halifax Road. A prominent Polo Club member even threatened the tribe, stating that if they did not sell Sweet Water for a materially low price, the Polo Club was 'prepared to do something bad.' Days later, frivolous criminal charges were brought against the Ramapough chief." *Id.* at ¶ 81.

Plaintiffs' First Amended Complaint also pleads additional allegations regarding the substantial burden Mahwah's discriminatory enforcement of their zoning laws against the Ramapough place on the Ramapough's right to freely exercise their religion and assemble on their land, including:

- "If the Ramapough were forced to remove the prayer circle and/or stone altar as a result of the Township's continually issuing summonses and/or Defendants' threats to remove the structures (as they were with the longhouse), members of the tribe would immediately lose access to items necessary to the exercise of their faith.  Accordingly, if these items were removed, Plaintiffs and other community members will be deprived of the ability to fully and freely practice their religion, constituting an irreparable injury."  First Am. Compl. at ¶ 49.

- "The Township's inconsistent and targeted interpretations of the Zoning Ordinance regarding C-200 land as applied to the Ramapough are highly restrictive and evince the intent to completely impede the Ramapough's religious use of and assembly at Sweet Water. The Township's actions do not serve any governmental interest, much less a compelling one.  Given the Township's position that C-200 zoning functionally prohibits religious use or cultural assembly and the Ramapough's sacred connection to the site, there are no alternative locations reasonably available to the tribe that could accommodate their religious practices." *Id.* at ¶ 60.

- "The Township's purpose in issuing these summonses is to end the Ramapough's religious use of their property, eliminate their sacred sites, and prevent religious assembly. The Township's intimidation

tactics have been largely successful—they have suppressed Plaintiffs' use of the land and rendered the tribe's religious exercise effectively impracticable. Since it began issuing the daily summonses to the Ramapough, many members of the Ramapough have been scared to enter the lands at Sweet Water and have ceased practicing their religion at the site. Mahwah's ongoing actions constitute a substantial burden to the Ramapough's free exercise of religion." *Id.* at ¶ 69.

Moreover, the First Amended Complaint also brings their original claims for free exercise of religion and freedom of association against additional Defendants, Entrup and Mulvey, under U.S.C. § 1983 for acting under color of state law in issuing unlawful summonses in connection with Plaintiffs' religious use of their land.

## II.   PROCEDURAL BACKGROUND

In urgent response to a demand on April 24, 2018 from Defendant Entrup (an Administrative Officer for Mahwah) that Plaintiffs cease praying on, or even entering into, their land, Plaintiffs initially filed suit on May 14, 2018. *See* ECF. No. 1. Defendants filed motions to dismiss on July 18, 2018 (*see* ECF. Nos. 28, 29) after: (1) filing for automatic 14-day extensions of time to respond to the Complaint on May 30 and June 11, 2018 (ECF Nos. 11, 16), and (2) obtaining a stipulation from Plaintiffs, filed on June 18, 2018 (ECF No. 21), extending their time to respond by another month.

On August 3, 2018, Plaintiffs requested an extension of the deadline to respond to Defendants' motions to dismiss after Weil, Gotshal & Manges, LLP,

contacted Defendants' counsel on behalf of Plaintiffs and sought Defendants'
consent to extend and possibly amend while it and the Center for Constitutional
Rights were still in the process of being retained as *pro bono* counsel in an effort to
bring this issue to the Court and Defendants' counsel's attention as soon as
possible.  ECF No. 32 at 2.   Plaintiffs made the request "[g]iven the significant
constitutional rights at stake in this litigation, as well as the breadth and complexity
of the factual background undergirding this case and the arguments raised in
Defendants' motions to dismiss."  *Id.*  Plaintiffs specifically indicated that the
requested extension would allow Weil and CCR the opportunity to discuss
potentially amending the Complaint with their client and noted that the extension
would not prejudice Defendants as "they have previously requested and received
extensions of time to respond to the Complaint, and their rights are not being
infringed in any way as this litigation proceeds."  *Id.*  Because Defendants refused,
on August 6, 2018, Plaintiffs made their first request for an extension of the
deadline to amend as of right and the deadline to oppose Defendants' motions to
dismiss until September 21, 2018.  *See* ECF No. 32.  On August 7, 2018, this Court
granted Plaintiffs' request.  ECF No. 38, *supra* note 1.

