**ELECTRONICALLY FILED**
**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., and RAMAPOUGH LENAPE NATION, | Case No. 2:18-cv-09228-CCC-JBC |
| PLAINTIFFS | CIVIL ACTION |
| v. | |
| TOWNSHIP OF MAHWAH, RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., GERALDINE ENTRUP, THOMAS MULVEY, JOHN and JANE DOES 1-14, JOHN DOE ENTITIES 1 and 2, | **Motion Date:** February 19, 2019 |
| | **Before:** Hon. Claire C. Cecchi, U.S.D.J. |
| DEFENDANTS. | |

---

**MAHWAH DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

---

**CLEARY GIACOBBE ALFIERI JACOBS LLC**
Attorneys at Law
169 Ramapo Valley Road
Upper Level 105
Oakland, NJ  07436
Attorneys for Defendants, Township of Mahwah, Thomas Mulvey, and Geraldine Entrup.

Of Counsel and on the Brief:

Ruby Kumar-Thompson, Esq.

## **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ............................................................................ 1

LEGAL ARGUMENT ....................................................................................... 4

POINT ONE

A MOTION FOR LEAVE TO AMEND SHOULD NOT BE GRANTED WHEN
PLAINTIFFS' CLAIMS WOULD BE SUBJECT TO DISMISSAL. ...................... 4

POINT TWO

LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED BECAUSE
PLAINTIFFS CANNOT ESTABLISH THAT THEY HAVE SUFFERED AN
ACTUAL CONCRETE INJURY IN THE MATTER AT BAR, AND AS A RESULT,
DO NOT CURRENTLY HAVE ARTICLE III STANDING TO HAVE THEIR
CLAIMS ADJUDICATED BY THE FEDERAL DISTRICT COURT. ................... 7

A.Plaintiffs' Claims Are Not Ripe Because Plaintiffs Have Refused To File
A Variance Application For Any Final Determination By The Local Board
Of Adjustment ....................................................................................... 8

B.Futility In Filing A Variance Application As Required By Mahwah's
Ordinances Cannot Be Demonstrated By Plaintiffs.............................. 14

POINT THREE

LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED FOR PLAINTIFFS'
FAILURE TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM FOR A
VIOLATION OF THEIR FOURTEENTH AMENDMENT SUBSTANTIVE DUE
PROCESS RIGHTS. .................................................................................. 17

POINT FOUR

LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED FOR THE
FAILURE TO ALLEGE ANY FACTS SUPPORTING A VIOLATION OF THEIR
RELIGIOUS EXERCISE OR ASSEMBLY RIGHTS UNDER THE FIRST
AMENDMENT AND RLUIPA....................................................................... 20

POINT FIVE

LEAVE TO AMEND SHOULD BE DENIED FOR THE FAILURE TO ALLEGE
ANY LEGALLY COGNIZABLE FACTS TO SUPPORT A CLAIM FOR
CONSPIRACY. .......................................................................................... 26

i

<u>POINT SIX</u>

LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED SINCE THE
IDENTICAL CLAIMS WERE RAISED IN OR HAVE BEEN ADJUDICATED BY
THE NEW JERSEY STATE SUPERIOR COURT ........................................... 31

CONCLUSION ................................................................................................. 40

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Abbott Labs. v. Gardner,
   387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ................................... 8

Addiction Specialists, Inc. v. Township of Hampton,
   411 F.3d 399 (3d Cir. 2005) ......................................................... 36, 37, 39

Alvin v. Suzuki, 227 F.3d 107 (3d Cir. 2000) ................................................... 5

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................... 5, 6

Assisted Living Associates of Moorestown, LLC v. Moorestown Tp.,
   996 F.Supp. 409 (D.N.J. 1998) .................................................................. 15

B & B Hardware, Inc. v. Hargis Indus., Inc.,
   135 S.Ct. 1293 (2015) ........................................................................... 34, 35

Banco Popular North America v. Gandi,
   184 N.J. 161, 876 A.2d 253 (2005) ............................................................ 28

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................... 5, 6

Bray v. Alexandria Women's Health Clinic,
   506 U.S. 263, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) .............................. 27

Burford v. Sun Oil Co., 319 U.S. 315 (1943) ................................................... 35

Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd.,
    63 F.3d 1227 (3d Cir. 1995) ..................................................................... 34

Califano v. Sanders,
   430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ...................................... 8

Civil Liberties for Urban Believers v. City of Chicago,
   342 F.3d 752 (7th Cir. 2003) ................................................................ 24, 25

Colorado River Water Conservation District v. United States,
   424 U.S. 800 (1976) .................................................................................. 35

Congregation Anshei Roosevelt v. Planning and Zoning Bd. Of Borough of
   Roosevelt, 338 Fed Appx. 214 (3d Cir 2009) .................................... 9, 10, 11

County Concrete v. Roxbury, 442 F.3d 158 (3d Cir. 2006) ........................... 6, 8

County of Sacramento v. Lewis, 523 U.S. 833 (1998)...................................... 19

Coventry Square v. Westwood Zoning Bd. of Adjustment,
   138 N.J. 285 (1994) ................................................................... 22

Foman v. Davis 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ................. 5

Fortress Bible Church v. Feiner,
   694 F.3d 208 (2nd Cir. 2012)....................................................... 25

Graves v. U.S., 961 F.Supp. 314 (D.D.C.1997) ............................................. 28

Grayson v. Mayview State Hospital,
   293 F.3d 103 (3d Cir. 2002) ......................................................... 5

Griffin v. Breckenridge,
   403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) ..................................... 27

Hale O Kaula Church v. Maui Planning Commission,
   229 F.Supp.2d 1056 (D.Haw. 2002)............................................. 25

Heck v. Humphrey, 512 U.S. 477 (1994) ...................................................... 40

Hishon v. King & Spalding, 467 U.S. 69 (1984)............................................... 5

House of Fire Christian Church v. Zoning Bd. Of Adj. of the City of Clifton,
   379 N.J. Super. 526 (App. Div. 2005) .........................................10, 21, 23, 24

In the Matter of Estate of Gabrellian,
   372 N.J. Super. 432 (App. Div. 2004) .......................................... 38

ISP Envtl. Servs., Inc. v. City of Linden,
   Civ. No. 05-4249, 2007 WL 1302995 (D.N.J. May 3, 2007) .......................... 6

Jehovah's Witness Assembly Hall of Southern New Jersey v. Woolwich
   Township, 223 N.J. Super. 55 (App. Div. 1988) .......................................... 22

Kali Bari Temple v. Bd. Of Adj.,
   271 N.J. Super. 241, 638 A.2d 839 (App. Div. 1994)................................... 22

Konikov v. Orange County, 410 F.3d 1317 (11th Cir. 2005)........................... 25

Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997) ................................................. 27

Lighthouse Institute for Evangelism v. City of Long Branch,
   406 F.Supp.2d 507 (D.N.J. 2005) ................................................. 21, 23, 24

Lucas v. South Carolina Coastal Council,
   505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)............................ 16

Mack Auto Imports, Inc. v. Jaguar Cars, Inc.,
    244 N.J. Super. 254 (App. Div. 1990) ......................................................... 38

Moore v. Sims, 442 U.S. 415 (1979) ............................................................... 36

Murphy v. New Milford Zoning Comm'n,
    402 F.3d 342 (2d Cir. 2005) ....................................................8, 9, 11, 12, 16

New Hampshire v. Maine, 532 U.S. 742 (2001) ............................................. 34

Oxford House v. City of St. Louis,
    77 F3d 249 (8th Cir 1996); cert. denied, 519 U.S. 816, 117 S.Ct. 65, 136
    L.Ed.2d 27 (1996) ................................................................................. 15

Palazzolo v. Rhode Island, 533 U.S. 606 (2001) ............................................. 6

Pappas v. Twp. of Galloway, 565 F. Supp. 2d 581 (D.N.J. 2008) .............. 36, 37

Peloro v. U.S., 488 F.3d 163 (3d Cir. 2007)................................................... 34

Pinckney v. Jersey City, 140 N.J. Super. 96 (L. Div. 1976).............................. 6

Railroad Comm'n of Texas v. Pullman, 312 U.S. 496 (1941)........................... 35

Reg'l Rail Reorganization Act Cases,
    419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) ..................................... 8

Rezem Family Associates L.P. v. Borough of Millstone,
    423 N.J. Super. 103 (App. Div. 2015) ....................................................... 10

Rivkin v. Dover Tp. Rent Leveling Board, 143 N.J. 352 (1996)................. 18, 19

