# EXHIBIT A

## SCHEDULE OF DISTRICT USE REGULATIONS
## TOWNSHIP OF MAHWAH

| Zone | Permitted Principal Uses | Permitted Accessory Uses | Conditional Uses |
|---|---|---|---|
| C-200 Conservation (see subsection 24-6.1, paragraph a) | 1. Public open space, including hiking, horse back riding, wildlife preserves, aboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, other similar uses. <br> 2. Agricultural uses, farms, subject to subsection 24-6.1, paragraph a. <br> 3. Single-family detached residences, with 200,000 sq. ft. minimum lots. <br><br> 4. Municipal facilities. | 1. Private garages subject to subsection 24-6.8, paragraph a. <br> 2. Swimming pools subject to subsection 24-6.8, paragraph b. <br> 3. Signs. <br> 4. Off-street parking subject to the Mahwah Township Site Plan Ordinance. <br> 5. Accessory uses customarily incidental to a permitted principal use. | 1. Essential services subject to subsection 24-8.9, paragraph b. |
| R-80 Single-Family Residential | 1. Single-family detached dwellings. <br> 2. Agricultural uses, farms subject to sub-section 24-6.1, para-graph a. <br> 3. Churches, other places of worship including parish houses, Sun-day school buildings, other buildings, other similar uses, subject to subsection 24-6.1, paragraph e. <br> 4. Public day schools, not operated for profit. <br> 5. Public parks, play-grounds, libraries, firehouses, not-for-profit volunteer ambu-lance or volunteer first aid facilities. | 1. Any C-80 Zone permit-ted accessory use sub-ject to the same condi-tions as prescribed therein. <br> 2. Home occupations. | 1. Essential services subject to subsection 26-5.9, paragraph b. <br> 2. Community build-ings, social clubs, lodges, fraternal organizations, sub-ject to subsection 24-6.1, paragraph e. <br> 3. Private day school not operated for profit. |
| R-40 Single-Family Residential | 1. Any R-80 Zone permit-ted principal use under the same conditions as prescribed therein. | 1. Any R-80 Zone permit-ted accessory use under the same conditions as prescribed therein. | 1. Any R-80 Zone con-ditional use subject to the same conditions as prescribed therein. |
| R-20 Single-Family Residential | 1. Any R-40 Zone permit-ted principal use under the same conditions as prescribed therein | 1. Any R-40 Zone permit-ted accessory use under the same conditions as prescribed therein. | 1. Any R-40 Zone con-ditional use subject to the same conditions as prescribed therein. |
| R-15 Single-Family Residential (Ord. #1036, §III) | 1. Any R-20 Zone permit-ted principal use under the same conditions as prescribed therein. | 1. Any R-20 Zone permit-ted accessory use under the same conditions as prescribed therein. | 1. Any R-20 Zone con-ditional use subject to the same conditions as prescribed therein. |
| R-10 Single-Family Residential | 1. Any R-20 Zone permit-ted principal use under the same conditions as prescribed therein. | 1. Any R-20 Zone permit-ted accessory use under the same conditions as prescribed therein. | 1. Any R-20 Zone con-ditional use subject to the same conditions as prescribed therein. |
| R-5 Single-Family Residential | 1. Any R-10 Zone permit-ted principal use under the same conditions as prescribed therein. | 1. Any R-10 Zone permit-ted accessory use under the same conditions as prescribed therein. | 1. Any R-10 Zone con-ditional use subject to the same conditions as prescribed therein. <br><br> 2. Nursing homes sub-ject to subsection 24-6.5. |

# EXHIBIT B

## Township of Mahwah
## Zoning Permit

| | | | | | | |
|---|---|---|---|---|---|---|
| Application #: | 2733 | Permit No: | 20120010.000 | Issue Date: | 01/25/2012 | |
| Construction Control Number : | | 63604 | | Qualifier: | | Voucher/Receipt #: 0 |
| Block: | 1 | Lot: | 131 | | | Check #: 1244 |
| | | | | | | Amount collected: $0.00 |

| | | | |
|---|---|---|---|
| Work Site: | 95 HALIFAX RD | Zone: | Default |
| Owner: | RAMAPOUGH MOUNTAIN INDIANS,INC. | Agent: | RAMAPOUGH MOUNTAIN INDIANS,INC. |
| Address: | 189 STAG HILL ROAD | Address: | |
| City/State/Zip: | MAHWAH NJ 07430 | City/State/Zip: | |
| Telephone: | | Telephone: | |
| Fax: | ( ) | Fax: | ( ) |
| EMail: | | EMail : | |
| Tenant: | | | |

This is to certify that the above-described premises together with any building thereon, are approved for use as indicated below and as depicted on the Plot Plan:

**BUILDING LONGHOUSE TO BE USED FOR PRAYER AND COMMUNITY CULTURAL ASSEMBLY**

Which is a:

[ ] Use permitted by Zoning Ordinance, Article - ARTICLE   Section - STAT.
     *as per D.E.P.*

[ ] Use permitted by variance approved on _____, # _____ subject to any special conditions attached to the grant thereof.

[ ] Valid nonconforming use as established by ( ) findings of the Zoning Board of Adjustment or by ( ) the undersigned zoning officer or by ( ) Planning Board on the basis of evidence supplied by applicant. Conditions, if any:

[ ] There is a nonconforming structure on the premises by reason of insufficient

[ ] Other:

_____

Gary L. Montroy                                          Zoning Official

**This is NOT a Construction Permit**

# EXHIBIT C

ZONING PERMIT IS REQUIRED PRIOR TO CONSTRUCTION OR ALTERATION
OF ANY BUILDING OR STRUCTURE, (INCLUDING SIGNS, SHEDS, FENCES, ETC.)
OR PORTION THEREOF AND PRIOR TO THE USE OR CHANGE IN USE OF A
BUILDING OR LAND IN THE TOWNSHIP OF MAHWAH.   CONSTRUCTION
PERMITS CANNOT BE ISSUED UNTIL ZONING APPROVAL IS RECEIVED.

APPLICATION FOR ZONING PERMIT
TOWNSHIP OF MAHWAH
475 CORPORATE DRIVE
MAHWAH, NJ 07430



RECEIVED

APR 0 6 2017

ADMINISTRATIVE OFFICER
PLANNING & ZONING

APPLICANT NAME: Ramapough Mountain Indians Inc.

PHONE NUMBER: _____

ADDRESS OF APPLICANT: 95 Halifax Road, Mahwah NJ 07430

NAME OF OWNER (IF DIFFERENT): _____

ADDRESS OF OWNER: _____

BLOCK: 1          LOT: 131          ZONE: C-200

ADDRESS OF PREMISES FOR ZONING PERMIT: 95 Halifax Road, Mahwah NJ 07430

PRESENT USE: Open Space

PROPOSED USE: Public Assembly for Religious and Cultural Purposes

DESCRIBE IN DETAIL THE ACTIVITY TO BE CONDUCTED:
The public open space use will include teepees, tents and other incidental structures for environmental conservation,
education and advocacy.   In addition, the Lunaape will use the temporary and permanent structures for religious and
cultural assemblies.
Environmental conservation activities will focus on preserving the water and natural features onsite and the
surrounding area.  Furthermore the Lunaape will promote environmental education and conservation of water
resources in the Ramapo Mountains, and the potential threat posed by pipeline construction.  Environmental
advocacy trainings and workshops will be conducted in the tents, teepees, and other structures several times a month.
Historic indigenous structures (teepees, and longhouse) will be used for education about the history of the Ramapo
Mountains and the Ramapo Lunaape people as well as their cultural and religious practices. Ramapo Lunaape
ceremonial events (e.g. tobacco ceremonies, water ceremonies, seasonal ceremonies) will be held several times a year

NEW CONSTRUCTION: _____ ADDITION _____ ALTERATION: _____ GARAGE: _____

ACCESSORY STRUCTURE: X   SHED: X   GENERATOR: _____ SIGN: _____

FENCE: _____ SWIMMING POOL: _____ OTHER: X _____

SETBACKS (EXISTING) (FEET):
FRONT: 148.8'   REAR: 868.5'   SIDE: **33.6'**   SIDE: **330.3'**   TOTAL SIDE: **363.9'**

SETBACKS (PROPOSED) (FEET):
FRONT: 148.8'   REAR: 868.5'   SIDE: **50.0'**   SIDE: **330.3'**   TOTAL SIDE: **380.3'**

EXISTING LOT COVERAGE: **0.38**   %*   EXISTING IMPROVED LOT COVERAGE: **0.93**   %*

PROPOSED LOT COVERAGE: **0.38**   %*   PROPOSED IMPROVED LOT COVERAGE: **0.93**   %*
(after project built)                (after project built)

### *Attach sheet showing calculations/computations for Lot Coverage and Improved Lot Coverage. Instructions are attached.*

STREET FRONTAGE: **1384.83'** (FEET)        LOT DEPTH: **831.60'** (FEET)

PROPOSED STRUCTURE HEIGHT: **15** (FEET)   NO. OF STORIES: **1**

HAS AN APPLICATION EVER BEEN MADE TO THE BOARD OF ADJUSTMENT? IF SO, STATE WHEN AND WHAT FOR: _____

_____

(NOTE: ZONING FEES WAIVED FOR APPLICANTS THAT HAVE RECEIVED BOARD OF ADJUSTMENT APPROVAL.)

APPLICATION MUST BE ACCOMPANIED BY ONE (1) COPY OF A TRUE AND ACCURATE PLOT PLAN WITH DETAILS. THE PLOT PLAN WILL OUTLINE ALL EXISTING AND PROPOSED IMPROVEMENTS AS WELL AS DELINEATE ALL SETBACKS AND PROPERTY LINES (FRONT, SIDE AND REAR DIMENSIONS IN FEET).

SITE PLAN ONLY: TITLE: Layout and Dimensioning Plan   PREPARED BY: Houser Engineering

I SWEAR THAT THE ABOVE APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE

DATE SUBMITTED: **4/6/17**          x_____
                                   (APPLICANT'S SIGNATURE)

                                   _____
                                   (OWNER'S SIGNATURE)
                                   (IF DIFFERENT THAN APPLICANT)

APPROVED: _____   DENIED: **✓ #**

ZONING OFFICER: _____   DATE: **4/13/17**

        **# SEE LETTER DATED 4/13/17**

Revised 03/08/16                                        Page 2

## INSTRUCTIONS FOR OBTAINING A ZONING PERMIT

1. THERE IS A 550.00 PER APPLICATION FEE FOR FENCES OR SHEDS OF ONE HUNDRED TWENTY (120) SQUARE FEET OR LESS. ALL OTHER APPLICATIONS ARE $100.00 EACH NOTE: NO ZONING PERMITS WILL BE ISSUED UNLESS ALL REQUISITE INFORMATION IS RECEIVED BY PLANNING/ZONING OFFICE. CASH OR CHECKS ARE ACCEPTED. PLEASE MAKE CHECKS PAYABLE TO TOWNSHIP OF MAHWAH.

2. COMPLETE ATTACHED ZONING APPLICATION IN FULL, MAKING SURE THAT YOU HAVE FILLED IN YOUR NAME, CURRENT ADDRESS AND PHONE NUMBER WHERE YOU CAN BE REACHED DURING THE DAY, BLOCK, LOT, LOCATION AND ZONE PROPERTY IS LOCATED IN. A ZONING MAP IS POSTED OUTSIDE THE ZONING OFFICE IF YOU ARE UNSURE OF THE ZONE YOUR PROPERTY IS LOCATED IN.

3. FOR CONSTRUCTION OF AN ACCESSORY STRUCTURE, INDICATE ON A SITE PLAN WHAT YOU PROPOSE TO CONSTRUCT, ITS HEIGHT AND COVERAGE INFORMATION AND THE DISTANCE FROM THE PRINCIPLE STRUCTURE WHERE APPLICABLE. THIS APPLIES TO ALL ACCESSORY STRUCTURES (I.E. GARAGES, SHEDS, ETC.) AND CONSTRUCTION OF POOLS. FENCES-SKETCH ON A SITE PLAN WHERE THE FENCE IS PROPOSED TO BE LOCATED. SHOW HEIGHT AND TYPE. FOR ACCESSORY STRUCTURES PLEASE MAKE SURE THAT YOU VERIFY THE PROPOSED HEIGHT ON THE SITE PLAN ITSELF BY PROVIDING PROPOSED FINISHED GRADE ELEVATIONS AT THE FOUR CORNERS OF THE STRUCTURE. ALSO, PROVIDE THE PROPOSED ELEVATION TO THE MEAN OF THE PROPOSED HIPPED OR GABLED ROOF OR TO THE ROOF BEAMS OF A FLAT ROOF.

4. PLEASE VERIFY THE IMPROVED AND LOT COVERAGE CALCULATIONS BY PROVIDING, EITHER ON THE SITE PLAN SUBMISSION OR ON AN ATTACHED SHEET OF PAPER, THE EXISTING FOOTPRINT OF THE HOUSE 0.0    SQUARE FEET, SHEDS = 121.87    SQUARE FEET, POOL = 0.0    SQUARE FEET, ETC. SHOW HOW YOU ARRIVED AT THESE CALCULATIONS. *INCOMPLETE APPLICATIONS THAT DO NOT SHOW THESE CALCULATIONS WILL BE DENIED AND WILL DELAY THE REVIEW PROCESS.*

5. FOR ADDITIONS OR CONSTRUCTION OF NEW HOMES THAT CONTAIN BASEMENTS, THE APPLICANT MUST DEMONSTRATE ON THE SITE PLAN SUBMISSION THAT AT LEAST HALF OF THE PROPOSED BASEMENT IS *AT LEAST 6 FEET BELOW FINISHED GRADE*, OTHERWISE IT WILL BE CONSIDERED A STORY. MUST SUBMIT ELEVATION OF PROPOSED BASEMENT FLOOR, PROPOSED FIRST FLOOR ELEVATION AND ELEVATIONS AT PROPOSED FOUR (4) CORNERS OF NEW STRUCTURE.

6. INGROUND SWIMMING POOLS MUST INDICATE PROPOSED POOL COPING ELEVATIONS AND EXISTING TOPOGRAPHY AT NEAREST PROPERTY LINES. IF AN AS-BUILT IS NOT AVAILABLE, YOU MAY CHOOSE A BENCHMARK FIGURE AND DO PROJECTIONS. IF REGRADING THE PROPERTY, APPLICANT MUST SHOW NEW CONTOUR LINES AND EXISTING & PROPOSED GRADES IN THE VICINITY OF THE POOL. PLEASE DEPICT POOL ON SURVEY SHOWING DISTANCES TO LOT LINES AND LOT COVERAGE/IMPROVED LOT COVERAGE CALCULATIONS.

7. A PLOT PLAN (SURVEY) SEALED BY A LICENSED ENGINEERING OR LAND SURVEYOR IS REQUIRED UPON SUBMISSION FOR NEW CONSTRUCTION OF ANY RESIDENTIAL, COMMERCIAL OR INDUSTRIAL BUILDING.

8. ALLOW TWENTY (20) DAYS FOR THE COMPLETION OF ALL PERMITS (BUILDING AND ZONING).

Revised 03/08/16



# EXHIBIT D



*Township Of Mahwah*

Municipal Offices: 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Property Maintenance x 246

Board of Adjustment x 245                                                                     Zoning/Planning Board x 245

VIA E-MAIL AND
VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

April 13, 2017

Thomas W. Williams, Esq.
TWW Law Professional Association
220 Franklin Turnpike
Mahwah, New Jersey 07430

Re:   Ramapo Mountain Indians Inc.
Review of Zoning Application
95 Halifax Road
Block 1, Lot 131
Township of Mahwah
Our File No. MA-40-47

Dear Mr. Williams:

On April 6, 2017 our office received a Zoning Permit Application for uses proposed at the above-reference property. The Application indicates that the proposed use is for public assembly for religious and cultural purposes.

The property in question is located in the Township's Conservation (C-200) Zone. As per the Township Code, the following are permitted principal uses in the C-200 Zone:

1.    Public open space, including hiking, horse back riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, other similar uses.

2.    Agricultural uses, farms, subject to subsection 24-6.1, paragraph a.

3.    Single-family detached residences, with 200,000 sq. ft. minimum lots.

4.    Municipal facilities.

Based on numerous site observations, we have found the property currently has many structures on site. These structures consist of camping tents, tepees, popup tents, a canvas cabin and a structure consisting of lumber with roof, floor and cabinets. These structures have been on the site since at least November 4, 2016 and the site has been occupied on a permanent basis.

The site currently and has been utilized as a campground with some individuals using the site on a permanent basis as living quarters and as a place of public assembly.

Thomas W. Williams, Esq.
April 13, 2017
Page 2

We are forced to deny the Application for Zoning Permit submitted, since the activities currently being performed at the site and proposed to be conducted at the site are not permitted as per the Township's List of Permitted uses in this zone. Please see the attached Refusal of Permit.

In addition, we have reviewed the Amendment, submitted on April 6, 2017, to the Zoning Application submitted. The Amendment requests a Hearing for Zoning Interpretation be heard. As you know, a Request for Zoning Interpretation Hearing must be made by submitting a completed Township of Mahwah Board of Adjustment Application.

As our office has made you and your client aware on several occasions, a Township Development and Board of Adjustment Application for Use Variance and Site Plan Approval must be approved prior to the activities currently being performed and proposed to be performed on site would be permitted.

As per our meeting on January 12, 2017, we agreed to adjourn the Summons for the violations that have occurred for a period of 60 days. The 60 day adjournment would provide your client with the time necessary to submit a Zoning and Site Plan Application to the Township for review.

While we have received the Applicant's Zoning Application, we still have not received the necessary Development and Board of Adjustment Applications, along with all required application and escrow fees. Therefore, we again are forced to recommend that the summonses be reinstated.

Thank you for your kind attention to this matter. Should you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

BOSWELL McCLAVE ENGINEERING

Michael J. Kelly, P.E.
Administrative Officer

MJK/jg
Attachment
cc:     The Honorable Mayor and Council
        Township of Mahwah Board of Adjustment
        Quentin Wiest, Township Business Administrator
        Kathrine G. Coviello, Township Clerk
        Dan Mairella, Construction Code Official
        Geri Entrup, Administrative Officer
        Tom Mulvey, Property Maintenance
        James N. Batelli, Chief, Mahwah Police Department
        Brian M. Chewcaskie, Esq.
        Angela Musella, Health Officer
        Chief Dwaine Perry, Ramapo Mountain Indians, Inc.
{70413JG1}.doc

USE-VARIANCE(D)(2) APPLICATION ADDENDUM
RAMAPOUGH MOUNTAIN INDIANS INC.
95 HALIFAX LANE, MAHWAH, NJ 07430
BLOCK 1, LOT 131
C-200 CONSERVATION ZONE

**I. Introduction**

The Applicant, Ramapough Mountain Indians Inc. ("the Tribe" or "Applicant"),

owns Split Rock Sweet Water Prayer Camp ("Sweet Water"), a fourteen-acre property at 95

Halifax Lane in Mahwah, New Jersey, 07430–Block 1, Lot 131. See Chief Dwaine Perry

Certification ("Perry Cert."). The property carries the C-200 Conservation Zone designation in

the Township's Zoning Ordinance. Id. The property is also designated part of the State of New

Jersey Department of Environmental Protection ("NJDEP") Green Acres Program, pursuant

to N.J.S.A. 54:4-3.63 et seq., as open space for public recreation and conservation purposes.

The Tribe has used Sweet Water for religious ceremonies for over twenty-five (25)

years. See Perry Cert. Numerous other tribes, friends, and supporters join the Ramapough

Lenape Indians for Pow wows and other ceremonies. See Kieran Cinroy Certification ("Cinroy

Cert."). The Tribe conducts these ceremonies twice a month in warmer weather and less often in

colder weather. Additionally, they use Sweet Water for sweat lodges throughout the year. See

Perry Cert, Cinroy Cert., and Gore Cert. The Tribe, also, has used the property for

hunting, fishing and camping for many years, including prior to ownership by permission of the

previous landowner, Chuck Elms. See Cinroy Cert.

The Tribe accommodates guests in teepees and tents, and for the past five (5) years, has

been using a temporary kitchen to provide food. Sweet Water is uniquely situated for these uses

and ceremonies.  Sweet Water is irreplaceable for those purposes because it is very close to two

of the Tribe's sacred sites: 1. the confluence of the Mahwah and Ramapo Rivers, where the

1

Tribe has welcomed people with shared ceremonies for millennia[1], and 2. the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains.[2] See Cinroy Cert.

Over twenty (20) years ago, the Tribe began using a Long House onsite and about a year ago, began to construct a Round House and Weewiikaan. These are integral and necessary for the Tribe's religious practices and ceremonies. See Perry Cert and Cinroy Cert. Moreover, Sweet Water is on the Ramapo River waterfront; the Tribe requires water access for many of its religious ceremonies. See Perry Cert. Finally, there is no other alternative land that the Tribe owns that satisfy these criteria.

The Tribe will continue the ceremonial, religious and public assembly use primarily as a place to worship, share Ramapough Lenape culture, and for environmental education as it has done for decades on this property and for millennia in the region. See Cinroy Cert. However, to accommodate a surge in local, regional and national interest, the Tribe seeks to expand its use of Sweet Water. See Perry Cert. The site will be a place to educate their own and local youth. The Tribe wishes to awaken people to their culture and history. They propose to expand the use of the property to accommodate the Lenape diaspora who can return to the area with their families and come to Sweet Water to learn about, preserve and pass on their culture, and to have a place to camp and food to eat.

The Tribe also proposes to bring the public onsite more often to share the Tribe's religion, culture, and views on the environment, and to educate school children and teenagers. The Tribe's proposed use includes large groups for a National Prayer Day and space for 100 or so to gather occasionally for such activities as watching outdoor movies.

---

[1] In the Tribe's native language, the word "mahwah" means "meeting place." See Perry Cert.
[2] In the winter of 1779-1780, the Tribe welcomed George Washington to use the Ramapo Pass to shelter five hundred soldiers of the Continental Army. Since that time, the Tribe has been known as Keepers of the Pass. See Perry Cert

2

In addition, the Tribe seeks to educate its members and the public about the proposed Pilgrim Pipeline. See Gore Cert. A private company has proposed to build the Pilgrim Pipeline, an oil pipeline, above the nearby Ramapo River Aquifer, a drinking water source that could take decades to clean if contaminated by a pipeline leak. The Tribe needs a place to bring people together around this issue, as well as other related environmental, cultural, and spiritual issues. The Tribe also wishes to hold non-violent water protector training workshops at the site.

The Tribe proposes to use more temporary teepees, which are religious and historic in nature, as well as tents. In addition, the Tribe plans to construct an elevated, flood resilient 50x100 foot Long House designed by flood plain experts and powered by solar energy, wigwams—traditional Lenape structures—to have a mini-Lenape village on the site, eating and sleeping spaces, an improved elevated cooking shack, a food storage structure, and bathing facilities. The Tribe has had agreements with Ramapo College to accommodate satellite parking for its members and guests.

The Tribe seeks to invite its members, the public, fellow tribal members and professionals to Sweet Water to learn, share, and help explore and create a sustainable and resilient society for future generations. The Tribe intends to seek an agreement with a nearby neighbor for use of its parking spaces throughout the year, as well allow some temporary parking on the land during special events. The Tribe recently purchased a passenger van to be used to shuttle visitors to and from the site.

As described in detail below, relief from the Township of Mahwah's Zoning Ordinance is appropriate because the Tribe meets the necessary criteria for a use variance. Furthermore, denying the use variance would subject the Township to penalties under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

In addition, the Tribe continues to assert sovereign immunity.

## II.  Relief Requested

Pursuant to Mahwah Zoning Ordinance, §24-6.1e, religious uses are not permitted in the C-200 zone, therefore the Tribe requests to expand its legally existing nonconforming use and requires relief pursuant to N.J.S.A. 40:55D-70(d)(2), in addition to Site Plan approval.

Further, to the extent that the Tribe does not comply with some of the items specifically identified in the Application Checklist, Applicant submits that the religious use will have a *de minimis*, if any, affect upon any on-site or off-site condition and as a result, many of the checklist items are not applicable to this proposed use.

However, in the event it is required, Applicant reserves the right to seek variances, waivers, or other relief from any other condition or requirement of its application at the time of the hearing not expressly heretofore identified.

## III.  The Ramapough Indians are entitled to Use Variance Relief Pursuant to N.J.S.A. 40:55D-70(d)(2).

The Doctrine of Equitable Estoppel allows a preexisting nonconforming use to be considered lawfully created where a municipality has tacitly or explicitly long allowed the nonconforming use. Bonaventure Int'l v. Spring Lake, 350 N.J. Super. 420, 436-38 (App. Div. 2002). A "d(2)" use variance is applicable when one wishes to expand or intensify a lawfully created preexisting nonconforming use. N.J.S.A. 40:55D-70(d)(2).

The Tribe has been using the land in the region for religious and ceremonial purposes for millennia. See Perry Cert. Over twenty-five (25) years ago, the Tribe acquired 95 Halifax Lane and continued to conduct religious ceremonies. See Perry Cert. Over ten (10) years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identify Sweet Water as "Ceremonial" land. The Township has long acquiesced in this designation

4

and acknowledged that the land is used for religious purposes and, with that public sign, encouraged this use. Therefore, the Doctrine of Equitable Estoppel applies.

An applicant for a use-related variance must show (A) that special reasons exist for the variance or the proposed use inherently serves the public good ("the positive criteria") and (B) that the variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and the zoning ordinance ("the negative criteria"). Sica v. Board of Adjustment of Tp. of Wall. 127 N.J. 152, 159 (1992); Alpine Tower v. Mayor & Council Borough of Alpine. 231 N.J. Super. 239, 248 (App. Div. 1989). The Tribe respectfully submits that they qualify for a use variance to continue using their property for their religious, ceremonial, and educational uses.

A. The Positive Criteria

i.   Special Reasons Exist for the Variance

An applicant must demonstrate that its proposed use will meet at least one of the intentions and purposes of the Municipal Land Use Law set forth in N.J.S.A 40:55D-2. The Tribe's proposed use meets six of these purposes:

1. N.J.S.A 40:55D-2(a) states, "To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare."

   o The tribal village's reconstruction will provide greater dignity to the Tribe members.

   o Traditional ceremonies associated with religious use of the land will promote morals and general welfare.

2. N.J.S.A 40:55D-2(b) states, "To secure safety from fire, flood, panic and other natural and man-made disasters."

   o The Tribe is planting a food forest in a joint effort with horticulturalists, agriculturalists, ethnobotanists, and Ramapo College students. They are planting seasonal and traditional Native American plantings to develop a local food source. This food forest will act as a flood retardant.

3. N.J.S.A 40:55D-2(g) states, "To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens."

   o The Tribe's property is already under NJDEP Green Acres designation, which allows for public use.

   o The property is the appropriate location for an environmental and cultural center alongside the Tribe's religious use on the river's edge.

   o The proposed use will meet the needs of all New Jersey citizens, who desire to restore relations with the Tribe, restore justice, reconcile the abuses of the past, and reconnect with the Earth. The proposed use will also meet the needs of the Tribe–who are New Jersey citizens as well–who need a ceremonial, cultural, and educational site to restore their tribal traditions.

