**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS INC., and RAMAPOUGH LENAPE NATION,<br><br>                    Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MAHWAH, RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., GERALDINE ENTRUP, THOMAS MULVEY, JOHN and JANE DOES 1 THROUGH 14, JOHN DOE ENTITIES 1 AND 2,<br><br>                    Defendants. | Case No. 2:18-cv-09228-CCC-JBC<br><br>*Document Electronically Filed*<br><br><br>**Motion Date:** February 19, 2019<br><br>**Before:** Hon. Claire C. Cecchi, U.S.D.J. |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR LEAVE TO AMEND THE COMPLAINT**

Arthur N. Chagaris, Esq.
John J. Lamb, Esq.
Martin R. Kafafian, Esq.
**BEATTIE PADOVANO, LLC**
Attorneys for Defendant,
*Ramapo Hunt & Polo Club*
*Association, Inc.*
50 Chestnut Ridge Road, Suite 208
Montvale, NJ 07645
Telephone: (201) 573-1810
Facsimile:  (201) 573-9736
achagaris@beattielaw.com
jlamb@beattielaw.com
mrk@beattielaw.com

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**........................................................................1

**STATEMENT OF FACTS**...........................................................................4

**ARGUMENT**..............................................................................................9

**POINT I**     **THIS CASE SHOULD BE DISMISSED UNDER *YOUNGER V. HARRIS* BECAUSE THERE ARE EARLIER FILED PARALLEL LAWSUITS PENDING IN STATE COURT**.............................................9

**POINT II**    **THIS COURT SHOULD DENY PLAINTIFFS' MOTION TO FILE THE PAC BECAUSE DOING SO WOULD BE FUTILE SINCE THE PAC FAILS TO PLEAD FACTS, AS REQUIRED UNDER *TWOMBLY* AND *IQBAL*, SUFFICIENT TO MAKE OUT A 42 U.S.C. § 1985(3) CLAIM**.......14

**POINT III**   **PLAINTIFFS' CLAIMS AGAINST THE HOA ARE BARRED UNDER THE FIRST AMENDMENT'S FREE SPEECH AND PETITION CLAUSES**............................................................23

**CONCLUSION**..........................................................................................30

i

## TABLE OF AUTHORITIES

<u>*Cases*</u>

*Addiction Specialists, Inc. v. Tp. of Hampton,*
    411 F.3d 399 (3d Cir. 2005)..............................................................................11

*Affordable Housing Dev. Corp. v. City of Fresno,*
    433 F.3d 1182 (9th Cir. 2006)...........................................................................28

*Alger Bible Baptist Church v. Tp. of Moffatt,*
    2014 WL 462354 (E.D. Mich. Feb. 5, 2014)....................................................17

*Anton v. Getty,*
    78 F.3d 393 (8th Cir. 1995).........................................................................22, 29

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................*passim*

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................*passim*

*Bey v. Passaic Mun. Court,*
    2013 WL 1949856 (D.N.J. May 9, 2013)..........................................................12

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993)...........................................................................................20

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
    839 F.2d 155 (3d Cir.1988)...........................................................................26, 29

*California Motor Transport Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972)...........................................................................................28

*Christian Gospel Church, Inc. v. City & County of San Francisco,*
    896 F.2d 1221 (9th Cir.1990)............................................................................29

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993)....................................................................................18, 19

*D.R. v. Middle Bucks Area Vocational Tech. Sch.,*
    972 F.2d 1364 (3d Cir.1992).............................................................................21

*D'Antonio v. Borough of Allendale,*
    2017 WL 701384 (D.N.J. Feb. 21, 2017)........................................................16

*Eastern R.R. Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961)....................................................................................*passim*

*Employment Division v. Smith,*
    494 U.S. 872 (1990)...........................................................................................19

*Geness v. Cox,*
    902 F.3d 344 (3d Cir. 2018).............................................................................15

*Gorman Towers, Inc. v. Bogoslavsky,*
    626 F.2d 607 (8th Cir. 1980)............................................................................27

*Herr v. Pequea Tp.,*
    274 F.3d 109 (3d Cir. 2001).............................................................................26

*House of Fire Christian Church v. Zoning Bd. of Adjustment of City of Clifton,*
    379 N.J. Super. 526 (App. Div. 2005)..............................................................14

*Huffman v. Pursue, Ltd.,*
    420 U.S. 592 (1975)...........................................................................................12

*Herr v. Pequea Tp.,*
    274 F.3d 109 (3d Cir. 2001).............................................................................26

*Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co., LLC,*
    240 F.Supp.3d 299 (D.N.J. 2017)....................................................................28

*Jian Zhang v. Biadu.com Inc.,*
    10 F.Supp.3d 433 (S.D.N.Y. 2014)..................................................................23

*Kahermanes v. Marchese,*
    361 F.Supp. 168 (E.D. Pa. 1973).................................................................21, 29

*Kush v. Rutledge,*
    460 U.S. 719 (1983)...........................................................................................21

*Lighthouse Community Church of God v. City of Southfield,*
    382 F.Supp.2d 937 (E.D. Mich. 2005).............................................................14

*Lui v. Commission on Adult Entertainment Establishments of the State of Delaware,*
    369 F.3d 316 (3d Cir. 2004).............................................................................12

*Mariana v. Fisher,*
    338 F.3d 189 (3d Cir. 2003).............................................................................26

*Martin v. King,*
    417 F.2d 458 (10th Cir. 1969)..........................................................................22

*Matal v. Tam,*
    582 U.S. _____, 137 S.Ct. 1744 (2017)..............................................................26

*Meyer v. Grant,*
    486 U.S. 414 (1988)..........................................................................................24

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982)..........................................................................................10

*Moore v. Sims,*
    442 U.S. 415 (1979)..........................................................................................10

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977)..............................................................................10

*National Collegiate Athletic Ass'n v. Corbett,*
    25 F. Supp.3d 557 (M.D. Pa. 2014)...................................................................11

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964)..........................................................................................25

*Pappas v. Tp. of Galloway,*
    565 F.Supp.2d 581 (D.N.J. 2008)......................................................................10

*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987)..............................................................................................10

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,,*
    508 U.S. 49 (1993)................................................................................27, 28, 30

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992)..........................................................................................26

*Redwood v. Dobson,*
    476 F.3d 462 (7th Cir. 2007)............................................................................20

*Sand v. Steele,*
    218 F.Supp.2d 788 (E.D. Va. 2002)..................................................................22

*Scotto v. Almenas,*
    143 F.3d 105 (2d Cir. 1998)..............................................................................29

*Shane v. Fauver,*
    213 F.3d 113 (3d Cir. 2000)..............................................................................15

*Snyder v. Phelps,*
    562 U.S. 443 (2011)....................................................................................24, 26

*Sprint Comm., Inc. v. Jacobs,*
    571 U.S. 69 (2013).................................................................................................10, 11

*Suber v. Guinta,*
    902 F.Supp.2d 591 (E.D. Pa. 2012)..........................................................................15

*Taliaferro v. Darby Tp. Zoning Bd.,*
    458 F.3d 181 (3d Cir. 2006)......................................................................................13

*Testa v. Hoban,*
    2016 WL 4820631 (D.N.J. Sept. 14, 2016)...............................................................12

*Thompson v. Tp. of East Brunswick,*
    2013 WL 132528 (N.J. Sup. Ct. App. Div. July 11, 2013).......................................14

*United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott,*
    463 U.S. 825 (1983)..................................................................................................16

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965)............................................................................................*passim*

*U.S. v. Alvarez,*
    567 U.S. 709 (2012).................................................................................................. 25

*U.S. v. Stevens,*
    559 U.S. 460 (2010)............................................................................................24, 25

