CRAIG CARPENITO
United States Attorney
MICHAEL E. CAMPION
SUSAN MILLENKY
Assistant United States Attorneys
970 Broad Street
Newark, NJ 07102
Tel:  (973) 297-2067

ERIC S. DREIBAND
Assistant Attorney General
SAMEENA SHINA MAJEED
Chief
NOAH SACKS
Trial Attorney
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Tel: (202) 305-1901

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC. and RAMAPOUGH LENAPE NATION, <br><br>                Plaintiffs, <br><br>     v. <br><br> TOWNSHIP OF MAHWAH, RAMAPO HUNT & POLO CLUB ASSOC., INC., GERALDINE ENTRUP, THOMAS MULVEY, JOHN AND JANE DOES 1-14, JOHN DOE ENTITIES 1 AND 2, <br><br>           Defendants. | HON. CLAIRE C. CECCHI <br><br> Civil Action No. 2:18-9228 (CCC) (JBC) |

---

## STATEMENT OF INTEREST OF
## THE UNITED STATES OF AMERICA

---

On the Brief:

MICHAEL E. CAMPION
SUSAN MILLENKY
Assistant U.S. Attorneys

NOAH SACKS
Trial Attorney

**Table of Contents**

Introduction ................................................................................................ 1

Background ................................................................................................. 2

Argument .................................................................................................... 6

   I.  The Proposed Amended Complaint States a Substantial Burden Claim ........... 6

      A.  Legal Standard for a Finding of Substantial Burden ........................ 7

      B.  Plaintiffs' Allegation of Substantial Burden ...................................... 10

   II.  The Proposed Amended Complaint States an Equal Terms Claim ................. 14

   III.  The Ramapough's RLUIPA Claims are Ripe for Adjudication ........................ 17

Conclusion ................................................................................................ 23

# Table of Authorities

<u>Cases</u>

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ............................................................. 18

*Adkins v. Kaspar,*
   393 F.3d 559 (5th Cir. 2003) ................................................ 10

*Al Falah Ctr. v. Twp. of Bridgewater,*
   No. 11-cv-2397, 2013 WL 12322637 (D.N.J. Sept. 30, 2013) ............................ 12, 17

*Albanian Associated Fund v. Twp. of Wayne,*
   No. 06-cv-3217, 2007 WL 2904194 (D.N.J. Oct. 1, 2007) ........................................ 9

*Bethel World Outreach Ministries v. Montgomery Cnty. Council,*
   706 F.3d 548 (4th Cir. 2013) .............................................. *passim*

*Bikur Cholim, Inc. v. Vill. of Suffern,*
   664 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................ 22

*Chabad Lubavitch of Litchfield Cnty. v. Town of Litchfield,*
   768 F.3d 183 (2d Cir. 2014) ................................................ 8, 9

*Church of Christ, Scientist, of New York City v. City of New York,*
   626 F.3d 667 (2d Cir. 2010) .............................................. 17

*Church of Hills of Twp. of Bedminster v. Twp. of Bedminster,*
   No. 05-cv-3332, 2006 WL 462674 (D.N.J. Feb. 24, 2006) ............................ 8, 9, 12

*Congregation Anshei Roosevelt v. Planning & Zoning Bd. of Borough of Roosevelt,*
   338 F. App'x 214 (3d Cir. 2009) ...................................... 21, 22

*Congregation Kollel, Inc. v. Twp. of Howell, N.J.,*
   No. 16-cv-2457, 2017 WL 637689 (D.N.J. Feb. 16, 2017) .............................. 20, 21

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY,*
   280 F. Supp. 3d 426 (S.D.N.Y. 2017) ................................ 11

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,*
   282 F.3d 83 (2d Cir. 2002) ................................................ 21

*First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp.,*

No. 05-cv-6389, 2012 WL 645986 (E.D. Pa. Feb. 29, 2012) ..........................................8

*Garden State Islamic Ctr. v. City of Vineland,*
No. 17-cv-1209, 2018 WL 6523444 (D.N.J. Dec. 12, 2018) ....................................18

*Guatay Christian Fellowship v. Cnty. of San Diego,*
670 F.3d 957 (9th Cir. 2011) ...................................................................................22

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter,*
456 F.3d 978 (9th Cir. 2006) ...........................................................................9, 11, 12

*Huberty v. U.S. Ambassador to Costa Rica,*
2007 WL 3119284 (M.D. Pa. Oct. 22, 2007),
*aff'd*, 316 F. App'x 120 (3d Cir. 2008) .......................................................................4

*Jesus Christ is the Answer Ministries v. Baltimore Cnty.,*
915 F.3d 256 (4th Cir. 2019) ...................................................................................10

*Konikov v. Orange Cty., Fla.,*
410 F.3d 1317 (11th Cir. 2005) ...........................................................................19, 20

*Lauderbaugh v. Hopewell Township,*
319 F.3d 568 (3d Cir. 2003)...............................................................................18, 20

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,*
100 F. App'x 70 (3d Cir. 2004) ..................................................................................7

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,*
510 F.3d 253 (3d Cir. 2007)...............................................................................14, 17

