# CLEARY | GIACOBBE | ALFIERI | JACOBS LLC

RUBY KUMAR-THOMPSON, Partner
rkumarthompson@cgajlaw.com

**Reply to: Oakland Office**

April 1, 2019

**VIA ELECTRONIC FILING**
James B. Clark, III, U.S.M.J.
District of New Jersey
Martin Luther King, Jr. Federal
Building and Courthouse
50 Walnut Street
Newark, New Jersey 07103

    Re: <u>Ramapough Mountain Indians, Inc., et al. v. Township of Mahwah, et al.</u>
       Civil Action No. 2:18-cv-09228-CCC-JBC

Dear Judge Clark:

    This office represents Township of Mahwah, Geraldine Entrup, and Thomas Mulvey (hereinafter "Mahwah Defendants") in the above-captioned matter. Kindly accept this letter brief in lieu of a more formal brief in opposition to Plaintiffs' Motion to Lift the Discovery Stay which is returnable before Your Honor on April 15, 2019.

## LEGAL ARGUMENT

## POINT ONE

### A STAY OF DISCOVERY IS APPROPRIATE WHERE JURISDICTIONAL ISSUES ARE RAISED TO THE COMPLAINT

    As the Court is well aware, the Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings.  However, Fed. R. Civ. P. 26(c)(1)(A)

---

**Oakland Office: 169 Ramapo Valley Road, UL 105, Oakland, NJ 07436 Tel 973 845-6700 Fax 201 644-7601**
Somerville Office: 50 Division Street, Suite 501, Somerville, NJ 08876 Tel 732 583-7474 Fax 201 644-7601
Matawan Office: 955 State Route 34, Suite 200, Matawan, NJ 07747 Tel 732 583-7474 Fax 732 290-0753

provides, in relevant part, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .." Thus, all that is required to be entitled to a stay under this rule, is a showing of "good cause." Coyle v. Hornell Brewing Co., No. 08-2797 (JBS/JS), 2009 WL 1652399, at *3 (D.N.J. June 9, 2009).

A motion to stay discovery is also an appropriate exercise of this court's discretion. Landis v. N. Am. Co., 299 U.S. 248, 254-255 (1936). Justice Cardozo stated, in Landis, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. (citing Kansas City S. Ry. Co. v. United States, 282 U.S. 760, 763 (1931)).

"[I]ncidental to this inherent power to control its own docket," a district court has "broad" discretion to stay discovery while a dispositive motion is pending. Clinton v. Jones, 520 U.S. 681, 706 (1997); see also Stone v. Immigration and Naturalization Service, 514 U.S. 386, 411 (1995) ("[W]e have long recognized that courts have inherent power to stay proceedings."). Indeed, the Third Circuit has held that, "[i]n certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the

motion is granted, discovery would be futile." Mann v. Brenner, 375 Fed. App'x. 232, 239 (3d Cir. 2010) (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1954 (2010) (holding that since the "complaint is deficient under Rule 8, [respondent] is not entitled to discovery")). One such circumstance is where the motion to dismiss tests the legal sufficiency of a complaint that may be decided on its face, without the necessity of further factual enhancement. Id at 239-240 (holding that District Court did not abuse its discretion in staying discovery pending a motion to dismiss under 12(b)(6) (citing Nitzke v. Williams, 490 U.S. 319, 326-327 (1989) (stating, Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding.")); Chudasma v. Mazda Motor Corp., 12 F.3d 1353, 1367 (11th Cir.1997) ("A motion to dismiss based on failure to state a claim for relief should ... be resolved before discovery begins."); and Rutman Wine Co. V.E. & J Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) (stating that the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defied common sense [because] the purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.").

