# EXHIBIT A

FILED
JAN 10 2018
KEITH A. BACHMANN, J.S.C.

prepared by the court

| | |
|---|---|
| STATE OF NEW JERSEY, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY *Criminal Action* |
| -vs- | BMA 001-18-02 |
| RAMAPOUGH MOUNTAIN INDIANS, INC., defendant. | **JUDGMENT AFTER TRIAL** *de novo* |

**THIS MATTER HAVING BEEN** brought before this court for a trial de novo, on the record made before the Honorable Roy F. McGeady, P.J.M.C., Matthew W. Daloisio, Esq. Valeria Gheorghiu, Esq. and Meghan D. Maurus, Esq. appearing for the defendant, and Joseph P. De Marco, Esq., municipal prosecutor for the Township of Mahwah appearing for the State, and this court having reviewed the briefs submitted by Mr. Daloisio dated September 17, 2018 and November 27, 2018, the brief submitted by Mr. De Marco dated October 15, 2018

1

and this court having reviewed the transcripts of the proceedings conducted before Judge McGeady on September 26, 2017, October 3, 2017, October 10, 2017, October 24, 2017, October 31, 2017 and November 17, 2017; and the court having inspected photocopies of the tickets that identified, in chronological order in Appendix A and the court having reviewed Mahwah's ordinances, the pertinent sections reproduced, for convenience, in Appendix B; and this court having considered the arguments made by Ms. Gheorghiu and Mr. DeMarco on November 30, 2018, for the reasons set forth below, it is on this 10th day of January, 2019

**ORDERED** that a judgment of conviction be and is entered against the defendants on all of the summonses identified in Appendix A; and it is further

**ORDERED** that fines are assessed in the amount of $5,100; and it is further

**ORDERED** that costs are assessed in the amount

of $2,040; and it is further

**NOTED** that the defendant has 45 days within which to appeal and if an appeal is not timely filed, the defendant may be entitled, in the discretion of the Appellate Division to a 30 day extension; and that the defendant is entitled to file a Post-Conviction Relief Application within 5 years of today's conviction; and it is further

**NOTED** that all counsel for the defendant have been directed to have the appropriate corporate officer of the defendant execute and submit the notice of appeal rights and time to file a petition for post-conviction relief form attached to this decision and identified as Appendix C within 10 days.

_____
Keith A. Bachmann, J.S.C.

**REASONS FOR THIS DECISION**

The defense has asked this court to consider this matter anew on the record below. R. 3:23 permits this

3

court to do so.

In this case the defendant was charged with violating various zoning ordinances. This court understands that 44 paper summonses issued[1].

Summons SC 008496 cited a violation of an ordinance that is not a regulatory ordinance and Judge McGeady dismissed that charge. T1[2], 5 @ 15. Three other summonses charged the defendant with moving soil without a permit (SC008401[3], SC008494 and SC008495). Judge McGeady acquitted the defendant on those charges. S6[4], 11 @ 1. Judge McGeady acquitted the defendant of allowing the energy trailer on its property on August 16, 2018.[5] Judge McGeady also acquitted the defendant regarding summons SC 008492 charging an offense on December 13, 2016.[6] These charges will not be revisited by this court because to reconsider them would have a chilling effect on a defendant's right to appeal and would abridge the defendant's right not to be placed in jeopardy twice. By this court's count, 102 summonses remain. There are 38 remaining paper summonses.

The pertinent facts established beyond a reasonable doubt by the record are:

1) the defendant acquired the property by deed on July 17, 1995: T3[7], 46 @ 18.

2) on January 25, 2012 the Township of Mahwah issued a zoning permit so that the defendant might build a longhouse and use it for prayer and community

---

[1] T1, 22 @ 2.
[2] T1 refers to the transcript of proceedings on September 26, 2017.
[3] This may have been mistakenly identified. Compare T2, 25 @ 22 through 27 @ 7 where it SC008491.
[4] S6 is the transcript of proceedings on November 17, 2018.
[5] T6, 13 @ 16.
[6] T6, 14 @ 16.
[7] T3 refers to the transcript of proceedings on October 10, 2017

4

cultural assembly. T1, 6 @ 1-4; T1, 19 @ 24.

