# EXHIBIT B

MUNICIPAL COURT
BERGEN COUNTY
VICINAGE II COURT
HACKENSACK, NEW JERSEY
DOCKET NO.

STATE OF NEW JERSEY,

    Plaintiff,

   vs.

RAMAPO INDIANS,

    Defendants.

TRANSCRIPT

OF

TRIAL

Place: Bergen County Vicinage II
   Court
   10 Main Street
   Hackensack, N.J. 07601

Date:  October 31, 2017

BEFORE:

 THE HONORABLE ROY F. MC GEADY, P.J.M.C.

APPEARANCES:

 JOSEPH P. DEMARCO, ESQ., (Joseph P. Demarco, Esq.),
 Municipal Prosecutor for the Township of Mahwah,
 Attorney for the State.

 AARON KLEINBAUM, ESQ., (Eastern Environmental Law
 Center),
 Attorney for the Defendants.

 THOMAS WILLIAMS, ESQ., (Thomas Williams, Esq.),
 Attorney for the Defendants.

\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
**METRO TRANSCRIPTS**, L.L.C.
**Kelly Ford**
316 Ann Street
Randolph, New Jersey  07869
(973) 659-9494
\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\

```
                              2
1                  I N D E X
2                  10/31/17
3
4              Direct  Cross  Redirect  Recross
5    WITNESS
6    FOR THE STATE
7    MR. MICHAEL KELLY
8    By Mr. Demarco      5              66
9    By Mr. Williams          52
10
11   SUMMATIONS          Page
12   By Mr. Williams      80
13   By Mr. Kleinbaum     87
14   By Mr. Demarco       91
15
16   EXHIBIT                          Ident.  Evid.
17   T-16, Chief Perry's certification.          15
18   T-17, 9/15/17 Letter from Mr. Kelly.   39   36
19   D-12, NJ Administrative Code, Chapter 22.  65
20
21
22
23   Please note: Log does not indicate which defense
24   attorney is speaking.
25
```

```
                                              3
1              THE COURT:  Let me just get myself settled in
2    my strange quarters here.
3                   (Attorneys confer)
4              THE COURT:  All right.  I think we're set.
5    So would you enter your respective appearances again,
6    please.
7              MR. DEMARCO:  Your Honor, good morning.
8    Joseph P. Demarco appearing on behalf of the Township.
9              THE COURT:  Good morning, Mr. Demarco.
10             MR. DEMARCO:  Thank you, Judge.
11             MR. KLEINBAUM:  Good morning, Your Honor.
12   Aaron Kleinbaum, Eastern Environmental Law -- Law
13   Center on behalf of the Ramapo Mountain Indians.
14             THE COURT:  Good morning, sir.
15             MR. KLEINBAUM:  My colleague, Raghu Murthy,
16   is appearing in Appellate Court so I apologize.
17             THE COURT:  Oh, I see.  You switched.
18             MR. KLEINBAUM:  We switched.  Right.
19             THE COURT:  Good.  Okay.  Glad to have you in
20   court.
21             MR. WILLIAMS:  Good morning, Your Honor.
22   Thomas Williams on behalf of Ramapo Indians.
23             THE COURT:  Good morning.  All right.  How
24   did we leave it?  I know (indiscernible) and I spoke
25   earlier.  There was a request by the defense to do a
```

60

1  paragraph of the letter.  And this is a letter dated
2  November 26th, 2013.  Mr. Mulvey says, does he not, "At
3  this time I do not see any violations or need for
4  permits for movement on the property"?
5  A    So I -- and this may be, you know, I don't know if
6  it's a question for me, but it appears that the
7  activity that Mr. Mulvey is talking about is the
8  movement of logs and trees on the property.  And that's
9  what he's talking about.  Tom Mulvey typically is our
10 tree guy who goes over the removal of trees, and
11 typically we don't have movement of trees.  So maybe
12 that's what he's referring to in that.
13        Q    Well, he says in -- at the end of the second
14 paragraph, does he not, the logs are being placed, not
15 installed or made permanent between poles previously
16 erected.
17 A    He does say that.  Yes.
18        Q    Okay.  Now you also testified that this
19 property is in what zone?
20 A    It's in the C-200 zone.
21        Q    And you testified before about houses of
22 worship, correct?
23 A    That's correct.
24        Q    And houses of worship generally refer to a
25 structure in which people go to worship or pray,

