# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC. and RAMAPOUGH LENAPE NATION, <br><br> Plaintiffs, <br><br> -against- <br><br> THE TOWNSHIP OF MAHWAH, RAMAPO HUNT & POLO CLUB ASSOCIATION, INC., GERALDINE ENTRUP, in her official capacity, THOMAS MULVEY, in his official capacity, | Case No.: 2:18-cv-09228-CCC-KBC <br><br> Civil Action |

---

**BRIEF IN SUPPORT OF RAMAPO HUNT & POLO CLUB ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT TO DISMISS PLAINTIFFS' COMPLAINT OR IN THE ALTERNATIVE TO DISMISS RAMAPOUGH LENAPE NATION FROM THIS ACTION**

---

### HUESTON McNULTY, P.C.
Attorneys for Defendant, Ramapo Hunt & Polo Club Association, Inc.

256 Columbia Turnpike, Suite 207
Florham Park, NJ 07932
Telephone: (973) 377-0200
Facsimile: (973) 377-6328
Email: jgaffney@huestonmcnulty.com

Our File No. 10037

JOHN F. GAFFNEY, ESQ.
On the Brief

**MOTION DATE: DECEMBER 16, 2019**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ iii

PRELIMINARY STATEMENT ......................................... 1

PROCEDURAL HISTORY ........................................... 2

STATEMENT OF UNDISPUTED FACTS ................................ 9

LEGAL ARGUMENT .............................................. 20

    POINT I

    PLAINTIFF'S COMPLAINT IS BARRED BY THE ENTIRE
    CONTROVERSY DOCTRINE AND/OR RES JUDICATA. . . . . . . . 20

    POINT II

    THIS COURT SHOULD DISMISS THE AMEND COMPLAINT
    BECAUSE IT FAILS TO PLEAD FACTS AND SUFFICIENT
    TO MAKE OUT A 42 U.S.C. §1985 (3) CLAIM . . . . . . . . 27

    A.THE AMENDED COMPLAINT CONTAINS NO
      COLORABLE ALLEGATION THAT MAHWAH'S
      ZONING ORDINANCE OR ANY OTHER LAWS
      HAVE BEEN APPLIED "UNEQUALLY". . . . . . . . . . . . 28

    B. THE AMENDED COMPLAINT ALLEGES
      NO FACTS CONCERNING A "CONSPIRACY" –
      I.E., AN AGREEMENT TO COMMIT SOME FUTURE
      UNLAWFUL ACT-BETWEEN THE ASSOCIATION
      AND MAHWAH. . . . . . . . . . . . . . . . . . . . . 31

    POINT III

    PLAINTIFFS' CLAIMS AGAINST THE ASSOCIATION ARE
    BARRED UNDER THE FIRST AMENDMENT'S FREE SPEECH
    AND PETITION CLAUSES. . . . . . . . . . . . . . . . . . 35

    A. PLAINTIFFS' CLAIMS ARE BARRED UNDER THE
      FREE SPEECH CLAUSE. . . . . . . . . . . . . . . . . 37

    B. PLAINTIFFS' CLAIMS ARE BARRED UNDER THE
      THE PETITION CLAUSE. . . . . . . . . . . . . . . . . 39

POINT IV

RLN IS NOT ENTITLED TO SUE IN FEDERAL COURT
BECAUSE ITS SOVEREIGNTY HAS NOT BEEN RECOGNIZED
BY THE PRESIDENT. . . . . . . . . . . . . . . . .   45

A. SOVEREIGNS UNRECOGNIZED BY THE EXECUTIVE
   BRANCH MAY NOT SUE IN FEDERAL COURT. . . . . . .   45

B. THE BUREAU OF INDIAN AFFAIRS DOES NOT
   RECOGNIZE RLN AS A SOVEREIGNTY. . . . . . . . .   46

CONCLUSION. . . . . . . . . . . . . . . . . . . . . .   47

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

Affordable Housing Dev. Corp. v. City of Fresno, 433 F.3d 1182,
   (9th Cir. 2006)............................................ 42

Alger Bible Baptist Church v. Tp. of Moffatt, 2014 WL 462354, at
   *6 (E.D. Mich. Feb. 5, 2014)............................... 30

Anton v. Getty, 78 F.3d 393, 396 n.5 (8th Cir. 1995). ...... 33,42

Arizona Dream Act Coalition v. Brewer, 818 F.3d 901 (9th Cir.
   2016),.................................................... 43

Baker v. Carr, 369 U.S. 186 (1962 ........................... 45

Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155
   (3d Cir. 1988),............................................ 43

California Motor Transport Co. v. Trucking Unlimited, 404 U.S.
   508 (1972)................................................. 41

Christian Gospel Church, Inc. v. City & County of San
   Francisco, 896 F.2d 1221 (9th Cir. 1990), superseded on other
   grounds by................................................. 43

Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J.
   280 (1995................................................. 20

Culver v. Insurance Company of N. Am., 115 N.J. 451 (1989).
   ....................................................... 25,26

iii

D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992)........................................... 32

D'Antonio v. Borough of Allendale, 2017 WL 701384, at *7, *11 (D.N.J. Feb. 21, 2017)...................................... 28

DiTrolio v. Antiles, 142 N.J. 253 (1995). ................. 20,21

Eastern R.R. Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 135 (1961.................................... 39,40,41,44

Ex Parte Hitz, 111 U.S. 766 (1884) ........................... 45

Federal Republic of Germany v. Elicofon, 358 F. Supp. at 750 .. 46

Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 615 (8th Cir. 1980)...................................................... 40

Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). .......... 21

Herr v. Pequea Tp., 274 F.3d 109, 115 (3d Cir. 2001), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Tp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003............... 39

Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co., LLC, 240 F.Supp.3d 299, 307 (D.N.J. 2017)....................... 41

Jian Zhang v. Biadu.com Inc., 10 F.Supp.3d 433, 436-44 (S.D.N.Y. 2014),...................................................... 35

Kahawaiolaa v. Norton, 386 F.3d 1271, 1273-74 (9th Cir. 2004). 47

Kahermanes v. Marchese, 361 F. Supp. 168, 171 (E.D. Pa. 1973) ...................................................... 32,42

Kremer v. Chemical Const. Corp., 456 U.S. 461, 482 (1982). .... 25

Kush v. Rutledge, 460 U.S. 719, 726 (1983). ....................**32**

Malaker Corp. Stockholders Protective Committee v. First Jersey
   National Bank, 163 N.J. Super. 463, 496 (App. Div. 1978), cert.
   denied, 79 N.J. 488 (1979),...................................**21**

Manistee Town Center v. City of Glendale, 227 F.3d 1090 (9th
   Cir. 2000)..................................................**40**

Mariana v. Fisher, 338 F.3d 189, 199-200 (3d Cir. 2003 .......**40**

Martin v. King, 417 F.2d 458 (10th Cir. 1969). ...............**34**

Matal v. Tam, 582 U.S. ____, 137 S.Ct. 1744 (2017 ...........**39**

Melikian v. Corradetti, 791 F. 2d 274, 279 (3d Cir. 1986). ....**21**

Meyer v. Grant, 486 U.S. 414, 425 (1988). ....................**37**

Migra v. Warren City School District Bd. of Ed., 465 U.S. 75, 81
   (1984......................................................**25**

Miracle Mile Assocs. v. City of Rochester, 617 F.2d 18 (2d Cir.
   1980))......................................................**40**

New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). .....**38**

Peduto v. City of North Wildwood, 878 F.2d 725, 728 (3d Cir.
   1989.......................................................**24**

Pfizer, Inc. v. Government of India, 434 U.S. 308, 319-20
   (1978).....................................................**46**

Printing Mart-Morristown, Inc. v Rosenthal, 650 F. Sup. 1444,
   1447 (D.N.J. 1987).........................................**22**

<u>Professional Real Estate Investors, Inc. v. Columbia Pictures</u>

   <u>Industries, Inc</u>., 508 <u>U.S.</u> 49, 60 (1993) ("PREI")........**41,44**

<u>R.A.V. v. City of St. Paul</u>, 505 <u>U.S.</u> 377 (1992)...............**39**

<u>Redwood v. Dobson</u>, 476 <u>F.3d 462</u> (7th Cir. 2007) ..............**31**

<u>Rycoline Products, Inc. v. CW Unlimited</u>, 109 <u>F. 3d</u> 883, 886

   (1997...................................................**24**

<u>Sand v. Steele</u>, 218 <u>F.Supp</u>.2d 788, 790 (E.D. Va. 2002) .......**33**

<u>Scotto v. Almenas</u>, 143 <u>F.3d</u> 105, 111-13 (2d Cir. 1998); .......**42**

<u>Snyder v. Phelps</u>, 562 <u>U.S.</u> 443, 451 (2011) .............**35,37.39**

<u>Suber v. Guinta</u>, 902 <u>F.Supp.2d</u> 591 (E.D. Pa. 2012) ........**28,31**

<u>The Maret</u>, 145 <u>F.2d</u> 431, 440 (3d Cir. 1944). .................**45**

<u>U.S. v. Alvarez</u>, 567 <u>U.S.</u> 709, 718-19 (2012) .................**37**

<u>U.S. v. Stevens</u>, 559 <u>U.S.</u> 460, 470 (2010). ...................**37**

<u>United Broth. of Carpenters and Joiners of America, Local 610,</u>

   <u>AFL-CIO v. Scott</u>, 463 <u>U.S.</u> 825, 828-29 (1983)...............**28**

<u>United Mine Workers v. Pennington</u>, 381 <u>U.S.</u> 657, 670 (1965).