**ARGUMENT**

I.    **UNDER THE LIBERAL STANDARD APPLIED TO MOTIONS FOR LEAVE TO AMEND, THE COURT SHOULD GRANT PLAINTIFFS' MOTION.**

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  While courts have broad discretion to decide motions to amend, they are to "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." *Voilas v. General Motors  Corp.,* 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); *see also* 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure § 1484, at 676 (3d. ed. 2017) ("Subdivision (a)(2) encourages the court to look favorably on requests to amend.").  "The Third Circuit has adopted a particularly liberal approach to the amendment of pleadings in order to ensure that 'a particular claim will be decided on the merits rather than on technicalities.'"  *Hoffmann-La Roche Inc. v. Cobalt Pharm., Inc.*, Nos. 07-4539 (SRC), 07-4540 (SRC), 08-4054 (SRC), 2010 WL 3118574, at *2 (D.N.J. Aug. 5, 2010) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990)).  Therefore, a "'general presumption exists in favor of allowing a party to amend its pleadings.'"  *E85 Inc. v. CIMID Corp.*, Civ. A. No. 08-4411 (FSH) (MAS), 2009 WL 10690054, at *1 (D.N.J. Sept. 8, 2009) (citing *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002)).

The Supreme Court has set forth the standards to be applied by courts considering motions to amend under Rule 15(a):

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.  In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal citations omitted).  The Third Circuit has interpreted that mandate as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive.  *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir. 2002); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (stating that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust").  Thus, courts liberally grant amendments, and only deny leave to amend where the amendment is motivated by bad faith or where it would be unduly prejudicial to the opposing party.  *See Adams v. Gould, Inc*., 739 F.2d 858, 868-69 (3d Cir. 1984) (finding that in the absence of bad faith and prejudice to defendants, the district court erred in failing to open up a judgment and granting leave to plaintiff in order to amend its amended complaint).  To demonstrate undue prejudice, "the non-moving party . . .

12

must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments . . . been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

Here, justice requires that the Plaintiffs be permitted this first amendment of their Original Complaint.  As Plaintiffs asserted in their so-ordered request for an extension, there are significant Constitutional rights at stake in this litigation. Indeed, the additional fact allegations set forth in the First Amended Complaint further illuminate the irreparable harm Plaintiffs are experiencing every day as a result of Defendants' discriminatory conduct.  Further, as discussed below, Plaintiffs should be granted leave to amend because there has been no undue delay, bad faith, or dilatory tactic and Defendants will suffer no prejudice.  Finally, amendment should be granted because it is not futile.

## II. PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT BECAUSE THERE HAS BEEN NO UNDUE DELAY, BAD FAITH, OR DILATORY TACTICS BY PLAINTIFFS.

Plaintiffs should be granted leave to amend their Original Complaint because there has been no undue delay, bad faith, or dilatory tactics by Plaintiffs. The Original Complaint was filed May 14, 2018, in the face of threatened renewed zoning action against Plaintiffs by Mahwah.  Defendants filed motions to dismiss the Complaint on July 18, 2018, after filing for two 14-day extensions of time to respond to the Complaint on May 30 and June 11, 2018 (ECF Nos. 11, 16), and

obtaining a stipulation from Plaintiffs, filed on June 18, 2018 (ECF No. 21), agreeing to extend Defendants' time to respond by an additional month.

On August 3, 2018, Plaintiffs contacted Defense counsel and sought Defendants' consent to an extension of the deadline to oppose Defendants' motions to dismiss or amend the Complaint as of right while Weil and CCR were still in the process of being retained as pro bono counsel. ECF No. 32 at 2. Defendants did not consent, and Plaintiffs immediately applied for a short extension from the Court. Plaintiffs now seek to file a First Amended Complaint four months after the commencement of this action and less than seven weeks after Weil and CCR were retained as pro bono counsel.