Russo v. Voorhees Twp., 403 F. Supp. 2d 352 (D.N.J. 2005)................... 27, 28

San Jose Christian College v. City of Morgan Hill,
    360 F.3d 1024 (9th Cir. 2004) .................................................................. 25

Schall v. Joyce, 885 F.2d 101 (3d Cir. 1989)............................................ 36, 37

Semeric Corp. of Delaware v. City of Philadelphia,
    142 F3d 582 (3d Cir. 1998) ........................................................................ 9

Simoni v. Luciani, 872 F.Supp.2d 382 (D.N.J. 2012) ..................................... 34

Southern Pac. Transp. Co. v. City of Los Angeles,
    922 F.2d 498 (9th Cir. 1990), cert. den., 502 U.S. 943, 112 S.Ct. 382, 116
    L.Ed.2d 333(1991).................................................................................. 15

Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84 (2d Cir.1992).................... 16

St Gabriel's Syrian Orthodox Church v. Borough of Haworth,
   2006 WL 3500965  (Law Div. 2006) ....................................................... 22, 25

St. Joseph's Korean Catholic Church v. Zoning Bd. Of Adjustment of Borough
   of Rockleigh, 2006 WL 1320089 (App. Div. 2006) ....................................... 22

Stern v. Halligan, 158 F.3d 729 (3d Cir. 1998).................................................. 6

Strum v. Clark, 835 F.2d 1009 (3rd Cir. 1987) .................................................. 5

Suitum v. Tahoe Reg'l Planning Agency,
   520 U.S. 725, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) ................................ 8

Taylor Inv., Ltd v. Upper Darby Twp., 983 F.2d 1285 (3d Cir. 1993) ............... 9

Taylor v. Sturgell, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed. 2d 155 (2008) .... 34

Township of Dover v. Board of Adjustment,
   158 N.J.Super. 401, 386 A.2d 421 (App. Div. 1978).................................... 22

United Artists Theatre Circuit, Inc. v. Twp. Of Warrington,
   316 F.2d 392 (3rd Cir. 2003) ....................................................................... 19

University of Tennessee v. Elliott, 478 U.S. 788 (1986) .................................. 35

Velasquez v. Franz, 123 N.J. 498 (1991)......................................................... 38

Warren v. Fisher,
   No. CIV.A. 10-5343 JBS, 2011 WL 4073753, (D.N.J. Sept. 12,
   2011) ................................................................................................. 28, 30

Watkins v. Resorts International Hotel, 124 N.J. 398 (1991).......................... 38

Westchester Day School v. Village of Mamaroneck,
   386 F.3d 183 (2004)..................................................................................... 24

Williams v. Red Bank Board of Education,
   662 F.2d 1008 (3d Cir. 1981) ...................................................................... 36

Williamson County Regional Planning Commission v. Hamilton Bank,
   473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) .............8, 9, 11, 13, 15

Younger v. Harris, 401 U.S. 37 (1971) .........................................35, 36, 37, 39

**Statutes**

N.J.S.A. 13:18A.............................................................................................. 36

N.J.S.A. 40:49-5 ............................................................................................. 20

N.J.S.A. 40:55D-70b ....................................................................................... 14

N.J.S.A. 40:55D-70d ................................................................ 12, 15

N.J.S.A. 40:55D-72 ..................................................................... 31

N.J.S.A. 7:50–1 .......................................................................... 36

**Rules**

Rule 12(b)(1) ............................................................................... 6

Rule 12(b)(6) ............................................................................ 5, 6

Rule 8(a)(2) .................................................................................. 5

**Constitutional Provisions**

42 U.S.C. §1983 ..............................................2, 10, 18, 23, 40

42 U.S.C. §1985 ..............................................2, 26, 27, 28, 29

42 U.S.C. §2000cc ..................................................................... 20

42 U.S.C. §2000cc-(a) (1) ......................................................... 23

**Other Authorities**

Joint Statement of Senators Kennedy and Hatch,
    146 Cong. Rec. S7774-01 (July 7, 2000) ...................................... 21

## PRELIMINARY STATEMENT

This Brief is submitted on behalf of Defendants Township of Mahwah ("Township" or "Mahwah"), Thomas Mulvey, Property and Maintenance Inspector and Geraldine Multrup, (collectively referred to as the "Defendants") in opposition to Plaintiffs' Motion for Leave to Amend the Complaint.

Plaintiffs Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation (hereinafter referred to as "Plaintiffs" or "RMI") claim in this action that their right to assemble on property located at 95 Halifax Road in Mahwah, New Jersey (herein after referred to as the "Property") for religious, cultural, educational and political purposes has been "constrained" by the Township's efforts to enforce its zoning ordinances through the issuances of abatement letters, notification of the requirement to obtain a permit for structures and activities on the land, and summonses with the potential for daily fines imposed for each day that Plaintiffs remain in violation of Mahwah's zoning ordinances. More specifically, Plaintiffs complain about the demand from Geraldine Entrup in a letters dated January 17, 2018 and April 24, 2018 notifying Plaintiffs of the multiple violations on the Property and advising that if the violations are not cured that summonses will begin to issue for each day that Plaintiffs remain in violation and the resultant issuance the issuance of "daily" summonses signed by Thomas Mulvey seeking fines for Plaintiffs' failure to obtain a permit for group prayer open to the public, a stone alter and prayer circle (see Proposed Amended Complaint ("PAC") ¶¶48, 61, 62, 64). They also make reference in the Complaint to the September 5, 2017 revocation of a 2012 zoning permit which allegedly

1

recognized Plaintiffs' use of masked poles and gatherings for religious use (see PAC, ¶¶45, n. 3 and 57).[1]

The summonses that are the gravamen of Plaintiffs' claims pertaining to the erection of structures and Mahwah's Zoning Ordinance prohibiting any type of assembly on privately owned land continue to be issued to Plaintiffs due to the failure of Plaintiffs to file an application for a variance to be permitted to conduct the activities it wants on the Property.  To date, there has been no disposition on those summonses by the Municipal Court and thus, no amount of fines is presently owed and payable by Plaintiffs on those summonses to anyone.

Nowhere in the Complaint do Plaintiffs set forth any facts that would suggest that Plaintiff obtained permits for either the Prayer Circle, the Stone Altar or use of the site for public assembly for any reason, including educational, political, recreational, cultural or religious reasons. Thus, as set forth in the Brief, Plaintiffs' claims under the First and Fourteenth Amendments of the United States Constitution (presumably pursuant to 42 U.S.C. §1983), for a conspiracy pursuant to 42 U.S.C. §1985, and under the Religious Land Use and Institutional Persons Act ("RLUIPA") that are based upon the issuance of notices and summonses by the Township in an effort to enforce its local land use ordinances are subject to dismissal because in order to challenge a land use

---

[1] As set forth more fully, infra, the 2012 permit was issued unilaterally by the former zoning officer and, contrary to Plaintiffs' assertions, was not a zoning permit but merely a permit permitting the construction of a longhouse that was erroneously granted in the absence of an application to the Zoning Board of Adjustment for a variance for religious use.

2

decision, the governmental entity being challenged must be given the opportunity to make a final decision on the matter under Article III's "case or controversy" requirement.  Since Plaintiffs have never submitted even a single meaningful application to the Township so as to be permitted to have large gatherings (religious, cultural or otherwise) on the Property, and never even attempted to obtain a permit for erection of any structures on the land, as required under the Township's ordinances and New Jersey Municipal Land Use Laws, because the Property is located in a Conservation and flood plain zones, their claims are not yet ripe. Accordingly, Plaintiffs cannot establish that they have suffered an actual concrete injury in the matter at bar, and as a result, do not currently have standing to have their claims adjudicated by the Federal District Court.