4. N.J.S.A 40:55D-2(i) states, "To promote a desirable visual environment through creative development techniques and good civic design and arrangement."

   o The proposed natural building designs are creative. The designs propose to reconstruct the traditional longhouse and roundhouse in a modern context

6

for contemporary tribal expression through a blend of traditional techniques and more modern sustainable and environmentally sensitive design and technology.

- o The proposed tribal village design promotes a desirable natural environment, which fosters good civic design. This encourages community engagement, which builds healthy communities through future public gatherings at the ceremonial community longhouse and roundhouse.

5. N.J.S.A 40:55D-2(a) states, "To promote the conservation of historic sites and districts, open space, energy resources and valuable natural resources in the State and to prevent urban sprawl and degradation of the environment through improper use of land."

- o The proposed natural building techniques integrating sustainable and renewable energy technology conserves the environment and habitat of the Ramapo River. It also promotes a model example of living in tiny houses, through its wigwams, in a way that prevents urban sprawl and degradation of the environment through improper use of the land.

6. N.J.S.A 40:55D-2(a) states, "To enable municipalities the flexibility to offer alternatives to traditional development, through the use of equitable and effective planning tools including clustering, transferring development rights, and lot-size averaging in order to concentrate development in areas where growth can best be accommodated and maximized while preserving agricultural lands, open space, and historic sites."

7

       ○ The proposed site plan offers a unique alternative to traditional development through the use of wigwam clustering, open-air ceremonial longhouses and roundhouses, and natural building techniques integrating modern sustainability technology such as solar panels, composting toilets, and outdoor water showers.

### ii. The Proposed Use Inherently Serves the Public Good

N.J.S.A. 40:55D-4 defines an inherently beneficial use as one which is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare. This presumptively satisfies the positive criteria. Such a use includes, but is not limited to, a hospital, school, child care center, group home, or a wind, solar or photovoltaic energy facility or structure. .

This parcel is already designated as a part of the Green Acres program, to ensure both the access to public outdoor recreation areas and the conservation of natural resources. Per Green Acres Definitions pursuant to N.J.S.A. 54:4-3.63 et seq., "'Recreation and conservation purposes' means the use of lands for beaches, biological or ecological study, boating, camping, fishing, forests, greenways, hunting, natural areas, parks, playgrounds, protecting historic properties, water reserves, watershed protection, wildlife preserves, active sports, or a similar use for either public outdoor recreation or conservation of natural resources, or both, pursuant to the Green Acres laws."

The Tribe proposes to use Sweet Water as an environmental and cultural educational center for the public, in addition to continued use for religious ceremonies. The proposed use serves the conservation purposes of the current zoning C-200 as well. The Tribe's temporary structures are aesthetic and will enhance the local environment. The educational, conservational, cultural,

religious, and charitable purposes will inherently serve the public good. See Perry Cert. and Jeffrey Gagnon Certification ("Gagnon Cert.").

The New Jersey Supreme Court has stated that while an inherently beneficial use should not be per se exempted from restrictions designed to alleviate harmful physical impact, reasonable restrictions are better than a complete rejection of needed regional facilities. Sica, 127 N.J. at 162. Rather than outright rejection of the religious use variance, the Board of Adjustment here should consider reasonable restrictions in granting the variance.

**B. The Negative Criteria**

**i.    There will be no substantial detriment to the public good.**

This prong focuses on the impact of the variance on nearby properties. Medici v. BPR Co., 107 N.J. 1, 22-23 n.12 (1987). The Board of Adjustments evaluates the impact of the proposed use variance on the nearby properties to determine whether granting the variance will provide more public benefit than public detriment. Yahnel v. Bd. of Adjust. of Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963), cert. denied, 41 N.J. 116 (1963).

The neighboring Polo Club has complained about increased car traffic due to the increased frequency of prayer circles and educational programs.  The Tribe intends to seek an agreement with a nearby neighbor for use of its parking spaces throughout the year, as well allow some temporary parking on the land during special events.  The Tribe recently purchased a passenger van to be used to shuttle visitors to and from the site.

To provide substantial public good, the Tribe proposes to implement environmental education programs to teach the public about Native American history and the Tribe's way of life. These programs will be environmentally friendly and include conservation practices consistent with the Conservation Zone.

9

ii.   There will be no substantial impairment of the intent and purpose of the zone plan.

The focal point of this prong is the extent to which granting the variance would constitute an arrogation of the authority of the governing body and planning board. Here, this is not a request to rezone the entire area. The Tribe intends to continue using the land consistently with its intended environmental conservation purpose. The Tribe simply wishes to add some religious ceremonies and environmental education open to the public.

Granting this use variance will not constitute an arrogation of any authority.

C. Balancing the Positive and Negative Criteria

The Supreme Court suggested the below four steps as a guide to municipal boards. Sica v. Board of Adjustment Tp. of Wall, 127 N.J. 152 (1992).

1. "First, the board should identify the public interest at stake." Sica, 127 N.J. at 165 (1992).

   o  The public interest at stake is the environment, the Tribe's welfare and cultural survival, the public youth's moral development, the preservation of the Tribe's history and spiritual well-being, as well as that of its friends and allies who share in religious ceremonies at the site.

2. "Second, the Board should identify the detrimental effect that will ensue from the grant of the variance." Sica, 127 N.J. at 166 (1992).

   o  The neighboring Polo Club has complained about the increase in parking. The Tribe intends to seek an agreement with a nearby neighbor for use of its parking spaces throughout the year, as well allow some temporary parking on the land during special events. The Tribe recently purchased a passenger van to be used to shuttle visitors to and from the site.

10

3. "Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use. If so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions." Sica, 127 N.J. at 166 (1992).

   o Any anticipated adverse effect may be regulated by reasonable restrictions. For example, such restrictions could include regular maintenance of the property, parking limits, or restricted hours of operations, except for any security guard needs.

4. "Fourth, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." Sica, 127 N.J. at 166 (1992).

   o Overall, due to minimal negative impact, the balance leaves no substantial detriment to the public good, allowing for grant of the variance.

## IV. Religious Land Use and Institutionalized Persons Act ("RLUIPA" or "Religious Land Use Act")

The Township's determinations on this religious use variance application are subject to the Religious Land Use and Institutionalized Persons Act (42 U.S.C. 2000cc et seq.), to prohibit any further substantial burden on the tribe's religious exercise. The Religious Land Use Act requires the Township to demonstrate a compelling interest in enforcing the Zoning Ordinance and the Flood Hazard Area Control Act ("FHACA"), and further requires the Township to use the least restrictive means to further that interest. 42 U.S.C. 2000cc-5(a).

The District Court of New Jersey stated:

The denial of the requested zoning variances at issue in this case invoke[s] the same form of strict scrutiny under the First Amendment as mandated by the RLUIPA statute. . . . Under the First Amendment's Free Exercise protections,

11

Case 2:18-cv-09228-CCC-JBC   Document 71-2   Filed 01/23/19   Page 24 of 166 PageID: 1632

religious justifications for such an exemption cannot be denied unless the Township can demonstrate a compelling state interest for the denial and that the denial represents the least restrictive means available to further that interest. *Sherbert v. Verner*, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). See also *Fraternal Order of Police*, 170 F.3d at 366 (3d Cir. 1999).

Church of the Hills of Twp. of Bedminster v. Twp. of Bedminster, CIV. 05-3332 (SRC), 2006 WL 462674, at *4 (D.N.J. Feb. 24, 2006).

There is no compelling government interest here where the Township has responded to a handful of influential neighbors to selectively enforce land use laws by such extreme measures, including the previous inappropriate lawsuit in Superior Court. The Township of Mahwah's actions under pressure from the Polo Club neighbors are similar to the actions of the Village Mamaroneck in Westchester Day School v. Village of Mamaroneck, 504 F.3d 338 (2d Cir. 2007), where the 2nd Circuit held that it was a substantial burden on a Jewish School's religious exercise to deny them a variance. The 2nd Circuit found such denial was due to political pressure from a group of influential neighbors and Mamaroneck citizens who opposed the variance. The court held that such political pressure was not a compelling government interest and ordered the Village of Mamaroneck to grant the permit immediately. Likewise, a court may order the Township of Mahwah to grant this variance immediately if denied under such similar circumstances.

There are several lesser restrictive means of compelling the enforcement of land use laws available to the Township of Mahwah. For example, the Township is aware of the Tribe's previously stated intentions to address religious use. See Perry Cert. Granting a religious use variance is the first lesser restrictive means of compelling the enforcement of land use laws, as has been done to other similarly situated properties in the Township of Mahwah. Second, to address the alleged FHACA violations, the Township could convene a meeting among the

12

Township, the Tribe, NJDEP, and the Council on Indian Affairs as NJDEP representatives have suggested. See Perry Cert.

Denying a religious use variance would severely harm the Tribe because the Township would thereby deny the Tribe's Constitutional right to free exercise of their religion and public assembly in violation of the Religious Land Use Act.

Through the Religious Land Use Act, Congress made it very clear that government could not interfere with "the use, building, or conversion of real property for the purpose of religious exercise", except in the most compelling circumstances, and even then, only by the least restrictive means. 42 U.S.C. 2000cc-5; Jehovah's Witnesses Assembly Halls of New Jersey Inc. v. City of Jersey City, 597 F.Supp. 972, 981 (D.N.J. 1984) (The "practice of gathering in large groups for religious instruction and worship is in performance of their religious beliefs. This practice is protected by the First Amendment's free exercise clause"). The Ramapough Nation exercises its religion through spiritual practices and ceremonies unique to their tribe, as well as through shared ceremonies as led by other tribes on the land going back 30 years, and on neighboring land in keeping with their traditional religious practices on this continent going back for millennia. See Perry Cert.

Moreover, the Religious Land Use Act prohibits the use of burdensome zoning law restrictions on property to underhandedly inhibit the free exercise of religion, "whether or not compelled by, or central to, a system of religious belief." Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2762 (2014). In addition,

[t]o warrant protection under the Constitution and RLUIPA, the belief need not be mandated by a particular, established religion or held by a majority of the believers within a religion. Thomas v. Review Bd. Of Ind. Emp't Sec. Div., 450 U.S. 707, 716 (1981) [finding that federal courts are not to sit as arbiters of religious orthodoxy]; 42 U.S.C. § 2000cc-5(7)(A) (defining "religious exercise"

13

as including "any exercise of religion, whether or not compelled by or central to, a system of religious belief."

Chapter 3, Litigating Religious Land Use Cases, Second Edition, American Bar Association, 2014 at 47. Therefore, the Religious Land Use Act protects the Ramapough Nation's religious exercise and assembly on their land regardless of whether they do so as an organized religion.

Furthermore, a denial of a religious use variance, coupled with the Township of Mahwah's selective enforcement, issuance of daily summons, previous preemptive lawsuit and other treatment allows for an inference not only of interference, but also of discrimination. A land use regulation, to be abused in a discriminatory manner, does not have to specifically target religious exercise. Lighthouse Community Church of God v. City of Southfield, CIV. 05-40220, 2007 WL 30280, *8 (E.D. Mich. Jan. 3, 2007).

In Lighthouse, the Church purchased a building in a zone allowing churches, but received citations and a cease and desist notice for failure to obtain a Certificate of Occupancy because they had only 73 parking spots instead of 95. The court noted that a land use regulation does not have to specifically target a religious exercise to create a substantial burden. Rather, "[a] land use regulation that is specifically blind to religious use of land can still substantially burden religious exercise." 2007 WL 30280, *8. The parking ordinance essentially restricted the church from using its building for religious exercise. The city could have granted the church a variance to the parking requirement, but it declined to choose this less restrictive option in a discriminatory manner. See also Albanian Associated Fund v. Twp. Of Wayne, CIV. 06-cv-3217 (PGS) 2007 WL 2904194 (D.N.J. Oct. 1, 2007), where plaintiffs survived summary judgment for their Religious Land Use Act claim alleging the Township's condemnation of their land for the Open Space Plan was a pretext for religious discrimination where they showed the

14

Township granted permission to develop environmentally sensitive land to 32 of 34 waiver applicants.

This fact pattern granting waivers to develop in environmentally sensitive land despite the Open Space Plan is similar to that of the instant case, where the Township of Mahwah may grant a use variance to the C-200 conservation district, where the Tribe's land is located.

Analogously, the Township of Mahwah may grant a religious use variance. If the Township of Mahwah denies the Tribe a religious use variance, not only is the Township abusing local land use laws in a discriminatory manner to substantially burden the Ramapough Nation's religious exercise, but it is also denying the public the inherent benefit of the Tribe's cultural, environmental, and religious services.

## V.  Sovereign Immunity

Notwithstanding all of the above, the Tribe continues to assert sovereign immunity for the reasons below.

The Tribe is a sovereign nation recognized by the State of New Jersey and does not concede the authority of Mahwah to regulate its activities on its own land. The United States Supreme Court recently stated, "Indian tribes are generally entitled to immunity from suit" under principles of sovereign immunity, analogizing tribal sovereign immunity to state and federal sovereign immunity to preserve a government's "ability to govern itself independently." Lewis v. Clarke, 137 S. Ct. 1285, 1289, 1290 (2017). Furthermore, as a part of international customary law, Articles 4, 5 and 6 of the United Nations Declaration on the Rights of Indigenous Peoples affirm:

> Article 4. Indigenous peoples, in exercising their right to self-determination, have the right to autonomy or self-government in matters relating to their internal and local affairs, as well as ways and means for financing their autonomous functions.

15

Article 5. Indigenous peoples have the right to maintain and strengthen their distinct political, legal, economic, social and cultural institutions, while retaining their right to participate fully, if they so choose, in the political, economic, social and cultural life of the State.

Article 6. Every indigenous individual has the right to a nationality.

Additionally, the Tribe asserts its rights under the American Convention on Human Rights, through the Inter-American Commission on Human Rights, of the Organization of American States. Specifically, Article 1, the obligation to respect rights without discrimination, Article 12, the right to freedom of conscience and religion and Article 20, the right to nationality.

Finally, the Tribe claims that it merits nation to nation relations with the Township of Mahwah and other governmental entities analogous to that called for by the Two Row Wampum Treaty. The Two Row Wampum Treaty between the Haudenosaunee and the Dutch declared a brotherly relationship with each nation calling the other "Brother" to affirm equality. Codified in the Tow Row Wampum Belt, with two purple rows running the length of the wampum belt, these symbolized that "[i]n one row is a ship with our White Brothers' ways; in the other a canoe with our ways. Each will travel down the river of life side by side. Neither will attempt to steer the other's vessel."[3] Therefore, the Tribe maintains it is a sovereign nation meriting nation to nation relations with the Township of Mahwah.

Nevertheless, in the spirit of Brotherly relations, the Tribe is retaining a licensed land use planner and hereby submits an application to the Township for approval of a use variance from the Township's Zoning Ordinance for expansion of its religious activities and public assembly on the Sweet Water site.

---

[3] Two Row Wampum Treaty/Guswenta, available at http://www.onondaganation.org/culture/wampum/two-row-wampum-belt-guswenta/, last checked May 25, 2017.

16

In January 2017, the Tribe met with the Township representatives, and agreed to submit applications for zoning and site plan applications for religious activities at Sweet Water. See Kelly Cert. In April 2017, the Tribe submitted a Zoning application and a Site Layout Plan. See Perry Cert. The Township denied the zoning application and provided a list of deficiencies. Id. The Tribe is hereby preparing this application addressing those deficiencies.

## VI.  Conclusion

For the reasons set forth above, and as the testimony to be adduced at the public hearing will corroborate, the application of Ramapough Mountain Indians Inc. for site plan approval with use variance relief should be approved. The Applicant reserves the right to provide additional factual and legal arguments at its hearing. If denied, the town's actions will likely be found in violation of the Religious Land Use and Institutionalized Persons Act.

## ADDITIONAL INFORMATION

Question 16: Regarding exceptional conditions of the property preventing applicant from complying with the Zoning Ordinance requirements, the NJ Municipal Land Use law makes clear that this particular criteria relates to the c (bulk) variance, not the d variance. N.J.S.A. 40:55D-70(c)(1)(c); Lang v. Zoning Board of Adjustment, 160 N.J. 41, 53 (1999); Wilson v. Brick Twp. Zoning Bd., 405 N.J. Super. 189, 201 (App. Div. 2009).


Question 17: Regarding "facts showing why relief can be granted without substantial detriment to the public good and will substantially impair the intent and purpose of the zone plan and Zoning Ordinance," see Addendum above.

Question 19: All applicants must attach to this application a schedule showing the following information (if applicable):

A.    Type of construction

In reconstructing their indigenous and traditional systems of building, the Tribe will use natural building methods, which use local sources of lumber and other materials, natural materials that will dissolve upon impact by a river and thereby reduce or eliminate any threat of harm to other humans or the environment as it washes downriver, and appropriate siting for storm water considerations. They will also plant natural native plants that absorb rain and use reeds for thatching roofing materials. The Round House will be constructed on stilts to ensure it is flood-proof.  (See Gagnon Affidavit.)

B.    Description of any deed restrictions or easements affecting this property Green Acres

C.    Photograph(s) of land and buildings involved in this application

D.    Names and Addresses of all expert witnesses proposed to be called and estimate of time to present case.

o  Chief Dwaine Perry, 189 Stag Hill Rd., Mahwah

o  Prof. Charles Stead, Ramapo College, Mahwah

o  Charles Elmes, Middletown, NY

o  Karenna Gore, Director, Center for Earth Ethics, Union Theological Seminary, NYC.

o  George W. Williams, P.P., Montclair, NJ.

o  Jeff Houser, P.E., Ringwood, NJ.

18

- o  Roberto Muccaro Buccaro

- o  Chief Arwil Lookinghorse

- o  Stephen Leonardo

- o  Kieran Conroy, Lay Minister, Cornwall Youth Group, St. John's Episcopal Church

- o  Dinesh Khosla, Founder of Hindu Samaj Mandir Temple and CUNY Law School, Professor

- o  Richard DeGroat Wolfpaw Thomas, Chief, Martin Band, Ramapough Lenape Nation

- o  Charles Morgan Mud Turtle, Arena Director for Pow Wows, Ramapough Lenape Nation

- o  Clara Soaring Hawk Hasbrouck, Chief, Deer Clan, Ramapough Lenape Nation

- o  Jeffrey Gagnon, Natural Builder and Designer, Founder, Sacred Spaces Design Build Collective, 246 Dewitt Road, Olivebridge, NY 12461

The Tribe reserves the right to add or change fact and expert witnesses to be called to testify.  The Tribe estimates about four hours to present its case.

E.    Proof of payment of all taxes due and owing on the site

The Property is tax exempt under Green Acres.

F.    Payment of Application Fees and Escrow.

The Ramapough Mountain Indians, Inc, a 501(c)3, non-profit organization, respectfully requests a reduction of the Application Fee to $500.00 and a waiver of the Escrow.

19

# EXHIBIT E

# TWW LAW PROFESSIONAL ASSOCIATION
## THOMAS W. WILLIAMS, ESQ
### 220 FRANKLIN TURNPIKE
### MAHWAH, NEW JERSEY 07430

Phone: 201-529-4420         Fax: 201-529-1351
twwesq@optonline.net

MEMBER OF NJ & NY BARS

NEW YORK OFFICE
16 Chestnut Street
Suffern, New York 10901

June 12, 2017

Township of Mahwah
Board of Adjustments
475 Corporate Drive
Mahwah, NJ 07430

     Re:  Ramaough Mountain Indians, Inc.
        95 Halifax Road, Mahwah, NJ

Dear Sir/Madam:

     Enclosed please find an original and one copy of variance applications, site plan and a check in the amount of $500.00.

          Very truly yours,

          Thomas W. Williams, Esq.
          Thomas W. Williams, Esq.

TWW/kr
cc:  Chief Dwaine Perry
    Aaron Kleinbaum, Esq.
    Joel R. Kupferman, Esq.

RECEIVED
JUN 1 2 2017
ADMINISTRATIVE OFFICER
PLANNING & ZONING

Geraldine
Entrup

**BOARD OF ADJUSTMENT**
**TOWNSHIP OF MAHWAH**
**APPLICATION**

APPLICANT Ramapough Mountain Indians, Inc.
( ) A VARIANCE                    (☑) D VARIANCE
( ) B VARIANCE                    ( ) E VARIANCE
( ) C VARIANCE

1. Applicant's full name, address and telephone: _____

Ramapough Mountain Indians Inc., 189 Stag Hill Road, Mahwah, NJ 07430

2. Street address of site: 95 Halifax Road

Lot 131 _____ Block 1 _____   Tax Map Sheet No. 12

3. The premises are situated on the (East) (West) (North) (South) side of
West side of Halifax _____ street approximately 1,670 _____ feet from
the intersection of Ramapo Valley Road _____

4. The premises are located in the following zone: C-200

5. Owner's name, address and telephone: Ramapough Mountain Indians Inc.
189 Stag Hill Road, Mahwah, NJ 07430, 845-357-1038

6. Relationship of applicant to owner (i.e. Tenant, Agent, Contract Purchaser, Other):
Same

7. Legal Counsel, name address and telephone: Thomas W. Williams, Esq.
220 Franklin Turnpike Mahwah, NJ 07430, 201-529-4420; Aaron Kleinbaum, Esq., Valeria Georghui, Esq.

The present use of the premises is: Conservation and open space as well as
Ramapough Lenape ceremonial religious use and public assembly.

9. The purpose of this application is to permit the erection, alteration, extension or use
described as follows: Expand a legally     created non-conforming use for
ceremonial, religious and public assembly purposes. In particular, provide accessory
temporary structures to facilitate the historical use of the property.

4

10.  List ALL Ordinances involved in this application from which variances are requested.  State type of variance requested with specific Code section or Ordinance No.

Mahwah Zoning Ordinance subsection 24-6.1e,

Religious use variance    within the C-200 Zone.

11.  The dimensions of the property are: irregular         containing 593,587

square feet or 13,627 Acres acres, and contain the following structures:

temporary structures related to Lunape Culture

12.  Dimensions or size of proposed building or use:

13.  Setbacks of building(s), structure(s) or use:     Front: 75'     Rear: 75'

     Left Side: 50'     Right Side: 50'

14.  Date property acquired:  July 1995         .  Prevailing zoning at the time of

acquisition:  Unknown

15.  Have there been any previous appeals, requests or applications to this or any other Township Board or a Construction Official involving these premises? Yes  X   No

     If yes, state the nature, date and disposition of said matter and attach copies of any decision, resolutions or approvals:  Site plan application was denied because of use.

16.  What are the exceptional conditions of the property preventing applicant from complying with the Zoning Ordinance requirements?

Not applicable as this relates to 'c' variances.

17.  Supply a statement of facts showing why relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and Zoning Ordinance:
See addendum.

18.  Does applicant or owner own any property which adjoins the premises which are the subject of this application?  No

5

to be complete unless and until all information, submissions, schedules and fees required herein have been submitted.

_____
Applicant

Sworn and subscribed to before me
This 15 day of June, 2017

_____
A Notary Public of New Jersey.
An Attorney at Law of New Jersey   Thomas W. Williams

7

## AFFIDAVIT OF OWNER (IF OTHER THAN APPLICANT)

STATE OF NEW JERSEY)
              } SS
COUNTY OF BERGEN )

_Dwaine C. Perry_ , Of full age, being duly sworn according to law upon his oath, deposes and says that he/she resides of _13 Moulder,_ _Hillburn, NY_

_President of_ and that he/she is the record owner of the premises which are the subject of this application and hereby authorizes _Dwaine C. Perry_ _of the Applicant_ who is (tenant, contract purchaser, other) _President of the Applicant_ to make the within application. Owner further agrees that he/she will be responsible for any fees, costs or escrow amounts due, unpaid and/or delinquent which the applicant fails to pay. Owner further acknowledges that the Municipality may place a lien on the property for unpaid fees, escrows and costs in accordance with the Escrow Ordinance of the Township of Mahwah.

_____
                Owner

Sworn and subscribed to before me
This 12 day of June , 20_17

_____
~~A Notary Public of New Jersey~~
An Attorney at Law of New Jersey

8

# EXHIBIT F

## TWW LAW PROFESSIONAL ASSOCIATION
### THOMAS W. WILLIAMS, ESQ
**220 FRANKLIN TURNPIKE**
**MAHWAH, NEW JERSEY 07430**
Phone: 201-529-4420          Fax 201-529-1351
twwrsq@optonline.net

MEMBER OF NJ & NY BARS

**NEW YORK OFFICE**
16 Chestnut Street
Suffern, New York 10901

August 21, 2017

Mahwah Board of Adjustment
475 Corporate Drive
Mahwah, NJ 07430

      Re:  Ramapough Mountain Indians
          95 Halifax Road, Mahwah, NJ

Dear Sir/Madam:

    Please be advised that the applicant, Ramapough Mountain Indians, hereby withdraws its variance application in this matter.

Very truly yours,

Thomas W. Williams, Esq.

TWW:kr
cc:  Aaron Kleinman, Esq.
    Chief Dwaine Perry

# EXHIBIT G

**RESOLUTION**
**ZONING BOARD OF ADJUSTMENT**
**TOWNSHIP OF MAHWAH**

**DOCKET NO. 1423-17**

**RAMAPOUGH MOUNTAIN INDIANS, INC.**

**USE VARIANCE APPLICATION FOR HOUSE OF WORSHIP –**
**CAMPGROUND USE – PUBLIC ASSEMBLAGE**

**WHEREAS**, the Ramapough Mountain Indians, Inc. (the "Applicant" or "RMI")
filed an application for a use variance to authorize the use of the property commonly
known as 95 Halifax Road, Mahwah, New Jersey (the "Property"), which is formally
known and designated as Block 1, Lot 131 on the Tax Assessment Maps of the Township
of Mahwah (the "Application") for religious worship, campground, and a variety of other
activities; and

WHEREAS, that Applicant did not include a site plan application; and

WHEREAS, the Property is located in the C-200 Conservation District; and

WHEREAS, the Applicant filed the Application on or about June 12, 2017; and

WHEREAS, the Township of Mahwah Administrative Officer, Michael Kelly,
issued a completeness review letter on June 28, 2017 that determined that the Application
was incomplete for the reasons set forth therein; and

WHEREAS, the Applicant has not submitted any additional documents or
information as required by the Administrative Officer; and

WHEREAS, the Ramapo Hunt and Polo Club Association, Inc. (the
"Association") entered an appearance in the use variance application and submitted a
Notice of Appearance and various letters providing a response to the use variance

1

Applicant would pay the attorney's fees incurred by the interested parties, including not only the Board attorney but also an objector; and

WHEREAS, the Board is willing to confirm the withdrawal of the application by this Resolution based upon the following terms and conditions set forth below.

NOW, THEREFORE, BE IT RESOLVED, the Board hereby determines as follows:

1. The Board hereby dismisses the Use Variance Application without prejudice and without costs, except for the costs set forth below.

2. The Applicant shall pay the professional fees incurred by the Board Attorney and Board Engineer for the process and review of the Application, the review and processing of the letters of the Association, and the review and processing of the Motion to Dismiss and the preparation of the within Resolution.

3. Said Board professional fees shall be paid no later than 90 days from the date the amount due is provided to the Board.

4. The Applicant has the right to appear before the Board to dispute or contest any such legal & engineering fees by requesting to hear that issue before the Board, in addition to what rights it has under the MLUL to contest any professional fees of the Board. Be further resolved that should the Applicant file any future applications with the Board which results in withdrawal or lack of prosecution by the applicant and dismissal by the Board, the Applicant shall pay all costs and legal fees of the Association, as well as the Board, and this Resolution shall serve as written notice to the Applicant.