*Westchester Day School v. Vill. of Mamaroneck,*
    504 F.3d 338 (2d Cir. 2007).....................................................................................19

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000)..................................................................................27

*Younger v. Harris,*
    401 U.S. 37 (1971)............................................................................................*passim*

## *Statutes , Rules and Other Authorities*

U.S. Const. amend 1..........................................................................................*passim*

U.S. Const. art. IV, § 2...............................................................................................23

*Fed. R. Civ. P.* 12.............................................................................................*passim*

*Fed. R. Civ. P.* 15.............................................................................................*passim*

42 U.S.C. § 1983............................................................................................. *passim*

42 U.S.C. § 1985........................................................................................................... *passim*

42 U.S.C. § 2000cc, *et seq.*............................................................................................*passim*

N.J.S.A. 15A:6-1.....................................................................................................................22

N.J.S.A. 58:16A-50, *et seq.*...............................................................................................13

N.J.S.A. 40:55D-1, *et seq.*..................................................................................................13

Defendant Ramapo Hunt & Polo Club Association, Inc., a non-profit corporation of the State of New Jersey ("HOA"), is a homeowners association that administers a community in which 29 single-family homes are located within the Township of Mahwah ("Mahwah").  The HOA files this Memorandum of Law in opposition to the motion of the plaintiffs Ramapough Lenape Nation ("RLN") and Ramapo Mountain Indians, Inc. (together, "Plaintiffs" or collectively "RMI" for ease of reference), for leave to file a Proposed Amended Complaint (*See* Declaration of Arthur N. Chagaris dated January 23, 2019 ("ANC Decl.,"), Ex. B ("PAC")). Plaintiffs' motion should be denied and this case should be dismissed in its entirety.

## **PRELIMINARY STATEMENT**

The HOA administers an isolated community of single-family homes.  The sole access to the community is a one-lane bridge owned and maintained by the HOA.  The RMI owns a 13-acre parcel that is located in this isolated community.  Almost all of the Property lies in the Ramapo River's flood zone and floodway.  As a result, the property regularly floods.  In 2016, RMI began using and developing the Property in blatant violation of Mahwah's zoning laws, which were adopted long before RMI received a deed to the Property in 1995.  Plaintiffs erected, among other structures, teepees, a yurt, port-o-johns, a cooking shed, and a 20$^+$-foot high solar/wind power generator.  Plaintiffs also posted flashing, illuminated signs.  Plaintiffs opened the Property to the general public for large events and public assemblies, selling food, screening movies, holding late-night protests, and maintaining an overnight campground.  RMI consistently invite the public at large to the HOA neighborhood.  This is done without any required land use approvals. These uses are inconsistent with the single family community administered by the HOA and in violation of the Mahwah Zoning Ordinances.

1

The HOA residents, as neighboring landowners, were the parties most directly impacted by RMI's conduct.  Accordingly, the HOA residents sought assistance from Mahwah's elected officials, demanding enforcement of duly adopted, facially neutral and generally applicable zoning and municipal ordinances.  In response, Mahwah initially issued intermittent zoning summonses, after warnings (*i.e.*, two summonses in the winter of 2016).  However, Plaintiffs' unlawful conduct continued.  Those summonses were eventually dismissed by Mahwah.

Plaintiffs' use and development however then eventually intensified, and, in response, so did Mahwah's enforcement efforts.  After the first two summonses were dismissed by Mahwah, starting in 2017, Mahwah issued more summonses.  After a lengthy trial that resulted in 103 convictions on November 17, 2017, RMI appealed.  Mahwah gave RMI an opportunity to comply and even offered to eliminate all penalties.  After a period of noncomliance, the summonses started up again in March of 2018.  There are still hundreds more summonses that have yet to be adjudicated.  RMI continues to violate numerous municipal ordinances today.  The court upheld 102 of the convictions in a trial *de novo* in a decision issued on January 10, 2019.

Tension peaked in May 2017 when RMI's Tribal Chief, Dwaine Perry, along with another RMI member (Stephen Smith), tampered with and attempted to disable the HOA's security system.  Several days later, a third confederate associated with the RMI (Harold Molt, Jr.) vandalized the HOA's property and terrorized the HOA's residents.  Specifically, under cover of night, Molt fired a shotgun into HOA's street lights, vandalized HOA's no-parking signs, and threw a bronze HOA identification sign into the nearby Ramapo River.  Most of this activity was captured on one of the video cameras not disconnected by the RMI leaders.  Perry, Molt and Smith faced criminal prosecutions.  Perry was acquitted, despite the Judge's finding that the facts supporting a criminal conviction of being an accessory, because the statute at issue

did not criminalize an "accessory" to that offense. Smith was found guilty of a disorderly person's offense, but the County prosecutor chose not to defend the appeal he filed. Molt, after being indicted and facing a substantial prison term, fled the jurisdiction and was a fugitive. He was recently apprehended and is currently in jail.

This dispute also led to civil litigation in state court. Mahwah first (in a two-count complaint), and later the HOA (in a 17-count complaint), each commenced state court civil enforcement actions in state court. Each sought injunctive relief with respect to the activities on the RMI Property and enforcement of the zoning and municipal ordinances.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") and Plaintiffs' alleged constitutional rights have been the subject of nearly every state court litigation. They were raised as defenses to the municipal ordinance and zoning violations, both in the municipal court and the Law Division on the appeal, where they were rejected. RMI has moved in the civil enforcement actions to allow the introduction of evidence that would support RLUIPA and First Amendment defenses. RLUIPA and alleged constitutional defenses are included in the RMI's Answers to all the state court enforcement actions.

Pursuant to the abstention doctrine announced in *Younger v. Harris*, this Court should refuse jurisdiction over Plaintiffs' claims. The facts and issues raised by Plaintiffs are being litigated in the earlier-filed actions proceeding in state court. Those actions concern important state and local interests, including the interpretation and application of Mahwah's zoning ordinances and New Jersey's Municipal Land Use Law. Finally, the RLUIPA and constitutional claims raised here are available and have been raised in the state court actions.

In the alternative, if this litigation proceeds, Plaintiffs' application should be denied because filing the PAC would be futile. RMI limits its PAC to one count against the HOA, a

conspiracy claim under 42 U.S.C. § 1985(3).  The PAC grounds its § 1985(3) claim on the filing of police reports; discussions with elected officials about matters of public concern; participation at Town Council meetings; and the publishing of an op-ed.  The PAC seeks to hold the HOA civilly liable for engaging in protected speech and petitioning activities.  This conduct is protected by the First Amendment, and the HOA cannot be held civilly liable for same.

Further, under the exacting *Twombly* and *Iqbal* standard, the PAC fails to plead facts sufficient to make out a 42 U.S.C. § 1985(3) conspiracy claim.  The PAC does not allege facts constituting conspiracy—*i.e.*, an agreement to commit some future unlawful act—between the HOA and Mahwah.  In fact, the PAC fails to attribute *any* conduct to the HOA.  Also, the PAC fails to allege facts that would support an equal protection violation.  Again, RMI has been prosecuted for violating Mahwah's zoning ordinance—and convicted (by two judges, including after a trial *de novo* on the record).   There is no proof that RMI has been singled out or treated differently than any other offender.  If anything, Mahwah has bent over backwards for RMI, dismissing the first two summonses issued in 2016, entering into a Settlement Agreement that eliminated all fines and penalties for the violations already imposed (which RMI did not consummate despite execution by RMI's then attorneys), issuing more warnings, and then commencing issuance of the summonses when all else failed.

Finally, in the event that Plaintiffs are granted leave to file the PAC, the HOA preserves all rights and defenses under *Fed. R. Civ. P.* 12.  In accordance with this Court's September 24, 2018 Order [ECF No. 42], the HOA will raise those rights and defenses at the appropriate time.