*Livingston Christian Sch. v. Genoa Charter Twp.,*
858 F.3d 996 (6th Cir. 2017),
*cert. denied*, 138 S. Ct. 1696 (2018) ......................................................................8, 9

*Mintz v. Roman Catholic Bishop of Springfield,*
424 F. Supp. 2d 309 (D. Mass. 2006) .....................................................................10

*Murphy v. New Milford Zoning Comm'n,*
402 F.3d 342 (2d Cir. 2005)....................................................................................21

*Peachlum v. City of York,*
333 F.3d 429 (3d Cir. 2003)................................................................................18-20

iii

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)................................................................... 4

*Reedy v. Borough of Collingswood*,
   204 F. App'x 110 (3d Cir. 2006) ........................................................... 13

*S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment for Borough of Stratford*, 614, 862 A.2d 1204 (N.J. App. Div. 2004)............................ 13

*Saints Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005) ........................... 9, 12, 13

*Shane v. Fauver*,
   213 F. 3d 113 (3d Cir. 2000)................................................................... 6

*United States v. Bensalem Twp.*,
   220 F. Supp. 3d 615 (E.D. Pa. 2016)................................................ 15, 16

*Washington v. Klem*,
   497 F.3d 272 (3d Cir. 2007)................................................................ 7, 8

*Westchester Day Sch. v. Vill. of Mamaroneck*,
   504 F.3d 338 (2d Cir. 2007)......................................................... *passim*

*Williamson Planning Comm'n v. Hamilton Bank*,
   473 U.S. 172 (1985) ............................................................................ 18

## Statutes

28 U.S.C. § 517........................................................................................ 1
42 U.S.C. § 2000cc-2(f)............................................................................ 1
42 U.S.C. § 2000cc-3(g) ........................................................................... 7
42 U.S.C. § 2000cc-5(7) ........................................................................... 7
42 U.S.C. § 2000cc-(a)(1)...................................................................... 1, 7
42 U.S.C. § 2000cc-(b)(1)..................................................................... 1, 14
N.J. Stat. Ann. § 40:55D-68.................................................................... 13

**Introduction**

This action involves allegations by plaintiffs Ramapough Mountain Indians, Inc. and Ramapough Lenape Nation (collectively, the "Ramapough" or "Plaintiffs") that defendants the Township of Mahwah and Mahwah officials Geraldine Entrup and Thomas Mulvaney violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-(a)(1) and (b)(1).

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." The Department of Justice has authority to enforce RLUIPA and to intervene in proceedings involving RLUIPA. 42 U.S.C. § 2000cc-2(f). Because this litigation implicates the proper interpretation and application of RLUIPA, the United States has a strong interest in the issues raised by Plaintiffs' motion to amend the complaint and believes that its participation will aid the Court.

The scope of the United States' Statement of Interest is limited to the issue of whether Plaintiffs' RLUIPA claims are ripe and whether the proposed amended complaint states a claim against the Township of Mahwah ("Mahwah" or "Township") for violations of RLUIPA's substantial burden and equal terms provisions. The United States contends that the RLUIPA claims are ripe for adjudication and that the proposed amended pleading states a claim for violations of those provisions. The

1

United States takes no position in this Statement of Interest on whether Mahwah has violated RLUIPA.

## Background

The proposed amended complaint ("Complaint") details the Ramapough's historical and current religious exercise on a parcel of property in Mahwah. The property, known to the Ramapough as "Split Rock Sweetwater Prayer Camp" or "Sweet Water," is located at 95 Halifax Road in Mahwah. Compl. (ECF No. 42-2) ¶¶ 3, 7. The Ramapough allege that Sweet Water is ancestral land central to the tribe's religious beliefs and worship. *Id.* ¶¶ 7, 26, 33. Although the Ramapough acquired the title to Sweet Water in 1995, they have been worshipping there since before Mahwah was incorporated in 1849. *Id.* ¶¶ 26-29.

The Ramapough believe in a sacred connection between human beings and nature, that they have a responsibility to live in balance with nature, and that they have a duty to protect their sacred lands through environmental stewardship. *Id.* ¶ 6; *see also id.* ¶ 32 (setting forth the Ramapough's "sincerely held religious beliefs that the Earth and their homeland must be honored and protected"). They allege that Sweet Water is "extraordinarily sacred" to the tribe because it is "one of only a few ceremonial sites left to the Ramapough after years of historic dispossession, discrimination, and marginalization." *Id.* ¶¶ 30-31, 33. Sweet Water is "uniquely situated" for the tribe's religious ceremonies due in part to its proximity to other sacred sites, including the meeting place of the Mahwah and Ramapo rivers. *Id.* ¶ 34.

The Complaint alleges that in 1987, the Township's zoning code designated Sweet Water to be located in the C-200 zoning district. *Id.* ¶ 50. The C-200 district allows as permitted uses "[p]ublic open spaces . . . arboretums, botanical gardens, historical edifices, woodland areas, hunting and fishing facilities, and other similar uses [as well as] [a]gricultural uses [and] [m]unicipal facilities." *Id.* ¶ 51. The zoning code further provides that the C-200 zoning district is established "to protect the various environmental resources present in these areas." *Id.* ¶¶ 51-52. The Ramapough believe that this zoning purpose aligns with "their religious mission to keep their sacred land ecologically healthy." *Id.* ¶ 52.