Another circumstance making a stay especially appropriate is a challenge to the claims on jurisdictional grounds, since jurisdiction is a "threshold matter" that courts are required to resolve before proceeding to the merits. Kramer v. Gates, 481 F.3d 788, 791 (D.C. Cir. 2007) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). "The requirement that

jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 577 (1999) (quoting Steel Co., 523 U.S. at 94-95); see also Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004) ("We have . . . urged counsel and district courts to treat subject matter jurisdiction as a threshold issue for resolution . . .." (quoting United Republic Ins. Co. v. Chase Manhattan Bank, 315 F.3d 168, 170-71 (2d Cir. 2003)).   The rationale behind staying discovery pending a Fed. R. Civ. P. 12(b)(1) motion is that imposing a temporary stay in the face of such a challenge conserves judicial and party resources with respect to discovery on the merits of a claim until it will be clearly relevant.  Id.  See also Nankivil v. Lockheed Martin Corp., 216 F.R.D. 689, 692 (M.D. Fla. 2003) (A stay may be appropriate if "resolution of a preliminary motion may dispose of the entire action."); Vivid Techs., Inc. v. Am. Scl. & Eng'g, Inc., 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved."); Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 201 F.R.D. 1, 2 (D.D.C. 2005) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." (internal quotation omitted)).

Here, the balancing of the competing interests does not warrant proceeding with discovery during the pendency of Plaintiff's motion to amend the Complaint because Mahwah's challenge to the Amended Complaint (as well

4

as the more deficient original complaint) is on jurisdictional and preclusive grounds that render it futile.

For example, Plaintiff asserts in its Reply Brief that it was not entitled to make an application with the Zoning Board to develop the facts necessary to adjudicate their RLUIPA claims in this case because it is a pre-existing use. However, the fatal flaw in this argument is that a New Jersey Superior Court Judge issued a Decision on January 19, 2019 rejecting Plaintiff's claim that their use of the property named "Sweet water" was a pre-existing use. (see "**Exhibit A**," Judge Bachmann's decision dated January 10, 2019). Judge Bachmann's decision affirming Plaintiff's conviction for the erection of certain structures without a permit and rejecting Plaintiff's claim as a pre-existing use, has to date never been overturned on appeal. As such, Plaintiff is legally and judicially estopped from collaterally attacking that ruling in order to be entitled to proceed with their unripe land use claims for religious discrimination in a District Court. See Gilles v. Davis, 427 F.3d 197, 209-10 (applying the Heck bar to plaintiff's claims under the First Amendment); and Mann v. Brenner, 375 Fed. Appx. at 237-38 (holding that the plaintiff was estopped where the identical issues were actually litigated in the state condemnation proceeding).

Moreover, Plaintiff and, for that matter, the U.S. Attorney fail to understand the manner in which New Jersey Municipal Land Use laws define a pre-existing non-conforming use and when a use permit application is required to be made under State law. A pre-existing use cannot just be asserted to exist

by a Plaintiff.  Rather, the procedure for establishing that a use is pre-existing is to apply for a certificate in accordance with N.J.S.A. 40:55-68. See Twp. of Stafford v. Stafford Zoning Bd. of Adjustment, 154 N.J.  62, 69 (1998) ("before asking a court for relief, any person . . . who applies more than one year after the adoption of the pertinent ordinance must first file an . . . application with the zoning board); and see Borough of Bay Head v. MacFarlan, 209 N.J. Super. 134, 137 n.1 (App. Div. 1986) (noting that the court is not "the most appropriate forum for determining zoning questions, such as the existence of prior non-conforming uses"). Pursuant to N.J.S.A. 40:55D-68, after more than one year since the zoning change, the determination of whether a use is pre-existing and therefore not illegal belongs solely to the Zoning Board of Adjustment.  Here, Plaintiff does not allege that they ever applied for a certificate of non-conformance, nor do they allege in their opposition to Defendants' motion opposing the Amended Complaint on ripeness grounds that they possess any decision from an official or the Zoning Board of Adjustment so as to now argue for an exemption from filing for a variance decision for their alleged religious use of the Property.