3) on November 29, 2016 the defendant was notified that it had structures on its property that were contrary to the Township's zoning code, specifically teepees, tents, a canvas cabin and a lumber structure that contained a roof, floor and cabinets. T2, 21 @ 5

4) the Township of Mahwah afforded the defendant a period of time to comply with the town's ordinances

5) One of the structures, a large tent, was erected by the defendant on the property in October of 2016 and that tent remained on the property through and including the trial date of October 17, 2017. T3, 202 @ 22 - 203 @ 22.[8]

6) That tent measured 12 feet by 14 feet which means that it covered 168 square feet of ground

7) trunks of trees that had naturally fallen on the property were arranged on the ground to create what the defendant referred to as a longhouse with spaces between the trunks facing North, South, East and West: T3, 104 @ 4-22

8) the tree trunks were arranged in a rectangular pattern measuring 20 feet by 60 feet[9]: T3, 103 @ 1

9) the diameter of the trunks of said trees rose to a height sufficient for sitting on: T3, 104 @ 1.

10) in 2011 the defendant placed 12 large poles in the ground that were once tree trunks; these poles had

---

[8] T3 refers to the transcript of proceedings on October 10, 2017.
[9] The record is not clear as to whether the measurement was in feet, yards or meters

5

      carvings on them and were symbolic of walls with gates

11) said poles were installed in a manner similar to telephone poles. T3, 192 @ 2.

12) the tree trunks laying on the ground in a rectangular shape and the trunks sunk into the ground and protruding out of the ground like telephone poles remained on the property throughout the period of violation (12/13/16 through 9/22/17)

13) the defendant never acquired a zoning permit for the erection of tents, teepees, yurts, or a cook shack T2, 56 @ 22 through 57 @ 5.

14) Thomas Mulvey is Mahwah's planning, zoning and property maintenance inspector. T2, 7 @ 21.

This court will address the various defenses made.

The defense argued before Judge McGeady that the defendant was entitled to sovereign immunity. Judge McGeady held that the defendant was not entitled to sovereign immunity but was subject to the laws of the United States, of the State of New Jersey, and of the Ordinances of the Township of Mahwah. T1, 17 @ 6.

The defense continued to argue on *de novo* review that the Ramapo Mountain Indians, Inc. were entitled to sovereign immunity.

A scholarly discussion of the foundation of such immunity is unnecessary to determine the issue. It is sufficient to recognize that the immunity springs from treaties that were made before the United States of America became a sovereign and from the prohibition

6

against the Federal Government, a Municipal Government or a State Government exercising jurisdiction over a sovereign Indian Tribe. Pre-existing property rights and pre-existing rights to self-govern are the subjects of sovereign immunity claims.

The doctrine basically respects tribal rights that existed prior to the creation of our Nation, our State and in this case, the Township of Mahwah.

Some tribes had possessory rights to certain land with the United States. See generally: Oneida Indian Nation v. County of Oneida, 414 U.S. 670 – 672 (1974) and a later formed Federal, State or Municipal government entity has no authority to regulate activity on said land absent consent by a tribe or an act of congress.

The record does not identify when the corporation known as the "Ramapo Mountain Indians, Inc." was formed. Incorporation is a creature of statute. The right to incorporate may have been first authorized in New Jersey in 1846. See. Waters v. Quimby, 27 N.J.L. 296, 306 (1859). Our Nation and our State became sovereign entitles well before this right to incorporate.

Additionally, this defendant's incorporation could not have occurred before the initial members of the tribe organized and that had to be circa 1900. This must be so because Chief Perry testified that in order to be a member of the Ramapo Indian Tribe one had to be able to trace his or her family back to the original families that were part of the Tribe in the early 1900s. T3, 80 @ 4.

Finally, the defendant did not own this property until 1995.

The record before this court does not establish that there was a Ramapo Mountain Indian tribe prior to the formation of the United States of America or the State of New Jersey nor does it establish that the land in question was the property of said tribe prior to the formation of the United States of America or the State of New Jersey and that the property was acquired well after Mahwah incorporated[10] and so no sovereign immunity argument on this basis can be countenanced.

Alternatively, this defense must be supported by establishing that the Ramapo Indians are a sovereign entity and therefore not answerable for its activities to a Federal, State or Municipal government entity.

The defense relies on Lewis v. Clarke, 137 S. Ct. 1285 (2017). That case is distinguishable. That case involved the sovereign rights of the Mohegan Tribe, a tribe that was established in the early 1600s and one recognized as a sovereign by our Federal government, Id. at 1289. There is no evidence to establish that the Ramapo Indian Tribe was recognized by our Federal Government, nor that the Ramapo Indian Tribe existed before our Federal or State governments exist.