61

1  correct?
2  A    Yes.
3        Q    So church or a mosque or a synagogue.  That
4  would be the normal type of house of worship, correct?
5  A    Those would be considered houses of worship,
6  correct.
7        Q    And you're familiar with the -- or are you
8  familiar with the type of prayer that is done on this
9  property?
10 A    No.  I'm not -- I don't know the details of prayer
11 that -- that go on at the property.
12        Q    Okay.  Well, according to the 2011 permit,
13 one of the things that was permitted on this property
14 was prayer, correct?
15 A    The zoning permit was for building a longhouse to
16 be used for prayer and community/cultural assembly.
17        Q    So does that mean that when you revoked the
18 permit that the Ramapo could no longer pray on their
19 property?
20 A    I would say that they can't use houses of worship
21 or structures that they will use for prayer without
22 obtaining proper approvals.
23        Q    Okay.  But if they don't have houses of
24 worship as we just discussed, they -- they just have
25 the open ground, is it still your position because you

62

```
 1          revoked the permit that they cannot pray?
 2          A    If it's considered public assembly I would say
 3          that that's not permitted as -- as well either.
 4                Q    So let's say anywheres (sic) between two and
 5          five of the Ramapo are on the property, and they decide
 6          to pray, then that would not be permitted, correct?
 7          A    They should submit a zoning approval and go to the
 8          board of adjustment for approval for that.  We're not
 9          -- I'm not saying they can't do it.  They just need to
10          follow the proper procedures.
11                Q    So you're saying that in order to pray on the
12          property they have to go to the zoning board of
13          adjustment.
14          A    If they're going to pray on the property in
15          structures that they have indicated, even in their 2017
16          zoning permit, they indicate that they will be using
17          the structures on site for religious and cultural
18          assemblies, just like in their 2011 application they
19          indicate that they'll use structures for cultural and
20          religious assemblies, those should follow the proper
21          procedures by going to the board of adjustment for
22          approval.
23                Q    And if the structures are not used when the
24          prayer is being done?
25          A    If the site -- if you have the site that is going
```

63

```
 1          to have a use on it, you need to get zoning approval.
 2          You also need to get site plan approval.  There's
 3          reasons for that.  For site plan approval you're going
 4          to look at traffic, circulation, lighting, landscaping,
 5          make sure there's sufficient areas for parking, all --
 6          all that goes into the approval process.  And it -- it
 7          all generates from what the use on the site is.
 8                Q    You also testified about the definition of a
 9          campground.  Did you not?
10          A    I did.
11                Q    And I think you referred to the author,
12          Moskowitz?
13          A    That's correct.
14                Q    And in that treatise or that work that you
15          referred to, does he refer to the administrative -- New
16          Jersey Administrative Code in the definition of
17          campground?
18          A    Let me check.  He refers to the State Code.  It --
19          he doesn't refer to the Administrative Code.
20                Q    The State Code is the New Jersey
21          Administrative Code.  Isn't it?  Are you aware -- is
22          there any other type of state code?
23          A    I'm not sure.  I don't know.
24                Q    Okay.  Well, do you -- do you see the
25          reference to the particular portion of the New Jersey
```

112

1
2
3                          CERTIFICATION
4
5          I, Kelly Ford, the assigned transcriber, do hereby
6      certify the foregoing Transcript of Proceedings in the
7      Vicinage II Court, on October 31, 2017 and recorded on
8      CD No. 10/31/17-1, Index No. 9:28:45 to 11:26:00 and CD
9      No. 10/31/17-2, Index No. 1:42:50 to 2:41:00, is
10     prepared in full compliance with current Transcript
11     Format for Judicial Proceedings and is a true and
12     accurate compressed transcript of the proceedings as
13     recorded.
14
15
16
17     KELLY FORD, AOC 561
18     METRO TRANSCRIPTS, L.L.C.
19
20     Date:
21              8-9-18
22
23
24
25