   .................................................**39,40,41,44**

<u>Watkins v. Resorts International Hotel & Casino, Inc.</u>, 124 <u>N.J.</u>

   398 (1991).................................................**25**

<u>White v. Lee</u>, 227 <u>F.3d</u> 1214, 1227 (9th Cir. 2000) ............**40**

<u>William Blanchard Co. v. Beach Concrete Co., Inc.</u>, 150 <u>N.J.</u>

   <u>Super.</u> 277, 293-94 (App. Div.) cert. denied, 75 N.J. 528

   (1977).................................................**22**

Zivotofsky ex rel. Zivotofsky v. Kerry, 576 U.S. ___, 135 S.Ct.

  2076, 2089 (2015) ........................................... **45**

## RULES, STATUTES, REGULATIONS AND OTHER AUTHORITIES

### Rules

Fed. R. Civ. P. 12(b)(6) ................................. **24,27**

Fed. R. Civ. P. 8(c) ...................................... **23,24**

New Jersey Civil Practice Rule 4:30A ......................... **20**

### Statutes

42 U.S.C.§ 1985(3 ........... **18,27,28,29,31,32,33,35,36,40,42,43**

 N.J.S.A. 15A:6-1 ........................................... **33**

N.J.S.A. 40:55D-18 .......................................... **9**

25 U.S.C. § 479. ........................................... **46**

42 U.S.C. §§1983 ........................................... **35**

28 U.S.C. §1738 ........................................... **24**

### Other Authorities

Religious Land Use and Institutionalized Person Act ........ **15,35**

84 Fed. Reg. 1200-1205 (Feb.1, 2019). ....................... **47**

U.S. Const. Amend. I .................. **15,23,35,36,37,39,40,44,47**

U.S. Const. Art. IV §2 ..................................... **35**

## PRELIMINARY STATEMENT

Defendant, Ramapo Hunt & Polo Club Association, Inc., is a non-profit corporation of the State of New Jersey consisting of 29 homeowners in Mahwah, New Jersey. The defendant brings this motion to dismiss the Amended Complaint because it is barred by the Entire Controversy Doctrine and/or Res Judicata, because it fails to make out a claim against the Association, and because the complained-of conduct is protected under the Free Speech and Petition Clauses of the First Amendment.

In the alternative, defendant moves to dismiss Ramapough Lenape Nation as a party for lack of Executive Branch recognition. In order for a purported sovereignty to be entitled to sue in Federal Court, it must be recognized by the Executive Branch of the United States Government which in this case is the Bureau of Indian Affairs. The Bureau of Indian Affairs does not recognize Ramapough Lenape Nation as a sovereign entity and, thus, it lacks the capacity to sue in Federal Court.

## PROCEDURAL HISTORY

On May 14, 2018, Ramapough Mountain Indians, Inc. ("RMI") and Ramapough Lenape Nation ("RLN") filed a Complaint under Civil Action No. 2:18-cv-9228 against Township of Mahwah ("Mahwah"), Ramapo Hunt & Polo Club Association, Inc. ("Association"), Geraldine Entrup, Thomas Mulvey, John and Janes Does 1-14, and John Doe Entities 1-2. (ECF 1).

Plaintiffs' Claims for Relief were:

COUNT ONE - Free Exercise of Religion against Mahwah & Association
COUNT TWO - Freedom of Association against Mahwah & Association
COUNT THREE - Substantive Due Process against Mahwah
COUNT FOUR - Procedural Due Process against Mahwah
COUNT FIVE - Substantial Burdens under the Religious Land Use and Institutionalized Persons Act (RLUIPA) against Mahwah & Association
COUNT SIX - Equal Terms under RLUIPA against Mahwah & Association
COUNT SEVEN - Nondiscrimination under RLUIPA against Mahwah & Association
COUNT EIGHT - Exclusion and Limits under RLUIPA against Mahwah & Association
COUNT NINE - Forced Evictions under United Nations and the Organization of American States against Mahwah & Association
COUNT TEN - Nuisance against Association
COUNT ELEVEN - Declaratory Judgment against Mahwah & Association
(ECF 1)

On June 7, 2018, plaintiffs filed a Notice of Motion for a Temporary Restraining Order and Request for Preliminary Injunction. (ECF 12). On June 11, 2018, District Judge Claire Cecchi denied plaintiffs' request for a Temporary Restraining Order. (ECF 15).

On July 18, 2018, the Association filed a Motion to Dismiss plaintiffs' Complaint or in the alternative to dismiss plaintiff, Ramapough Lenape Nation, for lack of Executive Branch recognition. (ECF 28).  On July 18, 2018, Mahwah, Geraldine Entrup and Thomas Mulvey filed a Motion to Dismiss plaintiffs' Complaint for lack of jurisdiction and failure to state a claim. (ECF 29).

On September 21, 2018, plaintiffs filed a Notice of Motion for Leave to file a First Amended Complaint. (ECF 42).  On September 25, 2018, District Judge Claire Cecchi administratively terminated the defendants' motions to dismiss (ECF 28 and 29) pending resolution of plaintiffs' motion to amend/correct the Complaint. (ECF 45).  On October 16, 2018, District Judge Claire Cecchi issued a Text Order staying discovery and motion practice to allow the parties additional time to engage in mediation.  (ECF 62).

On December 6, 2018, Magistrate Judge James B. Clark III administratively terminated plaintiffs' motion to amend their Complaint (ECF 42) in light of the Court's Order staying discovery and motion practice to allow the parties to engage in meaningful mediation. (ECF 64).  On December 11, 2018, District Judge Claire Cecchi ordered that plaintiffs' motion to amend the Complaint be reinstated. (ECF 66).  On January 4, 2019, Magistrate Judge James B. Clark III ordered discovery be stayed pending further order of the Court and scheduled a conference call. (ECF 67).

3

On January 23, 2019, the Association filed a Brief in opposition to plaintiffs' motion for leave to amend the Complaint. (ECF 72). On February 13, 2019, plaintiffs filed a Reply Memorandum of Law in further support of plaintiffs' motion for leave to file a First Amended Complaint. (ECF 75). On March 8, 2019, plaintiffs filed a motion to lift the discovery stay. (ECF 79). On April 1, 2019, the Association filed opposition to plaintiffs' motion to lift the discovery stay. (ECF 85).

On July 3, 2019, plaintiffs dismissed all claims against Mahwah, Geraldine Entrup and Thomas Mulvey. (ECF 100). On August 9, 2019, plaintiffs filed a renewed motion for leave to file a First Amended Complaint. (ECF 104-1). On September 13, 2019, District Judge James B. Clark III granted plaintiffs' renewed motion for leave to file a First Amended Complaint. (ECF 106). On September 17, 2019, plaintiffs filed their Amended Complaint. (ECF 107).

Plaintiffs' Amended Complaint names the Association as the only defendant in the caption but includes the following Parties in the body of the pleading: Township of Mahwah, Ramapo Hunt & Polo Club Association, Inc., Geraldine Entrup and Thomas Mulvey. Plaintiffs' Claims for Relief in the Amended Complaint are:

**COUNT ONE – Free Exercise of Religion against Mahwah, Entrup and Mulvey**

**COUNT TWO – Freedom of Association against Mahwah, Entrup and Mulvey**

**COUNT THREE** – Substantive Due Process against Mahwah, Entrup and Mulvey

**COUNT FOUR** – Conspiracy to Violate Civil Rights against Mahwah, Entrup, Mulvey and Association

**COUNT FIVE** – Substantial Burdens under RLUIPA against Mahwah

**COUNT SIX** – Equal Terms under RLUIPA against Mahwah

**COUNT SEVEN** – Exclusion and Limits under RLUIPA against Mahwah. (ECF 107)

On September 18, 2019 following an in-person settlement conference, Magistrate Judge James B. Clark III issued a Letter Order setting forth the following:

1) Defendants' counsel shall review the terms of plaintiffs' settlement with his clients as soon as possible.
2) Within fourteen (14) days the parties shall meet and confer to discuss the possibility of settlement and to gauge the likelihood thereof.
3) The Court will conduct a telephone status conference with the parties on October 16, 2019 at 9:30 a.m. Counsel for plaintiffs shall initiate the call.
4) Defendants' time to respond to plaintiffs recently filed Amended Complaint (ECF 107) is stayed pending further Order of the Court. (ECF 108).