The Third Circuit has held that a period of several months from the commencement of the action to the filing of a motion for leave to amend is not unreasonable. *See Arthur*, 434 F.3d at 205 ("Without discounting the expense involved in litigating a case for [several] months, only one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year."); *see also Ghobrial v. Pak Mfg., Inc.*, No. CIV. A. 11-2023 ES, 2012 WL 893079, at *3 (D.N.J. Mar. 13, 2012) (granting Plaintiff's motion to amend and finding Plaintiff's delay in amending his pleading not unduly late or likely to cause undue prejudice to Defendant because the motion to amend was filed nine months after the commencement of the action and less than five

months after Plaintiff obtained new counsel); *Antoine v. KPMG Corp.*, No. CIV. A. 08–6415, 2010 WL 147928 (D.N.J. Jan. 6, 2010) (allowing plaintiffs to amend their complaint even though plaintiffs' counsel knew of facts that would support their claim for over five months).

Because there has been no undue delay, dilatory tactic, or bad faith, Plaintiffs' request for leave to amend should be granted.

## III.   PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED BECAUSE DEFENDANTS WILL NOT BE UNDULY PREJUDICED.

Plaintiffs' motion should also be granted because Defendants will not be unduly prejudiced.  A non-moving party bears the burden of showing that unfair disadvantage or deprivation would result if the amendment is permitted.  *Skelcy v. UnitedHealth Grp.*, No. CIV. A. 12-01014, 2012 WL 6087492, at *5 (D.N.J. Dec. 6, 2012).  To ascertain whether there would be prejudice, courts in this Circuit consider whether the proposed amendment would: (1) require the nonmoving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the nonmoving party from bringing a timely action in another jurisdiction.  *Marlowe Patent Holdings LLC v. Dice Elecs*, 293 F.R.D. 688, 695 (D.N.J. 2013).  Whether undue delay occurs turns on whether there will be some delay in the proceedings as a result of the amendment.  *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004);

*General Motors v. United States*, No. CIV. A. 01-CV-2201, 2005 WL 548266, at *3 (D.N.J. Mar. 2, 2005).

Here, Defendants will not have to expend *any* additional resources to conduct discovery and prepare for trial because discovery has not yet commenced. *See Astrazeneca AB v. Perrigo Co. PLC*, No. CIV. A. 15-1057, 2015 WL 8483298, at *5 (D.N.J. Dec. 9, 2015) (granting leave to amend and noting that discovery was still in the early stages and not due to close for several months). Moreover, Plaintiffs' amendment will result in no delay in the resolution of the dispute, as Plaintiffs seek to add only one additional claim and remove several claims from their Complaint. Thus, Defendants will not be prejudiced.

Certainly Defendants have not, and cannot, demonstrate that any prejudice would arise from permitting Plaintiffs to amend their Complaint. Indeed, in response to Plaintiffs' request to the Township's counsel to consent to an extension, Ms. Kumar Thompson suggested an extension would be prejudicial to the parties only because the initial Rule 26(f) conference before Judge Clark is scheduled for September 24, 2018. Mr. Lamb, attorney for the Polo Club, identified no prejudice at all to any Defendant. *See* ECF No. 32, Attachment A. Plaintiffs' proposed amendments also do not prejudice Defendants because they incorporate factual modifications that further support the Plaintiffs' claims but do not change the core, material allegations in the case, and will not significantly alter

the course of discovery or impose additional or undue burden of defense on

Defendants.  *See Prudential Ins. Co. of Am. v. U.S. Gypsum*, 711 F. Supp. 1244,

1257 (D.N.J. 1989) (granting leave for motion to amend because most of the

material facts alleged in the proposed complaint in support of certain claims were

alleged in the original complaint, thus giving defendants notice as to plaintiffs'

allegations of those claims since the inception of the litigation).  Not only have

Plaintiffs given Defendants sufficient information to put them on notice of their

claims, it is proper to presume Defendants have some knowledge of their unlawful

activity given their presence in other recent state court litigations and an ongoing

mediation, scheduled for September 27, 2018.  *See id.*  Because Defendants will

not be unduly prejudiced, Plaintiffs motion for leave to amend their Original

Complaint should be granted.

## IV.   THE COURT SHOULD GRANT LEAVE BECAUSE PLAINTIFFS' AMENDMENT IS NOT FUTILE.

Finally, the Plaintiffs' motion for leave to amend should be granted because

Plaintiffs' First Amended Complaint is not futile.  A proposed amendment to a

pleading is "futile" only if it is frivolous on its face or plainly fails to state a claim

under Federal Rule of Civil Procedure Rule 12's standard of legal sufficiency.