Plaintiffs' claims under RLUIPA and the First and Fourteenth Amendments are subject to dismissal as there are only conclusory statements and formulaic recitations of the elements needed to sustain those claims.  Notably missing from the Proposed Amended Complaint are any facts to suggest that there has been any type of discriminatory or unequal application of Mahwah's zoning ordinances against Plaintiff and no facts to plausibly suggest that either Defendants Mulvey or Entrup harbor any type of discriminatory animus against Plaintiff.  In fact, Plaintiff fails to identify even a single similarly situated non-secular institutions that are permitted as of right in the C200 zone to use the property for public assembly purposes or who has not been subjected to enforcement actions for the same violations as Plaintiff.  (PAC ¶59).  These claims

3

are also subject to dismissal since the issuance of summonses for each day that Plaintiffs remain in violation of Mahwah's zoning ordinances because they have refused to file applications with the Township does not, as a matter of law, "shock the conscience" nor "substantially burden" Plaintiffs exercise of their religion so as to make it effectively impracticable for Plaintiffs to "simply pray."  Likewise, Plaintiffs are judicially estopped from asserting a challenge to the revocation of the 2012 permit and from claiming that they are not in violation of Mahwah's zoning ordinances or that the variance process is being applied in a discriminatory manner since Plaintiffs did not obtain a favorable ruling on their appeal of the revocation and since they lost their appeal of their municipal court conviction in New Jersey Superior Court on January 10, 2019, wherein the Court affirmed Plaintiffs' conviction and imposed fines for each day that Plaintiffs were in violation of Mahwah's zoning ordinances when they erected certain structures on the property without a permit.

As none of the allegations in the Proposed Amended Complaint are sufficient to withstand a motion to dismiss the claims asserted by Plaintiff, the District Court should deny Plaintiffs' Motion for leave to amend the Complaint in its entirety.

## LEGAL ARGUMENT

### POINT I

**A MOTION FOR LEAVE TO AMEND SHOULD NOT BE GRANTED WHEN PLAINTIFFS' CLAIMS WOULD BE SUBJECT TO DISMISSAL.**

Although leave to amend the pleadings may be granted when justice so requires, it should not be granted where there is bad faith or dilatory motive on

the part of the movant, when doing so would create unfair prejudice to the adverse party, or where the proposed cause of action would be futile. <u>Foman v. Davis</u> 371 U.S. 178, 182 83 S.Ct. 227, 230, 9 L.Ed.2d 222(1962); and <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103 (3d Cir. 2002).

Futility is demonstrated when a proposed amendment to the Complaint would not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. <u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000). A 12(b)(6) motion to dismiss is appropriate to be granted where the facts as alleged by Plaintiffs cannot support the cause of action being asserted so as to entitle Plaintiffs to relief. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. <u>See</u> <u>Strum v. Clark</u>, 835 F.2d 1009, 1011 (3rd Cir. 1987). The United States Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78, 129 <u>S.Ct.</u> 1937, 173 L.Ed.2d 868 (2009), refined the standard for summary dismissal of a complaint that fails to state a claim for it to be more exacting in light of Rule 8(a)(2) of the Federal Rules of Civil Procedure's requirement that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Expounding upon its opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) wherein the United States Supreme Court had held that a "pleading that offers labels and conclusions or a <u>formulaic</u> recitation of the elements of a cause of action will not do," the United States Supreme Court in <u>Iqbal</u> had held that in

5

order to survive dismissal of a Section 1983 complaint a plaintiff must allege "sufficient factual matter" to show that the claim is facially plausible; otherwise the complaint is subject to dismissal.  Id. at 678-79.  Likewise, since legal conclusions are not entitled to be accepted as true, a legal bar to a plaintiff's complaint necessarily satisfies the federal motion to dismiss standard.  Id. at 678; See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); and Pinckney v. Jersey City, 140 N.J. Super. 96, 103 (L. Div. 1976) (dismissing complaint for the failure to file a timely notice of claim or to petition the court within one year to file a late notice of claim).

It is well-settled that procedural issues such as standing, mootness and ripeness are to be determined prior to any substantive analysis" on a motion to dismiss pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ISP Envtl. Servs., Inc. v. City of Linden, Civ. No. 05-4249, 2007 WL 1302995, at *7, n.1 (D.N.J. May 3, 2007), citing Palazzolo v. Rhode Island, 533 U.S. 606 (2001).  Indeed, the Third Circuit has analyzed standing and ripeness issues in reviewing both a motion for failure to state a claim and a motion for subject matter jurisdiction. County Concrete v. Roxbury, 442 F.3d 158, 163-64 (3d Cir. 2006) (reviewing ripeness decisions in appeal from Rule 12(b)(6) dismissal); and Stern v. Halligan, 158 F.3d 729, 734 (3d Cir. 1998) (noting that satisfaction of the finality rule in land use matters implicates a federal court's Article III subject matter jurisdiction).  Accordingly, this Court should not permit Plaintiffs to amend the Complaint if there is a legal bar to Plaintiffs' claim based on the doctrines of ripeness or standing, or if based upon the above analysis on

a motion for failure to state a claim, it appears to a reasonable degree of plausibility that the conduct alleged therein does not give rise to a claim for religious discrimination or a substantial burden on religious exercise pursuant to RLUIPA and the First Amendment, substantive due process violation, or for a conspiracy.

## POINT TWO

**LEAVE TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT THEY HAVE SUFFERED AN ACTUAL CONCRETE INJURY IN THE MATTER AT BAR, AND AS A RESULT, DO NOT CURRENTLY HAVE ARTICLE III STANDING TO HAVE THEIR CLAIMS ADJUDICATED BY THE FEDERAL DISTRICT COURT.**

In Count One of the Proposed Amended Complaint, Plaintiffs assert a claim under the First and Fourteenth Amendments of the United States Constitution for alleged violation of their right to free exercise of religion based upon actions to enforce Mahwah's zoning ordinances as it pertains to the erection of structures in a C200 and flood plain zone, and to their assembly activities on the Property without first obtaining a permit to do so.  In Count Two Plaintiffs assert a claim under the First and Fourteenth Amendments of the United States Constitution for alleged violation of their right to "peaceably assemble" for, not only religious purposes, but also for education, and for other political and cultural reasons based upon the enforcement actions as alleged in Count One. These claims are subject to dismissal due to the fact that they cannot establish a concrete injury from an adverse zoning decision because of their refusal and failure to submit a meaningful application in order to conduct the activities that

7

they claim are being curtailed by Defendants' actions to secure compliance with the Zoning Ordinances.

**A. Plaintiffs' Claims Are Not Ripe Because Plaintiffs Have Refused To File A Variance Application For Any Final Determination By The Local Board Of Adjustment**

Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority. Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005); see also, Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); and Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 138, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The goal is to see "whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine"). Id; see also, County Concrete v. Roxbury, supra, 442 F.3d 164 (stating that the ripeness doctrine serves to determine Court explained the ripeness doctrine's "basic rationale is to prevent the Courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

The rule of finality in land use disputes was first articulated in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Although that case involved a takings claim under the Fifth Amendment, the finality rule has subsequently been expanded

8

by our courts to other types of claims challenging land use decisions by governmental entities, including Free Exercise Claims, Due Process Claims, Equal Protection claims, and RLUIPA claims. See Congregation Anshei Roosevelt v. Planning and Zoning Bd. Of Borough of Roosevelt, 338 Fed Appx. 214, 217, fn4 (3d Cir 2009), citing Taylor Inv., Ltd v. Upper Darby Twp., 983 F.2d 1285 (3d Cir. 1993); and Murphy, supra, 402 F.3d at 347. The rationale behind the expansion of the finality rule to all types of land use disputes is due to the fact that land use decisions concern a myriad of unique localized interests and affects the surrounding community; as such, it is the local authorities who are in a better position than the courts to assess the burdens and benefits of those varying interests. Semeric Corp. of Delaware v. City of Philadelphia, 142 F3d 582, 598 (3d Cir. 1998). If those interests were ignored absent a final decision, this would improperly convert the federal court from a court authorized by Article III to review constitutional violations into a "super land use board of appeal." Id.

Thus, in order for a constitutional challenge to a land use decision to rise to the level of a justiciable case or controversy under Article III's ripeness and standing requirements, a local land use board must first be given a meaningful opportunity to arrive at a definitive final decision with respect to the application of its zoning regulations to the plaintiff's proposed use of the particular property in question. Id. at 597, quoting Williamson County, 473 U.S. at 191, 105 S.Ct. 3108. This requires a plaintiff to, at a minimum submit **a meaningful variance application prior to federal review** on a land use dispute. Id. stating that constitutional claims based on a denial of permit by initial decision makers are

9

premature when the property owners did not avail themselves of available subsequent procedures to obtain a final land use decision from the local entity. <u>See also</u> <u>Congregation Anshei</u>, 338 Fed Appx. at 219 (holding that plaintiff's claims under RLUIPA were not ripe until they submitted an application for a use variance and received a final determination from the local land use board whether the Yeshiva would be permitted on the property (emphasis added); <u>Accord</u>, <u>House of Fire Christian Church v. Zoning Bd. Of Adj. of the City of Clifton</u>, 379 N.J. Super. 526 (App. Div. 2005) (remanding claim under RLUIPA for development of a full record on the issue of whether applying for a conditional use variance constitutes a "substantial burden" on the <u>Rezem Family Associates L.P. v. Borough of Millstone</u>, 423 N.J. Super. 103 (App. Div. 2015) (implying that a final decision is not rendered on a land use application until the zoning decision is challenged through an action in lieu of prerogative writ available in New Jersey and holding absent same, the principles of finality and ripeness that are applied by the United States Supreme Court to land use cases would bar a claim for deprivation of civil rights pursuant to 42 <u>U.S.C.</u> §1983).

Requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible, in addition to 1) aiding in the development of a full record; 2) providing the Court with knowledge as to how a regulation will be applied to a particular property; 3) obviate the need for the court to decide the constitutional issue if a local authority provides the relief sought; and 4) demonstrates the judiciary's appreciation that land use disputes

10

are uniquely matters of local concern more aptly suites for local resolution." Congregation Anshei, 338 Fed. Appx. At 217, citing Murphy, 402 F.3d at 348.

Here, Plaintiffs have refused, and thus failed, to satisfy the requirement under Williamson of a final definitive decision with respect to Plaintiffs' use of the Property as evidenced by its failure to exhaust the variance process at the local level as a prerequisite prior to federal review, which serves as a tool for the reviewing federal court to know how the Township's zoning regulations should be applied to the unique parcel of land in question. Indeed, nowhere in the Complaint do Plaintiffs state that they ever applied for a variance from the Township in order to use the Property for public assembly on the property.

Indeed, the facts in the present case are analogous to that of Murphy supra, wherein the Second Circuit found contrary to the District Court's decision that the plaintiff's religious claims were not ripe for federal judicial review. In that case, the plaintiffs were hosting Sunday afternoon Christian group worship meetings since 1994 and after complaints were received from neighbors, defendants first sent an informal letter advising that the meetings violated zoning regulations, and then, sent a formal cease and desist order charging the Murphy plaintiffs demanding that Plaintiffs no longer use their home as a meeting place by numerous group of people who are not family on a regular basis. Critical to the Court's decision in dismissing the religious claims, the Murphy plaintiffs did not appeal the cease and desist order to the Zoning Board of Appeals, where it could have sought a variance from the zoning regulation.

11

Similarly, to Murphy, supra, Plaintiffs cannot prove any sort of compliance with Mahwah's zoning ordinances whatsoever. According to Mahwah's Zoning Ordinances, any use not specifically designated as a principal permitted use, an accessory use or conditional use is specifically prohibited from any zone in the Township. See Ord Section 24-4.3.  Thus, due to the fact that the Property is located in Mahwah's C200 Conservation Zone, which does not expressly permit religious or cultural gatherings (or for that matter public assemblies of any type on private property, i.e. land now owned by a governmental entity), as of right, Plaintiff was required pursuant to New Jersey's Municipal Land Use Law, at N.J.S.A. 40:55D-70d to seek a variance and site plan approval before erecting any structures or conducting any public gatherings on the Property.   This requirement was specifically communicated to Plaintiff by the Zoning Officer in a letter dated April 13, 2017 following Plaintiffs' application for a zoning permit for a multitude of structures, uses, and activities. (see Exhibit D, Letter from Michael J. Kelly, P.E. dated April 13, 2017). Specifically, Mr. Kelly informed Plaintiffs that since it was requesting a non-conforming use not listed under Defendant Township's C-200 Zoning Ordinance, it should submit an application for variance, to the zoning board of adjustment. (Id).

Subsequent to the denial of a zoning permit, Plaintiff complied with Mr. Kelly's instructions by filing an application for a d(2) use variance on June 12, 2017 to be permitted to "expand a legally created non-conforming use for ceremonial, religious, and public assembly purposes" and to be permitted to "provide accessory temporary structures to facilitate the historical use of the

12

property." (see <u>Exhibit E</u>, Plaintiffs' application for a use variance dated June 12, 2017). This variance application was, however, inexplicably withdrawn by Plaintiff on August 21, 2017 <u>after</u> Defendant Township has expressed its willingness to consider Plaintiffs' application in a hearing scheduled for September 20, 2017. (see <u>Exhibit F</u>, letter dated August 21, 2017 withdrawing Plaintiffs' application for a use variance). Therefore, the Board was deprived of any ability to address the unique concerns that Plaintiffs' proposed use or expansion of an allegedly pre-existing use presented to the Property and to the surrounding community as they are required when granting variances to any applicant. (see <u>Exhibit G</u>, Zoning Board of Adjustment Resolution dated November 1, 2017). Furthermore, only good-faith efforts can constitute acceptable performance to satisfy a requirement. Merely submitting a variance only to then mysteriously withdraw same does not and cannot respectfully be considered/constitute a "meaningful application for variance" as the Supreme Court intended in <u>Williamson</u> <u>supra</u>. The failure of Plaintiff to file even one variance application to conclusion means that Plaintiffs' claims under RLUIPA and the Free Exercise Clause challenging the Township's actions to enforce its zoning ordinances are unripe, as Plaintiff has not yet suffered a "concrete injury."

For all of the foregoing reasons, this Court would respectfully benefit from deferring initial review. Plaintiffs' claims have not arrived in the present forum in the concrete/final form that it can actually be due to its failure to submit a variance application as the first step to resolving this land-use dispute. To that effect, Defendant Township's Zoning Board of Adjustment has been unable to

13

render a final decision vis-à-vis proper uses of and/or in the property. Thus, this Court is left without any guidance, as well as a lack of any measures to evaluate how applicable land use regulations should be applied to this uniquely situated Property.

For all of the foregoing reasons, the claims made by Plaintiff are subject to dismissal on the basis of Plaintiffs' failure to exhaust the variance process, and therefore, the Court should deny Plaintiffs' Motion for Leave to Amend the Complaint.

**B. Futility In Filing A Variance Application As Required By Mahwah's Ordinances Cannot Be Demonstrated By Plaintiffs.**

To the extent that Plaintiffs may refer to the September 15, 2017 letter written by Defendant Township in an attempt to demonstrate futility with the variance process, and to be exempt from the ripeness requirement, such effort would be flawed, if not wholly misplaced, since the revocation did not leave Plaintiff without an opportunity to obtain the approvals it needed to conduct the activities it wanted on the Property. This is because the revocation of the erroneously issued 2012 permit for the construction of a Long House, similarly to the denial of a zoning permit, is not a final decision under New Jersey Municipal Land Use Law. In New Jersey, it is the local Board of Adjustment that is tasked with the final authority to interpret a zoning ordinance, not the Zoning Official. N.J.S.A. 40:55D-70b. Thus, Plaintiff could have timely appealed that administrative decision by the Township Zoning Officer to Mahwah's Board of

14

Adjustment for a final decision, but did not do so.  (see Exhibit J, Superior Court Order and Transcript dated April 27, 2018).

In the alternative, Plaintiff could have also resubmitted an application for a use variance on the property pursuant to N.J.S.A. 40:55D-70d. Filing an application for a d(1) variance instead of a d(2) variance is not more onerous, since both ultimately require the Board's focus upon the applicant's ability to address the positive and negative criteria of the plaintiff's application. As the court in Williamson explained, ripeness requires Plaintiffs here to not only submit a meaningful variance application as the first step, but it also requires Plaintiffs to follow through and exhaust the variance process until it actually obtains a final determination. The only exception to this is if the application is demonstrated to be futile. Assisted Living Associates of Moorestown, LLC v. Moorestown Tp., 996 F.Supp. 409, 426 (D.N.J. 1998).  Futility, however, does not completely exempt a property owner from applying for approvals in order to have a ripe controversy, but only from submitting multiple applications where an adverse result is clear. Id at 427 quoting Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498 (9th Cir. 1990), cert. den., 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333(1991) (other internal citations omitted).

Futility also cannot be demonstrated merely based on opposition by neighbors to the application in the absence of any evidence that the local board routinely denied variances based on such neighbor opposition.  See Oxford House v. City of St. Louis, 77 F3d 249 (8th Cir 1996); cert. denied, 519 U.S. 816, 117 S.Ct. 65, 136 L.Ed.2d 27 (1996). Rather, futility is demonstrated where

15

either a zoning agency lacks discretion to grant relief sought by the plaintiff, or has made it clear that **all** such applications will be denied. Murphy, supra, citing Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 98–99 (2d Cir.1992); see also Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1012 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (an application for a variance is not required when it would be "pointless.") (emphasis added).