BE IT FURTHER RESOLVED that a copy of this Resolution shall be provided to the Applicants, the Construction Code Officer of the Township of Mahwah, and a notice of this decision of the Board of Adjustment shall be published in the official newspaper of the municipality within ten (10) days of the date hereof and thereafter be published according to law.

3

## MOTION TO TAKE ACTION

DATE: November 1, 2017

MOVED BY: Mr. Dator

SECONDED BY: Mr. Whiteman

AFFIRMATIVE VOTES (5)      NEGATIVE VOTES (__)      ABSTENTIONS (__)

1. Mr. Dator
2. Mr. Kearney
3. Mr. Larson
4. Mr. Whiteman
5. Mr. Rabolli

TOTAL VOTES: (5)

## APPROVAL OF RESOLUTION

MOVED BY: Mr. Whiteman

SECONDED BY: Mr. Kearney

AFFIRMATIVE VOTES (3)      NEGATIVE VOTES ( )      ABSTENTIONS ( )

1. Mr. Kearney
2. Mr. Rabolli
3. Mr. Whiteman

Dated: December 6, 2017

_____
Michael Kelly, Administrative Officer

_____
Charles Rabolli, Chairman

Prepared by: Ben R. Cascio, Esq.

4

# EXHIBIT H



*Township Of Mahwah*

Municipal Offices: 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Property Maintenance x 246

Board of Adjustment x 245

Zoning/Planning Board x 245

September 15, 2017

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,
AND REGULAR MAIL**

Chief Dwaine Perry
Ramapough Mountain Indians, Inc.
189 Stag Hill Road
Mahwah, New Jersey 07430

RE:   95 Halifax Road
Rescinding of Zoning Permit
Block 1, Lot 131
Township of Mahwah
Our File No. MA-40-47

Dear Chief Perry:

The undersigned is the Zoning Officer for the Township of Mahwah (the "Township"). This letter is being sent to you in connection with the above referenced matter. A copy of this letter is also being sent to counsel for the Ramapough Mountain Indians, Inc. ("RMI"), Aaron Kleinbaum, Esq. and Thomas W. Williams, Esq. The purpose of this letter is to advise that Zoning Permit No. 20120010.000 dated January 25, 2012 (the "Permit") and issued by the former Zoning Officer, Gary L. Montroy, for the construction of a longhouse to be used for prayer and community cultural assembly on premises known as 95 Halifax Road, Mahwah, NJ (the "Property") is hereby rescinded for the reasons set forth herein. A copy of said Permit, as well as the permit application submitted by the RMI, are attached to this letter.

A.   **Gary Montroy had no authority to issue the Zoning Permit.**

By way of background, on January 25, 2012, Mr. Montroy, in his then capacity as Zoning Officer, issued said Zoning Permit approving the construction of "building longhouse to be used for prayer and community cultural assembly" on the subject Property. At the time of that application, and at the current time, the subject Property was located in the Township of Mahwah's Conservation (C-200) Zone. Houses of worship were, and still are, not a principal permitted use in the C-200 Zone. Mr. Montroy had no authority to issue a Zoning Permit to permit the use of the Property for prayer and assembly as said use, as aforesaid, is contrary to the Township's Land Development Ordinance (the "Ordinance"). As such, the action taken by Mr. Montroy was void

and is contrary to the Township's Ordinance.  The Township Zoning Board of Adjustment is the sole body to grant a use variance pursuant to N.J.S.A. 40:55D-70d(1) to permit the Property to be used in a manner which is not contemplated or permitted by the Township's Ordinance.

B.    **Site Plan Approval and Other Relief was Required Prior to the Erection of a Longhouse on the Property.**

Furthermore, site plan approval and other relief was required to be obtained by the RMI pursuant to Chapter XXII (Site Plan Review) of the Township's Ordinance. The subject longhouse is a structure pursuant to the Ordinance and the Municipal Land Use Law, which both define a structure as "a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land". In addition, the Township's Ordinance, in part, provides that "no permanent structure or building or any enlargement of same which is used or designed to be used for housing, commerce, industry or public activity shall be located in a floodplain or flood hazard area." In sum, the RMI were obligated to obtain site plan and other approvals from the Township prior to constructing a longhouse on the Property.

C.    **The RMI were Required to Obtain a Building Permit Prior to the Erection of the Longhouse on the Property.**

A Zoning Permit is not the equivalent of a Building Permit. I direct your attention to §24-11.3 of the Township's Zoning Ordinance. No Building Permit was applied for, nor granted by the Township in connection with said longhouse. The RMI were also obligated to, notwithstanding the issuance of the subject Zoning Permit, obtain a Building Permit. I understand that Chief Mann was advised by Mr. Montroy of his obligation to obtain a Building Permit, site plan and all additional approvals required by the Township's Ordinance. The RMI, contrary to the Ordinance, Municipal Land Use Law and Mr. Montroy's advice, failed to apply for a building permit. In addition thereto, an inspection of such longhouse would be required to be conducted by the appropriate Township Official during construction.

D.    **Similar Zoning Application Denied in 2017**

A Zoning Application was submitted on April 6, 2017, see copy attached, for a proposed use of Public Assembly for Religious and Cultural Purposes. This application was denied on April 13, 2017, see copies attached, of Refusal of Permit and supporting letter both dated April 13, 2017.

The Township is entitled and authorized to enforce its Ordinance. For the foregoing reasons, the Zoning Permit dated January 25, 2012 and issued by Gary L. Montroy is hereby rescinded by the undersigned on behalf of the Township of Mahwah. You may appeal the decision of the undersigned in accordance with N.J.S.A. 40:55D-70(a).

Please be guided accordingly.

Very truly yours,

Michael J. Kelly, P.E.
Administrative Officer
Department of Land Use and Property
Maintenance

MJK/mk
Attachments
cc:     Brian M. Chewcaskie, Esq.
        Thomas W. Williams, Esq.
        Aaron Kleinbaum, Esq.

# EXHIBIT I

Aaron Kleinbaum (Attorney ID 002681991)
Raghu Murthy (Attorney ID 006042008)
Eastern Environmental Law Center
50 Park Place, Suite 1025, Newark, NJ 07102
973.424.1166
akleinbaum@easternenvironmental.org

Thomas Williams, Esq. (Attorney ID 009361973)
TWW Law Professional Association
220 Franklin Turnpike, Mahwah, NJ 07430
201.529.4420
twwesq@optonline.net

*Attorneys for Plaintiff, Ramapough Mountain Indians Inc.*

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS INC.<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL KELLY and TOWNSHIP OF MAHWAH<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION · BERGEN COUNTY<br>DOCKET #<br><br>CIVIL ACTION<br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND IN LIEU OF PREROGATIVE WRITS |

Plaintiff, Ramapough Mountain Indians Inc. (the "Ramapoughs"), through counsel and by way of Complaint against Defendants, the Township of Mahwah and Michael Kelly, alleges as follows:

## PREAMBLE

1. This is an action in lieu of prerogative writs pursuant to R. 4:69-1, seeking to invalidate Defendants' illegal attempt in September 2017 to rescind the Ramapoughs' right to use the

1

property in question for prayer and community cultural
assembly.

## THE PROPERTY

2. This action concerns a fourteen-acre property named "Sweet
Water," located at Block 1, Lot 131, 95 Halifax Road in
Mahwah Township. Sweet Water is part of the Ramapoughs'
ancestral land. In the present day, the Ramapoughs re-
acquired title to Sweet Water in July 1995.

## THE PARTIES

3. Plaintiff, Ramapough Mountain Indians Inc., is a nonprofit
organization headquartered at 189 Stag Hill Rd, Mahwah, NJ
07430. This organization's mission is to provide social and
economic services to the people of New Jersey and New York,
especially the Ramapough Mountain Indians. The
Ramapoughs are a sovereign entity, recognized by the State of
New Jersey and the National Congress of American Indians, a
congress of sovereign indigenous nations in the United States.

4. Defendant, the Township of Mahwah, is a municipality lying
within the County of Bergen, with officers located at 475
Corporate Drive in Mahwah.

5. Defendant Mr. Michael J. Kelly, P.E. is the Administrative
Officer in charge of the Township's Department of Land Use

2

and Property Maintenance. That Department is also located at 475 Corporate Drive in Mahwah, and uses P.O. Box 733.

6. The Township of Mahwah and Mr. Kelly are hereinafter referred to collectively as "Defendants."

## JURISDICTION & VENUE

7. This Court has jurisdiction over the Township, as a municipality within Bergen County, New Jersey.

8. This Court has jurisdiction over Mr. Kelly, as an employee of the Township.

9. Venue is proper under R. 4:3-2(a)(1), as this action concerns real property located within Bergen County, New Jersey.

## HISTORY OF THE RAMAPOUGH MOUNTAIN INDIANS IN NEW JERSEY

10. The Ramapoughs are descended from the original people of Manhattan and the Ramapo Valley.

11. The Ramapoughs are one of the only Indian Tribes in the entire country that managed to stay on their ancestral homeland.

12. Three pieces of these ancestral lands hold particular importance to the Ramapoughs. The first is the mouth of the Ramapo and Mahwah Rivers, where the Ramapoughs have welcomed people with shared ceremonies for millennia.

13. The second is the Ramapo Pass, where the Ramapo River passes through the Ramapo Mountains. In the winter of 1799-1780, the Ramapoughs welcomed George Washington to use the Ramapo Pass to shelter five hundred Continental Army soldiers. Since then, the Ramapoughs have been known as Keepers of the Pass.

14. The third is Sweet Water, a sacred site of immense importance to the Ramapoughs. The Ramapoughs have conducted prayer and community cultural assembly for decades, if not centuries. In the Ramapoughs' native language, the word "Ramapo" actually means "sweet water." Sweet Water is located on the west side of the confluence of the Ramapo River and Halifax Creek, 95 Halifax Road in Mahwah.

15. In about 1849, Sweet Water and the lands surrounding it were incorporated into the Township of Mahwah. The Township took its name from the word in the Ramapoughs' native language meaning "meeting place."

16. Over the next 167 years, the Ramapoughs coexisted with the residents and officials of Mahwah Township.

17. In 1979, Assemblyman Walter Kemp and then-Assemblyman W. Cary Edwards introduced an Assembly Concurrent

4

Resolution, to recognize the Ramapough Mountain Indians as an Indian Tribe.

18. The Concurrent Resolution passed the Assembly and Senate unanimously, and was filed with the Secretary of State in January 1980. The Concurrent Resolution states "[t]hat the Ramapough Mountain People of the Ramapough mountains of Bergen and Passaic counties, descendants of the Iroquois and Algonquin nations, are hereby designated by the State of New Jersey as the Ramapough Indians."

19. Attorney General Edwards's intention in introducing the Concurrent Resolution was "to provide the Ramapough tribe with recognition by the State of New Jersey." Attorney General Edwards provided a Certification concerning the Concurrent Resolution in July 2007. Attorney General Edwards further certifies that the assemblymen and Senators that voted for the Concurrent Resolution "clearly understood that the resolution was intended to bestow the Ramapough with official State recognition." Attorney General Edwards recalls media coverage after passage of the Concurrent Resolution, explaining that "the Senate had 'answered' the Ramapough's desire 'for official designation as a tribe...'"

## PRAYER AND COMMUNITY CULTURAL ASSEMBLY
## AT SWEET WATER

20. Elders among the Ramapoughs recall witnessing religious and ceremonial use of Sweet Water and the area surrounding Sweet Water, going back more than five decades.

21. During that time, the Ramapoughs have used Sweet Water for many important religious ceremonies, including the Tobacco Ceremony, the Pipe Ceremony, the Water Ceremonies, sweat lodges, weddings, and scattering ashes of departed tribal members into the Ramapo River.

22. The Ramapoughs conduct religious ceremonies at least twice a month in the warmer months, and slightly less often during the winter. The Ramapoughs schedule regular sweat lodge sessions throughout the year.

23. In the late 1970s, Charles Elmes acquired title to Sweet Water and all the surrounding lands.

24. Soon after the acquisition, Mr. Elmes met with several Ramapoughs, including Ronald Redbone Van Dunk, who was the Chief of the Ramapoughs at that time.[1] Chief Redbone explained to Mr. Elmes that the Ramapoughs had used Sweet Water for prayer, community cultural assembly, hunting, and

---

[1] Chief Redbone passed away in April 2001.

6

fishing for decades, if not centuries. Mr. Elmes allowed the Ramapoughs to continue using Sweet Water.

25. In 1984, the Township adopted a Zoning Map, which designated Sweet Water as a C-80 Conservation Zone.

26. The Ramapoughs continued to openly use the property for prayer and community cultural assembly, in open view of Township officials and police officers.

27. In June 1987, the Township amended the Zoning Ordinance to designate Sweet Water as a C-200 Conservation Zone.

28. Again, the Ramapoughs continued to use the property for prayer and community cultural assembly, in open view of the Township.

29. In July 1995, Mr. Elmes transferred title to Sweet Water to Ramapough Mountain Indians Inc.

30. The Ramapoughs, now as owners of the property, continued to use the property for prayer and community cultural assembly, in open view of the Township.

31. Over ten years ago, Bergen County authorities placed signs on the roads leading to Sweet Water, identifying the property as "Ceremonial" land.

32. In the fall of 2011, the Ramapoughs laid down a few logs in a rectangle at Sweet Water, as symbolic representation of a

Long House. A Long House is a place of worship, similar to a church, synagogue or mosque.

33. In October 2011, Township officials visited Sweet Water and issued a Complaint to the Ramapoughs, alleging that the construction of a Long House required a Zoning Permit.

34. On December 12, 2011, the Ramapoughs submitted an application to the Township for a Zoning Permit. The application stated that the "present use" of Sweet Water at that time was "prayer and community cultural assembly." The application further stated that the Ramapoughs sought Township acknowledgement that the continuation of that use comported with the Zoning Ordinance. Finally, the application sought Township approval to build a Long House at Sweet Water.

35. On January 25, 2012, the Township Zoning Official, Gary Montroy, issued a Zoning Permit to the Ramapoughs. The January 2012 Zoning Permit acknowledged that prayer and community cultural assembly at Sweet Water was permitted under the Zoning Ordinance. The Zoning Permit also approved building and use of a Long House.

36. Subsequent to issuance of the January 2012 Zoning Permit, the Township recommended the dismissal of the October 2011

8

Complaint. In an April 2012 email to the Ramapoughs' attorney, the Township Administrator explained that the issuance of the January 2012 Zoning Permit resolved the violation:

> I have discussed this item with Thomas Mulvey who is the Township Property Maintenance and Zoning Enforcement Officer. Mr. Mulvey issued the complaint in this case. The subject matter of the complaint was performing construction prior to obtaining a zoning permit. Since a zoning permit has been subsequently obtained, Mr. Mulvey believes that compliance with the ordinance requirement has been achieved. Thus, he is recommending to the municipal prosecutor and the Court that the pending complaint be dismissed.

37. In reliance on the Zoning Permit and the dismissal of the October 2011 Complaint, the Ramapoughs continued conducting prayer and community cultural assembly at Sweet Water.

38. In 2013, the Ramapoughs installed several logs vertically in the ground, in a circle, to create a prayer circle. The Ramapoughs placed the remaining logs horizontally between the already-installed vertical logs, using a track excavator.

39. The Township Zoning Inspector, Thomas Mulvey, visited Sweet Water and determined that none of these activities violated the Zoning Ordinance.

9

40. In reliance on Mr. Mulvey's letter, the Ramapoughs continued to use the prayer circle.

41. From that point to December 2016, the Ramapoughs continued to use Sweet Water for prayer and community cultural assembly, in open view of the Township.

## DECEMBER 2016: HARASSMENT BY THE TOWNSHIP BEGINS

42. In December 2016, the Township issued a Complaint to the Ramapoughs, alleging that the Ramapoughs needed a Zoning Permit for its use of Sweet Water: ignoring the fact that the Ramapoughs clearly already held a Zoning Permit allowing prayer and community cultural assembly. The Complaint threatened that if the Ramapoughs continued prayer and community cultural assembly at Sweet Water, they would incur $1,250 in penalties, six months of jail time, and another six months of community service.

43. On January 2017, the Ramapoughs met with the Township to attempt to address the Township's concerns. The Township demanded that the Ramapoughs prepare, at great cost and effort, another Zoning Permit application.

44. On April 6, 2017, the Ramapoughs submitted the Zoning Permit application demanded by the Township.

10

45. On April 13th, the Township denied the Ramapoughs'
application. In direct contradiction to the January 2012
Zoning Permit, the April 13th denial stated that the Zoning
Ordinance did not allow prayer and community cultural
assembly at Sweet Water. The denial gave no explanation of
the contradiction. The denial made a new demand: that the
Ramapoughs submit applications for a Site Plan Approval and
a Use Variance to the Zoning Board.

46. A Use Variance is only necessary for uses that violate the
Zoning Ordinance; therefore the Township's demand for a Use
Variance was in direct contradiction to the Township's
previous acknowledgment, in the January 2012 Zoning
Permit, that the Zoning Ordinance allowed prayer and
community cultural assembly at Sweet Water.

47. Nevertheless, again, at great cost, the Ramapoughs retained a
planner to prepare the documents demanded by the Township,
and submitted them in June 2017. The Ramapoughs also
requested a partial waiver of the associated fees, owing to
Ramapough Mountain Indians Inc.'s status as a nonprofit
religious organization.

48. On June 28, 2017, the Township sent a letter listing the
deficiencies in the application. The Township also denied the

11

Case 2:18-cv-09228-CCC-JBC  Document 71-2  Filed 01/23/19  Page 60 of 166 PageID: 1668

BER-L-007345-17  10/27/2017 7:06:30 PM  Pg 12 of 18 Trans ID: LCV201739427?

Ramapoughs' application for a fee waiver, with no explanation whatsoever.

49. In August 2017, the Ramapo Hunt & Polo Club Association Inc. (the "Polo Club") filed a motion that it would oppose the Use Variance application.

50. On August 22, 2017, Charles Rabolli, Jr., Chairman of the Zoning Board of Adjustment sent the Ramapoughs a letter, scheduling a hearing on the use variance application on September 20th. The letter demanded that the Ramapoughs provide all the documents outstanding from the use variance application, a proposed witness list for the hearing with a proffer of the anticipated testimony, and opposition to the Polo Club's motion, all within twelve business days (by September 10th). The letter finally stated that no extension of that time would be granted.

51. At that point, the Ramapoughs withdrew the application.

52. On September 15, 2017, Township Administrative Officer Michael Kelly issued a letter purporting to "rescind" the January 2012 Zoning Permit.

## COUNT ONE

### (Mr. Kelly's September 15, 2017 is *ultra vires*.)

12

53. Only the Zoning Board of Adjustment has the power to modify or reverse a Zoning Permit. N.J.S.A. 40:55D-70(a) and N.J.S.A. 40:55D-72.

54. "Any power expressly authorized by [the Municipal Land Use Law] to be exercised by" the Zoning Board of Adjustment "shall not be exercised by any other body", including the Administrative Officer: in this case, Mr. Kelly. N.J.S.A. 40:55D-20.

55. Mr. Kelly's illegal attempt to usurp the Board of Adjustment's authority, through the September 15th letter, forced the Ramapoughs to incur the time and expense of bringing this lawsuit.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Declaring Mr. Kelly's September 15, 2017 letter to be null, void, and of no effect;

B. Enjoining Defendants from interfering with the January 2012 Zoning Permit, except through the processes detailed in N.J.S.A. 40:55D-70(a) and -72;

C. Awarding to Plaintiff the costs of suit and attorney's fees; and

D. Such other relief as the Court deems equitable and just.

## COUNT TWO

### (Mr. Kelly's September 15th letter violates the Ramapoughs' Right to Due Process.)

56. The Ramapoughs have a Constitutional right to prior due process before the January 2012 Zoning Permit is rescinded.

57. The Ramapoughs also have a statutory right to prior due process, before the January 2012 Zoning Permit is rescinded. N.J.S.A. 40:55D-10.

58. Defendants' illegal attempt to rescind the January 2012 Zoning Permit violates the Ramapoughs' Constitutional and statutory right to due process, and has forced the Ramapoughs to incur the expenses of bringing this lawsuit.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Declaring Mr. Kelly's September 15, 2017 letter to be null, void, and of no effect;

B. Enjoining Defendants from interfering with the January 2012 Zoning Permit, except through the processes detailed in N.J.S.A. 40:55D-70(a) and -72;

C. Awarding to Plaintiff the costs of suit and attorney's fees; and

D. Such other relief as the Court deems equitable and just.

14

## COUNT THREE

### (Mr. Kelly's September 15th letter is wrong as a matter of law, arbitrary, and capricious.)

59. The January 2012 Zoning Permit was based on a correct decision that the Zoning Ordinance allows the Ramapoughs to conduct prayer and community cultural assembly at Sweet Water.

60. Defendants' arguments to the contrary in the September 2017 letter are wrong as a matter of law, arbitrary, and capricious. Defendants' adoption of these incorrect and illogical arguments has forced the Ramapoughs to incur the time and expense of bringing this lawsuit.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Declaring Mr. Kelly's September 15, 2017 letter to be null, void, and of no effect;

B. Enjoining Defendants from interfering with the January 2012 Zoning Permit, except through the processes detailed in N.J.S.A. 40:55D-70(a) and -72;

C. Awarding to Plaintiff the costs of suit and attorney's fees; and

D. Such other relief as the Court deems equitable and just.

## COUNT FOUR

### (The Township is estopped from interfering with the January 2012 Zoning Permit.)

61. The Ramapoughs have openly conducted prayer and community cultural assembly at Sweet Water for decades, if not centuries.

62. The Township has always been fully aware of the Ramapoughs' use of Sweet Water for prayer and community cultural assembly.

63. Every time Township officials drive to Sweet Water, they pass signs erected by Bergen County marking Sweet Water as "Ceremonial Land."

64. The Township has repeatedly asked the New Jersey Department of Environmental Protection ("NJDEP") whether the Ramapoughs' activities conform to New Jersey environmental law, and NJDEP has always confirmed that they do.

65. The Township's longstanding knowledge of the Ramapoughs' use of Sweet Water for prayer and community cultural assembly constitutes tacit approval.

66. In January 2012, the Township made that approval explicit.

67. The Ramapoughs have relied on the Township's tacit and explicit approval to continue prayer and community cultural assembly at Sweet Water, to incur expenditures on this use, and to invite the Ramapoughs' allies to Sweet Water to join in prayer and community cultural assembly.

68. Under the equitable principle of estoppel, the Township is prohibited from withdrawing its longstanding tacit and explicit approval.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Declaring Mr. Kelly's September 15, 2017 letter to be null, void, and of no effect;

B. Enjoining Defendants from interfering with the January 2012 Zoning Permit, except through the processes detailed in N.J.S.A. 40:55D-70(a) and -72;

C. Awarding to Plaintiff the costs of suit and attorney's fees; and

D. Such other relief as the Court deems equitable and just.

Respectfully submitted,

Date: 10.27.17                          /s/ Raghu Murthy
                                        Aaron Kleinbaum
                                        Raghu Murthy
                                          Eastern Environmental Law
                                        Center
                                        Thomas Williams
                                        *Attorneys for Defendant,*
                                          *Ramapough Mountain*
                                        *Indians Inc.*

# EXHIBIT J

Nylema Nabbie, Esq.
Attorney ID #023341996
Gittleman Muhlstock & Chewcaskie, LLP
2200 Fletcher Avenue
Suite 508
Fort Lee, New Jersey 07024
(201)944-2300
Attorneys for Defendants, Michael Kelly and Township of Mahwah

FILED

APR 2 7 2018

CHARLES E. POWERS, JR., J.S.C.

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL KELLY and TOWNSHIP OF MAHWAH, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY – LAW DIVISION <br><br> DOCKET NO. BER-L-007345-17 <br><br> CIVIL ACTION <br><br> ORDER DISMISSING COMPLAINT |

THIS MATTER having been opened to the Court, the Honorable Charles E. Powers, Jr.,

J.S.C., presiding, upon application by Gittleman, Muhlstock & Chewcaskie (Brian Chewcaskie,

Esq., appearing), attorneys for the Plaintiff, Township of Mahwah and on notice to Aaron

Kleinbaum, Esq. and Thomas W. Williams, Esq., counsel for the Ramapough Mountain Indians,

Inc. ("RMI"), and it appearing that the Defendant, having been provided notice of the within

application, and the Court having read and considered the Certification and Briefs submitted in

support of and in opposition to Plaintiff's application, and good cause having been shown;

IT IS on this ___27___ day of ___April___, 2018

ORDERED as follows:

1.    The subject Complaint is dismissed with prejudice pursuant to R. 4.69-5 of the New

       Jersey Rules

of Court ~~as a result of the Plaintiff's failure to exhaust its administrative remedies~~

~~pursuant to the Municipal Land Use Law, N.J.S.A. 40:55D-1, et seq.~~

_____

Charles E. Powers, Jr., J.S.C.



SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
BERGEN COUNTY, NEW JERSEY
DOCKET NO. BER-L-007345-17
APP. DIV. NO.

RAMAPOUGH MOUNTAIN,                    )
INDIANS, INC.,
                                       )
          Plaintiff,                   )
                                       )         TRANSCRIPT
     vs.                               )             of
                                       )         HEARING ON
MICHAEL KELLY and                      )      MOTION TO DISMISS
TOWNSHIP OF MAHWAH,                    )
                                       )
          Defendants.                  )

                    Place: Bergen County Superior Court
                           Justice Center, 10 Main St.
                           Hackensack, N.J. 07601

               Date:  April 27, 2018

BEFORE:

     HONORABLE CHARLES E. POWERS, JR., J.S.C.

TRANSCRIPT ORDERED BY:

     BRIAN M. CHEWCASKIE, ESQ.
     (Gittleman, Muhlstock & Chewcaskie, L.L.P.)

APPEARANCES:

     RAGHU MURTHY, ESQ.
     (Eastern Environmental Law Center)
     Attorney for the Plaintiff

     BRIAN M. CHEWCASKIE, ESQ.
     (Gittleman, Muhlstock & Chewcaskie, L.L.P.)
     Attorney for the Defendants

                    Transcriber Dolores Hastings, AD/T 417
                    APPEALING TRANSCRIPTS INC.
                    8 Victoria Drive
                    Clark, New Jersey 07066
                    (732) 680-1610 / Fax (732) 680-1615
                    Appealingtrans@gmail.com
                    Digitally Recorded
                    Operator:  Lucila Caraballo

2

I N D E X

                                                    Page(s)

Colloquy                                               3

Argument:

    By Mr. Murthy                                      4

MR. MURTHY:   Moves to Dismiss the Complaint           6

with prejudice

3

1         THE COURT: All right, this R.M.I., Inc.
2 versus Township of Mahwah, Docket 7345-17. Appearances
3 please?
4         MR. MURTHY: Good morning, Your Honor, my
5 name -- good afternoon, my name is Raghu Murthy, I'm
6 here from the Eastern Environmental Law Center
7 representing the Ramapough Mountain Indians.
8         MR. CHEWCASKIE: Good afternoon, Judge, Brian
9 M. Chewcaskie, Gittleman, Muhlstock & Chewcaskie, on
10 behalf of the Township of Mahwah and Michael Kelly.
11         THE COURT: All right, thank you. So this is
12 a motion to dismiss by the Township of Mahwah based on
13 Rule 4:69-5. So I think the -- the position of the
14 Township of Mahwah is fairly straight forward. So, Mr.
15 Murthy, I want you to tell me why a dismissal wouldn't
16 be the appropriate resolution of the motion for
17 whatever reason you want me to consider.
18         MR. MURTHY: Your Honor, before -- before we
19 begin with that can I bring up two quick items?
20         THE COURT: Not if they're not in the
21 motions. We're not going to address things that are
22 not before the Court. Things are brought before the
23 Court by way of motion and response. So that's what I
24 have before me, I'm not going to consider other matters
25 not before the Court.