## STATEMENT OF FACTS

This dispute centers on the unauthorized development and unlawful use of a 13 acre parcel commonly known as 95 Halifax Road, Mahwah, New Jersey ("Property" or "RMI

Property"). By Deed dated July 7, 1995, the Property was conveyed from Charles Elmes, who

was the developer of the Ramapo Hunt & Polo Club community, as a gift to an entity identified

as Ramapough Mountain Indians, Inc. ANC Decl., Ex. D. Both the Property and the HOA

community are separated from Mahwah by the Ramapo River. ANC Decl, Ex. Q ("Scian

Decl.") ¶5. The sole access to the Property and HOA community is over the single lane Halifax

Bridge, owned and maintained by the HOA. *Id.*

The RMI Property and the HOA properties lie within Mahwah's C-200 Conservation

Zone. Four uses are permitted within the C-200 Zone: (1) public open spaces; (2) agricultural

uses; (3) single-family detached homes with minimum lot sizes of 200,000 square feet; and (4)

municipal facilities. *See* ANC Decl., Ex. C. The public assemblies, religious activities, multi-

family uses, camping and campgrounds, and other activities on the Property are not permitted by

the Zoning Ordinance. *Id.*

### A. *Unauthorized Development of and Unlawful Uses of the RMI Property*

For decades, Plaintiffs and the HOA residents enjoyed a neighborly co-existence. From

the beginning, RMI understood and acknowledged that the RMI Property was subject to

Mahwah's and New Jersey's laws. For example, two months after acquiring the RMI Property,

Plaintiffs asked Mahwah for approval of a two-day special event, which was held on September

16 and 17, 1995, on a field in the community. Mahwah approved Plaintiffs' request by

Resolution dated August 17, 1995. ANC Decl., Ex. E. Conditions were placed on this approval,

including, among others, noise, insurance, time limits, and traffic control. *Id.*

But the peaceful use of the Property ended in 2008 when a U.S. Fish & Wildlife Habitat

Restoration Project, which was started in 2002 by RMI, was intentionally destroyed by RMI.

Scian Decl. ¶¶12-13. After 2008, there was very limited use of the Property. *Id.* In 2016, RMI

5

began to develop the Property with, among other unlawful structures, a haphazard campground of teepees, framed buildings, a yurt, tents, wood platforms, and two port-o-johns. *Id.* at ¶14. None of these structures or uses received any zoning, land use, construction or building permits or approvals.[1]

Prior to 2017, RMI had never submitted a use variance or site-plan application in connection with the Property that was pursued to a decision. Then, in June of 2017, an application was finally filed with the Mahwah Zoning Board of Adjustment for a use variance based upon an understanding with Mahwah that the summonses would stop if the application was filed. ANC Decl., Ex. I. The application was deemed incomplete, no site plan was filed, and sufficient filing fees and escrows were not paid. ANC Decl., Ex. J. RMI then withdrew that application several months later but have refused to refile it. *Id.* That application also raised RLUIPA issues and constitutional arguments.

### B. *Summons and Zoning Violation Prosecutions*

Starting in 2017, after many warnings to RMI [*see, e.g.,* ANC Decl., Ex. H], the Mahwah building department finally issued summonses for the various violations of the Mahwah Ordinances. The summonses were prosecuted under an action entitled *State of New Jersey v. Ramapough Mountain Indians, Inc., et al.*, Dockets No. 0233-SC-008491, *et seq.* ("Summons Prosecutions"). The Summons Prosecutions culminated in a guilty verdict on 103 violations. *See generally* ANC Decl., Ex. N.

---

[1] The only permit issued was a January 25, 2012 zoning permit issued in connection with the construction of a single longhouse. ANC Decl., Ex. F. The longhouse, however, was razed in 2016. Further, the 2012 zoning permit was eventually rescinded after it was discovered that it had been illegally issued, and after more litigation, an RMI challenge in the Superior Court to that rescission was dismissed with prejudice. ANC Decl., Ex. G.

During the trial, RMI argued that they were exempt from Mahwah's ordinance, citing RLUIPA and the Constitution. *See, e.g.,* ANC Decl., Ex. M, at 84:19-87:12. In response, the Presiding Municipal Court Judge in Bergen County noted that the RMI had not made any site-plan or variance applications, and therefore denied these defenses. ANC Decl., Ex. N at 29:5-30:13. The Municipal Court Judge held that RLUIPA and constitutional claims do not ripen until appropriate applications have been denied by a local land-use board. *Id.* There was and, to this day, has been no "administrative" land use decision. RMI was found guilty on 103 counts and Judge McGeady imposed the minimum fine. *Id.* at 31:5-32:15. RMI appealed the convictions. On January 10, 2019, the Law Division in a trial *de novo* on the record upheld 102 of the 103 violations, but reduced the total fine. *See* ANC Decl., Ex. O. The Law Division also addressed and again rejected RMI's RLUIPA and constitutional arguments, finding that they were not ripe because RMI had neither sought nor been denied relief from the land use boards. *Id.* at 9-10. During the January 10, 2019 announcement of the trial *de novo*, RMI's attorney (who is also counsel in this case) announced that RMI would immediately appeal the decision, arguing RLUIPA and the Constitution. *See generally* Declaration of Martin R. Kafafian, dated January 23, 2019. RMI continues to flout Mahwah's zoning ordinance, which has resulted in yet more summonses. Those summonses have yet to be tried.

### C. *Civil Enforcement Actions*

The pending civil actions are entitled (1) *Township of Mahwah v. Ramapough Mountain Indians, Inc.,* Docket No. BER-L-003189-17 (the "Mahwah Enforcement Action"); and (2) *Ramapo Hunt & Polo Club Association, Inc. v. Ramapough Mountain Indians, Inc. and Township of Mahwah,* Docket No. BER-L-006409-17 17 (the "Association Enforcement Action"). The two state enforcement actions have recently been consolidated ("Enforcement

Actions"), and trial is scheduled for March 4, 2019.  ANC Decl., Ex. T.  The Enforcement

Actions are based on the unlawful erection of structures and unlawful uses.  *See generally* ANC

Decl., Exs. P, S.

RMI interposed affirmative defenses in response to the HOA's Verified Complaint.

ANC Decl., Ex. R.  RMI's Fourth Affirmative Defense argues that "the claims asserted [by the

HOA] are made in bad faith solely for the purposes of harassment and religious discrimination in

contravention of the Religious Land Use and Institutionalized Persons Act."  *Id.* at 30-31.  On

December 31, 2018, RMI filed a motion *in limine* in the Enforcement Actions so that RMI can

"offer RLUIPA and First Amendment Defenses[.]"   ANC Decl., Ex. U.

### D.  The Proposed Amended Complaint

On May 14, 2018 (several days before a second settlement conference was scheduled to

be held in the Enforcement Actions), Plaintiffs commenced this action by Summons and

Complaint, asserting six causes of action against the HOA.  After the Defendants moved to

dismiss, including the HOA's argument that it is not a "state actor," Plaintiffs moved to file the

PAC.  The PAC now sets forth a sole count against the Association: Conspiracy to Violate Civil

Rights under 42 U.S.C. § 1985(3).  Paragraphs 70 through 82 of the PAC, are designated, "III.

Mahwah and the [HOA] have conspired to burden Plaintiff's exercise of religion based on

discriminatory animus."  PAC ¶¶70-82.  The allegations are set forth in Exhibit A to the ANC

Declaration for ease of reference.   But those allegations may be summarized as follows:

- Mahwah issued summonses for zoning violations.  PAC ¶70.