In the fall of 2011, Township officials issued a complaint to the Ramapough, alleging that the placement of poles around a prayer circle in Sweet Water violated the zoning code. *Id.* ¶ 53. In response, on December 12, 2011, the Ramapough submitted a zoning permit application that sought recognition of the continued use of Sweet Water for prayer and cultural assembly. *Id.* ¶ 54. In January 2012, the Mahwah Zoning Official issued a zoning permit that recognized the tribe's right to use Sweet Water for those purposes. *Id.* ¶ 55; Compl. Ex. E. Since obtaining the 2012 zoning permit, the Ramapough have worshiped at Sweet Water openly. *Id.* ¶¶ 56. This includes individual and group prayer; water, pipe, and tobacco ceremonies; memorial services; meditation; weddings; and other worship. *Id.* ¶¶ 35, 37-39. Three structures currently or formerly at Sweet Water are central to the tribe's religious exercise, including a stone altar, which serves as a physical embodiment of tribe members' prayers; a sweat lodge, constructed of natural materials, used for healing

3

and prayer; and a prayer circle, surrounded by poles. *Id.* ¶¶ 36, 43 45. The Ramapough allege that they are unable to worship freely and exercise their faith without these structures. *Id.* ¶¶ 49, 87.

On September 15, 2017, without notice or a hearing, Mahwah sent a letter that purported to revoke the 2012 permit that allowed the Ramapough to use Sweet Water for prayer and assembly. *Id.* ¶¶ 10, 57; Compl. Ex. A. At about the same time, Mahwah launched a number of civil and criminal proceedings against the Ramapough for purported violations of the zoning code related to the Ramapough's religious use of the property. Through these zoning enforcement actions, Mahwah sought to enjoin the Ramapough from using Sweet Water as a prayer ground and require the tribe to demolish religious structures on the property. *Id.* ¶¶ 65, 79, Ex. H. The criminal action resulted in fines and courts costs of $7,140. *See* January 10, 2018 *Judgment after Trial,* ECF No. 75-6.[1] Notably, during these proceedings, Mahwah took the position that more than two people praying at Sweet Water violates the municipal code. Compl. ¶ 59. Before then, Mahwah had never issued a zoning violation summons to secular or religious entities for activity involving more than two persons praying. *Id.*

---

[1] "In reviewing a motion to dismiss, a court may consider matters of public record*." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Huberty v. U.S. Ambassador to Costa Rica*, 2007 WL 3119284, at *1 (M.D. Pa. Oct. 22, 2007), *aff'd*, 316 F. App'x 120 (3d Cir. 2008) (holding that, when reviewing ripeness, a court may consider "matters of public record such as court records").

In January 2018, the Township attorney told the Bergen County Superior Court that Mahwah was prepared to use "self-help" to prohibit prayer at Sweet Water.  *Id.* ¶ 78.  Later that month, Mahwah instructed the tribe that it must cease using the property for religious purposes or it would impose daily summonses.  *Id.* ¶ 61; Ex. D.  In April 2018, Mahwah began to issue summonses that targeted not just structures on the property but also the Ramapough's "religious use" of the land, carrying fines of up to $12,500 per day.  *Id.* ¶¶ 11-12; Ex. B.  The Township has continued to issue daily summonses against the Ramapough for their religious use of the property.  As of September 21, 2018, these fines exceeded $1.45 million.  *Id.* ¶ 64.

The Complaint alleges that the Township's enforcement of its zoning code has caused the Ramapough to remove several structures, suppressed the tribe's use of the land, and rendered religious exercise there "effectively impracticable."  *Id.* ¶¶ 49, 61, 69.  The Complaint also alleges that seeking a use variance to worship at Sweet Water would be futile in light of the Township's pattern of harassment and discrimination.  *Id.* ¶ 67.

The Complaint further alleges that Mahwah has selectively enforced its zoning code in a manner that has treated the Ramapough on terms less equal than non-religious assemblies or institutions.  *Id.* ¶¶ 118, 121-22, 125; *see also id.* ¶ 68.  The Complaint alleges that landowners in the C-200 zoning district have placed religious and non-religious structures on their property without receiving citations or fines.  *Id.* ¶ 68.  The Ramapough, however, have received daily fines for placing modest religious structures on their property.  *Id.* ¶¶ 62-63, 65.  The Complaint alleges that

landowners in the C-200 zoning district are free to host gatherings of more than two people but that the Township has read the zoning code to prohibit as few as three people gathering to pray at Sweet Water. *Id.* ¶ 58-59, 68. The Complaint further alleges that the Township has allowed landowners in the C-200 zoning district to host assemblies with as many as 25 cars parked on adjacent roads without receiving a citation or fine, but has prevented the Ramapough from hosting comparably sized religious assemblies. *Id.* ¶¶ 58-59, 68. The Complaint alleges that Mahwah's zoning code allows landowners and others to engage in various forms of secular outdoor activity, including hiking, horseback riding, hunting, and fishing, *id.* ¶¶ 51-52, 59, but the Township has enforced the code against Ramapough to prevent them from conducting outdoor prayers at Sweet Water, *id.* ¶¶ 53, 58-59, 61-63.