Additionally, the burden of proving the prior existence of a nonconforming use lies with the party asserting the use.  Berkeley Square Ass'n., Inc. v. Zoning Bd. of Adjustment of Trenton, 410 N.J. Super. 255, 269 (App. Div. 2009).  Pursuant to N.J.S.A. 40:55D-68, a non-conforming use or structure is defined as a use or structure existing at the time of passage of an ordinance.  Only if a use or structure meets this definition, then is it permitted

to continue in such form despite a change in zoning provisions prohibiting same.  See Bonaventure Intern., Inc. v. Borough of Spring Lake, 350 N.J. Super. 420, 431-32 (App. Div. 2002).  As such, a prior nonconforming use is restricted to its character and scope at the time the ordinance making it a nonconforming use was enacted.    Thus, a plaintiff can only establish an exemption from making an application for a variance to the Township Zoning Board of Adjustment, if the same or similar use existed at the time of passage of Mahwah's zoning ordinances designating the C200 zone where the property is located.  Id. at 433, citing Ferraro v. Zoning Board of Adjustment, 321 N.J. Super. 288, 291 (App. Div. 1999). However, where land is vacant at the time of adoption of a zoning ordinance, it cannot qualify for any exemption as a nonconforming use. Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 104 (1957); see also Palatine I v. Planning Bd., 133 N.J. 546, 564-66 (1993) (holding that unbuilt and unfinished portion of a proposed structure for which site plan approval was granted was not immune to change in zoning prohibiting the use for which the structure was being built). Nor can the occasional use of a property prior to the zoning change convert that use into a protected non-conforming use after the change in zoning is made. See Paruszewski v. Elsinboro Twp., 297 N.J. Super. 531 (App. Div. 1997).

Furthermore, a pre-existing use may not be enlarged as of right, except when the change is negligible or insubstantial.    Palatine I v. Planning Bd., supra, 133 N.J. at 565; Belleville v. Parillo's Inc., 83 N.J. 309, 316 (1980); and McDowell, Inc. v. Board of Adjustment of Twp. of Wall, 334 N.J. Super. 201,

214 (App. Div. 2000), <u>certif. denied</u>, 167 N.J. 88 (2001).  In fact, expansion of a prior nonconforming use is not permitted, without first satisfying the positive and negative criteria for a "d" variance under <u>N.J.S.A.</u> 40:55D-70(d)(2). <u>Belleville</u>, <u>supra</u>, 83 N.J. at 316.  And, where there is doubt as to whether the enlargement or change is substantial rather than insubstantial (and not requiring any additional applications to be made), the courts have consistently declared that the <u>dispute is to be resolved against the enlargement or change</u>. <u>Id.</u> (emphasis added).

In the matter at bar, the Ordinances that Mahwah seeks to enforce against the RMI were originally enacted along with the Master Plan in 1984, designating the zone where the property is located as a C-80 Conservation Zone, where religious uses were not permitted as of right.  Mahwah then amended its zoning ordinances in June 1987 to designate the zone as a C-200 Conservation Zone, in which zone religious institutions continued to not be permitted (FAC ¶50).  Despite their allegations that they had been using Sweet Water for centuries for religious worship, this claim is undermined by the fact that RMI, Inc. did not acquire the property by deed until July 17, 1995.  (see "**Exhibit A**," Judge Bachmann's decision dated January 11, 2019).

In addition, the allegedly religious structures on the land that are the subject of the 2018 summonses which underlie Plaintiff's claims in the Amended Complaint were admittedly not erected until after the Zoning Ordinance was changed to prohibit religious uses on the otherwise vacant Property. (FAC ¶53).  As Plaintiff does not allege anywhere in the Complaint

8

that they filed an application for a certificate of non-conformance for the subject Property or that they are even in possession of a single construction permit for the prayer circle and stone altar in the twenty-four years since the property was acquired by it, this is yet another reason that Plaintiff cannot rely on the argument that they are entitled to be recognized as a pre-existing use and exempt from the requirements of N.J.S.A. 40:55D-68, that is, to apply for a "d" variance on the property and obtain the necessary permits for the structures on the land.

In addition, the Amended Complaint, admittedly makes clear that the use of the property did not remain essentially the same since 1995, (or even since the 1980's when Elmes allegedly permitted them to use the property occasionally for private religious worship), but had intensified greatly from 2013 through the fall of 2016 because Plaintiff erected six to eight foot long logs on the property and began inviting members of the public for prayer and various cultural events (see FAC ¶40-42, ¶47, ¶54 and ¶56). Thus, any lawful use and expansion of the property by RMI, Inc., for religious purposes could not have existed before the Zoning Code was changed to prohibit religious institutions from the C-200 zone. Accordingly, there is no merit to Plaintiff's claim that they are exempt under state law from making an application to the Township for a variance, when neither their public use nor the non-permitted structures on the property existed at the time of passage of Mahwah's zoning ordinances designating the C-200 zone.