The defense relies on Montana v. Blackfoot, 471 U.S. 759 (1985). That case is distinguishable. There was no dispute that the land in question was on a recognized Indian reservation and a State's effort to tax an Indian Tribe's mineral lease royalties without permission of congress.

The defense raised sovereign immunity to support its argument that Mahwah cannot regulate the Ramapo Indian Tribe, Inc's ceremonial use of its land. This is not a case in which a municipality seeks to regulate

---

[10] This court takes notice that Mahwah was incorporated in 1944.

8

ceremonial activity. This case is not about activity; it is about code compliance.

The defense raised pre-emption as a defense. The authority for said argument is Homebuilder's League, etc. v. Evesham Tp., 174 N.J.Super. 252 (L.Div. 1980). That holding is distinguishable on its facts[11].

The defense argued that the Uniform Construction Code does not require a permit for a tent. The exception outlined in the code is for tents 120 square foot in ground coverage or less, that are used for less than 180 days. Chief Perry admitted that at least one large tent covering 168 square feet of ground was erected and stood from October of 2016 through October of 2017. The tent is larger than the excepted size and existed for a period of time longer than the excepted duration and this argument, therefore, has no merit.

Judge McGeady held that the Religious Land Use and Institutionalized Person Act (RLUIPA) did not afford the defendant a defense but rather, entitled the defendant to challenge the ordinance before the Zoning Board of Adjustment in Mahwah. T1, 18 @ 1 though 19 @ 14.

RLUIPA does not except a religious institution from complying with zoning ordinances. House of Fire v. Zoning Bd., 379 N.J. Super. 526, 544 (App. Div. 2005).

In a proper forum, RLUIPA requires a religious institution to first demonstrate that the ordinance imposes a substantial burden on religious exercise

---

[11] The trial judge held, correctly, that the ordinances created through the authority of a State Statute designed to regulate the development of property could not be used as a vehicle to collect taxes and the inclusion of such a condition, as a prerequisite to acquiring a permit to develop the land was improper and pre-empted by the State staturory scheme designed to regulate the development of land. Mahwah's ordinance does set prerequisite conditions but their only design is to regulate the development of land.

9

before a government entity becomes obligated to persuade the court that its ordinance furthers a compelling governmental interest and is the least restrictive means of furthering that interest. Id. at 545. This is not the proper forum. A proper challenge, placing the matter squarely in controversy, would be after Mahwah had either declined to issue a zoning permit or after Mahwah declined to grant a variance. The record before this court does not contain this information and that is because the defendant did not comply with Mahwah's ordinance and apply for a zoning permit.

In addition, this court does not need to reach the question of whether prohibiting the longhouse or a sweat lodge, for example is prohibiting religious exercise because this court determined this controversy based upon the presence of the large tent which, beyond any doubt, was erected without acquiring a zoning permit and allowed to stand for over a year.

All other defenses that were raised are without merit.

The ordinances in question are clear and have been reproduced as Appendix B.

This court reviewed the proofs provided by the State in its case on direct. This court looked for evidence that a person with first-hand knowledge observed a structure erected while believing that no zoning permit had issued. That proof is the bare minimum necessary to establish a violation.

Testimony about a cooking shack, a yurt and a sweat lodge, produced on direct, met this criteria in only forty nine instances[12].

---

[12] See the "Note" on page 2 of Appendix A.

10

The defendant did not move for a dismissal[13] at the end of the State's case presented to Judge McGeady and made no such application in this *de novo* proceeding.

The defense called Chief Perry and he testified that the defendant had erected a large tent on the property. That tent was erected in October of 2016 (before the first summons charge date) and that said tent remained there as of October 10, 2017 (after the last summons charge date).

A tent meets the definition of a "structure" in Mahwah's ordinance (*Structure* shall mean a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land).

Mr. Mulvey, the Mahwah inspector, established that no zoning permit was ever acquired by the defendant to erect said tent contrary to Mahwah's ordinance (Zoning permits shall be secured from the Zoning Officer prior to construction, erection or alteration of any structure or part of a structure or use of a structure or land).

If a tree falls down through natural causes and the trunk lays on the ground near other fallen tree trunks there would be no basis to charge the defendant with violating the town's ordinance. But if the defendant were to clean up that fallen tree, remove its broken and twisted branches and cut away is dirt impacted roots, and then put the fallen tree trunks in a pattern, the ordinance could be read to establish that a structure has been created. (*Structure* shall mean a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land).