On October 16, 2019 following a telephone status conference, Magistrate Judge James B. Clark III issued a Letter Order setting forth the following:

1) All remaining defendants shall respond to the Amended Complaint (ECF 107) no later than November 15, 2019.
2) The parties shall serve initial written discovery (interrogatories and document responses) on or before November 30, 2019 to be responded to by December 30, 2019.
3) The Court will conduct a telephone status conference with the parties on January 6, 2020 at 11:30 a.m. Counsel for defendant shall initiate the call. Prior to the call, the parties shall exchange up-to-date settlement positions. (ECF 111)

## MUNICIPAL & STATE COURT PROCEDURAL HISTORY

Mahwah issued a number of summons to RMI for violating various zoning ordinances and a trial was held in the Mahwah Municipal Court before the Honorable Roy McGeady who issued a decision on November 17, 2017 finding RMI guilty of 103 violations. (**Exhibit A**). On January 10, 2019, on appeal to the Superior Court of New Jersey Law Division Bergen County under Docket No. BMA 001-18-02, the Honorable Keith Bachmann upheld 102 of the 103 Municipal Court convictions. (**Exhibit B**).

On May 9, 2017, Mahwah filed a Complaint against RMI in the Superior Court of New Jersey Law Division Bergen County under Docket No. BER-L-3189-17. (**Exhibit C**). On June 15, 2017, RMI filed an Answer to Mahwah's Complaint under Docket No. BER-L-3189-17. (**Exhibit D**).

On September 22, 2017, the Association filed a Complaint against RMI and Mahwah in the Superior Court of New Jersey Law Division Bergen County under Docket No. BER-L-6409-17. (**Exhibit E**). On October 23, 2017, RMI filed a Letter Brief in response to the Association's request for preliminary restraints under Docket No. BER-L-6409-17. (**Exhibit F**). On November 28, 2017, RMI filed an Answer to the Complaint of the Association under Docket No. BER-L-6409-17. (**Exhibit G**). On or about December 12, 2017, Mahwah filed an Answer to the Complaint filed by the Association under Docket No. BER-L-6409-17. (**Exhibit H**).

6

On October 27, 2017, RMI filed a Complaint for Declaratory Judgment and in Lieu of Prerogative Writs against Michael Kelly and Mahwah in the Superior Court of New Jersey, Law Division, Bergen County that was assigned Docket No. BER-L-7345-17. (**Exhibit I**).

On January 30, 2018, the Association filed a Motion under Docket No. BER-L-6409-17 to Consolidate <u>Township of Mahwah v. Ramapough Mountain Indians, Inc.</u> bearing Docket No. BER-L-3189-17 and <u>Ramapo Hunt & Polo Club Association, Inc. v. Ramapough Mountain Indians, Inc. and Township of Mahwah</u> bearing Docket No. BER-L-6409-17. (**Exhibit J**). On March 1, 2018, the Motion to Consolidate was withdrawn because it was believed the matter was settled subject to the approval of the Association, the Tribal council of RMI, and the Mayor and Council of Mahwah. (**Exhibit K**). The settlement was not approved by all parties.

On November 15, 2018, Mahwah filed a Motion under Docket No. BER-L-3189-17 to Consolidate <u>Township of Mahwah v. Ramapough Mountain Indians, Inc.</u> and <u>Ramapo Hunt & Polo Club Association, Inc. v. Ramapough Mountain Indians and Township of Mahwah</u> bearing Docket No. BER-L-6409-17. (**Exhibit L**). On December 7, 2018, the Honorable Robert L. Polifroni consolidated the matters noting that RMI filed no opposition. (**Exhibit M**).

On January 18, 2019, RMI as defendants in Docket Nos. BER-L-3189-17 and BER-L-6409-17, filed a Notice of *Motion in Limine* in

anticipation of a January 30, 2019 trial.  This motion sought to permit RMI to offer the First Amendment and the Federal Religious Land Use and Institutionalized Person Act ("RLUIPA") as defenses in the upcoming trial.  (Exhibit N). On April 28, 2019, RMI filed a Trial Memorandum of Law.  (**Exhibit O**).

In or about early May of 2019, RMI entered into a Settlement Agreement with Mahwah resolving Township of Mahwah v. Ramapough Mountain Indians, Inc., Docket No. BER-L-3189-17; an appeal of the Municipal Court decision of Judge Keith Bachmann pending in the Superior Court of New Jersey Appellate Division titled State v RMI, Inc., A-002403-18/BMA-001-18-02; this Federal Court action; and outstanding Summonses issued by Mahwah, State of New Jersey v. Ramapough Mountain Indians, Inc., Summons No. 0233-SC-008525 et. seq. against the defendant RMI which had not been adjudicated by the Mahwah Municipal Court.  (**Exhibit P**).

On May 3, 2019, following a bench trial in the Superior Court of New Jersey Law Division Bergen County, Judge Robert Wilson held that the Association failed to prove a *prima facia* case for injunctive relief and dismissed its Complaint against RMI. (**Exhibit Q**).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Mahwah issued a number of summons to RMI for violating various zoning ordinances and a trial was held in the Mahwah Municipal Court before the Honorable Roy McGeady who issued a decision on November 17, 2017 finding RMI guilty of 103 violations. (**Exhibit A**). On January 10, 2019, on appeal to the Superior Court of New Jersey Law Division Bergen County under Docket No. BMA 001-18-02, the Honorable Keith Bachmann upheld 102 of the 103 Municipal Court convictions. (**Exhibit B**).

On May 9, 2017, Mahwah filed a Complaint against RMI in the Superior Court of New Jersey Law Division Bergen County under Docket No. BER-L-3189-17. Mahwah stated in its Complaint that it was a municipal corporation of the State of New Jersey that filed this action to enjoin violation of the Township's Zoning Ordinance pursuant to N.J.S.A. 40:55D-18. Mahwah identified RMI as the record owner of property located in Mahwah known as 95 Halifax Road. Mahwah stated that commencing in or about 2016, they began to receive numerous complaints from surrounding residents regarding certain activity taking place on the property contrary to the Township Zoning Ordinance. These complaints included, but were not limited to, the use of the property as a campground with some individuals using the site as a permanent basis as living quarters, soil movement and illegal construction in the flood plain, all of which were performed without the necessary zoning

approval from the Township. Mahwah stated that it had issued summonses and violation notices to RMI for a continuing violation of the Township's Zoning Ordinances. Mahwah sought a permanent injunction directing that RMI and its employees, agents, assigns and successors cease and desist all use of the property in violation of the current Zoning Ordinance, removal of any and all structures in violation of the Zoning Ordinance, attorneys' fees and costs and for such other relief that the court deems to be just and equitable. (**Exhibit C**)

On June 15, 2017, RMI filed an Answer to Mahwah's Complaint under Docket No. BER-L-3189-17 admitting that it owned the property at 95 Halifax Road and denying that it had violated any Zoning Ordinance. RMI's defenses were listed as follows:

<u>First Affirmative Defense</u>

The Township's Complaint is barred by the Entire Controversy Doctrine. There is current a matter pending in Mahwah Township Municipal Court, scheduled for a hearing on (date), consisting of the same parties and same issues.

<u>Second Affirmative Defense</u>

Plaintiffs' Complaint is barred by the Equitable Doctrines of Estoppel, Waiver and Unclean Hands. The Tribe has been openly using the land and the region for religious and ceremonial purposes for more than 25 years. The Township has long been well aware of the religious use of this property; in fact, over 10 years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identify Sweet Water as "Ceremonial" land. The Tribe relied on the explicit approval of Bergen County and the tacit approval of the Township in continuing its religious use

of Sweet Water.    Therefore, the Township is estopped from asserting its claims.

### Third Affirmative Defense

Plaintiffs' Complaint is barred by the Doctrine of Laches.  The Tribe has been using the land and the region for religious and ceremonial purposes for at least 25 years.  Over 10 years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identified Sweet Water as "Ceremonial" land.   The Township was well aware of the Tribe's religious use of Sweet Water starting, at the latest, with the erection of these signs.   Therefore, the Township's delay in bringing action only now is unexplained, unexcused and unreasonable.

### Fourth Affirmative Defense

The Township's Complaint is barred, in whole or in part, because the claims asserted therein are made in bad faith solely for the purpose of harassment and religious discrimination in contravention of the Religious Land Ese and Institutionalized Persons Act.

### Fifth Affirmative Defense

The Township's Complaint is barred because the actions of the Tribe are consistent with the Municipal Land Use Law, the Township Zoning Ordinance, the Flood Hazard Area Control Act, and all other applicable laws. (**Exhibit D**)


On September 22, 2017, the Association filed a Complaint against RMI and Mahwah in the Superior Court of New Jersey Law Division Bergen County under Docket No. BER-L-6409-17.   The Association stated in its Complaint that it is a non-profit homeowners association organized to administer the common areas of a residential complex consisting of various parcels, including 29 residential lots adjacent to the RMI property at 95 Halifax Road.