*Marlowe Patent Holdings*, 293 F.R.D. at 695; *see also Ghobrial*, 2012 WL

893079, at *3; *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  In conducting

this analysis, the court accepts all of the pleaded factual allegations as true, as well

as any reasonable inferences that could be drawn therefrom.  *Id.; General Motors*, 2005 WL 548266, at \*3.  If the "proposed amendment is not clearly futile, then denial of leave to amend is improper."  *Marlowe Patent Holdings*, 293 F.R.D. at 695 (citation and quotation marks omitted).  A newly asserted claim is not futile if it appears to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.  *See Corbisiero v. Leica Microsystems, Inc.*, No. CIV. A. 09-975-SRC, 2010 WL 5441662, at \*2 (D.N.J. Dec. 28, 2010); *Ajax Enter. v. Fay*, CIV. A. No. 04-4539 NLH, 2007 WL 766335, at \*4 (D.N.J. Mar. 7, 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations omitted).

As described above and in the First Amended Complaint, here Plaintiffs have presented cognizable claims for relief.  The First Amended Complaint states legally sufficient claims under 42 U.S.C. § 1985 and alleges additional facts to support Plaintiffs' original claims.[3]  The First Amended Complaint further explains the religious significance of the Ramapough religious structures at issue, sheds new light on collusion between Mahwah and the Polo Club, offers new facts

---

[3] Conversely, upon revisiting the Original Complaint, Plaintiffs made good faith efforts to streamline and drop certain causes of action they determined could be duplicative or unnecessary in light of the remaining causes of action in the First Amended Complaint.

illustrating Defendants Mahwah, Entrup, and Mulvey's religious animus, harassment, discriminatory treatment, and selective enforcement of its zoning laws, and shows the substantial burden all Defendants' actions have constituted and continue to constitute to the Ramapough's free exercise of religion.

For example, with regards to Plaintiffs' free exercise claim, the free exercise inquiry considers whether the government has placed a substantial burden on the observation of a sincerely-held religious belief or practice and whether a compelling governmental interest justifies that burden. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 565 (1993) (citations omitted). Plaintiffs' Proposed First Amended Complaint alleges that Defendants' selective and arbitrary enforcement of Municipal zoning ordinances to demand removal of Plaintiffs' stone altar, prayer circle, and Mesingws, were motivated by animus and substantially burden Plaintiffs' free exercise of religion, as without these sacred objects, Plaintiffs are unable to carry out their spiritual and religious responsibilities. *See* First Am. Compl. at ¶¶ 68, 87. Further, the First Amended Complaint alleges that Defendants Entrup, and Mulvey have acted under state law to deprive Plaintiffs of their rights based on their issuance of unlawful summonses to the Ramapough in connection with Plaintiffs' religious use of their land. *See, e.g., id.* at ¶ 64.

As to Plaintiffs' substantive due process claims, in the Third Circuit, substantive due process claims in land use cases are governed by the "shocks the conscience" standard. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 401 (3d Cir. 2003). Plaintiffs' First Amended Complaint pleads that by applying zoning regulations to Plaintiffs in a discriminatory manner, imposing coercive fines on a daily basis to block Ramapough and allies coming to the land for religious purposes, including prayer, and by using threats and intimidation tactics to cause Ramapough members to cease use of the land, Defendants have violated Plaintiffs' constitutional right to the use and enjoyment of their land in a manner that shocks the conscience. *See, e.g.,* First. Am. Compl. at ¶¶ 13, 65, 71.

With regards to Plaintiffs' freedom of association claim, a content-neutral regulation will only be upheld if it advances important governmental interests unrelated to the suppression of the right for freedom of association and/or speech and if it does not burden substantially the right for freedom of association. *See Turner v. F.C.C.,* 520 U.S. 180, 189 (1997). Plaintiffs' First Amended Complaint sufficiently alleges that the Township's inconsistent and targeted interpretations of the Zoning Ordinance regarding C-200 land as applied to the Ramapough and issuance of daily summonses unreasonably limits religious use and free assembly,

does not further a compelling state interest, and is not the least restrictive means of furthering any legitimate town interest.  *See, e.g.,* First Am. Compl. at ¶¶ 59, 66.