Here, the Defendant Township does not lack discretion to grant variances, nor has it dug in its heels and made clear that all such application will be denied. Quite to the contrary, Defendant Township and its agents, Defendants Mulvey and Entrup have been nothing but transparent about the Township's permit and variance processes and the Zoning Board of Adjustment even granted a hearing date to Plaintiffs' withdrawn variance application to resolve this issue more than two (2) years ago (see Exhibit G, Zoning Board of Adjustment Resolution dated November 1, 2017). Instead, it is Plaintiffs who come to the Court with unclean hands by not giving the Township the opportunity to reasonably decide whether to grant or deny Plaintiffs' proposed uses and construction.

Furthermore, although Plaintiffs add facts to the Amended Complaint to suggest that there has been a history of discrimination against them as a tribe, and sets forth facts to indicate that there is strong neighbor opposition and that other residents of Mahwah have directed slurs towards them at public meetings, Plaintiffs have failed to allege that any of these discriminatory acts were committed by any member or employee of the Township. However, the fact that there has allegedly been strong opposition to the activities which Plaintiffs are

16

conducting on the Property by persons living in the Township is of no consequence where Plaintiffs have not alleged any facts to demonstrate that the Zoning Board members continuously succumb to such pressure when determining whether or not to grant a land use application. Nor have Plaintiffs alleged that either Defendants Mulvey or Entrup have ever communicated to Plaintiffs that their zoning application would be clearly denied.  Not only has such a sweeping declaration not been alleged to have been made on behalf of the individual Defendants in the PAC, but is also absent from being alleged against any single member of the Zoning Board of Adjustment.  Indeed, not a single member of the Zoning Board is even identified in the PAC as having made any comments or acted in a manner which would suggest that filing an application for a variance would be futile.

For all of the foregoing reasons, Plaintiffs are not entitled to benefit from the futility exception to the finality rule in a land use dispute, and as such, Plaintiffs' Motion for Leave to Amend the Complaint should be denied.

**POINT THREE**

**LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED FOR PLAINTIFFS' FAILURE TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM FOR A VIOLATION OF THEIR FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS.**

In Count Four, Plaintiffs assert a claim under the Fourteenth Amendment of the Constitution for alleged violation of their substantive due process right due to their interest in the property located at 95 Halifax Road.  Plaintiffs' claims in the land use context for a deprivation of their substantive due process rights

17

are based entirely upon the alleged imposition of "coercive" fines, and alleged "threats and intimidation tactics to cause Ramapough members to cease use of their land." (PAC ¶103).  As Plaintiffs correctly recognize in their Brief in support of their motion to amend, in order for the actions of Mahwah Defendants to constitute a violation of an applicant's constitutional right to substantive due process pursuant to the Fourteenth Amendment's substantive due process clause; and in order for that applicant to sustain a claim for monetary damages pursuant to §1983 against them, a plaintiff must establish something more than an action that is merely arbitrary, and unreasonable, or capricious.  Rivkin v. Dover Tp. Rent Leveling Board, 143 N.J. 352 (1996) (holding that "absent egregious misconduct that **shocks the conscience** in the sense of violating civilized norms of governance, or invidious discrimination on the part of a board member or board, so long as the State provides a plain, adequate and timely remedy to redress irregularities in the proceedings, a party aggrieved by the determinations of a municipal . . .board does not have a claim for relief under §1983.").

Shortly after the New Jersey Supreme Court had decided Rivkin, the United States Supreme Court held as follows: "It should not be surprising that the constitutional concept of shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly towards it, only at the ends of the tort law's spectrum of culpability. Thus we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state

18

authority causes harm...the Fourteenth Amendment [likewise] is not a font of tort law to be superimposed upon whatever systems may already be administered by the States." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998).  As to what constitutes conscience-shocking behavior in the land use context, the New Jersey Supreme Court's decision in Rivkin is again instructive where it held that such claims must be reserved solely upon proof involving a "gross abuse of power, invidious discrimination or fundamentally unfair procedures." See Rivkin, supra, 143 N.J. at 380. Given the type of conduct necessary to violate a landowner's rights under the Fourteenth Amendment, it is not surprising that only rarely will the conduct of municipal government ever give rise to such a constitutional violation.  Id. at 365-366.  Were it otherwise true, virtually every alleged legal or procedural error of a local planning or zoning board or governing body could be challenged pursuant to §1983 on the theory that the erroneous application of state law somehow amounted to a constitutional violation.  Id. at 367; Accord, United Artists Theatre Circuit, Inc. v. Twp. Of Warrington, 316 F.2d 392, 401 (3rd Cir. 2003).

Here, there are no facts in the complaint to plausibly suggest that any threats or intimidation tactics are being used by anyone from the Township to prevent Plaintiffs from using their land. Indeed, the facts suggest otherwise; all communications with Plaintiffs have been for the purpose of obtaining compliance with Mahwah's ordinances through notification of the specific violations on the Property, and the resort to issuing summonses on a daily basis was only after Plaintiffs refused to avail themselves of the procedure for obtaining

19

permits for their non-conforming uses on the Property.  In this respect, the issuance of summonses is both legal and authorized by N.J.S.A. 40:49-5, which permits a municipality to seek fines after providing a 30-day period for the owner to cure zoning code violations.  Here, more than four (4) months had passed from the first notice of abatement dated January 17, 2018 before the Township began issuing summonses for Plaintiffs' violations of Mahwah's zoning ordinances. This lawful procedure, thus, cannot constitute the type of "conscience-shocking" behavior that is necessary to sustain a substantive due process claim.

For all of the foregoing reasons, Defendants are entitled to a dismissal of this claim, and Plaintiffs' motion to Amend the complaint to assert a claim for violation of their Fourteenth Amendment Substantive Due Process Claim same should be denied.

## **POINT FOUR**

**LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED FOR THE FAILURE TO ALLEGE ANY FACTS SUPPORTING A VIOLATION OF THEIR RELIGIOUS EXERCISE OR ASSEMBLY RIGHTS UNDER THE FIRST AMENDMENT AND RLUIPA.**

In Counts Five through Seven, Plaintiffs assert a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, et seq. alleging religious discrimination by claiming selective enforcement of Mahwah's zoning ordinances, disparate treatment on less than equal terms than similarly situated landowners, and a substantial burden on their religious exercise through the total exclusion of religious assemblies within their jurisdiction due to the imposition of a land use ordinance and based upon the same enforcement

actions upon which their First Amendment claims are based.   Since the analysis for determining whether there was a violation pursuant to RLUIPA is essentially the same as the analysis employed by courts in determining whether an applicant's right to freedom of religion has been curtailed through application of a municipality's zoning ordinances, Plaintiffs' inability to succeed in proving a violation pursuant to RLUIPA will then also defeat their claims under the Free Exercise Clause and Free Association Clause as contained in the First Amendment of the United States Constitution as contained in the First and Second Counts of the proposed Amended Complaint.  See Lighthouse Institute for Evangelism v. City of Long Branch, 406 F.Supp.2d 507, 520 (D.N.J. 2005).

As a general rule statutory and constitutional prohibitions against using zoning laws to discriminate against a house of worship are not implicated merely because there is any regulation of the house of worship. Id. at 517 (holding that the intent of Congress in enacting RLUIPA which codifies pre-existing law in cases implicating religion was not to exempt churches from zoning regulations); and House of Fire Christian Church, supra at 544, quoting Joint Statement of Senators Kennedy and Hatch, 146 Cong. Rec. S7774-01 at S7776 (July 7, 2000). In fact, there is no bright-line rule in New Jersey against the total exclusion of a church and other places of worship from residential districts, much less the imposition of reasonable zoning regulations normally attendant to inherently beneficial uses such as a church who are afforded a process by which to obtain a variance or exemption from a municipality's zoning laws. See Jehovah's

Witness Assembly Hall of Southern New Jersey v. Woolwich Township, 223 N.J. Super. 55, 59 (App. Div. 1988); St. Joseph's Korean Catholic Church v. Zoning Bd. Of Adjustment of Borough of Rockleigh, 2006 WL 1320089 at *9 (App. Div. 2006) (holding that where houses of worship are permitted in other zones, this does not render religious exercise "effectively impracticable"); and Kali Bari Temple v. Bd. Of Adj., 271 N.J. Super. 241, 638 A.2d 839 (App. Div. 1994) (holding that since larger churches are allowed in the residential zone that the ordinance totally prohibiting dual uses of buildings in the residential zone as applied to plaintiff who was seeking to make some minor renovations to his private home in order to facilitate small groups of Hindu worshippers was unconstitutional).