4

1         MR. MURTHY: Your Honor, they're just
2 housekeeping matters related to this matter.
3         THE COURT: I'm here on the motion.
4         MR. MURTHY: Okay.
5         THE COURT: So that's what I'm here prepared
6 to proceed on and ready to hear.
7         MR. MURTHY: Okay. Your Honor, --
8         MR. SMITH: Your Honor, may I confer with Mr.
9 Murthy for a moment please?
10         THE COURT: Who are you, sir?
11         MR. SMITH: I'm -- my name is Steven Denison
12 Smith, I'm with the Ramapough Mountain (indiscernible)
13 I'm one of their clients. But if I may talk to him for
14 just a moment please?
15         THE COURT: So you want to delay the
16 proceedings to confer with your attorney?
17         MR. SMITH: Just for a minute.
18         THE COURT: Go ahead.
19
20         (PAUSE)
21
22         MR. MURTHY: As Your Honor stated, the
23 Township is making the argument that the Ramapoughs
24 failed to exhaust their administrative remedies by
25 failing to appeal to the Board of Adjustment before

5

1   instituting this in lieu action and they cite <u>Rule</u>
2   4:69-5.
3           MR. SMITH:  Your Honor?
4           THE COURT:  Sir, you're standing.  Why are
5   you standing, sir?
6           MR. SMITH:  Because we would like to withdraw
7   this complaint, we'd like to make a voluntarily
8   dismissal of this complaint.  And that's what I
9   discussed with Mr. Murthy before and that's what he
10  wanted to bring to the Court's attention.
11          THE COURT:  You mean you want to dismiss it?
12          MR. SMITH:  Well, --
13          THE COURT:  It's going to be dismissed with
14  prejudice.
15          MR. SMITH:  We would like to withdraw it.
16          THE COURT:  Well, I'm going to -- well, after
17  a complaint is filed the rules provide that a case may
18  only be withdrawn with the permission of the Court
19  which may impose conditions on the withdrawal.  So if
20  you're planning on withdrawing it and then re-filing it
21  I'm not going to permit that.  If you want to withdraw
22  it, that withdrawal and dismissal is going to be with
23  prejudice.
24          So you want to withdraw it, Mr. Murthy?
25          MR. MURTHY:  Your Honor, we move to withdraw

6

1   it without prejudice.
2           THE COURT:  Well, I won't permit that, so you
3   can either stand here and argue your -- argue your case
4   and we'll hear a response from Mr. Chewcaskie.
5           MR. MURTHY:  Your Honor, I'm going to now
6   argue the case.
7           THE COURT:  Go ahead.  All right, counsel,
8   please confer with your client.  When everyone's ready
9   let me know please?
10          COURT CLERK:  Going off the record.
11
12          (OFF THE RECORD; 1:41:13 to 1:51:36)
13
14          THE COURT:  Yes, counsel?
15          MR. MURTHY:  Your Honor, my client -- I've
16  discussed with Mr. Chewcaskie, we are prepared to
17  accept a dismissal with prejudice without costs.
18          THE COURT:  That being the situation, you
19  have no objection to that resolution, Mr. Chewcaskie?
20          MR. CHEWCASKIE:  No, no objection, Judge.
21  I'll just prepare an order indicating how we -- how we
22  got here for your signature.
23          THE COURT:  That will be fine, I'll consider
24  it.  Any problems, I'll get in touch with counsel.
25          MR. CHEWCASKIE:  All right.  Thank you, Your

7

1  Honor.
2              THE COURT:  Thank you.
3              COURT CLERK:  Off the record.
4
5                  (END OF PROCEEDINGS)
6
                    CERTIFICATION

        I, DOLORES S. HASTINGS, the assigned transcriber,
do hereby certify the foregoing transcript of
proceedings of April 27, 2018, digitally recorded,
index number from 1:37:21 to 1:41:01 and 1:51:39 to
1:52:13, is prepared to the best of my ability and in
full compliance with the current Transcript Format for
Judicial Proceedings and is a true and accurate
compressed transcript of the proceedings as recorded.


/s/ Dolores S. Hastings          May 23, 2018
Dolores S. Hastings AD/T 417
APPEALING TRANSCRIPTS, INC.
CLARK, NEW JERSEY

# EXHIBIT K

Atkinson-Baker Court Reporters
www.depo.com

1                    MAHWAH MUNICIPAL COURT

2

3    _____

4    NEW JERSEY                    )  DOCKET NO. 0233-SC-08491
                                   )
5              PLAINTIFFS,         )
                                   )
6                   v.             )      ┌──────────────────┐
                                   )      │ CERTIFIED COPY   │
7    RAMAPOUGH MOUNTAIN INDIANS    )      └──────────────────┘
                                   )
8              DEFENDANTS.         )
     _____

9

10                    AUDIO TRANSCRIPTION

11         NEW JERSEY V. RAMAPOUGH MOUNTAIN INDIANS

12

13                       COURT DECISION

14                    NOVEMBER 17, 2017

15

16

17   ATKINSON-BAKER, INC.
     COURT REPORTERS
18   (800) 288-3376
     www.depo.com

19

20   TRANSCRIBED BY: MARY HARLOW

21   FILE NO. AB0CB6A

22

23

24

25

                                                              1

```
 1    A P P E A R A N C E S

 2

 3    ROY F. MCGEADY
      JUDGE
 4

 5    UNIDENTIFIED MALE SPEAKERS

 6
      UNIDENTIFIED FEMALE SPEAKERS
 7

 8    CLERK

 9
      JOSEPH P. DEMARCO
10    MAHWAH TOWNSHIP

11
      THOMAS WILLIAMS
12    COUNSEL FOR DEFENDANTS

13
      RAGHU MURPHY
14    EASTERN ENVIRONMENTAL LAW CENTER
      COUNSEL FOR DEFENDANTS
15

16    AARON KLEINBAUM
      EASTERN ENVIRONMENTAL LAW CENTER
17    COUNSEL FOR DEFENDANTS

18
      VALERIA GEORGIA (PHONETIC)
19

20

21

22

23

24

25
```

2

Atkinson-Baker Court Reporters
www.depo.com

```
1                    AUDIO TRANSCRIPTION

2          NEW JERSEY V. RAMAPOUGH MOUNTAIN INDIANS

3                      COURT DECISION

4                    NOVEMBER 17, 2017

5          JUDGE MCGEADY:  Thank you, ladies and

6    gentlemen.  All right.  Good morning --

7          MALE SPEAKER:  Good morning.

8          JUDGE MCGEADY:  -- ladies and gentlemen.

9          MALE SPEAKER:  Good morning, Judge.

10         FEMALE SPEAKER:  Good morning.

11         JUDGE MCGEADY:  This is the --

12         FEMALE SPEAKER:  Judge, I'm so sorry.

13   (unintelligible) --

14         JUDGE MCGEADY:  Okay.

15         FEMALE SPEAKER:  I'm so sorry.

16         JUDGE MCGEADY:  Um-hmm.  I can still wish a

17   good morning to everybody.

18              (unintelligible whispering)

19         JUDGE MCGEADY:  All right.

20         FEMALE SPEAKER:  (unintelligible).

21         JUDGE MCGEADY:  Okay.  All right, apparently we

22   have technical problems, and they're calling IT, so

23   I'm just going to go off the bench until it's

24   corrected.  Sorry.

25              [RECORDING PAUSED]
```

Atkinson-Baker Court Reporters
www.depo.com

```
1              [RECORDING RESUMED]
2              CLERK:  All rise.
3              JUDGE MCGEADY:  Have a seat, and thank you very
4    much.  Okay.  Thank you.  (unintelligible).
5              FEMALE SPEAKER:  (unintelligible)
6              JUDGE MCGEADY:  All right.  And good morning.
7    I understand it's fixed now, so let's proceed.  This
8    is the November 17, 2017 session of the Vicinage 2
9    Court.  I'm Judge Roy McGeady.  If counsel will
10   introduce themselves, please?
11             MR. DEMARCO:  Your Honor, good morning.  Joseph
12   P. DeMarco, on behalf of the Township.
13             JUDGE MCGEADY:  Good morning, Mr. DeMarco.
14             MR. DEMARCO:  Thank you, Judge.
15             MR. WILLIAMS:  Good morning, Your Honor.
16   Thomas Williams on behalf of the defendants --
17             JUDGE MCGEADY:  Good morning --
18             MR. WILLIAMS:  -- and --
19             JUDGE MCGEADY:  -- Mr. Williams.
20             MR. MURPHY:  Good morning, Your Honor.  My
21   name's Raghu Murphy.  I'm here from the Eastern
22   Environmental Law Center on behalf of the defendants.
23             JUDGE MCGEADY:  Good morning, Mr. Murphy.
24             MR. KLEINBAUM:  Good morning.  Also on behalf
25   of defendants, Aaron Kleinbaum from Eastern
```

4

Atkinson-Baker Court Reporters
www.depo.com

1    Environmental Law Center.

2            JUDGE MCGEADY:  Good morning, Mr. Kleinbaum.

3            MS. GEORGIA (phonetic):  Valeria Georgia, from

4    the Law Offices of (unintelligible).

5            JUDGE MCGEADY:  Good morning, Ms. Georgia.  All

6    right.  We have a lot of summonses, a lot of charges,

7    a lot of dates, a lot of issues, a lot of defenses.

8    And the Court intends to address each of them.

9            We have one renewable energy systems charge,

10   summons.  We have three soil movement summonses.  We

11   have 23 summonses that charge a one day violation for

12   failing to get a zoning permit for a structure.

13   Twenty-one of them are for the structure.  One of them

14   alleges a violation by not getting a permit for a

15   structure, or for a use.  Only one uses the term,

16   'use'.  And one specifically alleges that the

17   structure in question is a tipi.  And we have 16

18   summonses for failing to get zoning approval for

19   structures only, and those are each five day

20   summonses, totaling 80 days.  So we have a total of 43

21   summonses, covering 103 days between them.

22           The Court conducted a trial with respect to all

23   the issues of all those charges, and the trial

24   extended over a seven day period, including a pretrial

25   motion day, and the onsite visit by the Court.  The

Atkinson-Baker Court Reporters
www.depo.com

1    Township presented, and accepted - the Court accepted

2    in evidence, 16 exhibits, and the defense presented

3    and offered into evidence five exhibits.  Witnesses

4    for the Township were Thomas Mulvey, a Property

5    Maintenance Inspector, and Michael Kelly, a

6    professional engineer, and Zoning or Administrative

7    Officer for the Township of Mahwah.

8         For the defense, Charles Elmes, a developer,

9    testified; Samantha Fois (phonetic) testified, a

10   friend of the Tribe; Dwaine Perry, Chief of the

11   Ramapough Mountain Indian Tribe, testified.  Stephen

12   Lenardo, a friend of the Tribe, also testified.

13   Roberto Barrera, the International Indian Treaty

14   Council employee, testified.  Karenna Gore, a

15   professor, testified.  And George Williams, not to be

16   confused with Thomas Williams, a professional planner,

17   also testified on behalf of the Tribe.  There was then

18   rebuttal testimony by Michael Kelly.

19        The Court was liberal in allowing defense

20   testimony on the use and the history of Sweetwater,

21   especially when Chief Perry was testifying, probably

22   frustrating Mr. DeMarco, despite the Court's pretrial

23   rulings on various issues, and the hope of the Court

24   was that the Township and its residents would hear the

25   history and, and the culture of the, the Tribe, and it

6

1    might be - help for a better understanding and

2    tolerance of each other.

3            The Court also did an onsite inspection, and

4    having seen a large crowd appear in this Court on the

5    days of trial, realized that there was great interest

6    by both the Tribe, and by the Township residents.  And

7    the Court presumed that on that onsite inspection that

8    some of those people might show up, and the Court was

9    correct.  And the Court hopes that the dialogue might

10   occur between the respective factions, and that it, it

11   also might lead to a greater tolerance and

12   understanding of the culture and the, what the Tribe

13   is doing on the property.  The future will be the jury

14   on that hope.

15           The Court made certain pretrial rulings on the

16   following issues, which the Court reconfirms today, in

17   that they are legal issues, not factual issues that

18   required factual determinations at trial.

19           The first one was that the State of New Jersey

20   recognizes the Ramapough Mountain Indians as a Tribe.

21   However, that does not convey a sovereign nation, or

22   sovereign immunity status to the Tribe, exempting it

23   from compliance with the, the laws of New Jersey, or

24   the laws of the Township of Mahwah.

25           The Court also ruled that the soil movement

7

1    ordinance and the zoning permit ordinances, both

2    making each day a separate violation, did not

3    constitute double jeopardy.  The Court also ruled that

4    the filing of those complaints on special form

5    complaint summonses, as required by the Administrative

6    Office of the Courts, does not fail to allege

7    essential facts to the Tribe, therefore denying them

8    due process.

9         What is available at trial, and continues to be

10   available, are the issues of estoppel, deprivation of

11   the free exercise of religion, and preexisting

12   nonconforming use.  Those remained available

13   throughout the trial.

14        But directing attention first to the three soil

15   movement without a permit summonses - Ordinance, Town

16   Ordinance 28-2.1 says as follows:  No person shall

17   excavate, move, remove, or cause, allow, permit, or

18   suffer to be removed, or move, any soil from, onto,

19   in, or upon any lot, or right of way of the Township

20   of Mahwah, unless or until a soil movement permit

21   therefore shall have been issued, pursuant to this

22   chapter.

23        Summons SC-008491 alleged a soil movement

24   violation for December 13 of 2016.  SC-008494 alleged

25   the same violation for December 19, 2016.  And SC-

8

1    008495 alleged the same violation for December 20th,

2    2016.  Thomas Mulvey testified to observing crushed

3    stone on the property known as 95 Halifax Road in

4    Mahwah, and he also testified to seeing wood chip

5    piles.  He further testified to seeing mulch spread on

6    the property.  He estimated that there were three

7    loads dumped on the property.  He testified that he

8    did not go onto the property to measure the amount of

9    those items, and that he couldn't tell the quantity.

10   He didn't measure the cubic yards, which becomes

11   relevant, because he testified that Ordinance 28-3.11

12   of Township of Mahwah has an exception that you don't

13   need to get a permit, soil movement permit, if less

14   than 20 cubic yards of soil is moved.  So the volume

15   of, of the soil becomes important.  Mr. Kelly, the

16   Engineer and Zoning Officer, testified to observing

17   piles of mulch, and he estimated that a dump truck

18   carries 12 to 14 cubic yards of mulch.  He testified

19   that he estimated that 15 yards of mulch, or wood

20   chips, as he testified, were there, and he also agreed

21   with the 20 cubic yard limitation as to the threshold,

22   as to when a permit becomes necessary.  He said it's

23   cumulative, and the amount is measured over a calendar

24   year.  And he testified that the combination of stone,

25   mulch, or wood chips was 30 cubic yards, exceeding the

Atkinson-Baker Court Reporters
www.depo.com

```
 1    20 cubic yard limitation.
 2          This Town - excuse me - Town Ordinance 28-1
 3    defines soil.  This is a Mahwah Town Ordinance, in the
 4    Mahwah Code.  And it says the following:  Soil shall
 5    mean any earth, sand, clay, loam, gravel, humus, tree
 6    stumps, minerals, mud, silk, ore, muck, stone, rock,
 7    or dirt, and any debris, whether organic or
 8    construction debris, including but not limited to
 9    asphalt, concrete, and macadam.  What it doesn't tell
10    the Court - is wood chips and mulch included in the
11    definition of soil.  There are terms in there that
12    this Court doesn't understand.  I don't know what loam
13    is.  I don't know what humus is.  But there's nothing
14    there that tells this Court that wood chips and mulch
15    is considered to be soil, and therefore needs the soil
16    movement permit.
17          The Court agrees with Mr. Kelly's testimony
18    that any one of those item, or any combination of
19    those items referred to in the ordinance can be lumped
20    together to arrive at the cubic yards of volume.  But
21    the Court is not convinced that it's clear that wood
22    chips or mulch are also included.  I think the same
23    confusion can be attributed to the Tribe - that they
24    wouldn't know, reading that definition of soil, that
25    wood chips and mulch are considered soil and require
```

10

1   the permit.  That being said, and with the testimony

2   of Mr. Kelly that he included the mulch and the wood

3   chips in his estimate of the 30 cubic yards, the Court

4   cannot conclude that there were more than 20 cubic

5   yards of soil, as defined by the Township Ordinance,

6   and therefore as to the three soil complaints, there

7   would be a finding of Not Guilty.

8          On SC-008592, the August 16, 2017 renewable

9   energy system trailer existing on a property without

10  the benefit of a zoning permit - Samantha Fois, and I

11  hope I'm pronouncing it right, testified that she was

12  designated by the, by the Tribe to go to the Mahwah

13  Town Hall, in particular the Zoning Department, and

14  ascertain whether a zoning permit was necessary for

15  the renewable energy system.  She testified that she

16  spoke to a man named Adam, and a woman named Lucy, who

17  advised her that because the structure was not

18  permanent, it did not need a permit.  She relayed that

19  information - she testified she relayed that

20  information to Chief Perry.  She also inquired whether

21  she needed that determination to be reduced to

22  writing, and Adam and Lucy advised her that it did

23  not.

24         During his rebuttal testimony, Mr. Kelly

25  testified that Lucy is an administrative clerk, and

Atkinson-Baker Court Reporters
www.depo.com

1    that Adam is a sub code inspector, and that neither

2    has the authority to make a permit decision, and

3    certainly not on an oral application such as presented

4    by Ms. Fois.  He said that Adam and Lucy have been

5    instructed not to give opinions, and that they should

6    have referred the matter to Mr. Kelly.  As a result,

7    Mr. Kelly produced a letter, T-11 in evidence, from

8    him to Chief Perry, and it was dated August 14 of

9    2017, and it advised Chief Perry that he needed a

10   zoning permit for the renewable energy system -

11   trailer.  The letter indicated that it was mailed

12   certify mail, return receipt requested.  Subsequently,

13   SC-008592 was issued for the zoning permit violation

14   for August 16, 2017, two days after the creation of

15   the letter by Mr. Kelly to Chief Perry, indicating

16   that a permit was necessary.  While the Court accepts

17   that Adam and Lucy did not have the authority, accepts

18   that Mr. Kelly's testimony as credible, Ms. Fois

19   doesn't know that.  It's also questionable whether the

20   August 14, 2017 letter from Mr. Kelly would have

21   reached or been received by Chief Perry by August 16,

22   2017, some two days later, the date of the summons of

23   the alleged violation of the renewable energy system.

24   The Court finds that the defendant Tribe had the right

25   to rely on the information conveyed by Adam and Lucy

1    to Ms. Fois, and as a result, the zoning permit was

2    not obtained.   The corrective measures taken by Mr.

3    Kelly would likely have been received by Chief - would

4    not likely have been received by Chief Perry by August

5    16 of 2017, the date of the alleged violation.   The

6    Court finds that the Township agents, Adam and Lucy,

7    induced the defendant Tribe not to obtain a permit.

8    The Tribe had a right to rely on that information, and

9    until it received a subsequent notice from Mr. Kelly,

10   the Township would be estopped from pursuing a summons

11   as to the renewable energy source, until such time as

12   it can be shown that that August 14, 2017 from Mr.

13   Kelly was received by Chief Perry.   So as to SC-

14   008592, the one and only renewable energy system

15   trailer, zoning permit violation, a Judgment of

16   Acquittal is going to be entered.

17         Our next consideration is that most of the

18   complaints concern a failure to obtain a zoning permit

19   for structures, although one actually says a zoning

20   permit for structures, and for the use of the land.

21   That's 008492.   While there was testimony from Mr.

22   Mulvey and Mr. Kelly about the fact that the public

23   assembly on the premises is a violation of the C-200

24   zone, and the use of the property as a campground is

25   also a violation of the C-200 zone, and that was

13

general testimony, there was no specific testimony from either Mr. Mulvey, or Mr. Kelly as to what specific use of the property occurred on December 13, 2016, the date alleged in 8492, that caused the summons to be issued not only for the structures, but also for the uses of the land. The Court agrees with the Tribe to some extent, that while the Court already ruled that the discovery process provides sufficient information to the Tribe to know what, what structures it's charged with violating, that the one summons alleging a use violation, without any testimony alleging what it is, what it is - what it is charged with, and it's the only summons as to the use of the premises being a violation, the Court cannot find a violation of a use on that date. All the other summonses refer only to structure, as does that summons - it also refers to structures - without a zoning permit. So the Court is going to limit the Township to its proofs on the existence of structures only, including on 8492.

Township Ordinance 22-2 defines structure as follows: Structure shall mean a combination of materials to form a construction for occupancy, use, or ornamentation, whether installed on, above, or below the surface of a parcel of land. I believe Mr.

Atkinson-Baker Court Reporters
www.depo.com

1    Kelly practically has that memorized, and testified to

2    it at trial.  I believe Mr. Williams, the defense

3    planner, also testified to it.  So clearly, we have a

4    definition of what is a structure.

5              The Tribe is - tries to engraft an additional

6    term into that definition, and that additional term is

7    'temporary'.  Many times during the trial, it was

8    argued that because it was temporary, it was therefore

9    not a structure; and yet, that definition does not use

10   the term 'temporary' at all.

11             The Court had to - has to determine whether the

12   various objects that exist on the Sweetwater property,

13   95 Halifax, constitute a structure within the

14   definition.  Much was made of the fact that Chief

15   Perry signed a certification, apparently in

16   conjunction with an Order to Show Cause, and he used

17   the term 'structure' in his certification.  But he

18   testified here in Court that he was using it

19   generically, as opposed to - just as a convenient way

20   of describing the various objects - it's a convenient

21   way to, to describe them, and he didn't it to mean the

22   legal definition.  And the Court finds that to be

23   credible that he, he wasn't admitting that they were

24   structures.  The Court has to make its own

25   determination as to whether they qualified as

1    structures, or not.

2          In determining whether each object is a

3    structure, the Court is relying upon the testimony,

4    also the exhibits, some of which were photographs,

5    also its onsite viewing of the premises.  The Court

6    did not create this definition.  Actually, Mahwah,

7    even though it's in their code, didn't create the

8    definition.  It is exactly the definition set forth in

9    the Municipal Land Use Law, a law that prevails

10   throughout all of New Jersey.  So it's the definition

11   of a structure throughout the whole state of New

12   Jersey, not just Mahwah.

13          Examining the various objects on the, on the

14   property, the Court observed a prayer circle, and was

15   invited into the prayer circle.  My observations were

16   that it's a series of logs in a circular

17   configuration, with a totem pole in the middle.  Each

18   log was vertical, was upright.  Each had a face carved

19   on it on the inside of the circle, with painting on

20   it, and each had a faced carved on, on it on the

21   outside of the circle, and there were small brass

22   decorations attached to the logs.  There was testimony

23   that this is what is left after the removal of the

24   Long House, which previously had a contested zoning

25   permit.  While it was a minimal combination of wood,

16

1   paint, and brass, nevertheless it was a combination of

2   materials for ornamentation, and the Court concludes

3   that it's a structure.

4        The cooking shack, described in various

5   different ways during the testimony, but the Court

6   observed that it was a construction of a platform,

7   with a vertical - with vertical wood struts, holding a

8   roof of plastic, or fiberglass, or some type of metal.

9   It is a construction.  It's a combination of

10  materials, and it was used for storage and cooking,

11  and therefore, the Court concludes that that also

12  constitutes a structure.

13       The tipis were not observed by the Court on the

14  on site visit.  However, the Court has seen

15  photographs of them, and did see the wooden poles that

16  are used to support the tipis, when it conducted its

17  on site visit.  And the Court observed from the

18  photographs that there's canvas wrapped around the

19  wooden poles, and it's used for occupancy, or use, or

20  ornamentation, and the Court concludes that tipis

21  would also, under the definition, constitute

22  structures.

23       The yurt, described by Chief Perry when he was

24  a witness, as a Mongolian tent, and referred to in Mr.

25  Kelly's letter as a canvas cabin.  It's on cinder

17

Atkinson-Baker Court Reporters
www.depo.com

1   blocks, it has wooden stairs, it's a - has a wooden

2   platform, and it has a plastic or canvas exterior, and

3   it has a - an aluminum vent pipe extending through the

4   ceiling of the yurt, and there was a cot inside, and a

5   computer.  The Court concludes that that also is a

6   structure.

7          The sweat lodge - it, it's an igloo-like

8   configuration of flexible wooden branches tied

9   together with string or rope.  And while it wasn't

10  present when the Court conducted its onsite

11  examination, it - there was testimony that it's

12  encased in tarpaulin or canvas when it's in use.  The

13  Court concludes that those are also a combination of

14  materials, and constitutes a structure.

15         In the Court's opinion, none of the other small

16  tents that it observed on the on site visit, or the

17  pop-up Cabela's tent, which was never seen by the

18  Court, either in photograph or in person, can

19  constitute a combination of materials, and therefore

20  the Court does not find that any of those constitute

21  structures.

22         The dates on the summonses on the structure

23  charges, in particular 8492, was for December 13 of

24  2016, and that's the only one that charges both

25  structure and uses, but we've already dealt with the

18

1     uses.  And then 8497 were issued - that, that's a -

2     for an alleged violation on January 2nd of 2017.  And

3     that one is also unique, in that it particularly

4     described the structure in question as a tipi.  Mr.

5     Mulvey testified that as to the 8492, the December 13,

6     2016, he saw tipis, and he saw the wooden structure

7     with a roof, which I conclude is the, the cooking

8     shack, which I've already concluded is a structure -

9     in fact, both are structures, the tipis and the

10    cooking shack - and he testified that they require a

11    permit.  As to the 8497, the January 2nd, 2017, which

12    recites a tipi, Mr. Mulvey testified that he did see a

13    tipi, a structure, on the premises.

14          After these two summonses, the testimony of Mr.

15    Mulvey and Mr. Kelly both was that they gave the Tribe

16    a good faith amnesty, 67-day period to apply for

17    zoning permits.  Initially it was a 60-day period, and

18    then there was an extension of seven days when the

19    permit was not applied for in the 60 days.

20          Then T-9, Mahwah exhibit, a letter from Mr.

21    Kelly to Thomas Williams, as opposed to the planner,

22    Williams - Thomas Williams being one of the attorneys

23    for the Tribe - states that on April 6th of 2017, a

24    zoning permit application had, in fact, been filed,

25    but it was rejected by Mr. Kelly, in that it requested

1    the use for a public assembly, and religious and

2    cultural purposes, and Mr. Kelly concluded that that's

3    inconsistent with the C-200 zone, and therefore,

4    rejected the zoning application.

5            As a result, 825 - I'm sorry, 8525, another

6    summons, was issued on April 27, 2017, through 8541,

7    dated May 19, 2017.  So those were several issues, all

8    issued because the tipis and the cooking shack

9    continued to exist on the property with no zoning

10   permit, per the testimony of Mr. Mulvey.