- HOA residents have publicly expressed their desire that Plaintiffs leave the Property.  *Id.*

- Mahwah elected officials and the HOA have met and discussed Plaintiffs' continuing
  violations of law.  PAC ¶71.

- The HOA's PR firm to submitted a letter to the editor about Plaintiffs' violations.  PAC ¶72.

- The HOA have reported crimes and filed criminal complaints against RMI and its members.  PAC ¶¶73; 77.

- Members of the HOA have shouted racist language at Plaintiffs.  PAC ¶74.

- Bags of dog feces have been found on the Property's driveway.  PAC ¶75.

- Security cameras have been pointed towards the Property.  PAC ¶76.

- HOA members have publically demanded that Mahwah fine Plaintiffs.  *Id.*

- A Mahwah attorney and Mahwah elected official asked if they could employ self-help.  PAC ¶¶77-80.

- An unidentified HOA resident made vague statements about the Property.  PAC ¶81.

- The HOA has filed lawsuits against RMI and has participated in its capacity as a victim in other actions brought against Plaintiffs.  PAC ¶82.

In the PAC, Plaintiffs seek, among other things, declaratory judgments; injunctive relief; the annulment of accumulated fines; compensatory and punitive damages; and attorneys' fees.

## <u>ARGUMENT</u>

Plaintiffs' motion should be denied because the *Younger* abstention doctrine mandates this Court to abstain from hearing this dispute.  The facts and issues that Plaintiffs raise here concern important state interests that are being litigated in earlier-filed parallel state-court actions.  In the alternative, Plaintiffs' application for leave to file the PAC should be denied because doing so would be futile.  Specifically, a 42 U.S.C. § 1985(3) claim (the sole cause of action naming the HOA) requires a conspiracy and the deprivation of equal protection.  In this regard, the PAC fails to plead sufficient facts under the standard articulated in *Twombly* and *Iqbal*.  Further, the conduct that the HOA is alleged to have committed is protected under the

First Amendment's Free Speech and Petition Clauses.  For these reasons, not only should

Plaintiffs' application to file the PAC be denied, but this action should be dismissed.

## POINT I

### THIS CASE SHOULD BE DISMISSED UNDER *YOUNGER V. HARRIS* BECAUSE THERE ARE EARLIER FILED PARALLEL LAWSUITS PENDING IN STATE COURT

This lawsuit should be dismissed because the same facts and issues underlying this

action, which concern important local interests, are being litigated in the earlier-filed state-court

actions.  Under these circumstances federal courts are directed to abstain from hearing such

disputes.  *See Younger v. Harris*, 401 U.S. 37 (1971).   Important policies underlie *Younger*

abstention:

> The policies underlying *Younger* abstention have been frequently
> reiterated by this Court. The notion of "comity" includes a proper
> respect for state functions, a recognition of the fact that the entire
> country is made up of a Union of separate state governments, and a
> continuance of the belief that the National Government will fare
> best if the States and their institutions are left free to perform their
> separate functions in their separate ways.
> [*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457
> U.S. 423, 431 (1982) (internal quotations omitted).]

Another important policy underlying *Younger* abstention is the confusion and

contradiction incident to federal-court interpretations of state or local laws, which are not binding

on state courts, making the federal decision advisory.  *See e.g., Moore v. Sims*, 442 U.S. 415, 428

(1979).  Further, in the course of the state court litigation, those laws may be interpreted in a way

that obviates the need for federal courts to answer constitutional questions.  *See Pennzoil Co. v.

Texaco, Inc.*, 481 U.S. 1, 11-12 (1987).  *Younger* abstention also promotes important economic

concerns, both for the judiciary and litigants, by avoiding duplicative legal proceedings.  *Sprint

Comm., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

10

*Younger* abstention implicates subject-matter jurisdiction and, accordingly, courts may review facts and consider evidence outside the pleadings.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  As a result, when considering an argument under *Younger* abstention, courts are not bound to accept the truth of the facts as asserted in the Complaint.  *See Pappas v. Tp. of Galloway*, 565 F.Supp.2d 581, 586 (D.N.J. 2008).  Further, courts have observed that movants seeking relief under *Younger* need not satisfy the strict standards required in other dismissal motions, such as those brought under *Fed. R. Civ. P.* 12(b)(1) and 12(b)(6).  *See National Collegiate Athletic Ass'n v. Corbett*, 25 F. Supp.3d 557, 563 (M.D. Pa. 2014) citing *Christian Action Network v. Maine*, 679 F. Supp.2d 140, 143 n.2 (D. Me. 2010).

The Third Circuit has articulated a three-prong test for applying *Younger* abstention: (1) there must be ongoing state proceedings that are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise the federal claims.  *Addiction Specialists, Inc. v. Tp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005).

Under *Younger's* first prong, federal courts must abstain from interfering with three classes of state-court proceedings: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.  *Sprint Comm., Inc.* 571 U.S. at 73.

The subject state-court proceedings must be ongoing when the federal action is filed.  It is immaterial when the state-court proceeding concludes, or even if it is stayed.  *See Addiction Specialists, Inc.*, 411 F.3d at 408-09.  On May 22, 2018, the date that this federal action was filed, at least four parallel state-court proceedings were pending: the Mahwah State Court

Enforcement Action, the HOA State Court Enforcement Action (now consolidated), the appeal of the Municipal Summons Action, and the additional Municipal Court summonses not yet heard.  On January 10, 2019, the New Jersey Superior Court, Law Division upheld the convictions in the Municipal Summons Action on a *de novo* trial on the record below.  However, counsel for Plaintiffs has represented that Judge Bachmann's decision will be appealed.  *See generally* MRK Decl.  RMI's counsel further advised that the appeal will be based on, among other things, RLUIPA and the First Amendment.  The Consolidated Enforcement Actions are now scheduled to be tried on March 4, 2019.

Pending criminal actions are at the core of *Younger* abstention.  *See Lui v. Commission on Adult Entertainment Establishments of the State of Delaware*, 369 F.3d 316 (3d Cir. 2004) (affirming the District Court's decision to abstain under *Younger* where the plaintiff was the subject of a state criminal prosecution).  Similarly, courts have held that the *Younger* Abstention Doctrine bars federal courts from enjoining municipal courts and their officers from proceeding with municipal quasi-criminal actions. *See Bey v. Passaic Mun. Court*, 2013 WL 1949856 (D.N.J. May 9, 2013); *see also, Testa v. Hoban*, 2016 WL 4820631 at *9 (D.N.J. Sept. 14, 2016) ("a federal district court may not exercise jurisdiction over a municipal court proceeding").  The appeal of the Municipal Summons Action, which is a quasi-criminal prosecution, was pending when this federal action was filed; RMI's counsel has represented it will appeal to a higher court. In addition, hundreds of other summonses have been issued but have yet to be tried in Mahwah Municipal Court.

*Younger* is not limited to criminal prosecutions.  It also covers civil enforcement proceedings that implicate important state interests.  Consider the facts underlying the Supreme Court's decision in *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975).  There, county law

enforcement agents brought a state-court action under Ohio's civil nuisance statute to shutter a cinema for displaying obscene films.  *Id.* at 595.  In response, the cinema brought an action in federal court under 42 U.S.C. § 1983, claiming deprivation of constitutional rights under color of law.  *Id.* at 598.  The Supreme Court held that *Younger* covered civil enforcement proceedings like the one brought by the Ohio county law enforcement, holding that the district court should have declined to exercise jurisdiction over the § 1983 claims.  *Id.* at 603-607.  Here, the Civil Enforcement Actions, which seeks to enforce, among other laws, Mahwah's zoning ordinances and New Jersey's environmental protection regulations, fall squarely under *Huffman*.  If Plaintiffs wish to bring federal claims, they must await resolution of the underlying state-court proceedings.  *See Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181 (3d Cir. 2006) (holding that § 1983 claims would survive a *Younger* motion only after related state-court proceedings had been litigated and appealed to Pennsylvania's court of last resort).