## Argument

### I.    The Proposed Amended Complaint States a Substantial Burden Claim[2]

The Complaint alleges that Mahwah has imposed a substantial burden on the Ramapough's exercise of religion through its unilateral rescission of a 2012 zoning permit that recognized religious assembly at Sweet Water and enforcement of the Township's zoning code in a manner that severely restricted the Ramapough from using the land for religious purposes.

---

[2]   The Township argues that amendment of the pleading in this matter would be futile. Opp. (ECF No. 71) at 4-5. Courts will freely grant leave to amend unless there is a showing of "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Shane v. Fauver*, 213 F. 3d 113, 115 (3d Cir. 2000) (internal quotation marks and citation omitted). To assess futility, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citations omitted).

## A.  Legal Standard for a Finding of Substantial Burden

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution" unless the government demonstrates that the imposition of that burden is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc(a)(1).  The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise."  42 U.S.C. § 2000cc-5(7).  While RLUIPA does not define the term "substantial burden," the Act should be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).

The Third Circuit[3] has held that a substantial burden exists when "the government puts substantial pressure on an adherent to substantially modify his

---

[3]  Although *Washington v. Klem* analyzed whether there was a substantial burden under the institutionalized person section of RLUIPA, the Third Circuit would likely apply the same standard in cases involving land use, as the cases cited below demonstrate.  The Third Circuit has not set forth a clear standard under RLUIPA's substantial burden provision in the land use context.   In *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 100 F. App'x 70, 77 (3d Cir. 2004), a non-precedential decision, the Third Circuit held that there was no likelihood of success on a substantial burden claim where the "opportunity for religious exercise was not curtailed" by the challenged government action, because the religious organization had operated in another location within the jurisdiction for many years and because it "could have operated . . . by right in other [zoning] districts."   Although the court provided only this cursory analysis, it is consistent with the holistic substantial

behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007); *see First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp.*, No. 05-cv-6389, 2012 WL 645986, at *13 (E.D. Pa. Feb. 29, 2012) (adopting and applying *Klem's* substantial burden test in the land use context); *see also Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013) ("[E]very one of our sister circuits to have considered the question has held that, in the land use context, a plaintiff can succeed on a substantial burden claim by establishing that a government regulation puts substantial pressure on it to modify its behavior." (citing cases)).   Such pressure must more than merely "inconvenience" religious exercise to constitute a substantial burden. *Church of Hills of Twp. of Bedminster v. Twp. of Bedminster*, No. 05-cv-3332, 2006 WL 462674, at *6 (D.N.J. Feb. 24, 2006).  There must be a "close nexus between the coerced or impeded conduct and the institution's religious exercise." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007).

Courts assessing substantial burden determine whether, given the totality of the circumstances, the government's imposition or application of land use regulations substantially inhibits religious exercise rather than merely inconveniences it.  *See, e.g.*, *Bethel*, 706 F.3d at 558; *Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1003-04 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1696 (2018); *Chabad Lubavitch of Litchfield Cnty. v. Town of Litchfield*, 768 F.3d 183, 195-96 (2d Cir.

---

burden framework that considers the totality of the circumstances and that has been adopted by other circuits, as described below.

2014); *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006).  In so doing, a court should take into account a party's religious needs. For example, denying a religious institution's need to establish a place of worship on a new property or to expand or modify its existing property to facilitate or accommodate its growing congregation may lead to a finding of a substantial burden. *See, e.g.*, *Bethel*, 706 F.3d at 558; *Chabad Lubavitch*, 768 F.3d at 188; *Saints Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 898 (7th Cir. 2005); *Guru Nanak*, 456 F.3d at 989; *Westchester Day Sch.*, 504 F. 3d at 347-348, 352; *Church of Hills of Twp. of Bedminster*, 2006 WL 462674, at *6.  A complete bar on all religious uses of a property is not required to establish a substantial burden.  Instead, courts consider whether the government's decision— including a decision that restricts the size or scope of a proposed use rather than forbidding religious use altogether—prevents a party from carrying out its religious functions.  *See, e.g.*, *Bethel*, 706 F.3d at 557-60; *Livingston Christian Sch.*, 858 F.3d at 1006; *Westchester Day Sch.*, 504 F.3d at 349, 352.

A substantial burden may also exist when government action leaves an organization without "quick, reliable, and financially feasible alternatives" to expand or locate facilities necessary for its religious exercise, *Westchester Day Sch.*, 504 F.3d at 352, or imposes the "delay, uncertainty and expense" of identifying another suitable property, *e.g.*, *Bethel*, 706 F.3d at 557; *Albanian Associated Fund v. Twp. of Wayne*, No. 06-cv-3217, 2007 WL 2904194, at *1, 10 (D.N.J. Oct. 1, 2007) (requiring plaintiff to find another location within the municipality may constitute a substantial

burden). Court also will consider whether a plaintiff had a reasonable expectation that it could use the property for its religious purposes. *Jesus Christ is the Answer Ministries v. Baltimore Cnty.*, 915 F.3d 256, 261 (4th Cir. 2019); *Bethel,* 706 F.3d at 558. Additionally, courts may consider whether the government's decision (or decisionmaking process) was arbitrary and capricious or unlawful, such that the institution received "less than even-handed treatment." *Westchester Day Sch.*, 504 F.3d at 351.