Second, Plaintiff asserts pursuant to the holding in <u>Peachlum v. City of York</u>, that their claims are nonetheless ripe because there have been several actions against Plaintiff to collect fines through the issuance of summonses and institution of enforcement actions to gain compliance with the Township's zoning ordinances. <u>Peachlum</u> however is inapposite. In <u>Peachlum</u>, the plaintiff was challenging the constitutionality of the ordinance itself as violative of his right to free speech, and the relief requested was limited solely to declaratory and injunctive relief. It was in this context that the Third Circuit determined that a "relaxed" ripeness standard should apply. The Third Circuit went on to note that while "a facial First Amendment challenge is not normally subject to administrative finality analysis under any circumstances. Depending on circumstances, however, there <u>may be some value in permitting an administrative body to resolve an ongoing dispute in "as applied" challenges once enforcement proceedings have begun.</u>" (emphasis added).

Thus, <u>Peachlum</u> does not support the proposition that any time that there are fines and costs are likely to be imposed upon a landowner's use of property in violation of a Township's ordinances, that there has been a concrete injury. This is because even the slightest infringement on a person's right to free speech can be a violation of that person's First Amendment rights. <u>Laird v. Tatum</u>, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed. 154, 11 (1972). The Free Exercise Clause of the First Amendment, however, has not been interpreted by the Supreme Court in similar fashion. Rather, to constitute a violation of the Free Exercise Clause and RLUIPA, the plaintiff must prove more than a subjective

chilling effect, but must prove instead, a substantial burden which renders the exercise or religion effectively impracticable. Lighthouse Institute for Evangelism, Inc. v. City of Long Branch, 406 F. Supp.2d 507, 515 (D.N.J. 2005) (holding that incidental effects on the practice of religion are not sufficient to sustain a claim for a constitutional deprivation), aff'd in relevant part, 510 F.3d 253 (2007).   In fact, in holding that Peachlum's "as applied" free speech claims were ripe because Peachlum was effectively barred from appealing an interim decision affecting her facial free speech claim to the Board, the Third Circuit readily distinguished the holding in Taylor Investment v. Upper Darby Township, 983 F.2d 1285, 1291 (3d Cir.1993), which concerned a zoning dispute over land use by recognizing that, "with respect to zoning disputes, a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner."

Here, Plaintiff has not mounted a facial challenge to Mahwah's zoning Ordinances. Furthermore, in sharp contrast to the case in Peachlum, there have been no fines imposed on Plaintiff for the violation of any allegedly unconstitutional ordinances affecting its right to free speech, nor any steep barriers or unreasonable conditions to filing an application for a permit and/or variance for their proposed use of the land.   In fact, all summonses and enforcement actions instituted by Mahwah that are the subject of Plaintiff's claims are based on the failure of Plaintiff to obtain a permit from the Township, as required.   None of these enforcement actions constitute or will

lead to a final decision as to whether Plaintiff is entitled to such permits. Rather, Mahwah simply wants Plaintiff to file an application for their intended and expanded use and obtain the proper permits needed in the C-200 conservation zone so that such an application can be properly evaluated under the positive and negative criteria applicable to "d" variances. Such an application was filed by Plaintiffs in June 2017, and then inexplicably withdrawn before any scheduled hearings could take place. If it were re-filed, then unlike the case in <u>Peachlum</u>, where fines had been imposed based upon an interim <u>decision</u> of a zoning officer, which left no room for debate that the sign which was erected violated the town's ordinance, the summonses for failure to obtain the proper permits would cease upon applying for a permit, and any enforcement action would be held in abeyance during the pendency of Plaintiff's application.