This court does not have to decide this question because the record establishes, beyond a reasonable

---

[13] See: State v. Reyes, 50 N.J. 454 (1956)

doubt, that at least one large tent, which meets the definition of a structure, was erected on the property by the defendant and that the defendant never bothered to acquire a zoning permit for same and that said large tent was on the property on every day charged in the multiple summonses.

The multiple summonses charge violations on one hundred and two separate dates. The Mahwah ordinance declares it to be a separate violation for every day that a violation exists (Except as otherwise provided, every day in which a violation of any provision of this Code or any other ordinance of the Township exists shall constitute a separate violation.).

The zoning ordinance provides for a maximum fine of $1,250 per day. Judge McGeady fined the defendant $100 per day. Judge McGeady believed that the ordinance contained a mandatory minimum fine of $100[14].

The general penalty section provides a sentencing judge with great discretion when determining a fine (Any person who shall violate any provision of [any]... ordinance ... shall ... be punishable by ... a fine not exceeding one thousand two hundred fifty ($1,250.00) dollar .... The maximum penalty stated in this section is not intended to state an appropriate penalty for every violation. Any lesser penalty, including a nominal penalty or no penalty at all, may be appropriate for a particular case or violation. The governing body may prescribe that, for the violation of any particular Code provision or ordinance, at least a minimum penalty shall be imposed which shall consist of a fine which may be fixed at an amount not exceeding one hundred ($100.00) dollars).

Chapter 24 of Mahwah's Zoning Ordinance does not set a mandatory minimum and, instead, refers to the general penalty section. As the result this court understands that the fine can be anywhere from zero to $1,250 per day. There was no evidence of scienter and the defendant, through agents, did make some effort, although not a great effort to comply with Mahwah's requirements.

---

[14] See T6, a transcript of proceedings on November 17, 2017, page 32, line 24.

Given the volume of summonses, noting that this defendant would not even be in this court but for the efforts of lawyers who donated their time, this court believes a lesser fine of $50 per day would be sufficient.

$50 times 102 days is $5,100.

Finally, Judge McGeady levied court costs of $33 per day. This court takes notice of the "Report of the Supreme Court Committee on Municipal Court Operations, Fines, and Fees"[15] supplied, post argument, by the defense. It contains recommendations to the Supreme Court and one concern centers on the "excessive imposition of financial obligations on certain defendants" that have a "… disproportionately negative impact on the poor". While the report specifically targets the "… imposition of mandatory financial obligations upon defendants that extend beyond the fine that associated with the violation …" and while court costs are not mandatory financial obligations, the impact of large court costs is the same as the impact of mandatory surcharges.

This court has also reviewed the language in N.J.S.A. 22A:3-4. Said statute provides "In municipal court proceedings, the court shall impose court costs within the maximum limits authorize …" and further provides that "[t]he court shall not suspend the collection…" of $2 to the Automated Traffic System Fund and $3 to the Automatic System Statewide Modernization Fund. This means that whether this court assesses court costs or not, the Township of Mahwah will have to remit $5 per offense, not per summons. Were this court to only assess costs per summons then Mahwah would have to pay for this defendant's ordinance offending actions.

---

[15] Published June, 2018; https://njcourts.gov/courts/assets/supreme/reports/2018/sccmcoreport_wapp.pdf

Municipalities incur costs and expenses to run a municipal court. While the Mahwah Municipal Court did not conduct this trial, its clerk had to exert efforts before this matter was sent to Judge McGeady for trial and Mahwah had to supply its prosecutor to write briefs and make arguments. Court costs serve to defer those expenses.

This court believes that the appropriate resolution is to access $20 in court costs per violation, not per summons. $20 times 102 violations is $2,040 and in this court's view, it is appropriate to assess said costs.

The defendant's fines and costs total $7,140.

The defendant has 45 days within which to appeal this decision and 5 years within which to make a petition for post-conviction relief.