11

The Association stated that their action involved enforcement of Mahwah's Zoning Ordinances, building and construction codes, including the Uniform Construction Code and/or electric subcodes, and any other ordinances which were or are violated by the actions, uses, activities and structures of the RMI on the property at 95 Halifax Road. The Association explained that its sole access is over a one lane bridge traversing Halifax Road. The Association noted that for many years they cooperated with RMI as good neighbors during which time the RMI initially converted the property to a U.S. Fish & Wildlife Restoration Project and had minimal use and activities on the property, which Mahwah attempted to regulate by enforcement over the years. However, the harms and adverse effects on the community had escalated recently, especially in the last 18 months, to the point that the health, safety and welfare of the Association's members and property were being adversely affected and/or damaged. **(Exhibit E)**.

The Association argued that religious use, a house of worship and prayer use was not permitted on the property that was located in a C-200 Conservation Zone and violated Mahwah's Zoning Ordinances. They further argued that structures for religious use, houses of worship and/or prayer, campground use and structures, public assembly, mobile home use, outdoor movies, sale of food/restaurant, use and structures in a flood plain, erection and alteration of structures were all done without permit; there

was failure to provide off street parking, failure to obtain site
plan approval for buildings, structures or other uses, use of a
prohibitive solar windmill, violation of electrical subcodes and
building codes, failure to obtain soil movement permits,
disturbance of the Riparian Zone and nuisance. **(Exhibit E)**.

On October 23, 2017, RMI filed a Letter Brief under Docket
No. BER-L-6409-17 in opposition to the Association's request for
preliminary restraints. RMI included in its Statement of Facts the
following:

> **Since November 2016,** the Ramapo Hunt & Polo Club Association,
> Inc. (the "Polo Club"), an enclave of wealthy landowners
> neighboring Sweet Water, has **schemed** to force the Tribe to
> forgo its religious practices and leave its ancestral
> homeland. In December 2016, **at the Polo Club's urging,** the
> Township of Mahwah June 15th Order P.2. The Municipal Complaint to the Tribe.
> June 15th Order P.2. The Municipal Complaint asserted that
> the Zoning Ordinance prohibited the Tribe from conducting
> prayer and community cultural assembly at Sweet Water, and
> that the teepees and tents at Sweetwater violated the Zoning
> Ordinance. Id. Since December 2016, the Township has issued
> dozens of Municipal Complaints to the Tribe with the same
> claims. Those claims are currently being litigated in a trial
> in this very courthouse, before Judge Roy F. McGeady.
> (emphasis added).**(Exhibit F, page 2)**.

> Among its legal arguments, RMI stated:

> The Polo Club seeks a sweeping injunction barring the Tribe
> from "engaging in religious . . .activity" at Sweet Water.
> Proposed Order to Show Cause p.2. Such an injunction would be
> blatant violation of the Tribe's Constitutional right to
> "free exercise of religion" and "the inestimable privilege of
> worshipping Almighty God in a manner agreeable to the dictates
> of his own conscience." **(Exhibit F, page 8)**.

On November 28, 2017, RMI filed an Answer to the Association's Complaint under Docket No. BER-L-6409-17 that included the following defenses:

### First Affirmative Defense

Ramapough is a state recognized sovereign nation and does not concede the authority of Mahwah's ordinance to regulate Ramapough prayer and community cultural assembly activities on its land.

### Second Affirmative Defense

Plaintiff's Complaint is barred by res judicata and collateral estoppel. On November 17, 2017, the Honorable Roy McGeady issued a decision in the State of New Jersey v. Ramapough Mountain Indians, Inc., Bergen County Municipal Court Vicinage 2, Docket No. 0233-SC-8491 etc., that resolved a number of the issues and claims set forth by plaintiff.

### Third Affirmative Defense

Plaintiffs' Complaint is barred by the equitable doctrines of estoppel, waiver and unclean hands. Ramapough has been openly using Sweet Water for prayer and community cultural assembly for decades. Plaintiff has long been well aware of the religious use of Sweet Water; in fact, over ten years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identified Sweet Water as "ceremonial" land. Ramapough relied on the explicit approval of Bergen County and the tacit acknowledgement of Plaintiff in continuing its religious use of Sweet Water. Therefore, Plaintiff is estopped from asserting its claims.

### Fourth Affirmative Defense

Plaintiff's Complaint is barred by the doctrine of laches. Ramapough has been using Sweet Water for prayer and community cultural assembly for decades. Over ten years ago, Bergen County erected signs on public roads leading to the entrance of the Tribe's property that identified Sweet Water as "ceremonial" land. Plaintiff was well aware of Ramapough's religious use of Sweet Water starting, at the latest, with the erection of these signs. Therefore, Plaintiff's delay in

bringing action now is unexplained, unexcised and unreasonable.

### Fifth Affirmative Defense

Plaintiff's Complaint is barred because the actions of the Tribe are consistent with the Municipal Land Use Law, the Township Zoning Ordinance, the Flood Hazard Area Control Act, and all other applicable laws. (**Exhibit G**).

On or about December 12, 2017, Mahwah filed an Answer to the Association's Complaint under Docket No. BER-L-6409-17. (**Exhibit H**).

On November 15, 2018, Mahwah as the plaintiff in Docket No. BER-L-3189-17 filed a Motion to Consolidate Township of Mahwah v. Ramapough Mountain Indians, Inc. and Ramapo Hunt & Polo Club Association, Inc. v. Ramapough Mountain Indians and Township of Mahwah, Docket No. BER-L-6409-17. (**Exhibit L**). On December 7, 2018, the Honorable Robert L. Polifroni consolidated the matters noting that RMI filed no opposition. (**Exhibit M**).

On January 18, 2019, RMI as defendants in Docket Nos. BER-L-3189-17 and BER-L-6409-17 filed a Notice of *Motion in Limine* in anticipation of a January 30, 2019 trial. This motion sought to permit RMI to offer the First Amendment and the Federal Religious Land Use and Institutionalized Person Act ("RLUIPA") as defenses in the upcoming trial. As is relevant to this motion, counsel for RMI argued in its Memorandum of Law as follows:

15

Also, *as is* **strongly evidenced by Mahwah's improper rescission of a 2012 permit** to convert the prayer circle into a long house, without notice or opportunity to be heard, Polo Club members and counsel's intemperate rhetoric and **Mahwah's inappropriate deference to this one small segment of wealthy citizens**, an attempt to pursue administrative remedies by seeking a variance would certainly have resulted in a denial. (emphasis added)(**Exhibit N, page 4**)

Counsel for the RMI also stated:

7.   Defendants should be permitted to offer evidence of plaintiffs' unclean hands.

Defendant will offer significant evidence at trial of the astonishing racism of members of plaintiff Polo Club and their overt eagerness to use legal process to drive defendant from its land at 95 Halifax and no longer to endure them as neighbors. *Defendant will also* **offer evidence that plaintiff Mahwah has abrogated its duty to represent all citizens of the town, and either from its own bigotry or from fear of the power and influence of wealthy Polo Club members, lent its own authority to Polo Club's insensate crusade to destroy defendant.**   (emphasis added)(**Exhibit N, pages 13-14**)

On April 28, 2019, RMI filed a Trial Memorandum of Law in anticipation of the state court trial of the consolidated matters where they stated the following as Facts:

**In recent years** (emphasis added), as tensions between the Polo Club and the Ramapough escalated, Polo Club homeowners have put Mahwah under tremendous pressure to issue zoning code violations to the Ramapo, and Mahwah has compliantly begun issuing, by weekly mail, summonses to the Ramapough many of which are, remarkably, written to penalize specifically First Amendment uses, using language such as "Failure to Obtain Zoning Permit for Use Religious" and "Failure to Obtain Zoning Permit for Use 'public assembly'". Other summonses penalized the Prayer Circle and Stone Altar as structures.  Use summonses are written daily, five days per week, regardless of whether any use of 95 Halifax took place on that day, and without any witness from Mahwah visiting the property on most days for which summonses are written.  No date has yet been set for an upcoming Municipal

Court trial on more than three million dollars' worth of
fines.

*Mahwah and the Polo Club are in effect working together*
(emphasis added) as co-plaintiffs to shut down almost any use
by the Ramapough of their property at 95 Halifax.  Both Mahwah
officials and Polo Club members have publicly stated in the
past that no more than three, or five Ramapough, should be
able to assemble on their own property without Mahwah
permission.  (**Exhibit O, pages 5-6**).


In or about early May of 2019, RMI entered into a Settlement

Agreement with Mahwah resolving Township of Mahwah v. Ramapough

Mountain Indians, Inc., Docket No. BER-L-3189-17; an appeal of the

Municipal Court decision of Judge Keith Bachmann pending in the

Superior Court of New Jersey Appellate Division titled State v

RMI, Inc., A-002403-18/BMA-001-18-02; this Federal Court action;

and outstanding Summonses issued by Mahwah, State of New Jersey v.

Ramapough Mountain Indians, Inc., Summons No. 0233-SC-008525 et.

seq. against the defendant RMI which had not been adjudicated by

the Mahwah Municipal Court.  (**Exhibit P**).

On May 3, 2019, following a bench trial in the Superior Court

of New Jersey Law Division Bergen County, Judge Robert Wilson found

that the Association failed to prove a *prima facia* case for

injunctive relief and dismissed its Complaint against the RMI.