Moreover, Plaintiffs add a conspiracy claim under 42 U.S.C. § 1985(3), which "forbids conspiracies entered into 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'"  *Carchman v. Korman Corp.*, 594 F.2d 354, 355–56 (3d Cir. 1979) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  The Supreme Court has held that there must be some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  *Id.*  Plaintiffs' proposed amendment alleges, among other things, that the Polo Club's members were motivated by religious animus in filing numerous unfounded and malicious complaints to the police department.  *See* First Am. Compl. at ¶ 77.  In turn, the Polo Club's animus influenced the other Defendants to violate Plaintiffs' constitutional rights.  *See Westchester Day School v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007) ("The Application was in fact denied . . . because the ZBA gave undue deference to the opposition of a small but influential group of neighbors . . . .").

Finally, Plaintiffs state a claim for violations of RLUIPA.  RLUIPA prohibits zoning and landmarking laws that substantially burden the religious exercise of churches or other religious assemblies or institutions absent the least

21

restrictive means of furthering a compelling governmental interest.  42 U.S.C. §

2000cc(a).  "To state a substantial burden claim under RLUIPA, a plaintiff must

show that a government's imposition of a regulation regarding land use, or

application of such a regulation, caused a hardship that substantially affected the

plaintiff's right of religious exercise." *Andon, LLC v. City of Newport News, Va.,*

813 F.3d 510 (4th Cir. 2016).  Further, RLUIPA dictates that no government shall

impose or implement a land use regulation in a manner that treats a religious

assembly or institution on less than equal terms with a nonreligious assembly or

institution or unreasonably limits religious assemblies, institutions, or structures

within a jurisdiction.  42 U.S.C. § 2000cc(b)(1), 42 U.S.C. § 2000cc(b)(3)(A).

"[A] plaintiff asserting a claim under the RLUIPA Equal Terms provision must

show (1) it is a religious assembly or institution, (2) subject to a land use

regulation, which regulation (3) treats the religious assembly on less than equal

terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm

to the interests the regulation seeks to advance."  *Lighthouse Inst. for Evangelism,*

*Inc. v.  City of Long Beach,* 510 F.3d 253, 270 (3d Cir. 2007).  The purpose of the

exclusion and limits provision of RLUIPA "is not to examine the restrictions

placed on individual landowners, but to prevent municipalities from broadly

limiting where religious entities can locate."  *Congregation Rabbinical College of*

*Tartikov, Inc. v. Village of Pomona*, 915 F.Supp.2d 574, 636 (S.D. N.Y. 2013).

Plaintiffs' First Amended Complaint's allegations sufficiently demonstrate that Defendants' coercive actions in selectively enforcing the laws or ordinances prevents the Ramapough from using their land for religious purposes, including the Ramapough's use of the stone altar and prayer circle, in a way that constitutes the imposition or implementation of a land use regulation in a manner that substantially burdens the Ramapough and treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution. *See, e.g.,* First Am. Compl. at ¶¶ 59, 68.[4]  Further, Plaintiffs' allegations regarding Defendants' attempts to forcibly remove Ramapough from the land, coercive actions to impede the Ramapough's exercise of religion and assembly, and demands to tear down and remove Ramapough's Sacred Altar and Prayer Circle constitute the imposition or implementation of a land use regulation that totally excludes religious assemblies from a jurisdiction and/or unreasonably limits religious assemblies, institutions or structures as prohibited by RLUIPA, 42 U.S.C. § 2000cc(b)(3)(A) and (B). *See, e.g.,* First Am. Compl. at ¶ 49.

---

[4] Nor do abstention doctrines related to the application of Mahwah's local laws preclude these federal claims.  In the Third Circuit, federal courts can adjudicate civil rights questions before them that do not challenge the validity of the underlying state law, only its discriminatory application. *See Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 410-411 (3d Cir. 2005) (declining abstention in federal review of zoning ordinance).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their motion for leave to file their First Amended Complaint be granted.

Dated:    New York, New York
          September 21, 2018

_____

Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 0854
(609) 986-1120
diane.sullivan@weil.com

Kevin J. Arquit (admitted *pro hac vice*)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
kevin.arquit@weil.com

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Valeria A. Gheorghiu
Law Office of Valeria A. Gheorghiu
113 Green Street, Suite 2
Kingston, NY 12401
(914) 772-7194

Jonathan Wallace (admitted *pro hac vice*)
P.O. Box 728
Amagansett, New York 11930
(917) 359-6234

*Attorneys for Plaintiffs*

24