It is thus, clear that Mahwah is not necessarily required to give a religious institution the right to be located in a certain zone when that use would not fit in with the character of the neighborhoods within the Borough. Township of Dover v. Board of Adjustment, 158 N.J.Super. 401, 386 A.2d 421 (App. Div. 1978) (recognizing that township, through its governing body, is empowered to establish essential land use character of the municipality). Accord, Coventry Square v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285, 293 (1994) and St Gabriel's Syrian Orthodox Church v. Borough of Haworth, 2006 WL 3500965, at *10 (Law Div. 2006) (holding that ordinance excluding churches from a residential zone did not violate any of the plaintiffs religious rights when it was completely neutral and not aimed at curtailing religious exercise in the privacy

22

of one's home). Nor have Plaintiffs in the matter at bar identified any similarly situated non-secular institutions that are permitted as of right in the C200 zone. Therefore, any claim that is based on Mahwah's Ordinances as being discriminatory on its face because religious assembly is not permitted in the C200 Conservation Zone is not cognizable under section 1983.

Furthermore, to demonstrate a violation of RLUIPA on the basis of a neutral zoning regulation of general applicability, a plaintiff first has the burden of showing that the land use regulation imposed a "substantial burden" on the religious exercise of plaintiff.  42 U.S.C. 2000cc-(a) (1). See also House of Fire Christian Church v. Zoning Board of the City of Clifton, 379 N.J. Super. at 544-47 (2004).  A "substantial burden" must place more than an inconvenience or incidental effect upon religious exercise in order to violate RLUIPA.  See Lighthouse Institute for Evangelism, Inc. v. City of Long Branch, supra, 406 F. Supp.2d at 515 (D.N.J. 2005).  To meet this burden in the context of the denial of an application, the governmental action must be shown to make the use of real property for the purpose of religious exercise "effectively impracticable."  Id. A "substantial burden" does not result merely because a land use regulation makes the practice of the applicant's religion inconvenient or more expensive. Id. After all, RLUIPA is not intended to provide religious institutions with immunity from land use regulation, nor does it purport to exempt a religious institution from applying for variances or special permits or exceptions or other relief where available without discriminatory intent or unfair delay.  Id. at 517;

23

see also, House of Fire Christian Church, supra 379 N.J. Super. at 544.  If it were otherwise, this would require municipalities to impermissibly favor religious uses rather than to treat them equally with other secular land owners.   Civil Liberties for Urban Believers v. City of Chicago ("CLUB"), 342 F.3d 752 (7th Cir. 2003) (holding that "no such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise."); see also Westchester Day School v. Village of Mamaroneck, 386 F.3d 183, 189 (2004) ("Westchester I") ("As a legislative accommodation of religion, RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause, which seeks to assure that government does not interfere with the exercise of religion, and the Establishment Clause, which prohibits the government from becoming entwined with religion in a manner that would express preference for one religion over another, or religion over irreligion.").

The fatal flaw to Plaintiffs' claims under the First Amendment and RLUIPA lies in the fact that Plaintiffs cannot establish a substantial burden to their religious exercise exists as a result of any of the enforcement actions taken against them by the Township, as a matter of law. This is because Plaintiffs are currently in violation of Defendant Township's C-200 Zoning Ordinance, as well as a variety of other land use regulations, and have refused to comply with the zoning application process to date for their continued use of the property for religious gatherings open to the public.  See Code §24:11.2(b) and (d); 24:11.3,

4:11.5(b)     and     (b)(1);     24:11.5(c);     and     24:11-22     at
_http://clerkshq.com/Content/Mahwah-nj/books/Zoning/mahwahc24.htm_
(relevant parts only).   It is well-settled that the requirement that religious institutions go through a routine permit process or variance application does not constitute a substantial burden on religious exercise/ assembly and does not run afoul of RLUIPA. St. Gabriel's, supra, at *15 (holding that compliance with land use regulations does not violate a church's right to religious speech and assembly); see also Fortress Bible Church v. Feiner, 694 F.3d 208, 218-19 (2nd Cir. 2012); Konikov v. Orange County, 410 F.3d 1317, 1323 (11th Cir. 2005) ("[R]equiring applications for variances, special permits, or other relief provisions [does] not offend RLUIPA's goals."); San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1035-36 (9th Cir. 2004) (holding that a city's requirement that plaintiff refile a "_complete_" permit application did not constitute a substantial burden); CLUB, supra, 342 F.3d at 761-62 (finding that "the scarcity of affordable land available for development in R zones, along with the costs, procedural requirements, and inherent political aspects of the Special Use, Map Amendment, and Planned Development approval processes" did not impose substantial burden on religious institutions); and Hale O Kaula Church v. Maui Planning Commission, 229 F.Supp.2d 1056, 1071 (D.Haw. 2002) (holding that laws designating various zones and requiring special use permits did not impose a substantial burden on religious institution). And since Plaintiffs have failed to identify even one landowner in the C200 zone who had violated Mahwah's zoning ordinances, but who were not issued summonses by

25

the Township, they likewise cannot sustain a claim for unequal or discriminatory treatment under RLUIPA or the First Amendment.

For all of the foregoing reasons, it is clear that the applicable zoning ordinances of the Township are not discriminatory on its face and have not been discriminatorily implemented against Plaintiffs; nor have Plaintiffs sufficiently pled facts to demonstrate that the application of Mahwah's zoning ordinances and the statutory procedure for obtaining a use permit for Plaintiffs' proposed religious and cultural use of the property makes the exercise of their religion virtually impracticable.  Thus, it is respectfully requested that Plaintiffs' claims in the Amended Complaint be dismissed for the failure to state a claim.

## **POINT FIVE**

**LEAVE TO AMEND SHOULD BE DENIED FOR THE FAILURE TO ALLEGE ANY LEGALLY COGNIZABLE FACTS TO SUPPORT A CLAIM FOR CONSPIRACY.**

In Count Three Plaintiffs assert a claim for conspiracy pursuant to 42 U.S.C. §1985. To prevail on a claim for conspiracy pursuant to 42 U.S.C. §1985 (3), a plaintiff must, at a minimum allege facts establishing: (1) a conspiracy; (2) that is motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Russo v. Voorhees Twp., 403 F. Supp. 2d 352, 359 (D.N.J.

2005), <u>citing</u> <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir.1997), and <u>see</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

As it pertains to the second element, it is significant that Section 1985(3) does not prohibit all conspiracies but only those entered into "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 <u>U.S.C.</u> § 1985 (3). The Supreme Court has stated that "the language requiring the intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." <u>Russo v. Voorhees Twp.</u>, 403 F. Supp. 2d at 359, <u>citing</u> <u>Griffin v. Breckenridge</u>, <u>supra</u>. The Supreme Court in <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268, 113 S. Ct. 753, 758, 122 L. Ed. 2d 34 (1993) clarified that a class for purposes of Section 1985(3) must be "something more than a group of individuals who share a desire to engage in conduct that the Section 1985(3)defendants disfavors. <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997). Animus against the class must be based on: (1) immutable characteristics for which the members of the class have no responsibility; and (2) historically pervasive discrimination. <u>Russo</u>, <u>supra</u>, (holding that "sex, like race and national origin, is an immutable characteristic determined by the accident of birth" and holding that the impoverished is not a class intended to be protected under Section 1985).

Here, Plaintiffs allege Defendants Township and its agents have expressed their religious animus towards and have discriminated against Plaintiffs based on their religion. But, because one's religion is not determined at birth, and is not an immutable characteristic unable to be changed, Plaintiffs claims against Defendant Township and its agents based on religious animus cannot succeed because it fails to satisfy the requirement of what constitutes a protected class under 42 U.S.C. § 1985 (3).

Assuming arguendo that this Court determines that Section 1985(3) protects religious discrimination on equal terms as immutable characteristics such as race and sex, Plaintiffs' claim would nonetheless fail for the failure to allege sufficient facts establishing the existence of a conspiracy.   Because conspiracy is the first element needed to be satisfied in order to state a Section 1985 claim, the New Jersey District Court provides guidance as to the elements of conspiracy: Plaintiffs must allege that the Defendant (1) entered into an agreement with at least one other person, (2) for the purpose of committing an unlawful act, and (3) one of the conspirators then took at least one overt act in furtherance of the agreement, and (4) plaintiff suffered some damage as a result. Warren v. Fisher, No. CIV.A. 10-5343 JBS, 2011 WL 4073753, (D.N.J. Sept. 12, 2011), citing Banco Popular North America v. Gandi, 184 N.J. 161, 177, 876 A.2d 253 (2005). Thus, an agreement is a necessary component of a conspiracy. Russo, supra; see also Graves v. U.S., 961 F.Supp. 314, 320 (D.D.C.1997) (emphasis added).