11           And then 8546, May 22nd, 2017; 8457, May 23rd,

12   2017; 8550, May 24, 2017; and 8551, May 25th, 2017 were

13   issued by Mr. Mulvey, and all were days on which at

14   least some of the structures, namely the tipi and the

15   cooking shack, were present on the property, per Mr.

16   Mulvey's testimony.

17           Mr. Mulvey then testified that a Mahwah judge

18   asked him to start issuing one summons for the whole

19   week, as opposed to an individual summons for each

20   separate day.  As a result, he testified that he

21   issued 8555 for the dates of May 29, 2017 through June

22   2nd, 2017, a five day period, through 8588 for the

23   period August 7, 2017 through August 11, 2017 - again,

24   a five day period, and all the summonses in between

25   were for five day periods - all for the same charge,

20

1    of structures being present with no zoning permit, and

2    Mr. Mulvey's testimony being that both the tipis and

3    the cooking shack existed on all those dates,

4    inclusive.

5          Mr. Mulvey testified that he issued Summons

6    8370 for August 14, 2017 through August 18, 2017, as

7    well as 8749, 8750, 8733, 8734, and 8735 - again, all

8    five day summonses, the last one being 8735 for

9    September 18, 2017 through September 22nd, 2017, again

10   a five day period, the last of the summonses before

11   this Court, again, all for the same structures

12   existing on the property, being tipis, cooking shacks,

13   without a zoning permit, as testified to by Mr.

14   Mulvey.

15         The Tribe in its defense never testified that

16   that was not true.  They never denied that there were

17   the tipi and the cooking shack on the dates that are

18   inclusive.  This is at least a prima facie showing

19   that there an establishment of the charges that there

20   were structures on the property without a zoning

21   permit.  However, there were defenses that were raised

22   by the, the Tribe, and those defenses need to be

23   examined one by one.

24         The first offense was, and, and the Court will

25   acknowledge that the Township and the Tribe both

1    submitted helpful briefs in this most recent week,

2    just before this Court's decision, on trial issues,

3    and, and it was helpful.  And in, in the Tribe's

4    brief, it brought to the Court's attention, a New

5    Jersey Administrative Code Section defining

6    campgrounds.  However, as, as helpful as it was, and

7    as industrious as it was for the Tribe to find that,

8    that issue has become moot because the Court is

9    limiting the Township to that one summons that alleges

10   a use violation, one of which was alleged to be a

11   campground, and the Court has already acquitted on

12   that for other reasons, that there was no testify

13   establishing what the improper use was.  So it's not

14   important at this point, as to what the definition of

15   a campground is.

16        Then there was the November 26, 2013 letter

17   from Mr. Mulvey - my, my 70th birthday.  And that

18   letter said that there are no violations on the

19   property, and the Tribe called that to my attention

20   with great vehemence.  However, reading the letter,

21   it's clear that Mr. Mulvey was called to the property

22   on this occasion concerning the movement of trees and

23   logs, and not the other issues that are before this

24   Court.  So the Court doesn't find that his statement

25   that there were no violations means anything more than

22

1    there were no violations with respect to the movement

2    of trees or logs on that date.

3            T-17, a September 15, 2017 letter from Mr.

4    Kelly rescinding the January 25th, 2012 original zoning

5    permit for the Long House.  The Court has to examine

6    the, the validity and the viability of that

7    rescission.  The Court accepts that Mr. Kelly is the

8    Zoning Officer, and he's the authorized person to

9    issue permits.  And implicit in that would be the

10   right to rescind permits, similar to the New Jersey

11   Motor Vehicle Commission issuing driver's licenses, or

12   the Supreme Court of New Jersey issuing law licenses,

13   or the Medical Examiners issuing medical licenses.

14   Those agencies or entities are the licensing

15   authority, and also have the authority to remove the

16   license, or rescind.  However, to rescind the permit,

17   it would seem to require a compliance with due

18   process.  And just like the Supreme Court, just like

19   the Motor Vehicle Commission, just like the Medical

20   Examiners, licenses are not revoked without a hearing

21   to establish due process, to protect due process

22   rights of the Tribe, as opposed to just a letter from,

23   from the Township.  The Township argued that when Mr.

24   Kelly rejected that second April - I believe it was 6,

25   2017 zoning permit application, that the Tribe did not

23

1    appeal his denial of that.  And I think that

2    emphasizes the need to have had a hearing to rescind

3    that original zoning permit.  The Tribe was not given

4    an opportunity to be heard, present its arguments, and

5    therefore, nothing was preserved for any appeal, which

6    the Township argues should have been done.

7         To the extent that any of the summonses relies

8    exclusively on the Long House without a permit, that

9    would not be a violation, in this Court's opinion.

10   However, it doesn't appear that any of the summonses

11   rely on the, the Long House being the sole structure

12   it violates.

13        The Tribe argues that the zoning ordinance is

14   arbitrary, capricious, discriminatory, and the

15   definition of a structure as set forth in the

16   ordinance is overly broad, and vague.  Those are

17   Constitutional issues, and as set forth in Guy versus

18   Petty, 275 NJ, Super. 536, those are best left to the

19   appellate courts, and rarely to be decided by a trial

20   court, of which this Court is.  And Mr. Williams, the

21   planner, testified that the tipis were an accessory

22   structure to the Long House, which had a permit, a

23   zoning permit.  Chief Perry testified that there were

24   three tipis on the property, and that the last one was

25   taken down in September of 2017.  He testified that

24

1    the tipis were used for classes, and for sleeping, and

2    that as many as 50 people could fit in them.   Township

3    Ordinance 24-6.8A3f says no portion of an accessory

4    structure shall be used for living quarters.   Tipis

5    were used for living quarters, and because as many as

6    50 people can occupy it, it hardly seems to fit, or

7    qualify as an accessory.   Accessories seem to be

8    things like a - as was mentioned during the trial,

9    doghouse; one of the children that live in a primary

10   house puts up a pup tent in the backyard to sleep

11   overnight; a lawnmower shed on the property to store

12   lawnmowers in - those are accessory uses, or accessory

13   structures - not a tipi that can hold 50 people, and

14   that is - has been used for living quarters.

15           The preexisting nonconforming use defense - it

16   has, it has to preexist the date of the zoning law.

17   According to the documents, or the copy of the Code

18   that was submitted to the Court, the zoning law went

19   into effect in 1995, the current zoning law.

20   Coincidentally, that's the same year that Mr. Elmes

21   testified that he deeded the property in question to

22   the Tribe.   He testified that the 14 acres that he

23   deeded to the - to the Tribe, were part of 650 acres

24   owned by three - co-owned by three people.   He said he

25   bought 165 of those acres, including the 14 acres in

1    question, in the 1990s.  He wasn't any more specific
2    than that.  He testified that he allowed the Tribe to
3    conduct pow-wows on the polo, polo field portion of
4    the property, and they did dancing, and they did
5    religious ceremonies there.  Chief Perry testified to
6    seeing his grandmother praying on the property some 48
7    years ago.  Because a preexisting nonconforming use is
8    contrary to the zoning law, it's strictly scrutinized.
9    Township Ordinance 24-9.1 says if it's a lawfully
10   existing use at the time of the passage of the zoning
11   ordinance, it may be continued.  Town Ordinance 24-9.2
12   says, however, even if it is a prior legal preexisting
13   nonconforming use, it cannot be enlarged.  Town
14   Ordinance 24-9.3a says if it's not used for,
15   continually for a one year period, it's considered to
16   be abandoned.
17          The Court had three difficulties with the
18   preexisting nonconforming use defense.  When the April
19   6, 2017 zoning application was denied by Mr. Kelly,
20   because it didn't conform to the C-200 zoning
21   requirements, the Tribe's remedy at that point was to
22   appeal to the Zoning Board of Adjustment that there
23   was, in fact, a, a preexisting nonconforming use, a
24   board that is in the best position to decide, knowing
25   - having its knowledge of the community, whether that

26

```
 1    sounds like an appropriate defense.  The Tribe did not
 2    avail itself of that appeal.  While the Tribe used it
 3    at various times for prayer, and the Court accepts
 4    that, it did not establish that it has been
 5    continually used for prayer during the ownership of
 6    the three unnamed co-owners that Mr. Elmes purchased
 7    from, nor during the ownership of Mr. Elmes.  It was
 8    not established that the religious use was not
 9    abandoned at least for one year.  Lastly, accepting
10    that it was used for religious use, and the Court
11    does, there's a big difference between praying on the
12    property, or conducting religious ceremonies, and
13    creating a structure to do a religious ceremony -
14    creating a church, a cathedral, or even a small
15    structure - is an expansion of a preexisting
16    nonconforming use, and the Court does not see that
17    that is appropriate.
18         The Court does not find that a preexisting
19    nonconforming religious use was established.  Lastly,
20    the defense was of a, a - an inhibition to exercise
21    its freedom of religion, and it asserts the land use
22    by institutionalized persons - the RLUIPA Act, which
23    is a Federal US Code Act - it prevents a substantial
24    land use burden on a religious exercise.
25    Interestingly enough, the Court is called upon to
```

Atkinson-Baker Court Reporters
www.depo.com

1    apply that law, that US Code, in conjunction with the

2    Tribe saying that as an Indian Tribe, that they

3    conduct religious ceremonies on the property.  And

4    yet, the federal government did not recognize the

5    Ramapough Mountain Indians as an indigenous people.

6    There was an application to the Bureau, US Bureau of

7    Indian Affairs which was rejected.  There was a re-

8    application, which was re-rejected.  There was a

9    lawsuit filed in the US District Court in Washington,

10   D.C., and that, that compliant was dismissed by the

11   court.  The dismissal was appealed to the US Circuit

12   Court of Appeals, which upheld the US District Court's

13   dismissal.  And it was appealed to the United States

14   Supreme Court, which refused to grant certiorari,

15   leaving the US District Court's decision intact.  So

16   there is no federal recognition of the Tribe, and yet

17   the Court has accepted that there was a, a State

18   recognition.

19          So the Court's being asked in a State

20   prosecution, in a State court, to apply the US Code

21   section as a defense.  And nevertheless, the Court

22   would conclude that RLUIPA is, is an, an avenue of

23   remedy that is available to the Tribe in the US

24   District Court, but not in a State court.  However,

25   separate and apart from the RLUIPA argument is the

28

Atkinson-Baker Court Reporters
www.depo.com

1    fact that the New Jersey Constitution itself, Article

2    I, paragraph 3, also grants religious freedom to the

3    Tribe, and would give protection to the Tribe for that

4    reason.

5            The problem this Court has is that the Tribe

6    seems to be asserting that defense - that it conducts

7    religious ceremonies on the property, and that

8    therefore, the Township of Mahwah cannot regulate it

9    at all.  Both the Township and the Tribe have

10   submitted case law in their briefs, where conventional

11   religions have been required to submit applications to

12   planning boards, and boards of adjustment for permits,

13   for site plans, for variances.  The Tribe's argument

14   appears to be premature.  It would appear that they

15   need to make a completed variance application to

16   conduct their religion on the property, and if that

17   was rejected by the Board of Adjustment, then perhaps

18   the religious exercise, freedom of religious exercise

19   defense may be relevant.

20           Mr. Kelly testified that there are at least 11

21   other zones within the Township of Mahwah that permit

22   religious worship.  Although the Court accepts that

23   the religious exercise by the Ramapough Mountain

24   Indian Tribe is connected tightly to the conservation

25   and the nature aspect of the property, that perhaps

29

Atkinson-Baker Court Reporters
www.depo.com

1    the property is novel, and maybe the other 11 zones

2    are not appropriate for the Tribe's particular needs,

3    but that's not for this Court to decide, and it's

4    premature.  That - that needs to be argued elsewhere.

5         So the Court does not find that those defenses

6    have been established to the extent that they negate

7    proof beyond a reasonable doubt that the defendants

8    did maintain structures on 95 Halifax Road in Mahwah,

9    without having obtained a zoning permit for each

10   structure the Court has deemed a structure, and the

11   defendant is found guilty on all the summonses

12   alleging structures without a permit, except for the

13   one, 8592, the renewable energy system summons.  The

14   State wish to be heard on the sentence?

15        MR. DEMARCO:  Judge, as far as the State's

16   concerned, the State would seek the, the mandatory

17   maximum penalty in connection with, with all of the,

18   the guilty findings on, on each of the structure

19   violations.

20        JUDGE MCGEADY:  Okay.  Defense wish to be

21   heard?

22        MALE SPEAKER:  Of course, Your Honor, we would

23   take an 180 degree approach, and ask that the minimum

24   be imposed, for all the reasons that were expressed

25   during trial.  This is, I think, a very important case

30

Atkinson-Baker Court Reporters
www.depo.com

1    to this group, and their understanding of the law may

2    not be what most of the people understand this, being

3    in this courtroom, but I believe under the

4    circumstances, they should have the minimum sentence.

5         JUDGE MCGEADY:   Okay.   Well, and I should note

6    for the record, I assume there are members of the

7    Tribe present.   They're certainly - attorneys are

8    here, and they probably already know it, but the Tribe

9    has 20 days from today to appeal this Court's

10   decision, otherwise they lose the right to appeal if

11   20 days go by and they don't.

12        There are 103 days of violations in question.

13   The - the activity was the same for each day.   It

14   wasn't increased, so to speak.   It isn't like the

15   Tribe has been previously convicted and yet

16   obstinately either increased the number of structures,

17   or the size of the structures, or the continuation of

18   the structures.   Until today, there hasn't been any

19   adjudication that those items, those objects, were

20   even structures.   Reasonable minds can differ.   The

21   Township took the position that they were structures,

22   and the Court agreed with it.   The Tribe took the

23   position that they were not structures, and acted

24   accordingly.

25        There was also, the Court accepts that the, the

31

1   Township was - their understanding gave the Tribe the

2   67-day good faith amnesty.  Mr. Kelly sent several

3   letters.  I've found Mr. Kelly to be credible.  He

4   said that Mahwah is not in the business of issuing

5   summonses, that that's not their objective.  Their

6   objective is to have compliance, and hence, that's why

7   they had the 60-day - 67-day amnesty.  They just want

8   people to comply.

9         The Court is of the opinion that the mandatory

10  minimum would be appropriate, because of a lack of

11  aggravating circumstances.  So the Court will impose

12  the minimum, which is, by ordinance, a $100 fine, $33

13  court costs on each of the 103 day, days alleged to be

14  violated, totaling $10,300, with $3,399 court costs,

15  totaling $13,699.00.

16        Wish to be heard on payment, or appeals,

17  request for stay?

18        MALE SPEAKER:  Well, Your Honor, I would have

19  to, of course, confer with my clients to see whether

20  they want to appeal the Court's decision.  I

21  appreciate your reasoned decision, and the time you

22  went - obviously put into it, but I have to discuss it

23  with the client, to see whether or not they're going

24  to appeal.  But if they are going to appeal, I would

25  request, either by motion, or by letter, by, by,

1    whatever the Court requires, to stay the imposition of

2    the sentence pending an appeal.

3              JUDGE MCGEADY:  Wish to be heard, Mr. DeMarco?

4              MR. DEMARCO:  Judge, Township would argue that

5    if, if there was going to be a request for, for a

6    stay, then that would have to be, at, at, at this

7    point, the State would argue that in, in, again, in

8    connection with Your Honor's findings that, that

9    those, those fines be paid immediately.  Okay.

10             JUDGE MCGEADY:  All right.  I, I don't see the

11   harm to the Township.  I'm - I'm going to stay the

12   payment for the 20 days, when we find out if there is

13   an appeal.  If there is an appeal, I will stay the

14   payments throughout the pendency of the appeal, until

15   the first appeal decision is rendered.  If there is no

16   appeal, then automatically 20 days from today, the

17   amount will be due and payable to the Mahwah Municipal

18   Court unless a further application is made to this

19   Court.  All right.  And I - anything else, Mr.

20   DeMarco?

21             MR. DEMARCO:  No, Judge.  Thank you for your

22   time.

23             JUDGE MCGEADY:  Okay.  Mr. Williams, any --

24             MR. WILLIAMS:  Thank you very much, Your Honor.

25             JUDGE MCGEADY:  Thank you very much.  Okay.

1    Court's adjourned.

2             MR. DEMARCO:  Thank you, Your Honor.

3             JUDGE MCGEADY:  I'm going to retain all

4    exhibits for the 20 day period, in case there's an

5    appeal.

6             MR. DEMARCO:  Judge, what about the, the

7    Township Ordinances?  Do you want to keep them – the

8    Township Ordinances?

9             JUDGE MCGEADY:  No, I don't need them anymore.

10   They – Mr. Mulvey, I know, is dying to get them back.

11   He can have them.

12            MR. DEMARCO:  I just don't, I just don't want

13   to forget --

14            JUDGE MCGEADY:  Mr. Kelly --

15            MR. DEMARCO:  -- them that's all.  Thank you,

16   Judge.

17            MALE SPEAKER:  Thank you.  Thanks for your

18   time.  It's a pleasure working with you.

19            MALE SPEAKER:  Thank you, Your Honor.

20            MALE SPEAKER:  Judge, thank you again.

21            JUDGE MCGEADY:  Thanks (unintelligible) good

22   job.

23            (background talking)

24                 (END OF RECORDING)

25

34

TRANSCRIBER'S CERTIFICATE

I, MARY HARLOW, attest that the foregoing proceedings provided to me via audio were transcribed by me to the best of my ability.

I further attest that I am not a relative or employee to any attorney or party nor financially interested in this action.

I declare under penalty of perjury under the laws of the state of ___Virginia___ that the foregoing is true and correct.

Dated this __4ʰ__ day of __November__, 2017.


_____
MARY HARLOW

Atkinson-Baker Court Reporters
www.depo.com

**A**

Aaron 2:16 4:25
abandoned 26:16 27:9
ability 35:7
about 13:22 34:6
above 14:24
AB0CB6A 1:21
accepted 6:1,1 28:17
accepting 27:9
accepts 12:16,17 23:7
  27:3 29:22 31:25
Accessories 25:7
accessory 24:21 25:3,7
  25:12,12
According 25:17
accordingly 31:24
acknowledge 21:25
Acquittal 13:16
acquitted 22:11
acres 25:22,23,25,25
Act 27:22,23
acted 31:23
action 35:10
activity 31:13
actually 13:19 16:6
Adam 11:16,22 12:1,4,17
  12:25 13:6
additional 15:5,6
address 5:8
adjourned 34:1
adjudication 31:19
adjustment 26:22 29:12
  29:17
administrative 6:6 8:5
  11:25 22:5
admitting 15:23
advised 11:17,22 12:9
Affairs 28:7
after 12:14 16:23 19:14
  33:7 34:20
agencies 23:14
agents 13:6
aggravating 32:11
ago 26:7
agreed 9:20 31:22
agrees 10:17 14:6
allege 8:6
alleged 8:23,24 9:1
  12:23 13:5 14:4 19:2
  22:10 32:13
alleges 5:14,16 22:9
alleging 14:11,12 30:12
allow 8:17
allowed 26:2
allowing 6:19
already 14:7 18:25 19:8
  22:11 31:8
although 13:19 29:22
aluminum 18:3
amnesty 19:16 32:2,7
amount 9:8,23 33:17
another 20:5
anymore 34:9
anything 22:25 33:19
apart 28:25
apparently 3:21 15:15

appeal 24:1,5 26:22 27:2
  31:9,10 32:20,24,24
  33:2,13,13,14,15,16
  34:5
appealed 28:11,13
appeals 28:12 32:16
appear 7:4 24:10 29:14
appears 29:14
appellate 24:19
application 12:3 19:24
  20:4 23:25 26:19 28:6
  28:8 29:15 33:18
applications 29:11
applied 19:19
apply 19:16 28:1,20
appreciate 32:21
approach 30:23
appropriate 27:1,17 30:2
  32:10
approval 5:18
April 19:23 20:6 23:24
  26:18
arbitrary 24:14
argue 33:4,7
argued 15:8 23:23 30:4
argues 24:6,13
argument 28:25 29:13
arguments 24:4
around 17:18
arrive 10:20
Article 29:1
ascertain 11:14
asked 20:18 28:19
aspect 29:25
asphalt 10:9
assembly 13:23 20:1
asserting 29:6
asserts 27:21
assume 31:8
ATKINSON-BAKER 1:17
attached 16:22
attention 8:14 22:4,19
attest 35:5,8
attorney 35:9
attorneys 18:22 31:7
attributed 10:23
audio 1:10 3:1 35:6
August 11:8 12:8,14,20
  12:21 13:4,12 20:23,23
  21:6,6
authority 12:2,17 23:15
  23:15
authorized 23:8
automatically 33:16
avail 27:2
available 8:9,10,12 28:23
avenue 28:22

**B**

back 34:10
background 34:23
backyard 25:10
Barrera 6:13
become 22:8
becomes 9:10,15,22
before 21:10 22:2,23
behalf 4:12,16,22,24

6:17
being 11:1 14:14 19:22
  21:1,2,8,12 24:11
  28:19 31:2
believe 14:25 15:2 23:24
  31:3
below 14:25
bench 3:23
benefit 11:10
best 24:18 26:24 35:7
better 7:1
between 5:21 7:10 20:24
  27:11
beyond 30:7
big 27:11
birthday 22:17
blocks 18:1
board 26:22,24 29:17
boards 29:12,12
both 7:6 8:1 18:24 19:9
  19:15 21:2,25 28:9
bought 25:25
branches 18:8
brass 16:21 17:1
brief 22:4
briefs 22:1 29:10
broad 24:16
brought 22:4
burden 27:24
Bureau 28:5,6
business 32:4

**C**

C 2:1
Cabela's 18:17
cabin 17:25
calendar 9:23
called 22:19,21 27:25
calling 3:22
campground 13:24
  22:11,15
campgrounds 22:6
canvas 17:18,25 18:2,12
capricious 24:14
carries 6:18
carved 16:18,20
case 29:10 30:25 34:4
cathedral 27:14
cause 8:17 15:16
ceiling 18:4
Center 2:14,16 4:22 5:1
ceremonies 26:5 27:12
  28:3 29:7
ceremony 27:13
certain 7:15
certainly 12:3 31:7
CERTIFICATE 35:1
certification 15:15,17
certify 12:12
certiorari 28:11
chapter 8:22
charge 5:9,11 20:25
charged 14:10,12
charges 5:6,23 18:23,24
  21:19
Charles 6:8

Chief 6:10,21 11:20 12:8
  12:9,15,21 13:3,4,13
  15:14 17:23 24:23 26:5
children 25:8
chip 9:4
chips 9:20,25 10:10,14
  10:22,25 11:3
church 27:14
cinder 17:25
circle 16:14,15,19,21
Circuit 28:11
circular 16:16
circumstances 31:4
  32:11
classes 25:1
clay 10:5
clear 10:21 22:21
clearly 15:3
clerk 2:8 4:2 11:25
client 32:23
clients 32:19
code 10:4 12:1 16:7 22:5
  25:17 27:23 28:1,20
Coincidentally 25:20
combination 9:24 10:18
  14:22 16:25 17:1,9
  18:13,19
Commission 23:11,19
community 26:25
complaint 8:5
complaints 8:4 11:6
  13:18
completed 29:15
compliance 7:23 23:17
  32:6
compliant 28:10
comply 32:8
computer 18:5
concern 13:18
concerned 30:16
concerning 22:22
conclude 11:4 19:7
  28:22
concluded 19:8 20:2
concludes 17:2,11,20
  18:5,13
concrete 10:9
conduct 26:3 28:3 29:16
conducted 5:22 17:16
  18:10
conducting 27:12
conducts 29:6
confer 32:19
configuration 16:17 18:8
conform 26:20
confused 6:16
confusion 10:23
conjunction 15:16 28:1
connected 29:24
connection 30:17 33:8
conservation 29:24
consideration 13:17
considered 10:15,25
  26:15
constitute 8:3 15:13
  17:21 18:19,20
constitutes 17:12 16:14

**Constitution** 29:1
Constitutional 24:17
construction 10:6 14:23
  17:6,9
contested 16:24
continually 26:15 27:5
continuation 31:17
continued 20:9 26:11
continues 8:9
contrary 26:8
convenient 15:19,20
conventional 29:10
convey 7:21
conveyed 12:25
convicted 31:15
convinced 10:21
cooking 17:4,10 19:7,10
  20:8,15 21:3,12,17
copy 25:17
correct 7:9 35:13
corrected 3:24
corrective 13:2
costs 32:13,14
cot 18:4
Council 6:14
counsel 2:12,14,17 4:9
course 30:22 32:19
court 1:1,12,17 3:3 4:9
  5:8,22,25 6:1,19,23 7:3
  7:4,7,8,9,15,16,25 8:3
  10:10,12,14,17,21 11:3
  12:16,24 13:6 14:6,7
  14:14,18 15:11,18,22
  15:24 16:3,5,14 17:2,5
  17:11,13,14,17,20 18:5
  18:10,13,18,20 21:11
  21:24 22:8,11,24,24
  23:5,7,12,18 24:20,20
  25:18 26:17 27:3,10,16
  27:18,25 28:9,11,12,14
  28:17,20,21,24,24 29:5
  29:22 30:3,5,10 31:22
  31:25 32:9,11,13,14
  33:1,18,19
courtroom 31:3
courts 8:5 24:19
Court's 6:22 18:15 22:2
  22:4 24:9 28:12,15,19
  31:9 32:20 34:1
covering 5:21
co-owned 25:24
co-owners 27:6
create 16:6,7
creating 27:13,14
creation 12:12
credible 12:18 15:23
  32:3
crowd 7:4
crushed 9:2
cubic 9:10,14,18,21,25
  10:1,20 11:3,4
cultural 20:2
cultural 6:25 7:12
cumulative 9:23
current 25:19
C-200 13:23,25 20:3
  26:20

Atkinson-Baker Court Reporters
www.depo.com

**D**

dancing 26:4
date 12:22 13:5 14:4,15 23:2 25:16
dated 12:8 20:7 35:14
dates 5:7 18:22 20:21 21:3,17
day 5:11,19,24,25 8:2 20:20,22,24,25 21:8,10 31:13 32:13 34:4 35:14
days 5:20,21 7:5 12:14 12:22 19:18,19 20:13 31:9,11,12 32:13 33:12 33:16
dealt 18:25
debris 10:7,8
December 8:24,25 9:1 14:3 18:23 19:5
decide 26:24 30:3
decided 24:19
decision 1:12 3:3 12:2 22:2 28:15 31:10 32:20 32:21 33:15
declare 35:11
decorations 16:22
deeded 25:21,23
deemed 30:10
defendant 12:24 13:7 30:11
defendants 1:8 2:12,14 2:17 4:16,22,25 30:7
defense 6:2,8,19 15:2 21:15 25:15 26:18 27:1 27:20 28:21 29:6,19 30:20
defenses 5:7 21:21,22 30:5
defined 11:5
defines 10:3 14:21
defining 22:5
definition 10:11,24 15:4 15:6,9,14,22 16:6,8,8 16:10 17:21 22:14 24:15
degree 30:23
DeMarco 2:9 4:11,12,13 4:14 6:22 30:15 33:3,4 33:20,21 34:2,6,12,15
denial 24:1
denied 21:16 26:19
denying 8:7
Department 11:13
deprivation 8:10
describe 15:21
described 17:4,23 19:4
describing 15:20
designated 11:12
despite 6:22
determination 11:21 15:25
determinations 7:18
determine 15:11
determining 16:2
developer 6:8
dialogue 7:9
differ 31:20
difference 27:11
different 17:5
difficulties 26:17
directing 8:14
dirt 10:7
discovery 14:8
discriminatory 24:14
discuss 32:22
dismissal 28:11,13
dismissed 28:10
District 28:3,12,15,24
DOCKET 1:4
documents 25:17
doing 7:13
done 24:6
double 8:3
doubt 30:7
down 24:25
driver's 23:11
due 8:8 23:17,21,21 33:17
dump 9:17
dumped 9:7
during 11:24 15:7 17:5 25:8 27:5,7 30:25
Dwaine 6:10
dying 34:10
D.C 28:10