RMI has stated that it will appeal the second convictions of the 102 municipal summonses.  Hundreds of other municipal court summonses have not yet been decided.  The Civil Enforcement Actions are scheduled to be tried starting March 4, 2019.  In fact, RMI's counsel recently requested that discovery—which ended nine months ago—be re-opened and that the parties be permitted to engage in paper discovery and take depositions.  Plaintiffs' federal claims should not be heard until the various state-court litigations have concluded and an application is made to a local land-use board and decided.

As for *Younger's* second prong, this case implicates important state interests.  Plaintiffs have repeatedly refused to comply with Mahwah's zoning ordinance and other laws, such as the New Jersey's Flood Hazard Area Control Act, N.J.S.A. 58:16A-50, *et seq.* ("FHACA").  In several forums, RMI have argued that, as an alleged "sovereign," these laws do not apply.  Both

Mahwah and New Jersey courts have compelling interests in ensuring their laws are complied

with, as well as determining interpretations of Mahwah's zoning ordinance, FHACA, and New

Jersey's Municipal Land Use Law, *N.J.S.A.* 40:55D-1, *et seq.* ("MLUL").  For instance,

Plaintiffs have made central to this dispute the definition of "structure" under both Mahwah's

Ordinance and the MLUL.  A New Jersey court should, and indeed must, make this

determination.  The federal courts lack the prerogative to interpret these state laws.  This case

also implicates issues relating to New Jersey's Green Acres program.  The interpretation and

enforcement of these statutes and regulations belong in state court.

Finally, the claims asserted here could have been asserted (to the same extent that

immutable facts support those claims) and are being raised in, among other state-court

proceedings, the State Enforcement Actions and the trial and various appeals of the municipal

summonses.  The PAC sets forth seven causes of action: three under 42 U.S.C. § 1983; one

under 42 U.S.C. § 1985; and three under RLUIPA.  These all constitute "civil rights" cases,

which lie at the heart of *Younger* abstention.  *See Lighthouse Community Church of God v. City

of Southfield*, 382 F.Supp.2d 937 (E.D. Mich. 2005) (holding that the *Younger* Abstention

Doctrine was appropriately invoked in action brought under RLUIPA, barring the federal district

court from hearing the RLUIPA claims pending the outcome of underlying litigation).

The State Enforcement Actions are currently pending in the New Jersey Superior Court,

Law Division.  All of Plaintiff's claims could have (and should have) been made there.  Section

1983 and 1985 claims may be brought in New Jersey's Superior Court.  *See, e.g., Thompson v.

Tp. of East Brunswick*, 2013 WL 132528 (N.J. Sup. Ct. App. Div. July 11, 2013) (considering

the merits of 1983 and 1985 claims).  RLUIPA claims can also be brought in state court.  *See,

e.g., House of Fire Christian Church v. Zoning Bd. of Adjustment of City of Clifton*, 379 N.J.

14

Super. 526 (App. Div. 2005) (hearing RLUIPA claims).  And even though Plaintiffs have not asserted affirmative claims in the Enforcement Actions, that election has no bearing on the *Younger* analysis.  If Plaintiffs could have brought those claims in State Court, they should have.  Under *Pennzoil*, Plaintiffs must show that state law barred its claims from being brought there.  Plaintiffs cannot make this showing.

Further, RMI's counsel has represented that it will be appealing the summons convictions under, among other arguments, RLUIPA and First Amendment claims.  To the extent that Plaintiffs' point to the November 2017 Order of Municipal Judge McGeady for the proposition that these issues were barred, that assertion is disingenuous.  Judge McGeady's Order was issued in the context of a quasi-criminal prosecution of summonses issued for violating local zoning laws.  Of course that would have been an inappropriate forum in which to bring *affirmative* civil damage claims.  Nonetheless, in both the trial and the appeal, RMI raised RLUIPA and constitutional claims.  The State Enforcement Actions, however, are different, and to the extent that RMI failed to assert counterclaims in those actions, there is no excuse.

## POINT II

### THIS COURT SHOULD DENY PLAINTIFFS' MOTION TO FILE THE PAC BECAUSE DOING SO WOULD BE FUTILE SINCE THE PAC FAILS TO PLEAD FACTS, AS REQUIRED UNDER *TWOMBLY* AND *IQBAL*, SUFFICIENT TO MAKE OUT A 42 U.S.C. § 1985(3) CLAIM

Seeking enforcement of facially neutral and generally applicable zoning laws does not constitute a conspiracy to violate civil rights.  The PAC, therefore, cannot survive *Fed. R. Civ. P.* 12(b)(6) scrutiny because it does not plead sufficient facts to state a claim under 42 U.S.C. § 1985(3).  As such, the amendment would be futile and Plaintiffs' *Fed. R. Civ. P.* 15 motion must be denied.

Courts should deny motions to amend when those amendments would be futile. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (internal citations omitted). In assessing futility, the proposed complaint must satisfy the standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Geness v. Cox*, 902 F.3d 344, 353-54 (3d Cir. 2018).

To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of citizenship. *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). Section 1985(3) conspiracy claims are subject to the *Twombly* and *Iqbal* standard. *See D'Antonio v. Borough of Allendale*, 2017 WL 701384, at *7, *11 (D.N.J. Feb. 21, 2017). The PAC fails to satisfy this standard, making amendment futile.

### 1. The PAC contains no colorable allegation that Mahwah's zoning ordinance or any other laws have been applied "unequally"

The PAC alleges, without factual support, that the HOA conspired with Mahwah's government to treat the Plaintiffs unequally. Plaintiffs cite efforts by the Defendants to enforce Mahwah's facially neutral and generally applicable Zoning Ordinances. While RMI was issued many summonses, that is only because they are the most frequent and irreverent offenders. Simply enforcing facially neutral and generally applicable laws against a group claiming religious affiliation, without more, does not give rise to a § 1985(3) claim. *See Suber v. Guinta*, 902 F.Supp.2d 591 (E.D. Pa. 2012) (holding that the mere enforcement of criminal laws against

16

patrons of a towns only bar serving the black community did not constitute a *per se* violation).
There, the Plaintiff, who owned a bar catering to Pittsburg's black community, brought an action
claiming that they were being targeted by law enforcement and, as a result, being treated
differently than bars in the white community.

> [The complaint alleged] that other "white" bars in Coatesville are treated
> differently. Specifically, the [plaintiffs] aver that [the plaintiffs' bar] is the
> only black bar in Coatesville. They further aver that the "Polish Club"
> located across the street from [the black owned bar] is not "harassed or
> bullied", or issued citations on a regular basis, as [the black owned bar]
> and the [plaintiffs] allegedly are.   [*Id.* at 601.]

That is to say, to sustain a § 1985(3) claim, it is not sufficient that a plaintiff is being
treated differently—it must be that a *similarly situated plaintiff* is being treated differently. That
is the crux of inequality for purposes of constitutional claims. Plaintiffs' neighbors are not acting
in wanton disregard for Mahwah's laws. They use their properties as permitted uses under the
Zoning Ordinance (single-family residences) and have all necessary permits for their homes.
There is simply no allegation the HOA residents are not in compliance with Mahwah's zoning
ordinances and other laws.