Whether a government's application of a land use regulation constitutes a substantial burden on a plaintiff's religious exercise is a fact-intensive inquiry that typically is not well suited for disposition at the motion to dismiss stage. *See Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2003) (noting that the test for substantial burden "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden on an adherent's religious exercise"); *see also Mintz v. Roman Catholic Bishop of Springfield*, 424 F. Supp. 2d 309, 319 (D. Mass. 2006) (observing that the Supreme Court has "made clear" that what constitutes a substantial burden is "intensely fact-specific.").

### B.  Plaintiffs' Allegation of Substantial Burden

In this case, the Complaint alleges facts that, if true, constitute a substantial burden on religious exercise. The Ramapough's worship at Sweet Water includes individual prayer, group prayer, and various religious ceremonies. Compl. ¶¶ 35, 37-39. The Ramapough allege that worship at Sweet Water—where the tribe asserts it

has worshiped for centuries—is central to the tribe's religious exercise. *Id.* ¶¶ 6-7, 30-33, 26, n.2.

The Ramapough have further alleged that the Township unilaterally rescinded the 2012 permit that recognized religious use of the land, ordered the Ramapough to remove all structures on the land and to stop religious use, issued daily summonses that punished the Ramapough's religious use of Sweet Water, sought to limit the number of people permitted on the property to worship, threatened to engage in self-help, demanded the removal of structures central to the Ramapough's worship, and initiated civil and criminal enforcement proceedings. *Id.* ¶¶ 9-10, 48, 57, 59-66.[4]

This near complete denial of the ability to worship on the property strongly supports a substantial burden claim. *Westchester Day Sch*, 504 F.3d at 350; *Guru Nanak*, 456 F.3d at 992. The Complaint is clear: "the Township's actions have significantly chilled Ramapough's use of the land for religious purposes" and "many members of the Ramapough have been scared to enter the lands at Sweet Water and have ceased practicing their religion at the site." *Id.* ¶ 69. Taken together, the allegations in the Complaint describe a substantial burden on the Ramapough's religious exercise. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 475 (S.D.N.Y. 2017) ("RLUIPA protects religious

---

[4]   In light of these various alleged infringements on the Ramapough's religious exercise at the site, the United States finds the Defendant's argument on pp. 24-25 curious. The Ramapough are not arguing that applying for a variance would be a substantial burden under RLUIPA, as did the plaintiffs in the cases cited by the Township. They are arguing that the various ways in which the Township already has enforced its zoning code to infringe upon the Ramapough's religious exercise constitute a substantial burden.

institutions from land use regulations that substantially affect their ability to use their property in the sincere exercise of their religion."); *Church of Hills of Twp. of Bedminster*, 2006 WL 462674, at *6 (plaintiffs adequately pled substantial burden based on congregation's inability to worship together).

The Ramapough have also alleged that they do not have any viable alternative location on which to engage in their religious practice.  Compl. ¶¶ 7, 33-34, 60 69; *see also Sts. Constantine & Helen*, 396 F.3d at 901; *Bethel*, 706 F.3d at 557.   The Ramapough allege that Sweet Water—the site of a historical Ramapough burial ground—is sacred ancestral land and that worshipping at an alternative location would burden the tribe's religious exercise.   Compl. ¶¶ 7, 33, 60; *see Al Falah Ctr. v. Twp. of Bridgewater*, No. 11-cv-2397, 2013 WL 12322637, at *12 (D.N.J. Sept. 30, 2013) (effect of availability of alternative sites on substantial burden claim is a question for the factfinder).

Furthermore, the Ramapough have alleged that the Township's enforcement actions against them were biased, unjustified, and inconsistently applied.   The Complaint alleges that the Township's "highly restrictive" and "inconsistent and targeted interpretation" of the zoning code was meant to "completely impede the Ramapough's religious use of and assembly at Sweet Water."  Compl. ¶ 60; *see also id.*  ¶¶ 57-68. These facts, if true, indicate that it is uncertain that any future proposal would gain the Township's approval.  That also supports a substantial burden claim. *See, e.g.*, *Guru Nanak*, 456 F.3d at 990-91 (noting that "inconsistent decision-making" by city government constitutes a substantial burden because it is "fraught with

12

uncertainty."); *Westchester Day Sch.*, 504 F.3d at 350-51 (noting that "arbitrary, capricious, or unlawful decision-making" could be proof of substantial burden); *Sts. Constantine & Helen*, 396 F.3d at 901 (noting that a substantial burden may exist where the government's "delegat[ion] of standardless discretion" in land use decisions causes a religious institution "delay, uncertainty, and expense").