Furthermore, the fines that stem from the issuance of summonses since April 2018 (see FAC ¶64) do not render Plaintiff's exercise of open air prayer on the property effectively impracticable, as those summonses have yet to be tried or adjudicated by the Municipal Court, and thus no fines have been imposed on Plaintiff as a result, to date. See <u>N.J.S.A.</u> 40:49-5. Additionally, Mahwah <u>General Code 1-5</u> states clearly that while the maximum penalty for each day of each violation is $100, it also states that a nominal penalty or no penalty at all may be appropriate for a particular case or violation. As the Court is not required to "accept unsupported conclusions and unwarranted inferences" this Court should thus, wholly reject Plaintiff's contentions that any fines in any

12

amount (see FAC ¶64) have resulted to cause them any type of concrete injury in this case, in sharp contrast to the case in Peachlum. See Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007).  As such, it would be wholly inappropriate for this Court to apply a "relaxed" ripeness standard to Plaintiff's challenge solely to the issuance of summonses that Plaintiff is claiming has "chilled" their religious exercise on the property. In fact, no court has ever held that a "chilling effect" on religious exercise constitutes a "concrete injury" in the context of a claim under RLUIPA or in a land use case under the Free Exercise Clause of the First Amendment, nor do Plaintiffs cite to any such decision.

Third, Plaintiff argues that applying for a variance would be futile as it pertains to their First Amendment and RLUIPA claims under the Fourteenth Amendment in light of Mahwah's rescission of its 2012 permit, pursuant to the holding in Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 267-68. Plaintiff's reliance upon Blanche Road Corp. to argue for an exception to the finality requirement is however misplaced.  Blanche Road was decided in the context of a substantive due process claim, actionable under Section 1983. There, the Court held that zoning ripeness was not required to establish the plaintiff's substantive due process claims when defendants were not appealing an adverse decision on a permit application, but rather were claiming harassment in their land development efforts when "the defendants, acting in their capacity as officers of the township, deliberately and improperly interfered with the process by which the township issued permits in order to block or to

13

delay the issuance of plaintiffs' permits, and the defendants did so for reasons unrelated to the merits of the application for permits."  It was in this context that the Court held that "[s]uch actions, if proven, are sufficient to establish a substantive due process violation, actionable under § 1983, even if the ultimate outcome of plaintiffs' permit applications was favorable."

However, this holding in Blanche Road was superseded and abrogated by the holding in United Artists Theatre Circuit, Inc. v. Township of Warrington, P.A. 316 F3d 392 (3d Cir. 2003), which stated that the Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), requires a "shock the conscience" standard, instead of an "improper interference standard" to govern claims for violation of substantive due process under the Fourteenth Amendment in the land use context. Furthermore, it is significant the exception to the finality rule carved out by Blanche Road is limited solely to allegations alleging outside interference and harassment by Township officials in the course of the zoning or land use development process.  See County Concrete Corp. v. Town of Roxbury, 442 F. 3d (2006) (holding that the appellant's allegation that township officials had engaged in "false public accusations" and other "harassment" in the course of the zoning process in order to deprive the plaintiffs of lawful use of their property was "sufficient to establish a ripe [substantive due process] claim, regardless of the outcome of subsequent appeals for relief to municipal zoning boards." Id. at 167, 170.  Here, Plaintiff has failed to set forth any allegations for interference in the course of the zoning or land development process

because nowhere in the Complaint do they allege that they took any meaningful steps to avail themselves of the zoning process.  Nor are there any allegations that Township officials were personally involved in any of the alleged interference with their property rights as set forth in FAC 46-69, other than sending a lawful abatement letter to the Plaintiff in January 2018 and then to begin issuing summonses when Plaintiff failed to follow the permit approval process outlined therein.

Next, insofar as Plaintiff argues that the rescission of the illegally issued and void 2012 zoning permit excuses it from making an application to the Board, this is also not the type of interference and/or harassment that would meet the standard enunciated in County of Sacramento v. Lewis to be actionable as there is nothing about the rescission of a permit that could be construed to be "conscience shocking."   Rivkin v. Dover Twp. Leveling Board, 143 N.J. 352 (1996).  Instead, as was the case in E&R Enterprise LLC v. City of Rehobeth Beach, Del., 650 Fed. Appx. 811 (3d Cir. 2016), the RMI's claim is more akin to the case of Sameric Corp. of Delaware v. Philadelphia, 142 F.3d 582, 597-98 (3d Cir. 1998), where the Third Circuit rejected the plaintiff's contention that its substantive due process claim was ripe under Blanche Road, even though the property owner alleged harm beyond the City's denial of a building permit because the property owner had failed to appeal the denial to the appropriate board having final decision making power in the City of Philadelphia, by reiterating, "the importance of the finality requirement and our

15

reluctance to allow the courts to become super land-use boards of appeals." Id. at 815 (internal citations omitted).