14

# APPENDIX A

| OFFENSE DATE(S) | TICKET NO. | CHARGE |
|---|---|---|
| 01/10/17 | SC008497 | 24-11.2C |
| 04/27/17 | SC008525 | " |
| 04/28/17 | SC008526 | " |
| 05/01/17 | SC008527 *1 | " |
| 05/02/17 | SC008528 | " |
| 05/03/17 | SC008529 | " |
| 05/04/17 | SC008530 | " |
| 05/05/17 | SC008531 | " |
| 05/08/17 | SC008532 | " |
| 05/09/17 | SC008533 | " |
| 05/10/17 | SC008534 | " |
| 05/11/17 | SC008535 | " |
| 05/12/17 | SC008536 | " |
| 05/13/17 | SC008537 | " |
| 05/16/17 | SC008538 | " |
| 05/17/17 | SC008539 | " |
| 05/18/17 | SC008540 | " |
| 05/19/17 | SC008541 | " |
| 05/22/17 | SC008546 *2 | " |
| 05/23/17 | SC008547 | " |
| 05/24/17 | SC008550 | " |
| 05/25/17 | SC008551 | " |
| 05/29 - 06/02/17 | SC008555 *3 | " |
| 06/05 - 06/09/17 | SC008556 | " |
| 06/12 - 06/16/17 | SC008559 | " |
| 06/26 - 06/30/17 | SC008560 | " |
| 07/03 - 07/07/17 | SC008581 | " |
| 07/10 - 07/14/17 | SC008584 | " |

---

1   Mr. Mulvey testified that these summonses were issued because the defendant failed to acquire a zoning permit. He DID NOT testify that he saw the violations on the dates that he issued the summonses. See T2, 56 @ 24.

2   Mr. Mulvey DID NOT testify that he saw violations on the dates that he issued these summonses. Instead he testified that he issued the summonses because Mr. Kelly authorized him to do so. See and T2, 58 @ 2 and T2, 80 @ 24

3   Again, Mr. Mulvey DID NOT testify that he observed the conditions, rather he simply explained the natur of the alleged violations.

```
07/17 - 07/21/17        SC008585  *4      "
07/24 - 07/28/17        SC008586          "
07/31 - 08/04/17        SC008587          "
08/07 - 08/11/17        SC008588          "
08/14 - 08/18/17        SC008730          "
08/21 - 08/25/17        SC008749          "
08/28 - 09/01/17        SC008570          "
09/04 - 09/08/17        SC008733          "
09/11 - 09/15/17        SC008734          "
09/18 - 09/22/17        SC008735          "
```

Note: Highlight indicates that there was testimony in the record establishing that the condition that constituted an offense was observed to exist on the date complained of.

---

4   Again, Mr. Mulvey DID NOT testify that he observed the conditions, rather he simply explained the natur of the alleged violations.

# APPENDIX B

### 24-2.2  Definitions.

As used in this Chapter:

*Structure* shall mean a combination of materials to form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land

### 24-4.2  Application of Regulations.

Except as hereinafter otherwise provided:

a. No building or structure shall be erected and no existing building or structure shall be moved, altered, added to or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses hereinafter listed as permitted in the district in which such building or land is located.

### 24-11.2  Zoning Permits.

c. *Issuance of Zoning Permit.* Zoning permits shall be secured from the Zoning Officer prior to construction, erection or alteration of any structure or part of a structure or use of a structure or land. It shall be the duty of the Zoning Officer to issue a **zoning permit**, provided that person is satisfied that the proposed use conforms with all requirements of this Chapter. It is the applicant's responsibility that all other reviews and actions, if any, called for in this Chapter or any other Township ordinance have been complied with and all necessary approvals secured therefor.

### *24-11.5 Violations and Penalties.*

c. *Penalties.* Any person, firm or corporation violating any provision of this Chapter shall, upon conviction, be subject to penalty, as stated in Chapter I, Section 1-5 of the Code of the Township of Mahwah.

### 1-5  GENERAL PENALTY.
#### 1-5.1  Maximum Penalty.

Any person who shall violate any provision of this Code or other ordinance of the Township, where no specific penalty is provided regarding the section violated, shall, upon conviction thereof, be punishable by one or more of the following: a fine not exceeding one thousand two hundred fifty ($1,250.00) dollars …

#### 1-5.2  Separate Violations.

Except as otherwise provided, every day in which a violation of any provision of this Code or any other ordinance of the Township exists shall constitute a separate violation.

#### 1-5.3  Application.

The maximum penalty stated in this section is not intended to state an appropriate penalty for every violation. Any lesser penalty, including a nominal penalty or no penalty at all, may be appropriate for a particular case or violation.

#### *1-5.4  Minimum Penalty.*

The governing body may prescribe that, for the violation of any particular Code provision or ordinance, at least a minimum penalty shall be imposed which shall consist of a fine which may be fixed at an amount not exceeding one hundred ($100.00) dollars