(**Exhibit Q**).

Plaintiffs alleges in their Federal Court Amended Complaint

that plaintiff, Ramapough Lenape Nation, is a state-recognized

sovereign entity whose members are descendants of the original

Munsee people of Lenapehoking, a territory that includes parts of present day New York and New Jersey. (ECF 107, page 2 of 38). The Bureau of Indian Affairs has determined that the Plaintiffs are not a recognized Indian tribe for federal purposes. *See* generally Dept. of Interior, Bureau of Indian Affairs, "Indian Tribal Entities Within the Contiguous 48 States Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs." Fed. Reg. Vol.84, No.22, February 1, 2019. (**Exhibit R**).

In plaintiffs' Amended Complaint, after dismissing all claims against Mahwah, Geraldine Entrup and Thomas Mulvey, the Association is the remaining defendant and the only claim against the Association is contained in Count Four which alleges Mahwah and the Association conspired to violate the plaintiff's civil rights in violation of 42 U.S.C. §1985(3). The facts in support of this cause of action are contained in Paragraphs 70 through 82 and designated as: "III. Mahwah and the Polo Club have conspired to burden Plaintiff's exercise of religion based on discriminatory animus." (ECF 107 @ ¶¶70-82.) The factual allegations may be summarized as follows:

- Mahwah issued summonses for zoning violations. ¶70.

- HOA residents have publicly expressed their desire that Plaintiffs leave the Property. *Id.*

18

- Mahwah elected officials and the HOA have met and discussed Plaintiffs' continuing violations of law.  ¶71.

- The HOA's PR firm submitted a letter to the editor about Plaintiffs' violations.  ¶72.

- The HOA have reported crimes and filed criminal complaints against RMI and its members.  ¶¶73; 77.

- Members of the HOA have shouted racist language at Plaintiffs.  ¶74.

- Bags of dog feces have been found on the Property's driveway.  ¶75.

- Security cameras have been pointed towards the Property.  ¶76.

- HOA members have publicly demanded that Mahwah fine Plaintiffs.  *Id.*

- A Mahwah attorney and Mahwah elected official asked if they could employ self-help.  ¶¶77-80.

- An unidentified HOA resident made vague statements about the Property.  ¶81.

- The HOA has filed lawsuits against RMI and has participated in its capacity as a victim in other actions brought against Plaintiffs.  ¶82.

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFFS' COMPLAINT IS BARRED BY THE ENTIRE CONTROVERSY DOCTRINE AND/OR RES JUDICATA**

New Jersey's Entire Controversy Doctrine bars this Federal Action because the claims asserted by the plaintiffs could and should have been brought in the State Court actions among the parties. New Jersey Civil Practice Rule 4:30A provides, in part: "Non-joinder of claims or parties required to be joined by the Entire Controversy Doctrine shall result in the preclusion of the omitted claims to the extent required by the Entire Controversy Doctrine ..." The Entire Controversy Doctrine embodies the notion that: "The adjudication of the legal controversy should occur in one litigation and only one court; accordingly, all parties involved in the litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." DiTrolio v. Antiles, 142 N.J. 253 (1995). The Doctrine thus requires a party to bring in one action "all affirmative claims that it might have against another party, including counterclaims and cross claims" and to join in that action "all parties with a material interest in the controversy," or be forever barred from bringing a subsequent action involving the same underlying facts. Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280 (1995).

20

As the DiTrolio court explained:

> The doctrine reflects a basic concept of judicial administration that is of constitutional dimension. The purposes of the Doctrine are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay. Id. at 167.

The doctrine of res judicate and collateral estoppel, now respectively termed claim preclusion and issue preclusion, "share the common goals of judicial economy, predictability and freedom from harassment." Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).

New Jersey's Entire Controversy Doctrine reflects the State's "broad policy against claim-splitting" - reaching "more broadly" than the "same cause of action" requirement of traditional Res Judicata Doctrine. Melikian v. Corradetti, 791 F. 2d 274, 279 (3d Cir. 1986). As the court explained in Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank, 163 N.J. Super. 463, 496 (App. Div. 1978), cert. denied, 79 N.J. 488 (1979), under this doctrine, "the Entire Controversy, rather than its constituent causes of action, is the unit of litigation and joinder of all such causes of action is compulsory upon penalty of forfeiture." Furthermore, the rule "applies both to subsequent actions asserting different legal theories and those reflecting

alternative relief". <u>Printing Mart-Morristown, Inc. v Rosenthal</u>,
650 <u>F. Sup</u>. 1444, 1447 (D.N.J. 1987).

In applying this doctrine, the New Jersey courts make an
evaluation of:

> Each potential component of a particular
> controversy to determine the likely consequences of the
> omission of that component from the action and its
> reservation for litigation another day. If those
> consequences are likely to mean that the litigants in
> the action as framed will, after final judgment therein
> is entered, be likely to engage in additional litigation
> in order to conclusively dispose of their respective
> bundles of rights and liabilities which derive from a
> single transaction or related series of transactions,
> than the omitted component must be regarded as
> constituting an element of the minimum mandatory unit of
> litigation. That result must obtain whether or not that
> component constitutes either an independent cause of
> action by technical definition or an independent claim
> which, in the abstract, is separately adjudicable.
> <u>William Blanchard Co. v. Beach Concrete Co., Inc.</u>, 150
> <u>N.J. Super</u>. 277, 293-94 (App. Div.) cert. denied, 75
> N.J. 528 (1977). The point of the doctrine is that "a
> component of the controversy may not be unfairly
> withheld, and a withholding is by definition unfair if
> its effect is to render the pending litigation merely
> one inning of the whole ballgame. 150 <u>N.J. Super</u>. 294.

In the state court actions, RMI accused Mahwah and the
Association of joining forces beginning in 2012 to deny plaintiffs
their religious rights. RMI stated:

> "as is strongly evidenced by Mahwah's improper rescission of
> a **2012 permit** to convert the prayer circle into a long house,
> without notice or opportunity to be heard, **Polo
> Club members
> and counsel's intemperate rhetoric and Mahwah's inappropriate
> deference to this one small segment of wealthy citizens. .**"

"**Mahwah has abrogated its duty to represent all citizens of the town**, and either from its own bigotry or **from fear of the power and influence of wealthy Polo Club members, lent its own authority to Polo Club's insensate crusade to destroy defendant.**"

**Since November 2016,** the Ramapo Hunt & Polo Club Association, Inc. (the "Polo Club"), an enclave of wealthy landowners neighboring Sweet Water, has **schemed** to force the Tribe to forgo its religious practices and leave its ancestral homeland. In December, 2016, **at the Polo Club's urging,** the Township of Mahwah issued a Municipal Complaint to the Tribe. June 15th Order P.2. The Municipal Complaint asserted that the Zoning Ordinance prohibited the Tribe from conducting prayer and community cultural assembly at Sweet Water, and that the teepees and tents at Sweetwater violated the Zoning Ordinance. Id. Since December, 2016, the Township has issued dozens of Municipal Complaints to the Tribe with the same claims. Those claims are currently being litigated in a trial in this very courthouse, before Judge Roy F. McGeady.

In recent years, as tensions between the Polo Club and the Ramapough escalated, **Polo Club homeowners have put Mahwah under tremendous pressure to issue zoning code violations to the Ramapo, and Mahwah has compliantly begun issuing, by weekly mail, summonses to the Ramapough** many of which are, remarkably, written to penalize specifically First Amendment uses, using language such as "Failure to Obtain Zoning Permit for Use Religious" and "Failure to Obtain Zoning Permit for Use 'public assembly'". Other summonses penalized the Prayer Circle and Stone Altar as structures.

**Mahwah and the Polo Club are in effect working together as co-plaintiffs** to shut down almost any use by the Ramapough of their property at 95 Halifax. Both Mahwah officials and Polo Club members have publicly stated in the past that no more than three, or five Ramapough, should be able to assemble on their own property without Mahwah permission.

Res judicata is specifically listed as an affirmative defense pursuant to Fed. R. Civ. P. 8(c). It follows that, in the context

23

of a proceeding in Federal Court, the assertion that an action is barred by the Entire Controversy Doctrine is also an affirmative defense pursuant to that Rule, included along with res judicata. At the least, the Doctrine constitutes "any other matter constituting an avoidance or affirmative defense" under Rule 8C. Rycoline Products, Inc. v. CW Unlimited, 109 F. 3d 883, 886 (1997). Such an affirmative defense could properly be the grounds for a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Id. at 886. However, because this Court may not believe that the entire controversy bar is apparent on the face of the Amended Complaint, the motion has been pled as one for summary judgment.

A Federal Court is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. §1738 (1994). Peduto v. City of North Wildwood, 878 F.2d 725, 728 (3d Cir. 1989). That Act provides in part that the "judicial proceedings of any court of any ... state ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken." 28 U.S.C. §1738. In other words, "a federal court must give the same preclusive effect to a state court judgment as another court of that state would give." Peduto, 878 F.2d at 728. This requirement may be avoided only if "application of the state

24

preclusion law would violate due process". <u>Kremer v. Chemical Const. Corp.</u>, 456 <u>U.S</u>. 461, 482 (1982).