Here, the gravamen of Plaintiffs complaint is based on the issuance of "crippling" summonses by the Township for their violation of Mahwah's zoning ordinances.   Plaintiffs allege in support of their claim for a conspiracy for issuance of these summonses, that 1) "Mahwah and its agents are acting at the behest of, and in partnership with, the Polo Club...members [who] have publicly expressed that their goal is to drive Ramapough [Plaintiffs] off of their property"; 2) "...representatives of the Mahwah Council, including the Mayor, regularly visited and conferred with the Polo Club regarding action to take against Ramapough [Plaintiffs]"; 3) "agents of the Township maintain close cooperation with the Polo Club in a coordinated campaign against the Ramapough [Plaintiffs]." (PAC ¶70-71, ¶76 and ¶81.  None of these allegations are sufficient to support a claim for a conspiracy against the Mahwah Defendants.

First, the issuance of summonses is not an illegal act that would support a claim for damages under 42 U.S.C. 1985 (3) as it is expressly authorized by the New Jersey State Legislature and has been affirmed to be appropriate as it pertains to Plaintiffs' violations of Mahwah's Zoning Ordinances.  (see Exhibit P Judge Bachman's Decision dated January 10, 2019).

Second, Plaintiffs have not alleged any relevant nor concrete facts to buttress any claims it has made against Defendant Township, let alone a conspiracy claim as the aforementioned allegations do not raise any inference that Defendants and the HOA had come to any concerted agreement with respect to any illegal act.  In fact, Plaintiffs fail to allege any facts in the Amended Complaint to satisfy the who, what, where why, of even one element of

conspiracy, that is: 1) when these allege meetings took place; 2) where these allege meetings and partnerships took place; 3) who were the participants in these meetings; 4) what evident agreement(s) has Defendants Township and Polo Club entered into; 5) what evident overt unlawful act(s) has Defendants Township and Polo Club actually committed; 6) which of the conspirators, Defendant Township and/or Polo Club, has committed an overt act to further the agreement, if any; and 7) what damage has Plaintiffs actually suffered.

And even if it is alleged that the summonses were allegedly issued after some alleged incident involving the Polo Club members or after other township residents' complaints regarding Plaintiffs' activities at the property, this allegation falls far short of inferring Defendant Township's issuance of summonses were part of a larger plot to discriminate against Plaintiffs. Indeed, it is well-settled that a "[c]omplaint by a private citizen urging officials to investigate does not suggest the existence of a corrupt agreement between the citizen and the officials, who are free to act upon or ignore such letters in their discretion." Warren v. Fisher, Civ. No. 10-5343 JBS, 2011 WL 4073573, at *4 (D.N.J. Sept. 12, 2011) (holding that sending letters of complaint urging an investigation into violations and causing multiple site inspections and charging tens of thousands of dollars do not meet the Iqbal plausibility standard for a conspiracy).  Accordingly, Mahwah's decision to issue violations to Plaintiffs at any alleged urging of the HOA members, even if true, does not and cannot raise an inference that their enforcement actions were part of any unlawful agreement with the Polo Club Defendants. This is especially true in light of Mahwah's

30

legitimate interest to keep the peace in its own township and obligation to investigate and issue summonses for violations should an unlawful act in violation of zoning ordinances have been committed by a private land owner.

For all of the foregoing reasons, it is respectfully requested that the Court deny Plaintiffs their motion to amend the Complaint with a conspiracy claim.

## POINT SIX

**LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED SINCE THE IDENTICAL CLAIMS WERE RAISED IN OR HAVE BEEN ADJUDICATED BY THE NEW JERSEY STATE SUPERIOR COURT**

Prior to filing the instant action in federal court, Plaintiffs filed an appeal of the Zoning Officer's decision on September 15, 2017 to rescind the 2012 permit (see Exhibit I, Complaint dated October 27, 2017, BER-L-7435-17). The appeal was not, however, filed with the Board of Adjustment in accordance with New Jersey's Municipal Land Use Law at N.J.S.A. 40:55D-72, but rather was filed with the New Jersey Superior Court in Bergen County, New Jersey as an action in Lieu of Prerogative Writ, pursuant to New Jersey Court Rule 4:69-1, et seq. (Id). In the Superior Court Complaint, Plaintiffs raised the very same facts and claims for due process violations and for an injunction as they have pled in the current Complaint to challenge the revocation of their 2012 permit. (Id). In state court, the Township moved to dismiss Plaintiffs' Complaint as untimely and for the failure to exhaust administrative remedies on or about January 31, 2018. To avoid a dismissal by the Court of their Complaint, Plaintiffs agreed at oral argument on the Township's Motion to Dismiss to voluntarily dismiss the Complaint with prejudice (see Exhibit J, Superior Court Order and Transcript

31

dated April 27, 2018). Thus, Plaintiffs appeal of the zoning officer's revocation of their 2012 permit was dismissed by the Superior Court with prejudice on April 27, 2018 (see Exhibit J, Superior Court Order and Transcript dated April 27, 2018).

On or about November 17, 2017, Plaintiffs were convicted on the summonses that had been issued as a result of the construction and maintenance of several structures, (cooking shack, sweat lodge, longhouse, tents etc.) and use of the property as a campground without a permit (see Exhibit K, Municipal Court Transcript).  Using the definition of a "structure" contained within the Municipal Land Use Laws of New Jersey, the Court concluded that the prayer circle and series of totem poles with a face carved on it were structures because they were constructed of a combination of materials for ornamentation. Thus, the Judge found Plaintiffs guilty on all of the summonses issued for not obtaining a permit before erecting those structures along with others on the property without a permit, and determined that there should be a minimum fine of $100.00 imposed for each of the 103 days that Plaintiffs did not abate the violations following the notice period of 67 days for compliance with the Township's Zoning Ordinances.  This ruling was subsequently appealed by Plaintiffs in the Superior Court and a trial de novo was held.  Following said trial, an Order upholding the municipal court conviction for the summonses issued by the Township was entered by Judge Keith A. Bachmann on January 10, 2019 (see Exhibit P, Decision dated January 10, 2019).

32

In addition, Plaintiffs have also raised the same religious discrimination and RLUIPA issues in another Superior Court action that was brought by the Township against Plaintiffs for injunctive relief under Docket Number BER-L-003189-17.  The Answer filed by Plaintiffs clearly raises the very same issues that are being raised affirmatively in the matter at bar, including the issue of whether the Township's efforts to enforce its zoning ordinances by issuing summonses constitutes a substantial burden on the exercise of religion, allegedly in violation of RLUIPA (see Exhibit L, Answer and Fourth Affirmative Defense dated June 15, 2017).

Plaintiffs entered into a settlement of the aforementioned Superior Court case (BER-L-3189-17) pending against them in February 2018, and said settlement was placed on the record before the Honorable Superior Court Judge Lisa Perez-Friscia on February 28, 2018.  Plaintiffs, however failed to approve and execute a written agreement memorializing the settlement. Thus, this action has been reinstated to the active calendar and is still pending a disposition in state court.  Upon information and belief, there is presently a trial date on this and the HOA's complaint against Plaintiffs that is scheduled for January 30, 2019.

As Plaintiffs' RLUIPA and Free Exercise claims with respect to the use of the property have been raised in several court actions, and adjudicated, there is no question that the Amended Complaint is barred by *res judicata*, and/or under Full Faith and Credit principles of comity should be dismissed.  The U.S.

33

Supreme Court "has long recognized that the determination of a question directly involved in one action is conclusive as to that question in a second suit." B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S.Ct. 1293, 1302-1303 (2015) (citation omitted). The general rule for application of issue preclusion is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties," even if the issue recurs in the context of a different claim. Id. at 1303 (emphasis added); and see Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed. 2d 155 (2008), citing New Hampshire v. Maine, 532 U.S. 742, 748 (2001).  In other words, issue preclusion prevents parties or their privies from re-litigating an issue already litigated in a valid, final judgment on the merits.   Simoni v. Luciani, 872 F.Supp.2d 382, 388-389 (D.N.J. 2012).