**E**

E 2:1,1
each 5:8,19 7:2 8:2 16:2 16:17,18,20 20:19 30:9 30:14 31:13 32:13
earth 10:5
Eastern 2:14,16 4:21,25
effect 25:19
either 14:2 18:18 31:16 32:25
Eimes 6:8 25:20 27:6,7
elsewhere 30:4
emphasizes 24:2
employee 6:14 35:8
encased 18:12
END 34:24
energy 5:9 11:9,15 12:10 12:23 13:11,14 30:13
engineer 6:6 9:16
engraft 15:5
enlarged 26:13
enough 27:25
entered 13:16
entities 23:14
Environmental 2:14,16 4:22 5:1
especially 6:21
essential 8:7
establish 23:21 27:4
established 27:8,19 30:6
establishing 22:13
establishment 21:19
estimate 11:3
estimated 9:6,17,19
estopped 13:10
estoppel 8:10
even 18:7 26:12 27:14 31:20
everybody 3:17
evidence 6:2,3 12:7
exactly 16:8
examination 18:11
examine 23:5
examined 21:23
Examiners 23:13,20
Examining 16:13
excavate 8:17
exceeding 9:25
except 30:12
exception 9:12
exclusively 24:8
excuse 10:2
exempting 7:22
exercise 8:11 27:20,24 29:18,18,23
exhibit 19:20
exhibits 6:2,3 16:4 34:4
exist 15:12 20:9
existed 21:3
existence 14:19
existing 11:9 21:12 26:10
expansion 27:15
expressed 30:24
extended 5:24
extending 18:3
extension 19:18
extent 14:7 24:7 30:6
exterior 18:2

**F**

F 2:3
face 16:18
faced 16:20
facie 21:18
fact 13:22 15:14 19:9,24 26:23 29:1
factions 7:10
facts 8:7
factual 7:17,18
fail 8:6
failing 5:12,18
failure 13:18
faith 19:16 32:2
far 30:15
federal 27:23 28:4,16
FEMALE 2:6 3:10,12,15 3:20 4:5
fiberglass 17:8
field 26:3
FILE 1:21
filed 19:24 28:9
filing 8:4
financially 35:9
find 14:14 18:20 22:7,24 27:18 30:5 33:12
finding 11:7
findings 30:18 33:8
finds 12:24 13:6 15:22
fine 32:12
fines 33:9
first 7:19 8:14 21:24 33:15
fit 25:2,6
five 5:19 6:3 20:22,24,25
21:8,10
fixed 4:7
flexible 18:8
Fois 6:9 11:10 12:4,18 13:1
following 7:16 10:4
follows 8:16 14:22
foregoing 35:5,12
forget 34:13
form 8:4 14:23
forth 16:8 24:15,17
found 30:11 32:3
free 8:11
freedom 27:21 29:2,18
friend 6:10,12
from 4:21,25 5:3 7:23 8:18 12:7,20 13:9,10 13:12,21 14:2 17:17 19:20 22:17 23:3,22,23 27:7 28:25 31:9 33:16
frustrating 6:22
further 9:5 33:18 35:8
future 7:13

**G**

gave 19:15 32:1
general 14:1
generically 15:19
gentlemen 3:6,8
George 6:15
Georgia 2:18 5:3,3,5
getting 5:14
give 12:5 29:3
given 24:3
go 3:23 9:8 11:12 31:11
going 3:23 13:16 14:18 32:23,24 33:5,11 34:3
good 3:6,7,9,10,17 4:6 4:11,13,15,17,20,23,24 5:2,5 19:16 32:2 34:21
Gore 6:14
government 28:4
grandmother 26:6
grant 28:14
grants 29:2
gravel 10:5
great 7:5 22:20
greater 7:11
group 31:1
guilty 11:7 30:11,18
Guy 24:17

**H**

Halifax 9:3 15:13 30:8
Hall 11:13
hardly 25:6
HARLOW 1:20 35:5,18
harm 33:11
having 7:4 26:25 30:9
hear 6:24
heard 24:4 30:14,21 32:16 33:3
hearing 23:20 24:2
help 7:1
helpful 22:1,3,6
hence 32:6
her 11:17,22
him 12:8 20:18
history 6:20,25
hold 25:13
holding 17:7
Honor 4:11,15,20 30:22 32:18 33:24 34:2,19
Honor's 33:8
hope 6:23 7:14 11:11
hopes 7:9
house 16:24 23:5 24:8 24:11,22 25:10
humus 10:5,13

**I**

igloo-like 18:7
immediately 33:9
immunity 7:22
implicit 23:9
important 9:15 22:14 30:25
impose 32:11
imposed 30:24
imposition 33:1
improper 22:13
INC 1:17
included 10:10,22 11:2
including 5:24 10:8 14:20 25:25
inclusive 21:4,18
inconsistent 20:3
increased 31:14,16
Indian 6:11,13 28:2,7 29:24
indians 1:7,11 3:2 7:20 28:5
indicated 12:11
indicating 12:15
indigenous 28:5
individual 20:19
induced 13:7
industrious 22:7
information 11:19,20 12:25 13:8 14:9
inhibition 27:20
initially 18:17
inquired 11:20
inside 16:19 18:4
inspection 7:3,7
inspector 6:5 12:1
installed 14:24
institutionalized 27:22
instructed 12:5
intact 28:15
intends 5:8
interest 7:5
interested 35:9
interestingly 27:25
international 6:13
introduce 4:10
invited 16:15
issue 22:8 23:9
issued 8:21 12:13 14:5 19:1 20:6,8,13,21 21:5
issues 5:7,23 6:23 7:16 7:17,17 8:10 20:7 22:2 22:23 24:17

Atkinson-Baker Court Reporters
www.depo.com

Page 3

issuing 20:18 23:11,12
 23:13 32:4
item 10:18
items 9:9 10:19 31:19

**J**

January 19:2,11 23:4
jeopardy 8:3
Jersey 1:4,11 3:2 7:19
 7:23 16:10,12 22:5
 23:10,12 29:1
job 34:22
Joseph 2:9 4:11
judge 2:3 3:5,8,9,11,12
 3:14,16,19,21 4:3,6,9
 4:13,14,17,19,23 5:2,5
 20:17 30:15,20 31:15
 33:3,4,10,21,23,25
 34:3,6,9,14,16,20,21
Judgment 13:15
June 20:21
jury 7:13
just 3:23 16:19 16:12
 22:2 23:18,18,19,22
 32:7 34:12,12

**K**

Karenna 6:14
keep 34:7
Kelly 6:5,18 9:15 11:2,24
 12:6,7,15,20 13:3,9,13
 13:22 14:2 15:1 19:15
 19:21,25 20:2 23:4,7
 23:24 26:19 29:20 32:2
 32:3 34:14
Kelly's 10:17 12:18
 17:25
Kleinbaum 2:16 4:24,25
 5:2
know 10:12,13,24 12:19
 14:9 31:8 34:10
knowing 26:24
knowledge 26:25
known 9:3

**L**

lack 32:10
ladies 3:5,8
land 13:20 14:6,25 16:9
 27:21,24
large 7:4
last 21:8,10 24:24
Lastly 27:9,19
later 12:22
law 2:14,16 4:22 5:1,4
 16:9,9 23:12 25:16,18
 25:19 26:8 28:1 29:10
 31:1
lawfully 26:9
lawnmower 25:11
lawnmowers 25:12
laws 7:23,24 35:11
lawsuit 28:9
lead 7:11
least 20:14 21:18 27:9
 29:20

leaving 28:15
left 16:23 24:18
legal 7:17 15:22 26:12
Lenardo 6:12
less 9:13
letter 12:7,11,15,20
 17:25 19:20 22:16,18
 22:20 23:3,22 32:25
letters 32:3
let's 4:7
liberal 6:19
license 23:16
licenses 23:11,12,13,20
licensing 23:14
like 23:18,18,19 25:8
 27:1 31:14
likely 13:3,4
limit 14:18
limitation 9:21 10:1
limited 10:8
limiting 22:9
live 25:9
living 25:4,5,14
loads 9:7
loam 10:5,12
lodge 18:7
log 16:18
logs 16:16,22 22:23 23:2
Long 16:24 23:5 24:8,11
 24:22
lose 31:10
lot 5:6,6,7,7,7 8:19
Lucy 11:16,22,25 12:4,17
 12:25 13:6
lumped 10:19

**M**

macadam 10:9
made 7:15 15:14 33:18
Mahwah 1:1 2:10 6:7
 7:24 8:20 9:4,12 10:3,4
 11:12 16:6,12 19:20
 20:17 29:8,21 30:8
 32:4 33:17
mail 12:12
mailed 12:11
maintain 30:8
Maintenance 6:5
make 12:2 15:24 29:15
making 8:2
MALE 2:5 3:7,9 30:22
 32:18 34:17,19,20
man 11:16
mandatory 30:16 32:9
many 16:7 25:2,5
MARY 1:20 35:5,18
materials 14:23 17:2,10
 18:14,19
matter 12:6
maximum 30:17
may 20:7,11,11,12,12,21
 26:11 29:19 31:1
maybe 30:1
McGeady 2:3 3:5,8,11,14
 3:16,19,21 4:3,6,9,13
 4:17,19,23 5:2,5 30:20
 31:5 33:3,10,23,25

34:3,9,14,21
mean 10:5 14:22 15:21
means 22:25
measure 9:8,10
measured 9:23
measures 13:2
medical 23:13,13,19
members 31:6
memorized 15:1
mentioned 26:8
metal 17:8
Michael 6:5,18
middle 16:17
might 7:1,8,9,11
minds 31:20
minerals 10:6
minimal 16:25
minimum 30:23 31:4
 32:10,12
Mongolian 17:24
moot 22:8
more 11:4 22:25 26:1
morning 3:6,7,9,10,17
 4:6,11,13,15,17,20,23
 4:24 5:2,5
most 13:17 22:1 31:2
motion 5:25 32:25
Motor 23:11,19
Mountain 1:7,11 3:2 6:11
 7:20 28:5 29:23
move 8:17,18
moved 9:14
movement 5:10 7:25
 8:15,20,23 9:13 10:16
 22:22 23:1
much 4:4 15:14 33:24,25
muck 10:6
mud 10:6
mulch 9:5,17,18,19,25
 10:10,14,22,25 11:2
Mulvey 6:4 9:2 13:22
 14:2 19:5,12,15 20:10
 20:13,17 21:5,14 22:17
 22:21 34:10
Mulvey's 20:16 21:2
Municipal 1:1 16:9 33:17
Murphy 2:13 4:20,21,23

**N**

N 2:1
named 11:16,16
namely 20:14
name's 4:21
nation 7:21
nature 29:25
necessary 9:22 11:14
 12:16
need 9:13 11:18 21:22
 24:2 29:15 34:9
needed 11:21 12:9
needs 10:15 30:2,4
negate 30:6
neither 12:18
never 18:17 21:15,16
nevertheless 17:1 28:21
New 1:4,11 3:2 7:19,23
 16:10,11 22:4 23:10,12

34:3,9,14,21
29:1
next 13:17
NJ 24:18
nonconforming 8:12
 25:15 26:7,13,18,23
 27:16,19
none 18:15
note 31:5
nothing 10:13 24:5
notice 13:9
novel 30:1
November 1:14 3:4 4:8
 22:16 35:14
number 31:16

**O**

object 16:2
objective 32:5,6
objects 15:12,20 16:13
 31:19
observations 16:15
observed 16:14 17:6,13
 17:17 18:16
observing 9:2,16
obstinately 31:16
obtain 13:7,18
obtained 13:2 30:9
obviously 32:22
occasion 22:22
occupancy 14:23 17:19
occupy 25:6
occur 7:10
occurred 14:3
off 3:23
offense 21:24
offered 6:3
Office 8:6
Officer 6:7 9:16 23:8
Offices 5:4
Okay 3:14,21 4:4 30:20
 31:5 33:9,23,25
one 5:9,11,13,15,16 7:19
 10:18 13:14,19 14:10
 18:24 19:3,22 20:18
 21:8,23,23 22:9,10
 24:24 25:9 26:15 27:9
 30:13
only 5:15,19 13:14 14:5
 14:13,16,20 18:24
onsite 5:25 7:3,7 16:5
 18:10
onto 8:18 9:8
opinion 18:15 24:9 32:9
opinions 12:25
opportunity 24:4
opposed 15:19 19:21
 20:19 23:22
oral 12:3
Order 15:16
ordinance 6:1,15,16 9:11
 10:2,3,19 11:5 14:21
 24:13,16 25:3 26:9,11
 26:11,14 32:12
ordinances 8:1 34:7,8
ore 10:6
organic 10:7
original 23:4 24:3

ornamentation 14:24
 17:2,20
other 7:2 14:15 18:15
 22:12,23 29:21 30:1
otherwise 31:10
out 33:12
outside 16:21
over 5:24 9:3
overly 24:16
overnight 25:11
own 16:24
owned 25:24
ownership 27:5,7

**P**

P 2:1,1,9 4:12
paid 33:9
paint 17:1
painting 16:19
paragraph 29:2
parcel 14:25
part 25:23
particular 11:13 18:23
 30:2
particularly 19:3
party 35:9
passage 26:10
PAUSED 3:25
payable 33:17
payment 32:16 33:12
payments 33:14
penalty 30:17 35:11
pendency 33:14
pending 33:2
people 7:8 25:2,6,13,24
 28:5 31:2 32:8
per 20:10,15
perhaps 29:17,25
period 5:24 19:16,17
 20:22,23,24 21:10
 26:15 34:4
periods 20:25
perjury 35:11
permanent 11:18
permit 5:12,14 8:1,15,17
 8:20 9:13,13,22 10:16
 11:1,10,14,18 12:2,10
 12:13,16 13:1,7,15,18
 13:20 14:18 16:25
 19:11,19,24 20:10 21:1
 21:13,21 23:5,16,25
 24:3,8,22,23 29:21
 30:9,12
permits 19:17 23:9,10
 29:12
Perry 6:10,21 11:20 12:8
 12:9,15,21 13:4,13
 15:15 17:23 24:23 26:5
person 6:16 18:18 23:8
persons 27:22
Petty 24:18
phonetic 2:18 6:3 6:9
photograph 18:18
photographs 16:4 17:15
 17:18
piles 9:5,17
pipe 18:3

Transcription
November 17, 2017

Atkinson-Baker Court Reporters
www.depo.com

PLAINTIFFS 1:5
planner 6:16 15:3 19:21
  24:21
planning 29:12
plans 29:13
plastic 17:8 18:2
please 4:10
pleasure 34:18
point 22:14 26:21 33:7
pole 16:17
poles 17:15,19
polo 26:3,3
pop-up 18:17
portion 25:3 26:3
position 26:24 31:21,23
pow-wows 26:3
practically 15:1
prayer 16:14,15 27:3,5
praying 26:6 27:11
preexist 25:16
preexisting 8:11 25:15
  26:7,12,18,23 27:15,18
premature 29:14 30:7
premises 13:23 14:14
  16:5 19:13
present 18:10 20:15 21:1
  24:4 31:7
presented 6:1,2 12:3
preserved 24:5
presumed 7:7
pretrial 5:24 6:22 7:15
prevails 16:9
prevents 27:23
previously 16:24 31:15
prima 21:18
primary 25:9
prior 26:12
probably 6:21 31:8
problem 29:5
problems 3:22
proceed 4:7
proceedings 35:5
process 8:8 14:8 23:18
  23:21,21
produced 12:7
professional 6:6,16
professor 6:5
pronouncing 11:11
proof 30:7
proofs 14:19
property 6:4 7:13 9:3,6,7
  9:8 11:9 13:24 14:3
  15:12 16:14 20:9,15
  21:12,20 22:19,21
  24:24 25:11,21 26:4,6
  27:12 28:3 29:7,16,25
  30:1
prosecution 28:20
protect 23:21
protection 29:3
provided 35:8
provides 14:8
public 13:22 20:1
pup 25:10
purchased 27:6
purposes 20:2

pursuant 8:21
pursuing 13:10
put 32:22
puts 25:10

Q

qualified 15:25
qualify 25:7
quantity 9:9
quarters 25:4,5,14
question 5:17 19:4 25:21
  26:1 31:12
questionable 12:19

R

R 2:1
Raghu 2:13 4:21
raised 21:21
Ramapough 1:7,11 3:2
  6:11 7:20 28:5 29:23
rarely 24:19
re 28:7
reached 12:21
reading 10:24 22:20
realized 7:5
reason 29:4
reasonable 30:7 31:20
reasoned 32:21
reasons 22:12 30:24
rebuttal 6:18 11:24
receipt 12:12
received 12:21 13:3,4,9
  13:13
recent 22:1
recites 19:12
recognition 28:16,18
recognize 28:4
recognizes 7:20
reconfirms 7:16
record 31:6
RECORDING 3:25 4:1
  34:24
reduced 11:21
refer 14:16
referred 10:19 12:6
  17:24
refers 14:17
refused 28:14
regulate 29:8
rejected 8:11 27:20
  23:24 28:7 29:17
relative 35:8
relayed 11:18,19
relevant 9:11 29:19
relies 24:7
religion 8:11 27:21 29:16
religions 29:11
religious 26:1 26:5 27:8
  27:10,12,13,19,24 28:3
  29:2,7,18,18,22,23
rely 12:25 13:8 24:11
relying 16:3
remained 8:12
remedy 28:21 28:23
removal 16:23
remove 8:17 23:15

removed 8:18
rendered 33:15
renewable 5:9 11:8,16
  12:10,23 13:11,14
  30:13
REPORTERS 1:17
request 32:17,25 33:5
requested 12:12 19:25
require 10:25 19:10
  23:17
required 7:18 8:5 29:11
requirements 26:21
requires 33:1
rescind 23:10,16,16 24:2
rescinding 23:4
rescission 23:7
residents 6:24 7:6
respect 5:22 23:1
respective 7:10
result 12:6 13:1 20:5,20
RESUMED 4:1
retain 34:3
return 12:12
revoked 23:20
re-rejected 28:8
right 3:6,19,21 4:6 5:6
  8:19 11:11 12:24 13:8
  23:10 31:10 33:10,19
rights 23:22
rise 4:2
RLUIPA 27:22 28:22,25
Read 9:3 30:8
Roberto 6:13
rock 10:6
roof 17:8 19:7
rope 18:9
Roy 2:3 4:9
ruled 7:25 8:3 14:8
rulings 6:23 7:15

S

S 2:1
Samantha 6:9 11:10
same 8:25 9:1 10:22
  20:25 21:11 25:20
  31:13
sand 10:5
saw 16:5,6
saying 28:2
says 8:16 10:4 13:19
  25:3 26:9,12,14
SC 8:25 13:13
scrutinized 26:8
SC-008491 8:23
SC-008494 8:24
SC-008592 11:6 12:13
seat 4:3
second 23:24
section 22:5 28:21
see 17:15 19:12 27:16
  32:19,23 33:10
seeing 9:4,5 26:6
seek 30:16
seem 23:17 25:7
seems 25:6 29:6
seen 7:4 17:14 18:17
sent 32:2

sentence 30:14 31:4
  33:2
separate 8:2 20:20 28:25
September 21:9,9 23:3
  24:25
series 16:16
session 4:8
set 16:8 24:15,17
seven 5:24 19:18
several 20:7 32:2
shack 17:14 19:8,10 20:8
  20:15 21:3,17
shacks 21:12
shed 25:11
show 7:8 15:16
showing 21:18
shown 13:12
signed 15:15
silk 10:6
similar 23:10
site 17:14,17 18:16 29:13
size 31:17
sleep 25:10
sleeping 25:1
small 16:21 18:15 27:14
soil 5:10 7:25 8:14,18,20
  8:23 9:13,14,15 10:3,4
  10:11,15,15,24,25 11:5
  11:6
sole 24:11
some 7:8 12:22 14:7
  16:4 17:8 20:14 26:6
sorry 3:12,15,24 20:5
sounds 27:1
source 13:11
sovereign 7:21,22
speak 31:14
SPEAKER 3:7,9,10,12,15
  3:20 4:5 30:22 32:18
  34:17,19,20
SPEAKERS 2:5,6
special 8:4
specific 14:1,3 26:1
specifically 5:16
spoke 11:16
spread 9:5
stairs 18:1
start 20:18
state 7:19 16:11 28:17
  28:19,20,24 30:14,16
  33:7 35:12
statement 22:24
states 19:23 28:13
State's 30:15
status 7:22
stay 32:17 33:1,6,11,13
Stephen 6:11
still 3:16
stone 9:3,24 10:6
storage 17:10
store 25:11
strictly 26:8
string 18:9
structure 5:12,13,15,17
  11:17 14:16,21,22 15:4
  15:9,13,17 16:3,11
  17:3,12 18:6,14,22,25

19:4,6,8,13 24:11,15
  24:22 25:4 27:17,13,15
  30:10,10,18
structures 5:19 13:19,20
  14:5,9,17,19 15:24
  16:1 17:22 18:21 19:9
  20:14 21:1,11,20 25:13
  30:8,12 31:16,17,18,20
  31:21,23
struts 17:7
stumps 10:6
sub 12:1
submit 29:11
submitted 22:1 25:18
  29:10
subsequent 13:9
Subsequently 32:12
substantial 27:23
suffer 8:18
sufficient 14:8
summons 5:10 8:23
  12:23 13:10 14:5,10,13
  14:17 20:6,18,19 21:5
  22:9 30:13
summonses 5:6,10,11
  5:18,20,21 8:5,15
  14:18 18:22 19:14
  20:24 21:8,10 24:7,10
  30:11 32:5
Super 24:18
support 17:16
Supreme 23:12,18 28:14
surface 14:25
swest 18:7
Sweetwater 6:20 15:12
system 11:9,15 12:10,23
  13:14 30:13
systems 5:9

T

take 30:23
taken 13:2 24:25
talking 34:23
tarpaulin 18:12
technical 3:22
tell 9:6 10:9
tells 10:14
temporary 15:7,8,10
tent 17:24 18:17 25:10
tents 18:16
term 5:15 15:6,6,10,17
terms 10:11
testified 6:9,9,11,12,14
  6:15,17 9:2,4,5,7,11,16
  9:18,20,24 11:11,15,19
  19:10,12 20:17,20 21:5
  21:13,15 24:21,23,25
  25:21,22 26:2,5 29:20
testify 22:12
testifying 6:21
testimony 6:18,20 10:17
  11:1,24 12:18 13:21
  14:1,1,11 16:3,22 17:5
  18:11 19:14 20:10,16
  21:2
thank 3:5 4:3,4,14 33:21

Transcription
November 17, 2017

Atkinson-Baker Court Reporters
www.depo.com

33:24,25 34:2,15,17,19
34:20
Thanks 34:17,21
their 16:7 29:10,16 31:1
32:1,5,5
themselves 4:10
things 25:8
think 10:22 24:1 30:25
Thomas 2:11 4:16 6:4,16
9:2 18:21,22
though 16:7
three 5:10 8:14 9:6 11:6
24:24 25:24,24 26:17
27:6
threshold 9:21
through 18:3 20:6,21,22
20:23 21:6,9
throughout 8:13 16:10
16:11 33:14
tied 16:8
tightly 29:24
time 13:11 26:10 32:21
33:22 34:18
times 15:7 27:3
tip! 5:17 19:4,12,13
20:14 21:17 25:13
tipis 17:13,16,20 19:6,9
20:8 21:2,12 24:21,24
25:1,4
today 7:16 31:9,18 33:16
together 10:20 18:9
tolerance 7:2,11
total 5:23
totaling 5:20 32:14,15
totem 16:17
Town 8:15 10:2,2,3
11:13 26:11,13
Township 2:10 4:12 6:1
6:4,7,24 7:8,24 8:19
9:12 11:5 13:5,10
14:19,21 21:25 22:9
23:23,23 24:6 25:2
26:9 29:8,9,21 31:21
32:1 33:4,11 34:7,8
trailer 11:9 12:11 13:15
transcribed 1:20 35:6
TRANSCRIBER'S 35:1
TRANSCRIPTION 1:10
3:1
Treaty 6:13
tree 10:5
trees 22:22 23:2
trial 5:22,23 7:5,18 8:9
8:13 15:2,7 22:2 24:19
25:8 30:25
Tribe 6:10,11,12,17,25
7:6,12,20,22 8:7 10:23
11:12 12:24 13:7,8
14:7,9 15:5 19:15,23
21:15,22,25 22:7,19
23:22,25 24:3,13 25:22
25:23 26:2 27:1,2 28:2
28:2,16,23 29:3,3,5,9
29:24 31:7,8,15,22
32:1
Tribe's 22:3 26:21 29:13
30:2

tries 15:5
truck 9:17
true 21:16 35:12
Twenty-one 5:13
two 12:14,22 19:14
type 17:8
T-11 12:7
T-17 23:3
T-9 19:20

U
Um-hmm 3:16
under 17:21 31:3 35:11
35:11
understand 4:7 10:12
31:2
understanding 7:1,12
31:1 32:1
UNIDENTIFIED 2:5,6
unintelligible 3:13,18,20
4:4,5 5:4 34:21
unique 19:3
United 28:13
unless 8:20 33:18
unnamed 27:6
until 3:23 8:20 13:9,11
31:18 33:14
upheld 28:12
upright 16:18
use 5:15,16 6:20 8:12
13:20,24 14:3,11,13,15
14:23 15:9 16:9 17:19
18:12 20:1 22:10,13
25:15 26:7,10,13,18,23
27:8,10,16,19,21,24
used 15:16 17:10,16,19
25:1,4,5,14 26:14 27:2
27:5,10
uses 5:15 14:6 18:25
19:1 25:12
using 15:18

V
v 1:6,11 3:2
vague 24:16
Valeria 2:18 5:3
validity 23:6
variance 29:15
variances 29:13
various 6:23 16:12,20
16:13 17:4 27:3
vehemence 22:20
Vehicle 23:11,19
vent 18:3
versus 24:17
vertical 16:16 17:7,7
very 4:3 30:25 33:24,25
via 35:6
viability 23:6
Vicinage 4:8
viewing 16:5
violated 32:14
violates 24:12
violating 14:10
violation 5:11,14 8:2,24
8:25 9:1 12:13,23 13:5
13:15,23,25 14:11,14

14:15 19:2 22:10 24:9
violations 22:18,25 23:1
30:19 31:12
Virginia 35:12
visit 5:25 17:14,17 18:16
volume 9:14 10:20