The sole allegations that compare Plaintiffs' violations to those by other residents come
in paragraph 68 of the PAC. This unconvincing attempt avers that HOA residents have similarly
violated Mahwah's Zoning Ordinance by pointing to instances where the single-family homes
put up a "brass horse, menorahs, Christmas trees, and wreaths, and have hosted large events with
as many as twenty-five cars parked on the road." PAC at ¶ 68. This grossly misapprehends
Mahwah's Zoning Ordinance and land-use procedures, as well as showing a fundamental
misunderstanding of the basic issues that underline this dispute. First, the HOA is unsure what
brass horse, menorahs, Christmas trees or wreaths the PAC refers to. There are no details of

who, what, when and where.[2]  But there is an allegation that these would constitute "structures" as the term is defined under Mahwah's Ordinance or the MLUL.  Second, there is no allegation that they were erected without permits.  Third, there is no allegation regarding the impropriety of the "large events with as many as twenty-five cars parked on the road."  *Id.*  While there are insufficient facts to determine what, if any, "event" the PAC contemplates (as it is not specified), Plaintiffs do not even allege that any aspect of those events was unlawful or unpermitted.  With these deficiencies, the PAC fall short of the exacting standard required under *Twombly* and *Iqbal*.

Plaintiffs are not comparing apples and apples, as an equal-protection claim requires. Again, this highlights the fact that Plaintiffs' crucially misunderstand land-use substantive and procedural law.  First, it is axiomatic that a religious group "has no constitutional right to be free from reasonable zoning regulations nor does [it] have a constitutional right to build its house of worship wherever it pleases."  *Alger Bible Baptist Church v. Tp. of Moffatt*, 2014 WL 462354, at *6 (E.D. Mich. Feb. 5, 2014).  Next this court should note the cases cited in Plaintiffs' brief. Plaintiffs cite *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) in support of their claim that Mahwah's zoning enforcement violates their Free Exercise rights, forming the basis of their §§ 1983 and 1985(3) claims.  But the PAC fails to set forth facts that would bring this case under the *Lukumi Babalu Aye* rubric.

In *Lukumi Babalu Aye*, proponents of a Santeria congregation took steps to construct and open a church.  *Id.* at 525.  Unlike in this case, the congregation there received the "necessary licensing, inspection, and zoning approvals."  *Id.* at 526.  It bears repeating that neither RMI nor

---

[2] For the record, the HOA has no objection if the RMI want to temporarily display a Christmas tree, a wreath, and/or a menorah on the Property as long as the Mahwah's zoning ordinances are complied with.

RLN have ever applied for or received all necessary zoning or other approvals.[3]  But in *Lukumi Babalu Aye*, only after the approvals were issued, and facing the imminent construction of the Santeria church, the local governing body adopted a <u>new ordinance</u> outlawing practices fundamental to the Santeria faith.  *Id.*  The Supreme Court held that the action taken by the local government was a targeted effort to interfere with the practice of a specific religion.  In order to pass constitutional muster, those laws must be narrowly tailored to advance some compelling government interest.  *Id.* at 531-32.

The facts alleged in the PAC are easily distinguishable.  Plaintiffs have never received the necessary zoning or building approvals, and the relevant zoning ordinances are more than thirty years old (enacted well before RMI was conveyed the Property in 1995).  Instead, Plaintiffs' gripes are properly measured under *Employment Division v. Smith*, 494 U.S. 872 (1990) (*limited by statute*, 42 U.S.C. § 2000bb-1, *et seq.*), which held that facially neutral, generally applicable laws need only survive rational basis review.  *Id.*  The *Lukumi Babalu Aye* Court even affirmed this framework: "[i]n addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. at 531.  As the PAC admits, the C-200 Conservation Zone dates back (at least) to 1987.  PAC ¶ 50.  This is not a recently adopted ordinance.  Further, it applies to all lands within a zone that was delineated in large part by natural boundaries.  The zoning ordinance has been applied against the properties in the C-200

---

[3] There was a Mahwah Board of Adjustment application filed but withdrawn, a prior zoning permit for a single longhouse that was rescinded, and an April 2017 zoning permit application that was filed, denied and not appealed by RMI.

19

zone equally.  Moreover, Mahwah has 18 other zoning districts that allow religious use, a zone

that allows campgrounds, and other zones that allow public assemblies (either secular or

sectarian).

In support of their § 1985(3) claim, Plaintiffs cite the Second Circuit decision in

*Westchester Day School v. Vill. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007).  *See* ECF No. 42-4

at 21.  The plaintiff in *Westchester Day School* had applied for the relevant zoning permits.

Again, neither RNL nor RMI have taken the basic steps necessary to get approval from

Mahwah's land use authority (except as previously stated).  The zoning ordinances are

straightforward.  Applications are heard by the Mahwah land use board on a monthly basis.  This

litigation is more than 8 months old, and approximately one year has passed since the February

28, 2018 settlement agreement was executed and subsequently repudiated by RMI, which

settlement agreement required RMI to file an application with Mahwah's Zoning Board of

Adjustment.  Plaintiffs still have not filed their land use application (after they withdrew one

filed in June of 2017 after not prosecuting it).

Finally, the Supreme Court has only recognized two rights protected under § 1983(5): the

right to be free from involuntary servitude and the right to interstate travel.  *See Bray v.*

*Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993).  This case implicates neither of

those rights.

### 2. The PAC alleges no facts concerning a "conspiracy"—i.e., an agreement to commit some future unlawful act—between the Association and Mahwah

Nowhere does the PAC allege the essential elements of a conspiracy.  The Seventh

Circuit's discussion in *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007), (Easterbrook, J.) is

helpful:

> But where's the conspiracy? Plaintiffs treat all contact between prosecutors
> and complaining witnesses as "conspiracy." The minimum ingredient of a

20

> conspiracy, however, is an agreement to commit <u>some future unlawful act in pursuit of a joint objective</u>. The record in this case would not permit reasonable jurors to conclude that [a private citizen] and [a prosecutor] had a joint objective, let alone that they agreed to pursue it through unlawful acts. [The private citizen] complained to the prosecutor, seeking an end to what he deemed racist harassment; [the prosecutor] acted as she conceived the public interest to require. [The prosecutor] had no reason to do any favors for [the private citizen] and received nothing (except this lawsuit) in return for her official actions. No prosecutor handles a case in an isolation tank. Discussions with victims, witnesses, and police are common. If these ordinary acts amount to "conspiracy" to violate the Constitution, then immunities will be worthless and both witnesses and prosecutors would be induced to remain passive rather than enforce the criminal law vigorously.   *Id.* at 466-67.

Just using the word "conspiracy" in a complaint is insufficient.  The pleadings must allege supporting facts that would tend to show an unlawful agreement.  *Guinta*, 902 F.Supp.2d at 608.

The PAC contains no such allegations.  It appears that Plaintiffs are claiming § 1985(3) violations on the basis of HOA members reporting allegedly "inaccurate" information to the Mahwah Police Department in connection with criminal prosecutions brought against Perry and Smith.  PAC at ¶ 73.  First, it is clear from the video evidence that the statements made to the Mahwah Police Department by HOA member Olivari were 100% true and accurate.  But even if those (or other) statements were completely false, Plaintiffs could not base their 1985(3) claims on this incident.  At least one court sitting in the Third Circuit has held that "[t]he deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under [42 U.S.C. § 1985(3)]."  *Kahermanes v. Marchese*, 361 F.Supp. 168, 171 (E.D. Pa. 1973).

Further, the PAC is deficient because it attributes neither the alleged bad acts nor animus to the HOA.  "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Kush v. Rutledge*, 460 U.S.

719, 726 (1983).  "Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim."  *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir.1992).  The PAC contains no allegations tying the HOA to the complained-of conduct.