The Ramapough's allegations, if true, also establish that they had a reasonable expectation of using Sweet Water for religious worship.  In 2012, the Township issued the Ramapough a zoning permit that recognized its right to use the land for religious purposes and cultural assembly, and approved the use of religious structures at the property.  These allegations are similar to those in *Bethel*.  There, the Fourth Circuit found that a church had a reasonable expectation regarding its use of the land because the municipality permitted religious worship in the zoning area at the time the church purchased its property.  *Bethel*, 706 F.3d at 558.  Moreover, the Ramapough allege that they had been using the property for religious worship long before it was designated in the C-200 zoning district.  Compl. ¶¶ 26-29, 50.  Under New Jersey law, "[a]ny nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot."  N.J. Stat. Ann. § 40:55D-68; *Reedy v. Borough of Collingswood*, 204 F. App'x 110, 115 (3d Cir. 2006) (holding that section 40:55D-68 "permits a use to continue indefinitely after it has been rendered nonconforming by a zoning amendment"); *S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment for Borough of Stratford*, 862 A.2d 1204, 1211 (N.J. App. Div. 2004) ("A change in ownership or tenancy does not terminate a nonconforming use.").

For all of these reasons, the Ramapough's Complaint states a claim for violation of the substantial burden provision of RLUIPA.

## II.    The Proposed Amended Complaint States an Equal Terms Claim

The Complaint also alleges that Mahwah violated RLUIPA's equal terms provision by selectively enforcing its zoning code in a manner that treats the Ramapough's religious worship and assembly on less than equal terms with nonreligious assemblies and entities.  Compl. ¶¶ 51-52, 58-59, 68, 125.  Specifically, the Complaint alleges that Mahwah enforced or threatened to enforce its zoning code to prevent the Ramapough's religious worship and assembly at Sweet Water but did not take similar enforcement action against secular entities that engaged in substantially similar nonreligious activities.  *Id.*

Under RLUIPA's equal terms provision, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).  "RLUIPA's Equal Terms provision operates on a strict liability standard . . . ."  *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,* 510 F.3d 253, 269 (3d Cir. 2007).  To succeed on an equal terms claim, "a plaintiff . . . must show (1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance."  *Id.* at 270.

Here, the Ramapough have sufficiently alleged each *Lighthouse* prong.  The Complaint alleges that Mahwah enforced its zoning laws to prevent religious worship at Sweet Water by applying different standards to the Ramapough than it did to secular landowners.  Compl. ¶¶ 58-59, 68, 125.  As a result of this uneven enforcement, the Ramapough were subject to a criminal judgment and received more than 1,200 summonses totaling over $1.45 million in fines.  *Id.* ¶¶ 11-12, 62, 64-65, 79, Ex. H; *see also* ECF No. 75-6.  Similarly situated landowners received no such judgments, summonses, or fines.  Compl. ¶¶ 59, 68, 125.

The Complaint also alleges that the Ramapough's practice of their religion at Sweet Water causes no greater harm to the interests that the Mahwah zoning code seeks to advance.  Mahwah created the C-200 zoning district as a "conservation" zone to "protect the various environmental resources present in these areas."  *Id.* ¶ 52.  The zoning code, therefore, permits secular uses of property that are intended to be consistent with this purpose, including hiking, fishing, hunting, horseback riding, and the construction of single family homes and municipal facilities.  *Id.* ¶¶ 51-52.  The Ramapough's religious uses of its property—outdoor prayer and protection of the land—is consistent with the C-200 zoning district's regulatory purpose of environmental protection and conservation.  These uses cause seemingly less harm, and certainly no greater harm, to those interests, than the permitted secular uses outlined in the Complaint such as construction of homes, farms, and municipal facilities.  *Id.* ¶¶ 51-52, 59   These allegations are sufficient to state an equal terms claim.  *United States v. Bensalem Twp.*, 220 F. Supp. 3d 615, 621 (E.D. Pa. 2016)

(denying a motion to dismiss an equal terms claim when the complaint "identified several permitted uses on the Subject Property that would have much greater land impacts than the . . . proposed mosque").

Mahwah argues that the Ramapough failed to plead an equal terms claim because they did not "identify even one landowner in the C200 zone who had violated Mahwah's zoning ordinances, but who were not issued summonses by the Township." Opp. at 25-26.  In making this argument, however, Mahwah overlooks several facts pled in the Complaint.  Far from not identifying landowners who received more favorable treatment, the Complaint points to several examples:

- Landowners in the C-200 zoning district have placed religious and non-religious structures on their property without receiving citations or fines.  Compl. ¶ 68.  The Ramapough, however, have received daily fines for placing modest religious structures on their property.  *Id.* ¶¶ 62-63, 65.

- Landowners in the C-200 zoning district are free to host gatherings of more than two people.  *Id.* ¶¶ 59, 68.  Mahwah, however, has read the zoning code to prohibit as few as three people gathering to pray at Sweet Water.  *Id.* ¶¶ 58-59.

- Landowners in the C-200 zoning district have hosted assemblies with as many as 25 cars parked on the road without receiving a citation or fine.  *Id.* ¶ 68.  Mahwah, however, has implemented the zoning code to prohibit the Ramapough from hosting comparably sized religious assemblies.  *Id.* ¶¶ 58-59, 68.