It is also significant for this Court to take notice that Plaintiff's challenge to the rescission of the 2012 Zoning Permit was voluntarily dismissed with prejudice, and therefore, Res judicata, as well as the Rooker/Feldman doctrine bar any ability for Plaintiff to now challenge the propriety of the rescission itself as being improper.  Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010), cert. denied, 563 U.S. 904 (2011) (citing Exxon-Mobil at 284).  Thus, insofar as Plaintiff also argues that they have asserted a legally viable Fourteenth Amendment substantive due process claim based upon the allegedly "improper" rescission of the 2012 zoning permit, this argument must be rejected in its entirety.

Plaintiff also appears to be relying upon the alleged testimony of the Township Engineer stating that the C-200 zone prohibits more than (2) people praying in open air on 95 Halifax Road, in addition to the alleged interference of their property rights by unknown persons as set forth in FAC 46-69, to demonstrate the reason that they should be exempted from making an application for a variance for their religious and cultural group assembly use on the property (see FAC ¶59). However, Plaintiff mischaracterizes the Township Engineer's testimony at the Municipal Court trial.  Contrary to the allegations in the Complaint, the Township Engineer did not "take a position that more than two individuals of the tribe congregating on the land for open-

air prayer violates Mahwah's zoning Ordinance" or that "the C-200 zone prohibits more than two (2) people praying in open air on Halifax Road." Michael Kelly's complete testimony in response to cross-examination by Plaintiff's counsel was as follows:

> Q. Are you familiar with the---or are you familiar with the type of prayer that is done on this property?
>
> A. No, I'm not---I don't know the details of prayer that---that go on at the property.
>
> Q. Okay. Well, according to the 2011 permit, one of the things that was permitted on this property was prayer, correct?
>
> A. The zoning permit was for building a longhouse to be used for prayer and community/cultural assembly.
>
> Q. So does that mean that when you revoked the permit that the Ramapo could no longer pray on the property?
>
> A. I would say that they can't use houses of worship or structures that they will use for prayer <u>without obtaining the proper approvals</u>. (emphasis added).
>
> Q. Okay. But if they don't have houses of worship as we just discussed, they---they just have the open ground, is it still your position because you revoked the permit that they cannot pray?
>
> A. <u>If it's considered public assembly</u> I would say that that's not permitted as---well either. (emphasis added).
>
> Q. So let's say anywheres (sic) between two and five of the Ramapo are on the property, and they decide to pray, then that would not be permitted, correct?
>
> **A. They should submit a zoning approval and go to the zoning board of adjustment for approval for that. We're not---I'm not saying they can't do it. They just need to follow the proper procedures.**

See relevant portions of the Municipal Court hearing transcript, P. 61, Line 7-P. 62, Line 10, annexed hereto as "**Exhibit B**") (emphasis added).[1]

Based on the following answers to hypothetical cross-examination, it is clear that Plaintiff's characterization of Michael Kelly's testimony in the FAC is not supported by the transcript and is actually contrary to the allegations set forth in the Complaint, and thus should be disregarded by the Court for purposes of determining whether Plaintiff has stated a claim for violation of their right to religious freedom, RLUIPA, and substantive due process rights.

Furthermore, even if that were not the case, it is significant that the testimony of the Engineer does not represent a final decision of the Zoning Board of Adjustment which is the only body that can determine these issues, nor is he a policy maker in the Township so as to hold the Township liable under the Fourteenth Amendment for his statements. Indeed, not a single summons has ever been issued by anyone in the Township to the RMI based upon only two (2) of their members praying on the land.  (See Plaintiff's Exhibit

---

[1] Generally, when considering a motion to dismiss, the Court may not consider "matters extraneous to the pleadings." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir.1997). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment." Id. at 1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996)). Such documents include "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.' " Buck v. Hampton Twp. School Dist., 452 F.3d 256, 260 (3d Cir.2006) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004)). A plaintiff may not avoid a motion to dismiss simply by "failing to attach or explicitly cite" texts or documents integral to or on which the claim is based. Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir.2003).