Federal courts must apply the Doctrine of Res Judicata to civil actions brought under Section 1983 and in this context must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. <u>Migra v. Warren City School District Bd. of Ed.</u>, 465 <u>U.S.</u> 75, 81 (1984). The principles of res judicata are reinforced in New Jersey by the Entire Controversy Doctrine which requires that all issues of a single dispute between the parties must be complete determined in one action. <u>Culver v. Insurance Company of N. Am.</u>, 115 <u>N.J.</u> 451 (1989). Under New Jersey law, res judicata or claim preclusion applies when (1) the judgment in the first action is valid, final and on the merits; (2) there is identity of the parties, or the parties in the second action are in privity with those in the first action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the first action. <u>Watkins v. Resorts International Hotel & Casino, Inc.</u>, 124 <u>N.J.</u> 398 (1991).

In the present matter, the plaintiffs reached a settlement agreement with Mahwah that was final, valid and on the merits. In the Association's action, a bench trial was held and a no-cause verdict rendered that was valid, final and on the merits. There is no dispute that the identity of the parties and the claims in

the state court actions are identical to this Federal action and arose out of the same transaction or occurrence. Thus, the Entire Controversy Doctrine bars the plaintiffs' civil conspiracy claim against the Association and should be dismissed.

The New Jersey Supreme Court has directed courts to consider:

1.   Whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions).

2.   Whether the theory of recovery is the same.

3.   Whether the witnesses and documents necessary at trial are the same, and

4.   Whether the material facts alleged are the same. Culver v. Insurance Company of N. Am., 115 N.J. 451, 463 (1989)

It is evident that RMI had the opportunity and obligation to raise its civil conspiracy claim in the state court actions, that were consolidated without objection by RMI, as it repeatedly alleged that Mahwah and the Association were coordinating in their attacks against RMI. New Jersey's Superior Court had jurisdiction to hear the civil conspiracy claims that are now being alleged and therefore these claims are barred.

## POINT II

## THIS COURT SHOULD DISMISS THE AMENDED COMPLAINT BECAUSE IT FAILS TO PLEAD FACTS SUFFICIENT TO MAKE OUT A 42 U.S.C. §1985(3) CLAIM

In its Amended Complaint, the plaintiffs limit one count against the Association, a conspiracy claim under 42 U.S.C. §1985(3). The grounds for its §1985(3) claim are the filing of police reports; discussions with elected officials about matters of public concern; participation at Town Council meetings; and the publishing of an op-ed. The plaintiffs seek to hold the Association civilly liable for engaging in protected speech and petitioning activities. This conduct is protected by the First Amendment and the Amended Complaint should be dismissed.

Seeking enforcement of facially neutral and generally applicable zoning laws does not constitute a conspiracy to violate civil rights. The Amended Complaint, therefore, cannot survive Fed. R. Civ. P. 12(b)(6) scrutiny because it does not plead sufficient facts to state a claim under 42 U.S.C. §1985(3). As such, the Amended Complaint should be dismissed.

To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his

person or property or deprived of any right of privilege of citizenship. <u>United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott</u>, 463 <u>U.S</u>. 825, 828-29 (1983). <u>See D'Antonio v. Borough of Allendale</u>, 2017 WL 701384, at *7, *11 (D.N.J. Feb. 21, 2017). The Amended Complaint fails to satisfy this standard.

**A. THE AMENDED COMPLAINT CONTAINS NO COLORABLE ALLEGATION THAT MAHWAH'S ZONING ORDINANCE OR ANY OTHER LAWS HAVE BEEN APPLIED "UNEQUALLY"**

The Amended Complaint alleges, without factual support, that the Association conspired with Mahwah's government to treat the plaintiffs unequally. Plaintiffs cite efforts by the defendants to enforce Mahwah's facially neutral and generally applicable Zoning Ordinances. While RMI was issued many summonses, that is only because they are the most frequent offenders. Simply enforcing facially neutral and generally applicable laws against a group claiming religious affiliation, without more, does not give rise to a § 1985(3) claim. <u>See</u> <u>Suber v. Guinta</u>, 902 <u>F.Supp.2d</u> 591 (E.D. Pa. 2012) (holding that the mere enforcement of criminal laws against patrons of a town's only bar serving the black community did not constitute a *per se* violation). There, the Plaintiff, who owned a bar catering to Pittsburg's black community, brought an action claiming that they were being targeted by law enforcement and, as a result, being treated differently than bars in the white community.

28

[The complaint alleged] that other "white" bars in Coatesville
are treated differently. Specifically, the [plaintiffs] aver
that [the plaintiffs' bar] is the only black bar in Coatesville.
They further aver that the "Polish Club" located across the
street from [the black owned bar] is not "harassed or bullied",
or issued citations on a regular basis, as [the black owned bar]
and the [plaintiffs] allegedly are.    [*Id.* at 601.]

That is to say, to sustain a §1985(3) claim, it is not sufficient
that a plaintiff is being treated differently — it must be that a
*similarly situated plaintiff* is being treated differently.  That
is the crux of inequality for purposes of constitutional claims.
Plaintiffs' neighbors are not acting in wanton disregard for
Mahwah's laws.  They use their properties as permitted uses under
the Zoning Ordinance (single-family residences) and have all
necessary permits for their homes.  There is simply no allegation
the Association's residents are not in compliance with Mahwah's
zoning ordinances and other laws.

The sole allegations that compare plaintiffs' violations to
those by other residents come in paragraph 68 of the Amended
Complaint.  This unconvincing attempt avers that Association's
residents have similarly violated Mahwah's Zoning Ordinance by
pointing to instances where the single-family homes put up a "brass
horse, menorahs, Christmas trees, and wreaths, and have hosted
large events with as many as twenty-five cars parked on the road."
EFC 107 @ ¶ 68.  This misapprehends Mahwah's Zoning Ordinance and

29

land-use procedures, as well as showing a fundamental misunderstanding of the basic issues that underline this dispute.

First, the Association is unsure what brass horse, menorahs, Christmas trees or wreaths is being referred to. There are no details of who, what, when and where. But there is an allegation that these would constitute "structures" as the term is defined under Mahwah's Ordinance or the Municipal Land Use Law. Second, there is no allegation that they were erected without permits. Third, there is no allegation regarding the impropriety of the "large events with as many as twenty-five cars parked on the road." *Id.* While there are insufficient facts to determine what, if any, "event" the Amended Complaint contemplates (as it is not specified), plaintiffs do not even allege that any aspect of those events was unlawful or unpermitted.

Plaintiffs are not comparing apples and apples, as an equal-protection claim requires. Again, this highlights the fact that Plaintiffs' crucially misunderstand land-use substantive and procedural law. First, it is axiomatic that a religious group "has no constitutional right to be free from reasonable zoning regulations nor does [it] have a constitutional right to build its house of worship wherever it pleases." Alger Bible Baptist Church v. Tp. of Moffatt, 2014 WL 462354, at *6 (E.D. Mich. Feb. 5, 2014).

**B. THE AMENDED COMPLAINT ALLEGES NO FACTS CONCERNING A "CONSPIRACY"—I.E., AN AGREEMENT TO COMMIT SOME FUTURE UNLAWFUL ACT—BETWEEN THE ASSOCIATION AND MAHWAH**

Nowhere does the Amended Complaint allege the essential elements of a conspiracy.  The Seventh Circuit's discussion in Redwood v. Dobson, 476 F.3d 462 (7th Cir. 2007), (Easterbrook, J.) is helpful:

> But where's the conspiracy? Plaintiffs treat all contact between prosecutors and complaining witnesses as "conspiracy." The minimum ingredient of a conspiracy, however, is an agreement to commit some future unlawful act in pursuit of a joint objective. The record in this case would not permit reasonable jurors to conclude that [a private citizen] and [a prosecutor] had a joint objective, let alone that they agreed to pursue it through unlawful acts. [The private citizen] complained to the prosecutor, seeking an end to what he deemed racist harassment; [the prosecutor] acted as she conceived the public interest to require. [The prosecutor] had no reason to do any favors for [the private citizen] and received nothing (except this lawsuit) in return for her official actions. No prosecutor handles a case in an isolation tank. Discussions with victims, witnesses, and police are common. If these ordinary acts amount to "conspiracy" to violate the Constitution, then immunities will be worthless and both witnesses and prosecutors would be induced to remain passive rather than enforce the criminal law vigorously.  _Id_. at 466-67.

Just using the word "conspiracy" in a complaint is insufficient.  The pleadings must allege supporting facts that would tend to show an unlawful agreement.  Suber, 902 F.Supp.2d at 608.  The Amended Complaint contains no such allegations.  It appears that plaintiffs are claiming §1985(3) violations on the basis of Association members reporting allegedly "inaccurate" information to the Mahwah Police Department in connection with criminal prosecutions brought against Perry and Smith.  ECF 107 @ ¶73.  Even if those (or other) statements were completely false,

plaintiffs could not base their §1985(3) claims on this incident. At least one court sitting in the Third Circuit has held that "[t]he deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under [42 U.S.C. § 1985(3)]." Kahermanes v. Marchese, 361 F. Supp. 168, 171 (E.D. Pa. 1973).