The doctrine of issue preclusion "ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1231 (3d Cir. 1995).  As a result, modern application of issue preclusion doctrine no longer requires complete identity of parties in the two actions. Peloro v. U.S., 488 F.3d 163, 175 (3d Cir. 2007) (under the modern doctrine of non-mutual issue preclusion, a litigant may also be estopped from advancing a position that s/he presented and lost in a prior proceeding against a different adversary). Thus, all that is now

34

required for preclusion to apply to materially similar issues is that the party against whom preclusion is being asserted "must have had a 'full and fair' opportunity to litigate the issue in the first action." B&B Hardware, supra, 135 S.Ct. at 1303, citing University of Tennessee v. Elliott, 478 U.S. 788, 797 (1986) (holding that the Full Faith and Credit Clause's purpose is served by giving preclusive effect to the fact finding of state administrative tribunals).

Likewise, federal courts have recognized several circumstances under which it is justiciably preferable not to exercise jurisdiction over a constitutional claim.  Those circumstances to which abstention is applied are: to avoid deciding a federal constitutional question when the case may be disposed on questions of state law; Railroad Comm'n of Texas v. Pullman, 312 U.S. 496 (1941) to avoid needless conflict with the administration by a state of its own affairs, Burford v. Sun Oil Co., 319 U.S. 315 (1943); to avoid duplicative litigation, Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976); and to refrain from hearing constitutional challenges to state action in which the federal action is regarded as an improper intrusion on the right of the state to enforce its own laws in its courts pursuant to Younger v. Harris, 401 U.S. 37 (1971).

The Supreme Court in Younger established a principle whereby federal courts are required to abstain from exercising jurisdiction over a federal claim when federal adjudication would disrupt an ongoing state criminal proceeding. Since that decision, this "highly important" principle has been extended to civil proceedings as well as to state statutory administrative proceedings. Moore v.

Sims, 442 U.S. 415 (1979); and Williams v. Red Bank Board of Education, 662 F.2d 1008, 1017 (3d Cir. 1981) (noting that the Younger abstention doctrine is rooted in the notion of "comity") (overruled on other grounds as recognized in Schall v. Joyce, 885 F.2d 101, 108 (3d Cir. 1989)).

For example, in Pappas v. Twp. of Galloway, 565 F. Supp. 2d 581 (D.N.J. 2008), the Pinelands Commission commenced litigation against the plaintiff in New Jersey state court in 2001, after the Commission discovered that the plaintiff had apparently conducted unauthorized development on freshwater wetlands in violation of the Pinelands Protection Act, N.J.S.A. 13:18A–1 to–58, and the Comprehensive Management Plan, N.J.S.A. 7:50–1 to–10:16. In 2003, the court granted the Pinelands Commission's motion for summary judgment, the Commission Director denied the plaintiff's application for a waiver, and on May 11, 2007, the Commission upheld the denial of the plaintiff's waiver request. The plaintiff then appealed the Commission's resolution denying his waiver request to the Superior Court of New Jersey, Appellate Division, which was pending when the plaintiff filed the Federal Court action on September 17, 2017.

The Pappas Court then granted the defendants' motion to dismiss based upon the Younger abstention doctrine since the state court action was ongoing. The Pappas Court explained that, based upon the holding in Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005), the Federal Court may abstain under Younger where: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate

36

important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." Id. In that case, both actions revolved around whether the Pinelands Commission acted lawfully in denying the plaintiff's request for a waiver from New Jersey laws proscribing construction on freshwater wetlands. The state proceedings implicated important state interests since "zoning and land use issues are of traditional significance to states," and "[a]s such, it may often be appropriate to invoke abstention to avoid deciding land use cases in federal court." Id. at 588, quoting Addiction Specialists, supra 411 F.3d at 409. Regarding the last prong, the court held that plaintiff failed to meet his burden of demonstrating that he did not have an adequate opportunity to raise the federal claims in state court. Id. at 589-90, quoting Schall v. Joyce, 885 F.2d 101, 107 (3d Cir. 1989). Since all three (3) prongs were satisfied, the Federal Court held that the Younger abstention doctrine was appropriate in that case.

In the matter at bar, it is clear that the both issue preclusion and the Younger because their appeal challenging said revocation under Docket Number BER-L-7345-17 was dismissed with prejudice by the New Jersey Superior Court on April 27, 2018.  (See Exhibit J, Superior Court Order and Transcript dated April 27, 2018).   In New Jersey, a judgment of involuntary dismissal or a dismissal with prejudice, no matter how obtained, constitutes an adjudication on the merits in favor of the dismissed party "as fully and completely as if the order had been entered after trial."  In the Matter of Estate of Gabrellian, 372

N.J. Super. 432, 447 (App. Div. 2004), quoting Velasquez v. Franz, 123 N.J. 498, 507 (1991)); see also Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J. Super. 254, 259 (App. Div. 1990). Even a dismissal with prejudice following settlement of a claim can have preclusive effect under the equitable doctrines of res judicata, collateral estoppel, judicial estoppel, and the entire controversy doctrine, all of which effectively act to bar re-litigation of claims or issues that were raised or which could have been raised in prior litigation. In the matter of Estate of Gabrellian, supra, at 447 (precluding a subsequent claim involving the same issue of intent underlying a prior judicial proceeding which had been dismissed with prejudice as the result of a settlement).  The rationale underlying these preclusive doctrines against persons or their privities from raising the same claims, issues, and facts necessary to support their newly asserted claims are identical, and essentially recognizes that fairness to the defendant and sound judicial administration require a definite end to litigation.  Watkins v. Resorts International Hotel, 124 N.J. 398, 412-13 (1991). Accordingly, Plaintiffs cannot now bring a new claim in a different forum based upon an alleged illegal revocation of the 2012 zoning permit.

Next, RMI's claims in the Complaint represent nothing more than a re-pleading of RMI's affirmative defenses in Township of Mahwah v. Ramapough Mountain Indians, Inc., Docket No. BER-L-3189-17 (Law Div. 2017) as violations in the instant matter. In that case, RMI asserted that the Township was enforcing its Zoning Ordinance "in bad faith solely for the purposes of harassment and

38

religious discrimination in contravention of the Religious Land Use and Institutionalized Persons Act." This case is still pending adjudication, and therefore the instant matter represents a premature challenge to matters that are currently the subject of an ongoing matter in Bergen County Superior Court. Furthermore, this case implicates a predominant and important state interest since it challenges enforcement of the Township's zoning ordinances to a unique parcel of land which is expressly designated for conservation. See Addiction Specialists, supra at 409. Accordingly, Younger abstention is appropriate to be applied by the District Court where Plaintiffs have presented the very same federal claims contained in their Amended Complaint as affirmative defenses in the Bergen County matter.

Furthermore, to the extent that Plaintiffs challenge the summonses issued by the Township for zoning violations as illegal, discriminatory, or otherwise unconstitutional in this action following the Township's revocation of the 2012 Zoning Permit, it is significant Plaintiffs were convicted of violating the zoning ordinances due to their erection of various structures on the property without a permit. They then appealed said conviction and imposition of fines to the New Jersey Superior Court and lost. More specifically, The Superior Court found the conviction to be proper due to the fact that RMI had failed to submit even one formal application to the Zoning Board for a final decision and therefore, they were clearly in violation of Mahwah's zoning ordinances. The Superior Court also rejected any challenge to the application of Mahwah's zoning ordinances on

the basis that it violated RLUIPA or their religious freedom rights.  Accordingly, this unfavorable decision is entitled to Res Judicata effect and/or a dismissal of the claims brought by Plaintiffs herein.  <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-47 (1994) (holding that a plaintiff is foreclosed from obtaining damages in a Section 1983 action if an unfavorable decision on a constitutional claim would imply the invalidity of the conviction).

For all of the foregoing reasons, Plaintiffs cannot sustain the claims made in the Complaint in federal court, after having lost all such challenges to the very same actions complained about in the Complaint and since there is also another state court action pending adjudication. Accordingly, it is clear that under these circumstances, Plaintiffs Motion to Amend the Complaint must be denied.

## <u>CONCLUSION</u>

It is respectfully requested that Plaintiffs' motion for leave to amend be denied for all of the reasons set forth herein.

**CLEARY GIACOBBE ALFIERI JACOBS, LLC**
Attorneys for defendants Township of Mahwah, Geraldine Entrup and Thomas Mulvey


By:    */s/ Ruby Kumar-Thompson*
Ruby Kumar-Thompson, Esq.
rkumarthompson@cgajlaw.com

Dated: January 23, 2019

40