W
want 32:7,20 34:7,12
Washington 28:9
wasn't 15:23 18:9 26:1
31:14
way 8:19 15:19,21
ways 17:5
week 20:19 22:1
well 21:7 31:5 32:18
went 25:18 32:22
were 6:4 9:6,20 11:4
15:23 16:4,15,21 17:13
19:1 20:7,12,13,15,25
21:16,20,21,21 22:25
23:1 24:21,23 25:1,5
25:23 30:24 31:19,21
31:23 35:6
we've 18:25
while 12:16 13:21 14:7
16:25 18:9 27:2
whispering 3:18
whole 16:11 20:18
Williams 2:11 4:15,16,18
4:19 6:15,16 15:2
19:21,22,22 24:20
33:23,24
wish 3:16 30:14,20 32:16
33:3
witness 17:24
Witnesses 6:3
woman 11:16
wood 9:4,19,25 10:10,14
10:21,25 11:2 16:25
17:7
wooden 17:15,19 18:1,1
18:8 19:6
working 34:18
worship 29:22
wouldn't 10:24
wrapped 17:16
writing 11:22
www.depo.com 1:18

Y
yard 9:21 10:1
yards 9:10,14,18,19,25
10:20 11:3,5
year 9:24 25:20 26:15
27:9
years 26:7
yurt 17:23 18:4

Z
zone 13:24,25 20:3
zones 29:21 30:1
zoning 5:12,18 6:6 8:1
9:16 11:10,13,14 12:10
12:13 13:1,15,18,19
14:18 16:24 19:17,24

20:4,9 21:1,13,20 23:4
23:8,25 24:3,13,23
25:16,18,19 26:8,10,19
26:20,22 30:9

$
$10,300 32:14
$100 32:12
$13,699.00 32:15
$3,399 32:14
$33 32:12

0
008492 13:21
008495 9:1
008592 13:14
0233-SC-08491 1:4

1
103 5:21 31:12 32:13
11 20:23 29:20 30:1
12 9:18
13 8:24 14:3 18:23 19:5
14 9:18 12:8,20 13:12
21:6 25:22,25
15 9:19 23:3
16 5:17 6:2 11:8 12:14,21
13:5
165 25:25
17 1:14 3:4 4:8
18 21:6,9
180 30:23
19 8:25 20:7
1990s 26:1
1995 25:19

2
24:8
2nd 19:2,11 20:22
20 9:14,21 10:1 11:4 31:9
31:11 33:12,16 34:4
20th 9:1
2012 23:4
2013 22:16
2016 8:24,25 9:2 14:4
18:24 19:6
2017 1:14 3:4 4:8 11:8
12:9,14,20,22 13:5,12
19:2,11,23 20:6,7,11
20:12,12,12,21,22,23
20:23 21:6,6,9,9 23:3
23:25 24:25 26:19
35:14
22nd 20:11 21:9
22-2 14:21
23 5:11
23rd 20:11
24 20:12
24-6.8A3f 25:3
24-9.1 26:9
24-9.2 26:11
24-9.3a 26:14
25th 20:12 23:4
26 22:16
27 20:6
275 24:18

28-1 10:2
28-2.1 8:16
28-3.11 9:11
288-3376 1:18
29 20:21

3
3 29:2
30 9:25 11:3

4
4th 35:14
43 5:20
48 26:6

5
50 25:2,6,13
536 24:18

6
6 23:24 26:19
6th 19:23
60 19:19
60-day 19:17 32:7
650 25:23
67-day 19:16 32:2,7

7
7 20:23
70th 22:17

8
80 5:20
800 1:18
825 20:5
8370 21:6
8457 20:11
8492 14:4,20 18:23 19:5
8497 19:1,11
8525 20:5
8541 20:6
8546 20:11
8550 20:12
8651 20:12
8655 20:21
8588 20:22
8692 30:13
8733 21:7
8734 21:7
8735 21:7,6
8749 21:7
8750 21:7

9
95 9:3 15:13 30:8

Transcription
November 17, 2017

# EXHIBIT L

*emailed J Lauricki 06/15/17*

# TWW LAW PROFESSIONAL ASSOCIATION
## THOMAS W. WILLIAMS, ESQ
### 220 FRANKLIN TURNPIKE
### MAHWAH, NEW JERSEY 07430
Phone: 201-529-4420                    Fax: 201-529-1351
twwesq@optonline.net

MEMBER OF NJ & NY BARS

                                        NEW YORK OFFICE
                                        16 Chestnut Street
                                        Suffern, New York 10901

June 15, 2017

Superior Court of New Jersey
Bergen County, Law Division
10 Main Street
Hackensack, NJ 07430

      Re:  Township of Mahwah vs. Ramapough Mountain Indians, Inc.
          Docket No.:  BER-L-3189-17

Dear Sir/Madam:

    Enclosed please find an original and two copies of Defendant's Answer to Verified
Complain the above matter.
    Please return one copy to me marked "filed" in the enclosed envelope.
    My account number to charge for the filing fee is:  143536.

                  Very truly yours,

                  *Thomas W. Williams, Esq.*
                  Thomas W. Williams, Esq.

TWW/kr
cc: Brian M. Chewcaskie
    Aaron Kleinbaum, Esq.

Aaron Kleinbaum (Attorney ID 002681991)
Raghu Murthy (Attorney ID 006042008)
Eastern Environmental Law Center
50 Park Place, Suite 1025, Newark, NJ 07102
973.424.1166
akleinbaum@easternenvironmental.org

Thomas Williams, Esq. (Attorney ID 009361973)
220 Franklin Turnpike, Mahwah, NJ 07430
201.529.4420
twwesq@optonline.net

Valeria A. Gheorghiu (Attorney ID 042912007)
Sussman & Associates
P.O. Box 1005, 1 Railroad Avenue, Suite 3, Goshen, NY 10924
845.294.3991
vgheorghiu_sussman1@frontier.com

*Attorneys for Defendants, Ramapough Mountain Indians Inc.*

| TOWNSHIP OF MAHWAH, Plaintiff. vs. RAMAPOUGH MOUNTAIN INDIANS INC., Defendant. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION · BERGEN COUNTY DOCKET # BER-L-3189-17 CIVIL ACTION DEFENDANT'S ANSWER TO VERIFIED COMPLAINT |
|---|---|

Defendant Ramapough Mountain Indians Inc. (the "Tribe"), by way of

answer to the Verified Complaint by Plaintiff, the Township of Mahwah, say:

<u>The Parties</u>

1.      The Tribe admits that the Township, the filer of this action, is a municipal corporation of the State of New Jersey. The remainder of the paragraph sets forth conclusions of law rather than statements of fact, to which no response is warranted. Nevertheless, the Tribe denies that any of its activities at Sweet Water violate the Zoning Ordinance.

2.      The Tribe admits that it owns Sweet Water, the fourteen-acre property located at Block 1, Lot 131, 95 Halifax Road in Mahwah Township.

<u>Factual Background</u>

3.      The Tribe admits that Sweet Water is designated as a C-200 Conservation Zone in the Township's Zoning Ordinance. The remainder of the paragraph sets forth conclusions of law rather than statements of fact, to which no response is warranted. Nevertheless, the Tribe denies that any of its activities at Sweet Water violate the Zoning Ordinance.

4.      The Tribe neither admits nor denies the allegation that the Township received complaints from residents, but leaves the Township to its proofs. The Tribe denies that Sweet Water is a "campground" and denies that any of its activities at Sweet Water violated the Zoning Ordinance or the Flood Hazard Area Control Act.

5.      The Tribe admits that the Township Construction Official visited Sweet Water on November 28, 2016, and issued a Notice of Unsafe Structure. The Tribe denies the allegations in that Notice.

2

6.      The Tribe admits that the Township issued two Summonses to the Tribe on December 13, 2016. The Tribe denies the allegations in those Summonses, and denies that any Tribe action violated the Zoning Ordinance.

7.      The Tribe admits that a Township representative visited Sweet Water on December 20, 2016, and issued a Notice of Violation and Order to Terminate. The Tribe denies the allegations in that document, and denies that any Tribe action violated the Zoning Ordinance.

8.      The Tribe admits that a meeting was held on January 12, 2017 between Township officials and Tribe representatives. The Tribe admits that the Township requested a Zoning and Site Plan, both of which have since been submitted. The Tribe neither confirms nor denies the remainder of the allegations in this paragraph, but rather leaves the Township to its proofs.

9.      The Tribe admits the allegations in Paragraph 9 of the Complaint.

10.     The Tribe admits that it submitted a Zoning Application on April 6, 2017.

11.     The Tribe admits that its engineer, Houser Engineering LLC, submitted a Site Layout Plan on April 12, 2017. The Tribe denies that any Tribe activities at Sweet Water required Township approval.

12.     The Tribe admits that the Township denied the Tribe's Zoning Application on April 18, 2017. As to the remainder of the paragraph, the Tribe leaves the Township to its proofs.

3

13.    The Tribe denies that it ordered lumber to be delivered to the property. In April 2017, the Mahwah Environmental Volunteer Organization made a gift of lumber to the Tribe. The Tribe denies that its use of the lumber constitutes a "stage/platform.". The Tribe denies that it required any Township approval for this activity. The Tribe admits that the Township sent a letter on April 27, 2017; the Tribe denies the allegations in that letter.

14.    The Tribe admits that it did not appeal the Township's denial of the April 2017 Zoning Application. The Tribe admits that as of the date of the Township's Complaint, the Tribe had not filed a complete Site Plan application.

### First Count

15.    The Tribe repeats, re-alleges and incorporates by reference all of its answers to Paragraphs 1-14 of the Complaint as if fully set forth herein.

16.    The Tribe admits that Paragraph 16 accurately sets forth the first sentence of Section 24-4.3 of the Zoning Ordinance.

17.    The Tribe denies that any Tribe action at Sweet Water violates the Zoning Ordinance.

WHEREFORE, the Tribe seeks judgment in favor of the Tribe, as follows:

   a) Dismissing Plaintiff's Complaint with prejudice; and

   b) Awarding Defendant its costs of suit and attorneys' fees; and

4

c) Issuing a permanent injunction against any further violation notices from the Township, regarding the Tribe's lawful use of Sweet Water; and

d) Such other relief as the Court deems just and equitable.

<u>Second Count</u>

18.     The Tribe repeats, re-alleges and incorporates by reference all of its answers to Paragraphs 1-17 of the Complaint as if fully set forth herein.

19.     The Tribe neither confirms nor denies the allegations in Paragraph 19, but leave the Township to its proofs.

20.     Nevertheless, the Tribe denies that any of its actions at Sweet Water violate the Flood Hazard Area Control Act.

WHEREFORE, the Tribe seeks judgment in favor of the Tribe, as follows:

a) Dismissing Plaintiff's Complaint with prejudice; and

b) Awarding Defendant its costs of suit and attorneys' fees; and

c) Issuing a permanent injunction against any further violation notices from the Township, regarding the Tribe's lawful use of Sweet Water; and

d) Such other relief as the Court deems just and equitable.

<u>FIRST AFFIRMATIVE DEFENSE</u>

The Township's Complaint is barred by the entire controversy doctrine. There is currently a matter pending in Mahwah Township

5

Municipal Court, scheduled for a hearing on [date], consisting of the same parties and same issues.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred by the equitable doctrines of estoppel, waiver and unclean hands. The Tribe has been openly using the land in the region for religious and ceremonial purposes for more than twenty-five years. The Township has long been well aware of the religious use of this property; in fact, over ten years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identify Sweet Water as "Ceremonial" land. The Tribe relied on the explicit approval of Bergen County and the tacit approval of the Township in continuing its religious use of Sweet Water. Therefore, the Township is estopped from asserting its claims.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred by the doctrine of laches. The Tribe has been using the land in the region for religious and ceremonial purposes for at least twenty-five years. Over ten years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identify Sweet Water as "Ceremonial" land. The Township was well aware of the Tribe's religious use of Sweet Water starting, at the latest, with the erection of these signs.

Therefore, the Township's delay in bringing action only now is unexplained, unexcused, and unreasonable.

## FOURTH AFFIRMATIVE DEFENSE

The Township's Complaint is barred, in whole or in part, because the claims asserted therein are made in bad faith solely for the purposes of harassment and religious discrimination in contravention of the Religious Land Use and Institutionalized Persons Act.

## FIFTH AFFIRMATIVE DEFENSE

The Township's Complaint is barred because the actions of the Tribe are consistent with the Municipal Land Use Law, the Township Zoning Ordinance, the Flood Hazard Area Control Act, and all other applicable laws.

## NOTICE OF OTHER ACTIONS AND POTENTIALLY LIABLE PERSONS

The alleged Zoning Ordinance violations are also being litigated in Mahwah Township Municipal Court.

## CERTIFICATION OF COMPLIANCE WITH RULE 1:38-7(c)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

## DESIGNATION OF TRIAL COUNSEL

The Tribe designates Thomas Williams, Esq. as trial counsel in this

matter.

Respectfully submitted,

Date: June 15, 2017

Aaron Kleinbaum
Raghu Murthy
    Eastern Environmental Law Center
Thomas Williams
Valeria Gheorghiu
    Sussman and Associates
*Attorneys for Defendant,*
    *Ramapough Mountain Indians Inc.*

8

**Appendix XII-B1**

| CIVIL CASE INFORMATION STATEMENT (CIS) | |
|---|---|
| **CIVIL CASE INFORMATION STATEMENT (CIS)**<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed** | PAYMENT TYPE: ☐ CK ☐ CG ☐ CA<br>CHG/CK NO.<br>AMOUNT:<br>OVERPAYMENT:<br>BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>See Addendum | TELEPHONE NUMBER | COUNTY OF VENUE<br>Bergen |
|---|---|---|
| FIRM NAME (if applicable) | | DOCKET NUMBER (when available)<br>BER-L-3189-17 |
| OFFICE ADDRESS | | DOCUMENT TYPE<br>Answer to Verified Complaint<br><br>JURY DEMAND  ☑ YES  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Defendant, Ramapough Mountain Indians Inc. | CAPTION<br>Township of Mahwah v. Ramapough Mountain Indians Inc. |
|---|---|
| CASE TYPE NUMBER<br>(See reverse side for listing)<br>999 | HURRICANE SANDY RELATED?<br>☐ YES  ☑ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☑ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☑ YES  ☐ No | | IF YES, LIST DOCKET NUMBERS<br>See Addendum |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ☑ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☑ UNKNOWN |

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☑ Yes  ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE<br>☐ FAMILIAL | ☐ FRIEND/NEIGHBOR<br>☐ BUSINESS | ☑ OTHER (explain)<br>Regulator / Regulated Party |
|---|---|---|---|

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ Yes   ☑ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

Township seeks to curb Defendant's Constitutional rights to religious exercise and public assembly.

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes  ☑ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ Yes  ☑ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:



Side 2

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I – 150 days' discovery**
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
506 PIP COVERAGE
510 UM or UIM CLAIM (coverage issues only)
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (summary action)
999 OTHER (briefly describe nature of action)

The Township alleges violations of the state Flood Hazard Area Control Act and the
Township Zoning Ordinance.

**Track II – 300 days' discovery**
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
621 UM or UIM CLAIM (includes bodily injury)
699 TORT – OTHER

**Track III – 450 days' discovery**
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV – Active Case Management by Individual Judge / 450 days' discovery**
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
620 FALSE CLAIMS ACT
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**
271 ACCUTANE/ISOTRETINOIN
274 RISPERDAL/SEROQUEL/ZYPREXA
281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282 FOSAMAX
285 STRYKER TRIDENT HIP IMPLANTS
286 LEVAQUIN
287 YAZ/YASMIN/OCELLA
289 REGLAN
290 POMPTON LAKES ENVIRONMENTAL LITIGATION
291 PELVIC MESH/GYNECARE

292 PELVIC MESH/BARD
293 DEPUY ASR HIP IMPLANT LITIGATION
295 ALLODERM REGENERATIVE TISSUE MATRIX
296 STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
297 MIRENA CONTRACEPTIVE DEVICE
299 OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
300 TALC-BASED BODY POWDERS
601 ASBESTOS
623 PROPECIA
624 STRYKER LFIT CoCr V40 FEMORAL HEADS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

Please check off each applicable category   ☐ Putative Class Action      ☐ Title 59

# EXHIBIT M



# Township Of Mahwah

Municipal Offices. 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Property Maintenance x 246

Board of Adjustment x 245                                                        Zoning/Planning Board x 245

<u>VIA ELECTRONIC AND
CERTIFIED MAIL
RETURN RECEIPT REQUESTED</u>

January 17, 2018

Chief Dwaine Perry
Ramapo Mountain Indians, Inc.
189 Stag Hill Road
Mahwah, New Jersey 07430

Re:   95 Halifax Road
      **Zoning & Site Plan Violations**
      Block 1, Lot 131
      Township of Mahwah
      Our File No. MA-40-47

Dear Chief Perry:

The Township continues to find and experience numerous violations at the above referenced site with respect to uses of the site, structures at the site, failure to obtain site plan approval and Township floodplain and flood hazard areas requirements.  Please see our findings below.

<u>Uses and Activities</u>

Our site observations on various days, including yesterday, indicate that the property and structures on site are being used for religious uses (house of worship and prayer groups), public assembly uses and as a campground. These uses at the site are being performed without obtaining the necessary Zoning approval from the Township. Please note that Article 24-11.2c Township Code states:

"Zoning Permits shall be secured from the Zoning Officer prior to construction, execution or alteration of any structure or use of a structure or land."

Proper zoning approval has not been received for the uses and the structures utilized for these uses on site.

In addition, Article 24-4.2a of the Township Code states:

"No building or structure shall be erected and no existing building or structure shall be moved, altered, added or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses thereinafter listed as permitted in which building or land is located."

Chief Dwaine Perry
January 17, 2018
Page 2

As you know, the property in question is located in the Township's Conservation (C-200) Zone. As per the Township Code, the following are permitted principal uses in the C-200 Zone:

1. Public open space, including hiking, horseback riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, other similar uses.

2. Agricultural uses, farms, subject to subsection 24-6.1, paragraph a.

3. Single-family detached residences, with 200,000 sq. ft. minimum lots.

4. Municipal facilities.

In addition to the permitted principal uses, a number of accessory and conditional uses are permitted in this zone, none of which would apply to the uses being performed at the site. The uses being performed at the site are clearly not listed as permitted uses in this zone. Article 24-1.3b of the Township Zoning Code states:

"The Zoning Ordinance for the Township shall be viewed as a permissive ordinance. In no instance after the adoption of this Chapter shall any use be permitted in the Township which is not listed as a permitted, accessory or conditional use as specified herein. Any uses not permitted or specified shall be prohibited."

## Structures

Based on numerous site observations, we have found many structures on site. As per Article 24-2.2 of the Township Code and NJSA 40:55D-7, a structure is defined as:

"A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land."

Based on our most recent site observation, performed yesterday, we found the following nine (9) structures on-site:

- Storage shed located in the woods at the west side of the site.
- A canvas cabin located at the north side of the site, to the east of the driveway from Bridal Path Lane.
- Prayer circle consisting of logs stuck in-ground (totem poles), former pieces of longhouse.
- Portable toilet at the north side of the site, to the west of the driveway from Bridal Path Lane.
- Yurt at the north side of the site, to the east of the driveway from Bridal Path Lane.
- Pop-up shed located at the east side of the site.
- A structure made of lumber with roof and floor (known as kitchen structure).
- Sweat lodge at the west side of the site.
- Stone altar located at the south side of the site.

As per Article 24-11.2c of the Township Code, see above, Zoning Permits are required prior to construction, execution or alteration of any structure or use of a structure or land.

Chief Dwaine Perry
January 17, 2018
Page 3

It should be noted that in the decision made in Municipal Court by Judge McGeady on November 17, 2017, the structures placed on site were installed without obtaining prior zoning approval.

## Site Plan Approval

Site plan approval is required and has not been obtained for uses of the property or for the installation of structures.

Article 22-3.2d of the Township Code states:

> "Except as provided in paragraphs b., 1. and 2. herein, all construction, alteration or enlargement of a building, structure or use or change of use or occupancy on or in a nonconforming structure, use or lot shall require site plan approval."

## Township Floodplain and Flood Hazard Areas

The structures used on site for religion uses and public activity are located within the floodplain and flood hazard area of the Ramapo River and are not developed above the maximum flood elevation.

Article 24-6.1h(1) of the Township Code states:

> "No permanent structure or building or any enlargement of same which is used or designated to be used for housing, commerce, industry or public activity shall be located in a floodplain or flood hazard rea. Exceptions to this restriction shall include uses which are developed above the maximum flood elevation with appropriate access provided or as provided in Chapter XVIII of the Code, as may be amended."

In addition, Article 24-6.1h(3) of the Township Code lists the uses permitted within a floodplain or flood hazard area. These uses are:

(a) Agriculture and horticultural uses as defined in this Chapter, except for a farmhouse.

(b) Outdoor recreational facilities, including golf course, ice-skating rinks, swimming pools, parks, playfields and other similar facilities.

(c) Essential services.

Chief Dwaine Perry
January 17, 2018
Page 4

(d) In addition, all requirements of Chapter XVIII of the Code, as may be amended, shall be complied with. In the event that any of these subsections are inconsistent with the Chapter, the more restrictive provisions shall apply.

The uses at the site do not meet these requirements.

Our office is seeking compliance for the continued violations that are present at the site.

Until proper approval is received, all non-permitted uses must cease and structures and materials associated with the site's uses must be removed. Should you fail to have all structures and materials associated with the non-permitted uses removed from the site by the end of business day (4:00 p.m.) on Friday, February 2, 2018, we will recommend that a daily summons be issued for each violation for non-permitted uses occurring on site, for each structure on site and all violations noted above. Since the uses occurring on site are not permitted uses, to obtain proper approval, a completed Board of Adjustment Application will be required to be submitted to the Township's Department of Land Use for Use Variance approval. Also, site plan approval will be required as noted above.

Thank you for your kind attention to this matter. Should you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Geraldine Entrup
Administrative Officer

GE/jg
cc:   The Honorable Mayor and Council
      Township of Mahwah Board of Adjustment
      Quentin Wiest, Township Business Administrator
      Kathrine G. Coviello, Township Clerk
      Tom Mulvey, Property Maintenance
      James N. Batelli, Chief, Mahwah Police Department
      Brian M. Chewcaskie, Esq.
      Michael J. Kelly, P.E., Township Engineer
      Thomas W. Williams, Esq.
180117JGI1.doc

# EXHIBIT N



# Township Of Mahwah

Municipal Offices· 475 Corporate Drive
P.O. Box 733 • Mahwah, NJ 07430
Tel 201-529-5757 • Fax 201-512-0537

Property Maintenance x 246

Board of Adjustment x 245

Zoning/Planning Board x 245

**VIA ELECTRONIC AND**
**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

April 24, 2018

Chief Dwaine Perry
Ramapough Mountain Indians, Inc.
189 Stag Hill Road
Mahwah, New Jersey 07430

Re:   95 Halifax Road
**Zoning & Site Plan Violations**
Block 1, Lot 131
Township of Mahwah

Dear Chief Perry:

As per the Pending Action in the Superior Court of New Jersey, Bergen County, Law Division, the Township of Mahwah (Township) and Ramapough Mountain Indians, Inc. (RMI) were to enter into a Settlement Agreement to resolve disputes relative to the above referenced property by March 28, 2018.

While the Township of Mahwah has acted in good faith to review and approved the proposed Settlement Agreement, the RMI have refused to approve and sign the Agreement.

In my January 17, 2018 report, see copy attached, we noted numerous violations with respect to the Zoning and Site Plan requirements of the Township.  In addition, we noted that until proper approval is received, all non-permitted uses must cease and structures and materials associated with the site's uses were to be removed.  In the event all structures and materials associated with the non-permitted uses were not removed from the site by the end of business day (4:00 p.m.) on Friday, February 2, 2018 we would recommend that daily summonses be issued for each violation for non-permitted uses occurring on site and for each structure on site and all violations noted.  This deadline was not met; however, Summonses were not issued as this matter was in litigation and we were hopeful of an amicable solution.  Now since it is clear that this matter is not being resolved, we are recommending that Summonses be issued.

As of Friday, April 20, 2018, the following violations were found at the above referenced site:

**Uses and Activities**

Our site observations on various days, including Friday, April 20, 2018, indicate that the property and structures on site are being used for religious uses (house of worship and prayer groups) and public assembly uses.  These uses at the site are being performed without obtaining the necessary Zoning approval from the Township.  Article 24-11.2c of the Township Code states:

"Zoning Permits shall be secured from the Zoning Officer prior to construction, execution or alteration of any structure or use of a structure or land.

Chief Dwaine Perry
April 24, 2018
Page 2

Proper zoning approval has not been received for the uses and the structures utilized for these uses on site.

In addition, Article 24-4.2a of the Township Code states:

> "No building or structure shall be erected and no existing building or structure shall be moved, altered, added or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses thereinafter listed as permitted in which building or land is located."

As you know, the property in question is located in the Township's Conservation (C-200) Zone. As per the Township Code, the following are permitted principal uses in the C-200 Zone:

1.   Public open space, including hiking, horseback riding, wildlife preserves, arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishings facilities, other similar uses.

2.   Agricultural uses, farms, subject to subsection 24-6.1, paragraph a.

3.   Single-family detached residences, with 200,000 sq. ft. minimum lots.

4.   Municipal facilities.

In addition to the permitted principal uses, a number of accessory and conditional uses are permitted in this zone, none of which would apply to the uses being performed at the site. The uses being performed at the site are clearly not listed as permitted uses in this zone and as per Article 24-1.3b of the Township Zoning Code.

> "The Zoning Ordinance for the Township shall be viewed as a permissive ordinance. In no instance after the adoption of this Chapter shall any use be permitted in the Township which is not listed as a permitted, accessory or conditional use as specified herein. Any uses not permitted or specified shall be prohibited."

## Structures

Based on numerous site observations, we have found a number of structures on site. As per Article 24-2.2 of the Township Code and NJSA 40:55D-7, a structure is defined as:

> "A combination of materials to form a construction for occupancy, use or ornamental whether installed on, above, or below the surface of a parcel of land."

Based on our most recent site observation performed on Friday, April 20, 2018, we found the following structures on site:

- Prayer circle consisting of logs stuck in-ground (totem poles), former pieces of longhouse.
- Stone altar located at the south side of the site.

As per Article 24-11.2c of the Township Code, see above, Zoning Permits are required prior to construction, execution or alteration of any structure or use of a structure or land.

## Site Plan Approval

Site plan approval has not been obtained for uses of the property, for the installation of structures or for the driveway and access points at the site.

Chief Dwaine Perry
April 24, 2018
Page 3

Article 22-3.2d of the Township Code states:

> "Except as provided in paragraphs b., 1. and 2. herein, all construction, alteration or
> enlargement of a building, structure or use or change of use or occupancy on or in a
> nonconforming structure, use or lot shall require site plan approval."

## Township Floodplain and Flood Hazard Areas

The structures on site are used for religious uses and public activity and are located within the
floodplain and flood hazard area of the Ramapo River and are not developed above the maximum
flood elevation.

Article 24-6.1h(1) of the Township Code states:

> "No permanent structure or building or any enlargement of same which is used or designated to
> be used for housing, commerce, industry or public activity shall be located in a floodplain or
> flood hazard area. Exceptions to this restriction shall include uses which are developed above
> the maximum flood elevation with appropriate access provided or as provided in Chapter XVIII
> of the Code, as may be amended".