The PAC contains no allegations that the HOA acted with animus.  Paragraph 74 contains threadbare allegations about racial epithets.  It does not detail who is alleged to have made the statements, when (with any specificity) the alleged statements were made, or provide any other facts that would support the claim that these statements were being made on behalf of or at the behest of the HOA.  Recall that the HOA is a nonprofit homeowners association organized and operating under the laws of the State of New Jersey.  The HOA acts through its board of trustees and authorized agents.  *See, e.g.,* N.J.S.A. 15A:6-1.  And while the HOA does not concede that the statements set forth in Paragraph 74 were ever made, and certainly would not condone them, even if they were, it is of no moment.  The HOA cannot be held liable for the unauthorized conduct of its members (even assuming a member made such comments) or the public at large.  The HOA has never and will never authorize the type of statements alleged by the RMI.

As for Paragraph 73, the filing of criminal complaints against three RMI members: Harold Molt, Jr.; Dwaine Perry; and Steven Smith were made by one of the HOA's board of trustees.  Those complaints arose out of the events that occurred in May 2017.  Reporting criminal activity to law enforcement does not constitute a "conspiracy" under § 1985(3).  *See Anton v. Getty*, 78 F.3d 393, 369 n.5 (8th Cir. 1995); *see also Sand v. Steele*, 218 F.Supp.2d 788, 790 (E.D. Va. 2002) (finding that the officers "were merely living up to their duty as correctional officers to report a violation of prison policy by an inmate. . . .").  And it must be noted that Smith was convicted (although his appeal was not defended).  Perry was not convicted (because

22

the police charged him with a violation for which he could not be an "accessory").  Molt awaits

trial and was independently charged by a Grand Jury.

As the Tenth Circuit has noted, the prosecution of person for offending against other

townspeople by maintaining cattle in town without a permit in violation of nuisance ordinance

does not constitute a civil rights violation even if it is malicious.  *Martin v. King*, 417 F.2d 458

(10th Cir. 1969).  In any event, the HOA's efforts to report these crimes to the Mahwah police

department do not amount to an effort to unequally apply laws.  No other individuals, be it

members of RMI or not, engaged in conduct similar to Perry, Smith and Molt.  Perry is RMI's

Chief, and Smith is an attorney and in-house advisor.

**POINT III**

**PLAINTIFFS' CLAIMS AGAINST THE HOA
ARE BARRED UNDER THE FIRST AMENDMENT'S
FREE SPEECH AND PETITION CLAUSES**

Leave to file the PAC would be futile because Plaintiffs claims, insofar as they implicate

the HOA, are barred under the First Amendment.  Private actors like the HOA cannot face civil

liability under 42 U.S.C. § 1985(3) for engaging in protected speech or petitioning activities.

*See, e.g., Jian Zhang v. Biadu.com Inc.*, 10 F.Supp.3d 433, 436-44 (S.D.N.Y. 2014), *citing*

*Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (holding that the First Amendment is a defense to

tort suits).  The HOA and its residents also have First Amendment rights.  Plaintiffs' statutory

claims, whether under RLUIPA or 42 U.S.C. §§ 1983 or 1985(3), are subordinate to those

constitutional rights.  U.S. CONST. art. IV, § 2 ("The Constitution . . . shall be the supreme law of

the land.").  As such, the HOA cannot face statutory civil liability for exercising those rights.

The First Amendment protects both free expression and guarantees the right to petition

the government.  U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom

23

of speech . . . or the right of the people . . . to petition the Government for a redress of grievances.").  As such, protected conduct, for instance, petitioning elected officials to enforce local laws or publishing an op-ed, cannot form the basis of a tort claim like the one brought here under 42 U.S.C. § 1985(3).  Doing so would violate the Constitutional rights of the HOA and its members.  The PAC seeks to hold the HOA liable under a "conspiracy" theory.  *See* 42 U.S.C. 1985(3); *see also,* PAC at ¶¶ 107-112.  The PAC contains allegations involving HOA members and/or agents that amount to protected speech or petitioning.  As discussed above, the allegations conspicuously omit any claim that those acts were carried out at the direction of or on behalf of the HOA. Even if this Court accepts the allegations at face value—and, as set forth in the Declaration of the HOA's governing body, the HOA vehemently denies many, if not all, of the accusations leveled against it—Plaintiffs cannot prevail under the PAC because it seeks to hold the HOA liable for engaging in protected speech and petitioning activities that are immunized under the First Amendment's Free Speech and Petition clauses, respectively.

These allegations, which include publishing op-eds on matters of public concern; discussing public policy and the enforcement of local laws with democratically elected representatives; and reporting crimes and zoning violations to local law enforcement, violations that were tried and violations for which plaintiff RMI has, upon due process, been adjudged guilty 103 times by one Judge, and upheld after a trial *de novo* on the record of a second Judge (as to 102 of the 103 violations).  Not only are these activities constitutionally protected, they are the badges of the advanced citizenry that our democracy demands.  Imposing civil liability for this laudable civic participation would create a devastating chilling effect.

### A.  Plaintiffs' Claims are barred under the Free Speech Clause

Political speech is at the First Amendment's core.  The protection guaranteed under the Free Speech Clause is at its "zenith" where the speech concerns matters of public concern.  *See, e.g., Meyer v. Grant*, 486 U.S. 414, 425 (1988).  "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  *Snyder*, 562 U.S. at 452 (internal citations omitted).  Speech loses constitutional protections *only* when it falls into "historic and traditional categories long familiar to the bar."  *U.S. v. Stevens*, 559 U.S. 460, 470 (2010).  These categories include incitement, obscenity, defamation, or speech integral to criminal conduct.  *See U.S. v. Alvarez*, 567 U.S. 709, 718-19 (2012) (collecting cases).

Plaintiffs seek to impose civil liability against the HOA on the basis of its members' protected speech.  Plaintiffs complain that <u>HOA members</u> (as opposed to the HOA) allegedly publicly expressed their wish to drive RMI off of the Property.  PAC ¶ 70.  The use of the RMI Property has become an issue of great public concern.  HOA members are entitled to hold and express these opinions.  The HOA wants the zoning ordinances complied with, or RMI to obtain the use variance and site plan approval.

Plaintiffs next seek to hold the HOA liable because some HOA members are alleged to have "publicly demand[ed] that [Mahwah] impose fines and jail time on [RMI] members."  PAC at ¶ 76. Again, while not attributed to the HOA, even if these comments were made by individual HOA members, they regard matters of public concern and are protected speech.  Debate on matters of public concern "should be uninhibited, robust, and wide-open. . . ."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  The enforcement of criminal and other laws are matters of public concern.  The PAC sets forth no basis to except this speech from constitutional protection.  We should note that the HOA's attorney attended the decision of the Municipal

Court summonses, and while the HOA could have taken a position as the "victim," it did not comment (and therefore did not advocate for a penalty higher than the minimum).

Finally, Plaintiffs accuse HOA members, without identifying the speakers or even noting the dates on which the alleged statements were made, of making xenophobic and racist remarks. PAC at ¶74. There is absolutely no evidence to support these allegations and the HOA vehemently denies any involvement in such comments. But even if they were made, those comments are not (and, indeed cannot be) attributed to the HOA. There is no allegation that the HOA authorized such comments. The HOA believes that the RMI narrative is intended to escalate hostility towards the HOA and engender sympathy towards the Plaintiffs. These unverified allegations without any factual support have appeared in every tribunal—some unidentified person said something against an RMI member. While it sensationalizes the case, and has been a common tactic employed by Plaintiffs in every proceeding, there is simply no factual basis. But even reading the PAC in a light most favorable to the Plaintiff and even inferring some type of attribution to the Association, the alleged comments—however xenophobic or racially charged—would constitute protected speech. *See Matal v. Tam*, 582 U.S. ____, 137 S.Ct. 1744 (2017)*; Snyder v. Phelps*, 562 U.S. 443 (2011); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992).