- Mahwah has implemented the zoning code to allow landowners and others to engage in various forms of secular outdoor activity, including hiking, horseback riding, hunting, and fishing.  *Id.* ¶¶ 51-52, 59.  But it has enforced the code to prevent the Ramapough from conducting outdoor prayers at Sweet Water. *Id.* ¶¶ 53, 58-59, 61-63.

16

These factual assertions, which identify secular entities in the C-200 zoning district that allegedly have been treated more favorably than the Ramapough, are sufficient to state a violation of RLUIPA's equal terms provision. *Bensalem Twp.*, 220 F. Supp. 3d at 621-22 (denying motion to dismiss when the complaint pointed to several permitted uses that would have a greater land impact than the proposed religious use); *Al Falah*, 2013 WL 12322637, at *15 (denying motion for summary judgment when factual inferences suggested the township's ordinance treated the plaintiff mosque on less than equal terms with non-religious assemblies); *see also Church of Christ, Scientist, of New York City v. City of New York*, 626 F.3d 667, 672-23 (2d Cir. 2010) (affirming district court's holding that the city violated the equal terms provision by implementing its zoning law to revoke the church's catering license while permitting similarly situated secular institutions to continue their catering operations).[5]

## III.   The Ramapough's RLUIPA Claims are Ripe for Adjudication

Finally, the Township argues that the Ramapough's RLUIPA claims are not ripe because the tribe did not "exhaust the variance process at the local level as a

---

[5] Although not clear, Mahwah seems to argue that the Ramapough cannot state an equal terms claim without also establishing that they have been substantially burdened in their religious exercise. Opp. at 24 ("The fatal flaw to Plaintiffs' claims under . . . RLUIPA lies in the fact that Plaintiffs cannot establish a substantial burden to their religious exercise as a result of enforcement actions taken against them by the Township."). This argument inappropriately conflates a substantial burden claim with an equal terms claim. "[C]ontrolling precedent provides that RLUIPA's Equal Terms provision does not include a strict scrutiny or substantial burden requirement." *Al Falah Ctr.*, 2013 WL 12322637, at *14 (citing *Lighthouse*, 510 F.3d at 270).

prerequisite prior to federal review." Opp. at 11. This argument, however, misunderstands the ripeness doctrine.

In *Williamson Planning Comm'n v. Hamilton Bank*, the Supreme Court held that Fifth Amendment regulatory takings claims are not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. 172, 186 (1985). "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Id*. at 193. However, "ripeness is not to be confused with exhaustion." *Peachlum v. City of York*, 333 F.3d 429, 436 (3d Cir. 2003) (citing *Williamson,* 473 U.S. at 192). Ripeness does not "require the exhaustion of administrative remedies." *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 575 (3d Cir. 2003). Rather, "the issue is whether a provisional administrative decision 'has been formalized and its effects felt in a concrete way by the challenging parties.'" *Peachlum*, 333 F.3d at 436-37 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)); *see also Garden State Islamic Ctr. v. City of Vineland*, No. 17-cv-1209, 2018 WL 6523444, at *4 (D.N.J. Dec. 12, 2018) ("'The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" (quoting *Peachlum*, 333 F.3d at 433)).

The Third Circuit's decision in *Peachlum* is instructive.  In that case, Sybil Peachlum had installed a neon sign on her property, which read "Peachy News. Jesus is Alive," in contravention of several local sign ordinances.  *Peachlum*, 333 F.3d at 430-31.  After the City of York repeatedly cited Peachlum for violating the City's sign ordinances, she applied for a sign permit, which was denied by the zoning officer.  *Id*. at 431-32.  Peachlum did not appeal the denial of the permit or remove the sign.  The City filed civil enforcement actions and obtained judgments against her totaling over $1,000.  *Id*. at 432.  Peachlum filed suit against the City, claiming that the City's application of the sign ordinance violated her First Amendment rights.  The City argued that Peachlum's claims were not ripe because the City's zoning board had not issued a final adjudication of Peachlum's claims.  The Third Circuit rejected this argument, holding that, in light of the judgments entered against her, "[t]here is no question that any infringement of her First Amendment speech rights has already occurred, and that the Federal Court has before it a sufficiently adverse proceeding where factual developments have fully evolved and a decision at this point could provide meaningful assistance to all the parties."  *Id*.; *see also Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1322 (11th Cir. 2005) (holding that RLUIPA claims challenging imposition of zoning code were ripe because "[t]he imposition of the fine" inflicted an "actual, concrete injury" and "indicates that the Code Enforcement Board had made a final decision").

Here, the Complaint alleges that the Township has taken a definitive position that its zoning laws prohibit the Ramapough from worshiping at Sweet Water, which

has inflicted a concrete injury on the tribe.  The Township has concluded that the C-200 zoning district does not permit religious worship and unilaterally revoked the 2012 zoning permit because "[h]ouses of worship were, and still are, not a principal permitted used in the C-200 zone."  *See* Compl. Ex. A; *see also id*. ¶¶ 10, 48.  The Township has also issued a report that structures on the property are being used for "religious uses" inconsistent with the permitted uses in the zone, ordered the Ramapough to remove religious structures from the property, and imposed fines of nearly *$1.45 million* as of September 21, 2018.  *Id.* ¶¶ 48, 61-64; Exs. B and D.