B to the FAC, letter dated April 24, 2018). In fact, the FAC states that the Ramapough had been using the land to privately conduct their religious ceremonies, even when they did not own the land, with the permission of the former owner Elmes, allegedly since the 1980's; and that Plaintiff has continued to do so for years, despite issuance of repeated warnings by the Township for the unpermitted use of the land. (See FAC ¶28). However, absent a decision from the Zoning Board of Adjustment as to whether such continued activity constitutes a public assembly or an impermissible religious use of the property, because Plaintiff has never submitted an application to trigger such a decision, Plaintiff's claims under the Fourteenth Amendment cannot be considered to be ripe merely due to the issuance of summonses for the unpermitted structures and use of the property.

Last but not least, contrary to Plaintiff's arguments, there is not a single allegation in paragraphs 46 through 69 of the FAC to suggest that any single official from the Zoning Board of Adjustment in Mahwah holds any religious bias against the Ramapough. In fact, not a single individual on the Zoning Board is even identified in the FAC, paragraphs 46 through 69 to support a claim for interference in the zoning process or to establish the egregious type of course of conduct necessary to sustain a substantive due process claim. Nor has Plaintiff identified a single similarly situated landowner in the C-200 zone who has similarly ignored Mahwah's zoning laws, but who were not issued summonses by the Township. Thus, it is readily apparent that they cannot sustain a claim for discriminatory treatment under RLUIPA or the First

19

Amendment.  Accordingly, Plaintiff has clearly failed to demonstrate that they are entitled to an exception from the finality rule that is typically required when there is a constitutional challenge by a property owner to the manner in which zoning ordinances are applied to it.

For all of the foregoing reasons, Plaintiff's claims are clearly "unripe" and thus subject to dismissal on jurisdictional grounds.  Accordingly, since it is likely that the First Amended Complaint will be dismissed due to the jurisdictional bar presented in light of Plaintiff's failure to first file an application for a variance as required under New Jersey's Municipal Land Use laws, then the stay on discovery should continue so long as this important jurisdictional issue is not resolved.

**POINT TWO**

**THERE WILL BE NO PREJUDICE TO PLAINTIFFS IN CONTINUING A STAY**

When a court grants a stay, it must "weigh competing interests and maintain an even balance." Landis, 299 U.S. at 255; see Dellinger v. Mitchell, 442 F.2d 782, 786 & n.7 (D.C. Cir. 1971) ("A court has inherent power to stay proceedings in control of its docket . . . after balancing the competing interests."). Imposing a temporary stay in the instant case conserves judicial and party resources.  Continuing to stay this matter so as to permit the important jurisdictional issue to be resolved also poses no burden to Plaintiff. This is because discovery is already proceeding in the parallel state court enforcement action between these same parties.  Thousands of pages of documents have been exchanged and depositions of the parties were also

recently conducted last week.  The state court enforcement action which has been consolidated with the HOA's lawsuit against the RMI is also scheduled for a trial on April 22, 2019, and thus, the very same issues raised in this case are poised to be resolved before any decision could be reached in this federal matter, and could change the posture of the federal case if those issues are resolved in the Township's and Polo Club's favor.  As such, to order duplicative discovery in this case will only cause the parties to expend significant resources unnecessarily and may subject this Court to another round of lengthy motions practice following the conclusion of the state court action.  However, because the issue of this Court's jurisdiction remains unresolved, those costs can be avoided by staying the proceedings in this case pending resolutions of the Defendants' opposition to Plaintiff's motion to amend the Complaint on jurisdictional grounds.  See Pappas v. Twp. of Galloway, 565 F.Supp.2d 581, 587 (D.N.J. 2008) (holding that the Younger abstention was appropriate to an appeal of a land use board's decision to the New Jersey Appellate Division).

Respectfully submitted,

s/ Ruby Kumar-Thompson
RUBY KUMAR-THOMPSON, ESQ.

RKT:cms
Enclosures (2)

cc:     All counsel of record (via ECF only)
        Judge Claire C. Cecchi, U.S.M.J. (courtesy copy-via First Class Mail)