Further, the Amended Complaint is deficient because it attributes neither the alleged bad acts nor animus to the Association.  "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Kush v. Rutledge, 460 U.S. 719, 726 (1983).  "Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992).  The Amended Complaint contains no allegations tying the Association to the complained-of conduct.

The Amended Complaint contains no allegations that the Association acted with animus.  Paragraph 74 contains threadbare allegations about racial epithets.  It does not detail who is alleged to have made the statements, when (with any specificity) the alleged statements were made or provide any other facts that would support the claim that these statements were being made on

behalf of or at the behest of the Association. The court can take note that the Association is a nonprofit homeowners association organized and operating under the laws of the State of New Jersey. It acts through its board of trustees and authorized agents. See e.g., N.J.S.A. 15A:6-1. And while the Association does not concede that the statements set forth in Paragraph 74 were ever made, and certainly would not condone them, even if they were it is of no moment. The Association cannot be held liable for the unauthorized conduct of its members (even assuming a member made such comments) or the public at large.

As for Paragraph 73, the filing of criminal complaints against three RMI members: Harold Molt, Jr.; Dwaine Perry; and Steven Smith were made by one of the Association's Board of Trustees. Those complaints arose out of the events that occurred in May 2017. Reporting criminal activity to law enforcement does not constitute a "conspiracy" under § 1985(3). See Anton v. Getty, 78 F.3d 393, 369 n.5 (8th Cir. 1995); see also Sand v. Steele, 218 F.Supp.2d 788, 790 (E.D. Va. 2002) (finding that the officers "were merely living up to their duty as correctional officers to report a violation of prison policy by an inmate. . . .").

As the Tenth Circuit has noted, the prosecution of person for offending against other townspeople by maintaining cattle in town without a permit in violation of nuisance ordinance does not constitute a civil rights violation even if it is malicious.

*Martin v. King*, 417 F.2d 458 (10th Cir. 1969).  In any event, the Association's efforts to report these crimes to the Mahwah police department do not amount to an effort to unequally apply laws.  No other individuals, be it members of RMI or not, engaged in conduct similar to Perry who is RMI's Chief, Smith who is an attorney and RMI in-house advisor and Holt who is an RMI member.

## POINT III

## PLAINTIFFS' CLAIMS AGAINST THE ASSOCIATION ARE BARRED UNDER THE FIRST AMENDMENT'S FREE SPEECH AND PETITION CLAUSES

Plaintiffs' claims against the Association are barred under the First Amendment. Private actors like the Association cannot face civil liability under 42 U.S.C. §1985(3) for engaging in protected speech or petitioning activities. See e.g., Jian Zhang v. Biadu.com Inc., 10 F.Supp.3d 433, 436-44 (S.D.N.Y. 2014), citing Snyder v. Phelps, 562 U.S. 443, 451 (2011) (holding that the First Amendment is a defense to tort suits). The Association and its residents also have First Amendment rights. Plaintiffs' statutory claims, whether under RLUIPA or 42 U.S.C. §§1983 or 1985(3), are subordinate to those constitutional rights. U.S. Const. Art. IV, § 2 ("The Constitution . . . shall be the supreme law of the land."). As such, the Association cannot face statutory civil liability for exercising those rights.

The First Amendment protects both free expression and guarantees the right to petition the government. U.S. Const. Amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."). As such, protected conduct, for instance, petitioning elected officials to enforce local laws or publishing an op-ed, cannot form the basis of a tort claim like the one brought here under 42 U.S.C. §1985(3). Doing

so would violate the Constitutional rights of the Association and its members.  The Amended Complaint seeks to hold the Association liable under a "conspiracy" theory.  See 42 U.S.C. 1985(3); see also, ECF 107 @ ¶¶ 107-112.  The Amended Complaint contains allegations involving Association members and/or agents that amount to protected speech or petitioning.  As discussed above, the allegations conspicuously omit any claim that those acts were carried out at the direction of or on behalf of the Association. Even if this Court accepts the allegations at face value, although the Association denies many, if not all, of the accusations leveled against it, plaintiffs cannot prevail in its Amended Complaint because it seeks to hold the Association liable for engaging in protected speech and petitioning activities that are immunized under the First Amendment's Free Speech and Petition clauses, respectively.

Plaintiffs' allegations, which include publishing op-eds on matters of public concern; discussing public policy and the enforcement of local laws with democratically elected representatives; and reporting crimes and zoning violations to local law enforcement, violations that were tried and violations for which plaintiff RMI has, upon due process, been adjudged guilty 103 times by one Judge, and upheld after a trial de novo on the record of a second Judge (as to 102 of the 103 violations).  Not only are these activities constitutionally protected, they are the

36

badges of the advanced citizenry that our democracy demands. Imposing civil liability for this laudable civic participation would create a devastating chilling effect.

## A. PLAINTIFFS' CLAIMS ARE BARRED UNDER THE FREE SPEECH CLAUSE

Political speech is at the First Amendment's core. The protection guaranteed under the Free Speech Clause is at its "zenith" where the speech concerns matters of public concern. See, e.g., Meyer v. Grant, 486 U.S. 414, 425 (1988). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." Snyder, 562 U.S. at 452 (internal citations omitted). Speech loses constitutional protections *only* when it falls into "historic and traditional categories long familiar to the bar." U.S. v. Stevens, 559 U.S. 460, 470 (2010). These categories include incitement, obscenity, defamation, or speech integral to criminal conduct. See U.S. v. Alvarez, 567 U.S. 709, 718-19 (2012) (collecting cases).

Plaintiffs seek to impose civil liability against the Association on the basis of its members' protected speech. Plaintiffs complain that, as opposed to the Association, allegedly publicly expressed their wish to drive RMI off of the Property. ECF 107 @ ¶70. The use of the RMI Property has become an issue of great public concern. Association members are entitled to hold

37

and express these opinions.  The Association  wants the zoning ordinances complied with, or RMI to obtain the use variance and site plan approval.

Plaintiffs next seek to hold the Association liable because some of its members are alleged to have "publicly demand[ed] that [Mahwah] impose fines and jail time on [RMI] members."  ECF 107 @ ¶76. Again, while not attributed to the Association, even if these comments were made by individual Association members, they regard matters of public concern and are protected speech.  Debate on matters of public concern "should be uninhibited, robust, and wide-open. . . ."  New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964).  The enforcement of criminal and other laws are matters of public concern.  The Amended Complaint sets forth no basis to exempt this speech from constitutional protection.

Finally, Plaintiffs accuse Association members, without identifying the speakers or even noting the dates on which the alleged statements were made, of making xenophobic and racist remarks.  ECF 107 @ ¶74.  There is absolutely no evidence to support these allegations and the Association vehemently denies any involvement in such comments.  But even if they were made, those comments are not, and cannot be, attributed to the Association.  There is no allegation that the Association authorized such comments.  The Association believes that RMI's narrative is intended to escalate hostility towards the

Association and engender sympathy towards the plaintiffs. These unverified allegations without any factual support have appeared in every tribunal — some unidentified person said something against an RMI member. While it sensationalizes the case and has been a common tactic employed by plaintiffs in every proceeding, there is simply no factual basis. But even reading the Amended Complaint in a light most favorable to the Plaintiff and even inferring some type of attribution to the Association, the alleged comments — however xenophobic or racially charged — would constitute protected speech. See Matal v. Tam, 582 U.S. ____, 137 S.Ct. 1744 (2017); Snyder v. Phelps, 562 U.S. 443 (2011); R.A.V. v. City of St. Paul, 505 U.S. 377 (1992).

### B. PLAINTIFFS' CLAIMS ARE BARRED UNDER THE PETITION CLAUSE

The First Amendment also immunizes private actors from civil liability arising out of protected petitioning activities. See Eastern R.R. Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 135 (1961); see also United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965). The Noerr-Pennington doctrine emerged in the antitrust context but has since been applied as a defense in civil litigation generally. See Herr v. Pequea Tp., 274 F.3d 109, 115 (3d Cir. 2001), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Tp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003). The Third Circuit has confirmed that the Petition Clause provides a defense to conspiracy claims brought under 42

U.S.C. §1985(3).   See Mariana v. Fisher, 338 F.3d 189, 199-200 (3d Cir. 2003) (citing Manistee Town Center v. City of Glendale, 227 F.3d 1090 (9th Cir. 2000) and Miracle Mile Assocs. v. City of Rochester, 617 F.2d 18 (2d Cir. 1980)).

Further, there is agreement amongst the Circuits that Noerr-Pennington immunity protects objectors in the zoning context.   See Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 615 (8th Cir. 1980) (immunizing conduct under Noerr-Pennington that included "demanding a zoning amendment and participating in the spread of false derogatory rumors about [a developer's] proposed housing project"); see also White v. Lee, 227 F.3d 1214, 1227 (9th Cir. 2000) ("[t]he First Amendment guarantees the right 'to petition the Government for a redress of grievances.' The plaintiffs exercised this right by attending and speaking out at Zoning Adjustment Board hearings . . . .")