In addition, Article 24-6.1h(3) lists the uses permitted within a floodplain or flood hazard area. These
uses are:

(a) Agriculture and horticultural uses as defined in this Chapter, except for a farmhouse.

(b) Outdoor recreational facilities, including golf course, ice-skating rinks, swimming pools, parks,
playfields and other similar facilities.

(c) Essential services.

(d) In addition, all requirements of Chapter XVIII of the Code, as may be amended, shall be
complied with. In the event that any of these subsections are inconsistent with the Chapter, the
more restrictive provisions shall apply.

The uses at the site do not meet these requirements.

Our office is seeking compliance for the continued violations that are present at the site.

Since the uses occurring on site are not permitted uses, to obtain proper approval, a complete Board of
Adjustment Application is required to be submitted to the Township's Department of Land Use for
Use Variance Approval. Also, Site Plan Approval will be required as noted above.

Since proper approval has not been received for the items noted above and since the RMI have not
entered into the Settlement Agreement to amicably resolve these issues, we are issuing Summonses for

Chief Dwaine Perry
April 24, 2018
Page 4

the violations occurring at the site.  These Summonses are retroactive to Thursday, March 29, 2018,
the day after the deadline to enter into a Settlement Agreement.  The Summonses are for each weekday
up to, and including, Friday April 20, 2018 for a total of 17 days.  We will continue to issue daily
Summonses for each violation until this matter is resolved.  Summonses for each of the following
violations will be issued by the Municipal Court:

| | |
|---|---|
| Article 24-11.2c | Failure to Obtain Zoning Permit for Use – Religious Use |
| Article 24-11.2c | Failure to Obtain Zoning Permit for Use – Public Assembly |
| Article 24-11.2c | Failure to Obtain Zoning Permit for Structure – Prayer Circle |
| Article 24-11.2c | Failure to Obtain Zoning Permit for Structure – Stone Altar |
| | |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Use – Religious Use |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Use - Public Assembly |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Structure – Prayer Circle |
| Article 22-3.2d | Failure to Obtain Site Plan Approval for Structure – Stone Altar |
| | |
| Article 24-6.1h(1) | Location of Structure Within Floodplain and Flood Hazard Area Without Proper Approval – Prayer Circle |
| Article 24-6.1h(1) | Location of Structure Within Floodplain and Flood Hazard Area Without Proper Approval – Stone Altar |

Thank you for your kind attention to this matter.  Should you have any questions or comments, please
do not hesitate to contact me.

Very truly yours,

Geraldine Entrup

Geraldine Entrup
Administrative Officer

GE/jg
Enclosure

cc:     The Honorable Mayor and Council
        Township of Mahwah Board of Adjustment
        Quentin Wiest, Township Business Administrator
        Kathrine G. Coviello, Township Clerk
        Tom Mulvey, Property Maintenance
        James N. Batelli, Chief, Mahwah Police Department
        Brian M. Chewcaskie, Esq.
        Michael J. Kelly, P.E., Boswell Engineering
        Thomas W. Williams, Esq.

1801 16JGI1 doc

# EXHIBIT O

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 1 of 10 PageID: 126

| COURT I D | PREFIX | COMPLAINT NUMBER | MAHWAH TOWNSHIP MUNICIPAL COURT |
|---|---|---|---|
| 0233 | SC | | 475 Corporate Drive Mahwah NJ 07430 |

Complaint

The State of New Jersey
vs.

Defendant's Name: First _____ M.I. _____ Last _____

Address _____ City _____

| State | Zip Code | Telephone | SOCIAL SECURITY NUMBER |

| Birth Date: | Mo | Day | Yr. | Sex | Eyes | Height | Hair/Color |
| DL # | | | | | | State | Exp Date |

STATE OF NEW JERSEY
COUNTY OF _____ BERGEN _____ } SS:

Complaining Witness: _____

of _____

Residing at _____

by certification or on oath, says that to the best of his/her knowledge or information and belief, the named defendant on or about the _____

in _____ MAHWAH _____ MUNICIPALITY, County of _____ BERGEN _____ NJ

and commit the following offense

**(DESCRIPTION OF OFFENSE)**

in violation of (one charge only) _____

| LOCATION OF OFFENSE | C | O | D | E | Department Location |

OATH: Subscribed and sworn to before

on this _____ day of _____ , _____

CERTIFICATION: I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Signature of Complaining Witness

(Date)

(Signature of Person Administering Oath)    (Signature of Complaining Witness)

PROBABLE CAUSE DETERMINATION FOR ISSUANCE OF WITNESS    LAW / CODE ENFORCEMENT USE ONLY

Probable cause is found for the issuance Of The Complaint-Summons

The complaint-summons is a law enforcement officer or a code enforcement officer with territorial and subject matter jurisdiction and a judicial qualification criteria determination is not required.

YES
NO

(Signature of Judicial Officer)

YOU ARE HEREBY SUMMONED TO APPEAR

**NOTICE TO APPEAR**

COURT APPEARANCE REQUIRED

Case 2:18-cv-09228-CCC-JBC  Document 12-4   Filed 06/07/18   Page 2 of 10 PageID: 127

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 3 of 10 PageID: 128

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 4 of 10 PageID: 129



Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 5 of 10 PageID: 130

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 6 of 10 PageID: 131

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 7 of 10 PageID: 132

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 8 of 10 PageID: 133

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 9 of 10 PageID: 134

Case 2:18-cv-09228-CCC-JBC   Document 12-4   Filed 06/07/18   Page 10 of 10 PageID: 135

# EXHIBIT P

FILED

JAN 1 0 2018

KEITH A. BACHMANN, J.S.C.

prepared by the court

STATE OF NEW JERSEY,          SUPERIOR COURT OF NEW JERSEY
                             LAW DIVISION:   BERGEN COUNTY
                             *Criminal Action*
-vs-                          BMA 001-18-02

RAMAPOUGH MOUNTAIN
INDIANS, INC.,
          defendant.          **JUDGMENT AFTER TRIAL**
                             *de novo*

      **THIS MATTER HAVING BEEN** brought before this

court for a trial de novo, on the record made before

the Honorable Roy F. McGeady, P.J.M.C., Matthew W.

Daloisio, Esq. Valeria Gheorghiu, Esq. and Meghan D.

Maurus, Esq. appearing for the defendant, and Joseph P.

De Marco, Esq., municipal prosecutor for the Township

of Mahwah appearing for the State, and this court

having reviewed the briefs submitted by Mr. Daloisio

dated September 17, 2018 and November 27, 2018, the

brief submitted by Mr. De Marco dated October 15, 2018

1

and this court having reviewed the transcripts of the proceedings conducted before Judge McGeady on September 26, 2017, October 3, 2017, October 10, 2017, October 24, 2017, October 31, 2017 and November 17, 2017; and the court having inspected photocopies of the tickets that identified, in chronological order in Appendix A and the court having reviewed Mahwah's ordinances, the pertinent sections reproduced, for convenience, in Appendix B; and this court having considered the arguments made by Ms. Gheorghiu and Mr. DeMarco on November 30, 2018, for the reasons set forth below, it is on this 10th day of January, 2019

**ORDERED** that a judgment of conviction be and is entered against the defendants on all of the summonses identified in Appendix A; and it is further

**ORDERED** that fines are assessed in the amount of $5,100; and it is further

**ORDERED** that costs are assessed in the amount

of $2,040; and it is further

**NOTED** that the defendant has 45 days within which to appeal and if an appeal is not timely filed, the defendant may be entitled, in the discretion of the Appellate Division to a 30 day extension; and that the defendant is entitled to file a Post-Conviction Relief Application within 5 years of today's conviction; and it is further

**NOTED** that all counsel for the defendant have been directed to have the appropriate corporate officer of the defendant execute and submit the notice of appeal rights and time to file a petition for post-conviction relief form attached to this decision and identified as Appendix C within 10 days.

Keith A. Bachmann, J.S.C.

## REASONS FOR THIS DECISION

The defense has asked this court to consider this matter anew on the record below.  R. 3:23 permits this

3

court to do so.

In this case the defendant was charged with violating
various zoning ordinances.  This court understands that
44 paper summonses issued[1].

Summons SC 008496 cited a violation of an ordinance
that is not a regulatory ordinance and Judge McGeady
dismissed that charge.  T1[2], 5 @ 15.  Three other
summonses charged the defendant with moving soil
without a permit (SC008401[3], SC008494 and SC008495).
Judge McGeady acquitted the defendant on those charges.
S6[4], 11 @ 1.  Judge McGeady acquitted the defendant of
allowing the energy trailer on its property on August
16, 2018.[5]  Judge McGeady also acquitted the defendant
regarding summons SC 008492 charging an offense on
December 13, 2016.[6]  These charges will not be revisited
by this court because to reconsider them would have a
chilling effect on a defendant's right to appeal and
would abridge the defendant's right not to be placed in
jeopardy twice.  By this court's count, 102 summonses
remain.  There are 38 remaining paper summonses.

The pertinent facts established beyond a reasonable
doubt by the record are:

1)   the defendant acquired the property by deed on
     July 17, 1995: T3[7], 46 @ 18.

2)   on January 25, 2012 the Township of Mahwah issued
     a zoning permit so that the defendant might build
     a longhouse and use it for prayer and community

---

[1] T1, 22 @ 2.
[2] T1 refers to the transcript of proceedings on September 26, 2017.
[3] This may have been mistakenly identified.  Compare T2, 25 @ 22 through 27 @ 7 where it SC008491.
[4] S6 is the transcript of proceedings on November 17, 2018.
[5] T6, 13 @ 16.
[6] T6, 14 @ 16.
[7] T3 refers to the transcript of proceedings on October 10, 2017

cultural assembly.  T1, 6 @ 1-4; T1, 19 @ 24.

3) on November 29, 2016 the defendant was notified
   that it had structures on its property that
   were contrary to the Township's zoning code,
   specifically teepees, tents, a canvas cabin and a
   lumber structure that contained a roof, floor and
   cabinets.  T2, 21 @ 5

4) the Township of Mahwah afforded the defendant a
   period of time to comply with the town's ordinances

5) One of the structures, a large tent, was erected by
   the defendant on the property in October of 2016
   and that tent remained on the property through and
   including the trial   date of October 17, 2017.
   T3, 202 @ 22 – 203 @ 22.[8]

6) That tent measured 12 feet by 14 feet which means
   that it covered 168 square feet of ground

7) trunks of trees that had naturally fallen on
   the property were arranged on the ground to
   create what the defendant referred to as a
   longhouse with spaces between the trunks
   facing North, South, East and West: T3, 104 @ 4-22

8) the tree trunks were arranged in a rectangular
   pattern measuring 20 feet by 60 feet[9]: T3, 103 @ 1

9) the diameter of the trunks of said trees rose to
   a height sufficient for sitting on: T3, 104 @ 1.

10) in 2011 the defendant placed 12 large poles in the
    ground that were once tree trunks; these poles had

---

[8] T3 refers to the transcript of proceedings on October 10, 2017.

[9] The record is not clear as to whether the measurement was in feet, yards or meters

carvings on them and were symbolic of walls with gates

11) said poles were installed in a manner similar to telephone poles.  T3, 192 @ 2.

12) the tree trunks laying on the ground in a rectangular shape and the trunks sunk into the ground and protruding out of the ground like telephone poles remained on the property throughout the period of violation (12/13/16 through 9/22/17)

13) the defendant never acquired a zoning permit for the erection of tents, teepees, yurts, or a cook shack T2, 56 @ 22 through 57 @ 5.

14) Thomas Mulvey is Mahwah's planning, zoning and property maintenance inspector.  T2, 7 @ 21.

This court will address the various defenses made.

The defense argued before Judge McGeady that the defendant was entitled to sovereign immunity.  Judge McGeady held that the defendant was not entitled to sovereign immunity but was subject to the laws of the United States, of the State of New Jersey, and of the Ordinances of the Township of Mahwah.  T1, 17 @ 6.

The defense continued to argue on *de novo* review that the Ramapo Mountain Indians, Inc. were entitled to sovereign immunity.

A scholarly discussion of the foundation of such immunity is unnecessary to determine the issue.  It is sufficient to recognize that the immunity springs from treaties that were made before the United States of America became a sovereign and from the prohibition

against the Federal Government, a Municipal Government
or a State Government exercising jurisdiction over a
sovereign Indian Tribe.  Pre-existing property rights
and pre-existing rights to self-govern are the subjects
of sovereign immunity claims.

The doctrine basically respects tribal rights that
existed prior to the creation of our Nation, our State
and in this case, the Township of Mahwah.

Some tribes had possessory rights to certain land with
the United States.  See generally: Oneida Indian Nation
v. County of Oneida, 414 U.S. 670 - 672 (1974) and a
later formed Federal, State or Municipal government
entity has no authority to regulate activity on said
land absent consent by a tribe or an act of congress.

The record does not identify when the corporation known
as the "Ramapo Mountain Indians, Inc." was formed.
Incorporation is a creature of statute.  The right to
incorporate may have been first authorized in New
Jersey in 1846.  See. Waters v. Quimby, 27 N.J.L. 296,
306 (1859).  Our Nation and our State became sovereign
entitles well before this right to incorporate.

Additionally, this defendant's incorporation could not
have occurred before the initial members of the tribe
organized and that had to be circa 1900.  This must be
so because Chief Perry testified that in order to be a
member of the Ramapo Indian Tribe one had to be able to
trace his or her family back to the original families
that were part of the Tribe in the early 1900s.  T3, 80
@ 4.

Finally, the defendant did not own this property until
1995.

The record before this court does not establish that
there was a Ramapo Mountain Indian tribe prior to the
formation of the United States of America or the State
of New Jersey nor does it establish that the land in
question was the property of said tribe prior to the
formation of the United States of America or the State
of New Jersey and that the property was acquired well
after Mahwah incorporated[10] and so no sovereign immunity
argument on this basis can be countenanced.

Alternatively, this defense must be supported by
establishing that the Ramapo Indians are a sovereign
entity and therefore not answerable for its activities
to a Federal, State or Municipal government entity.

The defense relies on Lewis v. Clarke, 137 S. Ct. 1285
(2017). That case is distinguishable. That case
involved the sovereign rights of the Mohegan Tribe, a
tribe that was established in the early 1600s and one
recognized as a sovereign by our Federal government,
Id. at 1289. There is no evidence to establish that
the Ramapo Indian Tribe was recognized by our Federal
Government, nor that the Ramapo Indian Tribe existed
before our Federal or State governments exist.

The defense relies on Montana v. Blackfoot, 471 U.S.
759 (1985). That case is distinguishable. There was
no dispute that the land in question was on a
recognized Indian reservation and a State's effort to
tax an Indian Tribe's mineral lease royalties without
permission of congress.

The defense raised sovereign immunity to support its
argument that Mahwah cannot regulate the Ramapo Indian
Tribe, Inc's ceremonial use of its land. This is not a
case in which a municipality seeks to regulate

---

[10] This court takes notice that Mahwah was incorporated in 1944.

8

ceremonial activity.  This case is not about activity;
it is about code compliance.

The defense raised pre-emption as a defense.  The
authority for said argument is Homebuilder's League,
etc. v. Evesham Tp., 174 N.J.Super. 252 (L.Div. 1980).
That holding is distinguishable on its facts[11].

The defense argued that the Uniform Construction Code
does not require a permit for a tent.  The exception
outlined in the code is for tents 120 square foot in
ground coverage or less,  that are used for less than
180 days.  Chief Perry admitted that at least one large
tent covering 168 square feet of ground was erected and
stood from October of 2016 through October of 2017.
The tent is larger than the excepted size and existed
for a period of time longer than the excepted duration
and this argument, therefore, has no merit.

Judge McGeady held that the Religious Land Use and
Institutionalized Person Act (RLUIPA) did not afford
the defendant a defense but rather, entitled the
defendant to challenge the ordinance before the Zoning
Board of Adjustment in Mahwah.  T1, 18 @ 1 though 19 @
14.

RLUIPA does not except a religious institution from
complying with zoning ordinances.  House of Fire v.
Zoning Bd., 379 N.J. Super. 526, 544 (App. Div. 2005).

In a proper forum, RLUIPA requires a religious
institution to first demonstrate that the ordinance
imposes a substantial burden on religious exercise

---

[11] The trial judge held, correctly, that the ordinances created through the authority of a State Statute designed to
regulate the development of property could not be used as a vehicle to collect taxes and the inclusion of such a
condition, as a prerequisite to acquiring a permit to develop the land was improper and pre-empted by the State
staturory scheme designed to regulate the development of land.  Mahwah's ordinance does set prerequisite
conditions but their only design is to regulate the development of land.

before a government entity becomes obligated to persuade the court that its ordinance furthers a compelling governmental interest and is the least restrictive means of furthering that interest. Id. at 545. This is not the proper forum. A proper challenge, placing the matter squarely in controversy, would be after Mahwah had either declined to issue a zoning permit or after Mahwah declined to grant a variance. The record before this court does not contain this information and that is because the defendant did not comply with Mahwah's ordinance and apply for a zoning permit.

In addition, this court does not need to reach the question of whether prohibiting the longhouse or a sweat lodge, for example is prohibiting religious exercise because this court determined this controversy based upon the presence of the large tent which, beyond any doubt, was erected without acquiring a zoning permit and allowed to stand for over a year.

All other defenses that were raised are without merit.

The ordinances in question are clear and have been reproduced as Appendix B.

This court reviewed the proofs provided by the State in its case on direct. This court looked for evidence that a person with first-hand knowledge observed a structure erected while believing that no zoning permit had issued. That proof is the bare minimum necessary to establish a violation.

Testimony about a cooking shack, a yurt and a sweat lodge, produced on direct, met this criteria in only forty nine instances[12].

---

[12] See the "Note" on page 2 of Appendix A.

The defendant did not move for a dismissal[13] at the end of the State's case presented to Judge McGeady and made no such application in this *de novo* proceeding.

The defense called Chief Perry and he testified that the defendant had erected a large tent on the property. That tent was erected in October of 2016 (before the first summons charge date) and that said tent remained there as of October 10, 2017 (after the last summons charge date).

A tent meets the definition of a "structure" in Mahwah's ordinance (*Structure* shall mean a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land).

Mr. Mulvey, the Mahwah inspector, established that no zoning permit was ever acquired by the defendant to erect said tent contrary to Mahwah's ordinance (Zoning permits shall be secured from the Zoning Officer prior to construction, erection or alteration of any structure or part of a structure or use of a structure or land).

If a tree falls down through natural causes and the trunk lays on the ground near other fallen tree trunks there would be no basis to charge the defendant with violating the town's ordinance. But if the defendant were to clean up that fallen tree, remove its broken and twisted branches and cut away is dirt impacted roots, and then put the fallen tree trunks in a pattern, the ordinance could be read to establish that a structure has been created. (*Structure* shall mean a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land).

This court does not have to decide this question because the record establishes, beyond a reasonable

---

[13] See: State v. Reyes, 50 N.J. 454 (1956)

doubt, that at least one large tent, which meets the definition of a structure, was erected on the property by the defendant and that the defendant never bothered to acquire a zoning permit for same and that said large tent was on the property on every day charged in the multiple summonses.

The multiple summonses charge violations on one hundred and two separate dates.  The Mahwah ordinance declares it to be a separate violation for every day that a violation exists (Except as otherwise provided, every day in which a violation of any provision of this Code or any other ordinance of the Township exists shall constitute a separate violation.).

The zoning ordinance provides for a maximum fine of $1,250 per day.  Judge McGeady fined the defendant $100 per day.  Judge McGeady believed that the ordinance contained a mandatory minimum fine of $100[14].

The general penalty section provides a sentencing judge with great discretion when determining a fine (Any person who shall violate any provision of [any]... ordinance ... shall ... be punishable by ... a fine not exceeding one thousand two hundred fifty ($1,250.00) dollar ....  The maximum penalty stated in this section is not intended to state an appropriate penalty for every violation. Any lesser penalty, including a nominal penalty or no penalty at all, may be appropriate for a particular case or violation. The governing body may prescribe that, for the violation of any particular Code provision or ordinance, at least a minimum penalty shall be imposed which shall consist of a fine which may be fixed at an amount not exceeding one hundred ($100.00) dollars).

Chapter 24 of Mahwah's Zoning Ordinance does not set a mandatory minimum and, instead, refers to the general penalty section.  As the result this court understands that the fine can be anywhere from zero to $1,250 per day.  There was no evidence of scienter and the defendant, through agents, did make some effort, although not a great effort to comply with Mahwah's requirements.

---

[14] See T6, a transcript of proceedings on November 17, 2017, page 32, line 24.

Given the volume of summonses, noting that this
defendant would not even be in this court but for the
efforts of lawyers who donated their time, this court
believes a lesser fine of $50 per day would be
sufficient.

$50 times 102 days is $5,100.

Finally, Judge McGeady levied court costs of $33 per
day.  This court takes notice of the "Report of the
Supreme Court Committee on Municipal Court Operations,
Fines, and Fees"[15] supplied, post argument, by the
defense.  It contains recommendations to the Supreme
Court and one concern centers on the "excessive
imposition of financial obligations on certain
defendants" that have a "… disproportionately negative
impact on the poor".  While the report specifically
targets the "… imposition of mandatory financial
obligations upon defendants that extend beyond the fine
that associated with the violation …" and while court
costs are not mandatory financial obligations, the
impact of large court costs is the same as the impact
of mandatory surcharges.

This court has also reviewed the language in <u>N.J.S.A.</u>
22A:3-4.  Said statute provides "In municipal court
proceedings, the court shall impose court costs within
the maximum limits authorize …" and further provides
that "[t]he court shall not suspend the collection…" of
$2 to the Automated Traffic System Fund and $3 to the
Automatic System Statewide Modernization Fund.  This
means that whether this court assesses court costs or
not, the Township of Mahwah will have to remit $5 per
offense, not per summons.  Were this court to only
assess costs per summons then Mahwah would have to pay
for this defendant's ordinance offending actions.

---

[15] Published June, 2018; https://njcourts.gov/courts/assets/supreme/reports/2018/sccmcoreport_wapp.pdf

13

Municipalities incur costs and expenses to run a
municipal court.  While the Mahwah Municipal Court did
not conduct this trial, its clerk had to exert efforts
before this matter was sent to Judge McGeady for trial
and Mahwah had to supply its prosecutor to write briefs
and make arguments.  Court costs serve to defer those
expenses.

This court believes that the appropriate resolution is
to access $20 in court costs per violation, not per
summons.  $20 times 102 violations is $2,040 and in
this court's view, it is appropriate to assess said
costs.

The defendant's fines and costs total $7,140.

The defendant has 45 days within which to appeal this
decision and 5 years within which to make a petition
for post-conviction relief.

14

# APPENDIX   A

| OFFENSE DATE(S) | TICKET NO. | CHARGE |
|---|---|---|
| 01/10/17 | SC008497 | 24-11.2C |
| 04/27/17 | SC008525 | " |
| 04/28/17 | SC008526 | " |
| 05/01/17 | SC008527 *1 | " |
| 05/02/17 | SC008528 " | " |
| 05/03/17 | SC008529 " | " |
| 05/04/17 | SC008530 " | " |
| 05/05/17 | SC008531 " | " |
| 05/08/17 | SC008532 " | " |
| 05/09/17 | SC008533 " | " |
| 05/10/17 | SC008534 " | " |
| 05/11/17 | SC008535 " | " |
| 05/12/17 | SC008536 " | " |
| 05/13/17 | SC008537 " | " |
| 05/16/17 | SC008538 " | " |
| 05/17/17 | SC008539 " | " |
| 05/18/17 | SC008540 " | " |
| 05/19/17 | SC008541 " | " |
| 05/22/17 | SC008546 *2 | " |
| 05/23/17 | SC008547 " | " |
| 05/24/17 | SC008550 | " |
| 05/25/17 | SC008551 " | " |
| 05/29 – 06/02/17 | SC008555 *3 | " |
| 06/05 – 06/09/17 | SC008556 " | " |
| 06/12 – 06/16/17 | SC008559 " | " |
| 06/26 – 06/30/17 | SC008560 " | " |
| 07/03 – 07/07/17 | SC008581 " | " |
| 07/10 – 07/14/17 | SC008584 " | " |

1      Mr. Mulvey testified that these summonses were issued because the defendant failed to acquire a zoning permit. He DID NOT testify that he saw the violations on the dates that he issued the summonses. See T2, 56 @ 24.

2      Mr. Mulvey DID NOT testify that he saw violations on the dates that he issued these summonses. Instead he testified that he issued the summonses because Mr. Kelly authorized him to do so. See and T2, 58 @ 2 and T2, 80 @ 24

3      Again, Mr. Mulvey DID NOT testify that he observed the conditions, rather he simply explained the natur of the alleged violations.

```
07/17 - 07/21/17        SC008585  *4          "
07/24 - 07/28/17        SC008586              "
07/31 - 08/04/17        SC008587              "
08/07 - 08/11/17        SC008588              "
08/14 - 08/18/17        SC008730              "
08/21 - 08/25/17        SC008749              "
08/28 - 09/01/17        SC008570              "
09/04 - 09/08/17        SC008733              "
09/11 - 09/15/17        SC008734              "
09/18 - 09/22/17        SC008735              "
```

Note:  Highlight indicates that there was
testimony in the record establishing that the
condition that constituted an offense was observed to
exist on the date complained of.

---

4       Again, Mr. Mulvey DID NOT testify that he observed the conditions, rather he simply explained the natur
of the alleged violations.

# APPENDIX B

**24-2.2   Definitions.**

As used in this Chapter:

*Structure* shall mean a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land

**24-4.2   Application of Regulations.**

Except as hereinafter otherwise provided:

a.   No building or structure shall be erected and no existing building or structure shall be moved, altered, added to or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses hereinafter listed as permitted in the district in which such building or land is located.

**24-11.2   Zoning Permits.**

c.   *Issuance of Zoning Permit.* Zoning permits shall be secured from the Zoning Officer prior to construction, erection or alteration of any structure or part of a structure or use of a structure or land. It shall be the duty of the Zoning Officer to issue a zoning permit, provided that person is satisfied that the proposed use conforms with all requirements of this Chapter. It is the applicant's responsibility that all other reviews and actions, if any, called for in this Chapter or any other Township ordinance have been complied with and all necessary approvals secured therefor.

**24-11.5   Violations and Penalties.**

c.   *Penalties.* Any person, firm or corporation violating any provision of this Chapter shall, upon conviction, be subject to penalty, as stated in Chapter I, Section 1-5 of the Code of the Township of Mahwah.

**1-5   GENERAL PENALTY.**

**1-5.1   Maximum**                                                                **Penalty.**

Any person who shall violate any provision of this Code or other ordinance of the Township, where no specific penalty is provided regarding the section violated, shall, upon conviction thereof, be punishable by one or more of the following: a fine not exceeding one thousand two hundred fifty ($1,250.00) dollars …

**1-5.2   Separate Violations.**

Except as otherwise provided, every day in which a violation of any provision of this Code or any other ordinance of the Township exists shall constitute a separate violation.

**1-5.3   Application.**

The maximum penalty stated in this section is not intended to state an appropriate penalty for every violation. Any lesser penalty, including a nominal penalty or no penalty at all, may be appropriate for a particular case or violation.

**1-5.4   Minimum Penalty.**

The governing body may prescribe that, for the violation of any particular Code provision or ordinance, at least a minimum penalty shall be imposed which shall consist of a fine which may be fixed at an amount not exceeding one hundred ($100.00) dollars