### B.  Plaintiffs' Claims are barred under the Petition Clause

The First Amendment also immunizes private actors from civil liability arising out of protected petitioning activities. *See Eastern R.R. Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965). The *Noerr-Pennington* doctrine emerged in the antitrust context, but has since been applied as a defense in civil litigation generally. *See Herr v. Pequea Tp.*, 274 F.3d 109, 115 (3d Cir. 2001)*,*

*abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Tp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003).  The Third Circuit has confirmed that the Petition Clause provides a defense to conspiracy claims brought under 42 U.S.C. §1985(3).  *See Mariana v. Fisher*, 338 F.3d 189, 199-200 (3d Cir. 2003) (*citing Manistee Town Center v. City of Glendale,* 227 F.3d 1090 (9th Cir. 2000) and *Miracle Mile Assocs. v. City of Rochester,* 617 F.2d 18 (2d Cir. 1980)).

Further, there is agreement amongst the Circuits that *Noerr-Pennington* immunity protects objectors in the zoning context. S*ee Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 615 (8th Cir. 1980) (immunizing conduct under *Noerr-Pennington* that included "demanding a zoning amendment and participating in the spread of false derogatory rumors about [a developer's] proposed housing project"); *see also White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) ("[t]he First Amendment guarantees the right 'to petition the Government for a redress of grievances.' The plaintiffs exercised this right by attending and speaking out at Zoning Adjustment Board hearings . . . .")

In this case, the HOA stands accused of instituting "numerous unfounded lawsuits against [the RMI] in Bergen County Superior Court."  PAC at ¶82.  First, the HOA has only instituted one lawsuit in the Bergen County Superior Court—the Association Enforcement Action.  But in any event, that sole lawsuit is not "unfounded."  As the record makes clear, RMI is and has been in blatant violation of Mahwah's zoning ordinances along with a slew of other laws.  ANC Decl., Ex. N.  RMI has been found guilty of 103 zoning violations (102 of which were upheld on appeal in a trial *de novo*).  ANC Decl., Exs. N, O.  The Enforcement Actions are set for trial shortly.  *Id.* Given the pleadings and facts, the HOA expects a favorable outcome.

But even if the Association Enforcement Action was "unfounded," it would still be protected under *Noerr-Pennington*.  In order to fall within the "sham litigation" exception to

*Noerr-Pennington*, in the context of a sole lawsuit, that suit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993) ("PREI").[4]  Given that RMI have already been found guilty of violating Mahwah's zoning and municipal ordinances on first 103 counts (102 of which were upheld on appeal), and since the Enforcement Actions seek injunctive relief with regards to the same conduct, and since RMI applied for a use variance for prohibited uses that violate the ordinances (later withdrawing the application), the HOA reasonably expects success on the merits.

The PAC also bases its conspiracy claim on allegations that the Mayor and certain Council members visited and conferred with HOA residents regarding RMI's use of the RMI Property [PAC ¶ 71];  that the HOA hired a PR firm to publish a letter to the editor opposing the RMI's use of the Property [PAC ¶ 72]; and that some unidentified HOA resident (with no allegation that the HOA board of trustees authorized such conduct), made statements at a township council public meeting regarding the need to enforce local laws against Plaintiffs [PAC ¶ 80].  Such statements, particularly in the context of a Township Council meeting, constitute core petitioning conduct protected under the First Amendment, the likes of which cannot be reached on a 1985(3) conspiracy claim.  *See Affordable Housing Dev. Corp. v. City of Fresno*, 433 F.3d 1182, (9th Cir. 2006) (immunizing the circulating of flyers, organizing of  meetings, commentating to elected officials, and other related activity taken in opposition to the development of low-income housing).

---

[4] When a case involves a "whole series of lawsuits or other legal action," courts apply the more deferential standard announced in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).  *See, e.g., Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co., LLC*, 240 F.Supp.3d 299, 307 (D.N.J. 2017).  Under that standard, courts conduct a "holistic review" that includes win-loss percentages.  *Id.* at 307-08.  The convictions on 103 counts tips this balancing decidedly against Plaintiffs.

Plaintiffs also base their §1985(3) claim on allegations that the HOA made criminal complaints to the Mahwah police department and that an HOA member filed a police report (but declined to file official charges) for stolen electricity.  PAC ¶¶ 73, 77.  The filing of criminal complaints constitutes protected petitioning.  *See Kahermanes v. Marchese*, 361 F.Supp. 168, 171 (E.D. Pa. 1973) (holding that the reporting of knowingly false information to law enforcement could not support a conspiracy claim under 42 U.S.C. § 1985(3)).  Further, the Circuit Courts are in agreement that merely informing a governmental official that a law has been violated does not violate any constitutional rights.  *See, e.g., Scotto v. Almenas*, 143 F.3d 105, 111-13 (2d Cir. 1998); *Anton v. Getty*, 78 F.3d 393, 396 n.5 (8th Cir. 1995).

The Third Circuit's decision in *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155 (3d Cir. 1988), which concerns similar facts, is instructive.  In *Brownsville*, the defendants were accused of conspiring to persuade public officials to decertify the plaintiff's nursing home, which was alleged to have violated a slew of federal and state regulations.  *Id.* at 157-58.  The defendants allegedly reported violations to relevant government actors and even instituted a PR campaign that culminated in the airing of a CBS television program critical of the subject nursing home.  *Id.*  The Third Circuit held that in a § 1985(3) civil conspiracy suit, private citizens who were dismayed at the conditions of a nursing home were immune from damages arising out of <u>attempts to persuade public officials</u> to decertify the nursing home.  *Id.* at 160 (emphasis supplied) (collecting cases concerning private conduct directed at influencing government action).

Similarly, the Ninth Circuit has squarely held that the Petition Clause immunizes a homeowners association's active opposition to a church's zoning application.  In *Christian Gospel Church, Inc. v. City & County of San Francisco,* 896 F.2d 1221 (9th Cir. 1990),

*superseded on other grounds by Arizona Dream Act Coalition v. Brewer*, 818 F.3d 901 (9th Cir. 2016), the Christian Gospel Church applied for a conditional use authorization to establish a church on a lot zoned for single-family residences. *Id.* at 1222-23. The association engaged in various petitioning activities and published a "letter to the editor." *Id.* at 1226. The Ninth Circuit confirmed that the association's activities were fully protected by the First Amendment. *Id.* The association members "were doing what citizens should be encouraged to do, taking an active role in the decisions of government." *Id.* at 1226.

Finally, Plaintiffs make much of the HOA's alleged intent, making repeated accusations of religious animus. While the PAC contains zero allegations that would support attributing this conduct to the HOA, animus has no bearing on the *Noerr-Pennington* calculus. When confronted with this very issue—that is, whether a petitioner's intent would void a *Noerr-Pennington* defense—the Supreme Court "answer[ed] this question in the negative and [held] that an objectively reasonable effort" to petition the government, even when motivated by animus, is entitled to Petition Clause immunity. *PREI*, 508 U.S. at 57.

## CONCLUSION

Because of the various pending state-court actions that concern the same facts, claims and defenses, this case should be dismissed. Alternatively, if this case proceeds, this Court should deny Plaintiffs' application for leave to file the Proposed Amended Complaint because it fails to make out a claim against the Association, rendering the PAC futile. Further, the complained-of conduct is protected under the Free Speech and Petition Clauses of the First Amendment.

Respectfully submitted,

Dated: January 23, 2019

By: */s/ Arthur N. Chagaris*
Arthur N. Chagaris, Esq.