As the City of York did in *Peachlum*, the Township has engaged in civil and criminal enforcement proceedings against the Ramapough to prevent it from using Sweet Water for religious worship, including a civil action seeking an injunction, s*ee* Complaint, Ex. H; *see also* ECF No. 75-4, and a criminal action for unpermitted religious structures on the property, resulting in a conviction and fines and court costs totaling $7,140, *see* Compl. ¶ 65*;* ECF Nos. 75-3, 75-6.[6]  The Township's conduct has "significantly chilled Ramapough's use of the land for religious purposes," *see* Compl. ¶ 69, and has thus inflicted a concrete injury on the Ramapough.  *Peachlum,* 333 F.3d at 437; *Konikov*, 410 F.3d at 1322; *see also Lauderbaugh,* 319 F.3d at 575 ("Hopewell cannot treat its zoning decision as final enough to force a significant hardship upon Lauderbaugh by forcing her to pay to move her home but not final enough to be ripe for adjudication."); *Congregation Kollel, Inc. v. Twp. of Howell, N.J.*,

---

[6]  This $7,140 in fines and court costs that accompanied the January 2018 criminal conviction (*see* ECF No. 75-6) predate and do not include the $1.45 million in fines levied by the Township against the Ramapough beginning in April 2018.

No. 16-cv-2457, 2017 WL 637689, at *10 (D.N.J. Feb. 16, 2017) (finding that plaintiffs' RLUIPA claims were ripe even though they had not applied for a variance because "the variance process, in this case, would only seek to determine whether Plaintiffs' proposed use could be permitted by the Board to depart from the Ordinance's requirements"); *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002) (finding allegations that defendants revoked building permit in retaliation for plaintiff pursuit of court action were ripe because "Dougherty suffered an injury at the moment the defendants revoked his permit, and Dougherty's pursuit of a further administrative decision would do nothing to further define his injury").  Accordingly, Plaintiffs' RLUIPA claims are ripe.

The Township argues that *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005), and *Congregation Anshei Roosevelt v. Planning & Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214 (3d Cir. 2009), support its ripeness claim.  In *Murphy*, the plaintiff filed her RLUIPA claims after receiving a cease and desist order from the local zoning officer.  The court held her claim unripe because the town had "never taken" steps to impose fines or initiate criminal or civil proceedings against the plaintiff and thus "the cease and desist order did not inflict an immediate injury." *Id*. at 351.  Here, however, the Township *has* taken civil and criminal enforcement action against the Ramapough, which has chilled its religious worship.  Similarly, in *Congregation Anshei Roosevelt,* a non-precedential decision, the court found the plaintiffs' claims unripe because it was "not apparent that the Congregation has suffered any constitutional injury simply because it must apply for a variance; indeed,

it appears the Yeshiva is still operating at the synagogue." *Congregation Anshei Roosevelt,* 338 F. App'x at 218-219.  Here, as discussed above, the Ramapough have alleged that the Township's conduct has prevented them from worshiping at Sweet Water.

The Ramapough thus have alleged ripe claims based on the actions the Township already has taken against them, and need not apply for a variance and be denied to show injury.  Yet even if the Township were correct that there is no injury from these actions, its argument for the necessity of a variance application would still be misplaced. The Ramapough allege that, in light of the Township's "pattern of harassment and discrimination against the Ramapough . . . seeking a use variance would be futile," Compl. ¶ 67, and have alleged facts supporting this assertion.   *See*, *e.g.*, ¶¶ 9-11, 13, 48, 57, 59-66, 69; *see also Bikur Cholim, Inc.*, 664 F. Supp. 2d at 274-75 ("Where an appeal to a zoning board would be futile, the plaintiff need not appeal to that board.") (citations omitted); *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 981 (9th Cir. 2011) (holding that "futility refers to conditions that make the process itself impossible or highly unlikely to yield governmental approval of the land use that claimants seek—such as government obstinacy").

## Conclusion

For the foregoing reasons, the United States submits that amendment of the RLUIPA substantial burden and equal terms claims would not be futile and that those claims are ripe for adjudication.

Dated:        March 18, 2019

Respectfully submitted,

CRAIG CARPENITO
United States Attorney
District of New Jersey

By:      /s/ Susan Millenky
SUSAN MILLENKY
Assistant United States Attorney

/s/ Michael E. Campion
MICHAEL E. CAMPION
Chief, Civil Rights Unit
Assistant United States Attorney

District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
Phone: (973) 297-2067
Email: susan.millenky@usdoj.gov

/s/ Noah D. Sacks
ERIC S. DREIBAND
Assistant Attorney General
SAMEENA SHINA MAJEED
Chief
NOAH D. SACKS
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.
Northwestern Building, 7th Floor
Washington, D.C. 20530

Tel: (202) 514-4737
Fax: (202) 514-1116
noah.sacks@usdoj.gov

Attorneys for the United States of America