In this case, the Association stands accused of instituting "numerous unfounded lawsuits against [the RMI] in Bergen County Superior Court." ECF 107 @ ¶82. First, the Association has only instituted one lawsuit in the Bergen County Superior Court. But in any event, that sole lawsuit was not "unfounded." As the record makes clear, RMI is and has been in violation of Mahwah's zoning ordinances along with a slew of other laws. RMI has been found guilty of 103 zoning violations (102 of which were upheld on appeal in a trial de novo).

Acknowledging that the Association failed to prove a prima facia case in its state court action, it would still be protected under <u>Noerr-Pennington</u>. In order to fall within the "sham litigation" exception to <u>Noerr-Pennington</u>, in the context of a sole lawsuit, that suit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc</u>., 508 <u>U.S</u>. 49, 60 (1993) ("PREI").[1] Given that RMI have already been found guilty of violating Mahwah's zoning and municipal ordinances on first 103 counts (102 of which were upheld on appeal), the Association reasonably expected success on the merits.

The Amended Complaint also bases its conspiracy claim on allegations that the Mayor and certain Council members visited and conferred with Association residents regarding RMI's use of the RMI Property (ECF 107 @ ¶71); that the Association hired a PR firm to publish a letter to the editor opposing the RMI's use of the Property [ECF 107 @ ¶72]; and that some unidentified Association resident (with no allegation that the Association

---

[1] When a case involves a "whole series of lawsuits or other legal action," courts apply the more deferential standard announced in <u>California Motor Transport Co. v. Trucking Unlimited</u>, 404 <u>U.S</u>. 508 (1972). <u>See</u> e.g., <u>Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co</u>., LLC, 240 F.Supp.3d 299, 307 (D.N.J. 2017). Under that standard, courts conduct a "holistic review" that includes win-loss percentages. <u>Id</u>. at 307-08. The convictions on 103 counts tips this balancing decidedly against Plaintiffs.

Board of Trustees authorized such conduct), made statements at a township council public meeting regarding the need to enforce local laws against Plaintiffs [ECF 107 @ ¶80]. Such statements, particularly in the context of a Township Council meeting, constitute core petitioning conduct protected under the First Amendment, the likes of which cannot be reached on a 1985(3) conspiracy claim. See Affordable Housing Dev. Corp. v. City of Fresno, 433 F.3d 1182, (9th Cir. 2006) (immunizing the circulating of flyers, organizing of meetings, commentating to elected officials, and other related activity taken in opposition to the development of low-income housing).

Plaintiffs also base their §1985(3) claim on allegations that the Association made criminal complaints to the Mahwah police department and that an Association member filed a police report (but declined to file official charges) for stolen electricity. ECF 107 @ ¶73, 77. The filing of criminal complaints constitutes protected petitioning. See Kahermanes v. Marchese, 361 F. Supp. 168, 171 (E.D. Pa. 1973) (holding that the reporting of knowingly false information to law enforcement could not support a conspiracy claim under 42 U.S.C. § 1985(3)). Further, the Circuit Courts are in agreement that merely informing a governmental official that a law has been violated does not violate any constitutional rights. See, e.g., Scotto v. Almenas, 143 F.3d 105, 111-13 (2d Cir. 1998); Anton v. Getty, 78 F.3d 393, 396 n.5 (8th Cir. 1995).

42

The Third Circuit's decision in Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155 (3d Cir. 1988), which concerns similar facts, is instructive. In Brownsville, the defendants were accused of conspiring to persuade public officials to decertify the plaintiff's nursing home, which was alleged to have violated a slew of federal and state regulations. Id. at 157-58. The defendants allegedly reported violations to relevant government actors and even instituted a PR campaign that culminated in the airing of a CBS television program critical of the subject nursing home. Id. The Third Circuit held that in a §1985(3) civil conspiracy suit, private citizens who were dismayed at the conditions of a nursing home were immune from damages arising out of attempts to persuade public officials to decertify the nursing home. Id. at 160 (emphasis supplied) (collecting cases concerning private conduct directed at influencing government action).

Similarly, the Ninth Circuit has squarely held that the Petition Clause immunizes a homeowners' association's active opposition to a church's zoning application. In Christian Gospel Church, Inc. v. City & County of San Francisco, 896 F.2d 1221 (9th Cir. 1990), superseded on other grounds by, Arizona Dream Act Coalition v. Brewer, 818 F.3d 901 (9th Cir. 2016), the Christian Gospel Church applied for a conditional use authorization to establish a church on a lot zoned for single-family residences. Id. at 1222-23. The association engaged in various petitioning

43

activities and published a "letter to the editor." *Id.* at 1226. The Ninth Circuit confirmed that the association's activities were fully protected by the First Amendment. *Id.* The association members "were doing what citizens should be encouraged to do, taking an active role in the decisions of government." *Id.* at 1226.

Finally, plaintiffs make much of the Association's alleged intent, making repeated accusations of religious animus. While the Amended Complaint contains zero allegations that would support attributing this conduct to the Association, animus has no bearing on the Noerr-Pennington calculus. When confronted with this very issue — that is, whether a petitioner's intent would void a Noerr-Pennington defense — the Supreme Court "answer[ed] this question in the negative and [held] that an objectively reasonable effort" to petition the government, even when motivated by animus, is entitled to Petition Clause immunity. PREI, 508 U.S. at 57.

## POINT IV

## RLN IS NOT ENTITLED TO SUE IN FEDERAL COURT BECAUSE ITS SOVEREIGNTY HAS NOT BEEN RECOGNIZED BY THE PRESIDENT

In order to sue in Federal Court, a sovereign entity must be recognized by the Executive Branch of the Federal Government.  RLN claims that it is a "state-recognized sovereign entity."  While it is unclear what this phrase means, RLN's sovereignty has not been recognized by the Executive Branch so it cannot sue in Federal Court.

### A. SOVEREIGNS UNRECOGNIZED BY THE EXECUTIVE BRANCH MAY NOT SUE IN FEDERAL COURT

The Executive Branch alone is vested with the authority to recognize sovereign governments; recognition is a power exclusively held by the Executive.  Zivotofsky ex rel. Zivotofsky v. Kerry, 576 U.S. ___ , 135 S.Ct. 2076, 2089 (2015) ("[T]he Court has long considered recognition to be the exclusive prerogative of the Executive.").  The Executive also determines an individual's status as a representative of a sovereign government.  Baker v. Carr, 369 U.S. 186 (1962); see also, Ex Parte Hitz, 111 U.S. 766 (1884) (reserving to the Executive the discretion to determine whether and when an individual represented the Swiss government).  It is obvious that the recognition or non-recognition of a government is a political question reserved for the Executive.  See The Maret, 145 F.2d 431, 440 (3d Cir. 1944).

45

The judiciary should not override this determination. Federal Courts have long understood that only governments recognized by the Executive Branch of the United States are entitled to access to U.S. courts. Pfizer, Inc. v. Government of India, 434 U.S. 308, 319-20 (1978). Allowing an unrecognized government to sue in federal court would overrule the Executive's decision to withhold recognition, amounting to an unconstitutional usurpation of the Executive's Article II authority. See Federal Republic of Germany v. Elicofon, 358 F. Supp. at 750 ("A decision by this court permitting the [unrecognized government] to bring such a suit would . . . acknowledge[] the right of that government to represent the people of East Germany in international affairs. A determination of that kind would be inconsistent with the presidential denial of recognition . . . and thus be an unconstitutional encroachment upon the power of the President."). Simply put, unrecognized "sovereigns" like the RLN are not entitled to bring suit in federal courts.

**B. THE BUREAU OF INDIAN AFFAIRS DOES NOT RECOGNIZE RLN AS A SOVEREIGNTY.**

In the Complaint, RLN purports to be a sovereign. However, RLN is not an Indian tribe to be afforded tribal status in this Court and is not a recognized Indian tribe under 25 U.S.C. § 479. The Department of the Interior Bureau of Indian Affairs most recently published its list of recognized tribal entities in

January 2019.  The list identifies 567 tribes.  <u>See</u> 84 <u>Fed. Reg.</u> 1200-1205 (Feb. 1, 2019.  RLN is not among them.  For Indian tribes, federal recognition establishes the government-to-government relationship with the United States, and as a result, vests those tribes with the authority to sue in federal court.  <u>See</u> <u>Kahawaiolaa v. Norton</u>, 386 <u>F.3d</u> 1271, 1273-74 (9th Cir. 2004).

The Federal Government does not recognize RLN as an Indian tribe.

## CONCLUSION

Plaintiff's Amended Complaint should be dismissed based on the Entire Controversy Doctrine and/or res judicate, because it fails to make out a claim against the Association, and because the complained-of conduct is protected under the Free Speech and Petition Clauses of the First Amendment.

JOHN F. GAFFNEY, ESQ.

Dated:  November 14, 2019